IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
————————————————————————x

ALDO VERA, JR., as Personal Representative
of the Estate of Aldo Vera, Sr.,

                        Plaintiffs,

           -against-

THE REPUBLIC OF CUBA,

                      Defendant.

————————————————————————x

:
:
:
:   12-Civ-1596 (AKH)
:
:
:
:
:
:

 

**GARNISHEE DEUTSCHE BANK TRUST COMPANY AMERICAS'
MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR TURNOVER
AND IN SUPPORT OF MOTION TO STAY JUDGMENT ENFORCEMENT PROCEEDINGS**

COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY  10018-1405
(212) 841-1161

*Attorneys for Garnishee Deutsche
Bank Trust Company Americas*

TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND.................................................................................................................. 2

ARGUMENT ...................................................................................................................... 4

I.      PLAINTIFF'S TURNOVER MOTION SHOULD BE DENIED ON THE
        GROUND THAT PLAINTIFF HAS FAILED TO COMMENCE A TURNOVER
        PROCEEDING AND TO JOIN COMPETING CLAIMANTS TO THE
        BLOCKED WIRES. .......................................................................................... 4

II.     PLAINTIFF'S TURNOVER MOTION SHOULD BE DENIED ON THE
        GROUND THAT PLAINTIFF HAS FAILED TO ESTABLISH THAT ANY OF
        THE BLOCKED WIRES ARE OWNED BY THE JUDGMENT DEBTOR.................... 7

III.    ALL PROCEEDINGS WITH RESPECT TO THE BLOCKED WIRES SHOULD
        BE STAYED PENDING THE SECOND CIRCUIT'S DECISION IN THE
        HAUSLER AND CALDERON-CARDONA APPEALS..................................... 9

CONCLUSION.................................................................................................................. 13

TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allied Mar., Inc. v. Descatrade SA,*
   620 F.3d 70 (2d Cir. 2010)....................................................................................................10

*Bergdorf Goodman, Inc. v. Marine Midland Bank,*
   411 N.Y.S.2d 490 (Civ. Ct. 1978) .........................................................................................7

*Calderon-Cardona v. JPMorgan Chase Bank, N.A.,*
   867 F. Supp. 2d 389 (S.D.N.Y. 2011)....................................................................................7

*Citibank (South Dakota), N.A. v. Island Fed. Credit Union,*
   740 N.Y.S.2d 546 (App. Term 2001) .....................................................................................7

*Estate of Heiser v. Deutsche Bank Trust Co. Americas,*
   No. 11 Civ. 1608 (AJN) (MHD), 2012 WL 2865485 (S.D.N.Y. July 10, 2012) ...................12

*Estate of Heiser v. Deutsche Bank Trust Co. Americas,*
   No. 11 Civ. 1608 (AJN) (MHD), 2012 WL 5039065 (S.D.N.Y. Oct. 17, 2012) ............. 11-12

*Estate of Heiser v. Islamic Republic of Iran,*
   885 F. Supp. 2d 429 (D.D.C. 2012) ................................................................................8, 10

*Export-Import Bank of U.S. v. Asia Pulp & Paper Co.,*
   609 F.3d 111 (2d Cir. 2010)............................................................................................ 8-10

*Fogarazzo v. Lehman Bros., Inc.,*
   263 F.R.D. 90 (S.D.N.Y. 2009) ...........................................................................................11

*Goldstein v. Time Warner New York City Cable Group,*
   3 F. Supp. 2d 423 (S.D.N.Y. 1998) .....................................................................................11

*Gucci Am., Inc. v. Bagsmerchant, LLC,*
   No. 10 Civ. 2911 (SAS), 2012 WL 4468192 (S.D.N.Y. Sept. 27, 2012)................................5

*Hausler v. JP Morgan Chase Bank, N.A.,*
   740 F. Supp. 2d 525 (S.D.N.Y. 2010)....................................................................................8

*Hausler v. JPMorgan Chase Bank, N.A.,*
   845 F. Supp. 2d 553 (S.D.N.Y. 2012)....................................................................................8

