# EXHIBIT F

*Execution draft*

*Strictly private and confidential*

## SETTLEMENT AND ASSIGNMENT OF RECEIVABLES AGREEMENT

**THIS AGREEMENT** is made as of the 23rd day of November, 2006,

| | |
|---|---|
| **BY:** | **National Bank Financial Inc.**, a corporation, incorporated under the laws of the Province of Québec, conducting its business jointly with the Treasury Department of the National Bank of Canada under the name and style of National Bank Financial Group, herein represented by Brian A. Davis, Executive Vice-President - Corporate Development and Governance |
| | ("**NBFG**") |
| **AND:** | **Sherritt International Corporation**, a corporation, incorporated under the laws of the Province of New Brunswick, herein represented by Jowdat Waheed, President and Chief Executive Officer |
| | ("**Sherritt**") |

**RECITALS:**

A. Sherritt has a banking relationship with NBFG and from time to time requests NBFG to provide banking services related to Sherritt's indirect interests in certain businesses in Cuba. On 15th June 2006, a dispute arose between Sherritt and NBFG with relation to the sum of U.S.$7,135,953.50 (the "**Funds**") which was intended for transfer by Sherritt to a beneficiary residing in Cuba through NBFG's banking network;

B. The Funds were subsequently placed in a blocked account in the United States of America (the "**U.S.**") by Deutsche Bank, in compliance with the U.S. embargo on trade with Cuba, as a consequence of Sherritt's instruction to NBFG to transfer the Funds for the credit of a Cuban beneficiary and NBFG initiating a transfer through the SWIFT network in its name through Deutsche Bank in the U.S.;

C. At present, the Funds may not be released without approval from the Office of Foreign Asset Control of the U.S. Treasury Department ("**OFAC**") and NBFG therefore offered bridging finance to Sherritt to complete the fund transfer by Sherritt to the Cuban beneficiary, pending resolution of OFAC issues surrounding the release of the Funds, pursuant to the terms of a Bridge Funding and Reservation of Rights Agreement entered into by the Parties as of 23rd June 2006 (the "**Funding Agreement**"); and

7069097.1
12941-0001

D.  This Agreement therefore sets out the terms upon which the Parties agree to settle their dispute, whereby Sherritt will pay to NBFG the sum of U.S.$2,140,786.05, NBFG agrees to the discharge of Sherritt's obligations under the Funding Agreement; and the Parties agree to the apportionment between them of proportionate interests in the Funds, together with any interest accrued thereon, as are recovered from Deutsche Bank.

**NOW THEREFORE** in consideration of the mutual covenants contained herein, the Parties agree as follows:

## ARTICLE 1
## INTERPRETATION

**1.1**     **Definitions**

In this Agreement, in addition to the definitions set out in the recitals, if any:

1.1.1   **"this Agreement"**, **"hereto"**, **"herein"**, **"hereof"**, **"hereby"**, **"hereunder"** and any similar expressions refer to this Agreement as it may be amended or supplemented from time to time, and not to any particular section or other portion hereof;

1.1.2   **"Allowable Costs"** has the meaning set out in section 2.7.2;

1.1.3   **"Business Day"** means any day, other than Saturday, Sunday or any statutory holiday in the Province of Ontario;

1.1.4   **"Funding Agreement"** has the meaning set out in the recitals to this Agreement;

1.1.5   **"Funds"** has the meaning set out in the recitals to this Agreement;

1.1.6   **"NBFG Portion"** means a sum equal to seventy per cent (70%) of the Recovered Funds;

1.1.7   **"Non-Receiving Party"** has the meaning ascribed to it in section 2.7.3;

1.1.8   **"OFAC"** has the meaning set out in the recitals to this Agreement;

1.1.9   **"Party"** means a party to this Agreement;

1.1.10  **"Person"** means any individual, partnership, limited partnership, joint venture, syndicate, sole proprietorship, company or corporation with or without share capital, unincorporated

association, trust, trustee, executor, administrator or other legal personal representative, regulatory body or agency, government or governmental agency, authority or entity however designated or constituted;

1.1.11 **"PPSA"** means the *Personal Property Security Act* (Ontario), as amended from time to time, and any Act substituted therefor and amendments thereto and, where the context requires, applicable personal property security laws in any other relevant jurisdiction;

