UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---

ALDO VERA, JR., as Personal Representative
of the Estate of Aldo Vera, Sr.,

                    Plaintiff,

      v.

THE REPUBLIC OF CUBA,

                    Defendant,

      v.

SOCIÉTÉ GÉNÉRALE,

                    Garnishee.

**Case No. 12-cv-1596 (AKH)**

**Judge Hellerstein**

**ECF Case**

---

## OPPOSITION OF SOCIÉTÉ GÉNÉRALE
## TO MOTION FOR TURNOVER

MAYER BROWN LLP
Steven Wolowitz
Christopher J. Houpt
1675 Broadway
New York, New York 100019
(212) 506-2380

*Attorneys for Garnishee*
*Société Générale*

## PRELIMINARY STATEMENT

Defendant Société Générale ("SG") files this opposition to the Motion of Aldo Vera, Jr. ("Vera" and "Vera's Motion, " docket number 49) for turnover of certain accounts at SG's New York Branch (the "SG Blocked Accounts"). These accounts were blocked pursuant to sanctions regulations enforced by the Office of Foreign Assets Control ("OFAC") of the U.S. Department of the Treasury. SG takes no position concerning Vera's ultimate entitlement to the accounts, and, as a neutral stakeholder, SG does not claim those assets for itself. Nonetheless, SG respectfully submits that the Court should hold the motion in abeyance or deny it outright, for two reasons.

First, important questions regarding the ability of putative judgment creditors to levy upon blocked accounts under the Terrorism Risk Insurance Act ("TRIA")—the ostensible basis for Vera's Motion here—are now before the Second Circuit in two appeals that were heard in tandem last month: *Hausler v. JPMorgan Chase, N.A.* (2d Cir. Nos. 12-1264 & 12-1272), and *Calderon-Cardona v. JPMorgan Chase Bank, N.A.* (2d Cir. No. 12-75). As explained in the opposition of Intesa Sanpaolo S.p.A. to a similar motion (docket number 88, at pages 16-24), there is at least some doubt (i) that Vera is entitled to turnover of assets that his judgment debtor—The Republic of Cuba—does not own and (ii) that The Republic of Cuba does own any of the SG Blocked Accounts, let alone all of them. This is an issue on which courts in this District have divided, and which the Second Circuit is expected to resolve very soon. Given the uncertainty about Vera's entitlement to the SG Blocked Accounts and the likelihood that the Second Circuit will resolve that uncertainty shortly, a brief stay is warranted both so that any turnover order is free from legal doubt and safe from collateral attack and also because the

resolution of the appeals may considerably streamline this matter by reducing the number of accounts at issue.

Second, Vera's Motion should be denied as procedurally improper. Federal Rule 69 incorporates turnover remedies available under the CPLR. The CPLR, however, does not authorize the relief that Vera seeks, unless he commences a special proceeding by serving a summons on the garnishee and the judgment debtor. This is no trifle—a proceeding would require Vera to comply with the rules concerning joinder of necessary parties; moreover, in a special proceeding, the garnishee may serve a responsive pleading, including an interpleader, an essential right to protect garnishees against any risk of inconsistent judgments and double liability.

## ARGUMENT

### I. The Motion Should Be Stayed Pending the *Hausler* and *Calderon-Cardona* Appeals.

SG first requests that the Court stay Vera's Motion pending the outcome of two pending Second Circuit appeals that are likely to resolve a split among courts in this District and give unambiguous guidance concerning a prerequisite to Vera's (and any other judgment creditor's) claim to the SG Blocked Accounts. At a minimum, the Second Circuit decision may streamline this proceeding by reducing the number of assets and potential claimants.

Vera's Motion is brought under Section 201 of TRIA (Motion ¶ 1), which Vera contends entitles him to "satisfy a judgment obtained against a state sponsor of terrorism, such as Cuba, out of blocked assets of such terrorist state" (*id.* ¶ 3). Though Vera asserts that "Cuba has an interest in the" accounts (*id.* ¶ 20), he does not describe that interest or explain what type of interest is necessary under TRIA.

