UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALDO VERA, JR., as Personal Representative of the Estate of Aldo Vera, Sr., <br><br>                    Plaintiff, <br><br> v. <br><br> THE REPUBLIC OF CUBA <br><br>                    Defendant, <br><br> v. <br><br> INTESA SANPAOLO S.p.A., <br><br>                    Garnishee. | 12 Civ. 1596 (AKH) <br><br> MEMORANDUM IN OPPOSITION TO CROSS MOTION TO STAY; AND IN SUPPORT OF MOTION FOR TURNOVER PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE RULE 69 AND CPLR § 5225(b) |

Plaintiff Aldo Vera, Jr. (the "Movant"), by his undersigned attorneys, submits this Memorandum of Law in opposition to the Cross Motion to Stay (ECF # 87) and Opposition Memorandum submitted by Garnishee Intesa Sanpaolo S.p.A. (ECF # 88).

I.   INTRODUCTION

Movant's Turnover Motion seeks to recover Cuban monies held in traditional, albeit blocked, accounts by Garnishee Intesa Sanpaolo S.p.A., an Italian bank with a branch office in New York City. Based on the information submitted by Garnishee in its Opposition, Movant limits its requested relief to $191,467.35 held in seven (7) accounts. *See* Declaration of Robert A. Swift (filed under seal). Movant's underlying judgment against Cuba is based on the assassination of an American national on American soil by a state sponsor of terrorism. The judgment was obtained pursuant to 28 U.S.C. § 1605(a)(7), which has been superseded by 28 U.S.C. 1605A. In both section 201(a) of the Terrorism Risk Insurance Act of 2002 and section

104134

1610(f)(1)(A) of the Foreign Sovereign Immunities Act, Congress specifically authorized a plaintiff to execute on the blocked assets of that terrorist state, including its agencies and instrumentalities. Section 1610(f)(1)(A) provides:

> Notwithstanding any other provision of law, including but not limited to section 208(f) of the Foreign Missions Act (22 U.S.C. 4308(f)), and except as provided in subparagraph (B), any property with respect to which financial transactions are prohibited or regulated pursuant to section 5(b) of the Trading with the Enemy Act (50 U.S.C. App. 5(b)), section 620(a) of the Foreign Assistance Act of 1961 (22 U.S.C. 2370(a)), sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. 1701-1702), or any other proclamation, order, regulation, or license issued pursuant thereto, shall be subject to execution or attachment in aid of execution of any judgment relating to a claim for which a foreign state (including any agency or instrumentality or such state) claiming such property is not immune under section 1605(a)(7) (as in effect before the enactment of section 1605A) or section 1605A.
> Section 1610(f)(2)(A) provides that:
>
> the Secretary of the Treasury and the Secretary of State should make every effort to fully, promptly, and effectively assist any judgment creditor or any court that has issued any such judgment in identifying, locating, and executing against the property of that foreign state or any agency or instrumentality of such state.

Against this background of seminal federal policy, the Italian bank, in its 243 page Opposition, raises a host of procedural and substantive defenses as to why the Motion should be stayed or dismissed. The bank's central argument is that the funds at issue are uncompleted wire transfers where it is a mere intermediary bank holding the funds. But implicit in this argument is that it has no standing to oppose turnover of the funds. For the same reason, Movant submits that Garnishee lacks a basis to seek a stay of proceedings because it is not prejudiced by turnover of the funds.

It is admitted by the Garnishee that it created interest bearing accounts with the funds which arrived by wire transfer and designated the beneficiary on the accounts as Cuban entities. As to the seven (7) accounts, Garnishee does not dispute that the named beneficiaries and intended recipients on the accounts are instrumentalities of the Republic of Cuba. However, the

information furnished in Exhibit DD to the Paino Declaration (ECF #89-5) as to specific accounts varies from the information furnished in response to the information subpoena, *see* Kerr Declaration Exhibits D and E (ECF #89-8 and 9), and is incomplete or wrong as to certain accounts. *See* Swift Declaration.

