UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALDO VERA, JR., as Personal Representative of the Estate of Aldo Vera, Sr., <br><br> Plaintiff, <br><br> v. <br><br> THE REPUBLIC OF CUBA <br><br> Defendant, <br><br> v. <br><br> DEUTSCHE BANK TRUST COMPANY AMERICAS, <br><br> Garnishee. | 12 Civ. 1596 (AKH) <br><br> MEMORANDUM IN OPPOSITION TO CROSS MOTION TO STAY; AND IN SUPPORT OF MOTION FOR TURNOVER ORDER PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE RULE 69 AND CPLR § 5225(b) |

Plaintiff Aldo Vera, Jr. (the "Movant"), by his undersigned attorneys, submits this Memorandum of Law in opposition to the Cross Motion to Stay (ECF #119) and Opposition Memorandum submitted by Garnishee Deutsche Bank Trust Company Americas. (ECF # 120)

I. INTRODUCTION

Movant's Turnover Motion seeks to recover Cuban monies held in traditional, albeit blocked, accounts by Garnishee Deutsche Bank Trust Company Americas ("DBTCA"), a New York chartered bank with an office in New York City. Movant's underlying judgment against Cuba is based on the assassination of an American national on American soil by a state sponsor of terrorism. The judgment was obtained pursuant to 28 U.S.C. § 1605(a)(7), which has been superseded by 28 U.S.C. 1605A. In both section 201(a) of the Terrorism Risk Insurance Act of 2002 and section 1610(f)(1)(A) of the Foreign Sovereign Immunities Act, Congress specifically

104937

authorized a plaintiff to execute on the blocked assets of that terrorist state, including its agencies and instrumentalities. Section 1610(f)(1)(A) provides:

> Notwithstanding any other provision of law, including but not limited to section 208(f) of the Foreign Missions Act (22 U.S.C. 4308(f)), and except as provided in subparagraph (B), any property with respect to which financial transactions are prohibited or regulated pursuant to section 5(b) of the Trading with the Enemy Act (50 U.S.C. App. 5(b)), section 620(a) of the Foreign Assistance Act of 1961 (22 U.S.C. 2370(a)), sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. 1701-1702), or any other proclamation, order, regulation, or license issued pursuant thereto, shall be subject to execution or attachment in aid of execution of any judgment relating to a claim for which a foreign state (including any agency or instrumentality or such state) claiming such property is not immune under section 1605(a)(7) (as in effect before the enactment of section 1605A) or section 1605A.

Section 1610(f)(2)(A) provides that:

> the Secretary of the Treasury and the Secretary of State should make every effort to fully, promptly, and effectively assist any judgment creditor or any court that has issued any such judgment in identifying, locating, and executing against the property of that foreign state or any agency or instrumentality of such state.

DBTCA states in its Brief that it "is a neutral stakeholder with no claim to the wires." (ECF # 120 at 5) Yet it raises a host of procedural and substantive defenses as to why the Motion should be stayed or dismissed. The bank's central argument is that the funds at issue are uncompleted wire transfers where it is a mere intermediary bank holding the funds. But implicit in this argument is that it has no standing to oppose turnover of the funds. For the same reason, Movant submits that Garnishee lacks a basis to seek a stay of proceedings because it is not prejudiced by turnover of the funds.

Garnishee created interest bearing accounts with the funds which arrived by wire transfer and designated the beneficiary on the accounts as Cuban entities. (ECF #120 at 6) Garnishee does not dispute that the named beneficiaries and intended recipients on the accounts are instrumentalities of the Republic of Cuba. Garnishee merely asserts that Movant has not shown

they are agencies or instrumentalities of Cuba. However, Exhibit 4 (filed under seal) to the Turnover Motion (ECF # 69-4) identifies the owner or beneficiary of each account and supplies the source of information establishing that each entity is a Cuban instrumentality or agency.[1] If DBTCA disagreed with this information, it had a duty to so state.[2]

## II.  ARGUMENT

### A. Under Federal Procedure There Is No Need for the Commencement of a "Special Proceeding" to Seek Turnover of Property Under CPLR 5225(b)

Garnishee contends that Movant's Motion for Turnover should be denied for failure to commence a special proceeding. Opp. Br. at 12. Garnishee is incorrect.

