UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ALDO VERA, JR., as Personal          :
Representative of the Estate of Aldo Vera,   :
Sr.,                                 :
                                     :
                    Plaintiff,       :
                                     :        12 Civ. 1596 (AKH)
          v.                         :
                                     :
THE REPUBLIC OF CUBA                 :
                                     :
                    Defendant.       :
                                     :
                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**INTESA SANPAOLO S.P.A'S REPLY MEMORANDUM OF LAW**

Jennifer G. Newstead
James L. Kerr
Gina Cora
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York  10017
(212) 450-4000
*Attorneys for Intesa Sanpaolo S.p.A.*

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ............................................................................. ii

POINT I.     The Court Should Stay Plaintiff's Turnover Proceedings
             Pending the Second Circuit's Decision in Appeals Now *Sub
             Judice* that Raise Identical and Dispositive Issues ........................................1

POINT II.    Plaintiff's "Motion for Turnover" Should Be Denied for
             Failure to Properly Commence an Action against Intesa ................................4

POINT III.   Plaintiff's "Motion for Turnover" Should Be Denied Because
             None of the EFT Proceeds Are Subject to Turnover......................................8

        A.       TRIA Does Not Expressly Preempt State Property Law .........................10

        B.       TRIA Does Not Impliedly Preempt State Property Law .........................11

POINT IV.    Intesa Has Standing to Oppose the Turnover of the Proceeds of
             the Blocked EFTs Held by Intesa ................................................................13

CONCLUSION...................................................................................................15

# TABLE OF AUTHORITIES

### CASES

PAGE

*Alliance Bond Fund, Inc. v. Grupo Mexicano de Desarrollo, S.A.*,
  190 F.3d 16 (2d Cir. 1999)..........................................................................6, 7

*Allied Mar., Inc. v. Descatrade SA*,
  620 F.3d 70 (2d Cir. 2010)................................................................................10

*American Bulk Transport LTD v. IMT*,
  Nos. 08 Civ. 6970, 08 Civ. 8319 (AKH),
  2010 WL 1047674 (S.D.N.Y. Mar. 19 2010) ..............................................10

*Argus Dev. Inc. v. Steelcore Trading Ltd.*,
  No. 09 Civ. 6009 (JGK), 2009 WL 4016626 (S.D.N.Y. Nov. 16, 2009) ...................10

*Armstrong v. Accrediting Council for Continuing Educ. and Training, Inc.*,
  168 F.3d 1362 (D.C. Cir. 1999) ......................................................................12

*Calderon-Cardona v. JPMorgan Chase Bank, N.A.*,
  867 F. Supp. 2d 389 (S.D.N.Y. 2011)................................................................10, 11

*Cordius Trust v. Kummerfeld*,
  153 F. App'x 761 (2d Cir. 2005) ....................................................................7

*Eitzen Bulk A/S v. Ashapura Minechem*,
  632 F.3d 53 (2d Cir. 2011)..............................................................................10

*Estate of Heiser v. Islamic Republic of Iran*,
  885 F. Supp. 2d 429 (D.D.C. 2012).................................................................11, 12

*Goldstein v. Time Warner New York City Cable Group*,
  3 F. Supp. 2d 423 (S.D.N.Y. 1998) ..............................................................3

*Gucci Am., Inc. v. Bagsmerchant, LLC*,
  No. 10 Civ. 2911 (SAS), 2012 WL 4468192 (S.D.N.Y. Sept. 27, 2012)............4, 5, 14

*Hausler v. JP Morgan Chase, N.A.*,
  740 F. Supp. 2d 525 (S.D.N.Y. 2010).............................................................13

*Hausler v. Republic of Cuba*,
  No. 09-20942-CIV, Dkt. No. 89, slip op. (S.D. Fla. Mar. 31, 2011)..........................11

ii

*In re Islamic Republic of Iran Terrorism Litig.,*
    659 F. Supp. 2d 31 (D.D.C. 2009) ...............................................................11

*In re Literary Works in Elec. Databases Copyright Litig.,*
    58 U.S.P.Q.2d 1317 (S.D.N.Y. Feb. 27, 2001) ...........................................3

*Kohler v. Bank of Bermuda Ltd.,*
    12 N.Y.3d 533 (2009) ..................................................................................5

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ...................................................................................13

*Saregama India, Ltd. v. Mosely,*
    Nos. 12-MC-45-PI, 11-MC-84-PI, 2012 WL 955520 (S.D.N.Y. Mar. 20, 2012) ........6

