IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

———————————————————————x
ALDO VERA, JR., as Personal Representative
of the Estate of Aldo Vera, Sr.,

                                  Plaintiffs,

                -against-

THE REPUBLIC OF CUBA,

                            Defendant.

———————————————————————x

         12-Civ-1596 (AKH)

GARNISHEE DEUTSCHE BANK TRUST COMPANY AMERICAS'
REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
ITS CROSS MOTION TO STAY JUDGMENT ENFORCEMENT PROCEEDINGS

COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY  10018-1405
(212) 841-1161

*Attorneys for Garnishee Deutsche*
*Bank Trust Company Americas*

TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................................ii

ARGUMENT ......................................................................................................................1

I.   THIS ACTION SHOULD BE STAYED UNTIL THE SECOND CIRCUIT RULES ON
     TWO PENDING APPEALS THAT RAISE DISPOSITIVE LEGAL ISSUES.....................1

     A.  Plaintiff's Effort to Distinguish the Pending Appeals Is Untenable .......................3

     B.  Allowing This Action to Proceed Before the Second Circuit Rules Would
         Prejudice DBTCA.........................................................................................3

     C.  Allowing This Action to Proceed Before the Second Circuit Rules Would
         Prejudice Third Parties.................................................................................5

     D.  Plaintiff Will Not Be Prejudiced by a Stay ...........................................................6

     E.  The Public Interest and Judicial Economy Would Be Served
         by Granting a Stay .......................................................................................6

     F.  Substantial Questions Over Subject Matter Jurisdiction and the Validity of the
         Judgment Obtained by Plaintiff Also Support a Stay ...........................................8

     G.  Plaintiff's Other Arguments Are Without Merit.....................................................9

     H.  DBTCA Has Standing to Assert These Objections .............................................11

CONCLUSION....................................................................................................................12

TABLE OF AUTHORITIES

**Cases**

*Allied Maritime, Inc. v. Descatrade SA*,
620 F.3d 70 (2d Cir. 2010)................................................................................3

*Bergdorf Goodman, Inc. v. Marine Midland Bank*,
411 N.Y.S.2d 490 (Civ. Ct. 1978) ....................................................................5

*Calderon-Cardona v. JPMorgan Chase Bank, N.A.*,
No. 12-75 (2d Cir. 2012)...........................................................................passim

*Calderon-Cardona v. JPMorgan Chase Bank, N.A.*,
867 F. Supp. 2d 389 (S.D.N.Y. 2011)......................................................1, 9-10

*Citibank (S.D.), N.A. v. Island Fed. Credit Union*,
740 N.Y.S.2d 546 (App. Term 2001) ...............................................................5

*Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co., Ltd.*,
609 F.3d 111 (2d Cir. 2010)..........................................................................1, 6

*Grain Traders, Inc. v. Citibank, N.A.*,
160 F.3d 97 (2d Cir. 1998)................................................................................3

*Gucci Am., Inc. v. Bagsmerchant, LLC*,
No. 10 Civ. 2911 (SAS), 2012 WL 4468192 (S.D.N.Y. Sept. 27, 2012)..................2

*Hausler v. JP Morgan Chase Bank, N.A.*,
740 F. Supp. 2d 525 (S.D.N.Y. 2010)..........................................................2-3

*Hausler v. JPMorgan Chase Bank, N.A.*,
No. 12-1272 (2d Cir. 2012)...........................................................................1-3

*Estate of Heiser v. Deutsche Bank Trust Co. Americas*,
No. 11 Civ. 1608 (AJN) (MHD), 2012 WL 2865485 (S.D.N.Y. July 10, 2012)
(Dolinger, Mag. J.).....................................................................................passim

*Estate of Heiser v. Deutsche Bank Trust Co. Americas*,
No. 11 Civ. 1608 (AJN) (MHD), 2012 WL 5039065 (S.D.N.Y. Oct. 17, 2012)
(Nathan, J.).................................................................................................passim

*Estate of Heiser v. Islamic Rep. of Iran*,
885 F. Supp. 2d 429 (D.D.C. 2012) ..........................................................passim

