IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ALDO VERA, JR., as Personal Representative         12 Civ. 1596 (AKH)
of the Estate of Aldo Vera, Sr.,

                                  **Plaintiff,**

      v.

THE REPUBLIC OF CUBA,

                                  **Defendant.**

v.

BANCO SANTANDER, S.A.; and
INTESA SANPAOLO S.P.A.,

                                  **Garnishees.**

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
## TO COMPEL FULL AND COMPLETE ANSWERS
## TO INFORMATION SUBPOENAS

Plaintiff Aldo Vera, Jr. has moved this Court to compel Garnishees Banco Santander, S.A. and Intesa Sanpaola S.p.A., (the "Bank Garnishees") to submit full and complete answers to an information subpoena served on each more than three (3) months ago. Each is known to plaintiff to possess assets of the Defendant, including its agencies and instrumentalities. The responses of the Bank Garnishees were each limited to Cuban related "blocked" accounts <u>inside</u> the United States. Each of the Bank Garnishees declined to furnish full and complete information as to Defendant's assets located in the Bank Garnishees' branches <u>outside</u> the United States.

I.      **Factual Background**

As set forth in the Declaration of Robert Swift, this Court entered Judgment on August 20, 2012 for plaintiff and against the Republic of Cuba in the amount of $49,346,773.09. *See* Declaration Exhibit 1. The Judgment was entered pursuant to 28 U.S.C. § 1605(a)(7) [now 1605A], for an intentional, terroristic act: the assassination on US soil of an American national who opposed Fidel Castro. Cuba was, and is, designated by the United States as a state sponsor of terrorism. *Weininger v. Castro*, 462 F.Supp.2d 457, 479 (S.D.N.Y. 2006) (J. Marrero). Plaintiff is authorized by law, 28 U.S.C. § 1610(g), to execute upon the assets of Cuba, its agencies and instrumentalities, since the Judgment falls within the terrorism exception to sovereign immunity from attachment and execution. Upon Motion, this Court entered an Order pursuant to 28 U.S.C. § 1610(c) on October 11, 2012 permitting Plaintiff to commence attachment and execution on property of the Republic of Cuba. The Order was amended *nunc pro tunc* on January 22, 2013. *See* Declaration Exhibit 2.

Plaintiff served the named Bank Garnishees in late October 2012 with information subpoenas seeking information as to assets of the Republic of Cuba, its agencies and instrumentalities, in their branches in the United States and outside the United States. *See* Declaration at ¶9 and Exhibit 5. Service was effected on each by certified mail, return receipt requested, in late October 2012. The Bank Garnishees eventually provided plaintiff with information as to Cuban related accounts <u>inside</u> the United States but declined to furnish information as to accounts or other property <u>outside</u> the United States. Declaration Exhibits 6 and 7. Efforts to resolve this discovery dispute failed. Declaration at ¶'s 14 and 19. This Court has approved a Protective Order (ECF #24) which many Garnishees banks, except Banco Santander, have joined so that information produced in response to the subpoenas can be

maintained in privacy and protected from public disclosure. Plaintiff has no objection to joining Banco Santander to the Protective Order.

## II. ARGUMENT

Property of Cuba, its agencies and instrumentalities, in the United States has been "blocked" for decades by the United States Department of the Treasury pursuant to 31 C.F.R. Part 515. Cuban "blocked" assets constitute the only available Cuban property in the United States that Plaintiff may execute upon to satisfy his judgment. Declaration at ¶6. It is clear, however, that plaintiff will not be able to wholly satisfy his almost $50 million Judgment against Cuba from "blocked" assets. Declaration at 16. Accordingly, plaintiff must seek enforcement of his Judgment from Cuban assets outside the United States. The time, cost and difficulty incumbent in enforcing the Judgment in foreign countries is substantial. To do so, plaintiff needs specific information as to which banks in which countries hold specific Cuban assets. Discovery in most foreign countries is more narrow than in the United States. In addition, it is often difficult or impossible to obtain banking information. The Garnishee Banks are believed to have pertinent information regarding Cuban accounts outside the United States. These banks have headquarters or branches in countries which are among Cuba's largest trading partners. Declaration at ¶17. Therefore, information from the banks is pertinent to collection and may materially assist plaintiff in collecting on his Judgment in foreign countries. *Id.*

### A. The Law in this Circuit Permits Plaintiff to Obtain Information of a Judgment Debtor's Assets Outside the United States From Banks Subject to Personal Jurisdiction in New York

In *Eitzen Bulk A/S v. Bank of India*, 827 F.Supp.2d 234 (S.D.N.Y. 2011), this Court held that a bank receiving an information subpoena in a postjudgment execution proceeding must respond as to all its branches worldwide. This Court observed that a bank with overseas

branches not separately incorporated may not hide behind the "separate entity" rule to limit its responses.

