IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
*****************************************************

| | |
|---|---|
| ALDO VERA, JR., as Personal Representative of the Estate of Aldo Vera, Sr., | 12 Civ. 1596 (AKH) |

**Plaintiff,**

v.

THE REPUBLIC OF CUBA,

**Defendant.**

v.

BANCO SANTANDER, S.A.; and
INTESA SANPAOLO S.P.A.,

**Garnishees.**

------------------------------------------------------

### PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL FULL AND COMPLETE ANSWERS TO INFORMATION SUBPOENAS

Plaintiff Aldo Vera, Jr., by his undersigned counsel, submits this Reply Memorandum in response to the Opposition Memorandum and Declarations submitted by Garnishee Intesa Sanpaolo S.p.A. (ECF #'s 214 thru 217) regarding Vera's Motion to Compel Full and Complete Answers to Information Interrogatories (ECF # 193). Garnishee Banco Santander, S.A. has not opposed Vera's Motion and awaits the order of this Court. *See* Swift Decl. at ¶ 3.

I. **The Information Subpoena Should Be Enforced**

Intesa Sanpaolo implicitly concedes that this Court has the power to order it to comply with the subpoena but poses an array of objections as to why the Court should not exercise its power. Its argument that the subpoena is overbroad misstates the scope of the subpoena. The

subpoena seeks information as to bank accounts of the Cuban government, its agencies and instrumentalities, and provides a list of 73 such entities.[1] At least 64 of those are on the Office of Foreign Assets Control's list of "Specially Designated Nationals and Blocked Persons" related to the Cuban government. This information can be provided through electronic searches. Intesa Sanpaolo has 5,000 branches, including subsidiaries, in 30 countries. The subpoena does not extend to the bank's subsidiaries, so the search is limited to the bank's directly owned branches. The bank fails to estimate the cost of doing an electronic search at its foreign branches, so that cost cannot be a basis for objecting to the breadth of the subpoena.

The bank is misguided in its contention that the CPLR 5224 certification is erroneous. The Treasury Department (through its Office of Foreign Assets Control) notified plaintiff in writing that the bank possessed Cuban blocked assets. In addition, plaintiff identified in his Turnover Motion specific accounts at the bank beneficially owned by Cuban agencies. (ECF # 51) CPLR 5224 is satisfied by a good faith belief that the bank possesses Cuban assets in any of the garnishee bank's branches worldwide, and plaintiff has done that. *See* Swift Declar. at 7.

The bank contends that plaintiff should be forced to proceed pursuant to the Hague Convention. But resort to the Convention is not mandatory and is not even the procedure of first choice. *See Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 540-43 (1987); *First American Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 21 (2d Cir. 1998). The Convention is merely a supplemental procedure to the Federal Rules of Civil Procedure. The fact that this is postjudgment discovery of moveable bank accounts makes use of the Convention impractical. The cost of filing a proceeding in each of the 29

---

[1] Plaintiff is not seeking a search of 113 Cuban agencies and instrumentalities since that list was not part of the subpoena at issue.

foreign countries where Intesa Sanpaolo has branches may be $25,000 – excluding appeals. The time to obtain court rulings will be 6 to 12 months. During that time, Cuba will be able to move its accounts to prevent execution.

The Declarations of two Italian attorneys[2] mention that disclosure of the information as to accounts in Italy may subject the bank to civil damages or criminal penalties for disclosure of confidential information. Of course, there is a Protective Order in this case that can be utilized to keep any information confidential. The declarants fail to mention whether Italian civil and criminal sanctions have ever been employed for any purpose other than to block discovery from courts in the United States. None of the other garnishee banks which cooperated in the production of foreign information were subject to sanctions in Italy. *See* Swift Declar. at ¶2. Moreover, the attorney Declarations only refer to proceedings in Italy. Intesa Sanpaolo does not provide any basis for refusing to disclose information as to Cuban accounts in the other 28 foreign countries it has branches. Finally, whether plaintiff may be successful in bringing actions in foreign countries against Cuban agencies and instrumentalities to collect on his judgment is not germane to whether the subpoena may be enforced. Under New York law and precedents of this Court, plaintiff is entitled to the discovery. *See EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207-08 (2d Cir. 2012); *Eitzen Bulk A/S v. Bank of India*, 827 F.Supp.2d 234, 238 (SDNY 2011).

---

[2] These Declarations are inconsistent with FRCP 44.1 since no advance notice was given of reliance on foreign law, and the authorities cited are not translated into English for the assistance of the Court and opposing counsel. *See* Swift Declara. at ¶6.

## II. This Court Has Subject Matter Jurisdiction

Almost as an aside, Intesa Sanpaolo questions whether this Court possesses subject matter jurisdiction. (ECF # 214 at pp. 5-6) First, it contends that plaintiff was not a United States national at the time of the assassination of his father, Aldo Vera, Sr. Plaintiff became a naturalized citizen of the United States on April 7, 1976, several months before his father was assassinated on October 25, 1976 in Puerto Rico. See Swift Declar. at ¶8. Citizenship qualifies plaintiff a "national" and gave him standing to sue pursuant to 28 U.S.C. § 1605(a)(7).

Second, Intesa Sanpaolo contends that the assassination of Aldo Vera Sr. occurred six years before Cuba was designated a State Sponsor of Terrorism in 1982. True enough. However, § 1605(a)(7) applies to acts of terrorism which led to the designation. As set forth in the Expert Affidavit of Professor Jaime Suchlicki, the State Department was concerned about Cuba's support for and radicalization of the FALN in Puerto Rico and mentioned 260 acts of violence by terrorist groups in Puerto Rico in its submissions to Congress. The assassination of Aldo Vera, Sr., a high-profile anti-Cuban activist, was a major news story and widely covered in the media. Professor Suchlicki concludes that the assassination of Vera Sr. was one of the 260 acts of terrorism in Puerto Rico which led the State Department in 1982 to designate Cuba as a State Sponsor of Terrorism.

## III. Conclusion

For all the reasons set forth above and in plaintiff's opening brief, this Court should order Garnishees Banco Santander and Intesa Sanpaolo to furnish to plaintiff's counsel full and complete answers to the information subpoenas served on each within 30 calendar days.

Dated: New York, New York
      June 7, 2013

By: /s/ Robert A. Swift
Robert A. Swift (*Pro Hac Vice*)
Kohn, Swift & Graf, P.C.
One South Broad Street, 21st Floor
Philadelphia, PA 19107
(215) 238-1700

Jeffrey E. Glen
Luma Al-Shibib
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY 10020
(212) 278-1000