UNITED STATES DISTRICT COURT
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ALDO VERA, JR. as personal Representative of the Estate of Aldo Vera, Sr.**,<br><br>              Plaintiff,<br>vs.<br><br>**THE REPUBLIC OF CUBA,**<br><br>              Defendant. | 12 Civ. 1596 (AKH) |

### AFFIDAVIT OF JAIME SUCHLICKI

STATE OF FLORIDA      :
                              : SS
COUNTY OF MIAMI-DADE    :

      **BEFORE ME**, personally appeared Jaime Suchlicki, who, upon being duly sworn, deposes and says:

      1.      I am the Emilio Bacardi Moreau Distinguished Professor and Director of the Institute for Cuban and Cuban-American Studies at the University of Miami. I am a recognized expert on the conduct and policy of the Castro Regime and the Government of the Republic of Cuba since the revolution began in the late 1950's. During my entire professional career, spanning more than 40 years, I have reviewed all relevant information regarding Cuba issued by, among other sources, the United States government, including all publicly issued statements, and such sources as testimony by United States Government officials before Congressional committees and subcommittees relating to the Cuban Government. A copy of my resume is attached as Exhibit 1.

2. Based upon my professional qualifications and activities, I have furnished expert testimony in a variety of federal and state lawsuits involving the Cuban government's liability for the extrajudicial killing and torture of U.S. and non-U.S. citizens including the cases of *Weininger v. The Republic of Cuba*, *Anderson v. The Republic of Cuba*, and *Hausler v. The Republic of Cuba*.

3. At issue in the above mentioned cases was the basis for Cuba's designation by the United States as a state sponsor of terrorism in 1982. As I concluded in the three cases listed above, the historical evidence overwhelmingly demonstrates that the Government of Cuba was condemned by the Kennedy administration starting no later than early 1961, based at least in part upon the extrajudicial killing and torture of U.S. citizens and foreign nationals; that all subsequent periods through the present, the United States Government continued to condemn the Government of Cuba for these killings and torture; and that, during this entire period, the condemnation of the government of Cuba (which included designation as a state sponsor of terrorism in 1982 and beyond) has been based, at least in part, on extrajudicial killings and tortures. That continues to be my opinion.

4. Cuba exported terrorism and armed revolution to other countries where it supported urban and rural groups by providing training, weapons, propaganda and intelligence. For example, Cuba assisted the Sandinistas in Nicaragua and later utilized similar strategies to support groups in El Salvador, Guatemala, Colombia and Puerto Rico. In particular in Puerto Rico, Cuba supported a violent terrorist group called "The Macheteros," which committed numerous acts of violence in Puerto Rico and the U.S. and eventually found refuge in Cuba. Similarly, Black Panther party members from the U.S. were trained in Canada by Cuban personnel. Black Panther leaders and

other U.S. blacks also received weapons and explosive training in Havana. Attached as Exhibit 2 is an article for which I wrote the foreword describing Cuba's history of terrorism.

5. I understand that parties opposing the Turnover Motion of Aldo Vera, Jr. against Deutsche Bank Trust Company Americas have asserted that the Government of Cuba was designated as a state sponsor of terrorism exclusively by reason of its support for revolutionaries in Latin America in the period around 1982, and not by reason of abuses directed at U.S. nationals and other foreign nationals in the 1960's and 1970's. As part of my professional activities, I have monitored all official and authoritative statements by the United States government (and in particular, the Department of State) regarding the reasons for the imposition of sanctions on Cuba, including the reasons for its designation as a state sponsor of terrorism. I am not aware of any statement which would support the view that Cuban support of Latin American revolutionaries was the only reason for such designation of the Government of Cuba as a state sponsor of terrorism.

6. As part of my professional interest in Cuba and its sponsorship of terrorism, I followed the Congressional Testimony of the U.S. Subcommittee on Security and Terrorism, Committee on the Judiciary in February and March of 1982. The subcommittee held hearings on "The Role of Cuba in International Terrorism and Subversion", and explored Cuba's role in terrorist activities in Latin American and Puerto Rico.

7. Of particular note was the testimony of Daniel James, a specialist in Latin American Affairs, who testified before Congress on March 12, 1982. Mr. James testified extensively regarding Cuba's involvement in training, arming, directing and supporting violent terrorist subversive groups such as the Macheteros and the FALN in Puerto Rico.

8. Mr. James testified that between 1975 through 1981, Puerto Rican terrorist groups, with the aid and direction of Cuba, committed 260 acts of violence in Puerto Rico. These acts of violence included urban guerilla warfare, bombings, shootings, and assassinations.

9. I have reviewed Mr. James' Congressional testimony, the Florida Court's determination and findings of fact, as well as the deposition testimony of the renowned journalist Carlos Alberto Montaner who has investigated and written articles establishing that Aldo Vera., Sr. was killed by agents of the Cuban government. Accordingly, in my opinion, one of the 260 acts of violence Mr. James was referring to in his March 12, 1982 Congressional testimony was the death of Aldo Vera, Sr., who was a well-known, high profile anti-Cuban activist, shot by agents sent and ordered by the government of Cuba to assassinate him on October 25, 1976 in San Juan, Puerto Rico. The assassination of Aldo Vera, Sr., was a major media story and was widely covered by the local and international press at the time. See, for example, Exhibit 3.

10. While Mr. James' testimony does not delineate and identify separately each victim of the "260 acts of violence" it is highly probable, given the notoriety of Aldo Vera, Sr., his stature among the Cuban exile community, and the press coverage his assassination generated, that Mr. James was referring to Aldo Vera, Sr. when he testified before the Subcommittee, and that Mr. James's testimony most certainly informed and influenced the U.S. government's decision to designate Cuba as a state sponsor of terrorism. Attached hereto as Exhibit 4 are pertinent excerpts from Mr. James testimony before the Subcommittee.

11. Accordingly, it is my opinion that among the many reasons for the United States government's 1982 designation of Cuba as a state sponsor of terrorism was Cuba's involvement in the assassination of Aldo Vera, Sr. in San Juan, Puerto Rico, on October 25, 1976.

**FURTHER AFFIANT SAYETH NOT.**

**Dated:** April __8__, 2013.

_____
DR. JAIME SUCHLICKI
1531 Brescia Avenue
Coral Gables, Florida 33146

STATE OF FLORIDA         :
                         : SS
COUNTY OF MIAMI-DADE     :

SWORN AND SUBSCRIBED to before me this __8__ day of April, 2013, by JAIME SUCHLICKI, who is personally known to me, and who did/<u>did not</u> take an oath.

_____
NOTARY PUBLIC,
State of Florida at Large

MARIA DEL CARMEN URIZAR
MY COMMISSION # EE 099408
EXPIRES: July 19, 2015
Bonded Thru Notary Public Underwriters

My commission expires: