UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALDO VERA, JR., as Personal Representative of the Estate of Aldo Vera, Sr., <br><br> Plaintiff, <br><br> v. <br><br> THE REPUBLIC OF CUBA <br><br> Defendant, <br><br> v. <br><br> DEUTSCHE BANK TRUST COMPANY AMERICAS; COMMERZBANK, AG; and RBS CITIZENS, N.A. <br><br> Garnishees, <br><br> ALFREDO VILLOLDO, et al.; and JEANETTE FULLER HAUSLER, et al., <br><br> Intervenors. | 12 Civ. 1596 (AKH) <br><br> **PLAINTIFF'S MEMORANDUM IN SUPPORT OF VERA'S PRIORITY AND IN OPPOSITION TO HAUSLER'S PRIORITY TO ASSETS OF THE REPUBLIC OF CUBA IN GARNISHEES' CUSTODY** |

Plaintiff Aldo Vera, Jr. submits this Memorandum in support of his priority to the Republic of Cuba's assets in the custody of Garnishees and against the asserted priority of the Hausler and Villoldo intervenor plaintiffs. *See* Hausler Memo (ECF # 227) and Perkins Declaration (ECF # 226). The Garnishee banks at issue are limited to Deutsche Bank Trust Company Americas ("DBTCA"); Commerzbank AG ("Commerzbank"); and RBS Citizens N.A. ("RBS"). Vera also relies on the Declaration of Robert Swift and the Exhibits thereto.

## I. THE FACTS

The Hausler Memorandum of Law (ECF # 227) sets forth many, but not all, of the critical dates for determining priority among the Vera, Hausler and Villoldo judgment creditors. A more

focused table is attached to the Swift Declaration as Exhibit 1. This table sets forth the dates of (a) the Clerk's levy, (b) service of the writ of execution, (c) filing the turnover motion, and (d) letter extensions to file a turnover motion. From the table, it appears that Hausler initiated levies and served execution in New York City against "Deutsche Bank" (not DBTCA) and Commerzbank in 2009 but never commenced turnover motions against either bank despite the passage of more than four years. Instead, it sent multiple requests (*ex parte* as regards these banks) via letter to Judge Marrero to extend the time to file turnover motions pursuant to NY CPLR 5232(a). *See* Perkins Declaration at ¶'s 10 and 21 (ECF #226) Hausler levied on RBS Citizens in June 2012 and served it with a writ of execution in November 2012 -- which briefly predated Vera's November 2012 levy and service of a writ of execution in January 2013.

Vera levied on DBTCA, Commerzbank and RBS Citizens in November 2012 and had the U.S. Marshall serve writs of execution on them in January 2013. Vera then filed timely turnover motions as to each. It does not appear that Villoldo levied on these three Garnishees or served any with writs of execution although it did file a turnover motion against Commerzbank in March 2013 in its case pending before Judge Swain, No. 11-9394.

### A. Deutsche Bank and Deutsche Bank Trust Company Americas

Counsel for Vera were informed by the U.S. Treasury Department, Office of Foreign Assets Control, that both Deutsche Bank AG and Deutsche Bank Trust Company Americas were in possession of Cuban assets blocked pursuant to CACR. *See* Swift Exhibit 2. Vera served information subpoenas and restraining notices on both entities. Vera then had the US Marshal serve a writ of execution on Deutsche Bank Trust Company Americas on January 4, 2013. *See* Swift Exhibit 3. This was followed by a Motion for Turnover filed on February 28, 2013 which is fully briefed and awaits decision. (ECF # 69) Prior to filing the Motion for Turnover, counsel

reviewed Orders entered in the *Hausler* case and verified that there was no extension of time granted to the Hausler plaintiffs to file a turnover proceeding against Deutsche Bank Trust Company Americas, only "Deutsche Bank" [AG]. *See* Swift Exhibit 4.

