New York        Paris
Menlo Park      Madrid
Washington DC   Tokyo
São Paulo       Beijing
London          Hong Kong

# Davis Polk

**Karen E. Wagner**

Davis Polk & Wardwell LLP   212 450 4404 tel
450 Lexington Avenue        212 701 5404 fax
New York, NY 10017          karen.wagner@davispolk.com

October 22, 2013

Re:  *Vera v. Republic of Cuba*, No. 12 Civ. 01596 (AKH)
     *Villoldo v. Fidel Castro Ruz*
     *Hausler v. Republic of Cuba*

Hon. Alvin K. Hellerstein
United States District Judge
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

Dear Judge Hellerstein:

We represent respondents Bank of America, N.A., Barclays Bank PLC, Citibank, N.A., Credit Suisse AG, New York Branch, Intesa Sanpaolo S.p.A., JPMorgan Chase Bank, N.A., UBS AG, and Wells Fargo Bank, N.A. (the "DPW Garnishee Banks") in the above-captioned action.[1]

At a hearing on September 23, 2013, the Court scheduled a status conference for October 23, 2013, and directed the plaintiffs and respondent banks to develop in advance of that hearing a "protocol" that would move the case along (Sept. 23, 2013 tr. at 27:6-7). We have been unable to reach agreement with the plaintiffs concerning such a protocol. However, we have developed a proposal for staging the process of commencing notice or interpleader proceedings that will both move the case along and avoid a potentially needless expenditure of time, effort and expense by the Court and the parties.

**The Petition and Ownership**

Plaintiffs have served each garnishee with an "Omnibus Petition for Turnover Order." The Petition does not designate accounts for turnover, though such designations were sent by email to many of the garnishees on or after September 27, 2013. Plaintiffs seek the turnover by the DPW Garnishee Banks of 276 accounts holding the proceeds of electronic fund transfers ("EFTs") blocked under Cuban sanctions regulations. These accounts have been blocked because an involved party had some relationship to Cuba or a Cuban national or institution, not

---

[1] Several other garnishee banks, including Deutsche Bank Trust Company of the Americas ("Deutsche Bank"), Bank of New York Mellon ("BNYM"), HSBC Bank USA, N.A. ("HSBC") and RBS Citizens, N.A. (collectively, along with the DPW Garnishee Banks, the "Garnishee Banks"), join in supporting the staged approach outlined in this letter.

necessarily because the Cuban Government is an "owner" of the proceeds such that they would be subject to execution as Cuba's property.

**The Pending Second Circuit Decisions and the Reversal of <u>Winter Storm</u>**

As the Court is aware, in two appeals pending in the United States Courts of Appeals for the Second Circuit, the Second Circuit will decide under what circumstances a foreign state judgment debtor has an "ownership interest" in blocked wire transfer proceeds such that a party holding a judgment enforceable under Section 201(a) of the Terrorism Risk Insurance Act of 2002 (codified at 28 U.S.C. § 1610 note ("TRIA")), or under Section 1610(g)(1) of the Foreign Sovereign Immunities Act of 1976 (28 U.S.C. § 1602 et seq. (the "FSIA")), is entitled to enforce its judgment against such blocked assets.[2] (Sept. 23, 2013 tr. at 27:7-12.) A decision in one or both of the appeals could moot the substantial majority of the notice proceedings contemplated by plaintiffs.

The Second Circuit's decision on any question of "ownership" of EFT proceeds will necessarily be guided by <u>Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.</u>, 585 F.3d 58, 68, 70 (2d Cir. 2009) ("<u>Jaldhi</u>").

<u>Jaldhi</u> reversed a prior decision of the Second Circuit in <u>Winter Storm Shipping, Ltd. v. TPI</u>, 310 F.3d 263 (2d Cir. 2002), which held that both the originator of an EFT and its intended beneficiary had a sufficient interest in the proceeds to support attachment and execution of the proceeds held by an intermediary bank. In <u>Jaldhi</u>, the Second Circuit found "<u>Winter Storm</u>'s reasons unpersuasive and its consequences untenable," and held that, pursuant to Sections 502 and 503 of Article 4A of the U.C.C., neither the originator nor the beneficiary has an attachable property interest in the proceeds of a mid-stream EFT while the transfer is in progress. <u>Jaldhi</u>, 585 F.3d at 66. <u>See</u> also U.C.C. § 4A-502 official cmt. 4. <u>Jaldhi</u>'s reasoning was later confirmed in <u>Export-Import Bank of U.S. v. Asia Pulp & Paper Co.</u>, 609 F.3d 111, 119-20 (2d Cir. 2010) ("<u>Asia Pulp</u>"), which recognized that "[t]he only party with a claim" to an EFT in possession of an intermediary bank is the sender to that bank, which is typically the originator's bank. <u>See also id.</u> at 115 ("EFTs in the temporary possession of an intermediary bank cannot be subject to attachment . . . because [at this point in time] midstream EFTs are the property of neither the originator nor the beneficiary"); <u>Heiser v. Islamic Rep. of Iran</u>, 885 F. Supp. 2d 429, 447-48

