# HALL, LAMB AND HALL, P.A.
### ATTORNEYS AT LAW
OFFICES AT GRAND BAY PLAZA
PENTHOUSE ONE
2665 SOUTH BAYSHORE DRIVE
MIAMI, FLORIDA 33133

ANDREW C. HALL
ADAM S. HALL
ADAM J. LAMB
MATTHEW P. LETO
COLLEEN L. SMERYAGE
SAMUEL C. COZZO
BRANDON R. LEVITT†
JOYCELYN S. BROWN
MARIA SOLEDAD BODERO‡

* ADMITTED IN NEW YORK
† ADMITTED IN WASHINGTON, DC
‡ ADMITTED IN ECUADOR

TELEPHONE 305 374-5030
FACSIMILE 305 374-5033
TOLL FREE 800 376-5030
www.hlhlawfirm.com

November 5, 2013

Hon. Alvin K. Hellerstein
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

    Re:    Vera v. Republic of Cuba, No. 12 Civ. 1596

Dear Judge Hellerstein:

    We represent Alfredo and Gustavo Villoldo (the "Villoldos"), intervenors in the *Vera* proceedings and petitioners in the Omnibus Petition for Turnover Order. This letter responds to the November 1, 2013 letter sent by counsel for Banco Bilbao Vizcaya Argentaria, S.A. ("BBVA"). In its letter, BBVA informs the Court of a position BBVA intends to take in the future to challenge subject matter jurisdiction, but does not request any affirmative relief. This letter will demonstrate that such a position, if taken by BBVA, is devoid of merit for three reasons: the Court has subject matter jurisdiction; multiple federal courts have afforded the Villoldo judgment full faith and credit; and BBVA lacks standing to challenge jurisdiction.

    Subject matter jurisdiction exists if either the foreign state was designated as a state sponsor of terrorism at the time of the acts or as a result of the acts that are the subject of the claim. 28 U.S.C. § 1610A(a)(2)(A). In this case both tests are satisfied.

    The Villoldos were victims of acts of terrorism that commenced in 1959 and continued through 2003. The trial court found that the Villoldos "were targeted by Defendants because of its financial wealth and Gustavo Villoldo Agrilagos' American citizenship." *See* Final Judgment attached hereto as Exhibit "A," at pp. 3-4. The evidence presented at trial showed that Cuba seized the assets of the Villoldo family and caused the death of Gustavo Villoldo Sr. *Id*. Che Guevera himself threatened to kill the entire Villoldo family if Mr. Villoldo Sr. did not turn over all of his property. *Id*. The trial court also found that the Villoldos were kidnapped, imprisoned, beaten and "accused of being lackeys of the United States." *Id*. at p. 4. The torture continued after the death of Mr. Villoldo Sr. with threats of assassination and assassination attempts. The trial court found that "the acts of terrorism . . . continued until the middle of 2003." *Id*. at p. 5. Substantial evidence of these acts of terrorism was presented to the Florida state court, and the

{10225/00329605.3}

court concluded that the "the record establishes that this Court has subject matter jurisdiction." *Id.* at p. 6.

Subject matter jurisdiction existed both because Cuba was a state sponsor of terrorism at the time of the acts and because the acts of terrorism are the same acts that caused Cuba to be designated a state sponsor of terrorism. In 1959, Cuba determined to use its form of revolutionary violence to expand its Marxist regime throughout Latin America. Cuba seized the assets of the Villoldo family and caused the death of Gustavo Villoldo Sr. as part of its concerted effort to foment violence and support revolution in Latin America and other third-world countries. During this early period, Che Guevera announced that, with the support of the Cuban government and its newly acquired wealth (by seizing the Villoldos' wealth and others), Cuba would create 1,000 Vietnams around the world. This exportation of terrorism and violence is the reason Cuba was designated a state sponsor of terrorism.

After Gustavo Villoldo participated in the Bay of Pigs, he received a direct commission to the U.S. Air Force from President Kennedy. After transferring branches, he later contracted with the Central Intelligence Agency for the purpose of tracking and killing Che Guevera in an effort to resist the revolutionary violence in Latin America and abroad supported by Cuba. Mr. Villoldo led the mission accompanied by Bolivian soldiers that resulted in the death of Che Guevera. Mr. Villoldo and his family were then subjected to repeated assassination attempts and threats of assassination for decades through 2003. Consequently, subject matter jurisdiction existed pursuant to 28 U.S.C. § 1610A(a)(2)(A).

Secondly, and conclusively, the Villoldos obtained a valid and enforceable judgment, and the judgment and its factual basis have been given full faith and credit and enforced by multiple federal courts. First, the Villoldos brought their state court judgment to New York Federal Court. The Villoldos sued on the state judgment and alleged in their Complaint that the acts of terrorism began in 1959 and extended to mid-2003. *See Villoldo v. Cuba*, No. 11-cv-9394 (S.D.N.Y. Dec. 21, 2011) (LTS) (Doc. No. 1). The Court gave full faith and credit to the Villoldo state court judgment by entering an Amended Default Judgment on October 25, 2012. *See* Doc. No. 23. The Villoldos then enforced their federal judgment in Pennsylvania and obtained a turnover order from the District Court for the Western District of Pennsylvania (the "Pennsylvania Order"). The Pennsylvania Order is attached hereto as Exhibit "B." By issuing the Pennsylvania Order, the court implicitly gave full faith and credit to the Villoldo state and federal judgments. The Villoldos also enforced their federal judgment in Massachusetts and obtained a turnover order from the District Court for the District of Massachusetts (the "Massachusetts Order"). The Massachusetts Order is attached hereto as Exhibit "C." In the Massachusetts Order, the Court expressly held that its order "enforces a duly registered Florida state court judgment, recognized by a New York Federal Court and given full faith and credit by this Court." *See* Exhibit C. Because these courts granted full faith and credit, this issue is no long open for further challenge. Moreover, Cuba has been served with every court order and has not appeared to challenge any of these proceedings.

Finally, BBVA lacks standing to challenge subject matter jurisdiction. Under similar circumstances, the Southern District of Florida, in the *Hausler* proceedings, rejected BBVA's attempt to challenge the Hausler judgment, holding:

> Because the New York district court independently granted full faith and credit to the Florida state court judgment, a decision in favor of the adverse claimants in this proceeding will not redress their alleged injury, (i.e., the diminution of their interests in the frozen Cuban assets). As such, they lack standing to challenge this court's judgment.

*See* September 11, 2013 Hausler Order, attached hereto as Exhibit "D."

For these reasons, BBVA's announced attempt to challenge the Villoldo judgment will not be supported by fact or law. Had counsel for BBVA contacted counsel for the Villoldos prior to sending its letter, we would have apprised counsel of these facts and hopefully avoided unnecessary judicial attention to this matter.

Respectfully submitted,

HALL, LAMB AND HALL

Andrew C. Hall

Enclosures

cc: All counsel (via email)