# EXHIBIT A

CFN 2011R0558752 OR BK 27799 Pgs 1432 - 1440; (9pgs)
RECORDED 08/22/2011 12:56:25
HARVEY RUVIN, CLERK OF COURT, MIAMI-DADE COUNTY, FLORIDA

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

ALFREDO VILLOLDO, individually,
and GUSTAVO E. VILLOLDO,
individually, and as Administrator,
Executor, and Personal Representative
of the Estate of GUSTAVO VILLOLDO
ARGILAGOS,

    Plaintiffs,

v.

FIDEL CASTRO RUZ, as an individual,
and as an official, employee, or agent of
The Republic of Cuba, RAUL CASTRO
RUZ, as an individual, and as an official,
employee, or agent of The Republic of
Cuba, THE MINISTRY OF INTERIOR, an
agency or instrumentality of The Republic of
Cuba, THE ARMY OF THE REPUBLIC OF
CUBA, an agency or instrumentality of The
Republic of Cuba, and THE REPUBLIC OF
CUBA, a foreign state,

    Defendants.

CASE NO: 08-14505 CA 25

_____/

## FINAL JUDGMENT

THIS CAUSE came before the Court for non-jury trial on August 19, 2011, and upon the evidence presented, the Court makes the following findings of fact:

I.   Procedural Background

Plaintiffs Alfredo Villoldo and Gustavo E. Villoldo, both American citizens, individually and Gustavo Villoldo acting as the personal representative of the Estate of Gustavo Villoldo Argilagos, filed this action against the Republic of Cuba, the Cuban Army, the Ministry of the Interior, Fidel Castro Ruz, and Raul Castro Ruz, whose acts of terrorism starting in January 1959 with the post take

{10108\00223900.1}

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

A TRUE COPY
CERTIFICATION ON LAST PAGE

over actions of the Cuban Revolutionary government, involving acts of torture and extrajudicial killing, led to the death of Gustavo Villoldo Argilagos, on February 16, 1959, and continued thereafter with acts of terrorism involving threats of assassination of Plaintiff Gustavo Villoldo through mid-2003.    Plaintiffs bring claims against Defendants for intentional infliction of emotional distress for the wrongful death of their father pursuant to the terrorist exception to the Foreign Sovereign Immunities Act ("FSIA"), for the consequences of the same and for the acts of terrorism as more fully established below. The Defendants, after being duly served with process and being offered international arbitration, failed to answer or enter an appearance in this case. A default was entered on July 29, 2011. A trial was specially set for August 19, 2011 to determine the amount of damages to be awarded. The trial order was served upon Defendants

## II. Findings of Fact

Plaintiffs Gustavo E. Villoldo ("Gustavo"), born January 21, 1926, and Alfredo Villoldo ("Alfredo"), born June 6, 1937, are United States citizens who have resided in the United States since 1960.   Plaintiffs are the sons of decedent Gustavo Villoldo Argilagos.

Gustavo Villoldo Argilagos was born in Cuba on December 25, 1901. He was a dual citizen of the United States and Cuba. His mother, Marie Villoldo Argilagos, was a United States citizen who was born and raised in New York City.   Gustavo Villoldo Argilagos, Casto Villoldo, was a Cuban citizen who was born in Cuba.

Gustavo Villoldo Argilagos' parents were married in New York in approximately 1897.  Gustavo Villoldo Argilagos became a United States national and citizen at his birth. 8 U.S.C. § 1401 (h) ("The following shall be nationals and citizens of the United States at birth: (h) a person born before noon (Eastern Standard Time) May 24,

{J0108100223903 1}   2

Book27799/Page1433   CFN#20110558752

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

A TRUE COPY
CERTIFICATION ON LAST PAGE
Page 2 of 9

1934, outside the limits and jurisdiction of the United States of an alien father and a mother who is a citizen of the United States who, prior to the birth of such person, had resided in the United States.").

Gustavo Villoldo Argilagos grew up in Havana, Cuba. He maintained strong ties to the United States. His older brother George was born in the United States and the American Embassy in Havana at the time of the acts complained of. Gustavo Villoldo Argilagos attended Candler College in Havana. He then studied law at the University of Havana School of Law, and graduated valedictorian of his class. After earning his law degree, Mr. Villoldo studied business and economics at the Wharton School of Business in the United States.

Gustavo Villoldo Argilagos subsequently returned to Cuba and opened one of the first General Motors dealerships in Cuba, Villoldo Motor Company. Mr. Villoldo gained enormous financial success. In addition to the automobile dealership, Mr. Villoldo owned an office building, an assembly plant, a parts department and maintenance shop, and a trading company financing automobile loans. He also owned a gas station, a showroom and parking lot, an office building, a 33,000 acre ranch, a ten story apartment building, and numerous real estate holdings, including an oceanfront family estate and two beach homes. Gustavo Villoldo Argilagos was a member of the highest society, participating in international athletic competition, including the 1920 Olympics and later international shooting competitions. He and his family, including Gustavo Villoldo and Alfredo Villoldo enjoyed a life style consistent with this wealth.

