UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALDO VERA, JR., as Personal Representative
of the Estate of Aldo Vera, Sr.,

    Plaintiff,

vs.

THE REPUBLIC OF CUBA,

    Defendant.

12 Civ. 1596 (AKH)

---

ALDO VERA, JR., as Personal Representative
of the Estate of Aldo Vera, Sr., et al.,

    Petitioners,

v.

BANCO BILBAO VIZCAYA ARGENTARIA (S.A.), et al.,

    Respondents/Garnishees.

---

MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS PETITION

WHITE & CASE LLP

1155 Avenue of the Americas
New York, New York 10036
(212) 819-8200

*Attorneys for Respondent
Banco Bilbao Vizcaya
Argentaria, S.A.*

Of Counsel:

  Kenneth A. Caruso
  Patrick M. Wilson

# TABLE OF CONTENTS

VERA CASE: SUMMARY OF FACTS AND PRIOR PROCEEDINGS ................................... 1

VERA CASE: THE COURT LACKS SUBJECT MATTER JURISDICTION .......................... 2

    A.    The Court Lacks Subject Matter Jurisdiction In The Civil Action ........................ 2

        1.    Cuba Was Not Designated "As A Result Of" The Vera Sr. Killing ........... 3

        2.    Vera Sr.'s Killing Was Not An "Extrajudicial Killing" ............................. 5

        3.    Vera Is Not A "Claimant" ............................................................................ 6

        4.    Conclusion ................................................................................................... 7

    B.    The Court Lacks Subject Matter Jurisdiction In This Special Proceeding ............. 7

VERA CASE: THE JUDMENTS ARE VOID AND THE FLORIDA JUDGMENT IS NOT ENTITLED TO FULL FAITH AND CREDIT ......................................................................... 8

    A.    This Court's Judgment Is Void .............................................................................. 8

    B.    The Florida Judgment Is Not Entitled To Full Faith And Credit ........................... 8

        1.    The Florida Court Lacked Subject Matter Jurisdiction .............................. 9

        2.    The Florida Court's Jurisdictional Finding Is Not Preclusive ................. 10

VILLOLDO CASE: THE JUDGMENTS ARE VOID AND THE FLORIDA JUDGMENT IS NOT ENTITLED TO FULL FAITH AND CREDIT ....................................................... 11

    A.    Summary Of Facts And Prior Proceedings .......................................................... 11

    B.    Legal Analysis ..................................................................................................... 12

        1.    Villoldo Sr. ................................................................................................ 12

        2.    Villoldo Jr. ................................................................................................ 12

    C.    Conclusion ........................................................................................................... 13

HAUSLER CASE: THE JUDGMENTS ARE VOID AND THE FLORIDA JUDGMENT IS NOT ENTITLED TO FULL FAITH AND CREDIT ....................................................... 13

    A.    Summary Of Facts And Prior Proceedings .......................................................... 13

    B.    Legal Analysis ..................................................................................................... 14

    C.    Conclusion ........................................................................................................... 14

IN THE ALTERNATIVE, THE COURT SHOULD ALLOW JURISDICTIONAL DISCOVERY ................................................................................................................... 14

CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

## CASES

Ammons v. Dade City, 594 F. Supp. 1274 (M.D. Fla. 1984) ..................................................... 10

Baker v. Gen. Motors Corp., 522 U.S. 222 (1998) ................................................................... 15

by Samantar v. Yousuf, 130 S. Ct. 2278 (2010) ......................................................................... 8

CFTC v. Nahas, 738 F.2d 487 (D.C. Cir. 1984) ...................................................................... 15

Covington Indus., Inc. v. Resintex A.G., 629 F.2d 730 (2d Cir. 1980) ....................... 12, 13, 14

Durfee v. Duke, 375 U.S. 106 (1963) ...................................................................................... 15

First City, Texas-Houston, N.A. v. Rafidain Bank, 281 F.3d 48 (2d Cir. 2002) ...................... 12

Gonzales v. N. Township of Lake Cnty., 800 F. Supp. 676 (N.D. Ind. 1992) ......................... 10

In re Terrorist Attacks on Sept. 11, 2001, 538 F.3d 71 (2d Cir. 2008) ...................................... 8

Kremer v. Chem. Constr. Corp., 456 U.S. 461 (1982) ............................................................ 14

