**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| ALDO VERA, JR., as Personal Representative of the Estate of Aldo Vera, Sr., | : : : | 12 Civ. 1596 (AKH) |
| Plaintiff, | : | |
| vs. | : : | |
| THE REPUBLIC OF CUBA, | : : | |
| Defendant. | : | |

MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL AND
IN SUPPORT OF BBVA'S CROSS-MOTION TO QUASH SUBPOENA AND
FOR PROTECTIVE ORDER

WHITE & CASE LLP

1155 Avenue of the Americas
New York, New York  10036
(212) 819-8200

*Attorneys for Banco Bilbao Vizcaya*
*Argentaria, S.A*

Of Counsel:

    Kenneth A. Caruso
    Patrick M. Wilson

## TABLE OF CONTENTS

SUMMARY OF FACTS AND PRIOR PROCEEDINGS ............................................................ 1

POINT I -- WORLDWIDE DISCOVERY IS NOT AVAILABLE PURSUANT
   TO AN INFORMATION SUBPOENA ........................................................ 2

POINT II -- THE SUBPOENA IS VOID BECAUSE THE COURT LACKS
   SUBJECT MATTER JURISDICTION ........................................................ 3

   A.    The Court Lacks Subject Matter Jurisdiction Over The Civil Action .................... 4

         1.    Cuba Was Not Designated "As A Result Of" The Vera Sr. Killing ........... 5

         2.    Vera Sr.'s Killing Was Not An "Extrajudicial Killing" ............................ 7

         3.    Vera Is Not A "Claimant" .......................................................................... 7

         4.    Conclusion .................................................................................................. 8

POINT III -- PRINCIPLES OF INTERNATIONAL COMITY WARRANT DENIAL OF
   ENFORCEMENT ....................................................................................... 8

   A.    The Doctrine Of International Comity ................................................................... 9

   B.    Comity In The Federal Courts ............................................................................... 9

   C.    Comity Under New York Law .............................................................................. 10

   D.    The Comity Factors ............................................................................................... 12

   E.    Application Of The Factors Here ......................................................................... 12

         1.    The Importance Of The Documents To The Litigation ........................... 12

         2.    The Degree Of Specificity Of The Request ............................................. 13

         3.    Whether The Information Originated In The United States ..................... 13

         4.    The Hardship Of Compliance ................................................................... 13

         5.    The Availability Of Alternative Means Of Securing Information ........... 14

         6.    The Good Faith Of The Resisting Person ................................................. 14

         7.    The Balance Of National Interests ............................................................ 14

   F.    Conclusion ............................................................................................................. 15

CONCLUSION ....................................................................................................................... 16

## TABLE OF AUTHORITIES

### CASES

Ammons v. Dade City, 594 F. Supp. 1274 (M.D. Fla. 1984).............................................................7

Arellano v. Starwood Hotels & Resorts Worldwide, Inc.
448 F. Supp. 2d 520 (S.D.N.Y. 2006)........................................................................................14

Ayyash v. Koleilat, 38 Misc. 3d 916 (Sup. Ct. New York Cnty. 2012) .....................................11, 12

Samantar v. Yousuf, 560 U.S. 305 (2010)........................................................................................4

Byblos Bank Europe, S.A. v. Sekerbank Turk Anonym Syrketi, 10 N.Y.3d 243 (2008) ...........9, 15

Cates v. LTV Aerospace Corp., 480 F.2d 620 (5th Cir. 1973)........................................................10

CE Int'l Res. Holdings, LLC v. S.A. Minerals LP, 2013 U.S. Dist. LEXIS 85650
(S.D.N.Y. June 12, 2013).................................................................................................10, 13, 14

Elder-Beerman Stores Corp. v. Federated Dep't Stores, Inc., 45 F.R.D. 515
(S.D.N.Y. 1968) .........................................................................................................................10

First Am. Corp. v. Price Waterhouse LLP, 154 F.3d 16 (2d Cir. 1998)....................................10, 12

Gonzales v. N. Township of Lake Cnty., 800 F. Supp. 676 (N.D. Ind. 1992) ..................................7

Hilton v. Guyot, 159 U.S. 113 (1895)................................................................................................9

Houston Bus. Journal, Inc. v. Comptroller of the Currency, 86 F.3d 1208 (D.C. Cir. 1996).............4

In re Estate of Augusta, 171 A.D.2d 595 (1st Dep't 1991) ........................................................11, 12

In re Marc Rich & Co., A.G., 707 F.2d 663 (2d Cir. 1983)...............................................................10

In re Terrorist Attacks on Sept. 11, 2001, 538 F.3d 71 (2d Cir. 2008)..............................................4

Ings v. Ferguson, 282 F.2d 149 (2d Cir. 1960)..............................................................................9, 10

Ladell v. Field, 114 A.D.2d 1010 (2d Dep't 1985).............................................................................3

