# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALDO VERA, JR., as Personal Representative of the Estate of Aldo Vera, Sr., <br><br> Plaintiff, <br><br> v. <br><br> THE REPUBLIC OF CUBA, <br><br> Defendant. | Case No. 12-CV-01596 (AKH) |
| ALDO VERA, JR., as Personal Representative of the Estate of Aldo Vera, Sr.; and <br><br> JEANNETTE FULLER HAUSLER, and WILLIAM FULLER as court-appointed co-representatives of the ESTATE OF ROBERT OTIS FULLER, deceased, on behalf of all beneficiaries of the Estate and the ESTATE OF ROBERT OTIS FULLER; and <br><br> ALFREDO VILLOLDO, individually, and GUSTAVO E. VILLOLDO, individually and as Administrator, Executor, and Personal Representative of the ESTATE OF GUSTAVO VILLOLDO ARGILAGOS, <br><br> Petitioners, <br><br> v. <br><br> BANCO BILBAO VIZCAYA ARGENTINA (S.A.), et al., <br><br> Respondents/Garnishees. | **MEMORANDUM OF LAW OF PETITIONER ALDO VERA, JR. IN OPPOSITION TO THE MOTION TO DISMISS OF RESPONDENT BANCO BILBAO VIZCAYA ARGENTINA (S.A.)** |

## TABLE OF CONTENTS

I.    THE FACTS ......................................................................................................... 2

    A.    Facts Regarding the Vera Judgments.................................................... 2

    B.    Vera Sr. Was Assassinated on Orders of the Cuban Government .......... 3

II.   ARGUMENT ...................................................................................................... 5

    A.    This Court Possesses Subject Matter Jurisdiction Pursuant to TRIA .... 5

    B.    BBVA Has No Standing to Collaterally Attack the Judgments ............. 6

    C.    In the Alternative, the Florida Court Properly Held that It
        Possessed Subject Matter Jurisdiction .................................................. 8

        1.    The Vera Case Was Properly Brought by Aldo Vera, Jr.
            as a "Claimant" of the "Victim," Aldo Vera, Sr. ....................... 8

        2.    Cuba Was Designated a State Sponsor of Terrorism as a
            Result of Hundreds of Terrorist Acts in Puerto Rico, Including
            the Vera Assassination ............................................................. 11

        3.    The Florida Court Was Presented with Convincing Evidence
            that Vera Sr. was  Assassinated on Orders from Cuba ............. 15

III.  CONCLUSION................................................................................................... 17

## **TABLE OF AUTHORITIES**

**Page(s)**

### FEDERAL CASES

*Beiswenger Enterprises Corp. v. Carletta,*
    86 F.3d 1032 (11th Cir. 1996)...............................................................................................10

*Blais v. Islamic Republic of Iran,*
    459 F. Supp. 2d 40 (D.D.C. 2006) .........................................................................................9

*Corley v. United States,*
    556 U.S. 303 (2009).............................................................................................................11

*Dunlop v. Pan American World Airways, Inc.,*
    672 F.2d 1044 (2d Cir. 1982)..............................................................................................16

*Figueroa v. Merscorp., Inc.,*
    766 F. Supp. 2d 1305 (S.D. Fla. 2011) .................................................................................7

*In re September 11 Litigation,*
    760 F. Supp. 2d 433 (S.D.N.Y. 2011)..................................................................................10

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites des Guinee,*
    456 U.S. 694 ........................................................................................................................7

*Johnson v. Muelberger,*
    340 U.S. 581 (1959).............................................................................................................7

*Massie v. Government of Democratic People's Republic of Korea,*
    592 F. Supp. 2d 57 (D.D.C. 2008) ......................................................................................14

*Ridley v. NCL (Bahamas) Ltd.,*
    824 F. Supp. 2d 1355 (S.D. Fla.,2010) ...............................................................................10

*Stoll v. Gottlieb,*
    305 US 165 (1938)................................................................................................................7

*Stone v. Williams,*
    970 F.2d 1043 (2d Cir. 1992)................................................................................................8

*TRW Inc. v. Andrews,*
    534 U.S. 19 (2001)..............................................................................................................11

*Valore v. Islamic Republic of Iran,*
    700 F. Supp. 2d 52 (D.D.C. 2010) ......................................................................................14

*Weininger v. Castro,*
    462 F. Supp. 2d 457 (S.D.N.Y. 2006)........................................................................2, 5, 7, 8

*Weinstein v. Islamic Republic of Iran,*
   609 F.3d 43 (2d Cir. 2010)..................................................................................5

