IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
**************************************************

ALDO VERA, JR., as Personal Representative of the Estate of Aldo Vera, Sr.,

        Plaintiff,

v.

THE REPUBLIC OF CUBA,

        Defendant.

v.

BANCO BILBAO VIZCAYA ARGENTARIA (S.A.); and STANDARD CHARTERED BANK,

        Garnishees.

12 Civ. 1596 (AKH)

## REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL FULL AND COMPLETE ANSWERS TO INFORMATION SUBPOENAS AND IN OPPOSITION TO RESPONDENTS' MOTIONS TO QUASH

Plaintiff Aldo Vera, Jr. submits this Reply Memorandum in support of his Motion to Compel (ECF #336) Garnishees Banco Bilbao Vizcaya Argentaria (S.A.) ("BBVA") and Standard Chartered Bank to submit full and complete answers to an Information Subpoena served on each many months ago. This memorandum also responds to each bank's Motions to Quash the Information Subpoenas which raise the same issues as set forth in their opposition briefs. ECF #'s 355 and 366.

1

nydocs1-1024233.1

I.  **The Information Subpoena Is Valid and Should Be Enforced**

BBVA interposes an objection under New York procedure to providing responses demanded by way of Information Subpoena regarding assets held at BBVA branches outside of New York. It is without merit. BBVA points out, accurately, that it was served with an information subpoena pursuant to CPLR Rule 5224(a)(3).[1] From that fact, it argues that it has no obligation to provide answers to questions regarding assets within BBVA branches outside of New York of the judgment debtor, to wit the Republic of Cuba, and Cuban government entities, citing to CPLR Rule 5224(a-1).

Rule 5224(a-1) is irrelevant to the present dispute, because it deals not with providing answers to questions, but to bringing physical documents requested through a subpoena *duces tecum* — located outside New York — into the state of New York. The problem with which Rule 5224(a-1) deals arose because New York, Judiciary Law section 2-b, happens to bar the service of a New York subpoena out of the state, "no matter how much justification there may be for it." The new statute [5224(a-1)] does the same job by requiring the person served — in New York, making Judiciary Law section 2-b happy — to produce relevant materials under its control no matter where the servee may be storing the materials. Commentary by Professor Seigel to McKinney's CPLR Rule 5224, 2006 supplemental annotation, "New CPLR 5224(a-1) Addresses Obligations of Persons Served with Subpoena Duces Tecum Inside New York with Respect to Materials They Control Outside New York."

In Professor Siegel's view, 5224(a-1) was unnecessary since New York law clearly permitted a New York court to enforce a subpoena for documents located out of state through

---

[1] Service of the Information Subpoena and accompanying restraining notice was by certified mail, return receipt requested, a method of service explicitly permitted for information subpoenas under Rule 5224(a)(3) and for restraining notices under Section 5222(a).

service in state on the possessor of the documents, *ibid*, and his prescience was confirmed by the Court of Appeals decision in *Koehler v. Bank of Bermuda, Ltd.*, 12 N.Y. 3d 533, 883 N.Y.S.2d 763 (2009), which extended the reach of New York's power over items located outside the state to the assets themselves, and not merely to documents relevant to enforcing a judgment. But whether or not BBVA documents located abroad can be reached by a subpoena *duces tecum* is irrelevant, since no such demand has been made.

All Vera wants is for BBVA, a bank indisputably subject to the personal jurisdiction of this court, to answer questions that a garnishee indisputably has to answer. If it turns out that BBVA in Spain or any of the 30 or so other countries in which it operates has assets of the judgment debtor and its controlled corporations, and Vera wishes to obtain documents from BBVA's foreign offices in aid of any steps Vera may take to levy on those assets, then Vera will serve a subpoena *duces tecum* on BBVA in New York and enforce the rights assured to a judgment debtor by Rule 5224(a-1).[2]

Turning to BBVA's obligations to respond to an information subpoena, its argument, in its totality, is the following:

> "Vera's Subpoena is an information subpoena, not a subpoena duces tecum. It follows that Vera cannot compel the disclosure he now seeks."

