**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ALDO VERA, JR., as Personal Representative of the Estate of Aldo Vera, Sr.,

Plaintiff,

vs.

THE REPUBLIC OF CUBA,

Defendant.

12 Civ. 1596 (AKH)

---

ALDO VERA, JR., as Personal Representative of the Estate of Aldo Vera, Sr., et al.,

Petitioners,

v.

BANCO BILBAO VIZCAYA ARGENTARIA (S.A.), et al.,

Respondents/Garnishees.

---

REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS PETITION

WHITE & CASE LLP

1155 Avenue of the Americas
New York, New York 10036
(212) 819-8200

*Attorneys for Respondent Banco Bilbao Vizcaya Argentaria, S.A.*

Of Counsel:

Kenneth A. Caruso
Patrick M. Wilson

# TABLE OF CONTENTS

**Page**

POINT I BBVA HAS, BUT DOES NOT NEED, STANDING .......... 1

POINT II THE THREE FEDERAL COURTS LACK SUBJECT MATTER JURISDICTION .......... 2

A. The Federal Courts Lack Subject Matter Jurisdiction In The Civil Actions .......... 2

1. The Proviso Portions Of The Statutes Are Jurisdictional .......... 2

2. Burden Of Proof; Standard Of Proof .......... 3

3. Cuba Was Not Designated "As A Result Of" The Killings At Issue .......... 3

a. The Suchlicki Affidavit .......... 3

b. The Deutsch Testimony .......... 4

c. BBVA Has Carried Its Burden .......... 5

d. Vera's Individual Contentions Are Meritless .......... 7

e. Villoldo's Individual Contentions Are Meritless .......... 8

4. Vera Sr.'s Killing Was Not An "Extrajudicial Killing" .......... 9

5. Vera Is Not A "Claimant" .......... 10

B. This Court Lacks Subject Matter Jurisdiction In This Special Proceeding .......... 11

POINT III THE JUDMENTS ARE VOID AND THE FLORIDA JUDGMENTS ARE NOT ENTITLED TO FULL FAITH AND CREDIT .......... 11

POINT IV BBVA IS NOT PRECLUDED BY RES JUDICATA .......... 12

A. The Prior Jurisdictional Findings Do Not Preclude BBVA .......... 12

B. The "Arguable Basis" and "Mere Error" Tests Do Not Apply .......... 13

C. The Motions To Vacate In Hausler Do Not Preclude BBVA .......... 14

1. Applicable Law .......... 14

2. Judge Marrero Did Not Actually Decide The Jurisdictional Issue .......... 15

3. Judge Jordan Did Not Actually Decide The Jurisdictional Issue .......... 16

4. Conclusion .......... 18

NEWYORK 9067149 v3

POINT V PETITIONERS' OTHER CONTENTIONS ARE MERITLESS ................................ 18

A. BBVA May, But Need Not, Collaterally Attack The Florida Judgments ........................ 18

B. The Court May Consider The Evidence Submitted By BBVA ........................................ 20

C. Petitioners' Reliance On Weininger Is Misplaced............................................................ 21

# TABLE OF AUTHORITIES

## CASES

Am. Steel Bldg. Co. v. Davidson & Richardson Constr. Co.
847 F.2d 1519 (11th Cir. 1988) ....................19, 20

Anglo-Iberia Underwriting Mgmt. Co. v. Jamsostek, 600 F.3d 171 (2d Cir. 2010) ....................3

Aurum Asset Managers, LLC v. Bradesco Companhia de Seguros, 441 F. App'x 822 (3d Cir. 2011) ....................14

Baker v. Gen. Motors Corp., 522 U.S. 222 (1998) ....................12

Bell Helicopter Textron Inc. v. Islamic Republic of Iran, 892 F. Supp. 2d 219 (D.D.C. 2012) ....................14

Bread Political Action Comm. v. FEC, 455 U.S. 577 (1982) ....................4

Corbett v. MacDonald Moving Servs., Inc., 124 F.3d 82 (2d Cir. 1997) ....................13

Cruz v. TD Bank, NA, 2013 N.Y. LEXIS 3188 (N.Y. Nov. 21, 2013) ....................6

Drainage District v. Baxter State Bank, 308 U.S. 371 (1940) ....................14

Durfee v. Duke, 375 U.S. 106 (1963) ....................12

Estate of Doe v. Islamic Republic of Iran, 808 F. Supp. 2d 1 (D.D.C. 2011) ....................2

Ex Parte McCardle, 74 U.S. 506 (1868) ....................10

Ferndowsi v. Islamic Republic of Iran, 2009 U.S. Dist. LEXIS 113791 (M.D. Tenn. Sept. 4, 2009) ....................2, 6

Gulino v. N.Y. State Educ. Dep't, 460 F.3d 361 (2d Cir. 2006) ....................6

Haring v. Prosise, 462 U.S. 306 (1983) ....................15

Hausler v. JPMorgan Chase Bank, N.A., 845 F. Supp. 2d 553 (S.D.N.Y. 2012) ....................15

In re Optical Technologies, Inc., 425 F.3d 1294 (11th Cir. 2005) ....................14

Jenkins v. McKeithen, 395 U.S. 411 (1969) ....................20

Jerez v. Republic of Cuba, 777 F. Supp. 2d 6 (D.D.C. 2011) ....................2

Johnson v. Muelberger, 340 U.S. 581 (1951) ....................19

Kappos v. Hyatt, 132 S. Ct. 1690 (2012)....................8

Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp. N.V.
14 F. Supp. 2d 391 (S.D.N.Y. 1998)....................3, 7

Kremer v. Chem. Constr. Corp., 456 U.S. 461 (1982)....................19, 20

Massie v. Gov't of Dem. People's Republic of Korea, 592 F. Supp. 2d 57 (D.D.C.2008)....................2

Owens v. Republic of Sudan, 826 F. Supp. 2d 128 (D.D.C. 2011)....................2

Peralta v. Heights Med. Ctr., Inc., 485 U.S. 80 (1988)....................19

Phillips Petrol. Co. v. Shutts, 472 U.S. 797 (1985)....................13

Postlewaite v. McGraw-Hill, Inc., 333 F.3d 42 (2d Cir. 2003)....................15

Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82 (D.C. Cir. 2002)....................8

Proctor v. LeClaire, 715 F.3d 402 (2d Cir. 2013)....................15

Richards v. Jefferson Cnty., 517 U.S. 793 (1996)....................12

Ripperger v. A.C. Allyn & Co., 113 F.2d 332 (2d Cir. 1940)....................13

Robinson v. Gov't of Malaysia, 269 F.3d 133 (2d Cir. 2001)....................20

Roeder v. Islamic Republic of Iran, 195 F. Supp. 2d 140 (D.D.C. 2002)....................2, 3, 20

SEC v. Elliott, 953 F.2d 1560 (11th Cir. 1992)....................20

Simpson v. Socialist People's Libyan Arab Jamahiriya, 326 F.3d 230 (D.C. Cir. 2003)....................8

Stoll v. Gottlieb, 305 U.S. 165 (1938)....................13

Taylor v. Sturgell, 553 U.S. 880 (2008)....................12

Thompson v. Whitman, 85 U.S. 457 (1874)....................20

Tinsley Media, LLC v. Pickens Cnty., 203 F. App'x 268 (11th Cir. 2006)....................4

Travelers Indemnity Co. v. Bailey, 129 S. Ct. 2195 (2009)....................14

U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711 (1983)....................3, 7

Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n, 455 U.S. 691 (1982)....................2, 19

United States v. Eastport Steamship Corp., 255 F.2d 795 (2d Cir. 1958)....................13

United Student Aid Funds, Inc., v. Espinosa, 130 S. Ct. 1367 (2010) ....................................13, 14

Valore v. Islamic Republic of Iran, 700 F. Supp. 2d 52 (D.D.C. 2010) ..........................................2

VKK Corp. v. Nat'l Football League, 244 F.3d 114 (2d Cir. 2006)................................................6

Walters v. Indus. & Commercial Bank of China, Ltd., 651 F.3d 280 (2d Cir. 2011) .................1, 19

Weininger v. Castro, 462 F. Supp. 2d 457 (S.D.N.Y 2006) ..........................................................21

Weinstein v. Islamic Republic of Iran, 609 F.3d 43 (2d Cir. 2010) ...............................................11

Wheat, First Sec., Inc. v. Green, 993 F.2d 814 (11th Cir. 1993) .....................................................6

## STATUTES AND RULES

28 U.S.C. § 1605(a)(7).......................................................................................................2, 10

28 U.S.C. § 1605A ...........................................................................................................10, 11

28 U.S.C. § 1605A(a)(2)..........................................................................................................2

28 U.S.C. § 1605A(a)(2)(ii) ..................................................................................................10

28 U.S.C. § 1605A(c) ...........................................................................................................11

## MISCELLANEOUS

11 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2862 at 324-25 (2011) .................16

Pub. L. 110-181, Div. A, § 1083(b)(1)(A)(iii), 122 Stat. 341 (Jan. 28, 2008)................................10

Respondent, BBVA, respectfully submits this reply memorandum of law in support of its motion to dismiss the Petition.[1]

POINT I

BBVA HAS, BUT
DOES NOT NEED, STANDING

Petitioners contend that BBVA lacks standing under New York law and Florida law. Villoldo/Hausler Br. at 24-25; Vera Br. at 6-7. The contention is irrelevant. Under the FSIA, a garnishee has standing to raise the execution immunity of a non-appearing foreign sovereign. Walters v. Indus. & Commercial Bank of China, Ltd., 651 F.3d 280, 290-94 (2d Cir. 2011). BBVA is a garnishee in Vera v. BBVA and therefore has standing.

In any event, standing is not necessary. The issue here is subject matter jurisdiction, which may be raised by the Court sua sponte, or at the suggestion of any party or non-party. See Id. at 292-93 ("If a court may consider an issue on its own motion, it does not matter what triggers the court's inquiry. The court may consider the issue once it is suggested by any party -- or for that matter, non-party . . . .").

Petitioners also cite cases involving standing to move to vacate a judgment under Rule 60(b), FRCP. Villoldo/Hausler Br. at 24-25; Vera Br. at 16. These cases, however, are irrelevant because this proceeding does not involve Rule 60(b). BBVA has moved to dismiss the Petition, not to vacate a judgment.[2]

[1] This reply memorandum uses the same defined terms as those used in BBVA's opening memorandum, dated November 15, 2013.

[2] Petitioners' contention would lead to a particularly absurd result. Petitioners contend that BBVA "would have to move pursuant to Rule 60(b)(2)[,]" Vera Br. at 16; see also Villoldo/Hausler Brief at 17, which requires that a motion to vacate be brought no more than a year after the entry of the judgment. Thus, according to Petitioners, BBVA was required to make a motion even before it was a party.

POINT II

THE THREE FEDERAL COURTS LACK
SUBJECT MATTER JURISDICTION

Petitioners contend that the Florida State Court's "determination is not subject to review by a federal district court." Villoldo/Hausler Brief at 13. That statement reveals a fundamental misunderstanding of BBVA's motion.

First, this Court must determine its own subject matter jurisdiction; that determination does not involve a "review" of the proceedings in the Florida State Courts. Second, if this Court has subject matter jurisdiction, and reaches the issue of full faith and credit, then the Court certainly does "review" the determination of whether the Florida State Courts had jurisdiction. "[B]efore a court is bound by the judgment rendered in another State, it may inquire into the jurisdictional basis of the foreign court's decree. If that court did not have jurisdiction over the subject matter or the relevant parties, full faith and credit need not be given." Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n, 455 U.S. 691, 705 (1982).

A. The Federal Courts Lack Subject Matter Jurisdiction In The Civil Actions

1. The Proviso Portions Of The Statutes Are Jurisdictional

Villoldo and Hausler contend that the "proviso portions" of 28 U.S.C. §§ 1605(a)(7) and 1605A(a)(2) -- "except that the court shall decline to hear a claim under this paragraph . . . if the foreign state was not designated as a result of such act" -- are not jurisdictional, but are, rather, mere "abstention" provisions. Villoldo/Hausler Br. at 15-16. This contention is meritless. Country-designation status, [3] and status as a claimant, [4] are jurisdictional.

