UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALDO VERA, JR., as Personal Representative of the Estate of Aldo Vera, Sr., <br><br> Plaintiff, <br><br> v. <br><br> THE REPUBLIC OF CUBA, <br><br> Defendant. | Case No. 12-CV-01596 (AKH) |
| ALDO VERA, JR., as Personal Representative of the Estate of Aldo Vera, Sr.; and <br><br> JEANNETTE FULLER HAUSLER and WILLIAM FULLER, as court-appointed co-representatives of the ESTATE OF ROBERT OTIS FULLER, deceased, on behalf of all beneficiaries of the Estate and the ESTATE OF ROBERT OTIS FULLER; and <br><br> ALFREDO VILLOLDO, individually, and GUSTAVO E. VILLOLDO, individually and as Administrator, Executor, and Personal Representative of the ESTATE OF GUSTAVO VILLOLDO ARGILAGOS, <br><br> Petitioners, <br><br> v. <br><br> BANCO BILBAO VIZCAYA ARGENTINA (S.A.), et al., <br><br> Garnishees-Respondents. | **THIRD-PARTY PETITION ALLEGING CLAIMS IN THE NATURE OF INTERPLEADER FILED BY JPMORGAN CHASE BANK, N.A.** |

*caption continued on following page*

JPMORGAN CHASE BANK, N.A.,

                Garnishee-Respondent and
                Third-Party Petitioner,

       v.

AT&T INC. and CUBAN-AMERICAN TELEPHONE & TELEGRAPH COMPANY;

EMPRESA DE TELECOMUNICACIONES INTERNACIONALES DE CUBA ("EMTELCUBA"); EMPRESA DE RADIOCOMUNICACIÓN Y DIFUSIÓN DE CUBA ("RADIOCUBA"); EMPRESA DE TELECOMUNICACIONES DE CUBA SA ("ETECSA"); and the REPUBLIC OF CUBA;

ALDO VERA, JR., as Personal Representative of the Estate of Aldo Vera, Sr.;

JEANNETTE FULLER HAUSLER, and WILLIAM FULLER as court-appointed co-representatives of the ESTATE OF ROBERT OTIS FULLER, deceased, on behalf of all beneficiaries of the Estate and the ESTATE OF ROBERT OTIS FULLER; and

ALFREDO VILLOLDO, individually, and GUSTAVO E. VILLOLDO, individually and as Administrator, Executor, and Personal Representative of the ESTATE OF GUSTAVO VILLOLDO ARGILAGOS,

                Adverse Claimants-
                Respondents.

## THIRD-PARTY PETITION ALLEGING CLAIMS
## IN THE NATURE OF INTERPLEADER

Garnishee-Respondent and Third-Party Petitioner JPMorgan Chase Bank, N.A. ("JPMorgan Chase," "Garnishee-Respondent" or "Garnishee-Respondent and Third-Party Petitioner"), by its attorneys Davis Polk & Wardwell LLP, alleges on information and belief as follows in support of its Third-Party Petition Alleging Claims in the Nature of Interpleader ("Third-Party Petition"):

1. Garnishee-Respondent and Third-Party Petitioner brings this Third-Party Petition because it is aware that there are one or more claimants to two of the blocked accounts targeted by Petitioners for turnover who are or may be adverse to Petitioners. Petitioners seek a court order directing JPMorgan Chase to turn over to Petitioners funds held in certain accounts that have been blocked on the books of Garnishee-Respondent in satisfaction of judgments obtained by Petitioners against the Republic of Cuba, Fidel Castro Ruz, Raúl Castro Ruz, and the Cuban Revolutionary Armed Forces (the "Cuban Government Judgment Debtors").

