UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALDO VERA, JR., as Personal Representative of the Estate of Aldo Vera, Sr.,<br><br>Plaintiff,<br><br>v.<br><br>THE REPUBLIC OF CUBA,<br><br>Defendant. | Case No. 12-CV-01596 (AKH) |
| ALDO VERA, JR., as Personal Representative of the Estate of Aldo Vera, Sr.; and<br><br>JEANNETTE FULLER HAUSLER and WILLIAM FULLER, as court-appointed co-representatives of the ESTATE OF ROBERT OTIS FULLER, deceased, on behalf of all beneficiaries of the Estate and the ESTATE OF ROBERT OTIS FULLER; and<br><br>ALFREDO VILLOLDO, individually, and GUSTAVO E. VILLOLDO, individually and as Administrator, Executor, and Personal Representative of the ESTATE OF GUSTAVO VILLOLDO ARGILAGOS,<br><br>Petitioners,<br><br>v.<br><br>BANCO BILBAO VIZCAYA ARGENTINA (S.A.), et al.,<br><br>Garnishees-Respondents. | **THIRD-PARTY PETITION ALLEGING CLAIMS IN THE NATURE OF INTERPLEADER FILED BY CITIBANK, N.A.** |

*caption continued on following page*

CITIBANK, N.A.,

> Garnishee-Respondent and
> Third-Party Petitioner,

v.

LUCIA SCHUEG NIELSEN and her HEIRS and
ASSIGNS; EDWIN H. NIELSEN, as Executor of the
Estate of Victor H. Schueg; ENRIQUETA SCHUEG
BOSCH and her HEIRS and ASSIGNS; UNKNOWN
JOHN DOE SHAREHOLDERS OF ACUEDUCTO
YATERITAS, S.A. and their HEIRS and ASSIGNS;
ACUEDUCTO YATERITAS, S.A., and its successor-in-
interest, if any; and THE REPUBLIC OF CUBA, or its
designee to the extent it or its designee is the successor-
in-interest to Acueducto Yateritas, S.A.;

ALDO VERA, JR., as Personal Representative
of the Estate of Aldo Vera, Sr.;

JEANNETTE FULLER HAUSLER and WILLIAM
FULLER, as court-appointed co-representatives of the
ESTATE OF ROBERT OTIS FULLER, deceased, on
behalf of all beneficiaries of the Estate and the ESTATE
OF ROBERT OTIS FULLER; and

ALFREDO VILLOLDO, individually, and
GUSTAVO E. VILLOLDO, individually and as
Administrator, Executor, and Personal
Representative of the ESTATE OF GUSTAVO
VILLOLDO ARGILAGOS,

> Adverse Claimants-
> Respondents.

## THIRD-PARTY PETITION ALLEGING CLAIMS
## IN THE NATURE OF INTERPLEADER

Garnishee-Respondent and Third-Party Petitioner Citibank, N.A. ("Citibank,"

"Garnishee-Respondent" or "Garnishee-Respondent and Third-Party Petitioner"), by its

attorneys Davis Polk & Wardwell LLP, alleges on information and belief as follows in

support of its Third-Party Petition Alleging Claims in the Nature of Interpleader ("Third-

Party Petition"):

1.      Garnishee-Respondent and Third-Party Petitioner brings this Third-Party

Petition because it is aware that there are claimants to the blocked account targeted for

turnover by the above-captioned Petitioners who are or may be adverse to Petitioners.

Petitioners seek a court order directing Garnishee-Respondent Citibank to turn over to

Petitioners funds held in an account that has been blocked on the books of Garnishee-

Respondent in satisfaction of judgments obtained by Petitioners against the Republic of

Cuba, Fidel Castro Ruz, Raúl Castro Ruz, and the Cuban Revolutionary Armed Forces

(the "Cuban Government Judgment Debtors").

