# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALDO VERA, JR., as Personal Representative of the Estate of Aldo Vera, Sr., <br><br>               Plaintiff, <br><br>      v. <br><br> THE REPUBLIC OF CUBA, <br><br>              Defendant. | Case No. 12-CV-01596 (AKH) |
| ALDO VERA, JR., as Personal Representative of the Estate of Aldo Vera, Sr.; and <br><br> JEANNETTE FULLER HAUSLER and WILLIAM FULLER, as court-appointed co-representatives of the ESTATE OF ROBERT OTIS FULLER, deceased, on behalf of all beneficiaries of the Estate and the ESTATE OF ROBERT OTIS FULLER; and <br><br> ALFREDO VILLOLDO, individually, and GUSTAVO E. VILLOLDO, individually and as Administrator, Executor, and Personal Representative of the ESTATE OF GUSTAVO VILLOLDO ARGILAGOS, <br><br>              Petitioners, <br><br>      v. <br><br> BANCO BILBAO VIZCAYA ARGENTINA (S.A.), et al., <br><br>              Garnishees-Respondents. | THIRD-PARTY PETITION ALLEGING CLAIMS IN THE NATURE OF INTERPLEADER FILED BY JPMORGAN CHASE BANK, N.A. |

*caption continued on following page*

JPMORGAN CHASE BANK, N.A.,

                            Respondent/Garnishee and
                            Third-Party Petitioner,

                v.

MARTÍNEZ AMORES; MARÍA DEL CARMEN FOJO
LAGE; GUILLERMINA DOVAL AGUSTI; NICASIO
ESCALANTE; CRISTINA GELATS FÁBREGAS; JOSE
FELIÚ GARCÍA; AMELIA GARCÍA GÓMEZ;
ALBERTO ANTONIO PÉREZ MUÑÓZ; CONRADO
ENRIQUE PÉREZ MUÑÓZ; MARÍA DEL CARMEN
MUÑÓZ Y SOLÍS; HILDA CASELL DE PELLA;
HILDA MARÍA PELLA; MARIA AMELIA DANIELA
PELLA; MARÍA LUISA ALDANA PELLA; MATILDE
PELLA; OSCAR A. ALDANA PELLA; and OSCAR
PELLA, and the HEIRS and ASSIGNS of ALL SUCH
PARTIES;

CASIMIRO GARCIA GARCIA; AMELIA GARCIA
GOMEZ; JOSE FELIU GARCIA; FRANCISCO
GARCIA DIAZ; AMELIA GARCIA DIAZ; JOSE
GOMEZ MENA; JUAN MORALES Y PEDROSO, and
the HEIRS and ASSIGNS of ALL SUCH PARTIES;

RICHARD ESCOBAR; MICHAEL L. JONES; CARLOS
A. RAMIREZ; and the HEIRS and ASSIGNS of ALL
SUCH PARTIES;

ALFREDO ALFONSO; EUGENIO ALONSO;
DELCAMPA ODON ALVAREZ; DEMETRIO
ALVARES; ORLANDO ARGIZ; NICOLAS BARRIOS;
JESUS BRITO; JOSE M. CUESTO; PEDRO
DELAROSO; OSCAR DELUS REYES; ANDRES
DERIOS; CARLOS DIAZ; LUIS ECHEGOYEN;
HERMENEGILDO ENRIQUEZ; RENE
EXCAJADILLO; MIRTHA ESTEVEZ;
CONSTANTINE FERNANDEZ; JESUS A. GARCIA;
IGNACIO GOMEZ; MIGUEL A. GONZALEZ;
CECILIA GUTIERREZ; MAXIMO HERNANDEZ;
JOSE LAGO; ALBERTO LOPEZ; LUIS F. MONTES;
RAUL MUNOZ; JESUS NOVO; JOSE L. OLIVARRES;

ii

LUIS OTANO; OLGA PEREZ; GUADELUPE PRIETO;
DEARRELANO RAMIREZ; ENRIQUE RODRIGUEZ;
and the HEIRS and ASSIGNS of ALL SUCH PARTIES;

JULIA RODRIGUEZ; MARIO RODRIQUEZ; JOSE
SUAREZ; CARMEN TRAVIESO; MANUEL
TRINCHET; PABLO VIDAL, and the HEIRS and
ASSIGNS of ALL SUCH PARTIES;

