UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
ALDO VERA, JR., as Personal Representative of                :  **ORDER AND OPINION**
the Estate of Aldo Vera, Sr.,                                :  **DENYING MOTION TO**
                                                             :  **DISMISS BY BANCO BILBAO**
                                    Plaintiff,               :  **VIZCAYA ARGENTARIA (S.A.)**
        -against-                                            :
                                                             :  12 Civ. 1596 (AKH)
THE REPUBLIC OF CUBA,                                        :
                                                             :
                                    Defendant.               :
                                                             :
------------------------------------------------------------ X
                                                             :
ALDO VERA, JR., as Personal Representative of                :
the Estate of Aldo Vera, Sr.; and                            :
                                                             :
JEANNETTE FULLER HAUSLER, and                                :
WILLIAM FULLER, as court-appointed co-                       :
representatives of the ESTATE OF ROBERT OTIS                 :
FULLER, deceased, on behalf of all beneficiaries of          :
the Estate and the ESTATE OF ROBERT OTIS                     :
FULLER; and                                                  :
                                                             :
ALFREDO VILLOLDO, individually, and                          :
GUSTAVO E. VILLOLDO, individually and as                     :
Administrator Executor, and Personal                         :
Representative of the ESTATE OF GUSTAVO                      :
VILLOLDO ARGILAGOS,                                          :
                                                             :
                                    Petitioners,             :
        -against-                                            :
                                                             :
BANCO BILBAO VIZCAYA ARGENTARIA                              :
(S.A.); BANK OF AMERICA N.A.; BANK OF                        :
NEW YORK MELLON; BARCLAY'S BANK                              :
PLCS; CITIBANK N.A.; CREDIT SUISSE AG,                       :
NEW YORK BRANCH; DEUTSCHE BANK                               :
TRUST COMPANY AMERICAS; HSBC BANK                            :
(HSBC BANK USA, N.A.); INTESA SANPAOLA                       :
S.P.A.; JP MORGAN CHASE BANK N.A.; RBS                       :
CITIZENS, N.A.; ROYAL BANK OF CANADA;                        :
SOCIETE GENERALE; UBS AG; WELLS

| | |
|---|---|
| FARGO BANK, N.A.; BROWN BROTHERS HARRIMAN & CO.; MERCANTIL COMMERCE BANK, N.A.; STANDARD CHARTERED BANK; AND BANCO SANTANDER, S.A. | :<br>:<br>:<br>: |
| Respondents. | :<br>:<br>X |

ALVIN K. HELLERSTEIN, U.S.D.J.:

      Petitioners are successors of persons who were tortured or assassinated by agents of the Republic of Cuba. Each secured a judgment against Cuba from the Florida Circuit Court for wrongfully causing their predecessors' deaths, following defaults in appearance by Cuba. Each judgment was supported by specific findings of fact and conclusions of law, establishing jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A, previously § 1605(a)(7). Under the FSIA, a foreign nation is not immune to suit in federal or state court if the court finds that the foreign nation perpetrated certain acts of terror. *See Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993).

      Section 1605A provides in pertinent part that a foreign state shall not be immune from the jurisdiction of United States federal or state courts in any case "in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture [or] extrajudicial killing," if the foreign state was designated as a state sponsor of terrorism by the United States at the time the act occurred or if the foreign state was designated a state sponsor of terrorism as a result, at least partially, of the act of terror, and the victim or the claimant is a national of the United States. 28 U.S.C. § 1605A. Under § 1608(e), a hearing must be held to support the findings that must be made to satisfy § 1605A of the FSIA before a default judgment against the foreign state may be entered.

      Plaintiffs sued upon their respective judgments from the Florida Circuit Court to recover judgments against Cuba from this court and, once judgments were obtained, levied on

2

funds in banking institutions that had been blocked by order of the U.S. Treasury Department as funds owned or controlled by Cuba pursuant to the Cuban Asset Control Regulation, 31 C.F.R. § 515.201. Federal law authorizes levies on such blocked funds. *See* the Terrorism Risk Insurance Act, 28 U.S.C. § 1610 ("TRIA"); *see also Hausler v. JP Morgan Chase Bank*, 740 F. Supp. 2d 525, 527 (S.D.N.Y. 2010).

