UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALDO VERA, JR., as Personal Representative of the Estate of Aldo Vera, Sr., <br><br>      Plaintiff, <br><br>  v. <br><br>THE REPUBLIC OF CUBA, <br><br>      Defendant. | Case No. 12-CV-01596 (AKH) |
| ALDO VERA, JR., as Personal Representative of the Estate of Aldo Vera, Sr.; and <br><br>JEANETTE FULLER HAUSLER, and WILLIAM FULLER as court-appointed co-representatives of the ESTATE OF ROBERT OTIS FULLER, deceased, on behalf of all beneficiaries of the Estate and the ESTATE OF ROBERT OTIS FULLER; and <br><br>ALFREDO VILLOLDO, individually, and GUSTAVO E. VILLOLDO, individually and as Administrator, Executor, and Personal Representative of the ESTATE OF GUSTAVO VILLOLDO ARGILAGOS, <br><br>      Petitioners, <br><br>  v. <br><br>BANCO BILBAO VIZCAYA ARGENTARIA (S.A.); BANK OF AMERICA N.A.; BANK OF NEW YORK MELLON; BARCLAY'S BANK PLC; CITIBANK N.A.; CREDIT SUISSE AG, NEW YORK BRANCH; DEUTSCHE BANK TRUST COMPANY AMERICAS; HSBC BANK (HSBC BANK USA, N.A.); INTESA SANPAOLO S.P.A.; JP MORGAN CHASE BANK, N.A.; RBS CITIZENS, N.A.; ROYAL BANK OF CANADA; SOCIETE GENERALE; UBS AG; WELLS FARGO BANK, NA; BROWN BROTHERS HARRIMAN & CO.; MERCANTIL COMMERCEBANK, N.A.; STANDARD CHARTERED BANK; AND BANCO SANTANDER, S.A., <br><br>      Respondents/Garnishees. | **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT GRANTING TURNOVER OF UNCONTESTED PHASE I ACCOUNT AT BBVA** |

nydocs1-1037545.1

Petitioners, by their undersigned attorneys, submit this memorandum of law in support of their motion for judgment granting turnover of the uncontested Phase I, non-interpleader account at Banco Bilbao Vizcaya Argentaria (S.A.) ("BBVA").

## I. BACKGROUND

This is a judgment enforcement proceeding pursuant to Article 52 of the N.Y. Civil Practice Law and Rules, as applied through Rule 69 of the Federal Rules of Civil Procedure. By this memorandum, Petitioners will establish: (a) Petitioners are entitled to turnover of the Blocked Assets, as that term is defined below, pursuant to TRIA and FSIA; and (b) Petitioners satisfied the requirements of CPLR § 5225.[1]

On September 20, 2013, Petitioners filed an Omnibus Petition for Turnover Order (the "Petition", Dkt. No. 298). In the Petition, Petitioners demonstrated that (a) they hold valid judgments against the Republic of Cuba for acts of terrorism, (b) the Respondents hold blocked assets of Cuba or Cuba's agencies or instrumentalities, which have been blocked pursuant to the Cuban Assets Control Regulations ("CACRs") 31 C.F.R. Part 515, and (c) Petitioners are entitled to attachment and execution of those assets pursuant to Section 201 of the Terrorism Risk Insurance Act of 2002 ("TRIA") and Section 1610(g) of the Foreign Sovereign Immunities Act ("FSIA").

On December 9, 2013, the Court entered an Order with Respect to Giving Notice of Turnover Proceeding (the "Notice Order", Dkt. No. 368). The Notice Order establishes a procedure for notice and service on third parties who may seek to claim an interest in Phase I

---

[1] The facts supporting this motion are set forth in the Declaration of Robert A. Swift, Esq. dated September 15, 2014 ("Swift Decl."), that is filed concurrently herewith and to which the Court is respectfully referred.

Blocked Assets, defined as blocked electronic funds transfers for which Cuba or its agencies or instrumentalities is an originator or originating bank. (*Id*. at pp. 2-3.)

Respondents had the option of filing interpleader petitions for any Phase I Blocked Asset with a value greater than or equal to $59,500. (*Id*. at ¶ 8.) For all other Phase I Blocked Assets, the Respondents were required to deliver the Notice Documents, as that term is defined in the Notice Order, to the originator, originator's bank, and any intermediary bank pursuant to the notice procedure set forth in the Notice Order. (*Id*. at ¶ 3.) For all such Phase I parties to whom the Notice Documents were delivered without the use of interpleader (the "Non-Interpleader Third Parties"), the deadline to file written objections to this turnover proceeding was June 19, 2014.[2]

Pursuant to the Notice Order, on February 12, 2014, Petitioners filed an Amended Omnibus Petition for Turnover Order identifying, on 19 exhibits filed under seal, the Phase I and Phase II Blocked Assets[3] that Petitioners sought turned over that are held by the 19 Respondent banks (the "Amended Petition", Dkt. No. 423). The Respondents thereafter delivered the Notice Documents to the Non-Interpleader Third Parties pursuant to one of the methods outlined in the Notice Order.

