UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
ALDO VERA, JR., as personal representative of
the Estate of Aldo Vera, Sr.,

           *Plaintiff*,

    v.

THE REPUBLIC OF CUBA,

           *Defendant*.
------------------------------------x

No. 12 Civ. 1596 (AKH)

**MEMORANDUM OF LAW OF STANDARD CHARTERED BANK IN
SUPPORT OF ITS MOTION FOR RECONSIDERATION OF THE COURT'S
SEPTEMBER 10, 2014 DISCOVERY ORDER AND, ALTERNATIVELY, FOR
CERTIFICATION OF AN INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**

Barry J. Glickman
Bruce S. Goodman
ZEICHNER ELLMAN & KRAUSE LLP
1211 Avenue of the Americas
New York, New York 10036
(212) 223-0400 (telephone)
(212) 753-0396 (facsimile)
bglickman@zeklaw.com
bgoodman@zeklaw.com

Bruce E. Clark
Sharon L. Nelles
Bradley P. Smith
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000 (telephone)
(212) 558-3588 (facsimile)
clarkb@sullcrom.com
nelless@sullcrom.com
smithbr@sullcrom.com

*Attorneys for Non-Party
Standard Chartered Bank*

September 24, 2014

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

BACKGROUND ...................................................................................................................... 2

       A.     Plaintiff and Standard Chartered ............................................................................ 2

       B.     The Information Subpoena and the Motion To Compel ........................................ 2

       C.     The September 10 Order ........................................................................................ 3

       D.     The Second Circuit's Decision in *Gucci* ............................................................... 3

ARGUMENT ............................................................................................................................ 5

I.     Reconsideration of the September 10 Order Is Appropriate in
Light of the Second Circuit's Subsequent Decision in *Gucci* ........................................ 5

II.    Standard Chartered Is Not Subject to General Jurisdiction. .......................................... 6

III.   There Is No Basis for an Assertion of Specific Jurisdiction over
Standard Chartered for the Purpose of Compelling Responses to the
Information Subpoena Based on Information Outside the United States. .................... 7

IV.   Standard Chartered Has Not Waived Jurisdictional Defenses. ..................................... 8

V.    The Court Must Undertake an International Comity Analysis Before Compelling
Standard Chartered To Provide Information from Outside the United States. ............ 9

VI.   In the Alternative, the Court Should Certify the September 10
Order for Interlocutory Appeal. .................................................................................. 10

CONCLUSION ...................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Application To Enforce Admin. Subpoenas Duces Tecum of the SEC* v. *Knowles*,
   87 F.3d 413 (10th Cir. 1996) ............................................................................................. 7

*Daimler AG* v. *Bauman*,
   134 S. Ct. 746 (2014) ............................................................................................... *passim*

*Eitzen Bulk A/S* v. *Bank of India*,
   827 F. Supp. 2d 234 (S.D.N.Y. 2011) ............................................................................... 3

*Gucci Am., Inc.* v. *Bank of China*,
   Nos. 11-3934-cv, 12-4557-cv,
   2014 WL 4629049 (2d Cir. Sept. 17, 2014) ............................................................ *passim*

*Hawknet, Ltd.* v. *Overseas Shipping Agencies*,
   590 F.3d 87 (2d Cir. 2009) ................................................................................................ 8

*Ivan Visin Shipping, Ltd.* v. *Onego Shipping & Chartering B.V.*,
   543 F. Supp. 2d 338 (S.D.N.Y. 2008) ............................................................................... 6

*Motorola Credit Corp.* v. *Uzan*,
   293 F.R.D. 595 (S.D.N.Y. 2013) ....................................................................................... 9

*Virgin Atl. Airways, Ltd.* v. *Nat'l Mediation Bd.*,
   956 F.2d 1245 (2d Cir. 1992) ........................................................................................ 5, 6

### STATUTES AND RULES

28 U.S.C. § 1292 ................................................................................................................. 2, 10

S.D.N.Y. Local Civil Rule 6.3 ............................................................................................... 1, 2

- iii -

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

**OTHER AUTHORITY**

David D. Siegel, *U.S. Supreme Court Severely Circumscribes "Presence" as Basis for Personal Jurisdiction of Foreign Corporations*, 265 SIEGEL'S PRAC. REV. 1 (Jan. 2014) ................................................................... 6

18 C. Wright, A. Miller & E. Cooper, FEDERAL PRACTICE & PROCEDURE ............................................................................. 5

**PRELIMINARY STATEMENT**

In accordance with Local Civil Rule 6.3, non-party Standard Chartered Bank ("Standard Chartered") respectfully submits this memorandum in support of its motion for reconsideration of the Court's September 10, 2014 Order (ECF No. 677) (the "September 10 Order"), in which the Court granted plaintiff's motion to compel responses to an information subpoena dated October 25, 2012 (the "Information Subpoena"), previously served on Standard Chartered's New York branch.

