**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALDO VERA, JR., as Personal Representative of the Estate of Aldo Vera, Sr., Plaintiff, vs. THE REPUBLIC OF CUBA, Defendant. | 12 Civ. 1596 (AKH) |
| ALDO VERA, JR., as Personal Representative of the Estate of Aldo Vera, Sr., et al., Petitioners, v. BANCO BILBAO VIZCAYA ARGENTARIA (S.A.), et al., Respondents/Garnishees. | |

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO COMPLETE TURNOVER AND IN SUPPORT OF CROSS-MOTION FOR A PROTECTIVE ORDER**

WHITE & CASE LLP

1155 Avenue of the Americas
New York, New York 10036
(212) 819-8200

*Attorneys for Respondent Banco Bilbao Vizcaya Argentaria, S.A.*

Of Counsel:

Kenneth A. Caruso
Kelly A. Bonner
Harold Williford
(*Bar Admission Pending*)

NEWYORK 9344934 v5

TABLE OF CONTENTS

TABLE OF CONTENTS .....2

BACKGROUND .....1

ARGUMENT .....1

I. THE COURTS LACK SUBJECT MATTER JURISDICTION .....1

II. THE COURT SHOULD PROTECT BBVA FROM THE RISK OF DOUBLE LIABILITY .....2

A. It Is Public Policy To Avoid Double Liability .....2

B. Applicable New York Statutes Protect Against Double Liability .....4

C. Turnover Here Would Expose BBVA To Double Liability .....4

D. The Court Should Protect BBVA From Double Liability By Denying Turnover Without Prejudice Or By Granting Turnover Only On Conditions .....10

III. IN THE ALTERNATIVE, THE COURT SHOULD MODIFY THE PROPOSED TURNOVER ORDER .....12

CONCLUSION .....12

# TABLE OF AUTHORITIES

## CASES

A/S Krediit Pank v. Chase Manhattan Bank,
155 F. Supp. 30 (S.D.N.Y. 1957) ....................8

Baker v. Gen. Motors Corp.,
522 U.S. 222 (1998)....................5

Bank Brussells Lambert v. Fiddler Gonzalez & Rodriguez,
305 F.3d 120 (2d Cir. 2002)....................5

Burger King Corp. v. Rudzewicz,
471 U.S. 462 (1985)....................5

Credit Lyonnais Sec. (USA), Inc. v. Alcantara,
183 F.3d 151 (2d Cir. 1999)....................6

Dluhos v. Floating Abandoned Vessel,
162 F.3d 63 (2d Cir. 1998)....................7

Embree v. Hanna,
5 Johns. 101 (N.Y. 1809)....................2

First African Trust Bank, Ltd. v. Bankers Trust Co.,
No. 94 Civ. 4995, 1995 WL 422269 (S.D.N.Y. July 14, 1995) ....................7

First Charter Land Co. v. Fitzgerald,
643 F.2d 1011 (4th Cir. 1981) ....................7

First Inv. Corp. of Marsh. Isl. v. Fujian Mawei Shipbuilding, Ltd.,
703 F.3d 742 (5th Cir. 2012) ....................5

Frontera Res. Azer. Corp. v. State Oil Co. of the Azer. Rep.,
582 F.3d 393 (2d Cir. 2009)....................5

Ga. Sav. Bank & Trust Co. v. Sims,
321 F. Supp. 307 (N.D. Ga. 1971)....................8

Gates v. Syrian Arab Republic,
No. 11 C 8715, 2013 WL 1337223 (N.D. Ill. Mar. 29, 2013) ....................3

GSS Grp. Ltd. v. Nat'l Port Auth.,
680 F.3d 805 (D.C. Cir. 2012)....................5

Guardian Loan Co. v. Early,
47 N.Y.2d 515 (1979) ....................4

Harris v. Balk,
198 U.S. 215 (1905)....2

Hausler v. JPMorgan Chase Bank, N.A.,
845 F. Supp. 2d 553 (S.D.N.Y. 2012)....6

In re Rationis Enters., Inc.,
261 F.3d 264 (2d Cir. 2001)....7

In re Terrorist Attacks on Sept. 11, 2001,
714 F.3d 659 (2d Cir. 2013)....5

JPMorgan Chase Bank, N.A. v. Motorola, Inc.,
47 A.D. 3d 293, 846 N.Y.S.2d 171 (1st Dep't 2007)....2, 4, 8, 10

