UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALDO VERA, JR., as Personal Representative of the Estate of Aldo Vera, Sr.,<br><br>Plaintiff,<br><br>v.<br><br>THE REPUBLIC OF CUBA,<br><br>Defendant. | Case No. 12-CV-01596 (AKH) |
| ALDO VERA, JR., as Personal Representative of the Estate of Aldo Vera, Sr.; and<br><br>JEANETTE FULLER HAUSLER, and WILLIAM FULLER as court-appointed co-representatives of the ESTATE OF ROBERT OTIS FULLER, deceased, on behalf of all beneficiaries of the Estate and the ESTATE OF ROBERT OTIS FULLER; and<br><br>ALFREDO VILLOLDO, individually, and GUSTAVO E. VILLOLDO, individually and as Administrator, Executor, and Personal Representative of the ESTATE OF GUSTAVO VILLOLDO ARGILAGOS,<br><br>Petitioners,<br><br>v.<br><br>BANCO BILBAO VIZCAYA ARGENTARIA (S.A.); BANK OF AMERICA N.A.; BANK OF NEW YORK MELLON; BARCLAY'S BANK PLC; CITIBANK N.A.; CREDIT SUISSE AG, NEW YORK BRANCH; DEUTSCHE BANK TRUST COMPANY AMERICAS; HSBC BANK (HSBC BANK USA, N.A.); INTESA SANPAOLO S.P.A.; JP MORGAN CHASE BANK, N.A.; RBS CITIZENS, N.A.; ROYAL BANK OF CANADA; SOCIETE GENERALE; UBS AG; WELLS FARGO BANK, NA; BROWN BROTHERS HARRIMAN & CO.; MERCANTIL COMMERCEBANK, N.A.; STANDARD CHARTERED BANK; AND BANCO SANTANDER, S.A.,<br><br>Respondents/Garnishees. | **REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR JUDGMENT GRANTING TURNOVER OF UNCONTESTED PHASE I ACCOUNT AT BBVA ; and IN OPPOSITION TO BBVA CROSS MOTION FOR "PROTECTIVE ORDER"** |

**TABLE OF CONTENTS**

ARGUMENT ........................................................................................................................2

POINT I  BBVA'S SUBJECT MATTER JURISDICTION ARGUMENT HAS ALREADY BEEN REJECTED BY THE COURT IN THIS MATTER, WHICH IS NOW LAW OF THE CASE ....................................................................2

POINT II  PETITIONERS ARE ENTITLED TO TURNOVER OF THE BLOCKED BBVA ACCOUNT DESPITE WHATEVER CLAIMS THE CUBAN AGENCY OR INSTRUMENTALITY HYPOTHETICALLY MIGHT ATTEMPT TO MAKE AGAINST BBVA ..................................................................2

    A. All Requirements for Jurisdiction Have Been Met ..............................................3

    B. Regardless of BBVA's Argument About Risk of Double Liability, there are Numerous Protections that Reduce that Risk ......................................5

        1. According to BBVA, the Cuban Agency or Instrumentality Has No Recognized Claim that Would Entitle It to the Blocked BBVA Account .................................................................................... 5

        2. New York and Law Also Protects BBVA From Double Liability .................................................................................................. 5

    C. BBVA Offers No Reason Why The Court Should Proactively Act to Protect BBVA from Hypothetical Double Liability in a Foreign Suit ..............5

    D. Whether the Cuban Agency or Instrumentality Enjoys the Protection of the Due Process Clause is Irrelevant ..............................................................7

    E. Public Policy Directs that the BBVA Account Be Turned Over .......................9

POINT III  BBVA HAS PROVIDED NO BASIS TO MODIFY THE PROPOSED ORDER FOR TURNOVER IN ANY MATERIAL RESPECT ...................................9

CONCLUSION ....................................................................................................................10