*In re Literary Works in Elec. Databases Copyright Litig.,*
   No. M-21-90 GBD, 2001 WL 204212 (S.D.N.Y. Mar. 1, 2001)...........................................11

*Landis v. N. Am. Co.,*
   299 U.S. 248 (1936).............................................................................................................11

*LaSala v. Needham & Co.*,
    399 F. Supp. 2d 421 (S.D.N.Y. 2005)........................................................................11

*Schneider v. Nat'l R.R. Passenger Corp.*,
    72 F.3d 17 (2d Cir. 1995)........................................................................................6

*Weininger v. Castro*,
    462 F. Supp. 2d 457 (S.D.N.Y. 2006)........................................................................6

## STATUTES

CPLR § 402........................................................................................................

CPLR § 403........................................................................................................

CPLR § 1001.......................................................................................................6

CPLR § 5225(b)................................................................................................1, 4

CPLR § 5225:5......................................................................................................5

Uniform Commercial Code.....................................................................................4

## RULES AND REGULATIONS

31 C.F.R. Part 515.............................................................................................1-3

 31 C.F.R. § 515.311......................................................................................2, 3

 31 C.F.R. § 515.201........................................................................................2

Federal Rule of Civil Procedure 19(a)-(b) ..........................................................5-6

Federal Rule of Civil Procedure 60 ........................................................................1

Federal Rule of Civil Procedure 69(a) ...............................................................4-6

## OTHER AUTHORITIES

30 Am. Jur. 2d Executions & Enforcements of Judgments § 120 (2013) ...................7

50 C.J.S. Judgments § 787 (2012) ..........................................................................7

Non-party garnishee Deutsche Bank Trust Company Americas ("DBTCA") respectfully submits this Memorandum of Law in Opposition to Plaintiff's Motion for Turnover Order Pursuant to Federal Rule of Civil Procedure Rule 60 and CPLR § 5225(b) ("Turnover Motion") and in support of DBTCA's Cross Motion to Stay Judgment Enforcement Proceedings.

PRELIMINARY STATEMENT

On February 28, 2013, Plaintiff filed the instant Turnover Motion against DBTCA, seeking the turnover of 194 wire transfers that were blocked by DBTCA pursuant to the Cuban Assets Control Regulations, 31 C.F.R. Part 515.  The Turnover Motion asserts that the wires belong to the Republic of Cuba or its agencies or instrumentalities and should be turned over to Plaintiff to satisfy a judgment obtained against the Republic of Cuba.

Although DBTCA is a neutral stakeholder with no claim to the wires, it believes that Plaintiff's Motion for Turnover should be denied for several reasons, including Plaintiff's failure to follow appropriate judgment enforcement procedures, Plaintiff's failure to join indispensable parties who may claim a competing interest in the blocked wires, and Plaintiff's failure to establish Cuba's ownership of the blocked wires.  Unless and until these issues are addressed, turning over the blocked wires to Plaintiff would risk subjecting DBTCA to liability to other parties who may have a competing claim to the same funds.

In addition, there are two cases currently pending before the Second Circuit which raise the issue of whether blocked wires in the possession of an intermediary bank are subject to attachment in judgment enforcement proceedings such as this one.  DBTCA respectfully submits that, it would be prudent — and cause no material prejudice to Plaintiff — to stay all further judgment enforcement proceedings with respect to the blocked wires until such time as the Second Circuit has ruled.  As explained in detail below, the Second Circuit's decision in the

pending cases could either dispose of Plaintiff's claim to the blocked wires or substantially clarify the rules that apply in determining the validity of the claim.

BACKGROUND

On May 15, 2008, Plaintiff obtained a damages judgment against the Republic of Cuba in state court in Florida, which was subsequently domesticated in this Court (the "Judgment"). *See* Turnover Motion Ex. A.  Thereafter, in an effort to locate assets with which to satisfy the Judgment, Plaintiff served information subpoenas on several banks, including DBTCA. *See* Gimbel Decl. ¶ 2, Ex. A.  In response, DBTCA provided Plaintiff with a list of accounts in its possession that have been blocked pursuant to the Cuban Asset Control Regulations, 31 C.F.R. Part 515 ("CACRs").  *See id.* ¶ 3, Ex. B.