1.1.12 **"Proceeds"** means identifiable or traceable personal property in any form derived directly or indirectly from any dealing with the Funds, and includes any payment representing indemnity or compensation for seizure of or loss of the Funds or proceeds therefrom;

1.1.13 **"Receivables"** has the meaning ascribed to it in section 2.1.1;

1.1.14 **"Receiving Party"** has the meaning ascribed to it in section 2.7.1;

1.1.15 **"Recovered Funds"** has the meaning ascribed to in section 2.7.1;

1.1.16 **"Security"** has the meaning ascribed to it in section 2.1.2;

1.1.17 **"Sherritt Portion"** means a sum equal to thirty per cent (30%) of the Recovered Funds; and

1.1.18 **"U.S."** has the meaning set out in the recitals to this Agreement;

**1.2** **Headings**

The inclusion of headings in this Assignment is for convenience of reference only and shall not affect the construction or interpretation hereof.

**1.3** **References to Sections**

Whenever in this Agreement a particular Article, section or other portion thereof is referred to, such reference pertains to the particular Article, section or portion thereof contained herein, unless otherwise indicated.

**1.4** **Currency**

Except where otherwise expressly provided, all amounts in this Agreement are stated and shall be paid in Canadian currency.

**1.5**     **Gender and Number**

In this Agreement, unless the context otherwise requires, words importing the singular include the plural and vice versa, words importing gender include all genders or the neuter, and words importing the neuter include all genders.

**1.6**     **Invalidity of Provisions**

Each of the provisions contained in this Agreement is distinct and severable and a declaration of invalidity or unenforceability of any such provision or part thereof by a court of competent jurisdiction shall not affect the validity or enforceability of any other provision hereof. To the extent permitted by applicable law, the parties waive any provision of law which renders any provision of this Agreement invalid or unenforceable in any respect. The parties shall engage in good faith negotiations to replace any provision which is declared invalid or unenforceable with a valid and enforceable provision, the economic effect of which comes as close as possible to that of the invalid or unenforceable provision which it replaces.

**1.7**     **Successors and Assigns**

This Agreement shall be binding on and shall enure to the benefit of the Parties and their successors and assigns. Further, any reference to "NBFG", "Sherritt" or to a "Party" shall be deemed to refer, as the context requires, to their respective successors and assigns.

**1.8**     **Amendment, Waiver**

No amendment or waiver of this Agreement shall be binding unless executed in writing by the party to be bound thereby. No waiver of any provision of this Agreement shall constitute a waiver of any other provision nor shall any waiver of any provision of this Agreement constitute a continuing waiver unless otherwise expressly provided.

**1.9**     **Governing Law, Attornment**

This Agreement shall be governed by and construed in accordance with the laws of the Province of Ontario and the laws of Canada applicable therein and the Parties hereby irrevocably attorn to the non-exclusive jurisdiction of the courts of Ontario.

# ARTICLE 2
## ASSIGNMENT OF RECOVERABLE PROCEEDS AND SETTLEMENT OF CLAIMS

**2.1**      **Assignment**

NBFG hereby assigns to Sherritt, in consideration for Sherritt's payment to NBFG of U.S.$ 2,140,786.05, receipt of which is hereby acknowledged, a pro rata interest equivalent to the Sherritt Portion in:

> 2.1.1    all debts, demands and choses in action which are now due, owing or accruing in respect of the Funds and all claims of whatsoever nature or kind which NBFG now has or may hereafter have in the Funds together with any interest accrued thereon (the **"Receivables"**); and

> 2.1.2    all agreements, guarantees, security agreements and other rights and benefits which are now or may hereafter be vested in NBFG in respect of or as security for any of the Receivables (the **"Security"**);

PROVIDED THAT all amounts which constitute Recovered Funds shall be distributed in accordance with section 2.7; and

AND FURTHERMORE, NBFG also agrees to take all commercially reasonable measures to keep Sherritt fully informed, on a timely basis, on all material developments relating to the Receivables or the Security.