Courts in this District have divided on this latter point—specifically, whether TRIA permits judgment creditors to seize *any* asset that is blocked under OFAC regulations,[1] or whether, like any other turnover statute, it applies only to assets that belong to the judgment debtor.[2] Two decisions that reached divergent results—*Hausler* and *Calderon-Cardona*—are now on appeal. Those appeals were argued in tandem on February 11, 2013. *See* 2d Cir. No. 12-1945, docket entry 87. According to the judgment creditors' brief in *Hausler*, that appeal presents the question "did the district court properly order the turnover of the blocked assets where those assets constitute blocked property of Cuba . . . by finding that to the extent New York property law conflicts with TRIA, it is preempted?" *Id.*, docket entry 66, at 1. The banks' brief in that case identifies a similar, if not identical, question: "Does TRIA § 201 permit execution against 'blocked assets' not owned by the judgment debtor?" *Id.*, docket entry 65, at 5. Particularly because Vera does not even argue that the SG Blocked Accounts are owned by The Republic of Cuba under New York property law, these questions are highly relevant, and perhaps dispositive, here. Though SG has not in the past, and does not now, take a position on the merits of these issues, before the Court can order turnover, it must satisfy itself that turnover is proper and make appropriate findings of fact and conclusions of law.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). Courts in this District typically consider five factors in deciding whether to grant a stay: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced

---

[1]      *See, e.g.*, *Hausler v. JPMorgan Chase Bank, N.A.*, 845 F. Supp. 2d 553, 571-73 (S.D.N.Y. 2012); *Levin v. Bank of New York*, 09-cv-5900(RPP), 2011 WL 812032, at *16 (S.D.N.Y. March 4, 2011).

[2]      *See, e.g.*, *Calderon-Cardona v. JPMorgan Chase Bank, N.A.*, 867 F. Supp. 2d 389, 399-400 (S.D.N.Y. 2011); *see also Heiser v. Islamic Republic of Iran*, 885 F.Supp.2d 429, 437-38 (D.D.C. 2012).

against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Wing Shing Prods. (BVI) Ltd. v. Simatelex Manufactory Co.,* No. 01–1044(RJH)(HBP), 2005 WL 912184, at *1 (S.D.N.Y. Apr. 19, 2005) (citing *Kappel v. Comfort,* 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996)).

Here, those factors fully support a stay. By permitting conclusive resolution of a central legal issue in the case, a stay would avoid burdening the court, the plaintiff, and any other competing claimants (who are currently "persons not parties to the civil litigation," but who may be joined in the future) with litigation over those issues. Depending on how the appeals turn out, the plaintiff may choose to withdraw the Motion as to some or all accounts or, alternatively, potential competing claimants may choose not to appear and dispute turnover. Moreover, as noted in point II below, the case cannot proceed in its current posture anyway, because an application styled as a "Motion for Turnover" is inconsistent with the Federal Rules. Vera needs to cure this error, which he can do while the Second Circuit considers the appeals.

There is ample precedent for a stay in just these circumstances. "[A] court may . . . properly exercise its staying power when a higher court is close to settling an important issue of law bearing on the action." *Sikhs for Justice v. Nath*, 10-cv-2940(RWS), 2012 WL 4328329, at *22 (S.D.N.Y. Sept. 21, 2012); *see also LaSala v. Needham & Co.*, 399 F. Supp. 2d 421, 429 n.39 (S.D.N.Y. 2005) ("Other situations favoring a stay include those where a higher court is close to settling an issue of law bearing on the action"). In fact, Magistrate Judge Dolinger stayed another TRIA turnover proceeding almost a year ago in anticipation of the same *Hausler* and *Calderon-Cardona* appeals, which then had been filed only two months before. *See Estate of Heiser v. Deutsche Bank Trust Co. of the Ams.*, 11-cv-1608(AJN), 2012 WL 2865485, at *12 (S.D.N.Y.

July 10, 2012) (Dolinger, M.J.) ("In recognition of the fact that the Second Circuit will likely be ruling on legal issues potentially dispositive in this case, it is in the best interest of this court to await the decision in the consolidated *Calderon-Cardona* and *Hausler* appeals."), *aff'd*, 2012 WL 5039065 (S.D.N.Y. Oct. 17, 2012).

There is one more reason that a stay would be enormously helpful. As alluded to above, there are other potential claimants to the SG Blocked Accounts. One is another group of judgment creditors that has served a restraining notice on SG, covering the same accounts. The other category consists of account holders or parties to wire transfers who may contend that they have a property interest in the blocked funds superior to that of The Republic of Cuba. Those claimants should be joined to this case; if necessary, SG intends to file an interpleader to give those parties notice and an opportunity to be heard and avoid the risk of inconsistent judgments. Interpleader has been recognized as an appropriate procedure in similar cases, including, among many others, *Rux v. ABN-Amro Bank, N.V.* (08-cv-6588(AKH)) and *Levin v. Bank of New York* (09-cv-5900(RPP)). Because many of the parties to the blocked accounts are overseas, service of process in these cases tends to be expensive and time-consuming; in addition, some parties may need to be served under the Foreign Sovereign Immunities Act. If the result of the appeals at least reduces the number of accounts at issue on the Motion, there could be considerable savings in time and money to all of the parties.

Accordingly, SG respectfully requests that the Court stay a decision Vera's Motion until after the Second Circuit issues its rulings in *Hausler* and *Calderon-Cardona*.