## II. ARGUMENT

### A. Under Federal Procedure There Is No Need for the Commencement of a "Special Proceeding" to Seek Turnover of Property Under CPLR 5225(b)

Garnishee contends that Movant's Motion for Turnover should be denied for failure to commence a special proceeding. Opp. Br. at 12. Garnishee is incorrect.

Were this case brought in the New York state courts, a turnover proceeding against a garnishee would have to be commenced as a special proceeding against the garnishee. *Koehler v. Bank of Bermuda Ltd.I*, 12 N.Y.3d 533, 537 (2009). However, as there is no equivalent "special proceeding" under the Federal Rules of Civil Procedure, a turnover proceeding in the present case may be brought as a motion within the underlying proceeding against garnishees. *See Saregama India, Ltd. v. Mosley*, 2012 WL 955520, at *1 (SDNY 2012) (J. Kaplan) ("special proceedings in the sense used in the CPLR are unknown in federal courts"), relying on *Trust v. Kummerfeld*, 153 Fed. Appx. 761 (2d Cir. 2005).[1] While, as Garnishee notes at page 15 of its Opposition Brief, a judgment creditor seeking turnover of terrorist state assets in New York banks may elect to commence an action naming the garnishee bank as defendant, if the judgment creditor elects to proceed by way of motion "the Court may simply deem the motion a special

---

[1] The turnover motion in *Saregama India Ltd.* was dismissed for lack of service on the garnishees which met the criteria of FRCP Rule 4 and the NY CPLR.

104134                                    3

proceeding, *if it has jurisdiction over the parties.*" *Wasserman Group Media, LLC v. Bender*, 2012 WL 1506181 at *1 (SDNY 2012) (emphasis in original).[2]

The underlying litigation was commenced by Movant against the Republic of Cuba to obtain a judgment in the Southern District of New York based upon a default judgment rendered previously in Florida. Cuba defaulted in the Southern District action, and judgment was entered August 20, 2012. *See* Motion for Turnover Order, Exhibit 1 (ECF #36-1). The subject matter jurisdiction of a federal court is not exhausted until an ultimate judgment is satisfied. *Riggs v. Johnson County*, 73 U.S. 166, 1867 WL 11194 at16 (1867); *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 208 (2d Cir 2012). Movant, as judgment creditor then caused an writ of execution to be issued against Intesa Sanpaolo S.p.A. as a Garnishee. This "Process" was served by the United States Marshal on January 4, 2013. The return of service, attached to the Motion for Turnover Order as Exhibit 2 (ECF #36-2), establishes that the writ was personally served on John Paino, Assistant Vice President of Garnishee. Such service establishes personal jurisdiction over Garnishee pursuant to NY CPLR 311(a)(1), which provides for service on a corporation by delivery to "an officer, director, managing or general agent, or cashier or assistant cashier…" *See Riggs v. Johnson County, supra*. A Vice President is an officer, and Garnishee, in its opposition to the Motion, nowhere disputes this linguistic fact.

Thus, under *Saregama, supra* at *3, Movant has obtained jurisdiction over Garnishee. In fact, counsel for Garnishee signed a Protective Order in this action January 14, 2013 (ECF #24); the instant Motion was served on Garnishee by mail to the very attorney who signed the

---

[2] The *Wasserman* opinion is by Judge Scheindlin, who is also the author of the opinion in *Gucci America, Inc. v. Bagsmerchant, LLC*, 2012 WL 4468192 (S.D.N.Y. Sept. 27, 2012), which is relied on by Garnishee as holding that a turnover proceeding must be commenced as a special proceeding. The *Gucci* opinion simply sets forth the New York state procedure but, since the judgment creditor did not claim to have made jurisdictional service, the motion was denied.