Were this case brought in the New York state courts, a turnover proceeding against a garnishee would have to be commenced as a special proceeding against the garnishee. *Koehler v. Bank of Bermuda Ltd.I,* 12 N.Y.3d 533, 537 (2009). However, as there is no equivalent "special proceeding" under the Federal Rules of Civil Procedure, a turnover proceeding in the present case may be brought as a motion within the underlying proceeding against garnishees. *See Saregama India, Ltd. v. Mosley,* 2012 WL 955520, at *1 (SDNY 2012) (J. Kaplan) ("special proceedings in the sense used in the CPLR are unknown in federal courts"), relying on *Trust v. Kummerfeld,* 153 Fed. Appx. 761 (2d Cir. 2005).[3] While, as Garnishee notes in its Brief, a judgment creditor seeking turnover of terrorist state assets in New York banks may elect to commence an action naming the garnishee bank as defendant (ECF #120 at 9), if the judgment creditor elects to proceed by way of motion "the Court may simply deem the motion a special

---

[1] DBTCA was furnished with this information for its review and comment weeks in advance of the filing of the Turnover Motion.

[2] Counsel for Movant can furnish more information on each entity should the Court require it.

[3] The turnover motion in *Saregama India Ltd.* was dismissed for lack of service on the garnishees which met the criteria of FRCP Rule 4 and the NY CPLR.

proceeding, *if it has jurisdiction over the parties.*" *Wasserman Group Media, LLC v. Bender*, 2012 WL 1506181 at *1 (SDNY 2012) (emphasis in original).[4]

The underlying litigation was commenced by Movant against the Republic of Cuba to obtain a judgment in the Southern District of New York based upon a default judgment rendered previously in Florida. Cuba defaulted in the Southern District action, and judgment was entered August 20, 2012. *See* Motion for Turnover Order, Exhibit 1 (ECF #36-1). The subject matter jurisdiction of a federal court is not exhausted until an ultimate judgment is satisfied. *Riggs v. Johnson County*, 73 U.S. 166, 1867 WL 11194 at 16 (1867); *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 208 (2d Cir 2012). Movant, as judgment creditor then caused an writ of execution to be issued against DBTCA as a Garnishee. This "process" was served by the United States Marshal on January 4, 2013. The return of service, attached to the Motion for Turnover Order as Exhibit 2 (ECF #36-2), establishes that the writ was personally served on the bank on January 4, 2013. Such service establishes personal jurisdiction over Garnishee pursuant to FRCP 4 and NY CPLR 311(a)(1). DBTCA makes no objection to adequacy of service.

Thus, under *Saregama, supra* at *3, Movant has obtained jurisdiction over Garnishee. In fact, counsel for Garnishee signed a Protective Order in this action; and counsel entered a general appearance – not a limited appearance -- for Garnishee.

Garnishee's argument that it loses the procedural rights a defendant possesses in a new action lacks merit. The instant Motion contains more than 20 numbered paragraphs outlining the turnover claim to which Garnishee could respond. Garnishee could join other persons with an

---

[4] The *Wasserman* opinion is by Judge Scheindlin, who is also the author of the opinion in *Gucci America, Inc. v. Bagsmerchant, LLC*, 2012 WL 4468192 (S.D.N.Y. Sept. 27, 2012), which is relied on by Garnishee as holding that a turnover proceeding must be commenced as a special proceeding. The *Gucci* opinion simply sets forth the New York state procedure but, since the judgment creditor did not claim to have made jurisdictional service, the motion was denied.

interest in the outcome or it could defensively interplead the funds at issue. Joinder pursuant to CPLR 5225(b) is permissive, not mandatory. Garnishee's filing of a Cross Motion to Stay is indicative that it possesses the procedural ability to assert whatever defenses it chooses – provided it has standing to raise the defenses. Likewise, it possesses the ability to join other interested parties. Two claimants to a single account at DBTCA have asserted an interest and moved to intervene. (ECF #137) Garnishee attaches 2009 writs of execution or garnishment in the *Hausler* case, but those writs expired long ago since no turnover proceeding was filed against DBTCA and no court granted an extension to file. (ECF #121-5 and -6) Should the Hausler plaintiffs wish to intervene to assert priority, they may do so.

Accordingly, Garnishee's opposition to the Motion as procedurally defective is without merit.