*Wasserman Media Group, LLC v. Bender,*
    No. 10 Civ. 8783 (SAS), 2012 WL 1506181 (S.D.N.Y. Apr. 26, 2012) .................6, 7

*Weininger v. Castro,*
    462 F. Supp. 2d 457 (S.D.N.Y. 2006) ........................................................13

*Wing Shing Prods. (BVI) Ltd. v. Simatelex Manufactory Co., LTD,*
    No. 01 Civ. 1044 (RJH) (HBP), 2005 WL 912184 (S.D.N.Y. Apr. 19, 2005).............3

STATUTES & RULES

28 U.S.C. § 1605(a)(7)............................................................................................2, 10

28 U.S.C. § 1605A.......................................................................................................10

28 U.S.C. § 1608........................................................................................................2, 4

28 U.S.C. § 1610(g) ....................................................................................................10

Fed. R. Civ. P. 4 .............................................................................................................7

Fed. R. Civ. P. 22 ...........................................................................................................5

N.Y. C.P.L.R. 402 ..........................................................................................................5

N.Y. C.P.L.R. 5225....................................................................................................4, 6

N.Y. C.P.L.R. 5239..................................................................................................13, 14

N.Y. C.P.L.R. 5240.................................................................................................13, 14

N.Y. C.P.L.R. art. 52..................................................................................... *passim*

TRIA § 201 .............................................................................................................9

U.C.C. § 4A-502 official cmt. 4.........................................................................12

U.C.C. § 4A-505 ...................................................................................................12

U.C.C. art. 4A ............................................................................................... *passim*

## Other Authorities

David L. Ferstendig, *Weinstein, Korn & Miller New York Civil Practice*
   § 11-5239.09 (2012).......................................................................................8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ALDO VERA, JR., as Personal          :
Representative of the Estate of Aldo Vera,    :
Sr.,                                 :
                                     :
                     Plaintiff,      :
                                     :      12 Civ. 1596 (AKH)
             v.                      :
                                     :
THE REPUBLIC OF CUBA                 :
                                     :
                     Defendant.      :
                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## INTESA SANPAOLO S.P.A'S REPLY MEMORANDUM OF LAW

Intesa Sanpaolo S.p.A. ("Intesa") respectfully submits this reply memorandum of

law in further support of its cross-motion for a stay and in opposition to the motion for

turnover of plaintiff Aldo Vera, Jr. ("plaintiff").

## POINT I.

## THE COURT SHOULD STAY PLAINTIFF'S TURNOVER PROCEEDINGS PENDING THE SECOND CIRCUIT'S DECISION IN APPEALS NOW *SUB JUDICE* THAT RAISE IDENTICAL AND DISPOSITIVE ISSUES[1]

Plaintiff cannot credibly dispute that this turnover proceeding should be stayed

pending the Second Circuit's decision in the appeals now *sub judice* in *Calderon-*

*Cardona v. JPMorgan Chase Bank, N.A.*, No. 12-75, and *Hausler v. JPMorgan Chase,*

*N.A.*, Nos. 12-1264 and 12-1272. Indeed, plaintiff's memorandum of law underscores the

---

[1] Intesa maintains that it is not properly before the Court in light of plaintiff's failure to commence the equivalent of a "special proceeding" by commencing an action against it that could lead to a judgment of turnover. (*See, infra*, Point II.)  Intesa nonetheless addresses the merits of a stay first because the Court may wish to stay this proceeding prior to ruling on either Intesa's procedural or substantive objections to plaintiff's motion.

extent to which the present dispute raises issues identical to those raised by the pending

appeals.  (*See* Plaintiff's Memorandum in Opposition to Cross Motion to Stay and in

Support of Motion for Turnover ("Pl. Mem.") at 3-12 (ECF No. 146).)[2]

      Plaintiff and Intesa have anchored their respective arguments to the opposing

sides of the very questions the Second Circuit is currently considering.  Plaintiff makes

clear that he thinks *Hausler* "is better reasoned and consistent with federal law."  (*Id.* at

12.)   Intesa, on the other hand, believes that "Judge Cote's decision [in *Calderon-*

*Cardona*] was correct in all respects."  (Intesa Memorandum of Law in Opposition to

Plaintiff's Motion for Turnover and in Support of Its Motion for a Stay ("Intesa Mem.")

at 10 (ECF No. 88).)  It is thus clear that a stay will avoid needless litigation in advance

of a decision that will, if it is not dispositive, provide essential guidance to the Court.[3]

      Indeed, it is difficult to imagine a circumstance better suited for a stay pending the

outcome of a higher court's decision, and courts in this Circuit consistently grant stays