*LaSala v. Needham & Co., Inc.*,
399 F. Supp. 2d 421 (S.D.N.Y. 2005)...............................................................5

*Scanscot Shipping Services GmbH v. Metales Tracomex LTDA*,
 617 F.3d 679 (2d Cir. 2010)................................................................ 1, 6-7

*Shipping Corp. of India Ltd.* v. *Jaldhi Overseas Pte Ltd.*,
 585 F.3d 58 (2d Cir. 2009)..................................................................... 1, 6

**Statutes**

CPLR § 1001(a) ....................................................................................... 4-5

CPLR § 1003............................................................................................... 5

CPLR § 5225(b) .......................................................................................... 4

CPLR § 5227............................................................................................... 4

CPLR § 5239............................................................................................. 11

CPLR § 5240............................................................................................. 11

UCC § 4A-209(a) ........................................................................................ 7

UCC § 4A-402 ............................................................................................. 3

UCC § 4A-502 ..................................................................................... 6-7, 10

UCC § 4A-505 ............................................................................................. 7

**Other Authorities**

Fed. R. Civ. P. 19..................................................................................... 4-5

Non-party garnishee Deutsche Bank Trust Company Americas ("DBTCA")
respectfully submits this Reply Memorandum of Law in Further Support of Its Cross Motion to
Stay Judgment Enforcement Proceedings.

ARGUMENT

I.   THIS ACTION SHOULD BE STAYED UNTIL THE SECOND CIRCUIT RULES ON
     TWO PENDING APPEALS THAT RAISE DISPOSITIVE LEGAL ISSUES.

Plaintiff offers no persuasive reason why this case should not be stayed pending
the Second Circuit's decision in *Calderon-Cardona et al. v. JPMorgan Chase Bank, N.A.*, *et al.*,
No. 12-75 and *Hausler v. JPMorgan Chase Bank, N.A.*, No. 12-1272.  To the contrary, by
conceding that it seeks the turnover of the Blocked Wires on the basis that each had a Cuban
*beneficiary*, Plaintiff's opposition brief confirms that the Second Circuit's decision in the
pending appeals is likely to have a profound impact on Plaintiff's claim.  (*See* Pl.'s Mem. Opp'n
Cross Mot. to Stay at 7, 10-11, Apr. 4, 2013, ECF No. 166 (hereinafter "Pl. Opp'n").)

Whether a midstream EFT may be attached on the ground that the judgment
debtor was a *beneficiary* of the wire is an issue that is squarely before the Second Circuit in the
*Calderon-Cardona* and *Hausler* appeals.  In *Calderon-Cardona*, the district court ruled that a
blocked wire may not be attached as property of the beneficiary because "[t]he Second Circuit
has ruled repeatedly and unambiguously that, pursuant to Article 4–A, the interest of an
originator or a beneficiary in a midstream EFT falls short of property ownership." *Calderon-
Cardona v. JPMorgan Chase Bank, N.A.*, 867 F. Supp. 2d 389, 400 (S.D.N.Y. 2011) (citing
*Shipping Corp. of India Ltd.* v. *Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 70 (2d Cir. 2009), *Exp.-
Imp. Bank of U.S. v. Asia Pulp & Paper Co., Ltd.*, 609 F.3d 111, 116 (2d Cir. 2010), and
*Scanscot Shipping Servs. GmbH v. Metales Tracomex LTDA*, 617 F.3d 679, 682 (2d Cir. 2010)).

1

By contrast, in *Hausler*, the district court held that Article 4A of the Uniform Commercial Code ("UCC") was preempted in this context, and concluded that the interest of a beneficiary was sufficient to support attachment. *See Hausler v. JP Morgan Chase Bank, N.A.*, 740 F. Supp. 2d 525, 531-33 (S.D.N.Y. 2010).