> Under New York law, a subpoena duces tecum served on a corporation doing business or licensed to do business in New York reaches all responsive materials within the corporation's control, even if those materials are located outside New York. In other words, New York law "expressly allows the securing of out-of-state materials by in-state service of a subpoena on the party in control of the materials." (citations omitted)

*Id.* at 238.

The Court of Appeals cited with approval the ruling in *Eitzen Bulk* in its recent decision in *EM Ltd. v. Republic of Argentina*, 695 F.3d 201 (2d Cir. 2012). In that case, the Republic of Argentina appealed a district court ruling that two nonparty banks must comply with subpoenas served on their New York branches seeking information as to where Argentina maintained accounts worldwide and how it moved money around the world. The Court observed at pages 207-08:

> At the outset, we note that broad post-judgment discovery in aid of execution is the norm in federal and New York state courts. Post-judgment discovery is governed by, which provides that "[i]n aid of the judgment or execution, the judgment creditor ... may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." The scope of discovery under is constrained principally in that it must be calculated to assist in collecting on a judgment. New York state's post-judgment discovery procedures, made applicable to proceedings in aid of execution by Federal, have a similarly broad sweep. The New York Civil Practice Law and Rules provides that a "judgment creditor may compel disclosure of all matter relevant to the satisfaction of the judgment." (citations omitted)

Referring specifically to banks doing business in New York, the Court stated:

> It is not uncommon to seek asset discovery from third parties, including banks, that possess information pertaining to the judgment debtor's assets. Nor is it unusual for the judgment creditor to seek disclosure related to assets held outside the jurisdiction of the court where the discovery request is made. (citations omitted)

On a point directly applicable to the instant case, the Court rejected the judgment debtor's claim that enforcement of the subpoenas would infringe on its sovereign immunity, stating at page 208:

> ... [T]he district court's power to order discovery to enforce its judgment does not derive from its ultimate ability to attach the property in question but from its power to conduct supplementary proceedings, involving persons indisputably within its jurisdiction, to enforce valid judgments. ... Whether a particular sovereign asset is immune from attachment must be determined separately under the FSIA, but this determination does not affect discovery. Whatever hurdles NML will face before ultimately attaching Argentina's property abroad (and we have no doubt there will be some), it need not satisfy the stringent requirements for attachment in order to simply receive information about Argentina's assets.

Other authorities supporting discovery of a judgment debtor's assets wherever located include: N.Y. C.P.L.R. 5223; *First City, Texas-Houston, N.A. v. Rafidain Bank*, 281 F.3d 48, 54 (2d Cir. 2002) ("judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor"); *FG Hemisphere v. Democratic Republic of the Congo*, 637 F.3d 373, 380 (D.C. Cir. 2011) (upholding contempt for failure to comply with asset discovery order); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1471 and 1475 (9th Cir. 1992) (upholding worldwide discovery of state-owned company).

In the instant case, plaintiff has a Judgment and is authorized by this Court to execute on that Judgment under Section 1610(g) of the Foreign Sovereign Immunities Act. The Judgment debtor is a designated state sponsor of terrorism, and all its assets in the United States are "blocked" and subject to execution here. The Garnishee Banks, with branches located in New York City, are required to furnish discovery as to the Judgment debtor's assets worldwide.

### B. The "Separate Entity Rule" Does Not Shield the Garnishee Banks From Furnishing Information As to Cuban Accounts Outside the United States

Each of the Bank Garnishees is a fully integrated banking corporation with a branch in New York City. Declaration Exhibits 3 and 4. The banks maintain branches in countries around the world. *Id.* However, the branches are not separately incorporated. *Id.* Rather, they are simply divisions of the same banking corporation.

The "separate entity rule," since discredited in *Koehler v. Bank of Bermuda, Ltd.*, 12 N.Y. 3d 533, 883 N.Y.S.2d 763 (2009), treats bank branches as separate entities for prejudgment attachment purposes. *See Allied Mar., inc. v. Descatrade SA,* 620 F.3d 70, 74 (2d Cir. 2010). As this Court explained in *Eitzen Bulk, supra,* 827 F.Supp2d 234 at 240, the "separate entity rule" in New York was limited by *Koehler* to prejudgment attachment proceedings. The rule has no application to postjudgment proceedings, and certainly not to furnishing information for use in postjudgment collection proceedings. *Id.*; *EM Ltd., supra.*

### III. Conclusion

For all the foregoing reasons, plaintiff requests this Court to enter an Order compelling each of the Garnishees to furnish to plaintiff's counsel full and complete answers to the information subpoenas served on each for the Republic of Cuba, its agencies and instrumentalities, within 30 calendar days from the date of this Order. The responses should include information covering each Garnishee's operations and business worldwide.

Dated: New York, New York
      May 1, 2013

By: /s/ Robert A. Swift
Robert A. Swift (*Pro Hac Vice*)
Kohn, Swift & Graf, P.C.
One South Broad Street, 21st Floor
Philadelphia, PA 19107
(215) 238-1700

Jeffrey E. Glen
Luma Al-Shibib
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY 10020
(212) 278-1000