Hausler had the U.S. Marshal serve "Deutsche Bank" with a writ of execution in New York City on May 27, 2009. No turnover motion was ever filed. It appears from the docket in the Hausler case, No. 09-10289, that Hausler made a request to extend the time to file a turnover motion as to multiple garnishees by letter, not motion, to the Court dated April 4, 2012.[1] This was almost three years after service of the writ of execution on "Deutsche Bank." The Court endorsed the letter on April 10, 2012. The endorsed letter refers to exhibits containing the names of the garnishees affected. But those exhibits are not part of the docketed record. *See* Hausler ECF # 248 attached as Swift Exhibit 5. So the record fails to disclose which garnishees were affected. Hausler claims that "Deutsche Bank" was listed, but there is no public record of this. Hausler submitted two subsequent letter requests for extension to the Court in 2012 and 2013 which apparently did mention "Deutsche Bank." *See* Swift Exhibit 1.

### B. Commerzbank

Vera served information subpoenas and restraining notices on Commerzbank in late October 2012, shortly after it obtained an Order from this Court pursuant to 28 U.S.C. § 1610(c) permitting Vera to execute on Cuban assets. Vera then had the U.S. Marshal serve a writ of execution on Commerzbank on January 25, 2013. *See* Swift Exhibit 6. After discussions with counsel for Commerzbank, Vera filed an Uncontested Motion for Turnover on March 15, 2013 which is fully briefed and awaits decision. (ECF # 107) At the time the Motion was filed,

---

[1] It appears from the face of the letter that it was hand delivered to the Court without serving DBTCA or its counsel.

counsel for Commerzbank did not believe the bank was subject to execution by any other judgment creditor of Cuba.

Based on the Hausler submissions, it appears that Hausler served a writ of execution on Commerzbank on January 21, 2011. No turnover motion was ever filed by Hausler against Commerzbank. The Hausler docket shows *ex parte* letter requests to the Court to extend the time to file turnover petitions every six (6) months which were routinely endorsed. *See e.g.* Hausler ECF # 248 at Swift Exhibit 5.[2] But Hausler did not proceed by motion and did not serve Commerzbank (or its counsel) with the letter or the endorsed letter. Nor does Commerzbank's name appear in the endorsed and docketed letter. *Id.* This same practice by Hausler (proceeding *ex parte* by letter and not serving Commerzbank) repeated itself in all subsequent letter requests to the Court. It was not until May 14, 2013 that Hausler sent Commerzbank a packet of these documents – which apparently was intended to bootstrap Hausler's intervention in this case to assert priority. *See* Swift Exhibit 7.

II. **ARGUMENT**

Vera has already briefed issues pertaining to whether his judgment against the Republic of Cuba, entered by this Court on August 20, 2012 (ECF # 12), is valid (ECF #'s 169 and 170). Those arguments await decision and will not be repeated here. Villoldo cannot have priority over execution on DBTCA or Commerzbank since it never levied on them or served either with a writ of execution.[3] *See* Swift Exhibit 1. As between Vera and Hausler, there are three issues for decision as regards priority of execution:

---

[2] The letters refer to exhibits listing garnishees, but the exhibits were not docketed. Due to this secrecy, Vera cannot determine whether, in fact, Commerzbank was listed in the attachments and the garnishment was actually extended as to it.

[3] Villoldo's failure to obtain a 28 U.S.C. § 1610(c) order permitting execution would have rendered its executions invalid.

- Whether execution on "Deutsche Bank" constituted execution on "Deutsche Bank Trust Company Americas"?

- Whether Hausler's execution on "Deutsche Bank" and Commerzbank are void under NY CPLR 5232(a)?

- Whether Hausler abused process by maintaining its writs of execution against more than 25 banks for over four years thereby preventing execution by other judgment creditors.

Vera does not contest Hausler's priority to execute on RBS Citizens.