---

[2] The two pending cases are <u>Hausler v. JPMorgan Chase Bank, N.A.</u>, Nos. 12-1264(L) and 12-1277 (2d Cir.), and <u>Calderon-Cardona v. JPMorgan Chase Bank, N.A.</u>, 12-75 (L) (2d Cir.) (oral argument held on February 11, 2013). There is also an appeal pending in the United States Court of Appeals for the District of Columbia Circuit in <u>Heiser v. Islamic Republic of Iran</u>, No. 12-7101 (D.C. Cir.) (oral argument held on September 24, 2013).

The district courts in those appeals reached dramatically opposite conclusions. In <u>Calderon-Cardona</u>, the district court held that ownership was a prerequisite to execution, and that ownership should be determined by reference to Article 4A of the Uniform Commercial Code ("U.C.C."). <u>Calderon-Cardona v. JPMorgan Chase Bank, N.A.</u>, 867 F. Supp. 2d 389, 400-01 (S.D.N.Y. 2011); <u>see Heiser v. Islamic Republic of Iran</u>, 885 F. Supp. 2d 429, 448 (D.D.C. 2012) (same). In <u>Hausler</u>, the court held that ownership was not required, and that all proceeds of EFTs blocked pursuant to the Cuban sanctions regulations were available for execution. <u>Hausler v. JPMorgan Bank, N.A.</u>, 845 F. Supp. 2d 553, 577-78 (S.D.N.Y. 2012); <u>accord Levin v. Bank of New York</u>, No. 09 Civ. 5900, 2013 WL 5312502, at *8 (S.D.N.Y. Sept. 23, 2013).

The United States submitted <u>amicus</u> briefs in both cases and in an appeal raising the same issues in the D.C. Circuit. The United States supports the proposition that ownership by the judgment debtor is an essential prerequisite to execution. The United States also importantly recognized that OFAC sanctions block a wide range of "interests" in property, and that all property blocked pursuant to OFAC sanctions is not owned by the sanctioned country. Brief for the United States of America as Amicus Curiae at 2-3, <u>Hausler</u>, Nos. 12-1264 and 12-1272 (2d Cir. July 9, 2012).

Hon. Alvin K. Hellerstein                         3                         October 22, 2013

(D.D.C. 2012) ("Legal title does not pass to the beneficiary's bank until it accepts the payment order from the intermediary bank.").[3]

Winter Storm provided precedent for two decisions by this Court. In Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd., 485 F. Supp. 2d 399, 407 (S.D.N.Y. 2007), the Court declined to follow Article 4A, and held that "[t]his deference to the policy interests of the State of New York, in my opinion, is misplaced, for it contradicts the historic purposes of maritime law, and the clear authority of Winter Storm." Winter Storm also guided the turnover proceeding in Rux v.ABN Amro Bank, N.V., No. 08 Civ, 06588. The approach taken by the plaintiffs in designating accounts either assumes that Winter Storm remains the law in this Circuit, or that ownership of property by the judgment debtor is not required for execution.

**The Proposed Protocol**

Your Honor made plain that you were disinclined to stay all turnover proceedings pending resolution of the legal issues before the Second Circuit. In light of that direction, the DPW Garnishee Banks suggest that the proceedings be staged, and that turnover proceedings be directed in the first instance at those blocked EFTs where a Cuban Government party is either the originator of the EFT or the originator's bank. In the case of 50 of the 276 blocked accounts held by the DPW Garnishee Banks, such Banks are prepared to agree that a Cuban Government party to the EFT is or may be the owner of the blocked proceeds, or is at least a party with a claim to such proceeds because it was an originator or originating bank. Accordingly, the DPW Garnishee Banks are prepared to promptly commence interpleader or notice proceedings in respect of these 50 accounts, which have an aggregate dollar value of $3,171,157.71 (and CAD $55,023.94).[4] Deutsche Bank and BNYM are still working on the breakdown of their accounts, but preliminary indications are that the majority of their accounts would be in the category of accounts to be deferred. In the case BNYM, four of the 78 accounts originally identified by plaintiffs, totaling approximately $225,000, may be subject to execution. In the case of HSBC, two of the 34 accounts may be subject to notice of turnover or interpleader in the first instance.