During the early morning hours of January 1, 1959, Fidel Castro assumed control of the government of Cuba. The Villoldo family was targeted by Defendants because of its

{101b8\00223903.1}   3

Book27799/Page1434   CFN#20110558752   Page 3 of 9

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK
A TRUE COPY
CERTIFICATION ON LAST PAGE

financial wealth and Gustavo Villoldo Argilagos' American citizenship. Members of Castro's security forces led by Ernesto "Che" Guevara repeatedly accosted Mr. Villoldo and his family members, at their homes and businesses.

On January 6, 1959, fourteen heavily armed, bearded soldiers known as "Los Barbados," surrounded Alfredo Villoldo's home threatening to kill him. Alfredo telephoned his brother for help. Gustavo responded by traveling to Alfredo's house. On arrival Gustavo was accosted by Los Barbudos, who took both Villoldo brothers into custody. Gustavo was kicked and beaten. Both were transported to Palacio de los Deportes (the Sports Palace), where Defendants were administering mass executions.

Gustavo Villoldo was put in a 30' x 30' cell with approximately 140 other prisoners, mostly former police officers and members of the Batista army who had been captured by Castro's forces. Gustavo Villoldo was detained for five days and tortured. While he was interrogated numerous times, he was deprived of food and sleep and was repeatedly informed that he was going to be sent to the Cabana Fortress to be killed by Che Guevera's firing squad for being an American agent. Gustavo Villoldo and his family members were accused of being lackeys of the United States and Yankee Imperialists. Gustavo Villoldo was beaten during his imprisonment, and his head was placed in a plastic bag threatening to suffocate him. He was taken to a location where other prisoners were executed by firing squad. After five days of confinement and torture aimed toward a confession or the obtaining of information, all of which would have been contrived, he was released. Of the 140 prisoners held with Gustavo Villoldo, Gustavo was one of only a small number who were not executed.

The torment to Gustavo Villoldo Argilagos and his family continued after his

{10108100223903.1}   4   A TRUE COPY A TRUE COPY ON LAST PAGE
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

sons' release. Che Guevera, members of the rebel army and members of the Ministerio del Interior continued to threaten Mr. Villoldo, and they forcibly removed him from his home with machine guns held to his throat on several occasions. At least two times he was taken to "El Laguito," a lake where victims of executions were dumped. Mr. Villoldo was also taken to the Ministry of Interior where executions were carried out, and Che Guevera threatened to summarily execute Mr. Villoldo, accusing him of treason. Mr. Villoldo was told repeatedly that he, his sons, and his wife would be killed, unless he acquiesced to the turnover of his property and took his own life. The abductions lasted several hours, and Mr. Villoldo was visibly shaken when he returned, unable to eat or sleep, and at times losing control of his bodily functions. On February 16, 1959, Mr. Villoldo's body was found in his home, an apparent suicide.

Mr. Villoldo's businesses and farm were taken over by the Cuban government, and Mr. Villoldo's bank accounts were confiscated.

Nevertheless, the acts of terrorism continued. While Gustavo and Alfredo were able to leave the island of Cuba, the Defendants continued by actively engaging in efforts toward assassination and threats of assassination, which continued until the middle of 2003.

III. Conclusions of Law

The terrorism exception to the jurisdictional immunity of a foreign state provides that "A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case not otherwise covered by this chapter in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture. ..." FSIA, 28 U.S.C. § 1605A. The Act grants nationals of the United States a private right of action against a foreign state or officials or agents of that foreign state acting

{10108\00223905.1}  5

A TRUE COPY
CERTIFICATION ON LAST PAGE
A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

within the scope of his or her office, for damages for personal injury or death caused by acts of torture. The FSIA's definition of torture was derived from the definition of that term in the Torture Victim Protection Act of 1991:

> Any act, directed against an individual in the offender's custody or physical control, by which severe pain or suffering (other than pain or suffering arising only from or inherent in, or incidental to, lawful sanctions), whether physical or mental, is intentionally inflicted on that individual for such purposes as obtaining from that individual or a third person information or a confession, punishing that individual for an act that individual or a third person has committed or is suspected of having committed, intimidation or coercing that individual or a third person, or for any reason, based on discrimination of any kind. 28 U.S.C. § 1350 (note).

The undisputed evidence at trial established that Defendants' conduct rose to such a level of depravity contemplated by this statute. These events started in January, 1959, they caused Mr. Villoldo to take his life, they caused the loss of the Villoldo property, and continued until the middle of 2003 with threats of assassination and assassination attempts. Their actions are properly classified as torture. The Defendants' actions have caused Gustavo and Alfredo severe and permanent emotional pain, distress and suffering. Plaintiffs have also submitted substantial and competent evidence regarding the damages suffered by the Estate of Gustavo Villoldo Argilagos. With regard to emotional distress or solatium damages suffered by Gustavo and Alfredo, such damages may be awarded to them individually pursuant to the Foreign Sovereign Immunities Act. In addition, the Act provides for punitive damages.