Manhattan Life Ins. Co. v. AJ Stratton Syndicate, 731 F. Supp. 587 (S.D.N.Y. 1990) .......... 19

Marquez-Almanzar v. INS, 418 F.3d 210 (2d Cir. 2005) ........................................................ 11

Peralta v. Heights Med. Ctr., Inc., 485 U.S. 80 (1988) ........................................................... 15

Phillips Petrol. Co. v. Shutts, 472 U.S. 797 (1985) ................................................................. 15

Richards v. Jefferson Cnty., 517 U.S. 793 (1996) ................................................................... 15

Saudi Arabia v. Nelson, 507 U.S. 349 (1993) ........................................................................... 7

Stanley v. Darlington Cnty. Sch. Dist., 879 F. Supp. 1341 (D.S.C. 1995) .............................. 10

Stratagem Dev. Corp. v. Heron Int'l N.V., 153 F.R.D. 535 (S.D.N.Y. 1994) ......................... 19

Taylor v. Sturgell, 553 U.S. 880 (2008) .................................................................................. 15

Transaero, Inc. v. La Fuerza Aerea Boliviana, 162 F.3d 724 (2d Cir. 1998) .......................... 15

Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n,
  455 U.S. 691 (1982) ............................................................................................................ 14

United States v. Forma, 42 F.3d 759 (2d Cir. 1994) .................................................. 12, 13, 14

NEWYORK 9037923 v2

Verlinden B.V. v. Cent. Bank of Nigeria, 461 U.S. 480 (1983) ........................................................8

Weinstein v. Islamic Republic of Iran, 609 F.3d 43 (2d Cir. 2010) ................................................12

## STATUTES AND RULES

31 C.F.R. § 515.101 ........................................................................................................................7

28 U.S.C. § 1330 ............................................................................................................................7

28 U.S.C. § 1332 ............................................................................................................................8

28 U.S.C. § 1350 ..........................................................................................................................18

28 U.S.C. § 1602 ............................................................................................................................7

28 U.S.C. § 1604 et seq. ........................................................................................................ passim

28 U.S.C. § 1610 ............................................................................................................................7

28 U.S.C. § 1738 ..........................................................................................................................13

28 U.S.C. § 1963 ..........................................................................................................................19

N.Y. C.P.L.R. § 404 .......................................................................................................................6

N.Y. C.P.L.R. § 5225 .....................................................................................................................7

Fed. R. Civ. P. 12 .........................................................................................................................12

Fed. R. Civ. P. 69 ......................................................................................................................6, 7

Fed. R. Evid. 803 .........................................................................................................................10

Fed. R. Evid. 807 .........................................................................................................................10

## MISCELLANEOUS

Restatement (Second) of Conflict of Laws § 104 (1971) .............................................................15

U.S. CONST. art. IV, § 1 ................................................................................................................13

Respondent, Banco Bilbao Vizcaya Argentaria, S.A. ("BBVA"), respectfully submits this memorandum of law in support of its motion, pursuant to CPLR § 404(a), made applicable by FRCP 69(a), to dismiss the Omnibus Petition for Turnover (the "Petition").

<u>VERA</u> CASE: SUMMARY OF
FACTS AND PRIOR PROCEEDINGS

Petitioner Aldo Vera, Jr. ("Vera" or "Vera Jr.") alleges the following: Aldo Vera, Sr. was the chief of police in Havana, Cuba, following the Cuban revolution. He later became disillusioned with Castro's communist regime and fled Cuba for Miami, Florida, and San Juan, Puerto Rico, where he became active in counter-revolutionary activities.

On October 25, 1976, Vera Sr. was shot and killed in San Juan. Vera alleges that this killing was an extrajudicial killing by officials of the Republic of Cuba. According to a report of the FBI, however, Vera Sr. "was shot and killed in San Juan where police advised the murder was related to criminal activities rather than Cuban exile matters." Caruso Decl. Ex. G.

On December 28, 2001, Vera brought an action against the Republic of Cuba ("Cuba") in the Circuit Court of the Eleventh Judicial Circuit, Miami-Dade County, Florida (the "Florida Court"), under the Foreign Sovereign Immunities Act (the "FSIA"), seeking money damages for the extrajudicial killing of his father. On May 15, 2008, the Florida Court entered a default judgment in favor of Vera and against Cuba in the amount of approximately $95 million (the "Florida Judgment"). Caruso Decl. Ex. A.