Laker Airways Ltd. v. Pan Am. World Airways, 607 F. Supp. 324 (S.D.N.Y. 1985) .....................10

Linde v. Arab Bank PLC, 262 F.R.D. 136 (E.D.N.Y. 2009).......................................................10, 13

M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972) ...............................................................15

Marquez-Almanzar v. INS, 418 F.3d 210 (2d Cir. 2005).................................................................8

Meisel v. FBI, 204 F. Supp. 2d 684 (S.D.N.Y. 2002) ..........................................................4

Minpeco, S.A. v. Conticommodity Servs., Inc., 116 F.R.D. 517 (S.D.N.Y. 1987)..............10, 12, 14

Nissan Fire & Marine Ins. Co. v. Fortress Re, Inc.
    2002 WL 1870084 (S.D.N.Y. Aug. 14, 2002)............................................................10

Orlich v. Helm Bros., Inc., 160 A.D.2d 135 (1st Dep't 1990)................................11, 14, 15

Peterson v. Islamic Rep. of Iran, 2013 U.S. Dist. LEXIS 146050 (S.D.N.Y. Oct. 8, 2013) ...........12

Saraceno v. S.C. Johnson & Son, Inc., 492 F. Supp. 979 (S.D.N.Y. 1980) ....................................14

Saudi Arabia v. Nelson, 507 U.S. 349 (1993) ...................................................................4

Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for the
    S. Dist. of Iowa, 482 U.S. 522 (1987).........................................................................12

Stanley v. Darlington Cnty. Sch. Dist., 879 F. Supp. 1341 (D.S.C. 1995)........................................7

Tiffany (NJ) LLC v. Andrew, 276 F.R.D. 143 (S.D.N.Y. 2011)...................................10, 15

Tiffany (NJ) LLC v. Forbse, 2012 WL 1918866 (S.D.N.Y. May 29, 2012)............................10, 15

Umana v. SCM S.p.A., 291 A.D.2d 446 (2d Dep't 2002) .................................................11

United States Catholic Conference v. Abortion Rights Mobilization, Inc.,
    487 U.S. 72 (1988).......................................................................................................4

United States v. Davis, 767 F.2d 1025 (2d Cir. 1985).......................................................10

Verlinden B.V. v. Cent. Bank of Nigeria, 461 U.S. 480 (1983).........................................4

## STATUTES AND RULES

28 U.S.C. § 1330.............................................................................................................4

28 U.S.C. § 1332.............................................................................................................5

28 U.S.C. § 1602 et seq. ......................................................................................... passim

N.Y. C.P.L.R. § 311.........................................................................................................3

N.Y. C.P.L.R. § 2303.......................................................................................................3

N.Y. C.P.L.R. § 2304.......................................................................................................1

N.Y. C.P.L.R. § 5224.............................................................................................1, 2, 3, 11

Fed. R. Civ. P. 69 ......................................................................................................1, 10

Fed. R. Evid. 803 ...............................................................................................................7

Fed. R. Evid. 807 ...............................................................................................................7

Fed. R. Evid. 902 ...............................................................................................................7

### MISCELLANEOUS

David D. Siegel, <u>New York Practice</u>, § 509 (5th ed. 2011).............................................2, 3

Restatement (Third) of Foreign Relations Law ...........................................................12

Banco Bilbao Vizcaya Argentaria, S.A. ("BBVA") respectfully submits this

memorandum of law in opposition to the motion made by plaintiff, Aldo Vera, Jr. ("Vera" or

"Vera Jr."), pursuant to CPLR Rule 5224(a), made applicable by FRCP 69(a), to compel

disclosure by enforcing a subpoena, and in support of BBVA's cross-motion, pursuant to CPLR

§§ 5240, 3104 and 2304, to quash that subpoena and for a protective order.

SUMMARY OF
FACTS AND PRIOR PROCEEDINGS

Vera alleges the following: Aldo Vera, Sr. was the chief of police in Havana, Cuba,

following the Cuban revolution. He later became disillusioned with Castro's communist regime

and fled Cuba for Miami, Florida, and San Juan, Puerto Rico, where he became active in

counter-revolutionary activities.

On October 25, 1976, Vera Sr. was shot and killed in San Juan. Vera alleges that this

killing was an extrajudicial killing by officials of the Republic of Cuba. According to a report of

the FBI, however, Vera Sr. "was shot and killed in San Juan where police advised the murder

was related to criminal activities rather than Cuban exile matters." Caruso Decl. Ex. G.[1]

On December 28, 2001, Vera brought an action against the Republic of Cuba ("Cuba") in

the Circuit Court of the Eleventh Judicial Circuit, Miami-Dade County, Florida (the "Florida

Court"), under the Foreign Sovereign Immunities Act (the "FSIA"), seeking money damages for

the extrajudicial killing of his father. On May 15, 2008, the Florida Court entered a default

judgment in favor of Vera and against Cuba in the amount of approximately $95 million (the

"Florida Judgment"). Caruso Decl. Ex. A.