## STATE CASES

*AGB Oil Co. v. Crystal Exploration & Prod. Co.,*
   406 S0.2d 1165 (DCA, 3d Dist. 1981)...................................................................6

*Archbold Health Services, Inc v. Future Tech Bus. Systems, Inc.,*
   659 So.2d 1204 (DCA, 3d Dist.. 1995).................................................................7

*Cadle Company v. Jay,*
   907 So.2d 634 (DCA, 3d Dist.. 2005)....................................................................6

*George v. Mt. Sinai Hospital,*
   47 N.Y.2d 170, 417 N.Y.S.2d 231, 390 N.E.2d 1156 (1979)................................10

*Jonke v. Foot Locker, Inc.,*
   2010 N.Y. Misc. LEXIS 3045 (N.Y. Cty.) .............................................................6

*Kroier v. Kroier,*
   95 Fla. 865 (Fla. 1928)......................................................................................15

*Morgenthow & Latham v. Bank of N.Y. Co., Inc.,*
   40 A.D.3d 454, 836 N.Y.S.2d 579 (1st Dep't 2007) ...............................................6

*SR Acquisitions v. San Remo Homes,*
   78 So.3d 636 ....................................................................................................6

Plaintiff Aldo Vera, Jr. submits this Memorandum of Law in opposition to the Motion to Dismiss the Omnibus Petition filed by Banco Bilbao Vizcaya Argentina (S.A.) ("BBVA"). BBVA, a garnishee bank stakeholder with no interest in the Cuban government funds it holds as an intermediary bank, has moved pursuant to Federal Rule 69(a) and NY CPLR Rule 404(a) to dismiss the Omnibus Turnover Petition. Rule 69(a) provides in pertinent part that "the procedure on execution ... must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Rule 404(a) provides in pertinent part that a "respondent may raise an objection in point of law by setting it forth in his answer or by a motion to dismiss the petition."

BBVA contends that this Court lacks subject matter jurisdiction over the Omnibus Turnover Petition brought pursuant to NY CPLR 5225(b). BBVA collaterally attacks the Florida and New York judgments in favor of Vera and against the Republic of Cuba contending that they are each void for lack of subject matter jurisdiction. BBVA advances three fact-based arguments as to why the Florida judgment is void: (1) Aldo Vera, Jr. lacked standing to sue as a "claimant," (2) Cuba was not designated as a state sponsor of terrorism in 1982 as a result of the Vera assassination in Puerto Rico in 1976, and (3) Vera was not killed to silence his opposition to the Cuban government. The linchpin for BBVA's contention is that FSIA § 1605A governs Vera's judgment despite the fact that Vera obtained his judgment pursuant to the now repealed §1605(a)(7).[1]

---

[1]      "Vera necessarily relies on 28 U.S.C. § 1605A(a)" BBVA Br. at 3.

## I.    THE FACTS

### A.    Facts Regarding the Vera Judgments

The Florida action was commenced on December 28, 2001 under 28 U.S.C. § 1605(a)(7) seeking damages for the 1976 assassination of Aldo Vera, Sr. in Puerto Rico. *See* ECF #1-1. Vera, Sr. was a former police chief in Havana and a Cuban-defector active in anti-Cuban activities. *See* ECF #1-1 at pp. 4-5. At the time of his death Vera, Sr. was a United States national residing in Florida. *Id.* He was assassinated by an agent of the Cuban government as he left a meeting in Puerto Rico of the "Fourth Republic," a group of anti-communist Cuban expatriates of which he was a founding member. *Id.* Cuba was, and is, designated by the United States as a state sponsor of terrorism. *Id.* at 3; *see also Weininger v. Castro*, 462 F. Supp. 2d 457, 479 (S.D.N.Y. 2006) (J. Marrero).

The Republic of Cuba was served with the summons and complaint by the Clerk of the Florida court on November 25, 2002. *See* ECF #1-1 at 2. Cuba never entered an appearance or opposed the lawsuit. *Id.* On May 7, 2008 the Florida court conducted a trial and took evidence in the case as required by § 1608(e) of the FSIA. *Id.* The Florida court specifically found that it possessed subject matter jurisdiction pursuant to § 1605(a)(7). *Id.* By Final Judgment entered May 15, 2008, the Florida Court found for plaintiff and against defendant for economic, compensatory and punitive damages totaling $95,579,591.22. *Id.* at 10.