BBVA Memorandum of Law in Opposition, ECF # 356 at 3.

This Court addressed directly BBVA's contention in *Eitzen Bulk A/S v. Bank of India*, 827 F. Supp. 2d 234, 240 (S.D.N.Y. 2011), where the Court summarized the decision in

---

[2] Were service of Vera's Information Subpoena relevant, BBVA has waived any claim that it was not properly served. A subpoena *duces tecum* is to be served in the same manner as one serves a summons, and any challenge to service must be by motion to quash made before compliance with the subpoena. *Cherfas v. Wolf*, 20 Misc.3d 1118(A), 2008 WL 2746740, at *2 (N.Y. Sup. Ct. 2008). As BBVA "responded to the Subpoena by providing information regarding assets (blocked accounts) held at BBVA's New York branch," BBVA Memo of Law, ECF # 356 at 2, it has waived service objections.

3

*Gavilanes v. Matavosian*, 123 Misc. 2d 868, 475 N.Y.S.2d 987 (N.Y. Civ. Ct. 1984) as "holding in contempt a foreign bank doing business in New York that did not respond to judgment creditor's information subpoena served on New York office but seeking information about assets on deposit elsewhere." *See Raji v. Bank Sepah-Iran*, 139 Misc. 2d. 1026, 1032, 529 N.Y.S.2d 420 (N.Y. Sup. Ct. 1988), enforcing an information subpoena to a bank in New York regarding deposits held abroad, *c.f. Mones v. Commercial Bank of Kuwait*, 399 F.Supp.2d 310, 318, text at n. 57 (S.D.N.Y. 2005) (approving *Gavilanes* regarding the enforceability of an information subpoena for assets held abroad by a bank garnished in New York). These cases apply, in the context of foreign deposits in garnishee banks, the general law of New York that "a judgment creditor may compel disclosure of all matter relevant to the satisfaction of the judgment," CPLR Section 5223, by serving an information subpoena on a third party seeking information on a judgment debtor's bank accounts. *Niagara Mohawk Power Corp. v. Young*, 135 A.D.2d 1139, 525 N.Y.S.2d 275, 277 (4th Dep't 1987).

BBVA's objection based on New York procedure should be summarily rejected.

## II. This Court Possesses Subject Matter Jurisdiction

Subject matter jurisdiction over Vera's Motion to Compel is conferred by Section 201 of the Terrorism Risk Insurance Act ("TRIA"), codified at 28 U.S.C. 1610 note. That section explicitly gives this Court subjection matter jurisdiction over proceedings in aid of execution of a judgment obtained pursuant to FSIA § 1605(a)(7) "[n]otwithstanding any other provision of law." *See Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 52 (2d Cir. 2010) ("Section 201(a) of the TRIA provides courts with subject matter jurisdiction over post-judgment execution and attachment proceedings"); *Weininger v. Castro*, 462 F. Supp. 2d 457, 490 (S.D.N.Y. 2006)

(TRIA "provides independent basis of subject matter jurisdiction in this enforcement proceeding against" state sponsors of terrorism).

These respondents also attack the validity of Vera's Florida and New York judgments as contrary to 28 U.S.C. § 1605A. However, Vera obtained his judgment pursuant to the later repealed FSIA Section § 1605(a)(7) — not § 1605A. So respondents' reliance on § 1605A is meaningless. In any event, Vera adequately responded to respondents' arguments in his Memorandum of Law, Affidavits and exhibits submitted to the Court at ECF #'s 359, 360 and 361 and incorporated herein.

### III. Respondents' Objections Should Be Overruled

The Information Subpoena seeks information as to bank accounts of the Cuban government, its agencies and instrumentalities, and provides a list of 73 such entities. At least 64 of those are on the Office of Foreign Assets Control's list of "Specially Designated Nationals and Blocked Persons" related to the Cuban government. This information can be provided through electronic searches. Under New York law and precedents of this Court, plaintiff is entitled to the discovery. *See EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207-08 (2d Cir. 2012); *Eitzen Bulk A/S v. Bank of India*, 827 F. Supp. 2d 234, 238 (S.D.N.Y. 2011).