[3] See, e.g., Roeder v. Islamic Republic of Iran, 195 F. Supp. 2d 140, 159-60 (D.D.C. 2002); Valore v. Islamic Republic of Iran, 700 F. Supp. 2d 52, 64, 67-68 (D.D.C. 2010); Owens v. Republic of Sudan, 826 F. Supp. 2d 128, 149 (D.D.C. 2011); Ferndowsi v. Islamic Republic of Iran, 2009 U.S. Dist. LEXIS 113791, at *5-6 (M.D. Tenn. Sept. 4, 2009), adopted, 2009 U.S. Dist. LEXIS 113699 (M.D. Tenn. Dec. 4, 2009); Massie v. Gov't of Dem. People's Republic of Korea, 592 F. Supp. 2d 57, 73 (D.D.C.2008).

2. Burden Of Proof; Standard Of Proof

It is undisputed that Cuba is a foreign state. Petitioners therefore have the burden of producing evidence of an exception to immunity. Anglo-Iberia Underwriting Mgmt. Co. v. Jamsostek, 600 F.3d 171, 175 (2d Cir. 2010). The ultimate burden of persuasion, by a preponderance, remains with the foreign state. Id.

3. Cuba Was Not Designated "As A Result Of" The Killings At Issue

Petitioners rely on the Affidavit of Professor Suchlicki and the testimony of Congressman Deutsch. That evidence, however, is too meager to carry the burden of production. Accordingly, the Court should rule for BBVA as a matter of law.

a. The Suchlicki Affidavit

The Suchlicki Affidavit is inadmissible. The question here is whether Cuba was designated as a state sponsor of terrorism "as a result of" the killings at issue. That is a question of fact, going to the State Department's state of mind, not a question for expert testimony or opinion. U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 716-17 (1983) ("The state of a man's mind is as much a fact as the state of his digestion."). Suchlicki cannot give an "opinion" about the State Department's state of mind. Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp. N.V., 14 F. Supp. 2d 391, 398 (S.D.N.Y. 1998).

Professor Suchlicki, furthermore, does not have personal knowledge of whether Cuba was designated "as a result of" the killings at issue. The testimony of a witness who does "not have personal knowledge . . . cannot be competent evidence of the reasons for the Secretary of State's designation." Roeder v. Islamic Republic of Iran, 195 F. Supp. 2d 140, 161 (D.D.C. 2002).

---

[4] See, e.g., Valore, 700 F. Supp. 2d at 67; Jerez v. Republic of Cuba, 777 F. Supp. 2d 6, 25-26 (D.D.C. 2011); Estate of Doe v. Islamic Republic of Iran, 808 F. Supp. 2d 1, 13 (D.D.C. 2011).

In any event, Suchlicki glosses over the dispositive question whether the 1982 designation came "as a result of" the killings at issue. He states that Cuba "was condemned" -- not designated as a state sponsor of terrorism -- by "the Kennedy administration[,]" which was, of course, long out of power by 1979 (when Congress passed the Export Administration Act) and 1982 (when the Secretary of State designated Cuba). Perkins Decl. Ex. 16, ¶ 3. And Suchlicki cites no support for his conclusory statement that the "condemnation . . . (which included designation as a state sponsor of terrorism in 1982 and beyond) has been based, at least in part, on the extrajudicial killing and torture of Bobby Fuller." Id.

Suchlicki damages his credibility when he states, "I am not aware of any statement which would support the view that support of Latin American revolutionaries was the only reason for such designation of the Government of Cuba as a state sponsor of terrorism." Id. ¶ 4. See also Suchlicki Aff., dated April 8, 2013, ¶ 5 (Exhibit 1 to Vera Br.). The Brennan Declaration, however, is precisely such a statement. A credible expert would evaluate the entire record, and at least acknowledge and attempt to address contrary data. Suchlicki, by contrast, simply ignores Brennan in this Affidavit.

In sum, the Suchlicki testimony is superficial, general, focused largely on the wrong time period and barren of any supporting evidence from the State Department or any other source. It is inconsistent with the authoritative evidence from the State Department (the Brennan Declaration and the Johnston testimony). It is entitled to no weight.

b. The Deutsch Testimony

The testimony of Cong. Deutsch is inadmissible. See, e.g., Tinsley Media, LLC v. Pickens Cnty., 203 F. App'x 268, 273 (11th Cir. 2006) (affidavit of legislator inadmissible). In any event, that testimony carries no weight. Bread Political Action Comm. v. FEC, 455 U.S.

577, 582 n.3 (1982) (post hoc affidavit of member of Congress, as to intent of legislation, has no

probative weight).  Cong. Deutsch, like Suchlicki, has no personal knowledge of the reasons for

the 1982 designation.  Cong. Deutsch, moreover, never addresses the relevant issue -- the 1982

designation.  Cong. Deutsch says, "I believe . . . that in 1961 President Kennedy effectively and

in fact we believe designated them as a state sponsor of terrorism."  Perkins Decl. Ex. 17-2 (Dep.

Tr. 11); see also Perkins Decl. Ex. 15 ¶ 10.  Obviously, the Congressman's state of mind ("we

believe") about the wrong time period (1961) is irrelevant and entitled to no weight.

        c.        BBVA Has Carried Its Burden

If the Court concludes that Petitioners carried their burden of production, then the Court,

sitting as a fact-finder, should conclude that BBVA has carried the burden of persuasion.  The

evidence shows, by the requisite preponderance, that Cuba was not designated as a state sponsor

of terrorism "as a result of" the killings at issue here.

The Court has before it evidence from the only authoritative source -- the State

Department -- as to why Cuba was designated.  Thus, the Brennan Declaration and the Johnston

testimony show that Cuba was designated as a state sponsor of terrorism in 1982 "specifically

because of Cuba's clear support for organizations and groups abroad that used terrorism and

revolutionary violence as a policy instrument to undermine existing governments."  Caruso Decl.

Ex. E ¶ 4.  As Judge Jordan put it -- with no small amount of understatement -- "this information

may cast a shadow on the cause of Cuba's designation as a state sponsor of terrorism . . . ."

Perkins Decl. Ex. 18 at 3.