2. AT&T Inc. ("AT&T") and the Cuban American Telephone & Telegraph Company ("CATT") are claimants who are potentially adverse to Petitioners. AT&T has deposited funds into two blocked deposit accounts maintained on the books of JPMorgan Chase that have been targeted for turnover—the "CATT Account" and the "AT&T Long Lines Account"—and that are blocked pursuant to the Cuban Assets Control Regulations, 31 C.F.R. Part 515 (the "CACRs"). AT&T has previously opposed turnover of funds held in the AT&T Long Lines Account pursuant to TRIA in a proceeding entitled *Weininger v. Castro*, 05 Civ. 7214 (VM) (S.D.N.Y.). In addition, as described below, AT&T agreed to turnover of certain funds held in the account while asserting ownership

over the balance remaining in the account following turnover. The CACRs, as amended from time to time, are issued by the Office of Foreign Assets Control ("OFAC") of the U.S. Treasury Department under authority of the Trading with the Enemy Act, 50 U.S.C. App. 5(b) ("TWEA").

3. Upon information and belief, AT&T, which has deposited funds into these accounts and may be deemed a garnishee of the accounts, may have the sole claim to the funds that have been targeted for turnover in the AT&T Long Lines Account, as more fully described in paragraphs 19-26 below. CATT may in turn have a claim to certain funds held in the AT&T Long Lines Account or in the account opened in its name. Certain Cuban agencies or instrumentalities described in paragraphs 32-40 below may also have a claim to the blocked funds.

4. Because it is a disinterested, neutral stakeholder in respect of such blocked accounts and funds, Garnishee-Respondent seeks to place Adverse Claimants-Respondents on notice of the claims being asserted by Petitioners, and to thereby avoid the risk of inconsistent judgments and double or multiple liability. Accordingly, Garnishee-Respondent seeks to interplead the Adverse Claimants-Respondents pursuant to Fed. R. Civ. P. 22, N.Y. C.P.L.R. §§ 5239 and 6221 and Section 134 of the New York Banking Law.

## Jurisdiction and Venue

5. This Court has jurisdiction over this proceeding under 28 U.S.C. § 1332 because Petitioners have alleged a claim under federal law—specifically, the Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297; 116 Stat. 2337, codified at 28 U.S.C § 1610 Note ("TRIA"). This Court also has jurisdiction over this proceeding under 28 U.S.C. § 1330 because Petitioners have brought an action against a foreign state

to enforce a judgment against a foreign state as defined in Section 1603(a) of the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. 1602 *et seq.* (the "FSIA"). Moreover, this Court has jurisdiction over this proceeding under 12 U.S.C. § 632 because it is a suit to which a corporation organized under the laws of the United States is a party, and that arises out of transactions involving international or foreign banking. Finally, this Court has supplemental jurisdiction over these interpleader claims pursuant to 28 U.S.C. § 1367(a) because they form part of the same case or controversy as Petitioners' claims.

6. Venue in respect of the Third-Party Petition is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

**Background**

7. The Vera, Villoldo and Hausler Petitioners (collectively, the "Petitioners") seek to enforce judgments against the Cuban Government Judgment Debtors.

8. Petitioner Aldo Vera, Jr. ("Vera") is a citizen of the State of Florida, and is the executor and personal representative of the Estate of Aldo Vera, Sr. Petitioner Vera holds a judgment against the Republic of Cuba for the alleged extra-judicial killing of Aldo Vera, Sr. on American soil that was entered in the State of Florida, and given recognition by this Court in a judgment entered in this Court on August 17, 2012 against the Republic of Cuba.

9. Alfredo Villoldo, individually, and Gustavo E. Villoldo, individually and as the administrator, executor and personal representative of the Estate of Gustavo Villoldo Argilagos (the "Villoldos"), are also Petitioners in this matter. On August 19, 2011, the Villoldos obtained a judgment against the Republic of Cuba from a Florida State Court for $2,790,000,000 pursuant to 28 U.S.C. § 1605A (the "Villoldo Florida Judgment"). The Villoldo Florida Judgment provides that it was issued for economic loss,

3

punitive damages, intentional infliction of emotional distress, and wrongful death as a result of the acts of terrorism and torture allegedly committed against their father, Gustavo Villoldo Argilagos, as well as against the Villoldos themselves, acts allegedly starting in January 1959 and continuing through mid-2003. On October 25, 2012, this Court entered a judgment against Cuba based on the Villoldo Florida Judgment in the amount of $2,903,233,898.07.