2.      Claimants who are potentially adverse to Petitioners include parties who

have previously asserted claims to funds held in an account on the books of Citibank in

the name of Acueducto Yateritas, S.A. ("Acueducto") in their capacity as shareholders of

Acueducto.  This account has been blocked pursuant to the Cuban Assets Control

Regulations, 31 C.F.R. Part 515 (the "CACRs").  Such shareholders should be given

notice and brought into this proceeding before any funds held in this account are turned

over to Petitioners as assets of the Republic of Cuba or an agency or instrumentality of

the Republic of Cuba.  The CACRs, as amended from time to time, are issued by the

Office of Foreign Assets Control ("OFAC") of the U.S. Treasury Department under

authority of the Trading with the Enemy Act, 50 U.S.C. App. 5(b) ("TWEA").

3.      The individuals and entities with potential claims to funds in the blocked Acueducto Yateritas, S.A. account are identified in paragraphs 25-30 below.

4.      Because it is a disinterested, neutral stakeholder in respect of such blocked accounts and funds, Garnishee-Respondent seeks to place all of the above-captioned Adverse Claimants-Respondents on notice of the claims being asserted by Petitioners, and to thereby avoid the risk of inconsistent judgments and double or multiple liability. Accordingly, Garnishee-Respondent seeks to interplead all Adverse Claimants-Respondents pursuant to Fed. R. Civ. P. 22, N.Y. C.P.L.R. §§ 5239 and 6221 and Section 134 of the New York Banking Law.

### Jurisdiction and Venue

5.      This Court has jurisdiction over this proceeding under 28 U.S.C. § 1331 because Petitioners have alleged a claim under federal law—specifically, the Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297; 116 Stat. 2337, codified at 28 U.S.C § 1610 Note ("TRIA"). This Court also has jurisdiction over this proceeding under 28 U.S.C. § 1330 because Petitioners have brought an action against a foreign state to enforce a judgment against a foreign state as defined in Section 1603(a) of the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. 1602 *et seq.* (the "FSIA"). Moreover, this Court has jurisdiction over this proceeding under 12 U.S.C. § 632 because it is a suit to which a corporation organized under the laws of the United States is a party, and that arises out of transactions involving international or foreign banking. Finally, this Court has supplemental jurisdiction over these interpleader claims pursuant to 28 U.S.C. § 1367(a) because they form part of the same case or controversy as Petitioners' claims.

6.      Venue in respect of the Third-Party Petition is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

## Background

7.     The Vera, Villoldo and Hausler Petitioners (collectively, the "Petitioners") seek to enforce judgments against the Cuban Government Judgment Debtors.

8.     Petitioner Aldo Vera, Jr. ("Vera") is a citizen of the State of Florida, and is the executor and personal representative of the Estate of Aldo Vera, Sr. Petitioner Vera holds a judgment against the Republic of Cuba for the alleged extra-judicial killing of Aldo Vera, Sr. on American soil that was entered by a Florida state court, and given recognition by this Court in a judgment entered in this Court on August 17, 2012, against the Republic of Cuba.

9.     Alfredo Villoldo, individually, and Gustavo E. Villoldo, individually and as the administrator, executor and personal representative of the Estate of Gustavo Villoldo Argilagos (the "Villoldos"), are also Petitioners in this matter. On August 19, 2011, the Villoldos obtained a judgment against the Republic of Cuba from a Florida state court for $2,790,000,000 pursuant to 28 U.S.C. § 1605A (the "Villoldo Florida Judgment"). The Villoldo Florida Judgment provides that it was issued for economic loss, punitive damages, intentional infliction of emotional distress, and wrongful death as a result of the acts of terrorism and torture allegedly committed against their father, Gustavo Villoldo Argilagos, as well as against the Villoldos themselves, which allegedly started in January 1959 and continued through mid-2003. On October 25, 2012, this Court entered a judgment against Cuba based on the Villoldo Florida Judgment in the amount of $2,903,233,898.07.