BANCO NACIONAL DE CUBA, as the successor in
interest to Banco Gelats and any other private Cuban bank
through which the Cuban Nationals named as Adverse
Claimants-Respondents herein may have opened local
accounts;

ALDO VERA, JR., as Personal Representative
of the Estate of Aldo Vera, Sr.;

JEANNETTE FULLER HAUSLER and WILLIAM
FULLER, as court-appointed co-representatives of the
ESTATE OF ROBERT OTIS FULLER, deceased, on
behalf of all beneficiaries of the Estate and the ESTATE
OF ROBERT OTIS FULLER; and

ALFREDO VILLOLDO, individually, and
GUSTAVO E. VILLOLDO, individually and as
Administrator, Executor, and Personal
Representative of the ESTATE OF GUSTAVO
VILLOLDO ARGILAGOS,

                    Adverse Claimants-
                    Respondents.

## THIRD-PARTY PETITION ALLEGING CLAIMS
## IN THE NATURE OF INTERPLEADER

Garnishee-Respondent and Third-Party Petitioner JPMorgan Chase Bank, N.A.

("JPMorgan Chase," "Garnishee-Respondent" or "Garnishee-Respondent and Third-Party Petitioner"), by its attorneys Davis Polk & Wardwell LLP, alleges on information and belief as follows in support of its Third-Party Petition Alleging Claims in the Nature of Interpleader ("Third-Party Petition"):

1.      Garnishee-Respondent and Third-Party Petitioner brings this Third-Party Petition because it is aware that there are claimants to the blocked accounts targeted by Petitioners for turnover who are or may be adverse to Petitioners.  Petitioners seek a court order directing JPMorgan Chase to turn over to Petitioners funds held in certain accounts that have been blocked on the books of Garnishee-Respondent in satisfaction of judgments obtained by Petitioners against the Republic of Cuba, Fidel Castro Ruz, Raúl Castro Ruz, and the Cuban Revolutionary Armed Forces (the "Cuban Government Judgment Debtors").

2.      Claimants who are potentially adverse to Petitioners include the beneficiaries of three custody or trust accounts on the books of JPMorgan Chase—Account No. 25, Account No. 26, and Trust Account No. P40545 (the TIP Foreign Benefits Trust Account)—that have been blocked pursuant to the Cuban Assets Control Regulations, 31 C.F.R. Part 515 (the "CACRs").  The funds and securities held in these accounts, on information and belief, are for the benefit of individuals who should be given notice and brought into this proceeding.  The CACRs, as amended from time to time, are issued by the Office of Foreign Assets Control ("OFAC") of the U.S. Treasury Department under authority of the Trading with the Enemy Act, 50 U.S.C. App. 5(b) ("TWEA").

3.      The beneficiaries of these custody or trust accounts who may have a claim to the funds subject to turnover are identified in paragraphs 22-37 below.

4.      Because it is a disinterested, neutral stakeholder in respect of such blocked accounts and funds, Garnishee-Respondent seeks to place all such Adverse Claimants-Respondents on notice of the claims being asserted by Petitioners, and to thereby avoid the risk of inconsistent judgments and double or multiple liability.  Accordingly, Garnishee-Respondent seeks to interplead all Adverse Claimants-Respondents pursuant to Fed. R. Civ. P. 22, N.Y. C.P.L.R. §§ 5239 and 6221 and Section 134 of the New York Banking Law.

## Jurisdiction and Venue

5.      This Court has jurisdiction over this proceeding under 28 U.S.C. § 1332 because Petitioners have alleged a claim under federal law—specifically, the Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297; 116 Stat. 2337, codified at 28 U.S.C § 1610 Note ("TRIA").  This Court also has jurisdiction over this proceeding under 28 U.S.C. § 1330 because Petitioners have brought an action against a foreign state to enforce a judgment against a foreign state as defined in Section 1603(a) of the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. 1602 *et seq.* (the "FSIA").  Moreover, this Court has jurisdiction over this proceeding under 12 U.S.C. § 632 because it is a suit to which a corporation organized under the laws of the United States is a party, and that arises out of transactions involving international or foreign banking.  Finally, this Court has supplemental jurisdiction over these interpleader claims pursuant to 28 U.S.C. § 1367(a) because they form part of the same case or controversy as Petitioners' claims.

2

6. Venue in respect of the Third-Party Petition is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

## Background

7. The Vera, Villoldo and Hausler Petitioners (collectively, the "Petitioners") seek to enforce judgments against the Cuban Government Judgment Debtors.