One affected bank, Banco Bilbao Vizcaya Argentaria (S.A.) ("Banco Bilbao"), moves against this procedure by attacking the jurisdictional basis of plaintiffs' judgments granted in the Florida Circuit Courts. Banco Bilbao argues that plaintiffs lacked the right to sue Cuba, a foreign sovereign, under the Foreign Sovereign Immunities Act, and that the Florida Circuit Court therefore lacked jurisdiction to grant judgments to plaintiffs. However, Banco Bilbao cannot collaterally attack in this court a judgment obtained in another state or federal court; that underlying judgment is entitled to full faith and credit under the United States Constitution and statutes. As I discuss in this order, the judgments granted by the Florida Circuit Court in favor of plaintiffs and against Cuba are entitled to full faith and credit. Banco Bilbao's motion is denied.

I.      **Plaintiffs' Claims and Judgments against Cuba**

A. *The Hausler Claim and Judgment*

Jeannette Fuller Hausler, a United States citizen, as personal representative of the estate of her deceased brother, Robert Otis Fuller ("Bobby Fuller"), filed suit against Cuba in the Florida Circuit Court. She sued under the FSIA, alleging that Cuba extra-judicially killed her brother in 1960. Cuba was properly served with process but did not appear. After taking extensive evidence, the court found that Bobby Fuller and his family, while living in Cuba during the revolution, were repeatedly harassed and threatened by members of the Castro-led

revolutionary movement. Castro's agents arrested Bobby Fuller in October 1960 and charged him with counterrevolutionary activity against Castro's regime. He was held in solitary confinement, interrogated, and tortured until he signed a confession. He had a fifteen-minute public trial, described by the Florida Circuit Court as a "sham of a court proceeding," after which he was sentenced to death by execution. An appeal was denied. Fuller was removed from his cell and executed by firing squad in October 1960. Dkt. No. 364-1.

The Florida Circuit Court found from the evidence that "Cuba . . . was designated to be a state sponsor in 1982 . . . at least in part by reason of the acts of terrorism described herein including the torture and extra-judicial killing of Bobby Fuller . . .," and "that all statutory criteria for the exercise of jurisdiction under this statute [the FSIA] over a claim against Defendant Cuba and the remaining Defendants (who are agents or instrumentalities of Defendant Cuba) have been established by evidence satisfactory to the Court." Dkt. No. 364-1 at 5.

The Florida Circuit Court found that plaintiff was a United States citizen; that Cuba had committed acts of terror against her brother, Bobby Fuller; and that partially as a result of those acts, Cuba was designated as a state sponsor of terrorism when Cuba was designated as a state sponsor of terrorism in 1982. By amended final judgment entered on January 19, 2007, the Florida Circuit Court granted Jeanette Fuller Hausler a money judgment in the amount of $400 million, pursuant to 28 U.S.C. § 1605(a)(7), codified since 2008, at 28 U.S.C. § 1605A.

Plaintiff Hausler domesticated her judgment against Cuba in the U.S. District Court for the Southern District of Florida on September 26, 2008 in the amount of $454,000,000 (inclusive of post-judgment interest). That court granted the judgment of the Florida Circuit Court full faith and credit. Plaintiff then sued in the U.S. District Court for the Southern District of New York, and on February 22, 2012, this court also granted the Florida Circuit Court

4

judgment full faith and credit. *See Hausler v. JPMorgan Change Bank, N.A.*, 845 F. Supp. 2d 553, 557-58 (S.D.N.Y. 2012).

### 2. *The Vera Claim and Judgment*

Petitioner Aldo Vera, Jr. ("Vera") is a United States citizen and the executor and personal representative of the estate of Aldo Vera, Sr. On December 28, 2001, Aldo Vera Jr. brought an action against Cuba in the Florida Circuit Court pursuant to 28 U.S.C. § 1605(a)(7), codified since 2008, at 28 U.S.C. § 1605A, seeking damages for the assassination of his father, Aldo Vera, Sr. Vera Jr. alleged that Vera, Sr. was a high-ranking Cuban police official who defected to Puerto Rico and organized an anti-revolutionary political group there. The Cuban government sentenced him to death *in absentia*. Vera, Jr. alleged that Cuban agents then assassinated his father in 1976, constituting an extrajudicial killing which the FSIA classifies as an act of terror. On November 25, 2002, Cuba was duly served with a summons and complaint, but did not appear. In May 2008, the Circuit Court held a trial and heard evidence on the merits and concerning its jurisdiction over Cuba.