The June 19, 2014 deadline has passed and five objections have been filed by Non-Interpleader Third Parties. No objection was filed to the single account at BBVA at issue in this Motion. The blocked account at issue in this Motion is a blocked electronic fund transfer for

---

[2] The June 19, 2014 deadline is contained in the Court's March 26, 2014 Notice Order for Turnover Proceeding (the "Second Notice Order", ECF # 457), which amended certain deadlines contained in the Notice Order and clarified that Petitioners also seek blocked deposit accounts turned over in addition to blocked EFTs.

[3] Phase II Blocked Assets are defined as blocked electronic funds transfers for which Cuba or its agencies or instrumentalities is a beneficiary or beneficiary bank. Phase II Blocked Assets are not at issue at this time.

which BBVA only had information as to the originator and intermediary bank (the "Blocked Asset at BBVA"). BBVA notified the originator of the blocked account as required by the Court's Notice Order and the originator has not disputed that it is an agency or instrumentality of Cuba, made any claim to the blocked account, or otherwise appeared in these proceedings.

## II. ARGUMENT

A.  **Petitioners are Entitled to Turnover of the Blocked Assets Pursuant to TRIA and FSIA.**

As demonstrated in the Petition and Amended Petition, both TRIA and FSIA provide grounds for turnover of the Blocked Asset at BBVA. Section 201(a) of the TRIA provides that:

> Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent any compensatory damages for which such terrorist party has been adjudged liable.

TRIA § 201(a), 116 Stat. at 2337. Section 1610(g) of the FSIA provides for broader categories of property that can be attached and executed upon:

> [T]he property of a foreign state against which a judgment is entered under section 1605A, and the property of an agency or instrumentality of such a state, including property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity, is subject to attachment in aid of execution, and execution, upon that judgment as provided in this section, regardless of—
>
> (A) the level of economic control over the property by the government of the foreign state;
> (B) whether the profits of the property go to that government;
> (C) the degree to which officials of that government manage the property or otherwise control its daily affairs;
> (D) whether that government is the sole beneficiary in interest of the property; or
> (E) whether establishing the property as a separate entity would entitle the foreign state to benefits in United States courts while avoiding its obligations.

28 U.S.C. § 1610(g).[4]

As set forth in the Swift Declaration, the Blocked Asset at BBVA is property of Cuba for purposes of execution under TRIA and FSIA because the originator of the EFT is and agency or instrumentality of Cuba.[5] An "agency or instrumentality of a foreign state" is defined under the FSIA for purposes of 28 U.S.C. § 1610(g) as an entity:

> (1) which is a separate legal person, corporate or otherwise, and
>
> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
>
> (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603(b). The document attached as Exhibit 1 to the Swift Declaration, contains information as to the account number at BBVA, the originator of the blocked account at issue, the amount in the account, and the sources of information establishing that the originator is an agency or instrumentality of Cuba. Exhibit 2 to the Swift Declaration contains evidence demonstrating that the originator is an agency or instrumentality of Cuba.

---

[4] The Villoldo Petitioners obtained a judgment pursuant to Section 1605A and may therefore execute on the types of assets described in Section 1610(g).

[5] Any blocked EFT to which a Cuban agency or instrumentality is a party is property of Cuba and subject to attachment and execution because, among other things, TRIA and FSIA preempt any contrary state law or regulation. *Hausler v. JPMorgan Chase Bank, N.A.*, 845 F.Supp.2d 553, 562-63 (S.D.N.Y. 2012). Some of the Respondents in this proceeding have taken the position in other proceedings that certain provisions of the Uniform Commercial Code govern the determination of the respective property interests in blocked EFTs. Under the Respondents' interpretation, only originators and originating banks have a property interest in blocked EFTs which are attachable and may be executed against in a proceeding under TRIA and FSIA. This issue is currently pending before the United States Court of Appeals for the Second Circuit in two pending appeals: *Hausler v. JPMorgan Chase Bank, N.A.*, Nos. 12-1264 and 12-1277 (2d Cir.) and *Calderon Cardona v. JPMorgan Chase Bank, N.A.*, 12-75 (2d Cir.). However, even under the Respondents' interpretation, Phase I Blocked Assets are attachable in these proceedings. On this basis, Respondents agreed to proceed with the notice protocol with respect to Phase I Blocked Assets.

By virtue of the Cuban originator's failure to appear in these proceedings, the Court should deem as true Petitioners' allegations regarding its status as an agency or instrumentality of Cuba and Petitioners' evidence submitted in support of those allegations, all of which are uncontested.  *Weininger v. Castro*, 462 F.Supp.2d 457, 495 (S.D.N.Y. 2006) (by virtue of Cuban agency's default and failure to respond, "all factual allegations in the complaint other than those related to damages are accepted as true").  The Court in *Weininger* deemed the plaintiff's allegation that a Cuban entity was an agency of the Cuban government, and its evidence submitted in support, to be true based on the Cuban agency's failure to appear and respond to turnover motions and an interpleader petition.  *Id*. at 496.  In particular, the *Weininger* Court concluded:

> In light of [the claimant] having been given notice of this proceeding, the Court credits Plaintiffs' evidence and finds that [the claimant] is an agency or instrumentality of Cuba, and thus that Plaintiffs may execute upon the blocked asset of [the claimant].