On September 17, 2014 – one week after this Court issued the September 10 Order – the Second Circuit issued a lengthy opinion in the litigation captioned *Gucci America, Inc.* v. *Bank of China*, Nos. 11-3934-cv, 12-4557-cv, 2014 WL 4629049 (2d Cir. Sept. 17, 2014). A copy of the slip opinion issued by the Second Circuit is included as an addendum to this memorandum.  In *Gucci*, the Second Circuit directly considered whether the Supreme Court's sweeping decision in *Daimler AG* v. *Bauman*, 134 S. Ct. 746 (2014), altered the extent to which a foreign bank operating a branch in New York may be compelled to respond to a non-party subpoena seeking documents from outside the United States.  The Second Circuit concluded that in light of *Daimler* "the district court erred in exercising general jurisdiction over" a non-party foreign bank. (*Gucci* Slip Op. at 3 n.2.)  The Second Circuit thus vacated the district court's order requiring the foreign bank to respond to a non-party subpoena. (*Id.* at 43.)  Moreover, the Second Circuit ruled that even if the foreign bank were subject to personal jurisdiction in the United States, the district court would be obligated to conduct an international comity analysis before compelling the bank to produce documents located abroad. (*Id.* at 44.)

Standard Chartered respectfully submits that the holdings in *Gucci* are directly applicable to the instant litigation and that the Second Circuit's ruling is in conflict with the

September 10 Order. Because *Gucci* was decided after this Court issued the September 10 Order, the Court did not have an opportunity to take account of the Second Circuit's guidance or its views on the implications of *Daimler*. Standard Chartered thus respectfully requests that the Court reconsider the September 10 Order and upon doing so, rule that no further response to the Information Subpoena is required. Should the Court determine that reconsideration is not warranted, Standard Chartered requests, in the alternative, that the Court certify the September 10 Order for interlocutory appeal in accordance with 28 U.S.C. § 1292(b).

## BACKGROUND

### A. Plaintiff and Standard Chartered

Plaintiff Aldo Vera, Jr. is the personal representative of the estate of Aldo Vera, Sr. (Pl.'s Mem. in Support of Mot. To Compel ("Mot. To Compel") (ECF No. 337) at 1 (Nov. 13, 2013).) These proceedings arise from plaintiff's efforts to collect on a judgment entered in 2012 against The Republic of Cuba. (*Id.* at 2.)

Standard Chartered is a foreign banking corporation, incorporated under the laws of England and Wales, headquartered in England, with branches in many countries, including a branch in New York. (Decl. of Robert A. Swift ("Swift Decl.") (ECF No. 338) ¶ 8 (Nov. 13, 2013); *id.*, Exhibit 2, at pp. 4-5.)[1]

### B. The Information Subpoena and the Motion To Compel

In the fall of 2012, plaintiff served the Information Subpoena on Standard Chartered's New York branch. (Swift Decl. ¶ 10.) Plaintiff acknowledges that Standard

---

[1] *See also* Standard Chartered, Locations Worldwide <www.sc.com/en/about-us/standard-chartered-worldwide/index.html>. In accordance with Local Civil Rule 6.3, Standard Chartered is filing the instant motion without any accompanying affidavits.

Chartered responded to the Information Subpoena based on information available in the United States. (*Id.* ¶ 14.) Dissatisfied with this response, however, plaintiff demanded that Standard Chartered provide responses to the Information Subpoena based on information located outside the United States. (*Id.* ¶ 16.) Plaintiff thereafter filed a motion to compel. (Mot. To Compel at 2.) Plaintiff argued, in particular, that because Standard Chartered has a branch "located in New York City," it was "required to furnish discovery as to the Judgment debtor's assets worldwide." (*Id.* at 6.)

      C.    **The September 10 Order**

In the September 10 Order, this Court granted plaintiff's motion to compel. (September 10 Order at 2.) The Court held that a plaintiff can "obtain information of a judgment debtor's assets outside the United States from banks *subject to personal jurisdiction in New York*." (*Id.* (emphasis added) (citing *Eitzen Bulk A/S* v. *Bank of India*, 827 F. Supp. 2d 234 (S.D.N.Y. 2011)).) The Court also found that the Supreme Court's personal jurisdiction rulings in *Daimler* did not compel a different outcome. In particular, the Court held that it was "not persua[ded]" that *Daimler* had any "bearing on the situation here." (September 10 Order at 3.) The Court thus directed Standard Chartered to respond to the Information Subpoena based on information from "branches outside of" the United States. (*Id.* at 2.)