LNC Invs., Inc. v. Republic of Nicaragua,
No. Misc.A.01-134-JJF, 2002 WL 32818644 (D. Del. Dec. 18, 2002)....3

N.Y. Life Ins. Co. v. Dunlevy,
241 U.S. 518 (1916)....6, 8

Oppenheimer v. Dresdner Bank A.G.,
50 A.D.2d 434, 377 N.Y.S.2d 625 (2d Dep't 1975)....2, 4

Parker, Peebles & Knox v. Nat'l Fire Ins. Co.,
150 A. 313 (Conn. 1930)....2, 9

Petrogradsky Mej. Komm. Bank v. Nat'l City Bank,
253 N.Y. 23 (1930)....10

Reserve Int'l Liquidity Fund, Ltd. v. Caxton Int'l Ltd.,
No. 09 Civ. 9021 (PGG), 2010 WL 1779282 (S.D.N.Y. Apr. 29, 2010)....7

Russian Reins. Co. v. Stoddard,
240 N.Y. 149 (1925)....10

Samsun Logix Corp. v. Bank of China,
929 N.Y.S.2d 202, 2011 WL 1844061 (N.Y. Sup. Ct. 2011) (unpublished table decision)....10

Schoenbrod v. Siegler,
20 N.Y.2d 403 (1967)....9

Shaheen Sports, Inc. v. Asia Ins. Co.,
No. 98-CV-5951 LAP, 2012 WL 919664 (S.D.N.Y. Mar. 14, 2012)....9

Sherman v. Kirshman,
369 F.2d 886 (2d Cir. 1966)....8

Smith v. Bayer Corp., 131 S. Ct. 2368 (2011) ..... 5

Swezey v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 19 N.Y.3d 543 (2012) ..... 7

W. Union Tel. Co. v. Pennsylvania, 368 U.S. 71 (1961) ..... 7, 8

Walden v. Fiore, 134 S. Ct. 1115 (2014) ..... 6

Weitzel v. Weitzel, 230 P. 1106 (Ariz. 1924) ..... 2, 9

Wilson v. Can. Life Assurance Co., No. 4:08-CV-1258, 2009 WL 532830 (M.D. Pa. Mar. 3, 2009) ..... 7, 9

STATUTES AND RULES

28 U.S.C. § 1335 ..... 5

28 U.S.C. § 1605A ..... 3

28 U.S.C. § 1608 ..... 5

28 U.S.C. § 1610 ..... 3

28 U.S.C. § 1655 ..... 7, 8

N.Y. C.P.L.R. 5209 (McKinney 2014) ..... 4

N.Y. C.P.L.R. § 5240 (McKinney 2014) ..... 1, 4, 9, 10

MISCELLANEOUS

Fed. R. Civ. P. 3 ..... 5

Fed. R. Civ. P. 4 ..... 5

Fed. R. Civ. P. 54 ..... 11

H.R. Conf. Rep. No. 110-477 (2007) ..... 3

Siegel, New York Practice (5th ed. 2012) ..... 11

13F Wright & Miller, Federal Practice and Procedure § 3635 at 333 (2009) ..... 8

Banco Bilbao Vizcaya Argentaria, S.A. ("BBVA") respectfully submits this memorandum of law in opposition to Petitioners' motion to complete turnover of an account blocked and held at BBVA, and in support of BBVA's cross-motion, pursuant to CPLR § 5240, for a protective order.

## BACKGROUND

A Cuban corporation (the "Cuban Corporation"), alleged to be an agency or instrumentality of the Republic of Cuba, is alleged to have been the originator of an electronic funds transfer ("EFT"), the proceeds of which are now blocked and held at BBVA. The name of the Cuban entity, and details concerning the blocked account, are filed under seal. BBVA delivered the Notice Documents (as defined in the Order With Respect To Giving Notice Of Turnover Proceeding, dated November 13, 2013 and entered on December 9, 2013 and amended on March 26, 2014 ("Notice Order")) to the Cuban Corporation, which made no claim by the court-ordered deadline, June 19, 2014. Petitioners now seek turnover of the blocked account.