## **TABLE OF AUTHORITIES**

**Page(s)**

### FEDERAL CASES

*Arizona v. California*,
    460 U.S. 605, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983) ................................................................ 2

*Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*,
    582 F.3d 393 (2d Cir. 2009) ....................................................................................................... 8

*Gates v. Syrian Arab Republic*,
    11 C 8715, 2013 WL 1337223 (N.D. Ill. Mar. 29, 2013) ........................................................... 7

*Harrison v. The Republic of Sudan*,
    No. 13-civ-03127 (AT) (S.D.N.Y. Jan. 6, 2014) ........................................................................ 9

*Levin v. Bank of New York*,
    No. 09-civ-5900 (RPP), 2011 WL 812032 (S.D.N.Y. Mar. 4. 2011) ........................................ 9

*Levin v. Bank of New York*,
    No. 09-cv-5900 (RPP) (S.D.N.Y. Jan. 25, 2010) ....................................................................... 4

*LNC Invs., Inc. v. Republic of Nicaragua*, No. MISC.A 01-134-JJF, 2002
    32818644 (D. Del. Dec. 18, 2002) ............................................................................................. 6

*Organizacion JD Ltda. v. U.S. Dept. of Justice*,
    18 F.3d 91 (2d Cir. 1994) ........................................................................................................... 5

*Rux v. ABN-Amro Bank, N.V.*,
    08 CIV. 6588 AKH, 2009 WL 8660085 (S.D.N.Y. Apr. 14, 2009) .......................................... 9

*Rux v. ABN-Amro Bank, N.V.*,
    No. 08-civ-6588 (AKH) (S.D.N.Y. Sep. 10, 2008) .................................................................... 4

*United States v. Plugh*,
    648 F.3d 118 (2d Cir.2011) ........................................................................................................ 2

*Wasserman Media Grp., LLC v. Bender*,
    10 CIV. 8783 SAS, 2012 WL 1506181 (S.D.N.Y. Apr. 26, 2012) ........................................... 3

### STATE CASES

*JPMorgan Chase Bank, N.A. v. Motorola, Inc.*,
    47 A.D.3d 293, 846 N.Y.S.2d 171 (1st Dep't 2007) ................................................................. 6

*Parker, Peebles & Knox v. Nat'l Fire Ins. Co.*,
    111 Conn. 383, 150 A. 313 (1930) ............................................................................................ 6

*Weitzel v. Weitzel*,
    27 Ariz. 117, 230 P. 1106 (1924)..................................................................................6

### FEDERAL STATUTES AND REGULATIONS

12 U.S.C. § 95a ...............................................................................................................3

28 U.S.C. § 1610 .............................................................................................................7

28 U.S.C. § 1610(g)(3) ....................................................................................................7

28 U.S.C. § 1655 .............................................................................................................3

Fed. R. Civ. P. 54(b) .....................................................................................................10

Fed. R. Civ. P. 69 ............................................................................................................3

### STATE STATUTES AND REGULATIONS

CPLR Article 52 .............................................................................................................3

CPLR 5209.......................................................................................................................5

CPLR 5225(b)..............................................................................................................1, 3

CPLR § 5225....................................................................................................................1

U.C.C. § Art. 4A-505 ......................................................................................................5

Petitioners, by their undersigned attorneys, submit this memorandum (1) as a reply in support of their motion for judgment granting turnover of the uncontested Phase I, non-interpleader account at Banco Bilbao Vizcaya Argentaria (S.A.) ("BBVA") (ECF # 682)[1]; and (2) in opposition to BBVA's Cross-Motion for Protective Order (ECF # 710).