The accounts identified by DBTCA and sought by Plaintiff in this Turnover Motion (the "Blocked Wires") all consist of electronic fund transfers ("EFTs" or "wires") that were routed through DBTCA, as intermediary bank, and blocked by it pursuant to the CACRs. *See id.*  The CACRs require financial institutions in the United States to block all "transfers of credit and all payments between, by, through, or to any banking institution" if the Republic of Cuba "*or any national thereof*, has *at any time* on or since the effective date of this section had *any interest of any nature whatsoever*, direct or indirect" in the funds at issue.  31 C.F.R. § 515.201 (emphasis added).  Blocking is required even if a Cuban party has an interest that is merely "future" or "contingent" in nature.  *See* 31 C.F.R. § 515.311 (defining property interests to include "present, future, or contingent" interests).  Because the CACRs cast such a wide net, the fact that a wire transaction is blocked pursuant to the regulations does not necessarily mean that the Republic of Cuba, or its agencies or instrumentalities, is the rightful owner of the wire.

There are numerous parties to each of the underlying wire transactions identified by DBTCA, including originators, originating banks, beneficiaries, beneficiary banks and, in

2

certain cases, additional intermediary banks.  *See* Gimbel Decl. ¶ 4, Ex. C  Many of these parties were identified in response to supplemental information requests Plaintiff made following DBTCA's initial response to the information subpoena.  *See id.*  Certain of the parties to the underlying wire transactions have claimed, or may in the future claim, a competing interest in the Blocked Wires.

For example, the largest of the Blocked Wires is a wire in the original amount of $7,135,953.50, which was sent in June of 2006 by National Bank of Canada, as originating bank, and blocked by DBTCA, acting as intermediary bank, based on the fact that the wire was directed to a Cuban bank and beneficiary.  *See id.*, ¶ 3, Ex. B at p. 14 (account ending in 0278).  National Bank of Canada, the originating bank, has asserted a claim to this Blocked Wire and demanded that the funds be released and returned to it if and when sanctions regulations are lifted.  *See id.* ¶ 5, Ex. D.

Certain of the Blocked Wires may also be sought by other judgment creditors.  In July of 2009, DBTCA received a Writ of Garnishment from the petitioners in *Hausler v. Republic of Cuba*.  *See id.*  In response to the Writ, DBTCA identified various Blocked Wires in its possession in which it is possible that agencies or instrumentalities of Cuba may claim an interest, including many of the wires at issue here.  *See id.*, ¶ 6, Ex. E.  Although the *Hausler* petitioners have not yet commenced turnover proceedings with respect to any of these wires, they have served writs of execution directed to "Deutsche Bank"[1] and may in the future seek turnover of one or more of the identified accounts.  *See id.*, ¶ 7, Ex. F.

Two appeals are now pending before the Second Circuit which may significantly affect the Petitioner's claim to the Blocked Wires: *Calderon-Cardona et al. v. JPMorgan Chase*

---

[1] We understand that the Plaintiff in this action contends that the Writ of Execution served by the *Hausler* plaintiff and addressed to "Deutsche Bank" was effective only against Deutsche Bank AG and not against its indirect wholly-owned subsidiary DBTCA.

3

*Bank, N.A., et al.*, No. 12-75, and *Hausler v. JPMorgan Chase Bank*, *N.A.*, No. 12-1272.  Each case raises the question of the extent to which blocked wires in the possession of an intermediary bank are subject to attachment in a judgment enforcement proceeding pursuant to the Terrorism Risk Insurance Act ("TRIA"), such as this proceeding.  *See* Gimbel Decl. at ¶¶ 8-9, Exs. G-H.  Briefing has been completed in each case, and the two appeals were argued in tandem on February 11, 2013.  *See id.* at ¶ 10, Ex. I.