**2.2**      **Absolute Assignment**

Except as required by applicable law, the assignment and transfer of the interest effected pursuant to section 2.1 shall be made free of any lien, charge or other encumbrance, of any deduction or withholding and, to the extent that a consent or approval is required to be obtained by NBFG, then NBFG shall continue to hold the right to receive the Receivables and Security, as applicable, in trust for Sherritt pursuant to section 2.4, until such time as NBFG is able to, using commercially reasonable efforts, secure the requisite consent or approval for release thereof to Sherritt.  The Parties acknowledge and agree that, should any notice to or consent or approval of any third party be required to effect the assignment and transfer of the interest pursuant to section 2.1, neither NBFG nor any of its affiliates shall be under any legal obligation whatsoever to provide such notice to or to obtain such consent or approval of any such third party for so long as the ability of NBFG to recover the Funds is subject to receipt of the prior consent, license or other permission of OFAC or any other agency or representative of the government of the United States of America.  In addition, should any notice to or consent or approval of any third party be required to effect the assignment and transfer of the interest pursuant to section 2.1, neither Sherritt nor

any of its affiliates, may give such notice to or request such consent or approval of any such third party without the prior written consent and approval of NBFG, which consent and approval may be withheld in NBFG's absolute discretion for so long as the ability of NBFG to recover the Funds is subject to receipt of the prior consent, license or other permission of OFAC or any other agency or representative of the government of the United States of America.

**2.3** **Collection of Blocked Funds; Representations by the Parties**

2.3.1 The Parties acknowledge and agree that at all times NBFG or any of its affiliates, and not Sherritt or any of its affiliates, shall be the sole Party that will determine whether to apply to OFAC for a specific license authorizing the release of the Funds, the timing of such an application, and whether to take any subsequent action in response to OFAC's disposition of the application unless, under U.S. federal law, the law of the District of Columbia or under the applicable law of any other jurisdiction governing the Funds, Sherritt is then the sole party entitled to recover the Funds, or any part thereof and in which case, Sherritt or its affiliates shall be the Party that will determine whether to apply for or to bring an action for the release of the Funds, or part thereof, the timing of such an application, and whether to take any subsequent action.

2.3.2 If OFAC or other similar approval is required for the release of the Funds, Sherritt may, but only with the prior written consent and approval of NBFG, which consent and approval may be withheld in NBFG's absolute discretion, be entitled either directly or through its agents, to collect, demand, sue for, enforce, recover, receive and realise on the Sherritt Portion of the Receivables or the Security, or such portion thereof as this section permits, as Sherritt or its agents may consider expedient, and upon prior written notice, to give valid and binding receipts and discharges therefor and in respect thereof, to the extent permitted by law and without prejudice to any rights which NBFG has against other Persons.  For greater certainty, no such consent or approval of NBFG will be required if OFAC or other similar approval is no longer required for the release of the Funds, or in order for Sherritt to enforce its rights to recover the Sherritt Portion of any Receivables or Security actually recovered by or made in favour of NBFG which are not paid over or assigned to Sherritt as required by this Agreement.

2.3.3 NBFG or any of its affiliates may at any time in its sole discretion take any action it deems appropriate to collect, demand, sue for, enforce, recover, receive or realize on the Funds, including the Receivables or the Security, but shall not be obligated to take any such action for so long as the ability of NBFG to recover the Funds is subject to receipt of the prior consent, license or other permission of OFAC or any other agency or representative of the government of the

United States of America. NBFG undertakes to take all commercially reasonable steps to consult in good faith with Sherritt prior to taking any such action, but Sherritt's consent shall not be required for any such action by NBFG or its affiliates for so long as the ability of NBFG to recover the Funds is subject to receipt of the prior consent, license or other permission of OFAC or any other agency or representative of the government of the United States of America. For greater certainty, at such time as the ability of NBFG to recover the Funds is no longer subject to the receipt of the prior consent, license or other permission of OFAC or any other agency or representative of the government of the United States of America, NBFG shall consult with Sherritt on commercially reasonable steps to seek the prompt return of the Funds and Sherritt consent shall be required for any such action.

2.3.4   Each Party represents and warrants to the other and to its affiliates that all information heretofore or hereafter furnished by or on behalf of a Party or any of its affiliates to the other Party or any of its affiliates in connection with any action or application to recover the Funds (including without limitation in connection with any application submitted or which may be submitted by a Party or its affiliates to OFAC) is and will be true and correct and does not and will not omit any facts required to make such information not misleading.

**2.4**     **Moneys Held in Trust**

All moneys received by the Receiving Party from the collection of or in satisfaction of the Funds or any of them shall, to the extent of the Sherritt Portion or the NBFG Portion, as applicable, be received and held by the Receiving Party in trust, or as agent in the Province of Québec, for the Non-Receiving Party.