## II. The "Motion for Turnover" Does Not Comply With Fed. R. Civ. P. Rule 69.

Regardless of whether the Court grants a stay, it should deny Vera's Motion in its current form for failure to comply with Fed. R. Civ. P. Rule 69 and the CPLR. Federal Rule of Civil

5

Procedure 69 states that "[t]he procedure on execution [of a judgment] *must accord with the procedure* of the state where the court is located." (Emphasis added.)

The state procedure on which Vera's Motion purports to rely is CPLR 5225(b).[3] Section 5225(b) (like CPLR 5227) states that a judgment creditor may seek execution "[u]pon a special proceeding commenced by the judgment creditor." *See also* David D. Siegel, *New York Practice* § 510 (5th ed. 2011) ("the procedure for seeking the delivery from the judgment debtor is a mere motion, while the procedure for seeking it from a third person is a special proceeding"). A special proceeding is commenced by service of a notice of petition (CPLR 402, 403(a)), which serves the function of "a summons in an action" (CPLR 403(c)). Without service of a summons, the Court lacks jurisdiction over SG. *See* FRCP 4(k)(1) ("*Serving a summons* . . . establishes personal jurisdiction over a defendant") (emphasis added). Notably, while the Motion alleges that SG has a branch office in New York (¶ 9), it does not actually state that SG is subject to the Court's jurisdiction, which it is not because no summons has been served. The New York Court of Appeals has explained that that is precisely why garnishment against a third-party requires a special proceeding rather than a mere motion. *See Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 537 (2009) ("The reason for [the requirement of a special proceeding] is that the garnishee, not being a party to the main action, has to be independently subjected to the court's jurisdiction.").

---

[3]    SG notes that Vera's Motion is also flawed because CPLR 5225(b) does not apply to the SG Blocked Accounts. Section 5225(b) governs turnover of "money or other personal property" in which the judgment debtor has an interest. Because bank accounts are debts owed to the judgment debtor by the bank, not personal property of the judgment debtor (*see, e.g.*, *Middle East Banking Co. v. State St. Bank Int'l*, 821 F.2d 897, 901 (2d Cir. 1987)), Vera's Motion should proceed under CPLR 5227, which governs the turnover of a "debt owed" to the judgment debtor. While that distinction is not determinative for the particular accounts identified in the Motion, it can be important because CPLR 5225(b) and 5227 define the proper garnishee differently. SG may oppose on this basis any future application for turnover of accounts based on CPLR 5225(b).

Significantly, under CPLR 5225(b) (as under CPLR 5227), not only may the judgment debtor intervene, but "[t]he court may permit any adverse claimant to intervene in the proceeding and may determine his rights in accordance with section 5239." Making SG a party to the case, rather than simply the recipient of a motion, would also allow SG to file an interpleader cross-claim or counter-claim. Rule 22 permits interpleader, but only "[b]y a Plaintiff" (FRCP 22(a)) or "[b]y a Defendant" (FRCP 22(b)). SG is currently a "Garnishee," a status that does not appear in the Federal Rules. The federal and state rules not only are perfectly clear, but they serve an important function. These requirements have not been an impediment to turnover in other cases, and the Court should require Vera to adhere to them.

### III. SG Has Not Violated TRIA or the CPLR.

Finally, SG is compelled to refute two allegations that it has somehow violated the law by not immediately turning over the SG Blocked Accounts. Paragraph 26 asserts that SG's "refusal to turnover of the Accounts violates TRIA." That is incorrect. TRIA says only that blocked assets are "subject to execution" (28 U.S.C. § 1610 note), not that a garnishee is obligated to turn them over immediately and without regard to the relevant Federal Rules of Civil Procedure. As just observed, the Federal Rules incorporate the relevant parts of the CPLR. The CPLR, in turn, does not mandate turnover upon service of a writ of execution; rather, it requires the judgment creditor to commence a special proceeding.

The contention in paragraph 27 that the "[f]ailure to release the Accounts in satisfaction of the writ of execution is in contravention of CPLR § 5225(b)" is wrong for the same reason (among others, *see* n.3 *supra*). CPLR 5225(b) applies only "[u]pon a special proceeding commenced by the judgment debtor"—which has not happened—and provides only that "*the court* shall require such [garnishee] to pay the money" (emphasis added), not that the garnishee must turn the money over on its own initiative.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Société Générale respectfully requests that the Court deny Vera's Motion.

Dated:   New York, New York
         March 25, 2013

                                        s/Christopher J. Houpt
                                        MAYER BROWN LLP
                                        Steven Wolowitz
                                        Christopher J. Houpt
                                        1675 Broadway
                                        New York, New York  10019
                                        (212) 506-2380

                                        *Attorneys for Garnishee*
                                        *Société Générale*