Protective Order on February 20, 2013 (ECF #54); and that attorney executed and filed a general notice of appearance – not a limited appearance -- for Garnishee on March 11, 2013 (ECF #84).

Garnishee's argument that it loses the procedural rights a defendant possesses in a new action lacks merit. The instant Motion contains more than 20 numbered paragraphs outlining the turnover claim to which Garnishee could respond. Garnishee could join other persons with an interest in the outcome or it could defensively interplead the funds at issue. Garnishee's filing of a Cross Motion to Stay is indicative that it possesses the procedural ability to assert whatever defenses it chooses – provided it has standing to raise the defenses.

Accordingly, Garnishee's opposition to the Motion as procedurally defective is without merit.

### B. Garnishee Lacks Standing to Object to Turnover

Garnishee describes itself as merely an intermediary bank holding the funds in accordance with the federal blocking regulations. Opp. Br. at 5-8. It does not claim ownership. Rather, it argues that it does not want the "wrong" party to receive the money. As such, it lacks a pecuniary interest and is a gadfly in the discourse since it has no standing to object substantively to turnover of the funds. Its remedy is to do nothing or interplead the funds.

A garnishee, like a plaintiff, must demonstrate that it has standing to raise specific claims or defenses. *See e.g. Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 796 n. 13 (3rd Cir. 1992). A garnishee has standing to defend itself, but the defense raised must still relate to the facts of the case and the injury allegedly sustained by the garnishee. The United States Supreme Court has held the criteria for standing to be 1) that the party has suffered "an injury in fact" that is "concrete and particularized" as well as "actual or imminent," (2) that there is "a causal connection between the injury and the conduct complained of," and (3) "that the injury will

[likely] be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted). A party may assert a third party's rights only if, in addition to meeting other prerequisites, the third party is unable to assert its own rights. *Singleton v. Wulff*, 428 U.S. 106, 115-16 (1976). In this case, Garnishee cannot sustain its burden as to any of the three *Lujan* criteria.

Garnishee does not claim ownership of the accounts at issue, and it will suffer no financial injury from turnover of the accounts to Movant. Garnishee does not assert any injury-in-fact in its declarations and briefs. The most it asserts is a generalized statement that "[a] intermediary bank owes a debt only to the originating bank, the only party with which it is in privity." Br. at 8 (ECF #88). However, the Court of Appeals has held that private intermediary banks cannot be subject to a damage action because of government regulations ordering the seizures of electronic wire transfers. *Organizacion JD Ltda. v. U.S. Dept. of Justice*, 18 F.3d 91 (2d Cir. 1994). The one year period when the originator or originating bank of a wire transfer may object to a transferee bank has long expired for the wire transfers at issue. *See* Art. 4A-505 U.C.C. In addition, the Cuban Liberty and Democratic Solidarity Act of 1996, 22 U.S.C. 6032(h), expressly extinguished any right or interest to assert a claim as a result of a blocked Cuban transaction: a transfer "shall not be the basis for the assertion or recognition of any interest in or right, remedy, power or privilege with respect to such property." Accordingly, any "debt" to the originating bank has been dissolved and Garnishee cannot be injured by turnover of the accounts to Movant.

### C. A Stay of Proceedings Should Be Denied

Garnishee's principal contention in seeking a stay is that the Court of Appeals is poised to render a decision on the question of whether the holder of a judgment for terrorism against a

state sponsor of terrorism may levy on an EFT. The pending appeals have no impact on this case if Movant is correct that Garnishee has no standing to object to the turnover on the merits. Moreover, the instant Turnover Motion also involves the question of whether a judgment creditor may levy against long-standing, interest bearing accounts held by Garnishee for which Cuban instrumentalities are the intended beneficiaries. *See* Point E below. In that regard, this is an ordinary execution against a bank garnishee. It is ripe for decision by this Court.