B. **Garnishee Lacks Standing to Object to Turnover**

Garnishee describes itself as merely a "neutral" intermediary bank holding the funds in accordance with the federal blocking regulations. It does not claim ownership. (ECF #120 at 5) As such, it lacks a pecuniary interest and is a gadfly in the discourse since it has no standing to object substantively to turnover of the funds. Its remedy is to do nothing or interplead the funds.

A garnishee, like a plaintiff, must demonstrate that it has standing to raise specific claims or defenses. *See e.g. Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 796 n. 13 (3rd Cir. 1992). A garnishee has standing to defend itself, but the defense raised must still relate to the facts of the case and the injury allegedly sustained by the garnishee. The United States Supreme Court has held the criteria for standing to be 1) that the party has suffered "an injury in fact" that is "concrete and particularized" as well as "actual or imminent," (2) that there is "a causal connection between the injury and the conduct complained of," and (3) "that the injury will

[likely] be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks omitted). A party may assert a third party's rights only if, in addition to meeting other prerequisites, the third party is unable to assert its own rights. *Singleton v. Wulff*, 428 U.S. 106, 115-16 (1976). In this case, Garnishee cannot sustain its burden as to any of the three *Lujan* criteria.

Garnishee does not claim ownership of the accounts at issue, and it will suffer no financial injury from turnover of the accounts to Movant. Garnishee does not assert any injury-in-fact in its declarations and briefs. The most it asserts is that it might be subject to a claim by the originating bank. (ECF #120 at 10). However, the Court of Appeals has held that private intermediary banks cannot be subject to a damage action because of government regulations ordering the seizures of electronic wire transfers. *Organizacion JD Ltda. v. U.S. Dept. of Justice*, 18 F.3d 91 (2d Cir. 1994). The one year period when the originator or originating bank of a wire transfer may object to a transferee bank has long expired for the wire transfers at issue. *See* Art. 4A-505 U.C.C. In addition, the Cuban Liberty and Democratic Solidarity Act of 1996, 22 U.S.C. 6032(h), expressly extinguished any right or interest to assert a claim as a result of a blocked Cuban transaction: a transfer "shall not be the basis for the assertion or recognition of any interest in or right, remedy, power or privilege with respect to such property." Accordingly, any financial obligation to the originating bank has been dissolved and Garnishee cannot be injured by turnover of the accounts to Movant.

## C.   A Stay of Proceedings Should Be Denied

Garnishee's principal contention in seeking a stay is that the Court of Appeals is poised to render a decision on the question of whether the holder of a judgment for terrorism against a state sponsor of terrorism may levy on an EFT. (ECF #120 at 13) The pending appeals have no

impact on this case if Movant is correct that Garnishee has no standing to object to the turnover on the merits. Moreover, the instant Turnover Motion also involves the question of whether a judgment creditor may levy against long-standing, interest bearing accounts held by Garnishee for which Cuban instrumentalities are the intended beneficiaries. *See* Point E below. In that regard, this is an ordinary execution against a bank garnishee. It is ripe for decision by this Court.

Garnishee correctly identified the five (5) factors a court considers in granting or denying a stay. (ECF #120 at 15). However, the weight accorded to each will vary with the circumstances. Movant believes that two factors, prejudice to garnishee and public interest, tip the balance in favor of denying a stay. Since Garnishee will suffer no injury from turnover of the accounts to Movant, there can be no prejudice to Garnishee from proceeding to decision now. The public interest consideration supports Movant since Congress has spoken emphatically in TRIA and the FSIA that judgments against state sponsors of terrorism should be enforced, and directed the State and Treasury Departments to assist Movant in recovery.

### D. Garnishee Created Interest Bearing Accounts for the Funds at Issue in the Name of the Beneficiaries[5]

It is not surprising that the funds at issue arrived at the Garnishee bank via electronic transfer since that is a common mode for international transmission of payment in commercial transactions. However, once the Garnishee blocked further transfer to comply with OFAC regulations, it created and opened "accounts" for the funds with specific identifying numbers and designated beneficiaries. *See* ECF #89-8. By creating the accounts, the funds were rendered subject to execution under the FSIA as "accounts," not EFT's. *Americas Bulk Transport Ltd. v.*

---

[5] Even though Garnishee has no standing to raise merits defenses, Movant nonetheless responds to the merits defenses raised.