---

[2] Subsequent to the filing of Intesa's motion on March 11, 2013, challenges to the Court's subject matter jurisdiction over the *Vera* claim have been made by others that raise issues providing independent reasons for staying plaintiff's turnover proceeding against Intesa.  In the first place, it is alleged by the plaintiffs in *Villoldo v. Republic of Cuba* that the Florida court that issued the original judgment under § 1605(a)(7) did not have subject matter jurisdiction of plaintiff's claim  because, at the time of the acts that give rise to plaintiff's claim against Cuba, Aldo Vera, Sr. was not a United States national.  (*See* ECF No. 156.) Second, intervenor National Bank of Canada has alleged in a turnover proceeding commenced against Deutsche Bank Trust Company Americas that because Cuba was not designated a state sponsor of terrorism prior to or as a result of the acts giving rise to plaintiff Vera's claim, the terrorism exception to the FSIA does not apply. (*See* ECF  No. 140.)  In addition, the *Villoldo* plaintiffs allege various service and notice deficiencies under 28 U.S.C. § 1608.  If the Florida judgment was void for lack of subject matter jurisdiction, it goes without saying that the judgment was not entitled to be given full faith and credit by this court.  While plaintiff withdrew the writ directed against National Bank of Canada earlier today, that does not cure a defect in subject matter jurisdiction if there is one, and these issues should be resolved prior to entertaining enforcement of plaintiff's judgment.

[3] Plaintiff does not dispute that none of the electronic funds transfers ("EFTs") targeted for turnover could be used to satisfy a judgment against the Republic of Cuba if the Second Circuit affirms Judge Cote's ruling that (a) ownership is a prerequisite to execution under the Terrorism Risk Insurance Act ("TRIA") and (b) ownership should be determined by reference to Article 4A of the Uniform Commercial Code (the "U.C.C.").

2

where "the precise question at issue in [the court above] bears directly on this litigation."

*Goldstein v. Time Warner New York City Cable Group*, 3 F. Supp. 2d 423, 438 (S.D.N.Y.

1998); *see also In re Literary Works in Elec. Databases Copyright Litig.*, 58 U.S.P.Q.2d

1317, 1319 (S.D.N.Y. Feb. 27, 2001) (finding a stay warranted when a "higher court is

close to settling an important issue of law bearing on the action").   Although plaintiff

attempts to undercut the significance of the Second Circuit's imminent decision on this

action (*see* Pl. Mem. at 6-7), he fails to identify a single case in which a lower court

denied a suggested stay in the shadow of a higher court decision that would be outcome

determinative.   Moreover, plaintiff has not presented any argument as to why it would be

efficient or prudent for the Court to "proceed under the circumstances."  *Wing Shing*

*Prods. (BVI) Ltd. v. Simatelex Manufactory Co. LTD*, No. 01 Civ. 1044 (RJH) (HBP),

2005 WL 912184, at *3 (S.D.N.Y. Apr. 19, 2005).[4]   Consequently, Intesa respectfully

requests that the Court stay plaintiff's enforcement of its judgment against Intesa pending

the Second Circuit's decision in the *Calderon-Cardona* and *Hausler* appeals.[5]

---

[4] Plaintiff's suggestion that lack of prejudice to Intesa and the public interest "tip the balance in favor of denying a stay" is simply incorrect.  (Pl. Mem. at 7.)  First, moving forward at this time will force Intesa to incur additional litigation costs, in particular if it were required to interplead wire transfer parties. (*See*, *infra*, Point III.)  Second, the public would not benefit from pressing forward prior to resolution given the uncertainty in this area of the law.  Plaintiff is correct that the public interest supports the enforcement of "judgments against state sponsors of terrorism" – and Intesa certainly agrees.  But such recovery must be done in a manner consistent with applicable law and the principles inherent in the statutory schemes, TRIA and the Foreign Sovereign Immunities Act (the "FSIA"), on which plaintiff relies.  (*See*, *infra*, Point II.) Plaintiff also overlooks the fact that it waited more than eight years after entry of its Florida default to commence its enforcement proceeding.

[5] Plaintiff's fallback argument relating to Intesa's standing (*See* Pl. Mem. at 5-7) is addressed in Point IV, *infra*.

## POINT II.

## PLAINTIFF'S "MOTION FOR TURNOVER" SHOULD BE DENIED FOR FAILURE TO PROPERLY COMMENCE AN ACTION AGAINST INTESA

Plaintiff's Motion for Turnover against Intesa remains procedurally deficient because plaintiff has failed to properly commence a separate action or proceeding against Intesa – a non-party to its action against Cuba – in a way that would properly subject it to this Court's jurisdiction.  Indeed, plaintiff has sought turnover here merely by filing a motion served on counsel by mail with an unspecified return date.[6]  But a motion directed against a non-party does not begin to follow the turnover practice established by New York execution law.