The Second Circuit thus has before it two conflicting district court decisions both of which bear directly on whether Plaintiff has a viable claim. If it affirms *Calderon-Cardona*, then it will be clear that Plaintiff has no right to attach any of the Blocked Wires at issue here. If, on the other hand, it affirms *Hausler*, Plaintiff may have a viable claim, depending on exactly how the court rules. The Second Circuit's decision will therefore either dispose of Plaintiff's claim completely or substantially clarify the rules that must be applied in adjudicating it. Under the circumstances, it would make no sense to proceed before the Second Circuit decides the pending appeals, as two other judges in this district have acknowledged by staying a similar judgment enforcement proceeding. *See Estate of Heiser v. Deutsche Bank Trust Co. Americas*, No. 11 Civ. 1608 (AJN) (MHD), 2012 WL 2865485, at *5 (S.D.N.Y. July 10, 2012) (Dolinger, Mag. J.) ("In recognition of the fact that the Second Circuit will likely be ruling on legal issues potentially dispositive in this case, it is in the best interest of this court to await the decision in the consolidated *Calderon–Cardona* and *Hausler* appeals.") (hereinafter "*Heiser I*"); *see also Estate of Heiser v. Deutsche Bank Trust Co. Americas*, No. 11 Civ. 1608 (AJN) (MHD), 2012 WL 5039065 (S.D.N.Y. Oct. 17, 2012) (Nathan, J.) (affirming magistrate's stay order) (hereinafter, "*Heiser II*").

Despite the clear and compelling logic favoring a stay, Plaintiff offers a variety of arguments for continuing to litigate, but none are convincing, as explained in detail below.

A.  *Plaintiff's Effort to Distinguish the Pending Appeals is Untenable.*

In opposing a stay, Plaintiff attempts to distinguish the *Calderon-Cardona* and *Hausler* appeals from this proceeding, arguing that while the appeals involve "EFTs," this action involves "long-standing, interest bearing" accounts established to hold the proceeds of blocked EFTs.  (Pl. Opp'n at 6-7.)  The distinction is specious, because *Calderon-Cardona* and *Hausler* involve exactly the same property at issue here — bank accounts established to hold the proceeds of EFTs blocked pursuant to sanctions regulations.  *See Hausler v. JP Morgan Chase Bank, N.A.*, 740 F. Supp. 2d 525, 540 (noting that accounts at issue consist of interest-bearing accounts opened to hold proceeds of blocked EFTs).  Because exactly the same type of property is at issue in the appeals as in this case, there is no question that the Second Circuit's ruling in the appeals will impact Plaintiff's claim.[1]

B.  *Allowing This Action to Proceed Before the Second Circuit Rules Would Prejudice DBTCA.*

Plaintiff asserts that "[s]ince Garnishee will suffer no injury from turnover of the accounts to Movant, there can be no prejudice to Garnishee from proceeding to decision now." (Pl. Opp'n at 7.)  The argument fails, because it completely ignores the prejudice to DBTCA of being forced to incur the significant expense and distraction of litigation that may prove entirely unnecessary, including litigation over whether the Blocked Wires are subject to attachment, litigation over who bears responsibility for joining other potential adverse claimants, and

---

[1] In any event, for purposes of determining whether the proceeds of a wire transfer are subject to attachment, there is no relevant distinction between a midstream EFT and an account that has been established by a bank to hold the proceeds of a midstream EFT: "no alchemy by the bank can transform EFTs that cannot be attached into property of the defendant that can be attached." *Allied Maritime, Inc. v. Descatrade SA*, 620 F.3d 70, 76 (2d Cir. 2010) (internal citations and quotation marks omitted).  Whether or not a bank establishes a suspense account to hold the proceeds of a blocked EFT, the UCC governs the disposition of the funds, because it dictates what must be done with the proceeds of a fund transfer that cannot be completed.  *See* UCC § 4A-402; *see also Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 100-01 (2d Cir. 1998) (noting that the UCC governs "the obligation of a receiving bank to refund payment in the event the transfer is not completed").

3

litigation — potentially including interpleader proceedings — necessary to ensure that all adverse claimants are joined and that none seeks to impose duplicative liability on DBTCA.  As two judges in this district have ruled in a similar judgment enforcement proceeding, this substantial prejudice weighs in favor of granting a stay.  *See Heiser I*, 2012 WL 2865485, at \*4 ("Because the decision of the circuit court may effectively dispose of some or all of this proceeding, a stay would potentially absolve DBTCA of the need to litigate a variety of issues otherwise presented here and thus avoid the need for unnecessary litigation"); *see also Heiser II*, 2012 WL 5039065, at \*5 (S.D.N.Y. Oct. 17, 2012) ("Respondent certainly has an interest in avoiding such litigation if it would be rendered moot by resolution of the consolidated appeals.")