### A.     Hausler Never Garnished DBTCA

Deutsche Bank AG is one of the world's largest banks.  It is a German bank with a branch office in New York City.  It has hundreds of companies related directly and indirectly through stock ownership.  Many of these companies begin with the name "Deutsche Bank" but are distinct corporations with separate assets and liabilities.  Deutsche Bank Trust Company Americas ("DBTCA") is a New York state chartered bank which its counsel has stated in court submissions is <u>indirectly</u> owned by Deutsche Bank AG.[4]  Apparently Deutsche Bank AG, Deutsche Bank Trust Company Americas and other "Deutsche Bank" entities share some personnel and office space in New York City.  It is well understood that a parent and subsidiary are not liable for each other's debts absent proof of complete dominion and control. *See Merrell-Benco Agency, LLC v. HSBC Bank USA*, 20 A.D.3d 605, 609, 799 N.Y.S.2d 590, 594 (3d Dept., 2005); *Potash v. Port Authority of New York and New Jersey*, 279 A.D.2d 562, 719 N.Y.S.2d 290 (2d Dept., 2001).  Here Deutsche Bank AG and DBTCA are mere affiliates without a direct linkage.  One is a foreign bank; the other a New York state bank.  Hausler's garnishment on

---

[4] Our research indicates that DBTCA is the former Bankers Trust Company which was sold in 1999 and renamed Deutsche Bank Trust Company Americas.

"Deutsche Bank" violated the well established rule under New York law that the correct entity holding assets of the judgment debtor must be identified and served.

Based on Hausler's own submission (ECF #226 at ¶9), counsel for Hausler was aware since March 2009 that DBTCA possessed blocked Cuban accounts in New York. It even executed in Florida on DBTCA. However, that Florida execution, which was transferred to the Southern District of New York, was ineffective to execute on DBTCA accounts in New York. *See e.g. Skulas v. Loiselle*, 2010 WL 1790439 (S.D.F., 2010) (judgment creditor cannot garnish a bank in Florida to levy on the debtor's account at the bank's branch in Pennsylvania). Recognizing this, Hausler filed a new writ of execution in New York, but named only "Deutsche Bank" as garnishee, not DBTCA. Counsel for Hausler had been aware of the distinction between Deutsche Bank AG and Deutsche Bank Trust Company Americas since March 2009. However, in seeking multiple extensions of the time to file a turnover proceeding, counsel deliberately used "Deutsche Bank" either to refer to Deutsche Bank AG or, as indicated in the first paragraph of its April 19 letter to Judge Marrero (Hausler ECF # 596), to cover all assets of "Deutsche Bank" "affiliates" in New York. Under New York law, the generic use of a trade name is regarded as a nullity. *Little Shoppe Around the Corner v. Carl*, 80 Misc.2d 717, 363 N.Y.S.2d 784 (County Court, Rockland County, 1975) (*citing Marder v. Betty's Beauty Shoppe*, 38 Misc.2d 687, 239 N.Y.S.2d 923 (App Term, 2d Dept 1962)). A trade name has no separate jural existence, and "it can neither sue nor be sued independently of its owner." *Provosty v. Lydia E. Hall Hospital*, 91 A.D.2d 658, 659, 457 N.Y.S.2d 106, 108 (2d Dept 1982), *aff'd* 59 N.Y.2d 812, 464 N.Y.S.2d 754 (1983).

In bank turnover proceedings pursuant to CPLR 5225(b), a judgment creditor cannot reach assets in the possession of a subsidiary of the bank sued. *See Northern Mariana Islands v.*

108071                                   6

*Millard*, 287 F.R.D. 204, 213-14 (S.D.N.Y. 2012) (in action against parent-garnishee seeking bank account assets held by offshore subsidiary that parent controlled, court held that judgment creditor was not entitled to turnover order because parent was not in "possession and custody" of assets); *Northern Mariana Islands v. Canadian Imperial Bank of Commerce*, 21 N.Y.3d 55 (N.Y. Apr. 30, 2013) (same). A case cited by Petitioner's counsel, *National Bank of North America v. State Tax Commission*, 106 A.D.2d 377, 482 N.Y.S.2d 508 (App. Div. 2d Dep't 1984), is inapposite to this issue because it did not involve garnishment proceedings implicating affiliated, but separate and legally distinct, corporate entities. *Id.*, 482 N.Y.S.2d at 509 (income execution misnaming restaurant as "Ben's Kosher Deli" as opposed to correct legal name, "933 Atlantic Avenue Kosher Restaurant d/b/a Ben's Kosher Deli Restaurant", constituted minor technical defect).