The predicate for the protocol set forth above is based on the "money back guarantee" provision of Article 4A, and represents a construction of Article 4A that is both consistent with Jaldhi and Asia Pulp and with the interests of the plaintiffs in executing against the property of Cuban Government parties. The "money back" provision dictates that when an EFT has not been completed or has been interrupted, as it is when blocked pursuant to OFAC sanctions, under Article 4A the EFT proceeds flow back upstream to the originating bank or, in certain specified circumstances where a subrogation right exists, to the originator. See U.C.C. § 4A-211(4)(5); U.C.C. § 4A-402(4). Thus, only the originator's bank in the first instance or the originator can claim any right to the return of proceeds. U.C.C. § 4A-402(5). Indeed, when OFAC issues a license releasing a blocked EFT, or licenses the unblocking of a sanctions program such as those in place for Cuba, it authorizes the release of funds only to the originating bank or the

---

[3] In a number of opinions following Jaldhi and Asia Pulp, the Second Circuit rejected several additional attempts to avoid the use of Article 4A to determine the ownership and attachment of wire transfer proceeds. See, e.g., Scanscot Shipping Servs. GmbH v. Metales Tracomex LTDA, 617 F.3d 679, 683 (2d Cir. 2010). See also Eitzen Bulk A/S v. Ashapura Minechem, Ltd., 632 F.3d 53 (2d Cir. 2011) (vacating, in part, Americas Bulk Transp. Ltd. v. IMT, No. 08 Civ. 6970 (AKH), 2010 WL 1047674 (S.D.N.Y. Mar. 19, 2010)).

[4] We have excluded the blocked proceeds of one EFT from this computation because the bank respondent in question, UBS AG, claims ownership of the blocked funds and is not a garnishee.

Hon. Alvin K. Hellerstein                                  4                                 October 22, 2013

originator, thus following the same path that is set forth in Article 4A. Neither the beneficiary nor the beneficiary bank (nor a creditor of either) has any claim to the blocked funds.

The DPW Garnishee Banks respectfully request that proceedings for the remaining 226 accounts be deferred until after the Second Circuit has ruled because determining whether a Cuban Government party actually "owns" or has a claim to ownership of particular EFT proceeds is a threshold issue.[5] As a matter of execution law, a judgment creditor may execute only against the judgment debtor's property. The property of one not liable on the judgment is not subject to execution. Thus, if the Second Circuit rules that ownership is both relevant, and to be determined by reference to Article 4A, as seems likely under the analysis in Jaldhi and the cases following that precedent, no Cuban Government party will have any executable interest whatsoever in the 226 accounts, and there will be no reason to give notice or commence proceedings with respect to such accounts.

### Notice and Interpleader

The plaintiffs have proposed that notice be given to all of the parties to the blocked EFTs they have designated, and have agreed to pay an unspecified portion of the "postage" costs. While they would permit the Garnishee Banks to commence interpleader proceedings, they do not provide for reimbursement for service of process or the expenses incidental to service, such as translation.

The DPW Garnishee Banks respectfully contend that plaintiffs are obligated to compensate them in such circumstances. Pursuant to Weininger v. Republic of Cuba, 462 F. Supp. 2d 457, 500-02 (S.D.N.Y. 2006), and Hausler v. JPMorgan Chase Bank, N.A., 740 F. Supp. 2d 525, 542-42 (S.D.N.Y. 2010), garnishees are not only entitled to proceed by interpleader, but are also entitled to reimbursement for their reasonable attorney fees and expenses. In addition, while the Garnishee Banks agree that, in the case of a number of smaller accounts that have been targeted, the giving of notice may be sufficient in the first instance, in those circumstances the response required by the parties receiving notice should be clearly delineated, as should the process pursuant to which their objections should be evaluated by the Court.

In addition, as indicated above, the Omnibus Petition itself is deficient as a pleading because it does not designate or identify the EFT accounts being made subject to execution, or the parties to the EFTs to whom notice is to be given. Accordingly, the Omnibus Petition should be amended to specifically identify the accounts being made subject to execution. In addition, a form of notice should be developed that would give its recipient some idea of what assets are targeted, and on what basis. We are prepared to work with plaintiffs to develop such a notice.

### Conclusion

The interests of all parties and the Court will be served if notice or interpleader proceedings go forward at the present time in the case of the 50 accounts where all parties agree that a Cuban Government party may be entitled to claim ownership of the blocked proceeds, and that proceedings be deferred until the Second Circuit has ruled where the alleged Cuban Government

---

[5] See Terrorism Risk Insurance Act § 201(a) (28 U.S.C. § 1610 note) (permitting execution only against the "blocked assets of that terrorist party") (emphasis added); Foreign Sovereign Immunities Act § 1610(g) (permitting execution only against "property of a foreign state against which a judgment is entered under section 1605A.").

party is merely the beneficiary or beneficiary's bank in connection with the EFT. If the Second Circuit agrees with plaintiffs that ownership is not a prerequisite to execution, or that ownership of blocked wire transfer proceeds should not be determined by reference to Jaldhi, Asia Pulp and Article 4A, the 226 remaining accounts will promptly be addressed.

Very respectfully yours,

*[signature]*

Karen E. Wagner

Enclosures

cc:   All Counsel (via email)

By Hand Delivery