With regard to subject matter jurisdiction, personal jurisdiction, and service of process, the record establishes that this Court has subject matter jurisdiction and personal jurisdiction over the Defendants and that service was perfected pursuant to applicable law. All

{{01080\0223905.1}}   6

A TRUE COPY
CERTIFICATION ON LAST PAGE
A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

Book27799/Page1437   CFN#20110558752   Page 6 of 9

defenses have been waived and this Court has jurisdiction to remediate and compensate for the misconduct described above

Based on the foregoing findings of fact and conclusions of law, it is hereby:

ADJUDGED that:

1. Judgment is entered in favor of Gustavo E. Villoldo as the Administrator, Executor, and/or Personal Representative of the Estate of Gustavo Villoldo Argilagos, and jointly and severally against FIDEL CASTRO, as an individual, agency, and instrumentality of the Republic of Cuba, RAUL CASTRO, as an individual, agency, and instrumentality of the Republic of Cuba, THE MINISTRY OF INTERIOR, an agency and instrumentality of the Republic of Cuba, the ARMY OF THE REPUBLIC OF CUBA, an agency and instrumentality of the Republic of Cuba; and THE REPUBLIC OF CUBA, a foreign state, for the sum of $1,400,000,000 _One billion, 400 Million dollars_, to the Estate of Gustavo Villoldo Argilagos representing economic damages to the Estate.

2. Judgment is entered in favor of Gustavo E. Villoldo individually, and jointly and severally against FIDEL CASTRO, as an individual, agency, and instrumentality of the Republic of Cuba, RAUL CASTRO, as an individual, agency, and instrumentality of the Republic of Cuba, THE MINISTRY OF INTERIOR, an agency and instrumentality of the Republic of Cuba, the ARMY OF THE REPUBLIC OF CUBA, an agency and instrumentality of the Republic of Cuba; and THE REPUBLIC OF CUBA, a foreign state, for the sum of $195,000,000, representing damages for solatium, pain and suffering, and emotional distress.

A TRUE COPY
CERTIFICATION ON LAST PAGE
A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

{10108100223903.1}

7.

3. Judgment is entered in favor of Alfredo Villoldo individually, and jointly and severally against FIDEL CASTRO, as an individual, agency, and instrumentality of the Republic of Cuba, RAUL CASTRO, as an individual, agency, and instrumentality of the Republic of Cuba, THE MINISTRY OF INTERIOR, an agency and instrumentality of the Republic of Cuba, the ARMY OF THE REPUBLIC OF CUBA, an agency and instrumentality of the Republic of Cuba; and THE REPUBLIC OF CUBA, a foreign state, for the sum of $ 195,000,000 One Hundred Ninety Five Million Dollars, representing damages for solatium, pain and suffering, and emotional distress.

4. Judgment is entered in favor of Gustavo E. Villoldo as the Personal Representative of the Estate of Gustavo Villoldo Argilagos, and jointly and severally against FIDEL CASTRO, as an individual, agency, and instrumentality of the Republic of Cuba, RAUL CASTRO, as an individual, agency, and instrumentality of the Republic of Cuba, THE MINISTRY OF INTERIOR, an agency and instrumentality of the Republic of Cuba, the ARMY OF THE REPUBLIC OF CUBA, an agency and instrumentality of the Republic of Cuba; and THE REPUBLIC OF CUBA, a foreign state, for the sum of $ 1,000,000,000 One Billion dollars representing punitive damages.

5. Execution shall issue forthwith against all Defendants against any of their assets wherever situated. The Plaintiffs are hereby awarded prejudgment interest on the Plaintiffs' claim on behalf of Gustavo Villoldo Argilagos from February 16, 1959 at the statutory rate.

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

BOOK 27799 PAGE 1440
LAST PAGE

6. Plaintiffs' counsel is authorized to serve a copy of this Final Judgment upon Defendants by sending a copy of the Final Judgment and a translation thereof to the Ministry of Foreign Affairs of Cuba via International Mail in accordance with Section 1608 of the FSIA.

7. This Court will retain jurisdiction to enforce its judgment.

DONE AND ORDERED in Chambers in Miami-Dade County, Florida, this 19th day of Aug, 2011

BEATRICE BUTCHKO
CIRCUIT COURT JUDGE

Copies to:
Andrew C. Hall, Esq.
Bruno Eduardo Rodríguez Parrilla, Minister of Foreign Affairs

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the original on file in this office.
HARVEY RUVIN, Clerk of Circuit and County Courts
Deputy Clerk

STATE OF FLORIDA, COUNTY OF MIAMI-DADE
I hereby certify that the foregoing is a true and correct copy of the original
DEC 19 2011

{J0108\00223903.1}