On March 5, 2012, Vera commenced an action in this Court, <u>Vera v. Republic of Cuba</u>, seeking full faith and credit for the Florida Judgment. <u>See</u> Caruso Decl. Ex. B. On August 20, 2012, this Court granted that relief, entering its own default judgment (the "Judgment"). Caruso Decl. Ex. C.

On September 9, 2013, Vera and two other judgment creditors of Cuba -- Gustavo Villoldo, Jr. and Jeannette Fuller Hausler -- commenced this special proceeding, <u>Vera v. BBVA et al.</u> They filed the Petition against BBVA and fifteen other banks that hold electronic funds transfers ("EFTs") -- commonly known as "wire transfers" -- blocked pursuant to the Cuban Assets Control Regulations, 31 C.F.R. § 515.101 et seq. (2011), promulgated by the Office of Foreign Assets Control, an agency within the Department of the Treasury. Caruso Decl. Ex. D. The three judgment creditors seek turnover of those blocked EFTs pursuant to FRCP 69(a), CPLR § 5225(b), the Terrorism Risk Insurance Act ("TRIA"), 28 U.S.C. § 1610 note, and 28 U.S.C. § 1610(g).

POINT I

<u>VERA CASE: THE COURT LACKS SUBJECT MATTER JURISDICTION</u>

In this special proceeding, <u>Vera v. BBVA et al.</u>, Vera seeks to enforce this Court's Judgment entered in the civil action, <u>Vera v. Republic of Cuba</u>. The Court, however, lacks subject matter jurisdiction over the civil action. It also lacks subject matter jurisdiction over this special proceeding. Accordingly, the Court should dismiss both the civil action and this special proceeding, and should vacate its Judgment.

A.   <u>The Court Lacks Subject Matter Jurisdiction In The Civil Action</u>

<u>Vera v. Republic of Cuba</u> is a civil action against a foreign state. The Court can therefore have subject matter jurisdiction only under 28 U.S.C. § 1330(a) "as to any claim . . . with respect to which the foreign state is not entitled to immunity . . . under sections 1605-1607 of this title [28] . . . ." The FSIA, 28 U.S.C. § 1602 <u>et seq.</u> (2012), provides the sole source for jurisdiction in an action against a foreign state. <u>Saudi Arabia v. Nelson</u>, 507 U.S. 349, 355 (1993). Under the FSIA, a foreign state has immunity from suit, <u>see</u> 28 U.S.C. § 1604, unless an exception to

2

immunity, arising under 28 U.S.C. §§ 1605-1607, applies. If no exception to immunity applies, then the foreign state has immunity and the Court lacks subject matter jurisdiction. Verlinden B.V. v. Cent. Bank of Nigeria, 461 U.S. 480, 493 (1983); In re Terrorist Attacks on Sept. 11, 2001, 538 F.3d 71, 80 (2d Cir. 2008), abrogated on other grounds by Samantar v. Yousuf, 130 S. Ct. 2278 (2010).

Seeking an exception to immunity, Vera necessarily relies on 28 U.S.C. § 1605A(a), although the Complaint does not cite this statute.[1]  Section 1605A(a)(1) and (2) provide, in pertinent part:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case not otherwise covered by this chapter in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency. . . .
>
> The court shall hear a claim under this section if:
>
> (A)(i)(I) the foreign state was designated as a state sponsor of terrorism at the time the act described in paragraph (1) occurred, or was so designated as a result of such act . . . [and]
>
> (ii) the claimant or the victim was, at the time the act described in paragraph (1) occurred . . . a national of the United States . . . .

1. <u>Cuba Was Not Designated "As A Result Of" The Vera Sr. Killing</u>

The State Department had not designated Cuba as a state sponsor of terrorism in 1976, when the killing of Vera Sr. occurred. Rather, the State Department so designated Cuba in 1982.

---

[1] The Complaint alleges subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(4). Caruso Decl. Ex. B. (Complaint ¶ 2). That statute, however, by its plain terms, applies only where the foreign state is a plaintiff, not where, as here, the foreign state is a defendant.