---

[1]  References to "Caruso Decl. Ex. __" are references to the Declaration of Kenneth A. Caruso, dated November 15,
2013, D.E. 351, and the exhibits to that Declaration, previously submitted in support of BBVA's motion to dismiss
the Omnibus Petition for Turnover.

On March 5, 2012, Vera commenced this action, <u>Vera v. Republic of Cuba</u>, seeking full faith and credit for the Florida Judgment.  <u>See</u> Caruso Decl. Ex. B.  On August 20, 2012, this Court granted that relief, entering its own default judgment.  Caruso Decl. Ex. C.

On November 26, 2012, Vera mailed an Information Subpoena (the "Subpoena") to BBVA's New York branch.  Swift Decl. in Support of Motion to Compel ¶ 9.  The Subpoena sought information concerning assets in which Cuba may have an interest.  The Subpoena, furthermore, sought such information "obtained from New York and world-wide branches" of BBVA.  Swift Decl. Ex. 3.

On December 21, 2012, BBVA responded to the Subpoena by providing information regarding assets (blocked accounts) held at BBVA's New York branch.  Swift Decl. Ex. 4.  Vera now moves to compel information regarding assets held outside New York.

POINT I

WORLDWIDE DISCOVERY IS<br>NOT AVAILABLE PURSUANT<br><u>TO AN INFORMATION SUBPOENA</u>

Vera seeks to compel disclosure of information regarding assets that BBVA holds outside New York.  Such disclosure, however, is not available pursuant to the Subpoena, which is an information subpoena, not a subpoena duces tecum.

CPLR Rule 5224 makes three kinds of subpoenas available to a judgment creditor -- (1) a deposition subpoena (Rule 5224(a)(1)); (2) a subpoena duces tecum (Rule 5224(a)(2)); and (3) an information subpoena (Rule 5224(a)(3)).  David D. Siegel, <u>New York Practice</u> ("Siegel"), § 509 at 892 (5th ed. 2011).  CPLR Rule 5224(a)(4)(a-1) applies to a subpoena duces tecum.  It provides, in pertinent part:

> A subpoena duces tecum authorized by this rule and served on . . .
> a corporation . . . in the state, shall subject the person or other
> entity or business served to the full disclosure prescribed by

> section fifty-two hundred twenty-three of this article whether the materials sought are in the possession, custody or control of the subpoenaed person, business or other entity within or without the state.

This provision applies <u>only</u> to a subpoena duces tecum. It does not apply to an information subpoena.

Vera's Subpoena is an information subpoena, not a subpoena duces tecum. It follows that Vera cannot compel the disclosure he now seeks. Therefore, the motion to compel should be denied and the cross-motion for a protective order should be granted.

Nor can the Court treat the Subpoena as a subpoena duces tecum. A subpoena duces tecum must be served in the same manner as a summons. <u>See</u> CPLR § 2303(a); <u>Siegel</u>, § 509 at 892. Absent such service, a court lacks personal jurisdiction over the recipient of the subpoena duces tecum, <u>see, e.g.</u>, <u>Ladell v. Field</u>, 114 A.D.2d 1010, 1011 (2d Dep't 1985), and therefore has no power to order that recipient to comply with Rule 5224(a)(4)(a-1).

Here, Vera simply mailed the Subpoena to BBVA. <u>See</u> <u>Siegel</u>, § 509 at 893 ("All [an information subpoena] really is, though, is a set of interrogatories sent and answered by mail . . . ."). Because Vera did not serve the Subpoena in the manner of a summons, <u>see</u> CPLR § 311 (requiring personal service when serving a summons on a corporation), the Court has no personal jurisdiction over BBVA with respect to a request for this Court to order the disclosure provided in Rule 5224(a)(4)(a-1).

POINT II

THE SUBPOENA IS VOID BECAUSE THE
COURT LACKS SUBJECT MATTER JURISDICTION

In any event, the Subpoena is void because the Court lacks subject matter jurisdiction over <u>Vera v. Republic of Cuba</u>, the civil action in which Vera served the Subpoena. Accordingly, the Subpoena cannot be enforced.

A.  The Court Lacks Subject Matter Jurisdiction Over The Civil Action

"[T]he subpoena power of a court cannot be more extensive than its jurisdiction.  It follows that if a district court does not have subject-matter jurisdiction over the underlying action, and the process was not issued in aid of determining that jurisdiction, then the process is void . . . ."  United States Catholic Conference v. Abortion Rights Mobilization, Inc., 487 U.S. 72, 76 (1988); see also Houston Bus. Journal, Inc. v. Comptroller of the Currency, 86 F.3d 1208, 1213 (D.C. Cir. 1996); Meisel v. FBI, 204 F. Supp. 2d 684, 688-89 (S.D.N.Y. 2002).