On March 5, 2012 plaintiff commenced this action seeking recognition of his judgment entered against this defendant in the Eleventh Judicial Circuit of Miami-Dade County, Florida pursuant to the Full Faith and Credit Clause of the United States Constitution. ECF #1. The Complaint was served by the Clerk of this Court pursuant to Section 1608(a)(3) and received by Cuba on April 24, 2012. ECF #2. On Motion by Vera, the Clerk entered a Rule 55 default

114817
nydocs1-1023840.1

2

against Cuba on June 27, 2013 which was served on Cuba on July 6, 2012.  ECF #'s 7 and 11.

On August 17, 2012 this Court entered a default judgment in the amount of $49,346,713.22[2]

against Cuba which the Clerk of Court then served on Cuba pursuant to 1608(a)(3).  ECF #'s 12

and 13.  Pertinent to the instant Motion, this Court specifically found that it possessed "subject

matter jurisdiction pursuant to § 1331 and 1602 *et seq*." and that "Plaintiff's Florida Judgment of

May 15, 2008 is entitled to full faith and credit in this Court pursuant to 28 U.S.C. § 1738." *Id.*

By Orders dated October 11, 2012 and January 22, 2013, this Court permitted Vera to

execute on Cuban assets pursuant to 28 U.S.C.    ECF #'s 19 and 30.   Initiating execution

proceedings, Plaintiff served BBVA with an Information Subpoena on November 26, 2012.

BBVA was served with the Omnibus Turnover Petition on September 10, 2013.  BBVA filed its

Motion to Dismiss on November 15, 2013.  ECF # 349.

### B.      Vera Sr. Was Assassinated on Orders of the Cuban Government

At the trial in May 2008, the Florida Court heard evidence as to who was responsible for

the death of Aldo Vera, Sr.  The Florida Court made numerous findings of facts based upon the

record, documentary evidence, and the testimony of lay and expert witnesses.  After reviewing

all the evidence, the Florida Court determined that the Republic of Cuba was responsible for the

extra-judicial killing of Aldo Vera, Sr.  ECF # 1-1 at 5, 8-9.  In doing so, the Florida Court found

that the Republic of Cuba engaged in, and continues to engage in, torture, international terrorism,

and extra-judicial killings.  *Id.* at 9.

The Florida Court reviewed the testimony of the noted journalist, syndicated columnist,

and author of twenty-five (25) books, Carlos Alberto Montaner.  *See* Vera Affidavit at Ex. H at

5-6.  Mr. Montaner, testified that he has investigated and wrote about the death of Aldo Vera, Sr.

---

[2]      The reduction in amount from the Florida judgment was due to the elimination of
punitive damages and the application of a federal rate of interest.

*Id.* at 7. In the course of his investigation, Mr. Montaner interviewed several high ranking officials who had defected from the Cuban government, including a General in the Cuban Air Force and an intelligence official in the Cuban Department of the Interior. These individuals told him that the Republic of Cuba, through its intelligence agencies, ordered the death of Aldo Vera, Sr. *Id.* at 7-8. Through his investigation, Mr. Montaner conclusively established that the 1976 killing of Aldo Vera, Sr. in Puerto Rico was orchestrated by Cuban intelligence. *Id.* at 7-11. Mr. Montaner further testified that such an assassination order would be authorized by Fidel Castro. *Id.* at 10-11.

Mr. Montaner wrote about his findings in the El Nuevo Herald, (the Spanish language version of the *Miami Herald*) in a lengthy newspaper article entitled "Castro Linked to Death in the Exile" which was published on May 31, 1988. *Id.* at 11-12 and Ex. H. Shortly after his newspaper article was published, Mr. Montaner received a book with a bomb in it sent from the Cuban government. *Id.* at 16.

The Florida Court also reviewed the affidavit submitted by Enrique A. Matomoros. Vera Affidavit, Ex. J. Mr. Matamoros stated that in 1962, while he was still living in Cuba, he read an official government publication shortly after the Bay of Pigs Invasion. In the Cuban government publication that he read, Mr. Matamoros stated that the Cuban government had issued Causa No. 238, charging Aldo Vera, Sr., and others, with crimes against the government and ordering their deaths *in absentia*. *Id.* at 2.

The Florida Court also received the affidavit of Jose Vera wherein Mr. Vera stated that he was informed that a ranking Cuban army officer, Carlos Carajaville, heard Raul Castro, who was head of the Cuban Armed Forces at the time of Aldo Vera, Sr.'s death, state the Aldo Vera, Sr.

death was ordered because of Vera, Sr.'s anti-revolutionary activities against the Cuban government. *See* Vera Affidavit, Ex. I at 2-3.