Respondent Standard Chartered Bank makes no substantive objection to furnishing the international information sought by the Information Subpoena, but BBVA does. BBVA implicitly concedes that this Court has the power to order it to comply with the Information Subpoena but insists that Vera must avail himself of other remedies. BBVA's website asserts that it operates "in over 30 countries" worldwide but does not differentiate between branches and

subsidiaries. *See* Second Swift Decl., Exhibit 1. The Information Subpoena does not extend to the bank's subsidiaries, so the search is limited to the bank's directly owned branches.

BBVA's proffer in support of its objection is limited to compliance with Spanish law. It contends that compliance with an order of this Court could subject it to a fine by the Spanish banking authority and a lawsuit by Cuba claiming breach of confidentiality. However, Spanish law would not govern supplying banking information from the other countries in which BBVA operates, and BBVA does not claim to the contrary. BBVA does not provide any basis for refusing to disclose information as to Cuban accounts in the other foreign countries it has branches.

BBVA contends that plaintiff should be forced to proceed pursuant to the Hague Convention or file a lawsuit in Spain to enforce the judgment there. But resort to the Convention is not mandatory and is not even the procedure of first choice. *See Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S. Dist. of Iowa,* 482 U.S. 522, 540-43 (1987); *First American Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 21 (2d Cir. 1998). The Convention is merely a supplemental procedure to the Federal Rules of Civil Procedure. The fact that this is postjudgment discovery of moveable bank accounts makes use of the Convention impractical.

Virtually all the cases cited by BBVA supporting resort to the Hague Convention involve prejudgment requests for information, not postjudgment ones. The cost of filing a proceeding in each of the 28 other foreign countries where BBVA has branches may be $25,000 – excluding appeals. *See* Second Swift Decl. The time to obtain court rulings will be 6 to 12 months in each country. During that time, Cuba will be able to move its accounts to prevent execution. Furthermore, some or all of the countries may dismiss lawsuits outright unless Vera is able to

provide a concrete basis as to the likely existence of a Cuban government account. The same would apply to filing an action in Spain to recognize and enforce the judgment.

It is not clear from the excerpt of Spanish law attached to the De Remedios Declaration that disclosure of the information as to accounts in Spain would subject the bank to a civil penalty for disclosure of confidential information. Spain, like most European countries, has banking laws intended to protect against discovery requests from American courts. On its face, the translated excerpt of Spanish law provided by BBVA is limited to "maintain[ing] confidentiality about information regarding salaries, positions, transactions and other operations of their clients without that information being allowed to be communicated to third parties or to become subject to disclosure." ECF # 358-2 Furnishing information as to the existence of an account, its location and balance is not covered. Furthermore, there is a Protective Order in this case that BBVA can utilize to keep any information confidential.

De Remedios is unable to furnish any case citations where banks have been penalized for furnishing account information in analogous situations. Nor does he cite any judgments obtained by bank customers against their banks for breach of confidentiality. This Court has ordered two banks, one of which was Spanish, to disclose Cuban account information from their Spanish (and other) branches based on Vera's Information Subpoena. ECF # 329. Other banks with Spanish branches voluntarily furnished information as to all their branches. To counsel's knowledge, those banks have not been subject to penalties imposed by Spain for producing Cuban account information.

7

## III. Conclusion

For all the reasons set forth above and in plaintiff's opening brief, this Court should order Garnishees Banco Bilbao Vizcaya Argentaria (S.A.) and Standard Chartered Bank to furnish to plaintiff's counsel full and complete answers to the Information Subpoenas served on each within 30 calendar days.

Dated: New York, New York
December 11, 2013

By: /s/ Robert A. Swift
Robert A. Swift (*Pro Hac Vice*)
Kohn, Swift & Graf, P.C.
One South Broad Street, 21st Floor
Philadelphia, PA 19107
(215) 238-1700

Jeffrey E. Glen
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY 10020
(212) 278-1000

Attorneys for Aldo Vera, Jr.