The State Department did not mention the killings at issue here.  Rather, the State

Department gave only one reason:  It designated Cuba "specifically because of" Cuba's support

for groups abroad that used terrorism and revolutionary violence as a policy instrument to

undermine existing governments. The Court should not supply a reason for the designation that the State Department itself did not state.

The State Department's language, furthermore, triggers a well-known canon of construction -- expressio unius est exclusio alterius. The State Department's expression of one reason means that other reasons -- such as those proffered by Petitioners -- are excluded. This inference would arise even if the State Department had not used the word "specifically;" with that word, the inference is compelling. See, e.g., Gulino v. N.Y. State Educ. Dep't, 460 F.3d 361, 375 (2d Cir. 2006); VKK Corp. v. Nat'l Football League, 244 F.3d 114, 130 (2d Cir. 2006); Cruz v. TD Bank, NA, 2013 N.Y. LEXIS 3188, at *15 (N.Y. Nov. 21, 2013) (expressio unius "is typically used to limit the expansion of a right or exception -- not as a basis for recognizing unexpressed rights by negative implication").

In sum, "to the extent it is possible to prove a negative," Wheat, First Sec., Inc. v. Green, 993 F.2d 814, 817 (11th Cir. 1993), BBVA has done so. Cuba was not designated as a state sponsor of terrorism "as a result of" the killings at issue here. The State Department -- the best source here -- has provided the most probative evidence. Petitioners point to no contrary evidence from the State Department itself. The Suchlicki Affidavit and the Deutsch testimony are inconsistent with, and simply do not outweigh, the Brennan Declaration and the Johnston testimony. Accordingly, the federal courts lack subject matter jurisdiction.

BBVA does not contend that "Cuba was designated as a state sponsor of terrorism solely because of its support of Latin American revolutionaries." Villoldo/Hausler Brief at 12. That, of course, is the "specific" -- and the only -- reason stated by the State Department. But even assuming that there were other, unstated reasons, there is no evidence that the Secretary of State made the designation "as a result of" the Vera, Villoldo or Hausler killings. See Ferdowsi v.

Islamic Republic of Iran, 2009 U.S. Dist. LEXIS 113791, at *7 (M.D. Tenn. Sept. 4, 2009) (dismissing where Congressional resolutions submitted by plaintiff failed to establish any "causal connection" between Iran's designation and the "human rights depredations" at issue).

d. Vera's Individual Contentions Are Meritless

Vera relies on Congressional testimony, given in 1982, by Daniel James, who stated that "there were 260 acts of violence perpetrated by Cuba in Puerto Rico between 1976 and 1982." Vera Br. at 11. As Vera admits, however, James did not say whether the Vera killing was one of those 260 acts.

In an effort to forge that link, Vera asked Suchlicki "to opine." Vera Br. at 13. Suchlicki says, obligingly, that "in my opinion, one of the 260 acts of violence . . . was the death of Aldo Vera, Sr." Suchlicki continues, "it is highly probable . . . that Mr. James was referring to Aldo Vera Sr. . . . ." Vera Br. Ex. 1 ¶¶ 9-10. This effort fails for two reasons. First, a witness -- even an expert -- cannot testify about another witness' state of mind. Kidder, 14 F. Supp. 2d at 398. Second, a witness cannot give an "opinion" about state of mind, which is a question of fact, not of opinion. U.S. Postal Serv., 460 U.S. at 716-17.

This is, in any event, a side show. Even assuming that James was referring to Vera, Brennan did not mention these 260 acts of violence when he stated the reason why Cuba was designated in 1982. There is no evidence that these acts had an impact on the Secretary of State when he designated Cuba.

It is presumptuous -- not to say preposterous -- for Suchlicki to "opine" that "James's testimony most certainly informed and influenced the U. S. government's decision to designate Cuba as a state sponsor of terrorism." Id. at ¶ 10. Suchlicki cannot know the State Department's state of mind. Brennan, moreover, relied on the Johnston testimony, not the James testimony.

e. Villoldo's Individual Contentions Are Meritless

Villoldo cites a recent judgment of the Florida State Court enforcing his prior judgment. There, the Florida court stated that Cuba committed "theft" of the Villoldo's "wealth . . . which was then used to fund its efforts to support terrorism in Latin America and around the world." Villoldo/Hausler Brief at 5. The Florida court, however, cited no record support for that conclusory statement, nor did Villoldo submit any evidence supporting that factual contention in this Court. Accordingly, this Court has no basis on which to find this as a fact. Villoldo, moreover, does not say whether he submitted the Brennan Declaration and the Johnston testimony to the Florida State Court. If he did not, then that Court did not have all the material facts before it, and its judgment would "lose significant force." Kappos v. Hyatt, 132 S. Ct. 1690, 1700 (2012).

Villoldo contends that he was subjected to torture when armed men surrounded his home. Villoldo/Hausler Br. at 6. This contention fails on the law and on the facts. As a matter of law, the conduct alleged does not constitute "torture." See, e.g., Simpson v. Socialist People's Libyan Arab Jamahiriya, 326 F.3d 230, 234-35 (D.C. Cir. 2003) (complaint dismissed where it alleged that plaintiff was "held incommunicado and threatened with death if she moved from the quarters where she was held" (internal punctuation omitted)); Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 92-93 (D.C. Cir. 2002) (complaint dismissed where plaintiff was held in a "political prison;" examples of "torture" are "sustained systematic beating, application of electrical currents to sensitive parts of the body, and tying up or hanging in positions that cause extreme pain").

Villoldo, furthermore, submits no evidence to support this contention (such as the testimony of Elia Villoldo, supposedly given in the Florida State Court). This Court cannot find

facts supporting its jurisdiction in the absence of evidence submitted to this Court. In any event, Villoldo never actually alleges, much less submits evidence showing, that this conduct occurred after Cuba's designation in 1982, or that Villoldo (the Petitioner) was present when it occurred.

4. Vera Sr.'s Killing Was Not An "Extrajudicial Killing"

Vera relies on three witnesses, all of whom provide only hearsay evidence.

Montaner admits that his knowledge is "actually just whatever I have been told from several people who have deserted from the Cuban government[.]" Vera Aff. H (Dep. Tr. at 7). He admits that one declarant, Del Pena, did not have first-hand knowledge of the facts. See id. at 10 (Del Pena "could have heard what happened to Mr. Vera."). Another declarant, Fuentes, told Montaner that LaGuardia "handled the operation" but the basis for Fuentes' knowledge is unknown. Id. at 14-15.