10.  Petitioners Jeannette Fuller Hausler and William Fuller (the "Hausler Petitioners") are court-appointed co-representatives of the Estate of Robert Otis Fuller. Judgment for the Hausler Petitioners was initially entered in a Florida state court by default based on allegations of terrorism that included the torture and extra-judicial killing of Robert Otis Fuller in April 1961. The Florida state court judgment was subsequently recognized by the United States District Court for the Southern District of Florida. On or about September 24, 2008, a judgment in favor of the Hausler Petitioners was registered in this Court.

11.  At the request of Petitioners, the U.S. Marshal has served writs of execution on Garnishee-Respondent from time to time in an effort to satisfy their judgments by seeking execution pursuant to TRIA and/or the FSIA against any property of the Republic of Cuba or any of its agencies or instrumentalities that has been blocked pursuant to the CACRs.

12.  On or about September 9, 2013, Petitioners filed and served an Omnibus Petition for Turnover Order that did not identify any specific accounts that were being made subject to turnover. On or about February 12, 2014, Petitioners filed an Amended Omnibus Petition for Turnover Order (the "Amended Turnover Petition") that included exhibits, filed under seal, that identified accounts on the books of the Garnishee-

Respondents, including the AT&T Long Lines Account and the CATT Account described at paragraphs 19-26 below. The Amended Turnover Petition was brought pursuant to Section 201(a) of TRIA and Section 1610(g) of the FSIA.

### Ownership Is an Essential Predicate to Execution

13.  Section 201(a) of TRIA provides the requirements of ownership as a prerequisite to execution as follows (emphasis added):

> [I]n every case in which a person has obtained a judgment against a terrorist party or a claim based on an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, <u>the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution</u> in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

14.  Section 1610(g)(1) of the FSIA provides as follows:

> **In general.**—Subject to paragraph (3), [T]he property of a foreign state against which a judgment is entered under section 1605A, and the property of an agency or instrumentality of such a state, including property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity, is subject to attachment in aid of execution, and execution, upon that judgment as provided in this section, regardless of—
>
>> (A) the level of economic control over the property by the government of the foreign state;
>>
>> (B) whether the profits of the property go to that government;
>>
>> (C) the degree to which officials of that government manage the property or otherwise control its daily affairs;
>>
>> (D) whether that government is the sole beneficiary in interest of the property; or
>>
>> (E) whether establishing the property as a separate entity would entitle the foreign state to benefits in United States courts while avoiding its obligations.

5

15.     Section 1610(g)(3) of the FSIA provides as follows:

**Third-party joint property holders.**—Nothing in this subsection shall be construed to supersede the authority of a court to prevent appropriately the impairment of an interest held by a person who is not liable in the action giving rise to a judgment in property subject to attachment in aid of execution, or execution, upon such judgment.

16.     Pursuant to the governing provisions of TRIA and the FSIA, as well as fundamental principles of execution law, the funds held in the AT&T Lines Account and the CATT Account are subject to turnover to Petitioners only if the Republic of Cuba or an agency or instrumentality of the Republic of Cuba, against which judgment has been entered, has a sustainable claim of ownership to the funds.

17.     Petitioners have alleged that the accounts targeted for turnover have been frozen pursuant to the CACRs due to some connection to agencies or instrumentalities of Cuba within the meaning of TRIA and Section 1610(g) of the FSIA that renders the property held in these accounts available for execution. Petitioners generally allege, therefore, that these blocked accounts are subject to turnover under Section 201(a) of TRIA, Section 1610(g) of the FSIA, and the laws of the State of New York governing execution.