10.     Petitioners Jeannette Fuller Hausler and William Fuller (the "Hausler Petitioners") are court-appointed co-representatives of the Estate of Robert Otis Fuller. Judgment for the Hausler Petitioners was initially entered in a Florida state court by

default based on allegations of terrorism that included the torture and extra-judicial

killing of Robert Otis Fuller in April 1961. The Florida state court judgment was

subsequently recognized by the United States District Court for the Southern District of

Florida. On or about September 24, 2008, a judgment in favor of the Hausler Petitioners

was registered in this Court.

11.      At the request of the Petitioners, the U.S. Marshal has served writs of

execution on Garnishee-Respondent from time to time in an effort to satisfy their

judgments by seeking execution pursuant to TRIA and/or the FSIA against any property

of the Republic of Cuba or any of its agencies or instrumentalities that has been blocked

pursuant to the CACRs.

12.      On or about September 9, 2013, Petitioners filed and served an Omnibus

Petition for Turnover Order that did not identify any specific accounts that were being

made subject to turnover. On or about February 12, 2014, Petitioners filed an Amended

Omnibus Petition for Turnover Order (the "Amended Turnover Petition") that included

exhibits, filed under seal, that identified accounts on the books of the Garnishee-

Respondents that were blocked pursuant to the CACRs. The Amended Turnover Petition

was brought pursuant to Section 201(a) of TRIA and Section 1610(g) of the FSIA.

### Ownership is an Essential
### Predicate to Execution

13.      Section 201(a) of TRIA provides the requirements of ownership as a

prerequisite to execution as follows (emphasis added):

> [I]n every case in which a person has obtained a judgment against a
> terrorist party or a claim based on an act of terrorism, or for which a
> terrorist party is not immune under section 1605(a)(7) of title 28, United
> States Code, the blocked assets of that terrorist party (including the
> blocked assets of any agency or instrumentality of that terrorist party)
> shall be subject to execution or attachment in aid of execution in order to

4

satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

14.    Section 1610(g)(1) of the FSIA provides as follows:

**In general.**—Subject to paragraph (3), [T]he property of a foreign state against which a judgment is entered under section 1605A, and the property of an agency or instrumentality of such a state, including property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity, is subject to attachment in aid of execution, and execution, upon that judgment as provided in this section, regardless of—

(A) the level of economic control over the property by the government of the foreign state;

(B) whether the profits of the property go to that government;

(C) the degree to which officials of that government manage the property or otherwise control its daily affairs;

(D) whether that government is the sole beneficiary in interest of the property; or

(E) whether establishing the property as a separate entity would entitle the foreign state to benefits in United States courts while avoiding its obligations.

15.    Section 1610(g)(3) of the FSIA provides as follows:

**Third-party joint property holders.**—Nothing in this subsection shall be construed to supersede the authority of a court to prevent appropriately the impairment of an interest held by a person who is not liable in the action giving rise to a judgment in property subject to attachment in aid of execution, or execution, upon such judgment.

16.    Pursuant to the governing provisions of TRIA and the FSIA, as well as fundamental principles of execution law, the proceeds of the account at issue here are subject to turnover to Petitioners only if the Republic of Cuba or an agency or instrumentality of the Republic of Cuba, against which judgment has been entered, has a sustainable claim of ownership to the funds.

17.    Petitioners allege generally that because all of the accounts they have targeted for turnover have been frozen pursuant to the CACRs because of some

5

unspecified connection to the Republic of Cuba or agencies or instrumentalities of the Republic of Cuba, the property held in these accounts is rendered available for execution within the meaning of TRIA and Section 1610(g) of the FSIA. Petitioners conclude, therefore, that the blocked accounts are subject to turnover under Section 201(a) of TRIA, Section 1610(g) of the FSIA, and the laws of the State of New York governing execution.