8. Petitioner Aldo Vera, Jr. ("Vera") is a citizen of the State of Florida, and is the executor and personal representative of the Estate of Aldo Vera, Sr. Petitioner Vera holds a judgment against the Republic of Cuba for the alleged extra-judicial killing of Aldo Vera, Sr. on American soil that was entered in the State of Florida, and given recognition by this Court in a judgment entered in this Court on August 17, 2012 against the Republic of Cuba.

9. Alfredo Villoldo, individually, and Gustavo E. Villoldo, individually and as the administrator, executor and personal representative of the Estate of Gustavo Villoldo Argilagos (the "Villoldos"), are also Petitioners in this matter. On August 19, 2011, the Villoldos obtained a judgment against the Republic of Cuba from a Florida State Court for $2,790,000,000 pursuant to 28 U.S.C. § 1605A (the "Villoldo Florida Judgment"). The Villoldo Florida Judgment provides that it was issued for economic loss, punitive damages, intentional infliction of emotional distress, and wrongful death as a result of the acts of terrorism and torture allegedly committed against their father, Gustavo Villoldo Argilagos, as well as against the Villoldos themselves, acts allegedly starting in January 1959 and continuing through mid-2003. On October 25, 2012, this Court entered a judgment against Cuba based on the Villoldo Florida Judgment in the amount of $2,903,233,898.07.

3

10.     Petitioners Jeannette Fuller Hausler and William Fuller (the "Hausler Petitioners") are court-appointed co-representatives of the Estate of Robert Otis Fuller. Judgment for the Hausler Petitioners was initially entered in a Florida state court by default based on allegations of terrorism that included the torture and extra-judicial killing of Robert Otis Fuller in April 1961. The Florida state court judgment was subsequently recognized by the United States District Court for the Southern District of Florida. On or about September 24, 2008, a judgment in favor of the Hausler Petitioners was registered in this Court.

11.     At the request of Petitioners, the U.S. Marshal has served writs of execution on Garnishee-Respondent from time to time in an effort to satisfy their judgments by seeking execution pursuant to TRIA and/or the FSIA against any property of the Republic of Cuba or any of its agencies or instrumentalities that has been blocked pursuant to the CACRs.

12.     On or about September 9, 2013, Petitioners filed and served an Omnibus Petition for Turnover Order that did not identify any specific accounts that were being made subject to turnover. On or about February 12, 2014, Petitioners filed an Amended Omnibus Petition for Turnover Order (the "Amended Turnover Petition") that included exhibits, filed under seal, that identified accounts on the books of the Garnishee-Respondents, including the custody or trust accounts identified at paragraphs 22-37 below. The Amended Turnover Petition was brought pursuant to Section 201(a) of TRIA and Section 1610(g) of the FSIA.

4

## Ownership is an Essential
## Predicate to Execution

13.     Section 201(a) of TRIA provides the requirements of ownership as a

prerequisite to execution as follows (emphasis added):

> [I]n every case in which a person has obtained a judgment against a
> terrorist party or a claim based on an act of terrorism, or for which a
> terrorist party is not immune under section 1605(a)(7) of title 28, United
> States Code, the blocked assets of that terrorist party (including the
> blocked assets of any agency or instrumentality of that terrorist party)
> shall be subject to execution or attachment in aid of execution in order to
> satisfy such judgment to the extent of any compensatory damages for
> which such terrorist party has been adjudged liable.

14.     Section 1610(g)(1) of the FSIA provides as follows:

> **In general**.—Subject to paragraph (3), [T]he property of a foreign state
> against which a judgment is entered under section 1605A, and the property
> of an agency or instrumentality of such a state, including property that is a
> separate juridical entity or is an interest held directly or indirectly in a
> separate juridical entity, is subject to attachment in aid of execution, and
> execution, upon that judgment as provided in this section, regardless of—

> > (A) the level of economic control over the property by the
> > government of the foreign state;

> > (B) whether the profits of the property go to that government;

> > (C) the degree to which officials of that government manage the
> > property or otherwise control its daily affairs;

> > (D) whether that government is the sole beneficiary in interest of
> > the property; or

> > (E) whether establishing the property as a separate entity would
> > entitle the foreign state to benefits in United States courts while
> > avoiding its obligations.

15.     Section 1610(g)(3) of the FSIA provides as follows:

> **Third-party joint property holders.**—Nothing in this subsection shall be
> construed to supersede the authority of a court to prevent appropriately the
> impairment of an interest held by a person who is not liable in the action
> giving rise to a judgment in property subject to attachment in aid of
> execution, or execution, upon such judgment.