After hearing the evidence, the Florida Circuit Court found that Cuba was responsible for the extra-judicial killing of Vera, Sr., that Cuba had committed an act of terror in violation of the FSIA, and that Cuba was designated as a state sponsor of terrorism as a result, at least partially, of the assassination of Vera, Sr. The court found that "agents of the Cuban government, acting as agents and instrumentalities of the Republic of Cuba, under orders of the Cuban government and within the scope of their employment, shot Aldo Vera, Sr., in public, in the back with an automatic weapon killing him;" Cuba was designated as a state sponsor of terrorism in 1982; Cuba has "provided training, intelligence, financial support and otherwise

sponsored international terrorism groups;" and that Cuba's "engagement and support of international terrorism has continued through the present day unabated." *See* Dkt. 351-1 at 3. The assassination of Vera as punishment for anti-Cuban activities in Puerto Rico, similar to other examples of torture and assassination, and Cuba's continuous engagement in such terrorist activities led to the designation of Cuba as a state-sponsor of terrorism. The court concluded that Cuba was "designated to be a state sponsor of terrorism in 1982 and therefore subject to its jurisdiction for Vera Sr.'s death under the FSIA." *Id.* Thus, the court held that Cuba was designated as a state sponsor of terrorism, at least in part, because of Vera, Sr.'s assassination, and that it had subject matter jurisdiction pursuant to the FSIA. On May 15, 2008, the Florida Circuit Court entered judgment in favor of Vera Jr. and against Cuba in the amount of $95,597,591.22 for economic loss, punitive damages, pain and suffering, and solatium.

On March 5, 2012, Vera Jr. sued in this court for recognition of the Florida judgment in his favor. On August 17, 2012, this court entered judgment giving full faith and credit to the Florida state court judgment but reduced the award to $49,346,713 to exclude the punitive damages aspect of the award. I held that this court had "subject matter jurisdiction pursuant to [28 U.S.C.] § 1331 and 1602 *et seq.*" and that "Plaintiff's Florida Judgment of May 15, 2008 is entitled to full faith and credit in this Court pursuant to 28 U.S.C. § 1738." *See* Dkt. Nos. 12-13.

### 3. *The Villoldo Claim and Judgment*

In 2011, Alfredo Villoldo and Gustavo Villoldo, as administrators of the estate of Gustavo Villoldo Argilagos, a United States citizen, brought a wrongful death action in Florida Circuit Court pursuant to § 1605A of the FSIA, alleging that Cuba tortured him to death. Cuba

was duly served with process and offered the option of international arbitration, but did not appear. The Florida Circuit Court held a trial and heard evidence that Gustavo Villoldo Argilagos and his family were specifically targeted by the Cuban government in retaliation for Gustavo Villoldo Argilago's role in leading a mission in Bolivia to track Che Guevera, and because of his familial wealth. Gustavo Villoldo Argilago was forcibly removed several times from his home at gunpoint, on several occasions by machine guns held to his neck. The relentless torture and harassment ultimately caused Villoldo Argilago to commit suicide.

The Florida Circuit Court determined that the harassment of Villoldo Argilago constituted acts of terror under the FSIA and that "Mr. Villoldo was told repeatedly that he, his sons, and his wife would be killed, unless he acquiesced to the turnover of his property and took his own life. Cuban agents abducted Villoldo from his home, and forcibly subjected him to hours of torture and interrogations." Dkt. No. 363-1 at 2-5. Visibly shaken when he returned to his home, he was unable to eat or sleep, and lost control of his bodily functions. On February 16, 1959, Mr. Villoldo Argilago's body was found in his home, an apparent suicide. *Id.* at 5. However, the torture did not stop, continuing through 2003 against the Villoldo family. As the court found, "[t]hese events started in January, 1959, they caused Mr. Villoldo to take his life, they caused the loss of the Villoldo property, and continued until the middle of 2003 with threats of assassination and assassination attempts. Their actions are properly classified as torture." *Id.* at 6. The Circuit Court found that "[t]he undisputed evidence at trial established that Defendants' conduct rose to such a level of depravity contemplated by the [FSIA]." *Id.*