*Id*. at 496; *see also Alejandre v. Republic of Cuba*, 996 F.Supp. 1239, 1243 (S.D. Fla. 1997) ("Because Cuba has presented no defense, the Court will accept as true Plaintiffs' uncontroverted allegations.").  Petitioners' allegations, and the evidence submitted in Exhibit 2 to Swift Decl., should similarly be deemed true based on failure of any party, including the alleged Cuban agencies or instrumentalities, to appear and/or contest the veracity of the allegations of the Petition despite proper notice.  Accordingly, Petitioners have demonstrated their entitlement to execute on the Blocked Asset at BBVA pursuant to TRIA and FSIA.

B.  **Petitioners Satisfied the Requirements of CPLR § 5225.**

Under CPLR § 5225, a judgment creditor may commence a proceeding against a third-party in possession of funds in which the judgment debtor has an interest and:

nydocs1-1037545.1

> where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor . . . .

CPLR § 5225(b).  The statute also requires notice to be provided to the judgment debtor either in the same manner as a summons or by registered or certified mail, return receipt requested.  *See id.*  Notice of this action to the Republic of Cuba was delivered by the Clerk of Court by both registered mail and delivery in the same manner as a summons (28 U.S.C. § 1608(a)(3)). Accordingly, Petitioners have satisfied their obligation to provide notice under CPLR § 5225.

Furthermore, even though it was not required under Section 5225, BBVA provided notice to the originator by one of the methods outlined in the Notice Order.  This notice satisfied "all of the requirements for service under the FSIA, the Federal Rules and the CPLR and all of the requirements of due process of law."  *See* Notice Order, ECF # 368 at ¶ 14.  The originator failed to object by June 19, 2014 to the attachment and execution of the assets identified in this motion. By virtue of its default and failure to appear, the allegations of the Amended Petition are deemed true and Petitioners have therefore established their superior right to the Blocked Asset at BBVA which is the subject of this motion.  *Weininger*, 462 F.Supp.2d at 495.

The funds in this blocked account, therefore, should be turned over immediately to Petitioners towards satisfaction of their judgments pursuant to TRIA and FSIA.

### III.  CONCLUSION

Based on the foregoing, Petitioners respectfully request that the Court enter an Order substantially in the form attached to the Notice of Motion requiring BBVA to immediately turn over the blocked account that is the subject of this motion and identified in Exhibit 1 to the Swift Declaration, together with all accrued interest, and discharge BBVA from liability in connection with the turnover of those funds, as set forth in the proposed form of Order.

nydocs1-1037545.1

| | |
|---|---|
| HALL, LAMB & HALL, P.A. | KOHN, SWIFT & GRAF, P.C. |
| By: /s/ Andrew C. Hall | /s/ Robert A. Swift |
| Andrew C. Hall, Esq.* | Admitted *Pro Hac Vice* |
| Brandon R. Levitt, Esq. | One South Broad Street, Suite 2100 |
| Grand Bay Plaza, Penthouse One | Philadelphia, Pennsylvania 19107 |
| 2665 South Bayshore Drive | Phone: 215-238-1700 |
| Miami, Florida, 33133 | Fax:    215-238-1968 |
| Phone: (305) 374-5030 | |
| Fax:    (305) 374-5033 | Jeffrey E. Glen |
| * admitted *pro hac vice* | ANDERSON KILL P.C. |
| | 1251 Avenue of the Americas |
| and | New York, New York 10020 |
| | Phone: 212-278-1000 |
| Edward H. Rosenthal, Esq. | Fax:    212-278-1733 |
| Beth I. Goldman, Esq. | |
| FRANKFURT KURNIT KLEIN & SELZ, P.C. | *Attorneys for Petitioner Aldo Vera, Jr.* |
| 488 Madison Ave, 10th Floor | |
| New York, New York 10022 | |
| Phone: (212) 980-0120 | COLSON, HICKS, EIDSON |
| Fax:    (212) 593-9175 | |
| | /s/ Roberto Martinez |
| *Attorneys for Alfredo Villoldo, individually, and Gustavo E. Villoldo, individually, and as Administrator, Executor, and Personal Representative of the Estate of Gustavo Villoldo Agrilagos* | Roberto Martinez, Esq.* |
| | Ronald W. Kleinman, Esq. |
| | 255 Alhambra Circle, Penthouse |
| | Coral Gables, Florida, 33134 |
| | Phone: (305) 476-7400 |
| | Fax: (305) 476-7444 |
| | * *pro hac vice* admission pending (ECF No. 293) |
| | |
| | *Attorneys for Petitioners Jeanette Fuller Hausler, and William Fuller as court-appointed co-representatives of the Estate of Robert Otis Fuller, deceased, on behalf of all beneficiaries of the Estate and the Estate Of Robert Otis Fuller* |