      D.    **The Second Circuit's Decision in *Gucci***

One week after this Court issued the September 10 Order, the Second Circuit issued its opinion in *Gucci*. The *Gucci* appeal arose from proceedings involving a non-party foreign bank, the Bank of China ("BOC"), that had been served in 2010 with both an asset-freezing order and a subpoena. (*Gucci* Slip Op. at 8.) BOC responded to the subpoena by producing documents "in the possession of its New York branch." (*Id.*) However, BOC did not produce documents located in China "notwithstanding plaintiffs' evidence suggesting that the

- 3 -

proceeds of defendants' unlawful activity had been transferred there." (*Id.* at 8-9.) Plaintiffs thus moved to compel BOC to produce documents located in China. (*Id.*) The district court thereafter granted plaintiffs' motion to compel, denied BOC's motion for reconsideration, and ultimately held BOC in civil contempt for noncompliance. (*Id.* at 10-11.)

While BOC's appeal from the district court's orders was pending in the Second Circuit, the Supreme Court issued its landmark personal jurisdiction decision in *Daimler*. As the Second Circuit recognized, *Daimler* held that "[a]side from 'an exceptional case,' . . . a corporation is at home (and thus subject to general jurisdiction, consistent with due process) only in a state that is the company's formal place of incorporation or its principal place of business." (*Gucci* Slip Op. at 27 (quoting *Daimler*, 134 S. Ct. at 761 & n.19).) The Second Circuit thus noted that the Supreme Court "expressly cast doubt on previous Supreme Court and New York Court of Appeals cases that permitted general jurisdiction on the basis that a foreign corporation was doing business through a local branch office in the forum." (*Gucci* Slip Op. at 27-28.)

After discussing *Daimler* in general terms, the Second Circuit then applied *Daimler* to the facts present in *Gucci*. The Second Circuit noted that BOC "is not incorporated or headquartered anywhere in the United States and maintains its principal place of business in China." (*Gucci* Slip Op. at 7.) Indeed, BOC "has only four branch offices in the United States and only a small portion of its worldwide business is conducted in New York." (*Id.* at 28.) The Second Circuit thus concluded that following *Daimler* there was "no basis consistent with due process for the district court to have exercised general jurisdiction" over BOC. (*Id.* at 29.)

Turning its attention to the subpoena that had been served on BOC, the Second Circuit held that a district court "must have personal jurisdiction over a nonparty in order to compel it to comply with a valid discovery request." (*Id.* at 42.) Because the district court had

erroneously "assumed that it had general jurisdiction over BOC in ordering it to comply" with the non-party subpoena, the Second Circuit vacated the district court's orders granting plaintiffs' motion to compel, denying BOC's motion for reconsideration, and holding BOC in contempt. (*Id.* at 43, 45 n.23.)

The Second Circuit then remanded the *Gucci* case to allow the district court to consider whether "specific personal jurisdiction" – as opposed to general personal jurisdiction – might "permit the district court to order the Bank to comply with particular discovery demands." (*Id.* at 43.) However, the Second Circuit held that, even if personal jurisdiction were present, the district court would be required to "consider the question of [international] comity" before compelling BOC to produce documents located outside the United States. (*Id.* at 44; *see also id.* at 28 (noting that *Daimler* "expressly warned against the 'risks to international comity' of an overly expansive view" of personal jurisdiction) (quoting 134 S. Ct. at 763).)

## ARGUMENT[2]

### I. Reconsideration of the September 10 Order Is Appropriate in Light of the Second Circuit's Subsequent Decision in *Gucci*.

"The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd.* v. *Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, FEDERAL PRACTICE & PROCEDURE § 4478 at 790). Standard Chartered respectfully submits that the Second Circuit's holdings in *Gucci* – including its construction of *Daimler* – are dramatic changes in controlling law that

---

[2] Standard Chartered understands that non-party Banco Bilbao Vizcaya Argentaria, S.A. ("BBVA") also is seeking reconsideration of the September 10 Order. Standard Chartered joins in the arguments made by BBVA to the extent that they are additive to those contained herein.

justify reconsideration of the September 10 Order.  See David D. Siegel, *U.S. Supreme Court Severely Circumscribes "Presence" as Basis for Personal Jurisdiction of Foreign Corporations*, 265 SIEGEL'S PRAC. REV. 1 (Jan. 2014) (concluding that *Daimler* sent a "truckload of cases on personal jurisdiction . . . careening into the abyss").