## ARGUMENT

### POINT I

### THE COURTS LACK SUBJECT MATTER JURISDICTION

The Court should deny turnover because the Courts lack subject matter jurisdiction. BBVA hereby reiterates and preserves its contentions -- previously rejected by the Court -- that this Court lacks subject matter jurisdiction over the Vera action and over this turnover proceeding, that the federal courts that granted full faith and credit in Villoldo and Hausler lacked subject matter jurisdiction and that the Florida state courts lacked subject matter jurisdiction. BBVA incorporates all of its prior arguments by reference.

It follows that BBVA objects to certain paragraphs in the Petitioners' Proposed Order, as set forth in the markup submitted as Exhibit A to the Caruso Declaration.

POINT II

THE COURT SHOULD PROTECT BBVA FROM THE RISK OF DOUBLE LIABILITY

Turnover here would expose BBVA to a risk of double liability on the same debt. The Court should protect BBVA from that risk by denying turnover without prejudice or by granting turnover only on conditions.

A. It Is Public Policy To Avoid Double Liability

It is the public policy of the State of New York to avoid the imposition of double liability for a single obligation. The imposition of such double liability upon a garnishee would work an "unconscionable result" and would be "strikingly unfair." Oppenheimer v. Dresdner Bank A.G., 50 A.D.2d 434, 441, 377 N.Y.S.2d 625, 632 (2d Dep't 1975). See JPMorgan Chase Bank, N.A. v. Motorola, Inc., 47 A.D. 3d 293, 305-13, 846 N.Y.S.2d 171, 180-87 (1st Dep't 2007) (denying turnover to avoid risk of imposition of double liability on garnishee).

The policy against double liability has deep and longstanding roots. See, e.g., Embree v. Hanna, 5 Johns. 101, 102 (N.Y. 1809) (Kent, Ch. J.) ("Nothing can be more clearly just, than that a person who has been compelled, by a competent jurisdiction, to pay a debt once, should not be compelled to pay it over again"); Harris v. Balk, 198 U.S. 215, 226 (1905) ("It ought to be and it is the object of courts to prevent the payment of any debt twice over.").

The same policy prevails in sister states and in England. See, e.g., Weitzel v. Weitzel, 230 P. 1106, 1108 (Ariz. 1924) (citing English cases; double liability "would be inequitable and contrary to natural justice"); Parker, Peebles & Knox v. Nat'l Fire Ins. Co., 150 A. 313, 315-19 (Conn. 1930) (citing cases from Massachusetts, Illinois, Arkansas and New Jersey; double

liability is "intolerable and unjust," is "generally denied in all courts of justice" and is "the one thing to be guarded against"); LNC Invs., Inc. v. Republic of Nicaragua, No. Misc.A.01-134-JJF, 2002 WL 32818644, at *1 (D. Del. Dec. 18, 2002).

This policy also prevails under federal law, including the current version of the anti-terrorism laws on which Petitioners rely here. Thus, 28 U.S.C. § 1610(g) provides that the property of a foreign state against which a judgment is entered under section 1605A, and the property of an agency or instrumentality of such a state, is, in certain circumstances, subject to execution. Section 1610(g)(3), however, allows the court to protect a garnishee. That statute provides:

> Nothing in this subsection shall be construed to supersede the authority of a court to prevent appropriately the impairment of an interest held by a person who is not liable in the action giving rise to a judgment in property subject to attachment in aid of execution, or execution, upon such judgment.

As the legislative history explains, "While [§ 1610(g)] is written to subject any property interest in which the foreign state enjoys a beneficial ownership to attachment and execution, the provision would not supersede the court's authority to appropriately prevent impairment of interests in property held by other persons who are not liable to the claimants in connection with the terrorist act." H.R. Conf. Rep. No. 110-477, at 1001-02 (2007); see also id. at 1002 ("The conferees encourage the courts to protect the property interests of such innocent third parties by using their inherent authority, on a case-by-case basis, under the applicable procedures governing execution on judgment."). See Gates v. Syrian Arab Republic, No. 11 C 8715, 2013 WL 1337223, at *10 (N.D. Ill. Mar. 29, 2013) (garnishee invoked § 1610(g)(3) where "other third parties not presently party to these cases" may seek to hold garnishee liable).