BBVA's motion and memorandum of law (ECF # 711) are readily answered. BBVA, which claims no interest in the blocked Cuban account at issue (identified in Swift Decl. Ex. 1 (ECF # 683)) (the "Blocked BBVA Account"), contends that (1) this Court lacks subject matter jurisdiction, and (2) turnover of the Account subjects it to the risk of double liability because the Court has no personal jurisdiction over the Account's originator (the "Cuban Agency or Instrumentality"), an agency and instrumentality of Cuba, and therefore the Cuban Agency or Instrumentality might attempt to sue BBVA on the same debt. BBVA's subject matter jurisdiction argument has already been rejected by this Court and the personal jurisdiction argument turns the law of creditors' rights and remedies on its head. There is no requirement that all potential claimants to a *res* be subject to jurisdiction in an enforcement proceeding for the creditor to recover that *res* to satisfy a judgment. Rather, the law requires only that the debtor has an interest in the subject *res*, the *res* is located in the jurisdiction and the debtor has been given notice as provided under CPLR 5225(b).

Even with its objections, BBVA does not dispute that Petitioners are entitled to turnover of the Blocked BBVA Account pursuant to TRIA and FSIA and Petitioners have satisfied the requirements of CPLR § 5225. Nonetheless, BBVA asks this Court to deny turnover or grant turnover subject to unprecedented conditions that BBVA has only now demanded because

---

[1] This memorandum assumes knowledge of the facts as presented in Petitioners' Memorandum of Law in Support of its Motion for Granting Turnover of the Phase I Account Held at BBVA (ECF # 684).

1

turnover of the Blocked BBVA Account might—hypothetically—expose BBVA to a risk of double liability on the same debt. BBVA's concerns are unfounded and do not support a denial of turnover or a turnover subject to conditions.

**ARGUMENT**

**POINT I**

**BBVA'S SUBJECT MATTER JURISDICTION ARGUMENT HAS ALREADY BEEN REJECTED BY THE COURT IN THIS MATTER, WHICH IS NOW LAW OF THE CASE**

This Court has already ruled that it possesses subject matter jurisdiction over this litigation (ECF # 666), and denied BBVA's motion for reconsideration (ECF # 672). There is no need to revisit those rulings. *See Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983) (once "a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."); *see also United States v. Plugh,* 648 F.3d 118, 123 (2d Cir.2011) ("As a general matter, this Court will adhere to its own decision made at an earlier stage of the litigation.") (internal quotation marks and citation omitted)). Petitioners incorporate all of their prior arguments on this issue by reference.

**POINT II**

**PETITIONERS ARE ENTITLED TO TURNOVER OF THE BLOCKED BBVA ACCOUNT DESPITE WHATEVER CLAIMS THE CUBAN AGENCY OR INSTRUMENTALITY HYPOTHETICALLY MIGHT ATTEMPT TO MAKE AGAINST BBVA**

Other than BBVA's subject matter jurisdiction argument, which it has made unsuccessfully twice in this Court, nowhere in BBVA's Opposition does it contend that Petitioners have failed to satisfy the requirements for turnover, they are not entitled to the funds held in the Blocked BBVA Account, or that the Cuban Agency or Instrumentality is not a Cuban

agency or instrumentality. Rather, BBVA is requesting that the Court, despite Petitioner's clear entitlement to the Blocked BBVA Account, to provide an unprecedented exception to BBVA because the Cuban Agency or Instrumentality, which had an opportunity to oppose turnover of the Blocked BBVA Account might sue BBVA. BBVA fails to provide any convincing argument as to why this Court should hold in favor of BBVA, an entity that trades with a State sponsor of terrorism in violation of the Trading with the Enemy Act ("TWEA"), 12 U.S.C. § 95a *et seq.*), at the expense of Petitioners who have all been found to be victims of Cuba's terrorism.