Depending on how the Second Circuit rules, it may dispose of Plaintiff's claim to all or many of the Blocked Wires at issue here.  For example, and without limitation, to the extent that the Second Circuit affirms the District Court's ruling in *Calderon-Cardona* that ownership of blocked wires is governed by the Uniform Commercial Code ("UCC"), then the Plaintiff here would appear to have no entitlement to many or all of the Blocked Wires identified by DBTCA, for reasons explained in greater detail in Point III below.

ARGUMENT

I.  PLAINTIFF'S TURNOVER MOTION SHOULD BE DENIED ON THE GROUND THAT PLAINTIFF HAS FAILED TO COMMENCE A TURNOVER PROCEEDING AND TO JOIN COMPETING CLAIMANTS TO THE BLOCKED WIRES.

Under Federal Rule of Civil Procedure 69(a)(1), judgment enforcement proceedings are governed by "the procedure of the state where the court is located, but a federal statute governs to the extent it applies."  Fed. R. Civ. P. 69(a)(1).  Here, Plaintiff seeks to enforce its judgment pursuant to Section 5225(b) of the New York Civil Practice Law and Rules ("CPLR"), but Plaintiff has failed to comply with a threshold requirement of the section.

In order to enforce a judgment under CPLR § 5225(b), a plaintiff must first commence "a special proceeding" against the party allegedly holding property of the judgment creditor.  CPLR § 5225(b) (providing for turnover "[u]pon a special proceeding commenced by

the judgment creditor"). It is not sufficient simply to file a motion and serve it on a non-party

garnishee, such as DBTCA, as Plaintiff has done. As the practice commentary explains:

> When the person who has possession or control of the money or property is
> not the judgment debtor, subdivision (b) rather than subdivision (a) governs
> and the application takes the form of a special proceeding instead of a motion.
> This recognizes that jurisdiction has yet to be obtained over the third person.
> The special proceeding is an independent application, bearing its own caption,
> in contrast to the mere motion status given to the application when it is made
> against the judgment debtor under subdivision (a).

CPLR § 5225:5 (McKinney's 2010). In order to obtain the relief it seeks, Plaintiff must

therefore *first* commence a special proceeding, or its federal court equivalent, by filing a

summons and a petition for turnover against DBTCA.[2]

DBTCA raises this issue not to stand on ceremony, but because there are

important substantive issues that arise from Plaintiff's failure to follow the correct procedure.

For example, to the extent that Plaintiff has failed to comply with applicable rules by properly

commencing a proceeding against DBTCA, a third party affected by any judgment may question

its validity and whether or not DBTCA was bound by the judgment. *See Gucci Am., Inc. v.

Bagsmerchant, LLC,* No. 10 Civ. 2911 (SAS), 2012 WL 4468192, at *2 (S.D.N.Y. Sept. 27,

2012) ("The New York Court of Appeals explained that '[t]he reason for [the special proceeding]

is that the garnishee, not being a party to the main action, has to be independently subjected to

the court's jurisdiction.'") (quoting *Koehler v. The Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 537

(2009)).

Perhaps more importantly, the commencement of a special proceeding, through

the filing of a turnover petition, gives Plaintiff the opportunity — and an obligation — to join

---

[2] Special proceedings are governed by Article 4 of the CPLR. CPLR § 402 provides that, in any special
proceeding, "[t]here shall be a petition, which shall comply with the requirements for a complaint in an
action, and an answer where there is an adverse party." CPLR § 403(a) requires service of a notice of
petition, served in the same manner as a summons.

other parties who may claim a competing interest in the Blocked Wires.  Under Rule 19(a),[3]

Petitioners must join all persons subject to service of process who claim an interest in the subject

of the action and are so situated that disposing of the proceeding in their absence may "(i) as a

practical matter impair or impede the person's ability to protect that interest; or (ii) leave an

existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent

obligations . . . ."  Fed. R. Civ. P. 19(a).  To the extent made applicable to this judgment

enforcement proceeding by Federal Rule of Civil Procedure 69(a), the CPLR imposes

substantially similar requirements.  *See* CPLR § 1001.[4]