**2.5**     **Registration of a security interest**

In addition to those rights granted herein and any other rights Sherritt may have at law, in equity or otherwise, Sherritt shall have all rights and remedies of a secured party under the PPSA in the case where:

2.5.1   NBFG or one of its affiliates has recovered the Recovered Funds, or a part of them; and

2.5.2   the Sherritt Portion of the recovered Recovered Funds is not received in full by Sherritt in within ten (10) Business Days of receipt by NBFG.

For greater certainty, Sherritt agrees not to effect any filing under the PPSA or any other similar laws in respect of its rights in the Funds, the Receivables or the Security unless the circumstances provided for in this section 2.5 have occurred.

**2.6**        **Information and Notices**

The Parties shall each deliver to the other, as soon as practicable upon receipt or its becoming known to either of them, any notices or information (which shall be reduced to written form where received orally) relating to the status of the Funds. The Parties shall, in any event, consult in good faith on any change of circumstances, law or policy which may affect the ability of the Parties to recover the Funds.

**2.7**        **Distribution of the Recovered Funds**

2.7.1    Where the Funds are recovered, or any amount is received by either Party in respect of the Receivables or the Security (the "**Receiving Party**") in accordance with the terms of this Agreement (the "**Recovered Funds**"), such Recovered Funds shall be applied and distributed as follows:

(a)    firstly, to the payment of all Allowable Costs, if any, incurred by either Party or any of its affiliates; and

(b)    secondly, the balance shall be apportioned into the Sherritt Portion and the NBFG Portion and distributed to Sherritt and NBFG respectively.

2.7.2    The "Allowable Costs" shall be all out-of-pocket expenses, attorneys' and lawyers' fees and costs attributable solely to the recovery of the Funds, reasonably incurred by either Party or any of its affiliates in connection with such recovery or attempted recovery.

2.7.3    The Receiving Party receiving the Recovered Funds shall prepare and make available to the other Party (the "**Non-Receiving Party**") an account of the Allowable Costs and shall pay the NBFG Portion or the Sherritt Portion, as appropriate, of the Recovered Funds over to the Non-Receiving Party within ten (10) Business Days.

2.7.4    The Parties shall endeavour to settle any differences of opinion on the assessment of Allowable Costs by good faith discussions and mutual agreement.

2.7.5   The Parties acknowledge and agree that the Recovered Funds shall be applied and distributed net of any deduction or withholding for any and all taxes, if any, required to be effected by Deutsche Bank or any other Person.

**2.8**   **Funding Agreements Claims**

2.8.1   In consideration of the mutual covenants herein, the sufficiency of which is hereby acknowledged and accepted, NBFG hereby remises, releases and forever discharges Sherritt, its parent, subsidiaries and affiliates, and their respective directors, officers employees, agents and representatives, both current and former, of and from all actions, causes of action, suits, debts, dues, accounts, bonds, covenants, contracts, claims and demands whatsoever which NBFG ever had, now has or may hereafter have against such Person for or by reason of, or in any way arising out of or related to the Funding Agreement, the advance of monies under the Funding Agreement, or the blocking of the Funds, but excluding from this release the obligations set out in this Agreement.

2.8.2   In consideration of the mutual covenants herein, the sufficiency of which is hereby acknowledged and accepted, Sherritt hereby remises, releases and forever discharges NBFG, its parent, subsidiaries and affiliates, and their respective directors, officers employees, agents and representatives, both current and former, of and from all actions, causes of action, suits, debts, dues, accounts, bonds, covenants, contracts, claims and demands whatsoever which Sherritt ever had, now has or may hereafter have against such Person for or by reason of, or in any way arising out of or related to the Funding Agreement, the advance of monies under the Funding Agreement, or the blocking of the Funds, but excluding from this release the obligations set out in this Agreement.

2.8.3   For the said consideration, the Parties hereby acknowledge, declare and agree that they have reviewed this Agreement with their attorneys and lawyers, and that they understand the terms of this Agreement, and the release of liability set out herein, and voluntarily accept the consideration referred to above for the purpose of making full and final compromise, adjustment and settlement of all claims as aforesaid, and represent and warrant that they have not been induced to enter into this Agreement by reason of any representation or warranty of any nature or kind whatsoever and that there is no condition, express or implied, or collateral agreement affecting the said settlement.