Garnishee correctly identified the five (5) factors a court considers in granting or denying a stay. Opp. Br. at 11 (ECF #88). However, the weight accorded to each will vary with the circumstances. Movant believes that two factors, prejudice to garnishee and public interest, tip the balance in favor of denying a stay. Since Garnishee will suffer no injury from turnover of the accounts to Movant, there can be no prejudice to Garnishee from proceeding to decision now. The public interest consideration supports Movant since Congress has spoken emphatically in TRIA and the FSIA that judgments against state sponsors of terrorism should be enforced, and directed the State and Treasury Departments to assist Movant in recovery.

### D. Garnishee Created Interest Bearing Accounts for the Funds at Issue in the Name of the Beneficiaries[3]

It is not surprising that the funds at issue arrived at the Garnishee bank via electronic transfer since that is a common mode for international transmission of payment in commercial transactions. However, once the Garnishee blocked further transfer to comply with OFAC regulations, it created and opened "accounts" for the funds with specific identifying numbers and designated beneficiaries. *See* ECF #89-8. By creating the accounts, the funds were rendered subject to execution under the FSIA as "accounts," not EFT's. *Americas Bulk Transport Ltd. v.*

---

[3] Even though Garnishee has no standing to raise merits defenses, Movant nonetheless responds to the merits defenses raised.

104134   7

*IMT*, 2010 WL 1047674 (SDNY 2010) (J. Hellerstein). As this Court stated "[t]he cases at bar involve actual funds, held in suspense accounts, not EFTs. The funds may have originated as EFTs, but they no longer are EFTs." At *7 The originator or originating bank of each EFT had one year under New York state law to request rescission of the EFT and return of the funds. U.C.C. Article 4A-505 (statute of repose). The originator could also seek a license for the return of the funds from OFAC. *See* 31 C.F.R. §§ 515.201(e) and 501.806. Apparently that was not done for any of the seven (7) accounts for which turnover is now sought.

While the individual funds at issue traveled to Garnishee electronically, they now have an independent existence as "accounts" at Garnishee which bear interest. In other words, they are normal accounts like other maintained at Garnishee's branch office. New York law, CPLR 5225(b), authorizes a judgment creditor to execute on this type of property. The depiction of the funds in the two diagrams attached to the Kerr Declaration (ECF #89-6 and -7) is misleading because they only show the generic movement of the funds, not the status of the funds as long-term, interest bearing "accounts" at Garnishee with account numbers and beneficiaries.

### E. Movant May Execute on Accounts for Which Cuban Instrumentalities Are Intended Beneficiaries

Section 1610(f)(1)(A) permits Movant to execute on "*any property* [of a terrorist party] with respect to which financial transactions are prohibited or regulated" by the blocking statutes. Section 201(a) of TRIA permits Movant to execute on "the blocked assets *of* any agency or instrumentality of that terrorist party." The preposition "of" connotes ownership. But it is not, and cannot be, limited to "titled" ownership. *See Hausler v. JP Morgan Chase Bank*, 740 F.Supp.2d 525, 531-32 (SDNY 2010) (J. Marrero) It is sufficient if the agencies or instrumentalities are intended beneficiaries of the blocked assets, which in this case are long-term, interest bearing accounts for designated beneficiaries. This construction is fully consistent

104134                                                        8

with the statutes and regulatory scheme that permit execution only on a subset of assets which are blocked by the Cuban blocking regulations.

### 1. Federal Law Preempts State Law

Sections 1610(f) and (g)[4] of the FSIA together with Section 201(a) TRIA entail uniquely federal interests which preempt state law. Article 1, § 8 of the U.S. Constitution entrusts the federal government with the conduct of foreign affairs. *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 427, n. 25 (1964). Litigation against, and execution upon, a foreign sovereign is governed exclusively by federal law. The FSIA is the principal statute which regulates lawsuits and execution against foreign nations. This is especially true with regard to a foreign country which has been designated a state sponsor of terrorism.[5] The federal government's constitutional authority as well as legislation demonstrates that federal law occupies the entire field to the exclusion of state law. *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 373-74 (2000) (federal law re Burma preempts state legislation); *Hausler* 740 F.Supp.2d at 531-32 (the plain language of TRIA and the Cuban Control Regulations indicate preemption); *Estate of Heiser v. Islamic Republic of Iran*, 885 F.Supp.2d 429, 445 (D.D.C., 2012) ("Reading TRIA § 201 and