104937 7

*IMT*, 2010 WL 1047674 (SDNY 2010) (J. Hellerstein).[6] As this Court stated "[t]he cases at bar involve actual funds, held in suspense accounts, not EFTs. The funds may have originated as EFTs, but they no longer are EFTs." At *7 The originator or originating bank of each EFT had one year under New York state law to request rescission of the EFT and return of the funds. U.C.C. Article 4A-505 (statute of repose). The originator could also seek a license for the return of the funds from OFAC. *See* 31 C.F.R. §§ 515.201(e) and 501.806. Apparently that was not done for any of the 194 accounts for which turnover is now sought.

While the individual funds at issue traveled to Garnishee electronically, they now have an independent existence as "accounts" at Garnishee which bear interest. In other words, they are normal accounts like other maintained at Garnishee's branch office. New York law, CPLR 5225(b), authorizes a judgment creditor to execute on this type of property.

### E. Movant May Execute on Accounts for Which Cuban Instrumentalities Are Intended Beneficiaries

Section 1610(f)(1)(A) permits Movant to execute on "*any property* [of a terrorist party] with respect to which financial transactions are prohibited or regulated" by the blocking statutes. Section 201(a) of TRIA permits Movant to execute on "the blocked assets *of* any agency or instrumentality of that terrorist party." The preposition "of" connotes ownership. But it is not, and cannot be, limited to "titled" ownership. *See Hausler v. JP Morgan Chase Bank*, 740 F.Supp.2d 525, 531-32 (SDNY 2010) (J. Marrero) It is sufficient if the agencies or instrumentalities are intended beneficiaries of the blocked assets, which in this case are long-term, interest bearing accounts for designated beneficiaries. This construction is fully consistent

---

[6] In *Eitzen Bulk A/S v. Ashapura Minechem, Ltd.*, 632 F.3d 53 (2d Cir. 2011), the Court of Appeals ruled that because the plaintiff's maritime attachment of EFT's was invalid and the lower court was deprived of jurisdiction. *Eitzen Bulk A/S* is distinguishable because in the instant case the Court possesses subject matter jurisdiction and the execution was effective to reach the accounts at issue.

with the statutes and regulatory scheme that permit execution only on a subset of assets which are blocked by the Cuban blocking regulations.

### 1. Federal Law Preempts State Law

Sections 1610(f) and (g) of the FSIA together with Section 201(a) TRIA entail uniquely federal interests which preempt state law. Article 1, § 8 of the U.S. Constitution entrusts the federal government with the conduct of foreign affairs. *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 427, n. 25 (1964). Litigation against, and execution upon, a foreign sovereign is governed exclusively by federal law. The FSIA is the principal statute which regulates lawsuits and execution against foreign nations. This is especially true with regard to a foreign country which has been designated a state sponsor of terrorism.[7] The federal government's constitutional authority as well as legislation demonstrates that federal law occupies the entire field to the exclusion of state law. *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 373-74 (2000) (federal law re Burma preempts state legislation); *Hausler* 740 F.Supp.2d at 531-32 (the plain language of TRIA and the Cuban Control Regulations indicate preemption); *Estate of Heiser v. Islamic Republic of Iran*, 885 F.Supp.2d 429, 445 (D.D.C., 2012) ("Reading TRIA § 201 and FSIA § 1610(g) in conjunction with the entire FSIA and the 2008 NDAA amendments shows that Congress intended to create a 'harmonious whole' and intended that the federal government occupy this field."). It follows that federal law, not state law, is determinative of which assets Movant may execute upon to satisfy his judgment. *Hausler* at 532.

---

[7]*Heiser, supra.* at 444 ("Designating a country as a state-sponsor of terrorism is a drastic decision that the Executive Branch does not make on a whim; serious political and economic consequences result from this designation. One such consequence is that the "property of" a designated state-sponsor of terror loses its sovereign immunity and may become subject to attachment and execution. FSIA § 1610(g)(1). The idea that state property law definitions of ownership should control the disposition of these assets flies in the face of the dominant federal interest in our relations with terrorist states.")

## 2. Cuban Instrumentalities Are the Intended Beneficiaries

Movant contends that the funds at issue, either as accounts subsisting at the Garnishee bank or in their travel mode as EFT's, are subject to execution under TRIA and the FSIA. The question is whether Cuba has an interest in the accounts or EFT's. As Judge Marrero stated:

> ... blocked assets under TRIA are broadly defined as any asset seized or frozen by the United States under the CARCs, and the CACRs block *any* transactions involving property in which Cuba has *any* interest of any nature whatsoever, direct or indirect. See 31 C.F.R. § 515.201.