In *Gucci America, Inc. v. Bagsmerchant, LLC*, No. 10 Civ. 2911 (SAS), 2012 WL 4468192 (S.D.N.Y. 2012), Judge Scheindlin expressly rejected a judgment creditor's effort to proceed by motion and required the party to commence a separate action against the non-party garnishee.  In reaching this conclusion, Judge Scheindlin first summarized turnover procedure under the New York Civil Practice Law and Rules ("C.P.L.R."):

> Article 52 of the CPLR "governs the enforcement of money judgments and orders directing the payment of money."  Enforcement under section 5225(b), which deals with property not in the possession of the judgment debtor, "requires a special proceeding brought by the judgment creditor against the garnishee."  The New York Court of Appeals explained that "[t]he reason for this procedural distinction is that the garnishee, not being a party to the main action, has to be independently subjected to the court's jurisdiction."
>
> Section 403 of the CPLR provides that garnishees must be served, in the same manner as a summons, with a notice of petition specifying the time

---

[6] Indeed, plaintiff has also failed to properly serve the Republic of Cuba in a manner consistent with 28 U.S.C. § 1608.  Rather than complying with the service provisions of the FSIA set forth in Section 1608(a)(3), which require that service on a foreign state be effected by the Clerk of the Court, plaintiff has simply mailed its papers to the Cuban Ministry of Foreign Affairs.  (*See, e.g.*, ECF No. 99.)

and place of the hearing on petition, and any accompanying affidavits, at least eight days in advance of the time at which the petition is noticed to be heard. *The special proceeding culminates in a judgment which runs directly against the respondent.*

*Id.* (quoting *Kohler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533 (2009) (emphasis added)).

The pleading in a special proceeding – and it is a pleading – is a petition, "which shall comply with the requirements for a complaint in an action, and an answer where there is an adverse party." N.Y. C.P.L.R. 402. These are pleadings that have direct analogs in federal practice. Third-party practice is also available in the case of a special proceeding, and the answer to either a petition or a complaint provides a platform for third-party practice, practice that is essential when the proceeds of a multi-party wire transfer are involved. In federal court, Rule 22 of the Federal Rules of Civil Procedure provides the procedural mechanism for interpleading adverse parties, and the Federal Rules also govern the timing for bringing such claims without leave of court. The Federal Rules also provide mechanisms and for serving and subjecting to jurisdiction third-party adverse claimants that are located in foreign countries, which is where, almost by definition, the adverse claimants in these proceedings are located. A motion may have paragraphs, but it provides no platform for third-party practice, and a motion may lead to an order, but it cannot lead to a judgment that protects the garnishee. Nor does motion practice begin to deal with how non-parties like Intesa can interplead other non-parties that may have a claim to the funds subject to turnover.

In any event, by requiring the judgment creditors in *Gucci* to commence a separate proceeding, Judge Scheindlin was doing no more than following the guidance of the Second Circuit:

> Under § 5225(a), a judgment creditor pursuing property in the possession
> of the *judgment debtor* must seek a court order requiring the judgment
> debtor to turn it over.  Under § 5225(b), a judgment creditor pursuing
> property in the possession of someone *other* than the judgment debtor
> must commence an action against the person in possession.

*Alliance Bond Fund, Inc. v. Grupo Mexicano de Desarrollo, S.A.*, 190 F.3d 16, 21 (2d

Cir. 1999) (emphasis in original); *see also Wasserman Media Group, LLC. v. Bender*,

2012 WL 1506181 (S.D.N.Y. 2012).[7]

Plaintiff's reliance on *Saregama India, Ltd. v. Mosley*, Nos. 12-MC-45-PI, 11-

MC-84-PI, 2012 WL 955520 (S.D.N.Y. Mar. 20, 2012), is misplaced and insufficient.

While the district court in that case noted that federal practice did not provide for the sort

of "special proceeding" contemplated by C.P.L.R. 5225(b) since a "civil action is the

only form of action in federal civil practice," *id.* at *1, and suggested in *dictum* that a

turnover proceeding could be initiated by motion, the court then went on to dismiss the

judgment creditor's application for failure to comply with Federal Rule of Civil

Procedure 4.  *Id.* at *2-3.  In any event, as the Second Circuit explained, the real question

is whether the plaintiff has properly "commence[d] an action against the person in

possession" of the relevant property that provides it with the procedural certainty and

---

[7] The provision of the C.P.L.R. under which plaintiff brought its motion for turnover, § 5225(b),
specifically

> require[s] the judgment creditor *to proceed against* the party that can produce the asset
> that the judgment creditor seeks, whether that party is the judgment debtor itself, or some
> third party.  This requirement allows for the possibility that there may be other claimants
> of the debtor or the property, or other interests in it, assertable by the garnishee on its
> own behalf, or by *fourth parties that are impleaded or who intervene*.