   The prejudice that DBTCA would suffer absent a stay is particularly acute because of the procedurally improper manner in which Plaintiff has proceeded.  As DBTCA explained in its opening brief, rather than filing a turnover *motion*, Plaintiff should have proceeded by filing a turnover *petition*, which would have provided Plaintiff with the opportunity and the obligation to join all adverse claimants in the proceeding as necessary parties.  *See* CPLR § 5225(b) (requiring commencement of a special proceeding); CPLR § 5239 (same); *see also* Fed. R. Civ. P. 19; CPLR § 1001(a).[2]  Instead, Plaintiff chose to proceed by motion and to ignore the many parties to the underlying wire transaction who may have competing claims to the Blocked Wires.  Having failed to join these necessary parties, Plaintiff now argues that DBTCA's "remedy is to do nothing or interplead" the parties itself.  (Pl. Opp'n at 5.)  Plaintiff would thus unfairly impose on DBTCA the enormous burden and expense of locating and commencing interpleader proceedings against hundreds of potential adverse claimants.

---

[2] Plaintiff cites a variety of cases for the proposition that, in federal court, it is sufficient to file a motion rather than commence a special proceeding, but the cases are distinguishable and unpersuasive for reasons discussed in Point II of Intesa Sanpaolo S.P.A.'s Reply Memorandum of Law (ECF No. 177; hereinafter the "Intesa Reply Brief"), which DBTCA hereby adopts and incorporates by reference.

This burden would be extremely prejudicial to DBTCA, particularly if it ultimately proves unnecessary in light of the Second Circuit's ruling in the pending appeals. It would also be unjustified as a matter of law, because Plaintiff himself bears the burden of joining necessary parties in this action; turnover proceedings are subject to dismissal if necessary parties are not joined by the judgment creditor. *See, e.g.*, *Citibank (S.D.), N.A. v. Island Fed. Credit Union*, 740 N.Y.S.2d 546, 547 (App. Term 2001) ("proceeding was properly dismissed without prejudice" because property rights of the absent account owner "in the joint account would be substantially affected by a court's determination to turn over funds in the account to the judgment creditor"); *Bergdorf Goodman, Inc. v. Marine Midland Bank*, 411 N.Y.S.2d 490, 492 (Civ. Ct. 1978) (dismissing petition where judgment creditor failed to join judgment debtor's wife, who had interest in bank accounts); *see also* CPLR §§ 1001, 1003; Fed. R. Civ. P. 19.

C. *Allowing This Action to Proceed Before the Second Circuit Rules Would Prejudice Third Parties.*

Plaintiff's opposition brief ignores the point that allowing this action to proceed would also prejudice third parties — one of the factors a court must consider in determining whether to grant a stay. *See LaSala v. Needham & Co., Inc.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005) (court must consider "the interests of persons not parties to the civil litigation"). It is not in the interest of the many potential third party claimants to the Blocked Wires to be forced to litigate their claims to the wires now, in advance of a Second Circuit ruling that will clarify the law and may make such litigation unnecessary. Rather, as the Court in *Heiser II* ruled,

> To the extent the Second Circuit clarifies the governing law, third party claimants will be able to make more informed determinations about the merits of their individual claims. As a result, the stay will spare third parties the expense and time of joining or being joined in the present matter with claims that the consolidated appeals could render meritless.

*Heiser II*, 2012 WL 5039065, at *6.

#### D. *Plaintiff Will Not Be Prejudiced by a Stay.*

Plaintiff's opposition brief conspicuously fails to argue that Plaintiff will suffer any prejudice whatsoever as a result of a stay.   The absence of any prejudice to Plaintiff weighs strongly in favor of staying this proceeding until the Second Circuit has ruled. *See, e.g., Heiser I*, 2012 WL 2865485, at *3-4 (noting that the "principal purpose of this five-factor test" governing whether to grant a stay is "to avoid prejudice").