Nor is a second case cited by Hausler, *United States v. Edwards*, 241 F.R.D. 146 (EDNY 2007), apposite. In that case, the United States was a judgment creditor on a defaulted student loan. Six (6) months after serving the garnishee identified as "United Federation of Teachers Education Foundation, Inc.", the United States was permitted to amend the caption of its pleading pursuant to FRCP 15(a) to "United Federation of Teachers" to "correct legal name of the entity." *Id.* at 147. This was done with the consent of the garnishee where there was no prejudice to garnishee or other judgment creditors. Federal law, not New York law, applied, and plaintiff was required to file and serve a new pleading. By contrast, New York law applies here pursuant to FRCP 69(a). Hausler never moved to amend the name of the garnishee despite actual knowledge for more than four years that DBTCA, not "Deutsche Bank" [AG] or other banks whose names began with "Deutsche Bank," held Cuban government assets. Here, it appears that Hausler wished to maintain a garnishment on all entities whose name began with

"Deutsche Bank." It would be prejudicial to Vera and other judgment creditors of Cuba to permit Hausler to effectively amend its garnishment after actual knowledge for more than four years that it should have named DBTCA.

### B. Hausler's Executions on DBTCA and Commerzbank Are Void

Hausler's writs of execution on "Deutsche Bank" and Commerzbank are void by operation of law. As Hausler acknowledges in its brief, a judgment creditor must serve a turnover motion within 90 days of service of a writ of execution or, upon motion, obtain a court order extending its time to do so. *See* Hausler Memo at 12-13 (ECF # 227). Pursuant to NY CPLR 5232(a), failure to do either results in the writ of execution becoming "void." NY CPLR 5232(a) provides in pertinent part:

> Until such transfer or payment is made, or **until the expiration of ninety days after the service of the execution upon him or her, or of such further time as is provided by any order of the court served upon him or her**, whichever event first occurs, the garnishee is forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any such property, or pay over or otherwise dispose of any such debt, to any person other than the sheriff or the support collection unit, except upon direction of the sheriff or the support collection unit or pursuant to an order of the court. **At the expiration of ninety days after a levy is made by service of the execution, or of such further time as the court, upon motion of the judgment creditor** or support collection unit has provided, **the levy shall be void** except as to property or debts which have been transferred or paid to the sheriff or to the support collection unit or as to which a proceeding under sections 5225 or 5227 has been brought.

(emphasis added).

New York law is categorical on this point. The leading case construing this Rule is *New York State Com'r of Taxation and Finance v. Bank of New York*, 275 A.D.2d 287, 287-290, 712 N.Y.S.2d 543, 544 - 545 (N.Y.A.D. 1 Dept., 2000). The First Department held that levies become void after 90 days absent extension by a court:

> Even where an extension is granted on motion, "[t]he court must avoid permitting extensions that would harass the garnishee, unduly embarrass the judgment debtor

108071                              8

or prejudice other judgment creditors" (11 Weinstein–Korn–Miller, N.Y. Civ. Prac. ¶ 5232.15). Failing adherence to statutory criteria for the timely perfection of its interest in the judgment debtor's account and in the absence of a court order of extension, petitioner's levy expired by operation of law after 90 days.

Hausler's submission shows that it made multiple letter requests to the Court to extend the levies on DBTCA and Commerzbank. Perkins Declaration at ¶'s 10 and 21 (ECF # 226). As to "Deutsche Bank," the writ was served in New York on May 27, 2009, and the first request to extend the levy was made by letter dated April 4, 2012. *See* Swift Exhibit 1. In the case of Commerzbank, the *ex parte* requests to extend were made at six month intervals but neither the requests nor endorsements were served on Commerzbank. (No counsel had entered an appearance for Commerzbank) In both instances the writ had lapsed so the "extension" was a nullity.

Furthermore, § 5232(a) requires that an order for extension must be served on the garnishee. The letter requests do not show service on either DBTCA, Commerzbank or their counsel. Nor is there anything in the record showing service of the endorsed letter request. Even if the *ex parte* letter requests are deemed "motions" under Rule 7, Hausler did not comply with § 5232(a) which requires an "order of the court served upon" the garnishee.