3

The question, therefore, is whether, in 1982, the State Department designated Cuba "as a result of" the killing of Vera Sr. The answer is no.

In an action pending in the United States District Court for the Southern District of Florida, Hausler v. Republic of Cuba, No. 08-20197, the U.S. Government filed a Statement of Interest and the Declaration of a State Department official, Peter M. Brennan, who is the Coordinator, Office of the Coordinator for Cuban Affairs. Brennan stated the following:

> In 1982, the Secretary of State designated Cuba a state sponsor of terrorism under Section 6(j) of the Export Administration Act of 1979, Pub. L. No. 96-72, codified at 50 U.S.C. App. § 2405(j). The Department [of State] concluded that Cuba belonged in the category of states that have repeatedly provided support for acts of international terrorism, specifically because of Cuba's clear support for organizations and groups abroad that used terrorism and revolutionary violence as a policy instrument to undermine existing governments. This reason was reflected in the testimony and prepared statement of Ernest Johnston, Jr., Deputy Assistant Secretary for Economic Affairs before the Subcommittee on Near Eastern and South Asian Affairs of the Senate Foreign Relations Committee on March 18, 1982. [citing pages 10 and 13 of the Johnston testimony.]

Caruso Decl. Ex. E (Brennan Decl. ¶ 4). Brennan did not mention the Vera Sr. killing.

Deputy Assistant Secretary Johnston testified, in pertinent part:

> I believe you are all aware of the reasons behind designating Cuba as a repeated supporter of acts of international terrorism. In the case of Cuba, we evaluated carefully the evidence of Cuban support for revolutionary violence and groups which use terrorism as a policy instrument, Cuban leaders have publicly asserted a right and a duty to provide such support. One example is the support Cuba has given to the M-19, a Colombian group which has repeatedly engaged in kidnappings, bombings, hostage-taking, and aircraft hijacking. This support caused Colombia to sever diplomatic relations with Cuba in 1981. Our conclusion was that Cuba clearly belongs in the category of states which have repeatedly provided support for acts of international terrorism.

4

Caruso Decl. Ex. F at 13; see also id. at 27 (decision to designate Cuba was made by Secretary of State). Johnston -- who testified at a critical moment, just twenty days after the Secretary of State designated Cuba -- did not mention the Vera Sr. killing.

Accordingly, the evidence shows that Cuba was designated as a state sponsor of terrorism in 1982 specifically because of Cuba's support for groups abroad who used terrorism and revolutionary violence as a policy instrument to undermine existing governments, and not "as a result of" the killing of Vera Sr. In light of this evidence, the terrorism exception to foreign sovereign immunity does not apply.

2.  Vera Sr.'s Killing Was Not An "Extrajudicial Killing"

Section 1605A provides an exception to sovereign immunity, in specified circumstances, for an "extrajudicial killing . . . by an official, employee, or agent of [a] foreign state while acting within the scope of his or her office, employment, or agency." 28 U.S.C. § 1605A(a)(1). According to the FBI, however, Vera Sr. "was shot and killed in San Juan where police advised the murder was related to criminal activities rather than Cuban exile political matters." Caruso Decl. Ex. G.[2] A contemporaneous report in The Miami Herald states that Vera Sr.'s "slaying . . . was the result of an underworld struggle for illicit motel business and not political activity, Puerto Rican police sources said Wednesday." Caruso Decl. Ex. H.[3]

According to a sworn Declaration filed in this case, Vera Sr. "was hired by two mafia figures in Puerto Rico . . . to kill a rival mafia boss," named Ramos. Caruso Decl. Ex. I. ¶ 3.

---

[2] The FBI report itself is not hearsay. See Fed. R. Evid. ("FRE") 803(6) (business records), 803(8) (public records) and 803(16) (statements in ancient documents). The statements of the Puerto Rico police are not hearsay. See FRE 803(8) and (16). The entire FBI report also falls within FRE 807, given the reliability of the report and the unlikelihood that more probative evidence can reasonably be obtained some 37 years after the killing.

[3] Courts regularly admit ancient newspaper articles. See FRE 803(16) and 902(6); Ammons v. Dade City, 594 F. Supp. 1274, 1280 n.8 (M.D. Fla. 1984); Gonzales v. N. Township of Lake Cnty., 800 F. Supp. 676, 681 (N.D. Ind. 1992); Stanley v. Darlington Cnty. Sch. Dist., 879 F. Supp. 1341, 1370 (D.S.C. 1995). And, again, FRE 807 should apply in the unusual circumstances of this case.