Here, as shown below, the Court lacks subject matter jurisdiction over Vera v. Republic of Cuba.  Therefore, the Subpoena is void and cannot be enforced.

Vera v. Republic of Cuba is a civil action against a foreign state.  The Court can therefore have subject matter jurisdiction only under 28 U.S.C. § 1330(a) "as to any claim . . . with respect to which the foreign state is not entitled to immunity . . . under sections 1605-1607 of this title [28] . . . ."  The FSIA, 28 U.S.C. § 1602 et seq. (2012), provides the sole source for jurisdiction in an action against a foreign state.  Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993).  Under the FSIA, a foreign state has immunity from suit, see 28 U.S.C. § 1604, unless an exception to immunity, arising under 28 U.S.C. §§ 1605-1607, applies.  If no exception to immunity applies, then the foreign state has immunity and the Court lacks subject matter jurisdiction.  Verlinden B.V. v. Cent. Bank of Nigeria, 461 U.S. 480, 493 (1983); In re Terrorist Attacks on Sept. 11, 2001, 538 F.3d 71, 80 (2d Cir. 2008), abrogated on other grounds by Samantar v. Yousuf, 560 U.S. 305 (2010).

Seeking an exception to immunity, Vera necessarily relies on 28 U.S.C. § 1605A(a), although the Complaint does not cite this statute.[2]  Section 1605A(a)(1) and (2) provide, in pertinent part:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case not otherwise covered by this chapter in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency. . . .
>
> The court shall hear a claim under this section if:
>
> (A)(i)(I)  the foreign state was designated as a state sponsor of terrorism at the time the act described in paragraph (1) occurred, or was so designated as a result of such act . . . [and]
>
> (ii)  the claimant or the victim was, at the time the act described in paragraph (1) occurred . . . a national of the United States . . . .

1.  Cuba Was Not Designated "As A Result Of" The Vera Sr. Killing

The State Department had not designated Cuba as a state sponsor of terrorism in 1976, when the killing of Vera Sr. occurred.  Rather, the State Department so designated Cuba in 1982.  The question, therefore, is whether, in 1982, the State Department designated Cuba "as a result of" the killing of Vera Sr.  The answer is no.

In an action pending in the United States District Court for the Southern District of Florida, Hausler v. Republic of Cuba, No. 08-20197, the U.S. Government filed a Statement of Interest and the Declaration of a State Department official, Peter M. Brennan, who is the Coordinator, Office of the Coordinator for Cuban Affairs.  Brennan stated the following:

---

[2]  The Complaint alleges subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(4).  Caruso Decl. Ex. B. (Complaint ¶ 2).  That statute, however, by its plain terms, applies only where the foreign state is a plaintiff, not where, as here, the foreign state is a defendant.

> In 1982, the Secretary of State designated Cuba a state sponsor of terrorism under Section 6(j) of the Export Administration Act of 1979, Pub. L. No. 96-72, codified at 50 U.S.C. App. § 2405(j). The Department [of State] concluded that Cuba belonged in the category of states that have repeatedly provided support for acts of international terrorism, specifically because of Cuba's clear support for organizations and groups abroad that used terrorism and revolutionary violence as a policy instrument to undermine existing governments. This reason was reflected in the testimony and prepared statement of Ernest Johnston, Jr., Deputy Assistant Secretary for Economic Affairs before the Subcommittee on Near Eastern and South Asian Affairs of the Senate Foreign Relations Committee on March 18, 1982. [citing pages 10 and 13 of the Johnston testimony.]

Caruso Decl. Ex. E (Brennan Decl. ¶ 4). Brennan did not mention the Vera Sr. killing.

> Deputy Assistant Secretary Johnston testified, in pertinent part:

> > I believe you are all aware of the reasons behind designating Cuba as a repeated supporter of acts of international terrorism. In the case of Cuba, we evaluated carefully the evidence of Cuban support for revolutionary violence and groups which use terrorism as a policy instrument, Cuban leaders have publicly asserted a right and a duty to provide such support. One example is the support Cuba has given to the M-19, a Colombian group which has repeatedly engaged in kidnappings, bombings, hostage-taking, and aircraft hijacking. This support caused Colombia to sever diplomatic relations with Cuba in 1981. Our conclusion was that Cuba clearly belongs in the category of states which have repeatedly provided support for acts of international terrorism.

Caruso Decl. Ex. F at 13; see also id. at 27 (decision to designate Cuba was made by Secretary of State). Johnston -- who testified at a critical moment, just twenty days after the Secretary of State designated Cuba -- did not mention the Vera Sr. killing.

Accordingly, the evidence shows that Cuba was designated as a state sponsor of terrorism in 1982 specifically because of Cuba's support for groups abroad who used terrorism and revolutionary violence as a policy instrument to undermine existing governments, and not "as a result of" the killing of Vera Sr. In light of this evidence, the terrorism exception to foreign sovereign immunity does not apply.