## II.    ARGUMENT

### A.    This Court Possesses Subject Matter Jurisdiction Pursuant to TRIA

This Court possessed subject matter jurisdiction to recognize and enforce Vera's Florida civil judgment pursuant to 28 U.S.C. §§ 1330, 1331, 1738 and 1610(f)(1) since the Florida judgment was entered pursuant to FSIA § 1605(a)(7).   Subject matter jurisdiction over the Omnibus Turnover Petition also exists pursuant to § 1610(f)(1).   Section 201 of the Terrorism Risk Insurance Act ("TRIA"), codified at 1610 note, provides this Court with subject matter jurisdiction over proceedings in aid of execution on a judgment obtained pursuant to FSIA § 1605(a)(7). Section 1610(f)(1)(A) begins with the words "[n]otwithstanding any other provision of law."   Both the Complaint to recognize and enforce the Florida judgment and the Omnibus Turnover Petition are in aid of execution on the Florida judgment.

The Court of Appeals held in *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 52 (2d Cir. 2010) that, pursuant to TRIA, federal courts have subject matter jurisdiction over execution and attachment on assets in satisfaction of judgments against state sponsors of terrorism.

> Accordingly, we find it clear beyond cavil that Section 201(a) of the TRIA provides courts with subject matter jurisdiction over post-judgment execution and attachment proceedings against property held in the hands of an instrumentality of the judgment-debtor, even if the instrumentality is not itself named in the judgment.

*See also Weininger v. Castro*, 462 F.Supp.2d 457, 490 (S.D.N.Y.2006) (TRIA "provides independent basis of subject matter jurisdiction in this enforcement proceeding against" state sponsors of terrorism).   Contrary to BBVA's contention (Br. at 7), subject matter jurisdiction for execution extends to all of that nation's assets blocked pursuant to the Cuban Assets Control Regulations ("CACR"), 31 C.F.R. Part 515.

### B.    BBVA Has No Standing to Collaterally Attack the Judgments

BBVA's Motion to Dismiss, pursuant to Federal Rule 69(a) and CPLR 404(a), invokes New York law.  New York law holds that a garnishee bank lacks standing to challenge a default judgment entered against a judgment debtor.  In *Morgenthow & Latham v. Bank of N.Y. Co., Inc.*, 40 A.D.3d 454, 836 N.Y.S.2d 579 (1st Dep't 2007), the New York Appellate Division ruled that a disinterested garnishee bank has no standing to challenge a default judgment against the judgment debtor.  The court stated:

> Nonparty appellant has no standing to challenge the default judgment against Inkombank.  To obtain relief from a judgment or order, the moving party must show some legitimate interest, and the assurance that no injustice will result from the judicial assistance.  A garnishee bank is a disinterested stakeholder, liable only to the extent of assets belonging to the judgment debtor that were on deposit when the plaintiffs sought to enforce the judgment. (citations omitted)

*Id.  See also Jonke v. Foot Locker, Inc.*, 2010 N.Y. Misc. LEXIS 3045 (N.Y. Cty.) ("a non-party has no standing to challenge a default judgment entered against another party without a showing of some legitimate interest in the underlying action").

BBVA is a garnishee bank holding funds that have been blocked pursuant to CACR.  BBVA's New York branch is the intermediary bank in the wire transfer of funds which were blocked.  It is merely a disinterested stakeholder with no claim of its own to the funds.  Accordingly, BBVA has no standing to challenge Vera's default judgments against Cuba.

The result is the same under Florida law, where the Vera judgment was first entered.  A garnishee which is not an adverse claimant has "no interest in the case" and "cannot challenge a judgment" either collaterally or within the original adjudication.  *SR Acquisitions v. San Remo Homes*, 78 So.3d 636, 638 (DCA, 3d Dist. 2011).  This is true even when the judgment was entered by default.  If proper service was made on the defendant, a default judgment cannot be collaterally attacked.  *Cadle Company v. Jay,* 907 So.2d 634, 639 (DCA, 3d Dist. 2005); *AGB*

*Oil Co. v. Crystal Exploration & Prod. Co.*, 406 S0.2d 1165, 1167 (DCA, 3d Dist. 1981) ("This principle of *res judicata* applies as well to default judgments.").[3]   As that same Florida court wrote, in barring a collateral attack on a default judgment, "[i]t is the **fair opportunity** to litigate in a foreign forum that is determinative." *Archbold Health Services, Inc v. Future Tech Bus. Systems, Inc.*, 659 So.2d 1204, 1206 (DCA, 3d Dist.1995) (emphasis added). *See also Figueroa v. Merscorp., Inc.*, 766 F. Supp. 2d 1305, 1326 (S.D. Fl. 2011) (a default judgment is binding for *res judicata* purposes if the defendant "had a full and fair opportunity to litigate given that they were aware of the litigations and made a conscious decision to not respond."). *See also* the discussion by Judge Marrero on this point in *Weininger v. Castro*, 462 F.Supp.2d 457, 472 (S.D.N.Y. 2006).[4]   Accordingly, BBVA is barred from collaterally attacking Vera's Florida judgment in this Court since Florida law would not permit a collateral attack. *See Johnson v. Muelberger*, 340 U.S. 581, 587 (1959).