Matamoros' testimony -- concerning a document he read in 1962, a copy of which he did not provide -- is hearsay. Vera Aff. Ex. J.

Jose Vera recounts triple hearsay -- Raul Castro told Carajaville, who told Montaner, who told Jose Vera. Vera Aff. Ex. I ¶¶ 3-6.

This hearsay evidence -- for which Vera does not even claim an exception under FRE 803 or 807 -- is insufficient to carry Vera's burden of production. Even if it were sufficient for that purpose, it does not outweigh the FBI report submitted by BBVA, which is admissible, see BBVA Opening Brief at 5 n.2, and which states that Vera Sr. "was shot and killed in San Juan where police advised the murder was related to criminal activities rather than Cuban exile political matters." Caruso Decl. Ex. G. The FBI's conclusion, moreover, has the ring of truth, considering that Vera was killed just two days after he attempted to bomb Ramos -- an attempt that Vera in this case does not even deny.

On this record, the Court should find that the Vera killing was not an extrajudicial killing. At the very least, on this record, the Court should allow BBVA to conduct jurisdictional discovery from the FBI, the Puerto Rico police and/or the Villoldo private investigator.

5. Vera Is Not A "Claimant"

Vera contends that § 1605A does not govern here because "Vera obtained his judgment [in the Florida State Court] pursuant to the now-repealed § 1605(a)(7)." Vera Br. at 1. Thus, Vera contends that he is a "claimant" in Vera v. Republic of Cuba in this Court because he was a "claimant" in the action in the Florida State Court. Id. at 8-11.

This contention is meritless because it overlooks the changes made by Congress in 2008, when Congress repealed 28 U.S.C. § 1605(a)(7) and replaced it with 28 U.S.C. § 1605A. Pub. L. 110-181, Div. A, § 1083(b)(1)(A)(iii), 122 Stat. 341 (Jan. 28, 2008). The law permitted Vera to continue to prosecute his then-pending action in the Florida State Court under repealed § 1605(a)(7). The law, however, did not allow him to rely on repealed § 1605(a)(7) in 2012, when he filed this action. In 2012, this Court's subject matter jurisdiction depended solely on § 1605A -- the only relevant statute that existed when Vera filed his Complaint. Vera cannot resurrect a repealed statute as the source of subject matter jurisdiction in this action. See, e.g., Ex Parte McCardle, 74 U.S. 506, 514-15 (1868).

Vera argues at length that he was a "claimant" under § 1605(a)(7), which, Vera contends, adopted state law to define "claimant." Vera Br. at 8-10. Be that as it may, Congress changed the law in 2008 when it enacted § 1605A, which defines "claimant," as a matter of federal law, as (paraphrasing) (1) a national of the United States, (2) a member of the armed forces, (3) an employee of the U.S. government, or (4) the legal representative thereof. See 28 U.S.C.

§§ 1605A(a)(2)(ii), 1605A(c). The definition of "claimant" for purposes of this action is found in § 1605A. Vera, as demonstrated, does not meet that definition.

B. This Court Lacks Subject Matter Jurisdiction In This Special Proceeding

Citing Weinstein v. Islamic Republic of Iran, 609 F.3d 43, 50 (2d Cir. 2010), Petitioners contend that TRIA gives the Court an independent basis for subject matter jurisdiction in Vera v. BBVA, the special proceeding that seeks enforcement. Vera Br. at 5; Villoldo/Hausler Brief at 14-15. Weinstein, however, held that TRIA provides such an independent basis over enforcement proceedings "against property held in the hands of an instrumentality of the judgment-debtor[.]" Id. Here, the property is not held in the hands of an instrumentality of a judgment debtor. Furthermore, the exceptions to execution immunity set forth in Section 1610 apply only "where a valid judgment has been entered against a foreign sovereign . . . ." Id. at 48 (emphasis added). Here, as shown above, the three federal court judgments are void, not valid.

POINT III

THE JUDMENTS ARE VOID AND
THE FLORIDA JUDGMENTS ARE NOT ENTITLED
TO FULL FAITH AND CREDIT

Even assuming that TRIA provides jurisdiction over the special proceeding, the Petition should be dismissed because the judgments are void. As shown above, neither this Court (in Vera), nor Judge Swain (in Villoldo) nor Judge Jordan (in Hausler) had subject matter jurisdiction under the FSIA. And, for the reasons shown above, the Florida State Courts lacked subject matter jurisdiction. The three Florida State Court Judgments are therefore void and are not entitled to full faith and credit.

## POINT IV

## BBVA IS NOT PRECLUDED BY RES JUDICATA

### A. The Prior Jurisdictional Findings Do Not Preclude BBVA

Petitioners contend that the Florida State Courts (when rendering the judgments) and this Court (when recognizing Vera's judgment) found that they had jurisdiction. Villoldo also points to enforcement proceedings in other federal districts in which his Florida judgment was enforced. Villoldo/Hausler Br. at 7-8. Petitioners therefore contend that BBVA's "challenge . . . is barred by res judicata[.]" Id. at 22. This contention is meritless because BBVA was not a party to the proceedings in which the judgments were rendered or recognized.

Res judicata has two branches -- claim preclusion and issue preclusion (also called collateral estoppel). Baker v. Gen. Motors Corp., 522 U.S. 222, 233 n.5 (1998). Petitioners here invoke issue preclusion (on the issue of subject matter jurisdiction under the FSIA).