18.     In two pending appeals in the United States Court of Appeals for the Second Circuit, the Second Circuit will decide under what circumstances a terrorist state judgment debtor has an "ownership interest" in blocked wire transfer proceeds such that a party holding a judgment enforceable under TRIA, 28 U.S.C. § 1610 Note, or under Section 1610(g)(1) of the FSIA, is entitled to enforce its judgments against such blocked assets. The two pending cases are *Hausler v. JPMorgan Chase Bank, N.A.*, Nos. 12-1264(L) and 12-1277 (2d Cir.), and *Calderon-Cardona v. JPMorgan Chase Bank, N.A.*, 12-75 (L) (2d Cir.) (oral argument held on February 11, 2013). In *Calderon-Cardona*,

6

the district court held that ownership was a prerequisite to execution, and that ownership should be determined by reference to Article 4A of the Uniform Commercial Code. *Calderon-Cardona v. JPMorgan Chase Bank, N.A.*, 867 F. Supp. 2d 389, 400-01 (S.D.N.Y. 2011). In *Hausler*, the court held that ownership was not required, and that all proceeds of electronic funds transfers blocked pursuant to the CACRs were available for execution. *Hausler v. JPMorgan Bank, N.A.*, 845 F. Supp. 2d 553, 577-78 (S.D.N.Y. 2012); *accord Levin v. Bank of New York*, No. 09 Civ. 5900, 2013 WL 5312502, at *8 (S.D.N.Y. Sept. 23, 2013). Oral argument in these appeals was heard by the Second Circuit on February 11, 2013, and the appeals remain undecided.

**The AT&T and CATT Accounts That Have Been Targeted for Turnover**

19. As indicated above, the AT&T Long Lines Account was previously the subject of a turnover proceeding brought pursuant to TRIA in *Weininger v. Castro*, 05 Civ. 7214 (VM) (S.D.N.Y.).

20. The *Weininger* turnover proceeding was initially brought against JPMorgan Chase, as Garnishee, and JPMorgan Chase ultimately filed a third-party petition alleging claims in the nature of interpleader against adverse claimants-respondents with potential claims to the funds held in the account.

21. In response to the third-party petition, AT&T stated that certain of the funds then on deposit in the AT&T Long Lines Account represented telecommunications settlement payments owed by CATT to Empresa de Telecomunicaciones Internacionales de Cuba ("EMTEL-Cuba") and by AT&T to CATT, as well as payments on taxes owed by CATT to the Republic of Cuba. While AT&T followed this practice historically, this practice may have been terminated following the *Weininger* litigation.

22. On April 10, 2006, following preliminary pretrial procedures, the Court so-ordered a stipulation entered into by the *Weininger* petitioners and AT&T that provided that the plaintiffs would not seek to recover or otherwise challenge AT&T's and/or CATT's claimed entitlement to approximately $6,332,843.49 then held in the AT&T Long Lines Account. *See* Stipulation of Agreement and Order Concerning Certain Funds in the Blocked Accounts, *Weininger v. Castro*, No. 05 Civ. 7214 (VM) (S.D.N.Y. Apr. 10, 2006) (Dkt. No. 152).

23. Pursuant to a stipulation so-ordered by the Court on November 27, 2006, the amount set forth in the April 10, 2006 stipulation and order was adjusted downward, and funds aggregating $6,157.179.76, plus interest thereon from September 30, 2005, were withheld from turnover as amounts due solely to AT&T, or as amounts held in the account solely for the benefit of CATT, or as amounts owed by AT&T to CATT.

24. At the conclusion of the litigation, funds aggregating $23,662,385.65 were turned over to the petitioners from the AT&T Long Lines Account pursuant to TRIA.

25. Based on the orders issued in the *Weininger* litigation, including the orders entered on April 10, 2006 and November 27, 2006, the balance that remains in the AT&T Long Lines Account in favor of AT&T would appear to represent, on information and belief, a deposit debt owed solely to AT&T.