18.     In two pending appeals in the United States Court of Appeals for the Second Circuit, the Second Circuit will decide under what circumstances a terrorist state judgment debtor has an "ownership interest" in blocked wire transfer proceeds such that a party holding a judgment enforceable under TRIA, 28 U.S.C. § 1610 Note, or under Section 1610(g)(1) of the FSIA, is entitled to enforce its judgments against such blocked assets. The two pending cases are *Hausler v. JPMorgan Chase Bank, N.A.*, Nos. 12-1264(L) and 12-1277 (2d Cir.), and *Calderon-Cardona v. JPMorgan Chase Bank, N.A.*, 12-75 (L) (2d Cir.) (oral argument held on February 11, 2013). In *Calderon-Cardona*, the district court held that ownership was a prerequisite to execution, and that ownership should be determined by reference to Article 4A of the Uniform Commercial Code. *Calderon-Cardona v. JPMorgan Chase Bank, N.A.*, 867 F. Supp. 2d 389, 400-01 (S.D.N.Y. 2011). In *Hausler*, the court held that ownership was not required, and that all proceeds of electronic funds transfers blocked pursuant to the CACRs were available for execution. *Hausler v. JPMorgan Bank, N.A.*, 845 F. Supp. 2d 553, 577-78 (S.D.N.Y. 2012); *accord Levin v. Bank of New York*, No. 09 Civ. 5900, 2013 WL 5312502, at *8 (S.D.N.Y. Sept. 23, 2013). Oral argument in these appeals was heard by the Second Circuit on February 11, 2013, and the appeals remain undecided.

6

**The Acueducto Account**

19.     Upon information and belief, Acueducto is or was a corporation organized under the laws of the Republic of Cuba.  In 1937, Acueducto entered into a long-term contract with the United States Navy to supply fresh water to the Guantanamo Naval Base in Cuba.  The corporation continued to operate the water supply service for the Navy even after the Cuban Revolution.  *See Nielsen v. Secretary of the Treasury*, 424 F.2d 833, 835-36 (D.C. Cir. 1970).

20.     While it is unclear whether the Republic of Cuba expropriated and closed Acueducto, the United States Navy, upon information and belief, determined that it was indebted to Acueducto for services rendered between November 1963 and February 1964. *See Nielsen*, 424 F.2d at 835-36.

21.     Upon information and belief, in October 1965, the United States Navy agreed to settle this obligation by returning a $20,000 contract performance bond to the company, and by paying $34,450.20 to Acueducto.  That payment was made, on information and belief, by depositing funds in the amount of $34,450.20 into an account in the name of Acueducto at First National City Bank, which was the predecessor-in-interest to Garnishee-Respondent Citibank.  This account has since remained blocked pursuant to the CACRs. *See Nielsen*, 424 F.2d at 836.

22.     This Acueducto account still remains on the books of Citibank.

**The Parties to the Joint Third-Party Petition**

**The Petitioners**

23.     The Petitioners, the claims giving rise to the judgments they seek to enforce against the Cuban Government Parties, the judgments, and the steps the Petitioners have taken to enforce their judgments, are described in paragraphs 7-12 above.

7

**The Garnishee-Respondent and Third-Party Petitioner**

24.     Citibank is a national bank incorporated under the laws of the United
States with its head office located in Sioux Falls, South Dakota, and with branch offices
in this district.  Citibank maintains various accounts on its books, including the blocked
accounts that are the subject of the Amended Turnover Petition and against which
Petitioners have directed the U.S. Marshal to levy writs of execution.