16.     Pursuant to the governing provisions of TRIA and the FSIA, as well as fundamental principles of execution law, the proceeds of the custody or trust accounts at issue here are subject to turnover to Petitioners only if the Republic of Cuba or an agency or instrumentality of the Republic of Cuba, against which judgment has been entered, has a sustainable claim of ownership to the funds.

17.     Petitioners allege generally that all of the accounts they have targeted for turnover have been frozen pursuant to the CACRs because there is some connection to agencies or instrumentalities of Cuba within the meaning of TRIA and Section 1610(g) of the FSIA that renders the property held in these accounts available for execution. Petitioners conclude, therefore, that the blocked accounts are subject to turnover under Section 201(a) of TRIA, Section 1610(g) of the FSIA, and the laws of the State of New York governing execution.

18.     In two pending appeals in the United States Court of Appeals for the Second Circuit, the Second Circuit will decide under what circumstances a terrorist state judgment debtor has an "ownership interest" in blocked wire transfer proceeds such that a party holding a judgment enforceable under TRIA, 28 U.S.C. § 1610 Note, or under Section 1610(g)(1) of the FSIA, is entitled to enforce its judgments against such blocked assets. The two pending cases are *Hausler v. JPMorgan Chase Bank, N.A.*, Nos. 12-1264(L) and 12-1277 (2d Cir.), and *Calderon-Cardona v. JPMorgan Chase Bank, N.A.*, 12-75 (L) (2d Cir.) (oral argument held on February 11, 2013). In *Calderon-Cardona*, the district court held that ownership was a prerequisite to execution, and that ownership should be determined by reference to Article 4A of the Uniform Commercial Code. *Calderon-Cardona v. JPMorgan Chase Bank, N.A.*, 867 F. Supp. 2d 389, 400-01

6

(S.D.N.Y. 2011).  In *Hausler*, the court held that ownership was not required, and that all proceeds of electronic funds transfers blocked pursuant to the CACRs were available for execution.  *Hausler v. JPMorgan Bank, N.A.*, 845 F. Supp. 2d 553, 577-78 (S.D.N.Y. 2012); *accord Levin v. Bank of New York*, No. 09 Civ. 5900, 2013 WL 5312502, at *8 (S.D.N.Y. Sept. 23, 2013).  Oral argument in these appeals was heard by the Second Circuit on February 11, 2013, and the appeals remain undecided.

### The Parties to the Joint Third-Party Petition

**The Petitioners**

19.    The Petitioners, the claims giving rise to the judgments they seek to enforce against the Cuban Government Parties, the judgments, and the steps the Petitioners have taken to enforce their judgments, are described in paragraphs 8-12 above.

**The Garnishee-Respondent and Third-Party Petitioner**

20.    JPMorgan Chase is a national bank incorporated under the laws of the United States with its head office located in Columbus, Ohio and with branch offices located in this district.  JPMorgan Chase maintains various accounts on its books, including blocked accounts that are the subject of the Amended Turnover Petition and against which Petitioners have directed the U.S. Marshal to levy writs of execution.

**The Parties with an Identifiable Interest in Funds Held in the Custody or Trust Accounts Targeted for Turnover and Descriptions of the Accounts**

21.    The Adverse Claimants-Respondents are individuals on whose behalf, on information and belief, custody accounts, trust accounts or sub-accounts were opened on the books of Chemical Bank New York Trust Company, a predecessor in interest of JPMorgan Chase.  These accounts have been blocked pursuant to the CACRs since their inception in 1963.  These individuals, believed to be present or former nationals of the

7

Republic of Cuba, as well as descriptions of the accounts in respect of which they may

have a claim, are identified and described in paragraphs 22-37 below.

**Account No. 25 and Account No. 26**

22.    On information and belief, Account No. 25 and Account No. 26 comprise

custody accounts, trust accounts or sub-accounts formerly held on the books of JPMorgan

Chase's predecessor in interest, Chemical Bank New York Trust Company.  On

information and belief, the funds and securities held in Account No. 25 and Account No.

26 were deposited and held for the benefit of the Cuban nationals identified in

paragraphs 26-29 below, and have been held on the books of JPMorgan Chase, or its

predecessors in interest, for many years, in some or all instances since before the Cuban

Revolution.