The court held that "with regard to subject matter jurisdiction, personal jurisdiction, and service of process, the record establishes that this Court has subject matter jurisdiction and personal jurisdiction over the Defendants and that service of process was perfected pursuant to

7

applicable law." *Id.* As the evidence showed and the court found, these acts continued through 2003 after Cuba had been designated as a state sponsor of terrorism. The court fully and fairly considered its jurisdiction under the FSIA and concluded, after a full review of the evidence, that "the record establishes that this court has subject matter jurisdiction." *Id.* at 6. The *Villoldo* court made the findings necessary under § 1605(a)(7) to establish its jurisdiction to hear the wrongful death action as it found that Cuba's torture of the Villoldo family constituted an act of terror that occurred after Cuba was designated as a state sponsor of terrorism and that plaintiffs were United States Citizens. The Villoldos obtained a final judgment on August 19, 2011 in the amount of $2,790,000,000 for economic loss, punitive damages, intentional infliction of emotional distress, and wrongful death.

The Villoldo judgment was granted full faith and credit and thus enforced by judgments in: (1) the Southern District of New York in *Villoldo v. Cuba*, No. 11-cv-9394 (S.D.N.Y. Dec. 21, 2011); (2) the Western District of Pennsylvania: *Villoldo v. Cuba*, No. 2:13-mc-00016 (W.D. Pa. May 28, 2013) (Doc. No. 24); and (3) the District of Massachusetts: *Villoldo v. Cuba*, No. 4:13-mc-94014 (D. Mass. Sept. 24, 2013) (Doc. No. 25). The District of Massachusetts expressly held that its order "enforces a duly registered Florida state court judgment, recognized by a New York Federal Court and given full faith and credit by this Court." *Id.* In October 25, 2012, this court gave that judgment full faith and credit and entered a judgment against Cuba in the amount of $2,903,898.07 which included post-judgment interest.

II.     **Levies of Execution under the Foreign Sovereign Immunities Act on behalf of *Hausler*, *Vera* and *Villoldo***

    A. *The Proceedings Supplementary to Judgment in this Court*

Vera, Hausler and Villoldo, each having obtained a judgment in this court on the strength of an underlying judgment in the Florida Circuit Court, served levy of execution on banking institutions in New York City holding blocked funds originating with Cuba or instrumentalities of Cuba, or expected to be received by Cuba or instrumentalities of Cuba. The funds, mainly or entirely, were in the process of being electronically received for re-transmission by federally-chartered clearing banks in New York City, either from banks abroad to Cuban beneficiaries, or from Cuban entities to banks abroad. By order of the U.S. Treasury Department, these electronically transmitted funds were blocked in the New York clearing banks. See Trading with the Enemy Act, 50 U.S.C. App. § 5; Cuban Assets Control Regulation, 31 C.F.R. Part 515.01 *et seq.* (2011); *Hausler v. JP Morgan Chase Bank*, 740 F. Supp. 2d 525, 527 (S.D.N.Y. 2010) (explaining that the Cuban Asset Control Regulations "seek to block transactions in which Cuba has 'any interest of any nature whatsoever, direct or indirect.' 31 C.F.R. § 515.201(a)"). Pursuant to The Terrorism Risk Insurance Act ("TRIA"), 28 U.S.C. §§ 1610 note and 1610(g), an amendment to the FSIA, judgment creditors against a foreign state found to sponsor terrorism are entitled to levy against such blocked funds, at least to the extent that they constitute property of the foreign state or its instrumentalities. *See* Fed. R. Civ. P. 69(a); N.Y. C.P.L.R. § 5225(b).

The funds subject to levy were insufficient to satisfy the *Vera, Hausler* and *Villoldo* judgments. The competition among these similarly-situated plaintiffs for turnover of these funds and the involvement and potential resistance of numerous banks threatened to create wasteful and burdensome proceedings. By consent of Judge Victor Marrerro who presided over

the Hausler case and Judge Laura T. Swain who presided over the Villoldo case, I assumed the task of coordinating and regulating the *Hausler*, *Villoldo* and *Vera* proceedings.