As the Second Circuit recognized, "[p]rior to *Daimler*, controlling precedent in this Circuit made it clear that a foreign bank with a branch in New York *was* properly subject to general personal jurisdiction here." (*Gucci* Slip Op. at 29-30 (emphasis in original).)  Exactly the opposite is true now, because *Gucci* establishes that operating a branch in New York does not provide a "basis consistent with due process" for exercising general personal jurisdiction over a foreign bank. (*Id.* at 29.)  As such, the Second Circuit's decision in *Gucci* can "reasonably be expected to alter the conclusion reached by the court" in the September 10 Order.  *Ivan Visin Shipping, Ltd.* v. *Onego Shipping & Chartering B.V.*, 543 F. Supp. 2d 338, 339 (S.D.N.Y. 2008).

In the September 10 Order, this Court acknowledged that "personal jurisdiction" is required before Standard Chartered may be compelled to produce information regarding "a judgment debtor's assets outside the United States." (September 10 Order at 2.)  As the Second Circuit now has clarified, however, *Daimler*'s personal jurisdiction holdings directly bear on plaintiff's motion to compel.  Moreover, *Gucci* requires that an international comity analysis be conducted before a foreign bank is compelled to produce information from outside the United States.  Both *Daimler* and *Gucci* thus should be considered by this Court in order to correct an otherwise "clear error" and "manifest injustice" arising from the September 10 Order.  *Virgin Atl. Airways*, 956 F.2d at 1255 (internal citations omitted).

II.   **Standard Chartered Is Not Subject to General Jurisdiction.**

Based on the Second Circuit's analysis in *Gucci*, it is clear that Standard Chartered is not subject to general jurisdiction in New York.  Just like BOC, Standard Chartered

"is not incorporated or headquartered anywhere in the United States." (*Gucci* Slip Op. at 7.) One of the exhibits that plaintiff provided to this Court in connection with its motion to compel states that Standard Chartered has "over 1,700 branches, offices and outlets in 70 markets across the globe." (Swift Decl., Exhibit 2, at p. 4.) Yet, plaintiff has conceded that Standard Chartered is a "British bank" that merely operates "a branch in New York." (Swift Decl. ¶ 8.) Following *Gucci*, "there is no basis consistent with due process" for the Court to have "exercised general jurisdiction" over Standard Chartered. (*Gucci* Slip Op. at 29.) And because the Court "must have personal jurisdiction over" Standard Chartered "in order to compel it to comply with" the Information Subpoena, plaintiff's motion to compel should be denied upon reconsideration. (*Id.* at 42.)

**III.    There Is No Basis for an Assertion of Specific Jurisdiction over Standard Chartered for the Purpose of Compelling Responses to the Information Subpoena Based on Information Outside the United States.**

In the absence of general personal jurisdiction, this Court may wish to consider whether "specific personal jurisdiction may permit the district court to order [Standard Chartered] to comply with particular discovery demands." (*Gucci* Slip Op. at 43.) As the Second Circuit has held, "the test for specific jurisdiction *over defendants* examines whether a cause of action arises out of or relates to the defendant's contacts with the forum." (*Id.* (emphasis added).) Here, Standard Chartered is merely a non-party recipient of the Information Subpoena. As such, the Second Circuit – citing precedent from the Tenth Circuit – has suggested that a test more relevant to "nonparty discovery requests" would be to "focus[] on the connection between the nonparty's contacts with the forum and the discovery order at issue." (*Id.* (citing *Application To Enforce Admin. Subpoenas Duces Tecum of the SEC* v. *Knowles*, 87 F.3d 413, 418 (10th Cir. 1996).)

Here, there is *zero* connection between (a) Standard Chartered's contacts with this forum and (b) the discovery order sought by plaintiff in this proceeding. That is because Standard Chartered already complied with the Information Subpoena to the extent that plaintiff sought information located in the United States. (Swift Decl. ¶ 14.) What plaintiff thus sought through the motion to compel was an order directing Standard Chartered to respond to the Information Subpoena based on information located at Standard Chartered's "branches *outside* the United States." (Mot. To Compel at 1 (emphasis in original).) The information from non-U.S. branches plainly has no connection to Standard Chartered's operations in this forum. Indeed, the very reason that plaintiff wishes to obtain such information is so that plaintiff can "seek enforcement of his Judgment from Cuban assets outside of the United States." (*Id.* at 3.) Accordingly, there is no basis for a finding that Standard Chartered is subject to specific jurisdiction as a predicate for compelling a further response to the Information Subpoena based on information that is outside the United States.