B. Applicable New York Statutes Protect Against Double Liability

"The policy to protect garnishees from double liability is given statutory expression in CPLR 5209[.]" JPMorgan, 47 A.D.3d at 306, 846 N.Y.S.2d at 181. That statute provides:

> A person who, pursuant to an execution or order, pays or delivers, to the judgment creditor or a sheriff or receiver, money or other personal property in which a judgment debtor has or will have an interest, or so pays a debt he owes the judgment debtor, is discharged from his obligation to the judgment debtor to the extent of the payment or delivery.

The purpose of section 5209 is to protect a debt-paying garnishee against the judgment creditor's subsequent claim to the same debt. Oppenheimer, 50 A.D.2d at 440, 377 N.Y.S.2d at 632 (citing cases).

The Legislature also recognized this policy, and empowered the courts to protect garnishees, when it enacted CPLR § 5240, which provides, in pertinent part:

> The court may at any time, on its own initiative or the motion of any interested person . . . make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure.

This statute "grants the courts broad discretionary power to control and regulate the enforcement of a money judgment under article 52 to prevent 'unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts.'" Guardian Loan Co. v. Early, 47 N.Y.2d 515, 519 (1979) (quoting Third Prelim. Rep. of Adv. Comm. on Prac. and Pro. at 314 (1959)). See JPMorgan, 47 A.D.3d at 308, 846 N.Y.S.2d at 182-184 (court has broad discretion to deny turnover to protect garnishee from risk of double liability).

C. Turnover Here Would Expose BBVA To Double Liability

Turnover here would expose BBVA to double liability because the Court lacks personal jurisdiction over the Cuban Corporation, which will remain free to sue BBVA on the same debt.

BBVA delivered the Notice Documents to the Cuban Corporation. See Swift Decl. in Support of Motion to Complete Turnover ¶ 3. Such delivery, however, did not subject the Cuban Corporation to the personal jurisdiction of this Court. Delivery of the Notice Documents did not make the Cuban Corporation a party. See Smith v. Bayer Corp., 131 S. Ct. 2368, 2379 (2011). The Notice Documents did not constitute a summons and complaint within the meaning of Rules 3 and 4, FRCP. See, e.g., Rule 4(a)(1)(B) ("A summons must . . . be directed to the defendant[.]"). The Court acquired "no power over those parties, and no basis for commanding them to become intervenors" in this proceeding. Baker v. Gen. Motors Corp., 522 U.S. 222, 238 (1998).

BBVA could commence a defensive, statutory-interpleader action against Petitioners and the Cuban Corporation. See 28 U.S.C. § 1335. Service of process would be made on the Cuban Corporation pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1608(b). The Due Process Clause, however, would prohibit the exercise of personal jurisdiction over the Cuban Corporation.[1]

Under the Due Process Clause, a court can exercise personal jurisdiction only if the defendant "'purposely availed' itself of the privilege of doing business in the forum and could foresee being haled into court there." Bank Brussells Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 127 (2d Cir. 2002). For the purpose of establishing specific personal jurisdiction, the necessary "'fair warning' requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that 'arise

[1] As the Second Circuit has held, a foreign state, like the Republic of Cuba, is not a "person" within the meaning of the Due Process Clause. Frontera Res. Azer. Corp. v. State Oil Co. of the Azer. Rep., 582 F.3d 393, 398-99 (2d Cir. 2009). An agency or instrumentality of a foreign state, however, like the Cuban Corporation, enjoys due process protections, including the "right to assert a minimum contacts defense." GSS Grp. Ltd. v. Nat'l Port Auth., 680 F.3d 805, 814-17 (D.C. Cir. 2012); accord First Inv. Corp. of Marsh. Isl. v. Fujian Mawei Shipbuilding, Ltd., 703 F.3d 742, 752-55 (5th Cir. 2012).

out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985) (citations omitted). See also In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 659, 674 (2d Cir. 2013). "[A]ctions by the defendant himself" -- not some other actor -- are necessary to "create a substantial connection with the forum[.]" Burger King, 471 U.S. at 475 (internal quotation marks omitted). Contacts between third-parties and the forum are not sufficient. Walden v. Fiore, 134 S. Ct. 1115, 1122 (2014).