### A. All Requirements for Jurisdiction Have Been Met

BBVA attempts to turn this *in rem* proceeding into a proceeding requiring personal jurisdiction over the Cuban Agency or Instrumentality, but no such requirement exists. The Court's jurisdictional power over the Cuban Agency or Instrumentality is irrelevant in this *in rem* proceeding; it is undisputed that this Court has *in rem* jurisdiction over the Blocked BBVA Account, which is located in New York and is within the Court's power, pursuant CPLR 5225(b) as applied through Rule 69 of the Federal Rules of Civil Procedure.[2] *See* Notice Order (ECF # 368 at 3); *see also* 245 SIEGEL'S PRAC. REV. 1 (2012) (citing *Wasserman Media Grp., LLC v. Bender*, 10 CIV. 8783 SAS, 2012 WL 1506181 (S.D.N.Y. Apr. 26, 2012) and indicating that personal jurisdiction must be obtained over the garnishee but the judgment debtor and potential claimants are not necessary parties though they may be noticed of the proceeding and provided an opportunity to intervene). Petitioners are asking the Court to exercise its *in rem* jurisdiction

---

[2] BBVA relies on jurisprudence under 28 U.S.C §1655, but concedes in its brief that it is not applicable. Indeed that statute relates to a potential double liability from an "absent defendant." There is no risk of potential liability at the hands of the defendant in this case; the Cuban Agency or Instrumentality, who is merely a potential third-party claimant, has never appeared. The only required defendants in this proceeding under CPLR Article 52 are the garnishees.

and turnover to Petitioners the funds in the Blocked BBVA Account, to which Petitioners are entitled (and which BBVA has not disputed). *See* Pet. Mem. of Law (ECF # 682). BBVA's attempt to invent new jurisdictional requirements for the turnover of the Blocked BBVA Account has no basis.

BBVA's arguments are further weakened by the fact that it already provided the Cuban Agency or Instrumentality a full and fair opportunity to come into this proceeding if it had a true claim to the Blocked BBVA Account. In particular, BBVA furnished notice of this proceeding and the opportunity to intervene to the Cuban Agency or Instrumentality, pursuant to the Order With respect to Giving Notice of Turnover Proceeding (the "Notice Order") (ECF # 368). BBVA Br. at 1 (ECF # 711);[3] *see* Notice Order (ECF # 368). This Court has already held that adherence to the Notice Order "satisf[ies] all of the requirements for service under the FSIA, the Federal Rules and the CPLR and all of the requirements of due process of law." Notice Order (ECF # 368 at ¶ 14, p. 9). This is consistent with similar notice orders entered in other post-judgment execution actions under TRIA. *See, e.g., Levin v. Bank of New York*, No. 09-cv-5900 (RPP) (S.D.N.Y. Jan. 25, 2010) ("Order Regarding Notice and Service of Process") (Dkt. No. 40); *Rux v. ABN-Amro Bank, N.V.*, No. 08-civ-6588 (AKH) (S.D.N.Y. Sep. 10, 2008) ("Order With Respect to Giving Notice of Turnover Proceeding") (Dkt. No. 32). The Cuban Agency or Instrumentality failed to enter an appearance or make a claim to the Blocked BBVA Account, and thus has lost its opportunity to do so. *Id*.

---

[3] BBVA acknowledges that it could have attempted further protection by filing an interpleader as to this account naming the Cuban Agency or Instrumentality. BBVA filed no such interpleader and the deadline for doing so has passed. BBVA Br. at 7. *See* Notice Order (ECF # 368 at 3) (authorizing interpleader).

4

### B. Regardless of BBVA's Argument About Risk of Double Liability, there are Numerous Protections that Reduce that Risk

There are protections that allow for turnover afforded to BBVA, which are directed at protecting garnishees. Thus, the risk of BBVA being exposed to double liability in the United States is low, and even if the Cuban Agency or Instrumentality was to sue BBVA, BBVA would have a number of affirmative defenses.

#### 1. According to BBVA the Cuban Agency or Instrumentality Has No Recognized Claim that Would Entitle It to the Blocked BBVA Account

If, as BBVA has argued, the Uniform Commercial Code were to apply, the one year period in which the originator or originating bank of a wire transfer may object to a transferee bank under the Uniform Commercial Code has long since expired for the wire transfer at issue, which dates back to the 1990's. *See* Art. 4A-505 U.C.C. Thus, in BBVA's view, the Cuban Agency and Instrumentality has no claim.