        Here, as discussed above, there are numerous third parties involved in the

underlying wire transfers who may claim an interest in the Blocked Wires.  The ability of these

third parties to protect their interests in the accounts may be impaired if this action is adjudicated

in their absence.[5]  Moreover, resolving this matter in the absence of these third parties would

create a "substantial risk" that DBTCA will face "double, multiple, or otherwise inconsistent

obligations" if such parties later make claims against DBTCA for the same funds.  *See id.*; *cf.*

*Weininger v. Castro*, 462 F. Supp. 2d 457, 501 (S.D.N.Y. 2006) (finding that a bank faced a

"reasonable fear of double liability or conflicting claims" where blocked funds sought by

---

[3] Federal Rule of Civil Procedure 69(a) provides that supplement proceedings to enforce a judgment "must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."  Fed. R. Civ. P. 69(a).  Because the Federal Rules of Civil Procedure have the "force and effect of federal statutes," they govern where applicable.  *Schneider v. Nat'l R.R. Passenger Corp.*, 72 F.3d 17, 19 (2d Cir. 1995).

[4] CPLR § 1001(a), like Rule 19(a), states that parties should be joined if they might be "inequitably affected" by a judgment in the action or if their presence is necessary to afford "complete relief."  CPLR § 1001(b) directs the court to consider the same factors mentioned in Rule 19(b) when deciding whether to dismiss an action where a necessary party cannot be joined.

[5] DBTCA notified National Bank of Canada of this proceeding, because it was aware of its claim to one of the Blocked Wires and in communication with its counsel regarding the claim.  We understand that National Bank of Canada may file a motion to intervene in this proceeding as a result.  However, there remains a need to bring other potential claimants to the Blocked Wires before the Court.

petitioners were claimed by "juridically separate entities not previously sued or found liable for the acts in question").

To avoid these risks, the Court should reject Plaintiff's attempt to obtain the turnover of assets by filing a motion and instead direct Plaintiff to commence a special proceeding against DBTCA and all parties who may claim an interest in the Blocked Wires.[6] Holding otherwise would not only create a risk that third parties will make inconsistent claims against DBTCA, but also would deprive DBTCA of rights it would have as a party to a special proceeding, including the right to move for judgment on the pleadings and the right to commence third party proceedings in the nature of interpleader, to the extent that the Court does not order Plaintiff to join all other claimants to the Blocked Wires.

## II.   PLAINTIFF'S TURNOVER MOTION SHOULD BE DENIED ON THE GROUND THAT PLAINTIFF HAS FAILED TO ESTABLISH THAT ANY OF THE BLOCKED WIRES ARE OWNED BY THE JUDGMENT DEBTOR.

It is a fundamental rule of judgment enforcement that "[o]nly property owned by the judgment debtor is subject to execution to satisfy a judgment."  30 Am. Jur. 2d Executions & Enforcements of Judgments § 120 (2013); *see also* 50 C.J.S. Judgments § 787 (2012) ("A judgment lien attaches only to the judgment debtor's interest . . . .").  TRIA, the federal statute pursuant to which Plaintiff seeks to execute its judgment, recognizes this rule by making only "assets of" the judgment debtor, or its agencies and instrumentalities, available for execution. *See* TRIA § 201(a) (subjecting "blocked assets of that terrorist party" and its agencies and instrumentalities to execution); *see also Calderon-Cardona v. JPMorgan Chase Bank, N.A.*, 867

---

[6] In similar cases, where a party with an interest in a bank account that is the subject of a turnover proceeding has not been joined, courts have held dismissal is appropriate because the absent party is indispensable to the proceeding. *Citibank (South Dakota), N.A. v. Island Fed. Credit Union*, 740 N.Y.S.2d 546, 547 (App. Term 2001) ("the proceeding was properly dismissed without prejudice" because the property rights of the absent account owner "in the joint account would be substantially affected by a court's determination to turn over funds in the account to the judgment creditor"); *Bergdorf Goodman, Inc. v. Marine Midland Bank*, 411 N.Y.S.2d 490, 492 (Civ. Ct. 1978) (dismissing petition where judgment creditor failed to join judgment debtor's wife, who had an interest in the bank accounts).