2.8.4    The Parties undertake and agree not to take any steps or initiate any proceedings against any person, partnership, corporation, or other entity which might be entitled to claim contribution, indemnity, or other relief over against the other, under the provisions of any statute or otherwise, with respect to any of the matters which the Parties release by the releases set out in this section 2.8 or with respect to which the Parties agree herein not to make any claim or take any proceedings.

2.8.5    The Funding Agreement is hereby terminated, and each of the Parties releases the other from all obligations thereunder, and it is further understood and agreed that the said consideration, as set out in section 2.1 and in this section 2.8, is deemed to be no admission whatsoever of liability on the part of either of the Parties and that such liability is denied.

2.8.6    The releases set out in this section 2.8 shall be binding upon and shall enure to the benefit of the respective successors and assigns of all Parties.

2.8.7    It is further agreed that the Parties hereto shall not make any disclosure of the terms of this Agreement, which shall be treated as confidential, other than to their respective solicitors, auditors, tax or financial advisors, and as otherwise as required by law.  For greater certainty, either Party may disclose the terms of this Agreement to OFAC or Deutsche Bank, their respective successors and assigns or such other Person entitled to hold the Funds under applicable U.S. law in connection with any action that is otherwise permitted by the terms of this Agreement to collect, demand, sue for, recover, enforce, receive and realize on the Receivables or the Security.

## ARTICLE 3
## GENERAL

**3.1        Effecting settlement**

Each Party agrees to execute, deliver and do all such acts, deeds, documents, transfers, demands, assignments, agreements, assurances, consents, financing statements and things as each Party has herein agreed to execute, deliver and do, as the other Party may reasonably require from time to time, as may be required in order to give effect to this Agreement, as required by any U.S. legal or administrative process for the release of the Funds, or in order to perfect any security as required by Sherritt pursuant to section 2.5, in all cases taking all such steps as may be reasonably within its power to implement to their full extent the provisions of this Agreement.

- 11 -

**3.2**     **Communication**

Any notice or other communication, including a demand, required or permitted to be given hereunder by the Parties shall be in writing and shall be given by courier, facsimile or other means of electronic communication or by hand-delivery as hereinafter provided.  Any such notice or other communication, if sent by courier shall be deemed delivered at the time evidenced by the courier's records as being the time of delivery, if sent by facsimile or other means of electronic communication, shall be deemed to have been received on the Business Day following the sending, or if delivered by hand shall be deemed to have been received at the time it is delivered to the applicable address noted below either to the individual designated below or to a senior employee of the addressee at such address with responsibility for matters to which the information relates.  Notice of change of address shall also be governed by this section.  Notice and other communications shall be addressed as follows:

(a)     if to NBFG:

The Exchange Tower
130 King Street West
Suite 3200
Toronto, Ontario
M5X 1J9

Attention:          Executive Vice President,
                    Corporate Development and Governance
Telecopier number:  416-869-7477

(b)     if to Sherritt:

1133 Yonge Street
5th Floor
Toronto, Ont.
M4T 2Y7
Attention:          Senior Vice-President, General Counsel and Corporate Secretary
Telecopier number:  416 935 2284

Notwithstanding the foregoing, if the PPSA requires that a notice or other communication be given in a specified manner, then any such notice or communication shall be given in such manner

**3.3**  **Assignment**

Neither this Agreement nor any of the rights or obligations under this Agreement shall be assignable or transferable by either Party without the prior written consent of the other Party, acting reasonably.

**3.4**  **Entire Agreement**

This Agreement represents the entire agreement between the Parties respecting the matters set forth herein and expressly supersedes the Funding Agreement. There are no warranties, conditions, or representations (including any that may be implied by statute) and there are no agreements in connection with such subject matter except as specifically set forth or referred to in this Agreement.

**3.5**  **Counterparts**

This Agreement may be executed in two counterparts and each of those counterparts shall constitute an original document and those counterparts, taken together, shall constitute one and the same instrument.

**IN WITNESS WHEREOF** NBFG and Sherritt have executed this Agreement as of this 23rd day of November, 2006.

**National Bank Financial Group, by National Bank Financial Inc.**

by: _____
  Name:  Brian A. Davis
  Title:  Executive Vice-President - Corporate Development and Governance

**Sherritt International Corporation**

by: _____
  Name:  Jowdat Waheed
  Title:  President and Chief Executive Officer