---

[4]Garnishee contends that 1610(g) is inapplicable to judgments entered pursuant to §1605(a)(7). The issue is moot as regards this Motion since Garnishee does not contest that the beneficiaries of the accounts are instrumentalities of Cuba. Movant doesn't abandon his position that, after § 1605(a)(7) was replaced by § 1605A, the provisions of § 1610(g) apply to determine whether specific entities are owned or controlled by the Cuban government for judgments rendered pursuant to § 1605(a)(7). Cf. *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 48 n. 4 (2d Cir. 2010).

[5]*Heiser, supra.* at 444 ("Designating a country as a state-sponsor of terrorism is a drastic decision that the Executive Branch does not make on a whim; serious political and economic consequences result from this designation. One such consequence is that the "property of" a designated state-sponsor of terror loses its sovereign immunity and may become subject to attachment and execution. FSIA § 1610(g)(1). The idea that state property law definitions of ownership should control the disposition of these assets flies in the face of the dominant federal interest in our relations with terrorist states.")

FSIA § 1610(g) in conjunction with the entire FSIA and the 2008 NDAA amendments shows that Congress intended to create a 'harmonious whole' and intended that the federal government occupy this field."). It follows that federal law, not state law, is determinative of which assets Movant may execute upon to satisfy his judgment. *Hausler* at 532.

### 2. Cuban Instrumentalities Are the Intended Beneficiaries

Movant contends that the funds at issue, either as accounts subsisting at the Garnishee bank or in their travel mode as EFT's, are subject to execution under TRIA and the FSIA. The question is whether Cuba has an interest in the accounts or EFT's. As Judge Marrero stated:

> ... blocked assets under TRIA are broadly defined as any asset seized or frozen by the United States under the CARCs, and the CACRs block *any* transactions involving property in which Cuba has *any* interest of any nature whatsoever, direct or indirect. See 31 C.F.R. § 515.201.

(emphasis in the original) *Id.* at 533. Judge Marrero concluded that TRIA permits execution on any assets in which Cuba has an interest. Movant agrees.

Movant contends that Cuban instrumentalities are intended beneficiaries of the accounts and EFT's. Under federal common law, which is applicable here, a:

> court looks to "general principles for interpreting contracts." Klamath Water Users Prot. Assoc. v. Patterson, 204 F.3d 1206, 1210 (9th Cir.1999). One such general principle is that only a party to a contract or an intended third-party beneficiary may sue to enforce the terms of a contract or obtain an appropriate remedy for breach. See Far West Fed. Bank, S.B. v. Office of Thrift Supervision-Dir., 119 F.3d 1358, 1363 (9th Cir.1997).

*GECCMC 2005 v. JP Morgan Chase Bank, N.A.*, 671 F.3d 1027, 1033 (9th Cir. 2012). Section 302 of the Restatement (Second) of Contracts (1981) provides:

> Unless otherwise agreed between promisor and promise, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and
> (a) performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary.

*See also Levin v. Tiber Holding Corp.*, 277 F.3d 243, 248 (2d Cir. 2002) (applying New York law). As the Garnishee bank recognizes, the funds were intended as payment for goods or services rendered by a Cuban entities. The agreements between the originators and their banks were to transmit payment to the Cuban entities for those goods and services. Here, Cuban instrumentalities are the named and designated "beneficiaries" on both the accounts and EFT's. Therefore the Cuban instrumentalities are intended beneficiaries of the funds. Section 304 of the Restatement (Second) of Contracts provides that intended beneficiaries may enforce a duty to perform. Therefore, the Cuban instrumentalities have enforceable property interests in the accounts and EFT's,[6] and a judgment creditor of Cuba may levy on both.