(emphasis in the original) *Id.* at 533. Judge Marrero concluded that TRIA permits execution on any assets in which Cuba has an interest. Movant agrees.

Movant contends that Cuban instrumentalities are intended beneficiaries of the accounts and EFT's. Under federal common law, which is applicable here, a:

> court looks to "general principles for interpreting contracts." Klamath Water Users Prot. Assoc. v. Patterson, 204 F.3d 1206, 1210 (9th Cir.1999). One such general principle is that only a party to a contract or an intended third-party beneficiary may sue to enforce the terms of a contract or obtain an appropriate remedy for breach. See Far West Fed. Bank, S.B. v. Office of Thrift Supervision–Dir., 119 F.3d 1358, 1363 (9th Cir.1997).

*GECCMC 2005 v. JP Morgan Chase Bank, N.A.*, 671 F.3d 1027, 1033 (9th Cir. 2012). Section 302 of the Restatement (Second) of Contracts (1981) provides:

> Unless otherwise agreed between promisor and promise, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and
> (a) performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary.

*See also Levin v. Tiber Holding Corp.*, 277 F.3d 243, 248 (2d Cir. 2002) (applying New York law). The funds were intended as payment for goods or services rendered by a Cuban entities. The agreements between the originators and their banks were to transmit payment to the Cuban entities for those goods and services. Here, Cuban instrumentalities are the named and

designated "beneficiaries" on both the accounts and EFT's. Therefore the Cuban instrumentalities are intended beneficiaries of the funds. Section 304 of the Restatement (Second) of Contracts provides that intended beneficiaries may enforce a duty to perform. Therefore, the Cuban instrumentalities have enforceable property interests in the accounts and EFT's,[8] and a judgment creditor of Cuba may levy on both.

Garnishee touts the originating bank having sole right to seek the funds, but fails to mention that section 505 of Article 4A of the U.C.C. has a one-year statute for an originator to make a claim. Likewise, an originating party of an EFT could seek a license from OFAC for return of the funds. Apparently this has not been done for the funds now at issue.

Garnishee places emphasis upon the decision of Chief Judge Preska in *Calderon-Cardona v. JP Morgan Chase N.A.*, 867 F.Supp.2d 389 (SDNY 2011). There the Court discounted federal field preemption concluding "[t]here is thus ample room for state law to supplement this federal regime" and applying Article 4A of New York's UCC. *Id.* at 400. The Court opined that, even if it were wrong on TRIA's preemption of state law, TRIA limited recovery to property directly owned by the foreign sovereign. *Id.* at 405. The Court limited its opinion to EFT's and failed to discuss application of federal common law or the rights of intended beneficiaries to enforce payment of bank accounts created for them. Movant believes that Judge Marrero's decision in *Hausler*, which held that TRIA applied to a foreign sovereign's "property interests," – not just its titled property -- is better reasoned and consistent with federal law.

---

[8] The Court in *Heiser, supra*, 885 F.Supp. 2d at 447-48, reached a different conclusion solely as to EFT's, not bank accounts, on the basis that the Cuban instrumentality did not yet have "title" to the EFT from the intermediary bank.

### III. CONCLUSION

For all the foregoing reasons, Movant requests that this Court (1) deny the Cross Motion to Stay, (2) grant Movant's Turnover Motion, and (3) order Garnishee to turn over to Movant, pursuant to §201(a) of TRIA, the 194 accounts identified in Exhibit 3 to the Turnover Motion, together with accrued interest, for which Cuban government instrumentalities are the designated and intended beneficiaries.

Dated: New York, New York
April 4, 2013

Respectfully submitted,

KOHN, SWIFT & GRAF, P.C.

_____
Robert A. Swift
Admitted *Pro Hac Vice*
One South Broad Street, Suite 2100
Philadelphia, Pennsylvania 19107
Phone: 215-238-1700
Fax:    215-238-1968


Jeffrey E. Glen
Luma Al-Shibib
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, New York 10020
Phone: 212-278-1000
Fax:    212-278-1733

*Attorneys for Plaintiff Aldo Vera, Jr.*