*Alliance Bond Fund,* 190 F.3d at 21 (emphasis added).  Whether done by special proceeding in state court
or by civil action in federal court, plaintiff has yet to "proceed against" Intesa, mistakenly thinking that it is
sufficient to merely file a motion.

safeguards offered by the C.P.L.R. and the Federal Rules. *Alliance Bond Fund,* 190 F.3d at 21. The answer here must be "No."

Plaintiff also cites *Cordius Trust v. Kummerfeld*, 153 F. App'x 761 (2d Cir. 2005), for the unexceptional proposition that the requirements for a special proceeding need not be strictly followed as long as the "procedural irregularity [does] not prejudice any of [the third-party's] substantial rights." *Id.* at 763. *Kummerfeld* was a veil-piercing case, the respondent was no stranger to the original action but the chairman, treasurer and half-owner of the corporate judgment debtor, and the departure from Rule 4's personal service requirement was consistent with a prior order of the district court permitting alternative service. Nor is plaintiff's characterization of the issue as simply one of "jurisdiction over the parties" accurate. Plaintiff quotes *Wasserman* for the proposition that "the court may simply deem the motion a special proceeding *if it has jurisdiction over the parties*" (emphasis in Pl. Mem. at 3-4 (quoting *Wasserman*, 2012 WL 1506181, at *1)), but fails to point out that Judge Scheindlin denied the motion in question, concluding that if the judgment creditor was seeking turnover against a non-party garnishee, "it will have to bring a separate action against [the garnishee]." *Wasserman*, 2012 WL 1506181, at *3. While Intesa may be subject to jurisdiction in New York, it has not been made subject to the Court's jurisdiction by personal service of a summons and petition that complies with the requisites of Rule 4 of the Federal Rules of Civil Procedure and New York execution law. While this Court could assert *in personam* jurisdiction over the New York branch of Intesa because of its presence in New York, it has not done so, and the fact that Intesa has

produced documents subject to a protective order does not change this.[8]   Indeed, "when a respondent in a proceeding under" Article 52 of the C.P.L.R. "is a stranger to the original action . . . then due process requirements militate in favor of service that would suffice to commence a separate action."  David L. Ferstendig, *Weinstein, Korn & Miller New York Civil Practice* § 11-5239.09 (2012).

Intesa is seeking nothing less than due process.  Without being properly served with a summons and petition – or at least a summons and the functional equivalent of a petition – Intesa will not have the procedural clarity that a non-party garnishee is entitled to under both the C.P.L.R. and the Federal Rules of Civil Procedure.  In particular, it will not be given a viable platform for impleading the wire transfer parties that are also non-parties should that become necessary going forward.  (*See* Intesa Mem. at 13-14.)[9]

## POINT III.

### PLAINTIFF'S "MOTION FOR TURNOVER" SHOULD BE DENIED BECAUSE NONE OF THE EFT PROCEEDS ARE SUBJECT TO TURNOVER

Intesa seeks a stay because all of the issues raised by plaintiff and discussed below were raised in the pending appeals.[10]   None of the accounts made subject to

---

[8] Nor is the fact that the United States Marshal served a writ of execution on Intesa of any moment.  (*See* Pl. Mem. at 4.)  The writ, of course, is neither a summons nor a petition, and it simply sought to levy on any funds Intesa held belonging to the judgment debtor, the Republic of Cuba.  It was not sufficient to create an action between plaintiff and Intesa.

[9] Plaintiff asserts that Intesa would only have the "procedural ability to assert whatever defenses it chooses … [if] it has standing to raise those defenses."  (Pl. Mem. at 5.)  But plaintiff cannot have it both ways.  It cannot, on the one hand, claim that, as an alleged third-party garnishee, Intesa is prohibited from challenging plaintiff's Motion for Turnover (Pl. Mem. at 5.), yet, on the other hand, claim that it properly commenced an action against Intesa that entitles Intesa to the full panoply of procedural rights under law (*Id.*).  Taken together, plaintiff's statements create an untenable position for Intesa: it is supposedly properly before the court, but it cannot ultimately object to plaintiff's request for turnover.