#### E.   *The Public Interest and Judicial Economy Would Be Served by Granting a Stay.*

Unable to offer any evidence or argument that Plaintiff will suffer any prejudice, Plaintiff asserts that the "public interest" in enforcing judgments against state sponsors of terrorism weighs in favor of allowing this action to proceed.  (Pl. Opp'n at 7.)  The argument fails because it rests on the dubious assumption that the property at issue here belongs to Cuba and may properly be used to enforce a judgment against Cuba.

The only interest of Cuba or its agencies or instrumentalities in the Blocked Wires appears to be that of a beneficiary or beneficiary bank.[3]  As a result, Cuba has no attachable property interest in the wires, as the Second Circuit is likely to confirm in the pending appeals. The Second Circuit has ruled three times in the past four years that the beneficiary of an EFT has no property interest in the wire while it is in the possession of an intermediary bank; rather, "the only party with a claim . . . is the sender to that bank, which is typically the originator's bank." *See Asia Pulp*, 609 F.3d at 119-20 (internal citations and quotation marks omitted); *Jaldhi*, 585 F.3d at 70; *Scanscot*, 617 F.3d at 682; *see also* UCC § 4A-502 official cmt. 4 ("until the funds

---

[3] Plaintiff's assertion that Cuban instrumentalities are the named beneficiaries of all of the Blocked Wires appears to be incorrect.  In certain instances, the wires appear to have been blocked on the basis that the beneficiary *bank* — rather than the beneficiary — was a Cuban entity.  (*See* Gimbel Decl. Ex. C.) However, the distinction is not significant to this motion or Plaintiff's claim, because beneficiary banks likewise have no claim to wires in the possession of an intermediary bank under the UCC.  *See Estate of Heiser v. Islamic Rep. of Iran*, 885 F. Supp. 2d 429, 447-48 (D.D.C. 2012).

transfer is completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary, the beneficiary has no property interest").

The public interest does not favor allowing Plaintiff to proceed with its effort to satisfy a judgment against Cuba by seizing property that is owned by originating banks with no connection to Cuba. Such a result would not only unfairly penalize the originating banks, but also allow Cuba to escape responsibility for the judgment against it by requiring unrelated parties to pick up the tab.

Plaintiff argues that any claims of originating banks have now been waived by operation of the one-year statute of repose in Section 4A-505 of the UCC, but the argument fails because the provision has no application. Section 4A-505 applies only if a payment order has been "accepted by the bank." UCC § 4A-505. Under the UCC, a payment order is "accepted" by an intermediary bank "when it executes the order." UCC § 4A-209(a). Here, none of the payment orders at issue were accepted by DBTCA, because the bank blocked each of the transactions pursuant to sanctions regulations rather than executing the payment orders. As a result, the statute of repose in Section 4A-505 has no application.

Plaintiff tacitly conceded as much, by withdrawing its claim to the largest of the Blocked Wires the moment an originating bank, the National Bank of Canada, moved to intervene in this action and asserted a competing claim to the funds. (*See* Pl.'s Withdraw of Writ of Execution, Apr. 8, 2013, ECF No. 173.)   Rather than arguing that National Bank of Canada's claim was barred by the (inapplicable) statute of repose in Section 4A-505 of the UCC, or otherwise attempting to establish a superior right to the wire, Plaintiff abandoned his claim to the wire before this Court could adjudicate the issue. (*See id.*)

By capitulating in the face of a competing claim by an originating bank, Plaintiff effectively conceded that its legal position is tenuous at best.  The public interest is not served by allowing Plaintiff to pursue tenuous claims which a pending appeal is likely to foreclose.  Rather, the public interest — including the interest of judicial economy — is served by briefly staying this action to permit the Second Circuit to rule on dispositive legal issues that may render this proceeding unnecessary.  *See Heisler I*, 2012 WL 2865485, at *5 ("considerations of judicial economy are frequently viewed as relevant to the public interest, and, as noted, they weigh against the investment of court resources that may prove to have been unnecessary").

### F.   *Substantial Questions Over Subject Matter Jurisdiction and the Validity of the Judgment Obtained by Plaintiff Also Support A Stay.*

A stay would also serve the salutary purpose of allowing this Court time to consider the substantial concerns that have been raised by other parties as to the validity of the judgment Plaintiff seeks to enforce and whether subject matter jurisdiction is lacking.