The lone authority in New York for obtaining an extension to file a turnover motion <u>after</u> the writ of execution becomes "void" is a Second Department decision in *Kitson & Kitson v. City of Yonkers*, 10 A.D.3d 21, 25-26, 778 N.Y.S.2d 503, 507 (N.Y.A.D. 2 Dept.,2004). There the Second Department agreed with the First Department's conclusion that the writ became void after 90 days but added a twist. It held that a motion to extend a levy could be made even after the levy expired. It stated a preference for this approach instead of serving a new writ of execution through the Sheriff.

108071                                    9

> Although we agree with the general rule set forth in *New York State Com'r of Taxation and Finance v. Bank of New York*, 275 A.D.2d 287, 287-290, 712 N.Y.S.2d 543, 544 - 545 (N.Y.A.D. 1 Dept.,2000), we respectfully disagree with the conclusion that a new levy could be had after the prior levy expired. There is no statutory basis for such a procedure. Since a motion to extend a levy may be made after the levy has expired, the creditor may move to extend the prior levy, not deliver a new execution to the Sheriff ( *see* CPLR 5232[a] ). In determining an application for an extension the court should consider the intervening interests of third parties.

Of course, the First Department decision in *Bank of New York* is controlling as to executions in Manhattan, which is where DBTCA and Commerzbank were served. Even so, the *Kitson* decision is distinguishable from the instant garnishments because Hausler made no formal motion and the garnishees were not served with the letter requests. There is no suggestion in CPLR 5232(a) that a judgment creditor may proceed *ex parte*. Both opinions in *Bank of New York* and *Kitson* require that the court considering an extension weigh the rights of the garnishee and other parties. This could not be done since Hausler never served DBTCA or Commerzbank. Furthermore, once the executions on DBTCA and Commerzbank become "void" by operation of law under §5232(a) in 2009 and 2011, respectively, the Court's jurisdiction over these Garnishees terminated and rendered the extensions moot.

### C. Hausler's Monopolization of Execution on Garnishees for Cuban Assets Constitutes an Abuse of Process

Hausler blanketed New York banks with writs of execution. Those writs of execution are believed to sequester more than $100 million of blocked Cuban assets and therefore exceed the remaining Hausler judgment. For over four years Hausler has maintained executions against more than 25 banks. In that time Hausler has filed only a handful of turnover proceedings while seeking extensions to file as to more than 25 banks. Relying on § 5232(a), it has repeatedly obtained extensions of the time to file turnover proceedings. Usually those requests for extension were *ex parte* without notice to the garnishees or service of the Court endorsements

and in violation of § 5232(a). Its delay in prosecuting its garnishments has prevented other judgment creditors from initiating turnover proceedings and collecting on their judgments for terrorism against Cuba. In effect, Hausler unreasonably monopolized the collection of judgments against Cuba by delay and inaction thereby improperly perverting the use of the writ after its issuance.

At this point, Hausler's failure to prosecute turnover motions against garnished banks constitutes an abuse of process. *See e.g. Jones v. Maples/Trump,* 2002 WL 287752 (SDNY) (J. Stein). Levies and writs of execution are not expected to continue in perpetuity while a judgment creditor blocks execution by other judgment creditors. The issue of whether a judgment creditor can execute on wire transfers, which is on appeal to the Second Circuit Court of Appeals, is legitimate. But that issue has not prevented Hausler from filing and prosecuting turnover motions as to all garnishees. Rule 5232(a) requires a turnover motion to be filed within 90 days of service of the writ. Extending that time to over four years is an abuse of the writ.

### III. CONCLUSION

For all the foregoing reasons, this Court should rule that Vera's execution on DBTCA and Commerzbank has priority over Hausler and Villoldo. Vera does not contest Hausler's priority to execute on RBS Citizens. Finally, the Court should rule that Hausler is prohibited from obtaining any further extensions of time under § 5232(a).

Dated: New York, New York
June 17, 2013

By: _____
Robert A. Swift (*Pro Hac Vice*)
Kohn, Swift & Graf, P.C.
One South Broad Street, 21st Floor
Philadelphia, PA 19107
(215) 238-1700

Jeffrey E. Glen
Luma Al-Shibib
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY 10020
(212) 278-1000