Vera Sr. "placed a bomb in Mr. Ramos's car." Id. ¶ 5. The bomb injured two police officers but did not succeed in killing Ramos. Two days later, Vera Sr. was killed. "Puerto Rican police concluded Aldo Vera placed the bomb [and that] "Vera was killed in connection with his attempted killing of . . . Ramos . . . not by the Republic of Cuba." Id. ¶¶ 9-10.[4]

On this record, the Court should conclude that Vera Sr.'s killing was not an extrajudicial killing. It follows that the terrorism exception to sovereign immunity does not apply.

3.   Vera Is Not A "Claimant"

Section 1605A provides an exception to sovereign immunity, in specified circumstances, if "the claimant or the victim was, at the time the [extrajudicial killing] occurred . . . a national of the United States[.]" Vera Sr. was "the victim" but he was not "a national of the United States[.]"[5] And Vera Jr. was a national of the United States but he is not a "claimant" within the meaning of the statute.

Section 1605A does not define "claimant" but Congress clearly used the term "claimant" in sub-section (a)(2)(A)(ii) as a short-hand or collective for the four types of claimants to whom Congress gave a private right of action in sub-section (c) -- (1) a national of the U.S., (2) a member of the armed forces, (3) a government employee and (4) the "legal representative of a person described in paragraph (1), (2), or (3)[.]"

Vera Sr. was not a U. S. national. Vera Jr. is therefore not "the legal representative of a person described in paragraph (1)." Vera Jr. is therefore not a "claimant" within the meaning of sub-section (a)(2)(A)(ii).

---

[4] This Declaration was made by a private investigator retained by Petitioner Villoldo, Jr. BBVA hereby incorporates by reference the other exhibits submitted by Villoldo, Jr., Docket Entry 253 and accompanying Exhibits.

[5] According to papers that Vera previously filed in this Court, Docket Entry 169 at 4-5, Vera Sr. was, at the time the killing occurred, a citizen of Cuba, a permanent resident alien of the U.S. and an applicant for naturalization. He was therefore not a national of the United States. Marquez-Almanzar v. INS, 418 F.3d 210, 216-19 (2d Cir. 2005).

4.    Conclusion

For the foregoing reasons, the Court lacks subject matter jurisdiction over Vera v. Republic of Cuba. It follows that the Court must dismiss that action, see Fed. R. Civ. P. 12(h)(3), and that the Court's Judgment is void, United States v. Forma, 42 F.3d 759, 762 (2d Cir. 1994), a legal nullity, Covington Indus., Inc. v. Resintex A.G., 629 F.2d 730, 732-33 & n.3 (2d Cir. 1980), which cannot be enforced in this special proceeding, Vera v. BBVA et al.

B.    The Court Lacks Subject Matter Jurisdiction In This Special Proceeding

It also follows that the Court lacks subject matter jurisdiction over this special proceeding. "[W]here subject matter jurisdiction under the FSIA exists to decide a case, jurisdiction continues long enough to allow proceedings in aid of any money judgment that is rendered in the case." First City, Texas-Houston, N.A. v. Rafidain Bank, 281 F.3d 48, 54 (2d Cir. 2002). Here, however, as shown above, the Court lacks subject matter jurisdiction under the FSIA to decide and render a judgment in Vera v. Republic of Cuba. Therefore, the Court has no continuing jurisdiction over Vera v. BBVA, et al.

TRIA can provide an independent basis for "subject matter jurisdiction over post-judgment execution and attachment proceedings against property held in the hands of an instrumentality of the judgment-debtor, even if the instrumentality is not itself named in the judgment." Weinstein v. Islamic Republic of Iran, 609 F.3d 43, 50 (2d Cir. 2010). Here, however, the property at issue is not in the hands of an instrumentality of the judgment debtor, Cuba. Furthermore, the exceptions to execution immunity set forth in Section 1610 apply only "where a valid judgment has been entered against a foreign sovereign . . . ." Id. at 48 (emphasis added). Here, as shown above, the Judgment entered against Cuba in Vera v. Republic of Cuba is void, not valid.