2. Vera Sr.'s Killing Was Not An "Extrajudicial Killing"

Section 1605A provides an exception to sovereign immunity, in specified circumstances, for an "extrajudicial killing . . . by an official, employee, or agent of [a] foreign state while acting within the scope of his or her office, employment, or agency." 28 U.S.C. § 1605A(a)(1). According to the FBI, however, Vera Sr. "was shot and killed in San Juan where police advised the murder was related to criminal activities rather than Cuban exile political matters." Caruso Decl. Ex. G.[3] A contemporaneous report in The Miami Herald states that Vera Sr.'s "slaying . . . was the result of an underworld struggle for illicit motel business and not political activity, Puerto Rican police sources said Wednesday." Caruso Decl. Ex. H.[4]

According to a sworn Declaration filed in this case, Vera Sr. "was hired by two mafia figures in Puerto Rico . . . to kill a rival mafia boss," named Ramos. Caruso Decl. Ex. I. ¶ 3. Vera Sr. "placed a bomb in Mr. Ramos's car." Id. ¶ 5. The bomb injured two police officers but did not succeed in killing Ramos. Two days later, Vera Sr. was killed. "Puerto Rican police concluded Aldo Vera placed the bomb [and that] "Vera was killed in connection with his attempted killing of . . . Ramos . . . not by the Republic of Cuba." Id. ¶¶ 9-10.[5]

On this record, the Court should conclude that Vera Sr.'s killing was not an extrajudicial killing. It follows that the terrorism exception to sovereign immunity does not apply.

3. Vera Is Not A "Claimant"

---

[3] The FBI report itself is not hearsay. See Fed. R. Evid. ("FRE") 803(6) (business records), 803(8) (public records) and 803(16) (statements in ancient documents). The statements of the Puerto Rico police, within the FBI report, are not hearsay. See FRE 803(8) and (16). In any event, the entire FBI report falls within FRE 807, given the reliability of the report and the unlikelihood that more probative evidence can reasonably be obtained some 37 years after the killing.

[4] Courts regularly admit ancient newspaper articles. See FRE 803(16) and 902(6); Ammons v. Dade City, 594 F. Supp. 1274, 1280 n.8 (M.D. Fla. 1984); Gonzales v. N. Township of Lake Cnty., 800 F. Supp. 676, 681 (N.D. Ind. 1992); Stanley v. Darlington Cnty. Sch. Dist., 879 F. Supp. 1341, 1370 (D.S.C. 1995). And, again, FRE 807 should apply in the unusual circumstances of this case.

[5] This Declaration was made by a private investigator retained by Petitioner Gustavo Villoldo, Jr. BBVA hereby incorporates by reference the other exhibits submitted by Villoldo, Jr., Docket Entry 253 and accompanying Exhibits.

Section 1605A provides an exception to sovereign immunity, in specified circumstances, if "the claimant or the victim was, at the time the [extrajudicial killing] occurred . . . a national of the United States[.]"  Vera Sr. was "the victim" but he was not "a national of the United States[.]"[6]  And Vera Jr. was a national of the United States but he is not a "claimant" within the meaning of the statute.

Section 1605A does not define "claimant" but Congress clearly used the term "claimant" in sub-section (a)(2)(A)(ii) as a short-hand or collective for the four types of claimants to whom Congress gave a private right of action in sub-section (c) -- (1) a national of the U.S., (2) a member of the armed forces, (3) a government employee and (4) the "legal representative of a person described in paragraph (1), (2), or (3)[.]"

Vera Sr. was not a U. S. national.  Vera Jr. is therefore not "the legal representative of a person described in paragraph (1)."  Vera Jr. is therefore not a "claimant" within the meaning of sub-section (a)(2)(A)(ii).

4.  <u>Conclusion</u>

For the foregoing reasons, the Court lacks subject matter jurisdiction over <u>Vera v. Republic of Cuba</u>.  It follows that the Subpoena is void and cannot be enforced.

POINT III

PRINCIPLES OF INTERNATIONAL COMITY
<u>WARRANT DENIAL OF ENFORCEMENT</u>

In the alternative, the Court should refuse to enforce the Subpoena, pursuant to principles of international comity.  Enforcement of the Subpoena on the facts of this case would be inimical

---

[6]  According to papers that Vera previously filed in this Court, Docket Entry 169 at 4-5, Vera Sr. was, at the time the killing occurred, a citizen of Cuba, a permanent resident alien of the U.S. and an applicant for naturalization.  He was therefore not a national of the United States.  <u>Marquez-Almanzar v. INS</u>, 418 F.3d 210, 216-19 (2d Cir. 2005).

to the smooth functioning of the international legal system and to the interests of participants in

the international marketplace for financial services.