Moreover, the doctrines of *res judicata* and full faith and credit bar this Court from re-examining the issue of subject matter jurisdiction.  The August 17, 2012 judgment specifically found subject matter jurisdiction, is conclusive on the merits, and is final.  ECF # 12.  In that judgment this Court granted full faith and credit to the Florida judgment wherein the Florida court, after a trial on the merits, made specific findings that it possessed subject matter jurisdiction pursuant to §1605(a)(7). *Id.* Principles of *res judicata* are fully applicable to subject matter jurisdiction. *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites des Guinee*, 456

---

[3]   The Federal view of *res judicata* within the Federal system is the same. *See Stoll v. Gottlieb*, 305 US 165, 168-69 (1938).  A determination by a Federal Bankruptcy court that it has jurisdiction over a creditor who had actual notice of the proceeding and did not appear bars a collateral attack by that creditor on the judgment of the Bankruptcy court in a later proceeding.

[4]   BBVA does not, and on the facts as found in the Florida state court proceeding cannot, contend that the Republic of Cuba was not notified of the pendency of the Florida state court action.

U.S. 694, 702 n.9; *Stone v. Williams*, 970 F.2d 1043,1058 (2d Cir. 1992).  Where, as here, the

judgment debtor – Cuba – has not contested or collaterally attacked either this Court's subject

matter jurisdiction or that of the Florida court, it would be "acutely inequitable" to allow a

disinterested garnishee stakeholder to do so. *See Weininger v. Castro*, 462 F. Supp. 2d at 474.

## C.   In the Alternative, the Florida Court Properly Held that It Possessed Subject Matter Jurisdiction

Should this Court conclude that BBVA has standing to collaterally attack the Florida

court's judgment, this Court should affirm that court's findings and conclusions regarding

subject matter jurisdiction under § 1605(a)(7).

### 1.   The Vera Case Was Properly Brought by Aldo Vera, Jr. as a "Claimant" of the "Victim," Aldo Vera, Sr.

Section 1605(a)(7) of the FSIA authorized either (a) a "victim" or (b) the "claimant" of

the victim of terrorism to bring a civil cause of action against a designated state sponsor of

terrorism.  Section 1605(a)(7) provided that the court should decline to hear the case if:

> (ii) neither the claimant nor the victim was a national of the United States (as that
> term is defined in section 101(a)(22) of the Immigration and Nationality Act)
> when the act upon which the claim is based.

Cuba was designated by the United States as a state sponsor of terrorism pursuant to section 6(j)

of the Export Administration Act, 50 U.S.C. App. 2405(j).    The phrase "national of the United

States" adopted the definition at section 101(a)(22) of the Immigration and Nationality Act, 8

U.S.C. 1101(a)(22). That section provides:

> The term "national of the United States" means (A) a citizen of the United States,
> or (B) a person who, though not a citizen of the United States, owes permanent
> allegiance to the United States.

Although Aldo Vera, Sr.[5] was not a U.S. citizen at the time of his death, his son Aldo Vera, Jr. was a U.S. citizen and therefore a "national" within the meaning of §1605(a)(7). Vera Affidavit ¶11 and Ex. E. The "claimant" in the Florida lawsuit, and this lawsuit, is Aldo Vera, Jr. He is suing as personal representative of his father's estate. This satisfies § 1605(a)(7) since Vera Jr. is, and was at the time of his father's death, a United States citizen, and therefore a "national." *Id.*

The term "claimant" is not defined in § 1605. Where the "victim" is deceased, the cause of action is for wrongful death. The question of who may bring a wrongful death action on behalf of an intestate decedent is determined under state law, not federal law. There is no federal body of estate law. Each state enacts its own estate and probate laws. A federal court is required to apply state law on this issue under the Rules of Decision Act, 28 U.S.C. § 1652 ("The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply."). *See e.g. Blais v. Islamic Republic of Iran*, 459 F.Supp.2d 40, 55-56 (D.D.C. 2006) (applying Virgina law to 1605(a)(7) claim).