"In no event . . . can issue preclusion be invoked against one who did not participate in the prior adjudication." Baker, 522 U.S. at 237, n.11; see Durfee v. Duke, 375 U.S. 106, 115 (1963) (nothing decided in litigation between parties "could bind" non-parties "with respect to any controversy they might have, now or in the future"). BBVA was not a party to the proceedings in which the judgments were rendered or recognized. It did not have a full and fair opportunity to litigate the issue of subject matter jurisdiction. Accordingly, as against BBVA, the prior jurisdictional findings have no preclusive effect. BBVA is entitled to its "own day in court." Taylor v. Sturgell, 553 U.S. 880, 893 (2008) (internal quotation marks omitted). Indeed, preclusion of BBVA in these circumstances would violate due process. Richards v. Jefferson

Cnty., 517 U.S. 793, 798 (1996); Phillips Petrol. Co. v. Shutts, 472 U.S. 797, 811-12 (1985) (due process requires "notice plus an opportunity to be heard and participate in the litigation").[5]

B. The "Arguable Basis" and "Mere Error" Tests Do Not Apply

Citing United Student Aid Funds, Inc., v. Espinosa, 130 S. Ct. 1367 (2010), Petitioners contend that the judgments at issue are not void, but merely voidable, because the courts had an "arguable basis" for jurisdiction, or committed "mere error." Villoldo/Hausler Br. at 18-21. Espinosa, however, is inapplicable.

In Espinosa, the Supreme Court affirmed the denial of a motion to vacate, stating -- in the context of a Rule 60(b)(4) motion by a party -- that relief is reserved for cases "in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction." 130 S. Ct. at 1377 (quoting Nemaizer v. Baker, 793 F.2d 58, 65 (2d Cir. 1986)). The Court concluded:

> Rule 60(b)(4) strikes a balance between the need for finality of judgments and the importance of ensuring that litigants have a full and fair opportunity to litigate a dispute. Where, as here, a party is notified of a plan's contents and fails to object to confirmation of the plan before the time for appeal expires, that party has been afforded a full and fair opportunity to litigate, and the party's failure to avail itself of that opportunity will not justify Rule 60(b)(4) relief. We thus agree with the Court of Appeals that the Bankruptcy Court's confirmation order is not void.

130 S. Ct. at 1380 (emphases added).

[5] The cases cited by Petitioners are not to the contrary. Stoll v. Gottlieb, 305 U.S. 165 (1938), involved a creditor who was a party to a bankruptcy proceeding. The bankruptcy court confirmed a plan of reorganization that extinguished a guaranty. The creditor later sued on the guaranty but the Supreme Court held that the bankruptcy court order precluded the creditor's action. "We see no reason why a court . . . should examine again the question whether the court making the earlier determination on an actual contest over jurisdiction between the parties, did have jurisdiction[.]" Id. at 138 (emphasis added). Here, by contrast, BBVA was not a party to the earlier proceedings. Corbett v. MacDonald Moving Servs., Inc., 124 F.3d 82, 88-89 (2d Cir. 1997), states, "A party that had an opportunity to litigate the question of subject-matter jurisdiction may not . . . reopen that question in a collateral attack upon an adverse judgment." BBVA, again, was not a party and did not have the opportunity to litigate the question of subject matter jurisdiction. Ripperger v. A.C. Allyn & Co., 113 F.2d 332 (2d Cir. 1940), and United States v. Eastport Steamship Corp., 255 F.2d 795 (2d Cir. 1958), also involved collateral attacks by parties.

Espinosa, in short, applies to a Rule 60(b)(4) motion made by a person who was a party, who previously had a full and fair opportunity to litigate, and who later seeks to re-open his case. On motion by such a party, after the entry of judgment, the court asks whether the rendering court had merely an "arguable basis" for jurisdiction, or committed "mere error."

Here, by contrast, BBVA was not a party to the proceedings in which the courts rendered or recognized the judgments. BBVA did not previously have a full and fair opportunity to litigate the question of subject matter jurisdiction. The arguable basis/mere error tests therefore do not apply. See Aurum Asset Managers, LLC v. Bradesco Companhia de Seguros, 441 F. App'x 822, 824-26 (3d Cir. 2011); Bell Helicopter Textron Inc. v. Islamic Republic of Iran, 892 F. Supp. 2d 219, 225 (D.D.C. 2012).[6]

C. The Motions To Vacate In Hausler Do Not Preclude BBVA

Petitioners next contend that BBVA is precluded by the results of its motions to vacate the Hausler judgments in the S.D.N.Y. (before Judge Marrero) and the S.D. Fla. (before Judge Jordan). This contention is meritless because neither Judge Marrero nor Judge Jordan actually decided the jurisdictional issue on BBVA's motion.

1. Applicable Law

Collateral estoppel bars relitigation of an issue when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."

---

[6] Petitioners also cite Travelers Indemnity Co. v. Bailey, 129 S. Ct. 2195 (2009), and In re Optical Technologies, Inc., 425 F.3d 1294 (11th Cir. 2005), but these cases are like Espinosa: See Travelers, 129 S. Ct. at 2206 ("So long as respondents . . . were parties to the . . . bankruptcy proceeding, and were given a fair chance to challenge the Bankruptcy Court's subject matter jurisdiction, they cannot challenge it now . . . ."); Optical, 425 F.3d at 30-31 ("The confirmation order is clearly not void as to appellants. Under Chicot County [Drainage District v. Baxter State Bank, 308 U.S. 371 (1940)], because they were parties to the bankruptcy proceedings and could have challenged jurisdiction in the confirmation stage of the case, appellants must demonstrate that they were denied due process in order to challenge the bankruptcy court's jurisdiction collaterally.").

Proctor v. LeClaire, 715 F.3d 402, 414 (2d Cir. 2013). Here, the second requirement -- that an issue be actually decided -- is lacking. See Postlewaite v. McGraw-Hill, Inc., 333 F.3d 42, 48 (2d Cir. 2003) ("If an issue was not actually decided in the prior proceeding, . . . its litigation in a subsequent proceeding is not barred by collateral estoppel."); see also Haring v. Prosise, 462 U.S. 306, 316 (1983) (no collateral estoppel where prior proceeding "did not actually decide against [plaintiff] any issue on which he must prevail in order to establish his . . . claim").

2. Judge Marrero Did Not Actually Decide The Jurisdictional Issue

Judge Marrero believes that he granted full faith and credit to Hausler's Florida State Court judgment, and that he enforced that judgment. As a matter of law, however, Judge Marrero could enforce only Hausler's Florida Federal Judgment. BBVA has raised this issue on its appeal to the Second Circuit in Hausler, which remains undecided.