26. Because the CATT Account was not the subject of a turnover application in *Weininger*, Garnishee-Respondent JPM Chase has no specific information with respect to the composition of funds in the CATT Account except to the extent the account was opened solely in the name of CATT.

8

## The Parties to the Joint Third-Party Petition

**The Petitioners**

27. The Petitioners, the claims giving rise to the judgments they seek to enforce against the Cuban Government Parties, the judgments, and the steps the Petitioners have taken to enforce their judgments, are described in paragraphs 8-12 above.

**The Garnishee-Respondent and Third-Party Petitioner**

28. JPMorgan Chase is a national bank incorporated under the laws of the United States with its head office located in Columbus, Ohio and with branch offices located in this district. JPMorgan Chase maintains certain accounts on its books, including certain of the blocked accounts that are the subject of the Amended Turnover Petition and against which Petitioners have directed the U.S. Marshal to levy writs of execution.

**AT&T and CATT**

29. As indicated above, AT&T and CATT are Adverse Claimants-Respondents other than Petitioners that have direct claims to the AT&T Long Lines Account and the CATT Account held in their respective names. AT&T, CATT and the accounts that have been made subject to turnover are described in paragraphs 19-26 above.

30. AT&T is a corporation organized and existing under the laws of the State of New York with its principal place of business located at 900 Routes 202/206, North Bedminster, New Jersey 07921. AT&T has paid funds into both the AT&T Long Lines Account and the CATT Account.

31. Upon information and belief, Cuban-American Telephone & Telegraph Company ("CATT," as previously defined) is a wholly owned subsidiary of AT&T

9

organized and existing under Cuban law. On information and belief, AT&T historically deposited monies for the account of CATT into one or more blocked accounts with JPMorgan Chase, including the AT&T Long Lines Account and the CATT Account, a practice that may have ended with the *Weininger* litigation.

**Agencies or Instrumentalities of the Republic of Cuba That May Have an Interest in the AT&T Long Lines Account and the CATT Account**

32. In the Amended Turnover Petition, Petitioners allege that the accounts maintained on the books of JPMorgan Chase are "blocked assets" within the meaning of Section 201 of TRIA because they were frozen pursuant to regulations issued under the authority of Section 5(b) of the Trading with the Enemy Act, 50 U.S.C. App. § 5(b). Thus, according to Petitioners, "they are attachable 'blocked assets' under the TRIA and subject to execution to the extent they are blocked assets of Cuba or of an agency or instrumentality of Cuba." (Amended Turnover Petition at 7 n.2.)

33. Petitioners do not identify with specificity, or even generally, either in the Amended Turnover Petition or in the exhibits attached thereto and filed under seal, which Cuban agency or instrumentality has a connection to these particular blocked accounts, much less the ownership interest that would permit turnover.

34. Garnishee-Respondent alleges that it is the Petitioners' burden to show that the Republic of Cuba, or a Cuban agency or instrumentality, in fact has an executable interest in any blocked accounts subject to turnover.

35. Upon information and belief, which information and belief is based principally on statements made on behalf of AT&T and CATT and orders entered in the Weininger litigation, the only parties that could have claims to funds in the AT&T Long

Lines Account and the CATT Account are EMTEL-Cuba, the successors in interest to EMTEL-Cuba, or the Republic of Cuba.

36. Third-Party Adverse Claimant-Respondent EMTEL-Cuba is or was, on information and belief, a juridical entity organized under Cuban law with its principal offices in Havana, Cuba. On information and belief, EMTEL-Cuba was organized in 1976 under the laws of Cuba as the successor to Empresa de Telecomunicaciones de Cuba. On information and belief, EMTEL-Cuba was responsible for the operation of the Cuban telephone system prior to 1994, and was ultimately succeeded by RADIOCUBA, as defined below.