**The Shareholder Adverse-Claimants to the Acueducto Account**

25.     Upon information and belief, Lucia Schueg Nielsen, Edwin H. Nielsen, as
executor of the Estate of Victor H. Schueg, and Enriqueta Schueg Bosch are or were
Cuban refugees and principal shareholders of Acueducto (collectively, the "Acueducto
Shareholders").  Collectively, the Acueducto Shareholders owned 750 of Acueducto's
1000 shares of outstanding common stock when they left Cuba with their families in
August and September of 1960 "to avoid the consequences of residing in Cuba under the
Castro regime."  Lucia Schueg Nielsen became a resident of Costa Rica, Victor H.
Schueg became a resident of Puerto Rico, and Enriqueta Schueg Bosch became a resident
of the Bahamas.  *See Nielsen*, 424 F.2d at 835-36 & n.1.  The current locations of the
Acueducto Shareholders, or their heirs and assigns, are unknown.

26.     In or around 1967, the Acueducto Shareholders asserted their right to the
funds in the Acueducto account and sought their turnover.  *See generally Nielsen*, 424
F.2d 833.  In 1970, the U.S. Court of Appeals for the D.C. Circuit denied their request for
relief and affirmed the dismissal of their complaint.  *See id.*  Upon information and belief,
the Acueducto Shareholders were represented in connection with their claim to the
Acueducto account by Goodwin, Rosenbaum & Meacham, 824 Connecticut Avenue
N.W., Washington, D.C.; Fred R. Tansill, 1521 New Hampshire Avenue N.W.,

8

Washington, D.C.; and Joseph E. Casey and Thomas B. Scott, 1200 18th Street, N.W., Washington, D.C.

27.     Upon information and belief, there are or were other Unknown John Doe Shareholders of Acueducto Yateritas, S.A., whose identities and locations are unknown. The Unknown John Doe Shareholders own or owned a minority share of Acueducto's stock.

**Agencies or Instrumentalities of the Republic of Cuba That Could Have a Claim to Ownership of the Blocked Accounts**

28.     In the Amended Turnover Petition, Petitioners allege that the targeted accounts maintained on the books of Citibank, including the Acueducto account, are "blocked assets" within the meaning of Section 201 of TRIA, because they were frozen pursuant to regulations issued under the authority of Section 5(b) of the Trading with the Enemy Act, 50 U.S.C. App. § 5(b). Thus, according to Petitioners, "they are attachable 'blocked assets' under the TRIA and subject to execution to the extent they are blocked assets of Cuba or of an agency or instrumentality of Cuba." (Amended Turnover Petition at 7 n.2.)

29.     The petitioners do not identify with specificity or even generally, either in the Amended Turnover Petition or in the exhibits attached thereto and filed under seal, which Cuban agency or instrumentality has a connection to the Acueducto blocked account. Upon information and belief, it is possible but by no means certain, that Acueducto was expropriated by the Cuban Government in or about 1964. To the extent it was so-expropriated, the Republic of Cuba, or the vehicle through which the Republic of Cuba intervened Acueducto, may have a claim to an ownership interest in the Acueducto blocked account.

9

30.     In the alternative, and to the extent Acueducto Yateritas, S.A. or its successor-in-interest remains a corporation organized and existing under the laws of the Republic of Cuba, Acueducto itself may be a potential claimant to the funds.

### The Need for Interpleader Relief

31.     The Amended Turnover Petition seeks the turnover of property in which a number of Adverse Claimants-Respondents have or may have a property interest in their capacity as shareholders of an expropriated Cuban corporation. Garnishee-Respondent has filed this Third-Party Petition in order to bring before the Court known parties with claims to these funds and to obtain a discharge in interpleader.

32.     Under these circumstances, where there may be conflicting claims to funds held by a Garnishee-Respondent, thereby exposing it to the risk of double or multiple liability, federal and state law recognize a Garnishee-Respondent as a disinterested or neutral stakeholder, and provide mechanisms for it to bring before the court any person or adverse claimant with a claim to the same funds who may not already be party to the action. *See* Fed. R. Civ. P. 22, CPLR §§ 5239 and 6221 and Section 134 of the New York Banking Law.