23.    On information and belief, Account No. 25 and Account No. 26, or the

sub-accounts they comprise, were opened by Banco Gelats, a private bank doing business

in Cuba prior to the Cuban Revolution, for the benefit of the named individuals.  These

accounts held funds, as well as securities once registered in the name of C.A. England

and Company, as nominee.  On information and belief, C.A. England and Company is no

longer extant or utilized as a nominee.

24.    On information and belief, the securities and funds in Account No. 25 and

Account No. 26 were at one time held in custody for the account of the individuals in

question through Banco Gelats.  On information and belief, Banco Gelats is no longer

extant or is otherwise no longer engaged in carrying on a banking business.

25.    Third-Party Adverse Claimant-Respondent Banco Nacional de Cuba

("Banco Nacional") is, on information and belief, a bank organized and existing under

8

Cuban law.  On information and belief, Banco Nacional has, since its establishment in

1948, been engaged in commercial banking activities, and until 1997 was engaged in

central bank activities.  Upon information and belief, Banco Nacional took over the assets

and businesses of private banks in Cuba, and may have acquired Banco Gelats, or

otherwise absorbed its functions, such that Banco Nacional may now stand in the shoes

of Banco Gelats with respect to Account No. 25 and Account No. 26.

26.     In response to a subpoena for the production of documents served on

JPMorgan Chase by the Hausler Petitioners, JPMorgan Chase produced to the Petitioners

a letter from Banco Nacional de Cuba dated June 6, 1961.  (*See* JPM_000264 through

JPM_000266.)  The letter appears to list various beneficiaries of accounts held by

JPMorgan Chase's predecessor in interest, Chemical Bank of New York Trust Company,

and identifies the following individuals as individuals with an interest in such accounts:

Martínez Amores; María del Carmen Fojo Lage; Guillermina Doval Agusti; Nicasio

Escalante; Cristina Gelats Fábregas; Jose Feliú García; Amelia García Gómez; Alberto

Antonio Pérez Muñóz; Conrado Enrique Pérez Muñóz; María del Carmen Muñóz y Solís;

Hilda Casell de Pella; Hilda María Pella; Maria Amelia Daniela Pella; María Luisa

Aldana Pella; Matilde Pella; Oscar A. Aldana Pella; and Oscar Pella.  On information and

belief, the property referenced in this letter then comprised at least in part the property

held in Account No. 25 and/or Account No. 26.

27.     In response to a subpoena for the production of documents served on

JPMorgan Chase by the Hausler Petitioners, JPMorgan Chase has produced to the

Petitioners a letter, dated July 19, 1988, sent by Richard Escobar, a partner with Michael

L. Jones in the law firm of Jones & Escobar, P.A., located at 3134 North Boulevard,

Tampa, Florida 33603, to the attention of Chemical Bank of New York. (*See* JPM_000334 through JPM_000335.) The letter states that Jones & Escobar, P.A. represents Manuel Feliu "with reference to a trust naming him as a beneficiary of numerous stocks registered in the name C.A. England and Co." The letter further states that "[t]he circumstances surrounding this trust are that Mr. Feliu's grandmother from 1938-1960 was a resident of Cuba and purchased the listed corporate stocks in the United States and registered them under the name of C.A. England and Co."

28.     The July 19, 1988 letter lists numerous other individuals as potential administrators of the alleged trust referred to above or as potential past owners of the securities. These individuals include: Casimiro Garcia Garcia; Amelia Garcia Gomez; Jose Feliu Garcia; Francisco Garcia Diaz; Amelia Garcia Diaz; Jose Gomez Mena; and Juan Morales y Pedroso.

29.     In response to a subpoena for the production of documents served on JPMorgan Chase by the Hausler Petitioners, JPMorgan Chase produced to the Petitioners a letter, dated May 22, 1992, sent by Carlos A. Ramirez, a partner with Richard Escobar in the law firm Richard Escobar, P.A., located at 2708 West Kennedy Boulevard, Tampa, Florida, 33609, to the attention of Chemical Bank of New York. (*See* JPM_000498 through JPM_000499.) The letter makes further inquiries about the funds in Account No. 26 on behalf of the firm's client.

30.     As of June 30, 2012, Account No. 25 had a balance of $226,621.53. As of June 30, 2012, Account No. 26 had a balance of $96,114.33.

31.     On information and belief, JPMorgan Chase believes that the individuals identified in paragraphs 22-29 may have an interest in the property held in Account No. 25 and Account No. 26.