Plaintiffs filed a sharing agreement to recovered funds, ending the competition among them and enabling me to create a coordinated procedure for adjudicating property rights with respect to the blocked funds. Dkt. No. 323. The special proceeding provided by N.Y. C.P.L.R. § 5225 is a useful procedure to regulate adverse claims to property subject to levy of execution, and plaintiffs agreed to file an appropriate petition, and the banks, to answer the petition. By their Answers and Third Party Complaints, the banks would give notice of plaintiffs' claims to all parties potentially interested in the funds held by the bank and which were blocked by the U.S. Treasury, and authorize any such adverse claimants to interplead their own claims of interest, so that the court could adjudicate plaintiffs' claims as judgment creditors of Cuba, and the rights and interests of adverse parties.

On February 12, 2014, plaintiffs filed an Amended Omnibus Petition for Turnover Order against nineteen banking institutions listed as Respondents/Garnishees. The petition lays out the facts of each individual judgment and award and the court's subject matter jurisdiction, all recounted earlier in this opinion. The petition also lists the assets held by each Respondent which would be subject to the turnover order and requests that

> The Court enter orders directing Respondents to turn over to Petitioners the Accounts in their possession pursuant to the Cuban Asset Control Regulations, 31 C.F.R. Part 515, in which the Republic of Cuba, or its agencies and instrumentalities have an interest, together with accrued interest, in partial satisfaction of Petitioners' Judgments.

*See* Dkt. No. 423 at 13. Respondents/Garnishees filed Answers responding to the petition and pleaded affirmative defenses, including failure to state a claim upon which relief can be granted; insufficient personal jurisdiction; that persons other than the Republic of Cuba may have

10

ownership interests in the listed accounts; improper service; failure to join necessary and indispensable parties; the existence of superior claims by parties other than petitioners; and as is the case in the pendant motion decided today, lack of subject matter jurisdiction. Several Answers also asserted counterclaims and sought an order that, among other things, discharges respondent from liability under N.Y. C.P.L.R. §§ 5209 and 6204 upon compliance with any turnover order that this court may enter.

I have jurisdiction over these turnover proceedings under 28 U.S.C. §§ 1330, 1331, 1738. "The TRIA provides jurisdiction for execution and attachment proceedings to satisfy a judgment for which there was original jurisdiction under the [Foreign Sovereign Immunities Act]." *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 52 (2d Cir. 2010).

The special proceeding filed by plaintiffs was responsive also to another protocol demanded by the affected banks, recognizing a distinction between electronic transfers of funds intended for a Cuban beneficiary, and electronic transfers of funds initiated by Cuba or a Cuban person or entity. The distinction recognized that the basis for blocking of funds under the Cuban Asset Control Regulation may be broader than the basis for execution by a judgment creditor. Funds were blocked under U.S. Treasury Department regulations because an involved party had some relationship to Cuba, or a Cuban national or institution. Funds subject to levy, the banks argue, must be owned, legally or beneficially, by Cuba. The district court held in *Hausler v. JPMorgan Chase Bank, N.A.*, 845 F.Supp.2d 553, 577-78 (S.D.N.Y. 2012) (Marrero, D.J.) that ownership of blocked funds was not required, and that all proceeds of electronic funds transfers are available for execution. The case, along with a contrary decision, *Calderon-Cardona v. JPMorgan Chase Bank, N.A.*, 867 F.Supp.2d 389-400-01 (S.D.N.Y. 2011), is pending before the Second Circuit. (No. 12-1264, 1277, 12-75, oral argument held Feb. 11, 2013). A like issue is

11

before the D.C. Circuit, see *Heiser v. Islamic Republic of Iran*, No. 12-7101 (oral argument held Sep. 24, 2013).

The appeal is likely to involve a previous decision of the Second Circuit, that there is no incident of property in New York when an electronic fund transfer is transmitted at the instance of, or by, a third party abroad and passes through a New York clearing bank for onward transmittal to Cuba, or an instrumentality of Cuba. *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 68, 70 (2d Cir. 2009). Only the bank that transmitted the funds, or the party for which (or whom) it acts has a claim to that blocked EFT. *Export-Import Bank of U.S. v. Asia Pulp & Paper Co*, 609 F.3d 111, 119-20 (2d Cir. 2010); *see also* U.C.C. § 4A-502 official cmt. 4. By agreement of the affected banks, this stage of the turnover proceeding excludes those transactions destined for Cuba, and focuses only on blocked assets in which a Cuban Government party or its institution was the originator of the EFT, or directs on through a bank. *See* Letter of Karen E. Wagner of Davis Polk, Oct. 22, 2013, Doc. No. 327.