## IV.     Standard Chartered Has Not Waived Jurisdictional Defenses.

In response to plaintiff's original motion to compel, Standard Chartered did not argue that the Court lacked personal jurisdiction. The same was true in *Gucci*, however, and the Second Circuit expressly held that "'a party cannot be deemed to have waived objections or defenses which were not known to be available at the time they could first have been made.'" (*Gucci* Slip Op. at 29 (quoting *Hawknet, Ltd.* v. *Overseas Shipping Agencies*, 590 F.3d 87, 92 (2d Cir. 2009)).) Prior to *Daimler*, "controlling precedent in this Circuit" would not have permitted Standard Chartered to raise the jurisdictional challenges upon which it now seeks reconsideration. (*Gucci* Slip Op. at 29-30.) Indeed, even after *Daimler* – but before *Gucci* – this Court was unpersuaded that a viable challenge to the Information Subpoena could be made based on personal jurisdiction arguments. (September 10 Order at 3.) Standard Chartered thus should

not be deemed to have waived what *Gucci* has confirmed to be newly recognized jurisdictional defenses.

V.     **The Court Must Undertake an International Comity Analysis Before Compelling Standard Chartered To Provide Information from Outside the United States.**

In *Daimler* the Supreme Court held that "[c]onsiderations of international rapport" legitimately must play a role in circumstances where the judiciary is asked to enter orders that have extraterritorial reach. 134 S. Ct. at 763. Following *Daimler*'s lead, the Second Circuit held in *Gucci* that the district court would be required "to perform a proper comity analysis" – even if it had personal jurisdiction over BOC – before compelling compliance with an extraterritorial asset-freezing order or a subpoena seeking documents located abroad. (*Gucci* Slip Op. at 25; *see also id.* at 35 (heading titled "District Court's Obligation to Conduct a Comity Analysis"); *id.* at 44 (holding that district court "should consider the question of comity again").)

Plaintiff's request that Standard Chartered respond to the Information Subpoena by conducting a global search threatens to implicate the laws of numerous foreign sovereigns. This case thus poses significantly greater challenges to international comity than *Gucci*, where only the laws of a single sovereign, China, were implicated. Accordingly, even should the Court determine upon reconsideration that Standard Chartered is subject to personal jurisdiction, Standard Chartered respectfully suggests that plaintiff be required to make a showing that there is a reasonable basis for seeking information from a particular foreign jurisdiction, so that Standard Chartered can procure information that will be relevant to the required comity analysis. *See, e.g., Motorola Credit Corp.* v. *Uzan*, 293 F.R.D. 595 (S.D.N.Y. 2013) (conducting international comity analysis and denying motion to compel post-judgment discovery from non-party bank).

**VI.    In the Alternative, the Court Should Certify the September 10 Order for Interlocutory Appeal.**

Should the Court determine not to grant reconsideration, Standard Chartered requests that the Court certify the September 10 Order for immediate appeal to the Second Circuit. The holdings in *Gucci* provide a "substantial ground" for disagreement with the September 10 Order. 28 U.S.C. § 1292(b). Moreover, the question of whether Standard Chartered properly may be subject to personal jurisdiction is a "controlling question of law" that will "materially advance" the ultimate termination of this proceeding. *Id*. As such, Standard Chartered respectfully submits that an interlocutory appeal would be warranted.

## CONCLUSION

For the reasons set forth above, Standard Chartered respectfully requests that the Court reconsider the September 10 Order, and upon doing so, deny plaintiff's motion to compel any further response to the Information Subpoena, and, alternatively, certify the September 10 Order for interlocutory appeal.

Dated:  New York, New York
        September 24, 2014

Respectfully submitted,

/s/ Bruce E. Clark

| | |
|---|---|
| Barry J. Glickman | Bruce E. Clark |
| Bruce S. Goodman | Sharon L. Nelles |
| ZEICHNER ELLMAN & KRAUSE LLP | Bradley P. Smith |
| 1211 Avenue of the Americas | SULLIVAN & CROMWELL LLP |
| New York, New York 10036 | 125 Broad Street |
| (212) 223-0400 (telephone) | New York, New York 10004 |
| (212) 753-0396 (facsimile) | (212) 558-4000 (telephone) |
| bglickman@zeklaw.com | (212) 558-3588 (facsimile) |
| bgoodman@zeklaw.com | clarkb@sullcrom.com |
| | nelless@sullcrom.com |
| | smithbr@sullcrom.com |

*Attorneys for Non-Party
Standard Chartered Bank*