Here, there is no evidence that the Cuban Corporation purposely directed its activities at the forum. On the contrary, there is no reason to infer that this case is different from the others in which an intermediary bank blocked a Cuba-related EFT. As Judge Marrero stated, "The factual patterns presented . . . compose variations on a single theme: Each [adverse claimant] argues that its own clerical mistakes caused the EFTs to be blocked." Hausler v. JPMorgan Chase Bank, N.A., 845 F. Supp. 2d 553, 559 (S.D.N.Y. 2012). Typically, as Judge Marrero recounted, a Cuban entity sought to make a payment or a transfer -- without using a dollar-denominated EFT -- but the Cuban entity's bank mistakenly commenced a dollar-denominated EFT, routed through New York, where the EFT was blocked. See id. at 560 (describing transactions involving Philips Mexicana, Caja Madrid, LTU, Novafin and BBVA).

In such circumstances, the Cuban entity did not purposely direct its activities at the forum, or purposely avail itself of the privilege of doing business in the forum. The connection with the forum was created by a third-party (the intermediary bank), not the Cuban entity. The court therefore lacks personal jurisdiction. And, of course, a court cannot enter a judgment without determining that "the defendant in fact subjected itself to the court's jurisdiction." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 154 (2d Cir. 1999).

Accordingly, in the absence of contrary evidence, the Court here lacks personal jurisdiction over the Cuban Corporation. The Court's judgment, including its order of discharge and its injunction against further litigation, would not bind the Cuban Corporation, and would not bar the Cuban Corporation from later asserting claims against BBVA to recover money damages. BBVA therefore faces double liability. N.Y. Life Ins. Co. v. Dunlevy, 241 U.S. 518, 521-23 (1916); W. Union Tel. Co. v. Pennsylvania, 368 U.S. 71, 74-75 (1961); In re Rationis Enters., Inc., 261 F.3d 264, 270 (2d Cir. 2001) (court may not grant injunction against party over whom it does not have personal jurisdiction). Cf. Swezey v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 19 N.Y.3d 543, 554 (2012) (dismissing turnover proceeding where, among other things, a "turnover order . . . would not be binding on a non-party . . . . placing [the garnishee] at possible risk of duplicate liability").

Another federal statute, 28 U.S.C. § 1655, provides, in pertinent part:

> If an absent defendant does not appear or plead within the time allowed, the court may proceed as if the absent defendant had been served with process within the State, but any adjudication shall, as regards the absent defendant without appearance, affect only the property which is the subject of the action.

Section 1655, however, does not apply to statutory interpleader actions. Wilson v. Can. Life Assurance Co., No. 4:08-CV-1258, 2009 WL 532830, at *10 & n.12 (M.D. Pa. Mar. 3, 2009). See also First African Trust Bank, Ltd. v. Bankers Trust Co., No. 94 Civ. 4995, 1995 WL 422269, at *4-5 & n.6 (S.D.N.Y. July 14, 1995) (applicability of § 1655 to interpleader "remains an open question").

Even if § 1655 does apply to statutory interpleader actions, as some courts have held, see, e.g., Reserve Int'l Liquidity Fund, Ltd. v. Caxton Int'l Ltd., No. 09 Civ. 9021 (PGG), 2010 WL 1779282, at *12 (S.D.N.Y. Apr. 29, 2010) (collecting cases), § 1655 would not insulate BBVA from double liability. Under this statute, the court proceeds in rem, or quasi-in-rem, against the

res, not in personam against the absent defendant. Dluhos v. Floating Abandoned Vessel, 162 F.3d 63, 72-73 (2d Cir. 1998). Thus, in the language of the statute, the court can "affect only the property which is the subject to the action." See, e.g., First Charter Land Co. v. Fitzgerald, 643 F.2d 1011, 1016 (4th Cir. 1981) (under § 1655, court can declare ownership of bank accounts located within the district but cannot adjudicate in personam rights or "affect property over and beyond that which is the subject of the lawsuit[,]" unless defendant chooses to appear); Ga. Sav. Bank & Trust Co. v. Sims, 321 F. Supp. 307, 309 (N.D. Ga. 1971) (under § 1655, court "may decide as to the disposition of [an interpleaded bank account] without personally affecting Lloyd [the defendant over whom the court had no personal jurisdiction]"); A/S Krediit Pank v. Chase Manhattan Bank, 155 F. Supp. 30, 36 (S.D.N.Y. 1957) (interpleader of a blocked account; "If the order is served [under § 1655] on such defendants and they fail to appear the court may proceed to adjudicate the controversy as to the property in rem.").