#### 2. New York and Law Also Protects BBVA From Double Liability

BBVA also has other protections against double liability. As BBVA itself acknowledges, CPLR 5209 grants it a discharge once it pays out the money at issue to judgment creditors. BBVA Br. at 4 (ECF # 711). In addition, there may be other protections available to BBVA. *Cf. Organizacion JD Ltda. v. U.S. Dept. of Justice*, 18 F.3d 91 (2d Cir. 1994) (intervening government action rendered contract impossible to perform permitting defense on grounds of impossibility).

### C. BBVA Offers No Reason Why The Court Should Proactively Act to Protect BBVA from Hypothetical Double Liability in a Foreign Suit

BBVA urges this Court to proactively protect it from the risk of double liability, but offers no authority to support its claim that a risk of double liability in a foreign lawsuit exists.

BBVA cites no proof in this Circuit that would support its view and none of the cases cited by BBVA are analogous to the present case.

First, the cases BBVA cite do not implicate the anti-terrorism policy consideration that underlie this case. *See, e.g.*, *Parker, Peebles & Knox v. Nat'l Fire Ins. Co.*, 111 Conn. 383, 150 A. 313, 314 (1930) (concerning business debts and garnishment of insurance policy benefits paid in Haiti); *Weitzel v. Weitzel*, 27 Ariz. 117, 125, 230 P. 1106, 1108 (1924) (concerning garnishment of wages earned and payable in Mexico).

Moreover, none of the cases where a court acted to protect a stakeholder involved protecting a stakeholder bank and the courts that have declined to enter a judgment of garnishment have done so only after reviewing substantive, credible evidence presented that established the existence of a high risk of double liability in a foreign suit. *See, e.g.*, *Weitzel*, 27 Ariz. at 123 (court considered parties' stipulation that Mexican lawyer would testify that Arizona judgment could not be pleaded in Mexico as a bar or defense to a suit for the same debt in that country); *JPMorgan Chase Bank, N.A. v. Motorola, Inc.*, 47 A.D.3d 293, 305, 846 N.Y.S.2d 171 (1st Dep't 2007); *LNC Invs., Inc. v. Republic of Nicaragua*, No. MISC.A 01-134-JJF, 2002 32818644, at *1 (D. Del. Dec. 18, 2002) (crediting and accepting sworn declarations of Nicaraguan representative and a professor concerning the risk of double liability).

Procedurally and factually this case is nothing like *JP Morgan*. In *JP Morgan*, the court reversed a judgment of garnishment where "[t]he uncontroverted opinion of Motorola's expert on Indian law indicate[d], in no uncertain terms, that the Indian courts [would] not give effect to any garnishment issued in [that] proceeding." 47 A.D.3d at 305. The expert evidence was unrebutted by Chase. Moreover, of significance here, the court took into account the fact that that, unlike banks, which assume the risk of double liability as part of its business, Motorola "is *not* engaged

6

in banking or any other business in which financial deposits are held on account for customers." *Id.* at 311.

BBVA, by contrast, does nothing more than casually argue that it may be subject to double liability in a foreign court. It presents no evidence to support its contentions that it would be subject to the jurisdiction of a foreign court, any of its assets would be subject to the jurisdiction of a foreign court, or that the double liability defense would not be available to it under the foreign country's laws. Moreover, BBVA, is a bank that has agreed to trade with Cuba, a State sponsor of terrorism. In short, BBVA has provided no evidence whatsoever to justify a denial of the Petitioners' Motion or the imposition of conditions on the turnover of assets. Even if it had, there is still no support for the relief here given the statutory regime at issue.