F. Supp. 2d 389, 405 (S.D.N.Y. 2011) ("As a matter of law, however, TRIA § 201 *requires* property ownership.").[7]

      Plaintiff's Turnover Motion fails to demonstrate that the Republic of Cuba is the rightful owner of any of the Blocked Wires. As noted above, there are numerous parties to the underlying wire transactions, some of which may have competing claims to the funds, as well as other judgment creditors of Cuba who may claim an interest in the funds. Plaintiff's Turnover Motion not only fails to establish that the Republic of Cuba has a claim that is superior to that of these competing claimants, but fails even to disclose that such potential claimants exist.

      To take but one example, the most valuable Blocked Wire — a wire which accounts for the vast majority of all funds at issue in this motion — is claimed by the National Bank of Canada, which served as the originating bank in the underlying wire transaction. Under the UCC, National Bank of Canada may have a claim to the funds that is superior to any Cuban party involved in the wire transaction. *See Export-Import Bank of U.S. v. Asia Pulp & Paper Co.*, 609 F.3d 111, 119-20 (2d Cir. 2010) ("'[T]he only party with a claim against the intermediary bank is the sender to that bank, which is typically the originator's bank.'") (quoting PEB Commentary No. 16, §§ 4A-502(d) and 4A-503, at 3 (2009)).[8] Thus, even assuming that the Cuban wire parties are agencies or instrumentalities of the Republic of Cuba, the wire may be owned by a party unrelated to Cuba and therefore unavailable to satisfy Plaintiff's Judgment.

---

[7] Other decisions in this district conflict with *Calderon-Cardona* and suggest that, for a blocked asset to be subject to execution under TRIA, ownership is not required; rather, it is sufficient that the judgment debtor have an interest in the asset, even if that interest falls short of ownership. *See, e.g.*, *Hausler v. JPMorgan Chase Bank, N.A.*, 845 F. Supp. 2d 553, 566 (S.D.N.Y. 2012).

[8] The Court in *Hausler*, disagreeing with the holding of *Calderon-Cardona*, found that the UCC is preempted by TRIA and therefore does not govern ownership of blocked wires in this context. *See Hausler v. JP Morgan Chase Bank, N.A.*, 740 F. Supp. 2d 525, 531 (S.D.N.Y. 2010) (holding that TRIA preempts the UCC). Other courts have held, however, that even if the UCC is preempted in this context, it would be adopted as a matter of federal common law. *See Estate of Heiser v. Islamic Republic of Iran*, 885 F. Supp. 2d 429, 445-46 (D.D.C. 2012).

8

Plaintiff's Turnover Motion should be denied for failure to demonstrate that the Republic of Cuba or its agencies or instrumentalities is the rightful owner of each of the Blocked Wires and has an interest in the wires superior to that of all other competing claimants.[9]

III.   ALL PROCEEDINGS WITH RESPECT TO THE BLOCKED WIRES SHOULD BE STAYED PENDING THE SECOND CIRCUIT'S DECISION IN THE *HAUSLER* AND *CALDERON-CARDONA* APPEALS.

Two appeals are now pending before the Second Circuit which may significantly affect the Petitioner's claim to the Blocked Wires: *Calderon-Cardona et al. v. JPMorgan Chase Bank, N.A.*, *et al.*, No. 12-75 and *Hausler v. JPMorgan Chase Bank, N.A.*, No 12-1272. Each case raises questions that are potentially dispositive of Plaintiff's claim, including (i) the extent to which blocked wires in the possession of an intermediary bank are subject to attachment in a judgment enforcement proceeding under TRIA, and (ii) whether the UCC applies in determining if a blocked wire is owned by a judgment debtor and therefore subject to execution.