In its Opposition Memorandum, Garnishee contends that New York law applies, and Article 4A of the Uniform Commercial Code does not recognize a beneficiary's property interest in EFT's. This argument ignores federal field preemption and focuses solely on the transmission of the funds, not the funds' status as long-standing and interest bearing accounts at the bank with designated beneficiaries. Garnishee touts the originating bank having sole right to seek the funds, but fails to mention that section 505 of Article 4A of the U.C.C. has a one-year statute for an originator to make a claim. Likewise, an originating party of an EFT could seek a license from OFAC for return of the funds. Apparently this has not been done for the funds now at issue.

Garnishee relies upon the Supreme Court decision in *Board of Trustees v. Roche Molecular Sys., Inc.*, 131 S.Ct. 2188 (2011) for the general proposition that "of" means "ownership." But *Roche* involved an interpretation of the phrase "invention of the contractor" in

---

[6]The Court in *Heiser, supra*, 885 F.Supp. 2d at 447-48, reached a different conclusion solely as to EFT's, not bank accounts, on the basis that the Cuban instrumentality did not yet have "title" to the EFT from the intermediary bank.

the context of an extensive statutory patent regime and "two centuries" of patent law construction. Nor does the Second Circuit decision in *Shipping Corp. of India, Ltd. v. Jaldhi Overseas PTE Ltd.*, 585 F.3d 58 (2009) support Garnishee's position. There the Court of Appeals simply ruled in a commercial case that "New York State does not permit attachment of EFTs that are in the possession of an intermediary bank," citing Article 4A of the UCC "because there is no governing federal law." *Id.* at 70-71. Because federal law preempts the field in the execution of judgments against foreign sovereigns and their instrumentalities, the controlling law here is federal common law, not state law. Furthermore, the Court of Appeals did not rule that an account created by an intermediary bank for the intended beneficiary could not be levied upon.

Finally, Garnishee places heavy emphasis upon the decision of Chief Judge Preska in *Calderon-Cardona v. JP Morgan Chase N.A.*, 867 F.Supp.2d 389 (SDNY 2011). There the Court discounted federal field preemption concluding "[t]here is thus ample room for state law to supplement this federal regime" and applying Article 4A of New York's UCC. *Id.* at 400. The Court opined that, even if it were wrong on TRIA's preemption of state law, TRIA limited recovery to property directly owned by the foreign sovereign. *Id.* at 405. The Court limited its opinion to EFT's and failed to discuss application of federal common law or the rights of intended beneficiaries to enforce payment of bank accounts created for them. Movant believes that Judge Marrero's decision in *Hausler*, which held that TRIA applied to a foreign sovereign's "property interests," – not just its titled property -- is better reasoned and consistent with federal law.

III. CONCLUSION

For all the foregoing reasons, Movant requests that this Court (1) deny the Cross Motion to Stay, (2) grant Movant's Turnover Motion, and (3) order Garnishee to turn over to Movant, pursuant to §201(a) of TRIA, the seven (7) accounts totaling $191,467.35, together with accrued interest, for which Cuban government instrumentalities are the designated and intended beneficiaries.

Dated: New York, New York
       March 28, 2013

Respectfully submitted,

KOHN, SWIFT & GRAF, P.C.

_____
Robert A. Swift
Admitted *Pro Hac Vice*
One South Broad Street, Suite 2100
Philadelphia, Pennsylvania 19107
Phone: 215-238-1700
Fax:   215-238-1968


Jeffrey E. Glen
Kerry Sheehan
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, New York 10020
Phone: 212-278-1000
Fax:   212-278-1733

*Attorneys for Plaintiff Aldo Vera, Jr.*