[10] In Intesa's original memorandum of law, it pointed out that the United States has filed amicus briefs in *Hausler*, *Calderon-Cardona* and *Heiser* stating that it is the government's position that it is

8

turnover are the property "of" or arguably owned by the judgment debtor, the Republic of Cuba, or its agencies and instrumentalities.  In its initial motion,[11] Intesa showed as follows:

- First, by its plain language, TRIA § 201 requires that any blocked assets or property targeted for execution be owned by the terrorist party or foreign state judgment debtor (*see* Intesa Mem. at 16-20);

- Second, since TRIA does not provide a basis for determining the "ownership" of a blocked asset, courts determine ownership with reference to state law (*see* Intesa Mem. at 20);

- Third, in the context of a blocked EFT, Article 4A of the U.C.C. – as adopted by New York state – supplies the relevant state law (*see* Intesa Mem. at 20-24);

- Fourth, pursuant to Article 4A, only the originator or the originator's bank – and not the beneficiary or the beneficiary's bank – has a claim to the proceeds of an EFT interrupted by operation of law and held by an intermediary bank (*see* Intesa Mem. at 22-24); and

- Fifth, because the alleged Cuban agencies or instrumentalities are beneficiaries or a beneficiary's bank in all of the EFTs plaintiff targets for turnover, none of the EFTs are actually subject to turnover (*see* Intesa Mem. at 16-20).

---

essential for the property to be "owned" by the terrorist state in question in order for it to be subject to execution under TRIA.  (*See* Intesa Mem. at 19-20.)

[11] For the sake of brevity, Intesa incorporates by reference (and only summarizes here) arguments on the merits from its initial motion that the blocked EFTs at issue are not subject to turnover.  (*See* Intesa Mem. at 16-25.) Intesa devotes most of this brief to arguments raised by plaintiff in opposition.

In its response, plaintiff concedes that the Cuban entities related to the EFTs at issue are only on the beneficiary's side of the blocked transaction. [12]  (*See* Swift Dec. Ex. 1 (ECF No. 147).)   Instead, plaintiff alleges that federal law, particularly TRIA and the FSIA, preempt state law to somehow allow a judgment creditor of a terrorist state to attach *any* assets blocked pursuant to Cuban blocking regulations. [13]  (*See* Pl. Mem. at 8-12.)  For several reasons, plaintiff erroneously interprets the law in this area.

## A.    TRIA Does Not Expressly Preempt State Property Law

As an initial matter, plaintiff concedes that TRIA and the FSIA do not expressly preempt state law as to ownership of the EFTs blocked pursuant to Cuban blocking regulations.  (*See* Pl. Mem. at 9.)  To the extent plaintiff suggests without explanation that the "plain language" of TRIA preempts state law, that is incorrect. Federal courts have consistently held that TRIA's "[n]otwithstanding any other provision of law" preamble "is not intended to indiscriminately override any and all [state] laws that may . .

---

[12] Plaintiff's suggestion that the EFTs at issue in this litigation should be treated as "accounts" (Pl. Mem. at 7-8) is in direct opposition to Second Circuit precedent holding that an EFT is not magically transformed into a different property interest when blocked.  *Allied Mar., Inc. v. Descatrade SA*, 620 F.3d 70, 76 (2d Cir. 2010) ("'[n]o alchemy by the bank [can] transform[ ] EFTs that cannot be attached into property of the defendant that can be attached.'"(quoting *Argus Dev. Inc. v. Steelcore Trading Ltd.*, No. 09 Civ. 6009 (JGK), 2009 WL 4016626, at *1 (S.D.N.Y. Nov. 16, 2009)).  Along the same lines, the Second Circuit has also held that the holding of an EFT in a suspense account "does not alter the legal basis of the banks' retention of the funds."  *See Eitzen Bulk A/S v. Ashapura Minechem*, 632 F.3d 53, 54 (2d Cir. 2011), vacating *American Bulk Transport LTD v. IMT*, Nos. 08 Civ. 6970, 08 Civ. 8319 (AKH), 2010 WL 1047674 (S.D.N.Y. Mar. 19 2010).  Moreover, even assuming, *arguendo*, that these EFTs are now accounts, plaintiff does not submit that this specious classification carries any weight under the relevant statutory provisions.  Whether you label the property at issue "accounts" or "EFTs," TRIA still requires that the judgment debtor "own" that property in order for plaintiff to execute upon it in order to satisfy his judgment.  *Cf. Calderon-Cardona v. JPMorgan Chase Bank, N.A.*, 867 F. Supp. 2d 389, 399-400 (S.D.N.Y. 2011).