After the filing of DBTCA's motion to stay, the plaintiffs in *Villoldo v. Republic of Cuba* asserted that the Florida court that issued the original judgment lacked subject matter jurisdiction under the then-applicable terrorism exception to the Foreign Sovereign Immunities Act ("FSIA") because Aldo Vera, Sr. was not a United States national at the time of the events giving rise to plaintiff's claim against Cuba.  (*See* Mem. in Opp'n to Pl.'s Turnover Mot. Against Commerzbank AG at 5-8, Mar. 29, 2013, ECF No. 156.).  Similarly, intervener National Bank of Canada asserted that, because Aldo Vera, Sr. was not a national at the time of the events giving rise to Plaintiff's claim — and because Cuba was not designated as a state sponsor of terrorism prior to or as a result of the events giving rise to Plaintiff's claim — the operative terrorism exception to the FSIA applied neither to the underlying Florida Action nor to this action, depriving both courts of subject matter jurisdiction and rendering void both (a) the Florida

judgment, and (b) the judgment of this Court granting it full faith and credit. (*See* Mem. in Opp'n to Pl.'s Turnover Mot. at 6-9, Mar. 25, 2013, ECF No. 140.)

Because these objections, if valid, would vitiate the judgments Plaintiff seeks to enforce and deprive the Court of subject matter jurisdiction to grant the relief Plaintiff seeks, there is even more reason to stay Plaintiff's judgment enforcement effort.  Neither the public interest nor the interest of judicial economy warrant forcing DBTCA and third parties to participate in this proceeding so long as these issues remain unresolved.

### G. *Plaintiff's Other Arguments Are Without Merit.*

Plaintiff makes a variety of other arguments in support of its claim to the Blocked Wires, but none are so obviously correct as to justify forging ahead rather than awaiting a ruling from the Second Circuit.   Indeed, the arguments are not even minimally persuasive.

Plaintiff asserts, for example, that the Blocked Wires must belong to Cuba or its agencies or instrumentalities because the suspense accounts created by DBTCA to hold the funds are titled in the name of the Cuban beneficiaries of the wires. (Pl. Opp'n at 10-11.)  The titling of the accounts, however, does not reflect any determination as to who owns the funds.  Rather, it is DBTCA's practice, *as a matter of administrative convenience only*, to apply a title that includes the name of the entity whose participation in the transaction led it to be blocked. (*See* York Decl. ¶ 4.)   While an account will sometimes be titled in the name of a beneficiary as a result of this practice, such a title does not reflect a determination by DBTCA that the funds are *owned by* the beneficiary. (*See id.* ¶ 5.)

Plaintiff also argues that the provisions of the UCC which bar its claim are preempted by federal law (Pl. Opp'n at 9), but this argument is unpersuasive for the reasons set forth in detail in the Intesa Reply Brief and the decision of the District Court in *Calderon-Cardona*. *See Calderon-Cardona*, 867 F. Supp. 2d at 401-05; (Intesa Reply Brief Point III(A)

and III(B)).  Moreover, even if federal law did preempt the UCC, it would lead to the same result, because federal common law would look to the UCC for guidance on this issue.  *See Estate of Heiser v. Islamic Rep. of Iran*, 885 F. Supp. 2d 429, 447 (D.D.C. 2012) (applying the UCC to ownership of wire transfers despite finding state law preempted and reasoning that "[t]he universal adoption of Article 4A" by every state and the Federal Reserve "makes it of great importance to this Court in finding principles" of federal common law).

Plaintiff further asserts that the Cuban beneficiaries of the wires have a claim as third party beneficiaries of contracts between the originator and the sending bank (Pl. Opp'n at 10), but this peculiar theory is wholly at odds with the provisions of the UCC establishing that "until the funds transfer is completed by acceptance by the beneficiary's bank . . . , *the beneficiary has no property interest in the funds transfer* which the beneficiary's creditor can reach."  *See* UCC § 4A-502 official cmt. 4 (emphasis added).  As noted above, the UCC controls whether it applies directly or by application of federal common law.