7

POINT II

VERA CASE: THE JUDMENTS ARE VOID AND
THE FLORIDA JUDGMENT IS NOT ENTITLED
TO FULL FAITH AND CREDIT

Even assuming that this Court has subject matter jurisdiction over this special proceeding, Vera v. BBVA, et al., the Court cannot enforce its Judgment or grant full faith and credit to Vera's Florida Judgment because this Court and the Florida Court both lacked subject matter jurisdiction to render a judgment.

A.   This Court's Judgment Is Void

In Vera v. Republic of Cuba, this Court entered its own Judgment, granting full faith and credit to the Florida Judgment. As shown above, however, the Court lacked subject matter jurisdiction over Vera v. Republic of Cuba. It follows that the Court's Judgment is void, Forma, 42 F.3d at 762, a legal nullity, Covington Indus., 629 F.2d at 732-33 & n.3, which cannot be enforced in this special proceeding, Vera v. BBVA et al.

B.   The Florida Judgment Is Not Entitled To Full Faith And Credit

The Florida Judgment has no effect in New York unless and until this Court grants full faith and credit to the Florida Judgment. Here, however, the Florida Court lacked subject matter jurisdiction under 28 U.S.C. § 1605(a)(7). The Florida Judgment is therefore void and is not entitled to full faith and credit.

Under the Full Faith and Credit Clause, U.S. CONST. art. IV, § 1, and the implementing statute, 28 U.S.C. § 1738, this Court must give full faith and credit to the Florida Judgment if the Florida Court had jurisdiction. If, on the other hand, the Florida Court lacked jurisdiction, then the Florida Judgment is void and cannot be given full faith and credit. See generally

8

Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n, 455 U.S. 691, 704-05 & n.10 (1982).

1. The Florida Court Lacked Subject Matter Jurisdiction

Vera brought an action in the Florida Court against Cuba, a foreign state. Seeking an exception to immunity, Vera relied on 28 U.S.C. § 1605(a)(7), since repealed, which provided, in pertinent part:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which money damages are sought against a foreign state for personal injury or death that was caused by an act of . . . extrajudicial killing . . . if such act . . . is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency, except that the court shall decline to hear a claim under this paragraph . . .
>
> (A) if the foreign state was not designated as a state sponsor of terrorism under section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)) or section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371) at the time the act occurred, unless later so designated as a result of such act . . . and
>
> (B) even if the foreign state was so designated, if . . .
>
>     (ii) neither the claimant nor the victim was a national of the United States (as that term is defined in section 101(a)(22) of the Immigration and Nationality Act) when the act upon which the claim is based occurred.

As shown above, (a) Cuba was not designated as a state sponsor of terrorism "as a result of" the killing of Vera, and (b) the killing of Vera Sr. was not an extrajudicial killing. The Florida Court therefore lacked subject matter jurisdiction. It follows that the Florida Judgment is void, Forma, 42 F.3d at 762, a legal nullity, Covington Indus., 629 F.2d at 732-33 & n.3, which cannot be given full faith and credit.

This Court's Judgment granting full faith and credit to a void state-court judgment is itself void. See Underwriters, 455 U.S. at 704-05 & n.10; Kremer v. Chem. Constr. Corp., 456

9

U.S. 461, 482 (1982). Indeed, enforcement of a void state-court judgment would violate due process. Peralta v. Heights Med. Ctr., Inc., 485 U.S. 80, 86 (1988); Restatement (Second) of Conflict of Laws § 104 cmt. a (1971).

### 2. The Florida Court's Jurisdictional Finding Is Not Preclusive

The Florida Court found that it had jurisdiction pursuant to § 1605(a)(7). Caruso Decl. Ex. A at 3-4. That finding, however, is not preclusive here. "In no event . . . can issue preclusion be invoked against one who did not participate in the prior adjudication." Baker v. Gen. Motors Corp., 522 U.S. 222, 237 n.11 (1998); see Durfee v. Duke, 375 U.S. 106, 115 (1963) (nothing decided in litigation between parties "could bind" non-parties "with respect to any controversy they might have, now or in the future . . . ."); see also Transaero, Inc. v. La Fuerza Aerea Boliviana, 162 F.3d 724, 730 (2d Cir. 1998); CFTC v. Nahas, 738 F.2d 487, 491 (D.C. Cir. 1984).