A.      The Doctrine Of International Comity

The doctrine of international comity "refers to the spirit of cooperation in which a

domestic tribunal approaches the resolution of cases touching the laws and interests of other

sovereign states." Byblos Bank Europe, S.A. v. Sekerbank Turk Anonym Syrketi, 10 N.Y.3d

243, 247 (2008).  As the Supreme Court has stated:

> "Comity," in the legal sense, is neither a matter of absolute
> obligation, on the one hand, nor of mere courtesy and good will,
> upon the other.  But it is the recognition which one nation allows
> within its territory to the legislative, executive or judicial acts of
> another nation, having due regard both to international duty and
> convenience, and to the rights of its own citizens or of other
> persons who are under the protection of its laws.

Hilton v. Guyot, 159 U.S. 113, 163-64 (1895).

B.      Comity In The Federal Courts

The federal courts have often relied on principles of comity to refrain from exercising the

full extent of their subpoena power.  In a leading case declining to enforce a subpoena, Ings v.

Ferguson, 282 F.2d 149 (2d Cir. 1960), a trustee in bankruptcy sought documents located in

Canada, in the possession of two non-parties, both of whom were Canadian banks.  The trustee

could have obtained the documents in Canada pursuant to Canadian law.  Instead, he served

subpoenas duces tecum on the Canadian banks' New York agencies.

The district court enforced the subpoenas, but the Second Circuit reversed:

> Subpoena power is not absolute.  Even if exercised within proper
> territorial limits, the subpoena may be scrutinized by the courts.
> Every reason exists for careful scrutiny here.  No claim is being
> made against either bank by any litigant.  At most the bank is being
> called as a witness.  The transactions did not originate in the New
> York Agencies.  And the records sought are in the custody of
> branches in Canada.  Under these circumstances it seems highly

> undesirable that the courts of the United States should countenance service of a subpoena upon a New York agency of a foreign bank which is not a party to the litigation and whose country has provided procedures for securing information, the production of which is consistent with its laws.

282 F.2d at 152.

Ings is merely one in a long line of federal cases exercising similar restraint and discretion in enforcement proceedings within private civil litigation.[7]

C.   Comity Under New York Law

In this case, the Court is applying New York law, made applicable by Rule 69(a).  Under New York law, when a party seeks discovery of information located in a foreign country, "'application of the Hague Convention, which encompasses principles of international comity, is

---

[7] Elder-Beerman Stores Corp. v. Federated Dep't Stores, Inc., 45 F.R.D. 515, 518 (S.D.N.Y. 1968) (Mansfield, J.) (refusing to enforce subpoena even if minimal test for doing business was met); Cates v. LTV Aerospace Corp., 480 F.2d 620, 624 (5th Cir. 1973) (a court cannot order production of records in the custody and control of a non-party located in a different judicial district); Laker Airways Ltd. v. Pan Am. World Airways, 607 F. Supp. 324, 326-27 (S.D.N.Y. 1985) (refusing to enforce subpoena served in New York where documents were located in London and Hague Convention provided procedure for obtaining evidence in foreign country); Minpeco, S.A. v. Conticommodity Servs., Inc., 116 F.R.D. 517, 522-30 (S.D.N.Y. 1987) (denying motion to compel production of documents located in Switzerland, based on international comity); Nissan Fire & Marine Ins. Co. v. Fortress Re, Inc., 2002 WL 1870084, at *6 (S.D.N.Y. Aug. 14, 2002) (quashing subpoena, based on "prudential, international comity-based considerations," without prejudice to an application for a letter rogatory to take deposition in Japan); Linde v. Arab Bank PLC, 262 F.R.D. 136, 149-52 (E.D.N.Y. 2009) (denying motion to compel production of documents located in branch in Israel, based on considerations of international comity); Tiffany (NJ) LLC v. Andrew, 276 F.R.D. 143, 151-61 (S.D.N.Y. 2011) (denying motion to compel production of documents in China; plaintiff directed to use Hague Convention); Tiffany (NJ) LLC v. Forbse, 2012 WL 1918866, at *4-11 (S.D.N.Y. May 29, 2012) (same);  CE Int'l Res. Holdings, LLC v. S.A. Minerals LP, 2013 U.S. Dist. LEXIS 85650, at *21-45 (S.D.N.Y. June 12, 2013) (denying motion to compel production of documents held in Singapore branch and directing use of Hague Convention).

First Am. Corp. v. Price Waterhouse LLP, 154 F.3d 16 (2d Cir. 1998), is distinguishable.  In that case, discovery was ordered where there was "no collision" between U.S. law and foreign law, and the foreign court had already concluded that the foreign confidentiality laws "posed no obstacle to discovery here[.]"  Id. at 23.  Here, by contrast, there would be such a collision and no Spanish court has ruled on these issues in this case.