Florida law requires that a wrongful death action be brought by the personal representative of the decedent. The Florida statute on wrongful deaths, F.S.A. § 768.20, states:

---

[5]     Although Aldo Vera Sr. was not a citizen of the United States, he owed permanent allegiance to it. He was born in Cuba but defected as a political refugee to the United States in 1960. Vera Sr. became a lawful permanent United States resident on June 20, 1965. Vera Affidavit at ¶8. He also held a social security card. *Id.* at ¶9. In 1974 Vera Sr. filed with the Immigration and Nationalization Service to become a naturalized citizen. *Id.* at ¶10. In so applying, he signed an oath of allegiance to the United States. *Id.* At the time of his death on October 25, 1976, Vera Sr.'s application to be a United States citizen was pending. *Id.* His wife and two children were all United States citizens at the time of his death. *Id.*

> **Parties.** The action shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages, as specified in this act, caused by the injury resulting in death.

See also *Ridley v. NCL (Bahamas) Ltd.*, 824 F.Supp.2d 1355, 1362-63 (S.D. Fla., 2010) ("It is clear that general maritime law and Florida law limit recovery for wrongful death to the personal representative."); *Beiswenger Enterprises Corp. v. Carletta*, 86 F.3d 1032 (11th Cir. 1996) ("There is only a single claim arising from Myers' death, and it belongs to the personal representative of his estate.")

New York law also requires that a wrongful death action be brought by the personal representative of the decedent. New York's Estates, Powers and Trusts Law, § 5-4.1(1), "Action by personal representative for wrongful act, neglect or default causing death of decedent" provides

> The personal representative, duly appointed in this state or any other jurisdiction, of a decedent who is survived by distributees may maintain an action to recover damages for a wrongful act, neglect or default which caused the decedent's death against a person who would have been liable to the decedent by reason of such wrongful conduct if death had not ensued.

*See also In re September 11 Litigation*, 760 F.Supp.2d 433, 443 (S.D.N.Y. 2011) (J. Hellerstein) ("To assert a claim under section 5–4.1(1), a plaintiff must be the duly appointed "personal representative" of the decedent."); *George v. Mt. Sinai Hospital*, 47 N.Y.2d 170, 417 N.Y.S.2d 231, 390 N.E.2d 1156 (1979). Aldo Vera Jr. was appointed by the Florida court as the personal representative of his father's estate.

The statute, § 1605(a)(7) permits either a "victim" or the "claimant" of a victim to sue. The language is in the disjunctive. A deceased "victim" cannot sue. Terrorism by a state sponsor of terrorism often results in the death of the victim. Only if "neither the claimant nor the victim was a national of the United States" is jurisdiction foreclosed. The statute is satisfied if

either the claimant or victim is a United States "national." The term "claimant" is superfluous and no one could ever sue for the death of a victim under § 1605(a)(7). Such an interpretation is so contrary to the purpose of the statute that it is absurd. *See Corley v. United States,* 556 U.S. 303 (2009) ("one of the most basic interpretive canons" is that "a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant ....' " (internal quotation marks omitted)); *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (internal quotation marks omitted)).

BBVA's sole contention is that § 1605A(c) limits the right to sue to the legal representative of a United States national. Even assuming the correctness of that proposition, the point is meaningless. The Vera judgment was obtained under the now repealed § 1605(a)(7) which had no such limitation.

## 2. Cuba Was Designated a State Sponsor of Terrorism as a Result of Hundreds of Terrorist Acts in Puerto Rico, Including the Vera Assassination

Section 1605(a)(7), enacted in 1996, requires that the foreign state be designated as a state sponsor of terrorism at the time of the offense alleged or was "so designated as a result of such act." Cuba, the first foreign country to ever be designated a "state sponsor of terrorism," had a massive record of engaging in and sponsoring terrorism. Vera acknowledges that Vera Sr.'s assassination – like most terrorist acts attributed to Cuba -- was not mentioned during the congressional hearing in 1982. However, during those hearings a specialist on Latin American affairs, Daniel James, testified that there were 260 individual acts of violence perpetrated by Cuba in Puerto Rico between 1976 and 1982. Swift Affidavit, Ex. B. He further testified that

"1976 was a banner year for the proliferation of terrorist groups in Puerto Rico." *See* Suchlicki Affidavit, Ex. 4.

Cuba's instigation and support of terrorism throughout the Caribbean and Latin America was a significant factor for Cuba's designation by the United States as a state sponsor of terrorism in 1982. Suchlicki Affidavit. The historical evidence overwhelmingly demonstrates that the Government of Cuba was condemned by the Kennedy administration, based at least in part upon the extrajudicial killing and torture of U.S. citizens and foreign nationals; that in all subsequent periods, through the present, the United States Government continued to condemn the Government of Cuba for these killings and torture; and that, during this entire period, the condemnation of the government of Cuba (which included designation as a state sponsor of terrorism in 1982 and beyond) has been based, at least in part, on extrajudicial killings and tortures.