In this proceeding, BBVA assumes that this Court will not look behind Judge Marrero's ruling, which stated, "The Florida Judgment [was] recognized by the United States District Court for the Southern District of Florida and given full faith and credit by this Court on September 26, 2008 . . . ." Hausler v. JPMorgan Chase Bank, N.A., 845 F. Supp. 2d 553, 558 (S.D.N.Y. 2012). On that date, however, BBVA was not a party to the Hausler litigation. BBVA was joined as a party (by way of interpleader) only on October 29, 2010. See id. at 559.

Accordingly, BBVA was not precluded from challenging the validity of Hausler's Florida State Court judgment. Therefore, pursuant to Judge Marrero's individual rules, BBVA requested a pre-motion conference in connection with its proposed motion for an order vacating the Florida judgments as void (on the ground that the rendering courts lacked subject matter jurisdiction under the FSIA). Judge Marrero, however, "decline[d]" to adjudicate the motion, holding that the "proposed motion is most appropriately addressed to the Florida courts that

entered and confirmed the original judgment." Perkins Decl. Ex. 11 at 1-2. Plainly, Judge Marrero did not decide the issue of subject matter jurisdiction; he did not decide an issue that he declined to decide.

Thus, Petitioners overstate the matter when they say, "Judge Marrero has twice rejected BBVA's collateral attacks on the Hausler judgment[.]" Villoldo/Hausler Br. at 23. In fact, Judge Marrero never actually decided the issue of subject matter jurisdiction when raised by BBVA.

3. Judge Jordan Did Not Actually Decide The Jurisdictional Issue

BBVA then moved in the S.D. Fla., pursuant to FRCP 60(b)(4), asking that court to vacate the Florida judgments.[7] Judge Jordan, however, denied BBVA's motion to vacate as moot, without actually deciding the jurisdictional issue. Perkins Decl. Ex. 18.

Judge Jordan recognized that BBVA "filed a significant amount of documentary evidence that had not been introduced or considered in the underlying proceedings." Id. at 3. Judge Jordan also recognized that the Brennan Declaration and the Government's Statement of Interest "indicat[e] that, according to publicly available congressional hearings, Cuba was placed on the list of state sponsors of terrorism because of the Cuban government's support of revolutionaries

[7] Returning to the S.D.N.Y., BBVA requested a pre-motion conference in connection with its proposed motion to stay the enforcement proceeding in New York pending the disposition of the motion to vacate in the S.D. Fla. Judge Marrero denied that request, stating that "the Court has substantial doubts about the basis for the motion to vacate, or indeed about the good faith reasons for the issue being raised at this late stage of these proceedings." Perkins Decl. Ex. 12 at 3. Judge Marrero, of course, made these statements some ten months before the State Department confirmed the basis for BBVA's motion. See Caruso Decl. Ex. E ¶ 4 (stating that Cuba was designated as a state sponsor of terrorism "specifically because of Cuba's clear support for organizations and groups abroad that used terrorism and revolutionary violence as a policy instrument to undermine existing governments[;]" there is no mention of the killings at issue here). Judge Marrero's doubts about "the good faith reasons for the issue being raised at this late stage of these proceedings[,]" Perkins Decl. Ex. 12 at 3, were both legally and factually insupportable. A motion to vacate may be made at any time. 11 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2862 at 324-25 (2011). In any event, BBVA raised this issue just a few months after it was joined in the interpleader proceeding.

in Latin America." Id. As Judge Jordan stated, "[T]his information may cast a shadow on the cause of Cuba's designation as a state sponsor of terrorism . . . ." Id.

Judge Jordan nevertheless denied the motion to vacate because "the New York district court [Judge Marrero] granted full faith and credit itself to the Florida state judgment, independent of the Southern District [of Florida] judgment [BBVA] now challenge[s]." Id. at 4. Judge Jordan acknowledged that there is no record that Judge Marrero ever actually did grant full faith and credit to the Florida State Judgment:

> The New York district court's order does not provide a record citation to a prior docket entry where full faith and credit was granted to the Florida state court judgment. I have contacted both the New York district court and the Southern District of New York's Clerk's Office to track down the relevant docket entry. . . . [T]hese inquiries did not yield a result . . . .

Id. at 4 n.2.

Judge Jordan nevertheless accepted Judge Marrero's statements:

> [T]he New York district court has indicated that it stands by the language in its March 23, 2012 order [Hausler NY D.E. 530]. As such, it is not for me to go behind that order and I, therefore, accept its assessment that full faith and credit was independently granted to the Florida state court judgment.

Id.

Judge Jordan concluded, "Because the New York district court independently granted full faith and credit to the Florida state court judgment, a decision in favor of [BBVA] in this proceeding will not redress [its] alleged injury, (i.e., the diminution of their interests in the frozen Cuban assets). As such, [it] lack[s] standing to challenge this court's judgment. . . . Accordingly, [BBVA's] motion to vacate the judgment of this court and the plaintiffs' motion to strike are DENIED AS MOOT." Id. at 4.

Thus, again, Petitioners overstate the matter when they say, "Judge Jordan . . . rejected BBVA's attack on the Hausler judgment[.]" Villoldo/Hausler Br. at 24. See also id. at 13-14. Judge Jordan never actually decided whether he had subject matter jurisdiction in the action before him.[8]

4. Conclusion

Neither Judge Marrero nor Judge Jordan "actually decided" the issue of subject matter jurisdiction. Therefore, BBVA is not collaterally estopped from raising it now in this Court.

## POINT V

## PETITIONERS' OTHER CONTENTIONS ARE MERITLESS

### A. BBVA May, But Need Not, Collaterally Attack The Florida Judgments

Petitioners contend that BBVA may not make a "collateral attack" on the Florida State Court Judgments because BBVA "would not be permitted to make a collateral challenge in the courts of the granting state [Florida]." Villoldo/Hausler Brief at 16 (quoting Johnson v. Muelberger, 340 U.S. 581, 587 (1951)). See also Vera Br. at 7. This contention is meritless.