37. On information and belief, Third-Party Adverse Claimant-Respondent Empresa de Radiocomunicación y Difusión de Cuba ("RADIOCUBA") is or was a juridical entity organized under Cuban law to provide radio communication services and to manage, control, operate and market radio, television, mobile maritime and mobile land communications. RADIOCUBA, which has maintained its offices in Havana, Cuba, was, on information and belief, created in 1995 by the merger of three enterprises, one of which was EMTEL-Cuba.

38. On information and belief, Third-Party Adverse Claimant-Respondent Empresa de Telecomunicaciones de Cuba SA ("ETECSA") is a legal entity incorporated under the laws of Cuba as a mixed enterprise with an independent legal personality. On information and belief, in 1995, international telecommunications carriers that had previously entered into operating agreements with EMTEL-Cuba for the provision of telecommunications services between Cuba and the United States, either arranged to transfer the rights and obligations of EMTEL-Cuba under these agreements to ETECSA, or otherwise independently negotiated new operating agreements with ETECSA.

11

39. Upon information and belief, EMTEL-Cuba, RADIOCUBA, and ETECSA are agencies and instrumentalities of Cuba.

40. The Republic of Cuba is a foreign state within the meaning of the FSIA.

41. AT&T, as the party which made payments into this account, and CATT, which may have been the intended beneficiary of some or all of such payments, would appear to be the only parties in position to identify and quantify the respective interests of such parties in this blocked account, if any.

**The Need for Interpleader Relief**

42. The Amended Turnover Petition seeks the turnover of property in which Adverse Claimants-Respondents have or may have a property interest. Garnishee-Respondent has filed this Third-Party Petition in order to bring before the Court known parties with claims to these funds and to obtain a discharge in interpleader.

43. Under these circumstances, where there may be conflicting claims to funds held by a Garnishee-Respondent, thereby exposing it to the risk of double or multiple liability, federal and state law recognize a Garnishee-Respondent as a disinterested or neutral stakeholder, and provide mechanisms for it to bring before the court any person or adverse claimant with a claim to the same funds who may not already be party to the action. *See* Fed. R. Civ. P. 22, CPLR §§ 5239 and 6221 and Section 134 of the New York Banking Law.

44. Garnishee-Respondent takes no position on the entitlement of Petitioners to execute on the default judgments held against the Republic of Cuba, or on the defenses that any of the other Adverse Claimants-Respondents may have against such execution.

45. Garnishee-Respondent further believes that to the extent any of the Adverse Claimant-Respondents appear, or do not appear, this Court may adjudicate

ownership rights under the blocked accounts, and such adjudication will permit Garnishee-Respondents to be relieved of further liability.

## THE THIRD-PARTY PETITIONER'S
## PRAYER FOR RELIEF

WHEREFORE, Garnishee-Respondent JPMorgan Chase respectfully requests that the Court enter judgment determining:

(a) the specific identification of any blocked funds being made subject to attachment, attachment in aid of execution, execution, or turnover, the amount of any blocked funds to be turned over pursuant to any execution or turnover order, and the identity of the party, or parties, if any, to whom such turnover is to be made;

(b) that the blocked assets against which turnover is ordered consist of the blocked assets of the Republic of Cuba or an agency or instrumentality of the Republic of Cuba, and that TRIA or the FSIA allows the blocked property to be executed against to satisfy a judgment against the Cuban Government judgment debtors for compensatory damages, in the case of TRIA or for compensatory and punitive damages in the case of the FSIA in respect of a judgment entered pursuant to 28 U.S.C. §1605A, irrespective of whether it would otherwise be immune from attachment, attachment in aid of execution, or execution;

(c) that each judgment as to which turnover is ordered is (i) against the Republic of Cuba as a terrorist party on a claim based on an act of terrorism within the meaning of TRIA, or (ii) based on a claim in respect of an act of terrorism for which a terrorist party is not immune under 28 U.S.C. § 1605(a)(7) or 28 U.S.C. § 1605A;