33.     With respect to the Acueducto blocked deposit account, Garnishee-Respondent does not have addresses or contact information in its possession for parties with a potential claim to the blocked funds. It may therefore be necessary to provide notice to these individuals of Petitioners' turnover claims through publication in newspapers in the United States or Cuba.

34.     Garnishee-Respondent takes no position on the entitlement of Petitioners to execute on the default judgments held against the Republic of Cuba, or on the defenses that any of the other Adverse Claimants-Respondents may have against such execution.

10

35.     Garnishee-Respondent takes the position, however, that to the extent any of the Adverse Claimants-Respondents fails to appear to assert a defense to execution or a claim to the blocked accounts in question, the Court may adjudicate and issue final judgment on all issues bearing on the rights of any defaulting Adverse Claimant-Respondent with respect to the blocked accounts that are the subject of the Amended Turnover Petition.

36.     Garnishee-Respondent also takes the position that, with respect to potential claimants to the funds in the Acueducto blocked deposit account, to the extent the Court deems it appropriate to summon these individuals before the Court, through publication or otherwise, to the extent any individuals so notified fail to appear in response to such notice to assert a defense to execution, or to assert a claim to the blocked account in question, the Court may adjudicate and issue final judgment on all issues bearing on the rights of any defaulting Adverse Claimant-Respondent with respect to the blocked account that are the subject of the Amended Turnover Petition.

37.     Garnishee-Respondent further believes that to the extent any of the Adverse Claimant-Respondents appear, this Court may adjudicate ownership rights under the blocked account, and such adjudication will permit Garnishee-Respondents to be relieved of further liability.

**THE THIRD-PARTY PETITIONER'S
PRAYER FOR RELIEF**

WHEREFORE, Garnishee-Respondent Citibank respectfully requests that, with respect to the Acueducto blocked deposit account, the Court enter judgment: dismissing Petitioners' Amended Turnover Petition to the extent it seeks the turnover of property in the Acueducto blocked deposit account because Petitioners failed to satisfy the Court that

11

there was a colorable basis for concluding that any of the property in that account was the property of the Republic of Cuba or any of its agencies or instrumentalities.

In the alternative, to the extent the Court determines that there is a sufficient basis to justify the publication of notice to bring persons with a potential interest in the Acueducto blocked deposit account before the Court, Garnishee-Respondent Citibank respectfully requests that the Court enter judgment directing Petitioners to advance the expenses of publication to Garnishee-Respondent Citibank. Furthermore, Garnishee-Respondent Citibank respectfully requests that the Court enter judgment determining:

> (a)    the specific identification of any blocked funds being made subject to attachment, attachment in aid of execution, execution, or turnover, the amount of any blocked funds to be turned over pursuant to any execution or turnover order, and the identity of the party, or parties, if any, to whom such turnover is to be made;
>
> (b)    that the blocked assets against which turnover is ordered consist of the blocked assets of the Republic of Cuba or an agency or instrumentality of the Republic of Cuba, and that TRIA or the FSIA allows the blocked property to be executed against to satisfy a judgment against the Cuban Government judgment debtors for compensatory damages, in the case of TRIA or for compensatory and punitive damages in the case of the FSIA in respect of a judgment entered pursuant to 28 U.S.C. §1605A, irrespective of whether it would otherwise be immune from attachment, attachment in aid of execution, or execution;
>
> (c)    that each judgment as to which turnover is ordered is (i) against the Republic of Cuba as a terrorist party on a claim based on an act of terrorism within the meaning of TRIA, or (ii) based on a claim in respect of an act of terrorism for which a terrorist party is not immune under 28 U.S.C. § 1605(a)(7) or 28 U.S.C. § 1605A;
>
> (d)    that the amount of each judgment entered under 28 U.S.C. § 1605(a)(7) as to which turnover is ordered, including interest and any poundage, is solely for compensatory, not punitive, damages in respect of which the terrorist party has been adjudged liable inasmuch as Section 201(a) of TRIA only permits execution upon blocked assets in aid of execution in order to satisfy a judgment "to the extent of any compensatory damage for which [a] terrorist party has been adjudged liable";