32.     JPMorgan Chase questions whether any of the individuals identified in paragraphs 22-29, or any yet unknown individuals who are the beneficiaries of Account No. 25 or Account No. 26, or any of their heirs or assigns, is (or could be) deemed an agency or instrumentality of Cuba within the meaning of TRIA or the FSIA.  Indeed, as described in paragraph 41 below, the writ served upon Garnishee-Respondent by the Hausler Petitioners expressly excludes Cuban individuals from its reach.

**Trust Account No. P40545 (the TIP Foreign Benefits Trust Account)**

33.     JPMorgan Chase holds in its books an account designated as Trust Account No. P40545 (the TIP Foreign Benefits Trust Account).  This account had a balance of $901,311.91 as of June 30, 2012.

34.     In response to a subpoena for the production of documents served on JPMorgan Chase by the Hausler Petitioners, JPMorgan Chase has produced to the Petitioners a memorandum from March 1999 delineating the "name[s] of blocked property owner[s]" in respect of the TIP Foreign Benefits Trust Account.  (*See* JPM_000260 through JPM_000262.)

35.     The list of individuals identified in the March 1999 memorandum includes:  Alfredo Alfonso; Eugenio Alonso; Delcampa Odon Alvarez; Demetrio Alvares; Orlando Argiz; Nicolas Barrios; Jesus Brito; Jose M. Cuesto; Pedro Delaroso; Oscar Delus Reyes; Andres Derios; Carlos Diaz; Luis Echegoyen; Hermenegildo Enriquez; Rene Excajadillo; Mirtha Estevez; Constantine Fernandez; Jesus A. Garcia;

11

Ignacio Gomez; Miguel A. Gonzalez; Cecilia Gutierrez; Maximo Hernandez; Jose Lago; Alberto Lopez; Luis F. Montes; Raul Munoz; Jesus Novo; Jose L. Olivarres; Luis Otano; Olga Perez; Guadalupe Prieto; Dearrelano Ramirez; Enrique Rodriguez; Julia Rodriguez; Mario Rodriquez; Jose Suarez; Carmen Travieso; Manuel Trinchet; and Pablo Vidal. The amounts held in the TIP Foreign Benefits Trust Account for each of these individuals as of that date was set forth in the March 1999 memorandum.

36.     On information and belief, JPMorgan Chase believes that the individuals identified in paragraph 35, or their heirs or assigns, had or may have an interest in the proceeds of Trust Account No. P40545 (the TIP Foreign Benefits Trust Account).

37.     JPMorgan Chase questions whether any of the individuals identified in paragraph 35, or any unknown individuals who are beneficiaries of Trust Account No. P40545 (the TIP Foreign Benefits Trust Account) or any of their heirs or assigns, is (or could be) deemed an agency or instrumentality of Cuba within the meaning of TRIA or the FSIA.  Indeed, as described in paragraph 41 below, the writ served upon Garnishee-Respondent by the Hausler Petitioners expressly excludes Cuban individuals from its reach.

### Agencies or Instrumentalities of the Republic of Cuba Alleged to Have an Executable Interest in the Custody or Trust Accounts

38.     In the Amended Turnover Petition, Petitioners allege that the targeted accounts maintained on the books of JPMorgan Chase are "blocked assets" within the meaning of Section 201 of TRIA, because they were frozen pursuant to regulations issued under the authority of Section 5(b) of the Trading With the Enemy Act, 50 U.S.C. App. § 5(b).  Thus, according to Petitioners, "they are attachable 'blocked assets' under

the TRIA and subject to execution to the extent they are blocked assets of Cuba or of an agency or instrumentality of Cuba." (Amended Turnover Petition at 7 n.2.)

39.     Petitioners do not identify with specificity or even generally, either in the Amended Turnover Petition or in the exhibits attached thereto and filed under seal, which Cuban agency or instrumentality has a connection to these particular blocked accounts, much less the ownership interest required to justify execution and turnover.

40.     Garnishee-Respondent questions whether any Cuban agency or instrumentality has a cognizable ownership interest in any of the custody or trust accounts at issue here.

41.     Indeed, the Hausler Petitioners served a writ of execution on Garnishee-Respondent, dated March 26, 2009, that expressly and appropriately excludes property "held or maintained in the name of any individual Cuban person, whether living or dead, unless that person is either Fidel or Raul Castro."