Banco Bilbao objects to the turnover proceedings regardless of this distinction. Banco Bilbao argues that the U.S. District Court lacks jurisdiction because the Florida state courts did not have original jurisdiction under the FSIA. Banco Bilbao argues that the Florida state courts lacked original jurisdiction because the Florida state courts failed to find that Vera, Hausler, and Villoldo established facts that sufficiently showed that the Florida state courts properly had jurisdiction over Cuba pursuant to 28 U.S.C. § 1605(a)(7) of the Foreign Sovereign Immunities Act. The findings to that effect by the Florida Circuit Court, Banco Bilbao argues, are not valid findings, and the judgments of that court therefore are not entitled to full faith and credit.

### III. Discussion

Banco Bilbao's motion in this court constitutes a collateral attack of the judgments of the Florida Circuit Court. The Full Faith and Credit Clause of the U.S. Constitution along with the Full Faith and Credit Act requires that "the judicial proceedings of any court of any such State shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such state . . . from which they are taken." 28 U.S.C. § 1738. The Full Faith and Credit Act requires a federal court to recognize and enforce a judgment of a state court or of another federal court unless there is an obvious and grave jurisdictional defect apparent on the face of the court's order. *See Davis v. Davis*, 305 U.S. 32, 39-40 (1930); *Weininger v. Castro*, 462 F. Supp. 2d 457 (S.D.N.Y. 2006). Even as to questions of jurisdiction, if the questions have been fully and fairly litigated and finally decided, the judgment is entitled to full faith and credit. As the U.S. Supreme Court held:

> A judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment. . . The need for finality within our federal system applies with equal force to questions of jurisdiction.

*Underwriters National Assurance Company v. North Carolina Life and Accident and Health Insurance Guaranty Association*, 455 U.S. 691, 706, n.13. (1982) (internal quotations and citations omitted); *see also, Weininger*, 462 F. Supp. 2d at 471.

Under the Full Faith and Credit Act, I am to give the Florida judgment "the same weight that it would receive in the courts of [Florida]." *Marresse v. Am. Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 381 (1985). When faced with a collateral attack, I may examine the validity of the judgment to the extent that the originating court would entertain such a challenge. My initial inquiry is limited to that which the state court would have conducted in relation to the

judgment it granted. See *Johnson v. Muelberger*, 340 U.S. 581, 587 (1951); *Stone v. Williams*, 970 F.2d 1043, 1053-54 (2d Cir. 1992). "[U]nder [the Full Faith and Credit Act], a federal court is obligated to give the same preclusive effect to that judgment as would the courts of the rendering state." *Weininger v. Castro*, 462 F. Supp. 2d 457, 470 (S.D.N.Y. 2006). Thus, only "if the state courts would entertain a collateral attack on the judgment, so may the federal courts." *Johnson v. Muelberger*, 340 U.S. 581, 587 (1951).

If Banco Bilbao had made its jurisdictional challenge in the Florida Circuit Court, it would have had to show that the judgment was "void."[1] *See* Florida Rule of Civil Procedure 1.540. Under Florida law, a "void judgment is so defective that it is deemed never to have had legal force and effect" due to a lack of subject matter or personal jurisdiction. *Sterling Factors Corp. v. U.S. Bank Nat'l Ass'n*, 968 So.2d 658, 665 (Fl. App. 3d Dist. 2007). The criteria are exacting. "If a court has subject matter jurisdiction and that jurisdiction has been properly invoked by pleadings and properly perfected by service of process, its judgments, although erroneous as to law or fact and subject to reversal on appeal are nevertheless not void." *Palmer v. Palmer*, 479 So.2d 221, 221 (Fl. App. 5th Dist. 1985). Rule 1.540 cannot be invoked to obtain a new trial, or to recreate an appellate review for potential judicial error. It is intended to ensure that in granting judgment based on proper subject matter and personal jurisdiction, the court did not violate either party's right to due process. *See, e.g., Curbelo v. Ullman*, 571 So. 2d 443, 444 (Fla. Sup. Ct. 1990); *Tannenbaum v. Shea*, 2014 WL 51645 (Fla. App. 4 Dist., Jan. 8, 2014).