A judgment in rem is not a bar to a subsequent action for money damages by the absent person against the garnishee/stakeholder, who thus faces double liability. See, e.g., Dunlevy, 241 U.S. at 521-23; Western Union, 368 U.S. at 74-75; Sherman v. Kirshman, 369 F.2d 886, 888-90 (2d Cir. 1966) (F-1 judgment in rem is not binding on defendants, or collateral estoppel against defendants, in F-2 action in personam); 13F Wright & Miller, Federal Practice and Procedure § 3635 at 333 (2009) (Because jurisdiction under § 1655 "is based on the court's power over the property in dispute rather than on personal jurisdiction over the defendant, unless the defendant makes a personal appearance, the requested relief only can affect the property and cannot be directed at the defendant personally.").

In these circumstances, BBVA would face double liability in a court within the United States. This Court's judgment would be entitled to full faith and credit in another U.S. (federal

or state) court as an in rem judgment, but not as an in personam judgment against the Cuban Corporation. Hence, this Court's judgment would not bar an action against BBVA for money damages.

A fortiori, BBVA would face double liability in a foreign-country court. Foreign countries lie "beyond the protection of the Full Faith and Credit Clause[.]" JPMorgan, 47 A.D.3d at 307, 846 N.Y.S. 2d at 182. There can be no assurance that a foreign-country court would recognize this Court's judgment. See, e.g., Canada Life, 2009 WL 532830, at *4 (although Canadian courts apply principles of comity substantially similar to those applied by U.S. federal courts, these principles are "no guarantee" that Canadian court would follow U.S. court's decision); Weitzel, 230 P. at 1108 (denying turnover; "while it is probable that the Mexican courts would . . . refuse to compel a second payment, there is no international rule, or law, or treaty . . . requiring that they give faith and credit to judgments of this country's courts."); Shaheen Sports, Inc. v. Asia Ins. Co., No. 98-CV-5951 LAP, 2012 WL 919664, at *8 (S.D.N.Y. Mar. 14, 2012) (concern for potential inconsistent judgments and double liability where turnover would not discharge garnishee's liability in Pakistan, where U.S. judgment would not be recognized).

Even if the foreign-country court did recognize this Court's judgment, there is no reason to believe that the foreign-country court would preclude an action against BBVA in personam where, as here, this Court's judgment would not have such preclusive effect within the United States. Cf. Schoenbrod v. Siegler, 20 N.Y.2d 403, 409 (1967) ("Generally, there is no reason to give more conclusive effect to a foreign judgment than it would be accorded by the courts of the jurisdiction which rendered it.").

D. The Court Should Protect BBVA From Double Liability By Denying Turnover Without Prejudice Or By Granting Turnover Only On Conditions

In these circumstances, the Court should exercise its discretion under CPLR § 5240 to protect BBVA from the risk of double liability. BBVA is an innocent, third-party garnishee. Cf. Parker, Peebles & Knox, 150 A. at 317 (protecting garnishee "who, without collusion, fraud, or negligence, has undertaken to fully discharge his duties"). Petitioners do not, and cannot, allege that BBVA had anything to do with the underlying wrongful deaths of Petitioners' ancestors. Petitioners do not, and cannot, allege that BBVA, the intermediary bank here, had anything to do with the underlying transaction involving the Cuban Corporation that led to the origination of the now-blocked EFT. BBVA merely blocked the EFT when it reached New York. BBVA should be protected because it "did not assume the risks of other parties' dealings with [the Cuban Corporation]." JPMorgan, 47 A.D.3d at 312, 846 N.Y.S.2d at 185.

Turnover here, moreover, would exemplify the adage, "No good deed goes unpunished." BBVA, acting in compliance with U.S. law, blocked the EFT at issue, thereby creating a fund from which Petitioners now seek to benefit. It would be ironic indeed if BBVA -- as a result of action in compliance with U.S. law -- would be required now to pay Petitioners and later to pay the Cuban Corporation.

Nor would turnover achieve the goal of deterring and punishing terrorist states and acts of terrorism. If BBVA is ordered to pay twice, then the ultimate financial burden of the wrongful deaths at issue here would be borne by BBVA, not the Republic of Cuba. Thus, double liability would actually grant a form of debt relief to Cuba.[2]

---

[2] Petrogradsky Mej. Komm. Bank v. Nat'l City Bank, 253 N.Y. 23, 40 (1930), stated that the risk of double liability "abroad, is one that is assumed as part of the business of a bank." The Court of Appeals, however, made that dubious statement in a very different context -- an action at law by a depositor against the bank for breach of the deposit contract. The Court held that an equitable defense (the danger of double payment that could be ordered by a foreign-country court) was "no defense at all," id. at 39, to the action at law. The rule, however, "is different altogether" in a proceeding "in equity, [where] there is discretion, if not duty, to refuse a decree whereby a trustee

In the circumstances of this case, the Court should deny turnover without prejudice. The passage of time may loosen the grip of the Cuban Assets Control Regulations, provide other remedies for Petitioners and clarify the intentions of potential adverse claimants.

In the alternative, in fairness and to avoid prejudice to BBVA, the Court should grant turnover only on the following conditions:

1. If BBVA is later sued for payment of the same debt, then (a) Petitioners consent to be joined as parties in such proceeding and (b) Petitioners consent to, and submit to, the personal jurisdiction of the court in such proceeding.

2. If a court orders BBVA to pay the same debt again, then Petitioners will reimburse BBVA.

3. Before BBVA makes a turnover in this proceeding, Petitioners will post a bond in the amount to be turned over, in order to provide security for Petitioners' obligation, imposed under (2) above, to reimburse BBVA.

Turnover here -- absent conditions protecting BBVA -- would violate BBVA's constitutional right to due process. "Due process is offended when a court compels a litigant to relinquish property without the assurance that he will not confront liability in another forum. [Citing Western Union, 368 U.S. 71]. A court risks offending the constitution in that way if with alternatives available, it disregards them and insists on continuing with [claimant-1's] case in

---

will be directed to make payment of the subject of the trust to one of two claimants unless there is power also by force of the decree to protect against the rival." Id., citing Russian Reins. Co. v. Stoddard, 240 N.Y. 149, 167-68 (1925), in which the Court refused to take jurisdiction of an action for recovery of a trust fund where the trustee could have been exposed to double liability in a foreign-country court. Here, the Court is adjudicating a turnover proceeding, not an action at law by a depositor against a bank. In a turnover proceeding, CPLR § 5240 gives the Court ample discretion to withhold relief, and the language of Petrogradsky does not apply. See also Samsun Logix Corp. v. Bank of China, 929 N.Y.S.2d 202, 2011 WL 1844061, at *6 (N.Y. Sup. Ct. 2011) (unpublished table decision) (Petrogradsky language inapplicable where garnishee banks "have no direct involvement in the underlying dispute" between judgment creditors and judgment debtors).

[claimant-2's] absence, thus exposing [the stakeholder] to a double liability unnecessarily." Siegel, New York Practice § 152 at 270 (5th ed. 2012).

## POINT III

## IN THE ALTERNATIVE, THE COURT SHOULD MODIFY THE PROPOSED TURNOVER ORDER

If the Court enters a turnover order, then BBVA respectfully requests the following: (1) The order should be entitled "Order and Judgment" for turnover. (2) It should recite, consistently with paragraph 12 of the Notice Order, that it is entered pursuant to Rule 54(b), FRCP. (3) It should be made without prejudice to BBVA's right, set forth in paragraphs 15-17 of the Notice Order, to seek attorney's fees and reimbursement of expenses. That topic remains open and unresolved for all the garnishees and BBVA will participate in that process. See Caruso Decl. Ex. A ¶¶ 9-10 for prepared language regarding Rule 54(b) and attorneys' fees and expenses.

## CONCLUSION

For the foregoing reasons, the motion to complete turnover should be denied, or should be granted only on conditions, and the cross-motion for a protective order should be granted.

Dated: New York, New York
October 3, 2014

WHITE & CASE LLP

By: /s/ Kenneth A. Caruso (KAC)
Kenneth A. Caruso

1155 Avenue of the Americas
New York, New York 10036
Tel: (212) 819-8200

Attorneys for BBVA

Of Counsel:
Kenneth A. Caruso
Kelly Bonner
Harold Williford
(*Bar Admission Pending*)