Finally, BBVA's reliance on 28 U.S.C. § 1610(g)(3) is misplaced. That section, entitled "Third-Party Joint Property Holders," pertains to property that a foreign state or its agency or instrumentality jointly owns with a person whose property is not subject to execution under § 1610. *See Gates v. Syrian Arab Republic*, 11 C 8715, 2013 WL 1337223, at *10 (N.D. Ill. Mar. 29, 2013) (finding there was insufficient evidence before the court as to the potential claimants to the accounts at issue). BBVA does not claim (and has presented no evidence to suggest) that any other party other than the Cuban Agency or Instrumentality has an interest in the Blocked BBVA Account. That statute does not apply.

### D. Whether the Cuban Agency or Instrumentality Enjoys the Protection of the Due Process Clause is Irrelevant

BBVA argues that it could be exposed to double liability in this *in rem* proceeding in which BBVA chose to provide notice rather than interplead the Cuban Agency or Instrumentality because, according to BBVA, the Court lacks personal jurisdiction over the Cuban Agency or

Instrumentality and the Cuban Agency or Instrumentality would be entitled to due process protections and the right to assert a minimum contacts affirmative defense to personal jurisdiction. It is not necessary for the Court to consider BBVA's assertions, guesses and speculations as BBVA chose to give the Cuban Agency or Instrumentality notice of the proceeding with the option to intervene and the Cuban Agency or Instrumentality chose not to intervene.

BBVA also had the ability and option to attempt to interplead the Cuban Agency or Instrumentality, which would have given the Cuban Agency or Instrumentality the option to raise any such defenses if it chose to; but BBVA opted not to pursue interpleader. It is not for Petitioners or this Court to speculate as to whether the Cuban Agency or Instrumentality would have accepted the jurisdiction of this Court or challenged it in an interpleader with regard to this *in rem* proceeding. The Cuban Agency or Instrumentality is not a necessary party, and BBVA does not assert that it is a necessary party. Moreover, even if it were relevant, the consideration of whether the Cuban Agency or Instrumentality is entitled to due process protections would likely involve an inquiry into the ownership and control by the Cuban government of the entity and BBVA has not even attempted to make this showing. *See Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 400 (2d Cir. 2009) ("[I]f the Azerbaijani government 'exerted sufficient control over' SOCAR 'to make it an agent of the State, then there is no reason to extend to [SOCAR] a constitutional right that is denied to the sovereign itself.'") (citations omitted).

As a result, BBVA's concern is entirely speculative and irrelevant.

### E. Public Policy Directs that the BBVA Account Be Turned Over

To hold in favor of BBVA would be against public policy and would negate the statutory and regulatory scheme designed to compensate terrorist victims such as Petitioners. Whatever risk that BBVA believes may exist, courts under similar circumstances and under the same TRIA scheme have ordered the turnover of accounts where the same double-liability risk was also present. *Harrison v. The Republic of Sudan*, No. 13-civ-03127 (AT) (S.D.N.Y. Jan. 6, 2014) (Dkt. No. 31); *Levin v. Bank of New York*, No. 09-civ-5900 (RPP), 2011 WL 812032 (S.D.N.Y. Mar. 4. 2011); *Rux v. ABN-Amro Bank, N.V.*, 08 CIV. 6588 AKH, 2009 WL 8660085 (S.D.N.Y. Apr. 14, 2009). Because the terrorist victims' entitlement to the funds is based on the terrorist party's, or its agency or instrumentality's interest in the property, rarely if ever will there be personal jurisdiction over that terrorist party, nor is such personal jurisdiction necessary under the law. The unsupported exception that BBVA is requesting, in addition to inserting non-existent requirements to turnover into New York and federal law, would swallow the rule and go against the federal statutory and regulatory scheme established by TRIA and the CACRs. BBVA fails to explain why a public policy interest in protecting BBVA, an entity that admittedly trades with a state sponsor of terrorism and enemy of the United States, from the hypothetical risk of double-liability is paramount to the United States' interest in compensating victims of terrorist states.

## POINT III

### BBVA HAS PROVIDED NO BASIS TO MODIFY THE PROPOSED ORDER FOR TURNOVER IN ANY MATERIAL RESPECT

In the alternative, BBVA seeks to modify Petitioners' proposed form of order. *See* Caruso Decl., Ex. 1 (ECF # 712-1). Petitioners will take into account BBVA's comments preserving BBVA's right to seek attorneys' fees and expenses under the Notice Order. A revised

proposed form of order submitted to the court addresses some of BBVA's concerns. *See* attachment to 10/17/14 Letter from Swift at ¶¶ 5 & 10. However, BBVA's remaining changes are not acceptable. The majority of the changes are contrary to TRIA and this Court's rulings. BBVA seeks to add a FRCP 54(b) certification. But certification is premature. BBVA is just one of 19 garnishees in this proceeding, each of which holds blocked Cuban accounts. BBVA holds other blocked Cuban accounts which must await a ruling in Phase II. It would be a disservice to the Court of Appeals to initiate FRCP 54(b) certifications each time the Court rules on a particular account.

Accordingly, Petitioners request that this Court enter an order in the form attached hereto as Exhibit 1 and deny BBVA's motion for protective order.

## CONCLUSION

BBVA's motion is based on the premises that this Court lacks personal jurisdiction over the Cuban Corporation and it faces the risk that it could be sued in a foreign court. BBVA has provided no basis for either contention. No foreign court could assert *in rem* jurisdiction over the BBVA Account, which is in New York and a potential claimant is not a necessary party in turnover proceedings. Moreover, BBVA has provided no evidence of the risk it allegedly faces; even if it did, the statutory scheme of TRIA and CACRs together with BBVA's status as a stakeholder bank would override that concern. This Court is not a protector against what a foreign court might do. By entering judgment as requested by Petitioners, this Court is following the law of New York and the United States.

| | |
|---|---|
| HALL, LAMB & HALL, P.A. | KOHN, SWIFT & GRAF, P.C. |
| By: /s/ Andrew C. Hall | /s/ Robert A. Swift |
| Andrew C. Hall, Esq.* | Admitted *Pro Hac Vice* |
| Brandon R. Levitt, Esq. | One South Broad Street, Suite 2100 |
| Grand Bay Plaza, Penthouse One | Philadelphia, Pennsylvania 19107 |
| 2665 South Bayshore Drive | Phone: 215-238-1700 |
| Miami, Florida, 33133 | Fax:   215-238-1968 |
| Phone: (305) 374-5030 | and |
| Fax:   (305) 374-5033 | |
| * admitted *pro hac vice* | |
| and | |
| | |
| Edward H. Rosenthal, Esq. | Jeffrey E. Glen |
| Beth I. Goldman, Esq. | ANDERSON KILL P.C. |
| FRANKFURT KURNIT KLEIN & SELZ, P.C. | 1251 Avenue of the Americas |
| | New York, New York 10020 |
| 488 Madison Ave, 10th Floor | Phone: 212-278-1000 |
| New York, New York 10022 | Fax:   212-278-1733 |
| Phone: (212) 980-0120 | |
| Fax:   (212) 593-9175 | *Attorneys for Petitioner Aldo Vera, Jr.* |

*Attorneys for Alfredo Villoldo, individually, and Gustavo E. Villoldo, individually, and as Administrator, Executor, and Personal Representative of the Estate of Gustavo Villoldo Agrilagos*

COLSON, HICKS, EIDSON

/s/ Roberto Martinez
Admitted *pro hac vice*
Ronald W. Kleinman, Esq.
255 Alhambra Circle, Penthouse
Coral Gables, Florida, 33134
Phone: (305) 476-7400
Fax: (305) 476-7444

*Attorneys for Petitioners Jeanette Fuller Hausler, and William Fuller as court-appointed co-representatives of the Estate of Robert Otis Fuller, deceased, on behalf of all beneficiaries of the Estate and the Estate Of Robert Otis Fuller*

11