If the Second Circuit affirms the judgment of the District Court in *Calderon-Cardona* — and holds that the UCC controls — then Plaintiff may have no entitlement to all or most of the Blocked Wires at issue here. Under the UCC, neither the originator nor the beneficiary of a wire has an ownership interest in the wire while it is in possession of an intermediary bank. *See, e.g.*, *Asia Pulp*, 609 F.3d at 122 ("[N]either an originator nor an intended beneficiary own an EFT while it is temporarily in the possession of an intermediary bank[.]").[10] Similarly, a beneficiary bank also has no claim to a midstream EFT. *See Estate of*

_____

[9] In further support of its argument that Plaintiff has failed to establish Cuban ownership of any of the Blocked Wires here at issue, DBTCA hereby adopts and incorporates by reference the discussion of ownership of wire transfers set forth in Point III(A)-(D) of Intesa Sanpaolo S.P.A.'s Memorandum of Law of in Opposition to Plaintiff's Motion for Turnover and in Support of Motion to Stay [ECF Doc. No. 88] (the "Intesa Memorandum").

[10] *See also* UCC § 4A-502 ("creditor process . . . may be served only on the beneficiary's bank with respect to a debt owed by that bank to the beneficiary. Any other bank served with the creditor process is not obliged to act with respect to the process.")

*Heiser v. Islamic Republic of Iran*, 885 F. Supp. 2d 429, 447-48 (D.D.C. 2012) (holding that the creditor of a beneficiary's bank has no right to attach an EFT in the possession of an intermediary bank because "[l]egal title does not pass to the beneficiary's bank until it accepts the payment order from the intermediary bank"). "Rather, the only party with a claim against the intermediary bank is the sender to that bank, which is typically the originator's bank.'" *Asia Pulp*, 609 F.3d at 119-20 (quoting with approval PEB Commentary No. 16, §§ 4A-502(d) and 4A-503, at 3 (2009)). Here, with respect to many or all of the Blocked Wires at issue, the sending or originating bank appears to have been a financial institution with no apparent connection to Cuba. *See* Gimbel Dec. ¶ 5, Ex. D. It thus appears that, if the UCC controls, these wires are not subject to attachment as property of Cuba or its agencies or instrumentalities.[11]

Because the pending appeals before the Second Circuit may dispose of Plaintiff's claims, in whole or in part, DBTCA respectfully submits that the Court should, in addition to denying Petitioner's defective Motion for Turnover, stay any further judgment enforcement efforts with respect to the Blocked Wires until such time as the pending Second Circuit cases have been decided. Entering a brief stay to permit the Second Circuit to rule on potentially dispositive legal issues is an appropriate exercise of this Court's discretion to manage its own docket "with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936).[12]

---

[11] Even if any of the originating banks was a Cuban agency or instrumentality, it would not necessarily create an attachable property interest in the wire. While an originating bank may have a claim to funds in the possession of an intermediary bank under the "money back guarantee" rules of the UCC, the Second Circuit has held in the context of maritime attachment, and without expressing a view on the question in other contexts, that such a claim does not create an attachable property interest. *See Allied Mar., Inc. v. Descatrade SA*, 620 F.3d 70, 75-76 (2d Cir. 2010).

[12] In further support of its Cross Motion for a Stay, DBTCA hereby adopts and incorporates by reference Point I of the Intesa Memorandum.

10

Courts repeatedly have held that a stay is warranted where, as here, a "higher court is close to settling an important issue of law bearing on the action . . . ." *In re Literary Works in Elec. Databases Copyright Litig.*, No. M-21-90 GBD, 2001 WL 204212, at *2 (S.D.N.Y. Mar. 1, 2001); *see also LaSala v. Needham & Co.*, 399 F. Supp. 2d 421, 427 n. 39 (S.D.N.Y. 2005) ("Other situations favoring a stay include those where a higher court is close to settling an issue of law bearing on the action.") (citing *Marshel v. AFW Fabric Corp.*, 552 F.2d 471, 472 (2d Cir. 1977)); *Fogarazzo v. Lehman Bros., Inc.*, 263 F.R.D. 90, 95 (S.D.N.Y. 2009) (remarking that the court had previously stayed the matter pending the outcome of an appeal in an unrelated case on a relevant legal issue).[13]

Courts generally consider five factors when deciding whether to grant a stay:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burdens on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

*Estate of Heiser v. Deutsche Bank Trust Co. Americas*, No. 11 Civ. 1608 (AJN) (MHD), 2012 WL 5039065, at *2 (S.D.N.Y. Oct. 17, 2012) (agreeing with Magistrate Judge Dolinger that the above "test is widely applied in this District for determining whether or not to grant a stay pending an appeal"). These factors strongly support granting a stay where, as here, a pending appeal may completely dispose of, or substantially simplify, a case. *See In re Literary Works in Elec. Databases Copyright Litig.*, No. M-21-90 GBD, 2001 WL 204212, at *3 (S.D.N.Y. Mar. 1, 2001) ("Proceeding with this litigation several months before [a higher court] more precisely defines the claims at issue here would be unnecessarily wasteful of both the Court's and the litigants' resources.").

---

[13] A stay is proper even when issues on appeal are not controlling but merely important to the present case. *Goldstein v. Time Warner New York City Cable Group*, 3 F. Supp. 2d 423, 437-38 (S.D.N.Y. 1998)

Entering a stay here will not cause any material prejudice to Plaintiff, because the Second Circuit appeals already have been fully briefed and argued and are poised to be decided in the near future. *See Heiser*, 2012 WL 5039065, at \*4 (affirming Magistrate Judge Dolinger's finding that a stay of a similar judgment enforcement proceeding pending disposition of *Hausler* and *Calderon-Cardona* appeals would not cause undue prejudice because the length of the stay was "framed by discernible and reasonable limits" and was neither "indefinite nor immoderate"). Given that Plaintiff waited for years after obtaining its damages judgment in 2008 to bring this judgment enforcement proceeding (*see* Motion for Turnover, ¶ 15), there is no credible argument that waiting for a brief additional period to permit the Second Circuit to rule on potentially dispositive legal questions would prejudice the Plaintiff.

Furthermore, entering a stay will avoid the risk that DBTCA, numerous third parties, and the Court will be forced to engage in time-consuming and expensive litigation that may ultimately prove unnecessary, including not only litigation over the threshold issue of whether the Blocked Wires are subject to attachment but also proceedings necessary to bring competing claimants to the EFTs before the Court. A stay will also serve the public interest, not only by promoting judicial economy, but by assuring that any decision in this judgment enforcement proceeding is consistent with Second Circuit law.

For similar reasons, at least one other judgment enforcement proceeding in this district raising similar issues has been stayed pending the *Hausler* and *Calderon-Cardona* appeals. *See, e.g.*, *Heiser v. Deutsche Bank Trust Co. Americas*, No. 11 Civ. 1608 (AJN) (MHD), 2012 WL 2865485 (S.D.N.Y. July 10, 2012), *aff'd*, 2012 WL 5039065 (S.D.N.Y. Oct. 17, 2012) (internal citations omitted). DBTCA respectfully submits that this Court should reach the same result, by staying all further judgment enforcement proceedings with respect to the Blocked Wires pending the outcome of the Second Circuit appeals.

CONCLUSION

For the foregoing reasons, DBTCA respectfully submits that Plaintiff's Turnover Motion should be denied and that all further judgment enforcement proceedings with respect to the Blocked Wires should be stayed pending the Second Circuit's ruling in the *Calderon-Cardona* and *Hausler* appeals.

Dated: New York, New York
      March 18, 2013

COVINGTON & BURLING LLP

By: _____
        Mark P. Gimbel

The New York Times Building
620 Eighth Avenue
New York, NY  10018-1405
(212) 841-1161

*Attorneys for Garnishee Deutsche Bank
Trust Company Americas*

13