[13] Without citing any authority on point, plaintiff reasserts that, despite having a judgment pursuant to § 1605(a)(7), he is entitled to use § 1610(g), in addition to TRIA, as his enforcement remedy. (*See* Pl. Mem. at 9 n.4.)  But plaintiff's interpretation flies in the face of the plain language of § 1610(g), which applies only to "property of a foreign state against which a judgment is entered *under section 1605A*." 28 U.S.C. 1610(g) (emphasis added).  Intesa maintains that plaintiff is not entitled to use § 1610(g), and to the extent that Intesa references the FSIA, it does so for complete rebuttal of plaintiff's arguments and does not concede that plaintiff can use § 1610(g) for its enforcement mechanism. (*See* Intesa Mem. at 16 n.17.)

. apply to a judgment creditor seeking to execute upon the assets of a terrorist party, but .

. . is [merely] intended to abrogate any laws that may provide immunity to . . . [such]

assets." *Hausler v. Republic of Cuba*, No. 09-20942-CIV, Dkt. No. 89, slip op. at 4 (S.D.

Fla. Mar. 31, 2011); *see also In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp.

2d 31, 57-58 (D.D.C. 2009) (same); *Calderon-Cardona*, 867 F. Supp. 2d at 404-05

(same).

**B.    TRIA Does Not Impliedly Preempt State Property Law**

Additionally, there is simply no merit to plaintiff's claim that federal law in this

area impliedly serves to "occup[y] the entire field to the exclusion of state law." (Pl.

Mem. at 9.)  TRIA and the FSIA only preempt state law in those fields in which the

statutes actually legislate – that is, the sovereign immunity of foreign states and the

ability of judgment creditors to execute against the blocked or unblocked property "of"

those foreign states.  Neither TRIA, the FSIA, nor the Office of Foreign Assets Control's

("OFAC") Sanctions Regulations purport to define or alter any concept of property

ownership.  Nor does the federal common law, contrary to plaintiff's disorganized

exposition, address the relevant property interests except by reference to Article 4A.

Even assuming that federal law preempts state law in this area, Article 4A would

still apply because TRIA, the FSIA, and federal common law provide absolutely no

guidance on how to determine ownership in this instance.  Indeed, the very case cited by

plaintiff for this proposition, *Estate of Heiser v. Islamic Republic of Iran*, proves the

point.  *See* 885 F. Supp. 2d 429 (D.D.C. 2012).  There, even though the court found field

preemption, it still applied the principles of Article 4A to determine that Iran did not have

11

an ownership interest in the blocked EFTs that could subject them to execution as property of Iran. *Id.* at 445-49.

Without a definition of "ownership," the "scheme of federal regulation" created by TRIA and the FSIA can be seen as incomplete, because it does not determine whose property is subject to execution. *See Armstrong v. Accrediting Council for Continuing Educ. and Training, Inc.*, 168 F.3d 1362, 1369 (D.C. Cir. 1999), *cert. denied* 528 U.S. 1073 (2000) (internal quotation and citation removed). This circumstance alone provides a basis for rejecting "field" preemption because the federal laws are not "sufficiently comprehensive" to deal with the issue of property rights. *Id.* (internal quotation and citation removed). Accordingly, state law (in particular, Article 4A) provides the necessary gap-filling mechanism.

Purporting to apply federal common law, plaintiff's novel theory that the Cuban entities are the third-party beneficiaries of contracts between the originators and the originating banks passes understanding and has no basis in the law. Unsurprisingly, plaintiff does not cite a single case in support of this proposition. Indeed, as Article 4A makes clear, "from the time the transfer is initiated "until the funds transfer is completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary, *the beneficiary has no property interest* . . . which the beneficiary's creditor can reach." U.C.C. § 4A-502 official cmt. 4. (emphasis added).[14]

---

[14] Plaintiff is also mistaken in his interpretation of Section 505 of Article 4A. As plaintiff would have it, this provision extinguishes any originating bank's right to seize the proceeds of an interrupted EFT if it fails to lay claim to the funds within one year of the block. (*See* Pl. Mem. at 11.) But Section 505 does not apply in this instance because the beneficiary banks could never have "accepted" the payment orders, since they were blocked pursuant to OFAC Regulations. U.C.C. § 4A-505 (providing that the statute of repose only applies "[i]f a receiving bank has received from its customer with respect to a payment order issued in the name of the customer as sender and accepted by bank").

## POINT IV.

## INTESA HAS STANDING TO OPPOSE THE TURNOVER OF THE PROCEEDS OF THE BLOCKED EFTS HELD BY INTESA

Lacking a response to the merits of Intesa's substantive points, plaintiff retreats to an argument that Intesa does not have standing to object to turnover. (*See* Pl. Mem. at 5-6.) This argument is a red herring, as a garnishee in possession of the property at issue is expressly given standing as an "interested person" under C.P.L.R. 5239 and 5240.[15] Furthermore, courts in this Circuit have consistently allowed a potential garnishee bank to participate in the adjudication of the ownership of the allegedly attachable property in its possession. *Weininger v. Castro*, 462 F. Supp. 2d 457, 500 (S.D.N.Y. 2006) (allowing garnishee to commence interpleader proceedings); *see also Hausler v. JP Morgan Chase, N.A.*, 740 F. Supp. 2d 525 (S.D.N.Y. 2010) (same). Where, as here, the third-party garnishee is principally interested in obtaining protection from future liability to any adverse claimants for any funds turned over to plaintiff and unnecessary expenses because of interpleader proceedings, it is properly before the Court.

Specifically, in bringing its opposition to plaintiff's motion for turnover in abundant good faith, Intesa seeks to avoid not only its own future liability, but also to avoid (a) the significant effort and expense associated with interpleading parties located around the world, many of whom would have no colorable claim to the blocked proceeds

---

[15] Plaintiff's reliance on *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), is counterproductive. (*See* Pl. Mem. at 5-6). For the reasons explained above, Intesa certainly meets the criteria for Article III standing, as (1) it will suffer imminent financial "injury" as a result of multiple claims of ownership over the EFTs in question; (2) plaintiff's efforts at collection will undoubtedly be the "cause" of that injury; and (3) denial of plaintiff's motion for turnover will avoid, or "redress," the injury. Moreover, since Article 52 of the C.P.L.R. specifically grants Intesa "interested person" status (*i.e.* standing), the plaintiff's improvident constitutional analysis – or lack thereof – misses the point. Likewise, this is not a case of third-party standing (*see* Pl. Mem. at 6); instead, Intesa intends to protect its own interests that will be affected by turnover.

under Article 4A; (b) injury to Intesa's existing correspondent banking clients (the originating banks) who have direct claims to ownership of the blocked funds; and (c) the need to limit the scope of interpleader proceedings when it may be apparent from the face of a wire transfer instruction that the alleged terrorist party has no interest in the blocked wire transfer proceeds, such as where the involvement of the beneficiary bank or the beneficiary have caused the transfers to be blocked; and (d) the uniform treatment of electronic funds transfers.[16]

In all of these respects, Intesa is an "interested person" within the meaning of Article 52 of the C.P.L.R. and is thus entitled to raise plaintiff's failure to show that the judgment debtors own the assets targeted for turnover, as required under TRIA and New York law.  *See* N.Y. C.P.L.R. 5240 ("The court may at any time, on its own initiative or the motion of any interested person . . . make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure."); *Gucci Am., Inc.*, 2012 WL 4468192, at *2 (holding that garnishees have standing pursuant to Article 52 of the C.P.L.R. to challenge a turnover proceeding against property held by garnishees).[17]  In addition, and in a more substantive sense, Intesa is an "interested person" because it is in actual possession of the blocked EFTs and is a necessary party to this proceeding.

---

[16] *See* Clearing House Brief, attached as Exhibit L to the Kerr Declaration (ECF No. 89-16), at 4 (explaining that Article 4A "must be uniformly applied to ensure that the [funds-transfer system in the United States] operates with certainty, speed and efficiency").

[17] *See also* N.Y. C.P.L.R. 5239 ("[A]ny interested person may commence a special proceeding against the judgment creditor or other person with whom a dispute exists to determine rights in the property or debt.").

## CONCLUSION

For the foregoing reasons, Intesa Sanpaolo S.p.A. respectfully requests that the Court stay any further turnover proceedings against Intesa pending the Second Circuit's decision in the coordinated appeals of *Calderon-Cardona v. JPMorgan Chase Bank, N.A.*, No. 12-75, and *Hausler v. JPMorgan Chase, N.A.*, Nos. 12-1264 and 12-1272, or, in the alternative, that the Court dismiss or deny the motion on procedural grounds or on the merits.

Dated:   New York, New York
            April 8, 2013

DAVIS POLK & WARDWELL LLP

By: _____
            James L. Kerr
            Jennifer G. Newstead
            Gina Cora

450 Lexington Avenue
New York, New York 10017
(212) 450-4552
James.Kerr@davispolk.com
*Attorneys for Intesa Sanpaolo, S.p.A.*

15