Plaintiff invokes Section 1610(f)(1)(a) of the FSIA as somehow lending support to its claim to the Blocked Wires (Pl. Opp'n at 1-2), but the provision is of no force or effect because it was waived by President Clinton immediately after its enactment.  *See Calderon-Cardona*, 867 F. Supp. 2d at 402 n.7 ("The petitioners cannot rely on this section directly, however, because it is subject to Presidential waiver and President Clinton exercised this waiver authority upon signing the bill into law.").[4]  Moreover, while the provision states that blocked assets may be made available for execution, it nowhere purports to rewrite hundreds of years of

---

[4] In similar fashion, Plaintiff purports to make an argument based on 22 U.S.C. § 6032(h), but then misquotes the provision, which reads as follows and does not support Plaintiff's point: "The economic embargo of Cuba, as in effect on March 1, 1996, including all restrictions under part 515 of title 31, Code of Federal Regulations, shall be in effect on March 12, 1996, and shall remain in effect, subject to section 6064 of this title."

common law and provide that such property may be used to satisfy a judgment *even if owned by a party other than the judgment debtor.*

None of Plaintiff's arguments are remotely persuasive. But, even if Plaintiff had a colorable theory, it is indisputable that the arguments on the other side are strong. To warrant a stay pending an appeal, a movant need not show that its legal position is likely to prevail on appeal. It need only demonstrate a "substantial possibility" of prevailing. *Heiser I*, 2012 WL 5039065, at *6. Here, it is beyond cavil that such a substantial possibility exists, given the decision of the district court in *Calderon-Cardona* and the substantial Second Circuit precedent supporting it — all of which suggest that Cuba does not own the Blocked Wires and that Plaintiff's effort to seize them in satisfaction of a judgment against Cuba is therefore unfounded. *See id.* (finding "substantial possibility" that the Second Circuit will agree with DBTCA's position, given the decision in *Calderon-Cardona*).

### H. DBTCA Has Standing to Assert these Objections.

Unable to forge a persuasive response on the merits, Plaintiff argues that DBTCA "lacks a pecuniary interest" in the Blocked Wires and therefore is a mere "gadfly" without standing to object to turnover or seek other relief. (Pl. Opp'n at 5.) The argument fails.

The CPLR provides that any "interested person" has standing to move for an "order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure." CPLR § 5240 (providing that any "interested person" may seek an order "denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure"); *see also* CPLR § 5239 (court may grant standing to "any interested person" to intervene in a proceeding to determine adverse claims). DBTCA plainly qualifies as an "interested person" with standing to object to Plaintiff's procedurally improper and legally unfounded effort to seek the turnover of the Blocked Wires.

11

As a stakeholder in possession of the Blocked Wires, DBTCA has a clear interest in ensuring that the wires are not turned over to the wrong party, lest the rightful owner seek to hold DBTCA accountable.  DBTCA also has an interest in avoiding the expense of unnecessary judgment enforcement proceedings based on tenuous legal theories, particularly when the Second Circuit is poised to decide a legal issue that may well dispose of Plaintiff's claims. DBTCA has a further interest in ensuring that the rights of its correspondent banking clients — the originating banks who may have a superior claims to these funds — are not ignored.  For all of these reasons, there can be no real doubt that DBTCA is an "interested person" entitled to raise the various legal objections to turnover it has asserted in this matter.  *See Gucci Am., Inc. v. Bagsmerchant, LLC*, No. 10 Civ. 2911 (SAS), 2012 WL 4468192, at *2 (S.D.N.Y. Sept. 27, 2012) (holding that garnishees have standing as "interested persons"  under the CPLR).

CONCLUSION

For the foregoing reasons, and those set forth in DBTCA's initial brief, DBTCA respectfully submits that Plaintiff's Turnover Motion should be denied and that all further judgment enforcement proceedings should be stayed.

Dated: New York, New York
       April 15, 2013

COVINGTON & BURLING LLP

By: _____
       Mark P. Gimbel
The New York Times Building
620 Eighth Avenue
New York, NY  10018-1405
(212) 841-1161

*Attorneys for Garnishee Deutsche Bank Trust Company Americas*