BBVA was not a party to the action in the Florida Court. It did not have a full and fair opportunity to litigate the issue of the Florida Court's subject matter jurisdiction. Accordingly, as against BBVA, the jurisdictional finding of the Florida Court has no preclusive effect. BBVA is entitled to its "own day in court." Taylor v. Sturgell, 553 U.S. 880, 893 (2008) (internal quotation marks omitted). Indeed, preclusion of BBVA in these circumstances would violate due process. Richards v. Jefferson Cnty., 517 U.S. 793, 798 (1996); Phillips Petrol. Co. v. Shutts, 472 U.S. 797, 811-12 (1985) (due process requires "notice plus an opportunity to be heard and participate in the litigation").[6]

---

[6] For similar reasons, this Court's Judgment, like the Florida Court's jurisdictional finding, is not preclusive against BBVA, which did not participate in this Court's prior adjudication and which is therefore entitled to litigate afresh the issue of full faith credit.

10

POINT III

VILLOLDO CASE: THE JUDGMENTS ARE VOID AND
THE FLORIDA JUDGMENT IS NOT ENTITLED
TO FULL FAITH AND CREDIT

A.  Summary Of Facts And Prior Proceedings

Gustavo Villoldo Jr. ("Villoldo" or "Villoldo Jr.") alleges that Gustavo Villoldo Sr. was the victim of an extrajudicial killing in Cuba in 1959, when, after abductions and threats by Cuban authorities, Villoldo Sr. committed suicide. Villoldo Jr. also alleges that he was the victim of torture in Cuba in 1959. He further alleges that Cuban officials threatened and attempted to assassinate him as recently as 2003.

In 2008, Villoldo Jr. commenced an action in the Florida Court against the Republic of Cuba and others, pursuant to the FSIA, seeking money damages for the extrajudicial killing and the torture. In 2009, the Florida Court granted a default judgment in favor of Villoldo for compensatory damages in the amount of $1.179 million. Caruso Decl. Ex. J.

On January 22, 2010, Villoldo filed an action in the United States District Court for the Southern District of Florida (the "S.D. Fla.") against the Republic of Cuba and others, seeking full faith and credit for his Florida judgment. The S.D. Fla., however, ordered Villoldo to "explain how the facts of this case support jurisdiction under the [FSIA] exception[,]" and to "describe any evidence presented in the state court proceedings to support jurisdiction under the FSIA." Caruso Decl. Ex. K. Villoldo thereupon dismissed his federal action, Caruso Decl. Ex. L, and went back to state court, where, on August 19, 2011, he obtained another default judgment, this time for $2.79 billion. Caruso Decl. Ex. M.

On December 21, 2011, Villoldo commenced an action in this Court, against the Republic of Cuba and others, also pursuant to the FSIA, seeking full faith and credit for his

11

second Florida judgment. That action was assigned to Judge Swain, 11 Civ. 9394 (LTS), who, on October 25, 2012, entered her own default judgment granting full faith and credit to Villoldo's Florida judgment. Caruso Decl. Ex. N.

B.  Legal Analysis

   1.  Villoldo Sr.

It is alleged that Villoldo Sr. was the victim of an extrajudicial killing in 1959. The State Department, however, had not designated Cuba as a state sponsor of terrorism in 1959, when the Villoldo Sr. killing occurred. And, as shown above, Cuba was not so designated in 1982 "as a result of" the killing of Villoldo Sr.

   2.  Villoldo Jr.

Villoldo Jr. alleges that Cuban officials took him into custody in 1959, where they tortured him. As shown above, however, Cuba was not designated as a state sponsor of terrorism in 1959, when that torture occurred. And, in 1982, Cuba was not so designated "as a result of" that torture. It follows that no exception to sovereign immunity applies.

Villoldo Jr. also alleges that Cuban officials threatened and attempted to assassinate him at times when Cuba was designated as a state sponsor of terrorism (after 1982 and into 2003). Those acts, however, are not "act[s] described in paragraph (1)" of 28 U.S.C. § 1605A(a), which provides an exception to sovereign immunity in a case in which money damages are sought for personal injury caused by "an act of torture, extrajudicial killing, aircraft sabotage [or] hostage taking[.]" Assassination threats and attempts do not fall within those statutory terms. In particular, the assassination threats and attempts alleged here were not "torture" because Villoldo Jr. was not "in the offender's custody or physical control" when the acts were directed against

12

him, as required by section 3(b)(1) of the Torture Victim Protection Act, 28 U.S.C. § 1350 note (made applicable by 28 U.S.C. § 1605A(h)(7)).

C.  Conclusion

It follows that no exception to sovereign immunity applied in the Villoldo action. Judge Swain therefore lacked subject matter jurisdiction, the action before her must be dismissed, and her judgment is void and unenforceable. Villoldo's Florida judgment is also void for lack of subject matter jurisdiction and could not be given full faith and credit by Judge Swain.

POINT IV

HAUSLER CASE:  THE JUDGMENTS ARE VOID AND
THE FLORIDA JUDGMENT IS NOT ENTITLED
TO FULL FAITH AND CREDIT

A.  Summary Of Facts And Prior Proceedings

In 1960, Hausler's brother, Robert Fuller, was the victim of an extrajudicial killing in Cuba. In 2002, Hausler commenced an action in the Florida Court against the Republic of Cuba, pursuant to the FSIA, seeking money damages for the extrajudicial killing of her brother.

On January 19, 2007, the Florida Court granted a default judgment in favor of Hausler for compensatory damages in the amount of $100 million. Caruso Decl. Ex. O. On January 23, 2008 -- five days before 28 U.S.C. § 1605A became law -- Hausler commenced an action against the Republic of Cuba in the S.D. Fla., also pursuant to the FSIA, seeking full faith and credit for her Florida judgment. Caruso Decl. Ex. P. Hausler again relied on 28 U.S.C. § 1605(a)(7) for an exception to sovereign immunity.

On August 20, 2008, the S.D. Fla., the Hon. Adalberto Jordan, then U.S.D.J., now U.S.C.J., entered its own default judgment (the "S.D. Fla. Judgment"), granting full faith and

13

credit to the Florida judgment. Hausler then registered the S.D. Fla. Judgment in this district pursuant to 28 U.S.C. § 1963. Hausler now seeks to enforce that S.D. Fla. Judgment.

B.  Legal Analysis

The killing of Hausler's brother occurred in 1960. The State Department had not designated Cuba as a state sponsor of terrorism in 1960, when the killing occurred. And, as shown above, Cuba was not so designated in 1982 "as a result of" the killing of Hausler's brother.

C.  Conclusion

It follows that no exception to sovereign immunity applied in the Hausler action. Judge Jordan therefore lacked subject matter jurisdiction, and his S.D. Fla. Judgment is void and unenforceable. Hausler's Florida (state) judgment is also void for lack of subject matter jurisdiction and could not be given full faith and credit by Judge Jordan.

POINT V

IN THE ALTERNATIVE, THE COURT SHOULD
ALLOW JURISDICTIONAL DISCOVERY

In the alternative, if the Court, on the existing record, would not grant BBVA's motion to dismiss, then BBVA requests leave to conduct discovery to support its jurisdictional challenge. BBVA has made, at the very least, a "sufficient start" toward establishing a lack of jurisdiction, such that discovery is appropriate. Stratagem Dev. Corp. v. Heron Int'l N.V., 153 F.R.D. 535, 547 (S.D.N.Y. 1994); see also Manhattan Life Ins. Co. v. AJ Stratton Syndicate, 731 F. Supp. 587, 593 (S.D.N.Y. 1990) (jurisdictional discovery appropriate where party shows its position to be non-frivolous). Specifically, and depending on the Court's reasoning in addressing the motion, the Court should permit BBVA to develop additional evidence from the State Department (regarding the 1982 designation of Cuba) and/or from the FBI, Puerto Rico police

and/or the Villoldo private investigator (regarding the circumstances surrounding the death of Vera Sr.).

## CONCLUSION

For the foregoing reasons, the motion to dismiss should be granted.

Dated: New York, New York
November 15, 2013

WHITE & CASE LLP

By: */s/ Kenneth A. Caruso*
Kenneth A. Caruso

Of Counsel:
    Kenneth A. Caruso
    Patrick M. Wilson

1155 Avenue of the Americas
New York, New York 10036
Tel:   (212) 819-8200

Attorneys for BBVA

15