The cited cases involve subpoena enforcement in private civil litigation.  The test, and the result, may well be different in litigation to enforce grand jury subpoenas and similar process issued by government regulators. See, e.g., In re Marc Rich & Co., A.G., 707 F.2d 663, 667-68 (2d Cir. 1983), cert. denied, 463 U.S. 1215 (1983); United States v. Davis, 767 F.2d 1025, 1035 (2d Cir. 1985).

virtually compulsory.'" In re Estate of Augusta, 171 A.D.2d 595, 595 (1st Dep't 1991) (quoting Orlich v. Helm Bros., Inc., 160 A.D.2d 135, 143 (1st Dep't 1990)).[8]

In Augusta, 171 A.D.2d 595, the petitioner in a proceeding in Surrogate's Court sought to take the deposition in New York of a non-party who was a citizen of Italy and a resident of Monaco, a signatory to the Hague Convention.  The First Department reversed an order compelling a New York deposition and required the petitioner to use the Hague Convention. The Court held, "When discovery is sought from a non-party in a foreign jurisdiction, application of the Hague Convention . . . is virtually compulsory." Id.

One New York court recently relied upon these concepts to deny a motion to compel in circumstances virtually identical to those arising here.  In Ayyash v. Koleilat, 38 Misc. 3d 916 (Sup. Ct. New York Cnty. 2012), a judgment creditor served subpoenas duces tecum on the New York branches of foreign banks, seeking, pursuant to CPLR Rule 5224(a)(4)(a-1), information concerning accounts of the judgment debtor held in foreign countries.  The court held that "a nearly mandatory rule of comity has developed where, as here, a plaintiff seeks information from a non-party located in a foreign country.  Principles of comity require that plaintiff seek that information through that country's discovery processes or through the Hague Convention." 38 Misc. 3d at 926.  Relying on foreign bank secrecy laws (including Spanish laws), the court refused to "encroach upon another nation's sovereignty by requiring citizens to take actions within their home country that would contravene their home country's laws." Id. at 927.  The court concluded that the plaintiff should use the Hague Convention or commence proceedings in the jurisdiction where the plaintiff could actually seek turnover of assets.

---

[8]  Courts applying New York law require a party to use the Hague Convention to obtain discovery from a foreign party. See, e.g., Umana v. SCM S.p.A., 291 A.D.2d 446, 446-47 (2d Dep't 2002).  It follows a fortiori that courts applying New York law require a party to use the Hague Convention to obtain discovery from a foreign, non-party witness. See, e.g., Orlich, 160 A.D.2d at 143-45; Augusta, 171 A.D.2d at 595-96.

Similarly, in this case, Vera seeks disclosure in New York from a non-party, BBVA, located in a foreign country, Spain.  In these circumstances, as in <u>Ayyash</u>, resort to the Hague Convention "is virtually" -- and here, should be held -- "compulsory."  <u>Augusta</u>, 171 A.D.2d at 595.

D.   <u>The Comity Factors</u>

The comity analysis requires the Court to consider several factors:  (1) the importance to the litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the hardship of compliance on the party or witness from whom discovery is sought; (5) the availability of alternative means of securing the information; (6) the good faith of the party resisting discovery; and (7) the balance of national interests.[9]

E.   <u>Application Of The Factors Here</u>

1.   <u>The Importance Of The Documents To The Litigation</u>

This factor favors BBVA.  Vera does not seek materials that are important to <u>this litigation</u>.  Vera, rather, seeks materials that will enable him to start <u>other litigation</u> -- in foreign countries, where he can seek turnover of the accounts disclosed here.  See <u>Peterson v. Islamic Rep. of Iran</u>, 2013 U.S. Dist. LEXIS 146050, at *50-51 (S.D.N.Y. Oct. 8, 2013) (limiting discovery to judgment debtor's assets in U.S. because "any judgment plaintiffs might obtain could be executed only against those located in the United States"); <u>Ayyash</u>, 38 Misc. 3d at 926 (denying motion to compel where subpoenas "are but a first step . . . with the ultimate goal of subsequent attachment and turnover [in foreign countries].  For the court to start down this path,

---

[9]   Factors (1)-(3), (5) and (7) on this list derive from Section 442 of the Restatement (Third) of Foreign Relations Law, a draft of which was cited with approval in <u>Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for the S. Dist. of Iowa</u>, 482 U.S. 522, 544 n.28 (1987).  Factors (4) and (6) derive from case law in this Circuit.  <u>See, e.g., Minpeco</u>, 116 F.R.D. at 522 (cited with approval in <u>First Am. Corp.</u>, 154 F.3d at 21-22).

knowing that the ultimate goal is unavailable in this jurisdiction, would be an unproductive waste of judicial resources.").

        2.     <u>The Degree Of Specificity Of The Request</u>

This factor plainly favors BBVA.  Vera's Subpoena makes the broadest possible, undifferentiated request for "worldwide" discovery.

        3.     <u>Whether The Information Originated In The United States</u>

Once again, this factor plainly favors BBVA.  Vera seeks information that originated outside the United States.

        4.     <u>The Hardship Of Compliance</u>

Here, compliance would inflict hardship on BBVA because compliance would put BBVA in violation of its home-country, Spanish law.  As shown in the accompanying Declaration of Juan Manuel De Remedios, the law of Spain prohibits disclosure of information of the kind sought here.  The law imposes significant penalties, and civil liability in an action by BBVA's customer. De Remedios Decl. ¶¶ 3-7.

Hardship weighs more heavily in the balance where, as here, the person who would be compelled to produce information in violation of foreign law "is merely a neutral source of information," and not a party or the target of an investigation.  <u>CE Int'l Res. Holdings, LLC v. S.A. Minerals LP</u>, 2013 U.S. Dist. LEXIS 85650, at *41 (S.D.N.Y. June 12, 2013) (citing <u>Minpeco, S.A. v. Conticommodity Servs., Inc.</u>, 116 F.R.D. 517, 526 (S.D.N.Y. 1987)); <u>see also</u> <u>Linde v. Arab Bank PLC</u>, 262 F.R.D. 136, 151 (E.D.N.Y. 2009) ("[A]n order compelling production should be imposed on a nonparty . . . only in extreme circumstances.").

5.      The Availability Of Alternative Means Of Securing Information

Vera has alternative means of securing the information.  Vera can (a) make a Hague

Convention request, (b) obtain a letter rogatory from this Court, which Vera can then enforce in

Spain or (c) commence an action in Spain seeking recognition and enforcement of this Court's

judgment, which would lead to disclosure of information concerning the judgment debtors'

assets.  De Remedios Decl. ¶¶ 8-11.  Cf. Arellano v. Starwood Hotels & Resorts Worldwide,

Inc., 448 F. Supp. 2d 520, 529 (S.D.N.Y. 2006) (denying motion to dismiss for forum non

conveniens where Hague Convention can be used to obtain evidence in Spain); Saraceno v. S.C.

Johnson & Son, Inc., 492 F. Supp. 979, 988 (S.D.N.Y. 1980) (same where letter rogatory can be

used to obtain evidence in Spain).

6.      The Good Faith Of The Resisting Person

There can be no serious suggestion that BBVA is not proceeding in good faith, in an

effort to avoid a violation of Spanish laws.  See, e.g.,CE Int'l, 2013 U.S. Dist. LEXIS 85650, at

*44; Minpeco, 116 F.R.D. at 522-23 (suggesting no bad faith where person did not "deliberately

court[ ] legal impediments to production").

7.      The Balance Of National Interests

Spain has a strong national interest where, as here, information is sought from one of its

corporate citizens and the information is located in Spain.  Spain is a civil-law country in which

"fact gathering is a judicially controlled process."  Orlich, 160 A.D.2d at 144.  The "nonjudicial

taking of evidence" from a non-party witness located in such a country "is regarded as an affront

to . . . sovereignty."  Id.  Spain, furthermore, has a strong national interest in enforcing its bank

secrecy laws, which promote legitimate privacy interests.  See, e.g., CE Int'l, 2013 U.S. Dist.

LEXIS 85650, at *38-39; Minpeco, 116 F.R.D. at 524.

The United States, of course, has a national interest in allowing parties to obtain information from witnesses during judgment-enforcement proceedings.  That interest, however, "is not as great" in private, civil litigation involving a witness, not a party, "as it would be if the request were initiated by the U.S. government for purposes of an enforcement proceeding." Tiffany, 2012 WL 1918866, at *8 (citing cases); Tiffany, 276 F.R.D. at 157 (banks' "status as non-parties does attenuate the United States' interest in enforcing discovery obligations").

Here, moreover, resort to the Hague Convention does not undermine the U.S. interest. Taking into account the requisite "spirit of cooperation in which [this] tribunal" should approach the resolution of this case, Byblos Bank, 10 N.Y.3d at 247, the Hague Convention provides an available "alternate means of securing the information[.]" Orlich, 160 A.D.2d at 144.

F.     Conclusion

Restraint and discretion are essential in international litigation.  In this case, considerations of comity call for denial of enforcement.  The exercise of jurisdiction on facts like those presented here will ultimately undermine U.S. interests.  "We cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 8-9 (1972).

CONCLUSION

For the foregoing reasons, the motion to compel should be denied, and the cross-motion

to quash and for a protective order should be granted.

Dated: New York, New York
        December 6, 2013

WHITE & CASE LLP

By: _____

Kenneth A. Caruso

Of Counsel:
        Kenneth A. Caruso
        Patrick M. Wilson

1155 Avenue of the Americas
New York, New York  10036
Tel:    (212) 819-8200

Attorneys for BBVA