Cuba exported terrorism and armed revolution to other countries where it supported urban and rural groups by providing training, weapons, propaganda and intelligence. Suchlicki Affidavit. For example, Cuba assisted the Sandinistas in Nicaragua and later utilized similar strategies to support groups in El Salvador, Guatemala, Colombia and Puerto Rico. In Puerto Rico, Cuba supported a violent terrorist group called "The Macheteros," which committed numerous acts of violence in Puerto Rico and the U.S. and eventually found refuge in Cuba. Similarly, Black Panther party members from the U.S. were trained in Canada by Cuban personnel. Black Panther leaders and other U.S. blacks also received weapons and explosive training in Havana.

Cuba and its sponsorship of terrorism, is well documented in Congress. In 1975 a Senate Subcommittee heard testimony as to Cuba's support of terrorism in Puerto Rico. Its Report of

July 30, 1975 was titled "Terrorist Activity: The Cuban Connection in Puerto Rico." In February and March 1982 the Judiciary Committee's Subcommittee on Security and Terrorism held hearings on "The Role of Cuba in International Terrorism and Subversion," and explored Cuba's role in terrorist activities in Puerto Rico and Latin American. Swift Affidavit, Ex. B.

Of particular note was the testimony of Daniel James, a journalist and specialist in Latin American Affairs, who testified before Congress on March 12, 1982. *Id.* Mr. James testified extensively regarding Cuba's involvement in training, arming, directing and supporting violent terrorist subversive groups such as the Macheteros and the FALN in Puerto Rico, and stated in his congressional testimony that 1976, the year Vera, Sr. was assassinated, was a "banner year for the proliferation of terrorist groups in Puerto Rico." Suchlicki Affidavit, Ex. 4.

Mr. James testified that Cuba had united some eight of nine terrorist groups in Puerto Rico, following the same pattern as it had been pursuing in Nicaragua, Guatemala, El Salvador, and other Latin American countries. *Id.* Mr. James further testified that between 1975 through 1981, Puerto Rican terrorist groups, with the aid and direction of Cuba, committed 260 acts of violence in Puerto Rico. *Id.* These acts of violence included urban guerilla warfare, bombings, shootings, and assassinations. *Id.*

Petitioner engaged a distinguished expert in Cuban-American studies from the University of Miami to opine on whether Cuba's 1982 designation as a state sponsor of terrorism was in part a result of the 1976 assassination of Aldo Vera, Sr. Professor Jaime Suchlicki's Affidavit is docketed at ECF # 238 (6/7/13) and attached hereto as Exhibit 1. Professor Suchliki reviewed Mr. James' Congressional testimony, the Florida Court's determination and findings of fact, as well as the deposition testimony of the renowned journalist Carlos Alberto Montaner who has investigated and written articles establishing that Aldo Vera., Sr. was killed by agents of the Cuban government. In Professor Suchlicki's opinion, "one of the 260 acts of violence Mr. James

was referring to in his March 12, 1982 Congressional testimony was the death of Aldo Vera, Sr.,

who was a well-known, high profile anti-Cuban activist, shot by agents sent and ordered by the

government of Cuba to assassinate him on October 25, 1976 in San Juan, Puerto Rico." *Id.* at ¶9.

> Professor Suchlicki concluded that:

> While Mr. James' testimony does not delineate and identify separately each
> victim of the "260 acts of violence" it is highly probable, given the notoriety of
> Aldo Vera, Sr., his stature among the Cuban exile community, and the press
> coverage his assassination generated, that Mr. James was referring to Aldo Vera,
> Sr. when he testified before the Subcommittee, and that Mr. James's testimony
> most certainly informed and influenced the U.S. government's decision to
> designate Cuba as a state sponsor of terrorism.

*Id.* at ¶10.

Courts have held that a claimant or victims satisfies Section 1605(a)(7) when the

designation of "state sponsor of terrorism" is invoked for repeated and prolonged support of

international terrorism even if the abuse occurred prior to the designation.   In *Massie v.*

*Government of Democratic People's Republic of Korea*, 592 F.Supp.2d 57, 74 (D.D.C. 2008)

crew members of the U.S.S. Pueblo were permitted to sue under Section 1605(a)(7) even though

North Korea's aggression against the crew occurred many years prior to the designation and the

Pueblo incident was not specifically mentioned in the designation by the Secretary of State: "In

accordance with Section 6(j) of the Export Administration Act (50 U.S.C.App. 2405(j)), I hereby

determine that North Korea is a country which has repeatedly provided support of acts of

international terrorism." In *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 67 (D.D.C.

2010) the court asserted subject matter jurisdiction pursuant to Section 1605A for victims and

claimants of the barracks bombing in Beirut, Lebanon.   The court determined that "Iran was

designated a state sponsor of terror by the U.S. State Department as a partial result of the Beirut

bombing" citing the designation of the Secretary of State.   However, that designation did not

mention the Beirut bombing.

**3.    The Florida Court Was Presented with Convincing Evidence that Vera Sr. was Assassinated on Orders from Cuba**

As set forth in the Facts section of this memorandum, significant evidence was admitted in the Florida court showing that Vera was assassinated on orders of the Cuban government. That evidence was relevant to both the merits and subject matter jurisdiction.    Among the evidence:

- Vera Sr. was a high Cuban official before defecting to the United States

- Vera Sr. was sentenced to death *in absentia* by the Cuban government

- Vera Sr. was a founder and leader of a counter-revolutionary group, The Fourth Republic, of Cuban exiles in the United States

- Vera Sr. was shot in the back and killed as he was leaving a meeting of The Fourth Republic in Puerto Rico

BBVA relies upon extrinsic evidence to support its collateral attack on the Florida judgment even though Florida law prohibits such reliance.  *See Kroier v. Kroier*, 95 Fla. 865, 866 (Fla. 1928).  The sole basis for reopening the merits of the Florida judgment is a claim, echoed in three formats, that unnamed members of the Puerto Rican police force concluded that Vera Sr. was killed in retaliation for an attempted mafia hit.  The first format is a tombstone article in the *Miami Herald* with no author, source or detail.  Caruso Ex. H.  The second is in an expurgated FBI report on Cuban revolutionary and counter-revolutionary groups with no sources or detail.  Caruso Ex. G. The third is a (compensated) affidavit by a former member of the Puerto Rican police department with no personal knowledge of the killing or its investigation.  Caruso Ex. I.  BBVA's "evidence" is the definition of rank hearsay.  None of the three sources is admissible for the truth of what is asserted.  Where is the report of the Puerto Rican police making the conclusion?  Who authored the report and what evidence supported the claimed

conclusion? Who killed Vera and why was no one arrested and tried for the murder? At best, it suggests that when the Puerto Rican police could make no arrest, they simply attributed Vera Sr.'s murder to the Puerto Rican mob. These unsourced references are also contrary to the public statement of the Chief Homicide Detective in Puerto Rico quoted in a October 27, 1976 newspaper article in the Puerto Rican newspaper of widest circulation, *El Nuevo Dia* ("The New Day"), who stated that Vera Sr. was killed by Cuban agents. *See* Swift Affidavit, Ex. A.

The Vera judgment ordered by this Court and entered by the Clerk on August 17, 2012 pursuant to FRCP 58 is a final judgment. ECF # 12. This Court's judgment granted full faith and credit to the judgment of the Florida court which held a trial on the merits and heard evidence. To attack the final judgment of the Florida court on the merits finding that Vera Sr. was ordered killed by Cuba – and therefore the "credit" accorded the Florida judgment by this Court – a defendant would have to move pursuant to Rule 60(b)(2).[6] BBVA, which is not in privity with the defendant Republic of Cuba, has no standing to bring a Rule 60(b)(2) motion to set aside a judgment against Cuba. *See Dunlop v. Pan American World Airways, Inc.*, 672 F.2d 1044 (2d Cir. 1982). Moreover, a motion pursuant to Rule 60(b)(2) must be brought within one year after entry of judgment. If it could assert such a motion, BBVA would be held to the same standard as if the defendant were moving pursuant to Rule 60 to set aside a judgment. It would have to submit "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Clearly, BBVA's submission is not newly discovered evidence.

---

[6]     A similar result applies under New York and Florida law.  See NY CPLR 5015 and Fla.R.C.P. Rule 1.540.

III.   **CONCLUSION**

For the foregoing reasons, this Court should deny BBVA's Motion to Dismiss.

Dated:  New York, New York
        December 6, 2013

By: _Robert A. Swift_

Robert A. Swift (*Pro Hac Vice*)
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, 21st Floor
Philadelphia, PA 19107
(215) 238-1700

Jeffrey E. Glen
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY  10020
(212) 278-1000

Attorneys for Aldo Vera, Jr.

114817

17