First, BBVA is not necessarily making a collateral attack on the Florida State Court Judgments. In this proceeding, Petitioners seek enforcement of three federal judgments, not any state court judgments. Caruso Decl. Ex. D. (Petition ¶¶ 34-46 and Exhibits 1-3). BBVA is raising a defect in the subject matter jurisdiction of the three federal courts that recognized the Florida State Court Judgments (Hellerstein, Swain and Jordan, JJ.). This Court can grant the

[8] Judge Jordan declined to adjudicate his own subject matter jurisdiction. He saw no need to do so because Judge Marrero supposedly enforced Hausler's Florida State Court Judgment. Here, by contrast, Hausler seeks to enforce her Florida Federal Judgment (entered by Judge Jordan). See Caruso Decl. Ex. D (Petition ¶¶ 34-46 and Exhibits 1-3) (seeking enforcement of the three federal judgments). The Petition here does not seek enforcement of Hausler's Florida State Court Judgment.

relief requested by BBVA (dismissal of the Petition) without addressing the validity of the Florida State Court Judgments.

Second, BBVA merely raises issues that arise under federal law (the FSIA), which BBVA has standing to raise under federal law (the FSIA). See Walters, 651 F.3d at 290-94. To the extent that Florida law is inconsistent with the FSIA, Florida law must yield.

Third, if and to the extent the Florida State Court Judgments are at issue, those judgments would be subject to attack in the courts of Florida because those judgments are void for lack of subject matter jurisdiction. Enforcement of a void state-court judgment would violate due process. Peralta v. Heights Med. Ctr., Inc., 485 U.S. 80, 86 (1988). "A State may not grant preclusive effect in its own courts to a constitutionally infirm judgment . . . . " Kremer v. Chem. Constr. Corp., 456 U.S. 461, 482 & n.23 (1982). See Underwriters, 455 U.S. at 704 & n.10. Where a state court judgment is void for lack of jurisdiction, "there could be no constitutionally recognizable preclusion at all." Kremer, 456 U.S. at 482-83 & n.24. This Court's denial of full faith and credit thus gives the Florida State Court Judgments the "same 'credit, validity and effect' that [they] would receive in a court of the rendering State." Underwriters, 455 U.S. at 705 n.10; see Kremer, 456 U.S. at 482-83; Am. Steel Bldg. Co. v. Davidson & Richardson Constr. Co., 847 F.2d 1519, 1521-22 (11th Cir. 1988) (federal court is "required to review the jurisdictional issues," even though a "Texas court would not allow a collateral attack").[9]

Fourth, if Florida law did not allow a collateral attack, then Florida law would be unconstitutional. In this case, the judgments of the Florida State Courts are constitutionally infirm because those courts lacked subject matter jurisdiction. BBVA would therefore have a

[9] Johnson v. Muelberger, 340 U.S. 581 (1951), cited by Petitioners, held that New York cannot permit an attack on a Florida judgment where Florida would not permit the attack. Johnson is irrelevant where, as here, Florida law would permit the attack on the judgment. And, if Florida law did not permit the attack, then this Court would have to read Johnson in light of the later decisions in Kremer and Underwriters, under which the courts of the rendering state may not give preclusive effect to that state's own constitutionally infirm judgment.

constitutional right, guaranteed by the due process clause, to attack those judgments. See cases cited in preceding paragraph.

B. The Court May Consider The Evidence Submitted By BBVA

There is no merit to Petitioners' contention that this Court may not consider evidence outside the records made in the Florida State Courts. Villoldo/Vera Br. at 17 & n.9. See also id. at 2. No case imposes such a limitation on this Court's examination of its own subject matter jurisdiction. Roeder, 195 F. Supp. 2d. at 159-61 (receiving new evidence when considering subject matter jurisdiction; whether Iran was designated "as a result of" 1979 hostage-taking); see also Thompson v. Whitman, 85 U.S. 457, 468 (1874) (new evidence "admitted to contradict the record as to jurisdictional facts asserted" in the prior judgment); Am. Steel, 847 F.2d at 1522-23 (court reviewed new evidence when considering whether rendering court had personal jurisdiction). See generally Robinson v. Gov't of Malaysia, 269 F.3d 133, 143 (2d Cir. 2001) (describing evidence court may consider regarding subject matter jurisdiction under FSIA).

BBVA, moreover, has a due-process right to a full and fair opportunity to litigate, which includes the right to submit evidence in support of its position. Kremer, 456 U.S. at 483 n.24 ("[A] full and fair opportunity to litigate entails . . . the procedural requirements of due process."); Jenkins v. McKeithen, 395 U.S. 411, 429 (1969) ("The right to present evidence is . . . essential to the fair hearing required by the Due Process Clause."); SEC v. Elliott, 953 F.2d 1560, 1568 (11th Cir. 1992) (claimant has due process right to present evidence). BBVA is not limited to a record made ex parte by a litigant seeking a money judgment in his or her favor -- a record which was necessarily incomplete because it lacked the Brennan Declaration. Petitioners, furthermore, cannot have it both ways; if the burden of persuasion is on BBVA, then Petitioners cannot prevent BBVA from offering evidence to carry that burden.

C. Petitioners' Reliance On Weininger Is Misplaced

Petitioners' reliance on Weininger v. Castro, 462 F. Supp. 2d 457, 476 (S.D.N.Y 2006), is misplaced. Weininger stated that the insufficiency of the evidence in support of "a claim" is not, in itself, a basis for a constitutional attack on a judgment. Here, however, BBVA does not challenge the sufficiency of the evidence in support of Petitioners' "claims." BBVA has submitted evidence showing a lack of subject matter jurisdiction.

Petitioners also cite Weininger, 462 F. Supp. 2d at 477, for the proposition that "it would be acutely inequitable for this Court to assume the task of such a renewed jurisdictional inquiry on its own initiative." Villoldo/Hausler Br. at 26. See also Vera Br. at 8. Here, however, the Court is not proceeding "on its own initiative." It is adjudicating a motion to dismiss made by a party, BBVA, who has not previously had the opportunity to litigate the issue of subject matter jurisdiction and to have that issue actually decided.

CONCLUSION

For the foregoing reasons, the motion to dismiss should be granted.

Dated: New York, New York
December 23, 2013

WHITE & CASE LLP

By: /s/ Kenneth A. Caruso
Kenneth A. Caruso

1155 Avenue of the Americas
New York, New York 10036
Tel: (212) 819-8200

Attorneys for BBVA

Of Counsel:
Kenneth A. Caruso
Patrick M. Wilson