(d) that the amount of each judgment entered under 28 U.S.C. § 1605(a)(7) as to which turnover is ordered, including interest and any poundage, is solely for compensatory, not punitive, damages in respect of which the terrorist party has been adjudged liable inasmuch as Section 201(a) of TRIA only permits execution upon blocked assets in aid of execution in order to satisfy a judgment "to the extent of any compensatory damage for which [a] terrorist party has been adjudged liable";

(e) that, in respect of each judgment entered against a terrorist party by default, (i) a copy of each such default judgment was sent to the foreign state in a manner provided for by 28 U.S.C. §§ 1608(a) and (e), (ii) each Petitioner served the Cuban Government judgment debtors in accordance with 28 U.S.C. § 1608(a), to the extent service of the same is held necessary, and (iii) a reasonable period of time has elapsed following entry of said judgments and the giving of any notice to the Cuban Government judgment debtors required under 28 U.S.C. § 1608(3);

(f) that, to the extent TRIA or the FSIA is not relied upon as a basis for turnover, any turnover has been licensed by OFAC, and the blocked funds against which turnover is ordered consist of blocked property of a judgment debtor or property in which a judgment debtor has an attachable or executable property interest within the meaning of applicable attachment and execution law, and is not immune from execution within the meaning of the Foreign Sovereign Immunities Act of 1976 or of the Vienna Convention on Diplomatic Relations or of the Vienna Convention on Consular Relations;

(g) that the blocked funds against which turnover is ordered do not consist of blocked property in respect of which a waiver of the provisions of TRIA has been made by the President of the United States with respect thereto within the meaning of Section 201(b)(1) of TRIA;

(h) that, upon the compliance by the Garnishee-Respondent with any order of turnover, the Garnishee-Respondent is and shall be discharged under N.Y. C.P.L.R. §§ 5209 and 6204 from any further liability or obligation to any parties with an interest in the blocked funds, or to any other party, in respect of any amount so turned over, as well as discharged in interpleader pursuant to Rule 22 of the Federal Rules of Civil Procedure and Section 134 of the Banking Law of the State of New York, in respect of any adverse claimants to be named in any third-party petition;

(i) that, to the extent the Garnishee-Respondent is ordered to hold, pending further order of the Court, or to pay into the registry of the Court upon issuance of a license by OFAC permitting such payment, any amount of a blocked deposit representing a blocked deposit debt owed to the Cuban Government judgment debtors or to an agency or instrumentality of the Republic of Cuba, the Garnishee-Respondent shall be fully discharged pursuant to N.Y. C.P.L.R. §§ 5209 and 6204, as applicable, and discharged as well in interpleader pursuant to Rule 22 of the Federal Rules of Civil Procedure and Section 134 of the Banking Law of the State of New York in respect of any adverse claimant to be named in any third-party petition, from any and all obligations or liabilities to the Republic of Cuba, to any agency or instrumentality of the Republic of Cuba otherwise entitled to the deposit, to any other party with an interest in any blocked funds, or to any other party, to the full extent of such amount so held subject to further order of the Court, or paid over into the registry of the Court;

(j) that, to the extent any Garnishee-Respondent turns over to Petitioners any property owned, not by the Republic of Cuba or an agency or instrumentality of the Republic of Cuba, either the Garnishee-Respondent in question or the rightful owner of the property shall be entitled to seek its return from Petitioners; and

(k) that JPMorgan Chase be awarded its reasonable attorneys' fees and costs incurred in responding to Petitioners' enforcement efforts, such award to be paid out of any amount turned over pursuant to the Amended Turnover Petition, as well as such other and further relief as may be appropriate.

Dated: New York, New York
May 6, 2014

DAVIS POLK & WARDWELL LLP

By: /s/ James L. Kerr
James L. Kerr

**Of Counsel**
Karen E. Wagner
Daniel T. Young

450 Lexington Avenue
New York, New York 10017
(212) 450-4552
james.kerr@davispolk.com

*Attorneys for Garnishee-Respondent and Third-Party Petitioner JPMorgan Chase Bank, N.A.*