12

(e)     that, in respect of each judgment entered against a terrorist party by default, (i) a copy of each such default judgment was sent to the foreign state in a manner provided for by 28 U.S.C. §§ 1608(a) and (e), (ii) each Petitioner served the Cuban Government judgment debtors in accordance with 28 U.S.C. § 1608(a), to the extent service of the same is held necessary, and (iii) a reasonable period of time has elapsed following entry of said judgments and the giving of any notice to the Cuban Government judgment debtors required under 28 U.S.C. § 1608(3);

(f)     that, to the extent TRIA or the FSIA is not relied upon as a basis for turnover, any turnover has been licensed by OFAC, and the blocked funds against which turnover is ordered consist of blocked property of a judgment debtor or property in which a judgment debtor has an attachable or executable property interest within the meaning of applicable attachment and execution law, and is not immune from execution within the meaning of the Foreign Sovereign Immunities Act of 1976 or of the Vienna Convention on Diplomatic Relations or of the Vienna Convention on Consular Relations;

(g)     that the blocked funds against which turnover is ordered do not consist of blocked property in respect of which a waiver of the provisions of TRIA has been made by the President of the United States with respect thereto within the meaning of Section 201(b)(1) of TRIA;

(h)     that, upon the compliance by the Garnishee-Respondent with any order of turnover, the Garnishee-Respondent is and shall be discharged under N.Y. C.P.L.R. §§ 5209 and 6204 from any further liability or obligation to any parties with an interest in funds in the Acueducto Yateritas, S.A. blocked account, or to any other party, in respect of any amount so turned over, as well as discharged in interpleader pursuant to Rule 22 of the Federal Rules of Civil Procedure and Section 134 of the Banking Law of the State of New York, in respect of any adverse claimants to be named in any third-party petition;

(i)     that, to the extent the Garnishee-Respondent is ordered to hold, pending further order of the Court, or to pay into the registry of the Court upon issuance of a license by OFAC permitting such payment, any amount of a blocked deposit representing a blocked deposit debt owed to the Cuban Government judgment debtors or to an agency or instrumentality of the Republic of Cuba, the Garnishee-Respondent shall be fully discharged pursuant to N.Y. C.P.L.R. §§ 5209 and 6204, as applicable, and discharged as well in interpleader pursuant to Rule 22 of the Federal Rules of Civil Procedure and Section 134 of the Banking Law of the State of New York in respect of any adverse claimant to be named in any third-party petition, from any and all obligations or liabilities to the Republic of Cuba, to any agency or instrumentality of the Republic of Cuba otherwise entitled to the funds, or to any parties with an interest in funds in the Acueducto Yateritas, S.A. blocked account, or to any other party, to the full extent of such amount so held subject to further order of the Court, or paid over into the registry of the Court;

(j)      that, to the extent any Garnishee-Respondent turns over to Petitioners any property owned, not by the Republic of Cuba or an agency or instrumentality of the Republic of Cuba, either the Garnishee-Respondent in question or the rightful owner of the property shall be entitled to seek its return from Petitioners; and

(k)      that Citibank be awarded its reasonable attorneys' fees and costs incurred in responding to Petitioners' enforcement efforts, such award to be paid out of any amount turned over pursuant to the Amended Turnover Petition, as well as such other and further relief as may be appropriate.

Dated:   New York, New York        DAVIS POLK & WARDWELL LLP
         May 6, 2014

                                   By: _____
                                        James L. Kerr

         **Of Counsel**            450 Lexington Avenue
         Karen E. Wagner           New York, New York 10017
         Daniel T. Young           (212) 450-4552
                                   james.kerr@davispolk.com

                                   *Attorneys for Garnishee-Respondent and*
                                   *Third-Party Petitioner Citibank, N.A.*

14