42.     Garnishee-Respondent alleges that it is the Petitioners' burden to show that a Cuban agency or instrumentality in fact has an executable interest in the blocked custody and trust accounts at issue, and questions whether there is a colorable basis for so alleging or showing.  In particular, Garnishee-Respondent alleges that Petitioners have not and could not show how custody accounts held for the benefit of individuals could have a relationship to the Republic of Cuba, or to any Cuban agency or instrumentality, that would support turnover of the subject funds as the property of the Republic of Cuba.

### The Need for Interpleader Relief

43.     The Amended Turnover Petition seeks the turnover of property in which numerous individual Adverse Claimants-Respondents have or may have a property interest.

44.     Under these circumstances, where there may be conflicting claims to funds held by a Garnishee-Respondent, thereby exposing it to the risk of double or multiple liability, federal and state law recognize a Garnishee-Respondent as a disinterested or neutral stakeholder, and provide mechanisms for it to bring before the court any person or adverse claimant with a claim to the same funds who may not already be party to the action. *See* Fed. R. Civ. P. 22, CPLR §§ 5239 and 6221 and Section 134 of the New York Banking Law.

45.     While Garnishee-Respondent has filed this Third-Party Petition in order to bring before the Court known parties with claims to these funds and to obtain a discharge in interpleader, it does not have in its possession current address or contact information for any of these individuals, and would need to provide notice of the Petitioners' turnover claims through publication in newspapers in the United States, Europe and Cuba.

46.     Given the absence of a colorable connection between any of the individuals to be interpled and any agency or instrumentality of the Republic of Cuba, Petitioners should be required to satisfy the Court that there is a sound basis for ordering turnover of the property in these accounts as property of the Republic of Cuba or any of its agencies or instrumentalities before ordering and approving a form of notice to summon these individuals to the Court.

47.     Garnishee-Respondent takes no position on the entitlement of Petitioners to execute on the default judgments held against the Republic of Cuba, or on the defenses that any of the other Adverse Claimants-Respondents may have against such execution except as indicated above.

48.     Garnishee-Respondent takes the position, however, that to the extent the Court deems it appropriate to summon these individuals before the Court, through publication or otherwise, to the extent any individuals so notified fails to appear in response to such notice to assert a defense to execution except as indicated above, or to assert a claim to the blocked accounts in question, the Court may adjudicate and issue final judgment on all issues bearing on the rights of any defaulting Adverse Claimant-Respondent with respect to the blocked accounts that are the subject of the Amended Turnover Petition.

49.     Garnishee-Respondent further believes that to the extent any of the Adverse Claimant-Respondents appear following the giving of notice, this Court may adjudicate ownership rights under the blocked accounts, and such adjudication will also permit Garnishee-Respondents to be relieved of further liability.

## THE THIRD-PARTY PETITIONER'S
## PRAYER FOR RELIEF

WHEREFORE, Garnishee-Respondent JPMorgan Chase respectfully requests that the Court enter judgment:

(a)     dismissing Petitioners' Amended Turnover Petition to the extent it seeks the turnover of property in Account No. 25, Account No. 26, and Trust Account No. P40545 (the TIP Foreign Benefits Trust Account) because Petitioners failed to satisfy the Court that there was a colorable basis for concluding that any of the property in such accounts was the property of the Republic of Cuba or any of its agencies or instrumentalities.

15

In the alternative, to the extent the Court determines that there is a sufficient basis to justify the publication of notice to bring these individuals before the Court, Garnishee-Respondent JPMorgan Chase respectively requests that Court enter judgment directing Petitioners to advance the expenses of publication to Garnishee-Respondent JPMorgan Chase, and following any hearing on turnover enter judgment determining:

(a)     the specific identification of any blocked funds being made subject to attachment, attachment in aid of execution, execution, or turnover, the amount of any blocked funds to be turned over pursuant to any execution or turnover order, and the identity of the party, or parties, if any, to whom such turnover is to be made;

(b)     that the blocked assets against which turnover is ordered consist of the blocked assets of the Republic of Cuba or an agency or instrumentality of the Republic of Cuba, and that TRIA or the FSIA allows the blocked property to be executed against to satisfy a judgment against the Cuban Government judgment debtors for compensatory damages, in the case of TRIA or for compensatory and punitive damages in the case of the FSIA in respect of a judgment entered pursuant to 28 U.S.C. §1605A, irrespective of whether it would otherwise be immune from attachment, attachment in aid of execution, or execution;

(c)     that each judgment as to which turnover is ordered is (i) against the Republic of Cuba as a terrorist party on a claim based on an act of terrorism within the meaning of TRIA, or (ii) based on a claim in respect of an act of terrorism for which a terrorist party is not immune under 28 U.S.C. § 1605(a)(7) or 28 U.S.C. § 1605A;

(d)     that the amount of each judgment entered under 28 U.S.C. § 1605(a)(7) as to which turnover is ordered, including interest and any poundage, is solely for compensatory, not punitive, damages in respect of which the terrorist party has been adjudged liable inasmuch as Section 201(a) of TRIA only permits execution upon blocked assets in aid of execution in order to satisfy a judgment "to the extent of any compensatory damage for which [a] terrorist party has been adjudged liable";

(e)     that, in respect of each judgment entered against a terrorist party by default, (i) a copy of each such default judgment was sent to the foreign state in a manner provided for by 28 U.S.C. §§ 1608(a) and (e), (ii) each Petitioner served the Cuban Government judgment debtors in accordance with 28 U.S.C. § 1608(a), to the extent service of the same is held necessary, and (iii) a reasonable period of time has elapsed following entry of said judgments and the giving of any notice to the Cuban Government judgment debtors required under 28 U.S.C. § 1608(3);

16

(f)      that, to the extent TRIA or the FSIA is not relied upon as a basis for turnover, any turnover has been licensed by OFAC, and the blocked funds against which turnover is ordered consist of blocked property of a judgment debtor or property in which a judgment debtor has an attachable or executable property interest within the meaning of applicable attachment and execution law, and is not immune from execution within the meaning of the Foreign Sovereign Immunities Act of 1976 or of the Vienna Convention on Diplomatic Relations or of the Vienna Convention on Consular Relations;

(g)      that the blocked funds against which turnover is ordered do not consist of blocked property in respect of which a waiver of the provisions of TRIA has been made by the President of the United States with respect thereto within the meaning of Section 201(b)(1) of TRIA;

(h)      that, upon the compliance by the Garnishee-Respondent with any order of turnover, the Garnishee-Respondent is and shall be discharged under N.Y. C.P.L.R. §§ 5209 and 6204 from any further liability or obligation to any parties with an interest in the blocked funds, or to any other party, in respect of any amount so turned over, as well as discharged in interpleader pursuant to Rule 22 of the Federal Rules of Civil Procedure and Section 134 of the Banking Law of the State of New York, in respect of any adverse claimants to be named in any third-party petition;

(i)      that, to the extent the Garnishee-Respondent is ordered to hold, pending further order of the Court, or to pay into the registry of the Court upon issuance of a license by OFAC permitting such payment, any amount of a blocked deposit representing a blocked deposit debt owed to the Cuban Government judgment debtors or to an agency or instrumentality of the Republic of Cuba, the Garnishee-Respondent shall be fully discharged pursuant to N.Y. C.P.L.R. §§ 5209 and 6204, as applicable, and discharged as well in interpleader pursuant to Rule 22 of the Federal Rules of Civil Procedure and Section 134 of the Banking Law of the State of New York in respect of any adverse claimant to be named in any third-party petition, from any and all obligations or liabilities to the Republic of Cuba, to any agency or instrumentality of the Republic of Cuba otherwise entitled to the deposit, to any other party with an interest in any blocked funds, or to any other party, to the full extent of such amount so held subject to further order of the Court, or paid over into the registry of the Court;

(j)      that, to the extent any Garnishee-Respondent turns over to Petitioners any property owned, not by the Republic of Cuba or an agency or instrumentality of the Republic of Cuba, either the Garnishee-Respondent in question or the rightful owner of the property shall be entitled to seek its return from Petitioners; and

17

(k)     that JPMorgan Chase be awarded its reasonable attorneys' fees and costs incurred in responding to Petitioners' enforcement efforts, such award to be paid out of any amount turned over pursuant to the Amended Turnover Petition, as well as such other and further relief as may be appropriate.

Dated:   New York, New York
         May 6, 2014

                                    DAVIS POLK & WARDWELL LLP

                                    By
                                       James L. Kerr

**Of Counsel**                      450 Lexington Avenue
Karen E. Wagner                     New York, New York 10017
Daniel T. Young                     (212) 450-4552
                                    james.kerr@davispolk.com

                                    *Attorneys for Garnishee-Respondent and*
                                    *Third-Party Petitioner JPMorgan Chase*
                                    *Bank, N.A.*

18