Banco Bilbao must concede that the Florida Circuit Court made appropriate jurisdictional findings, and created a sufficient evidentiary record. The bank's argument is that the court erred in determining the merits, and specifically that it erred in its finding that Cuba

---

[1] There are other ways to challenge a judgment for jurisdictional defect under Florida state law that are not relevant here because they are time barred. *See* Florida Rule of Civil Procedure 1.540.

was designated as a state sponsor of terrorism, at least partially, as a result of the acts against Villoldo, Hausler, and Vera and that these acts properly constituted acts of terror under the FSIA. The Florida Circuit Court held a trial in each of the three cases, found the facts, and applied the law, finding that acts of terrorism took the lives of plaintiffs' family members; that Cuba was designated as a state sponsor of terrorism either before these acts or partially as a result of these acts; and that victims or claimants were United States citizens. The findings in each case satisfied the criteria of 28 U.S.C. § 1605(a)(7) (now § 1605A), and established that the Florida Circuit Court in which each of the plaintiffs filed suit had jurisdiction over Cuba. *See, e.g., Weininger v. Castro,* 462 F. Supp. 2d 457 (2d Cir. 2006). Thus a jurisdictional challenge in Florida state court would fail as Banco Bilbao cannot come close to showing these judgments are void for lack of jurisdiction.

Before granting full faith and credit, I must also ensure that the originating court's order did not violate the guarantees of federal due process under the U.S. Constitution since I cannot enforce a constitutionally infirm judgment. *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 482-83 (1982) ("constitutionally infirm judgment" is not entitled to full faith and credit). The Florida state court judgments may be examined to ascertain only if the court had jurisdiction over plaintiffs' lawsuits and that these findings did not transgress any rights guaranteed by federal due process. I may not examine the underlying merits of the prior courts' fact-finding except to ensure that they satisfy the federal guarantees of due process. *Underwriters National Assurance Company* 455 U.S. at 706. Here, due process was given to both the plaintiffs and to Cuba, and the judgments of the Florida Circuit Court are entitled to full faith and credit. There are thus no concerns that the Florida Circuit Court judgments transgressed any guarantees of due process provided for in the U.S. Constitution either. Banco Bilbao's collateral challenge to the

15

judgments is thus without merit. This is far from "the exceptional case in which the court that rendered the judgment lacked even an arguable basis for jurisdiction." *United Student Aid Funds, Inc v. Espinosa*, 130 S. Ct. 1367 (2010).

Banco Bilbao cannot successfully make this collateral attack by motion to the U.S. District Court of the Southern District of New York, for the District Court must give full faith and credit to the judgment of the Florida Circuit Court. Nor could Banco Bilbao successfully make its challenge in the Florida Circuit Court since, as discussed previously, Rule 1.540 cannot be invoked to obtain a new trial, or to recreate an opportunity for an appeal. The merits were fully and fairly litigated and decided by the Florida Circuit Court, including the merits of its jurisdictional findings. The judgments of that court are final for the judgment are not void under Florida law and do not violate due process under the U.S. Constitution.

*Conclusion*

This court has subject matter jurisdiction over the turnover proceedings brought by plaintiff. The Terrorism Risk Insurance Act, 28 U.S.C. § 1610 ("TRIA") clearly authorizes the levies of execution by the plaintiffs on blocked funds owned or controlled by Cuba. Banco Bilbao's motion to dismiss these proceedings for lack of subject matter jurisdiction is without merit. The Florida Circuit Court properly found that it had subject matter jurisdiction over Cuba, pursuant to 28 U.S.C. § 1605(a)(7). The judgments granted to the plaintiffs by that court were each supported by appropriate findings of fact and conclusions of law based on full and fair evidentiary hearings. The judgments are each entitled to full faith and credit.

The Clerk shall mark the motion (Doc. No. 349) terminated.

SO ORDERED.

Dated: August 22, 2014
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge