## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ALDO VERA, JR., as personal representative of
the Estate of Aldo Vera, Sr.,

                         *Plaintiff*,

           v.

THE REPUBLIC OF CUBA,

                        *Defendant*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

No. 12 Civ. 1596 (AKH)

 

**REPLY MEMORANDUM OF STANDARD CHARTERED BANK IN FURTHER
SUPPORT OF ITS MOTION FOR RECONSIDERATION OF THE COURT'S
SEPTEMBER 10, 2014 DISCOVERY ORDER AND, ALTERNATIVELY, FOR
CERTIFICATION OF AN INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**

Barry J. Glickman
Bruce S. Goodman
ZEICHNER ELLMAN & KRAUSE LLP
1211 Avenue of the Americas
New York, New York  10036
(212) 223-0400 (telephone)
(212) 753-0396 (facsimile)
bglickman@zeklaw.com
bgoodman@zeklaw.com

Sharon L. Nelles
Bruce E. Clark
Bradley P. Smith
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000 (telephone)
(212) 558-3588 (facsimile)
nelless@sullcrom.com
clarkb@sullcrom.com
smithbr@sullcrom.com

*Attorneys for Non-Party
Standard Chartered Bank*

October 22, 2014

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I.     Under *Gucci*, Standard Chartered Is Not Subject to General Personal
Jurisdiction in This Court. ....................................................................................... 2

II.    The *in Rem* Turnover Proceedings Before This Court Do Not Provide a Basis for
an Assertion of General Personal Jurisdiction over Standard Chartered. ............... 3

III.   The Court Lacks Specific Jurisdiction over Standard Chartered to Compel the
Production of Information from Outside of New York. ........................................... 6

IV.   Section 200 of New York's Banking Law Does Not Establish the Requisite
Personal Jurisdiction over Standard Chartered. ..................................................... 8

V.    Even if Personal Jurisdiction Existed, the Court Would Need to Undertake
a Comity Analysis Before Requiring the Production of Information from
Outside the United States. ....................................................................................... 8

VI.   In the Alternative, the Court Should Certify the September 10 Order for Appeal. ............. 9

CONCLUSION .................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

Application To Enforce Admin. Subpoenas
    Duces Tecum of the SEC v. Knowles,
    87 F.3d 413 (10th Cir. 1996) ..................................................................6

British Marine PLC v. Aavanti Shipping &
    Chartering Ltd., No. 13 Civ. 839,
    2014 WL 2475485 (E.D.N.Y. June 3, 2014) ..........................................4

Cargill, Inc. v. Sabine Trading & Shipping Co.,
    756 F.2d 224 (2d Cir. 1985)....................................................................6

Daimler AG v. Bauman,
    134 S. Ct. 746 (2014)...........................................................................5, 6

E.N.E. Aegiali I v. Guangzhou CSSC-Oceanline-GWS
    Marine Eng'g Co., No. 09 Civ. 4570,
    2010 WL 2008700 (S.D.N.Y. May 19, 2010) .........................................6

Freeman v. Bee Mach. Co.,
    319 U.S. 448 (1943)................................................................................6

Gucci Am., Inc. v. Bank of China,
    Nos. 11-3934-cv, 12-4557-cv,
    2014 WL 4629049 (2d Cir. Sept. 17, 2014) ................................... passim

Hawknet, Ltd. v. Overseas Shipping Agencies,
    590 F.3d 87 (2d Cir. 2009)......................................................................5

Nursan Metalurji Endustrisi A.S. v. M/V Torm
    Gertrud, No. 07 Civ. 7687,
    2009 WL 536059 (S.D.N.Y. Feb. 27, 2009) ..........................................4

Tenn. Student Assistance Corp. v. Hood,
    541 U.S. 440 (2004).............................................................................3, 4

Wafios Mach. Corp. v. Nucoil Indus. Co.,
    No. 03 Civ. 9865,
    2004 WL 1627168 (S.D.N.Y. July 21, 2004) .........................................6

Zeballos v. Tan, No. 06 Civ. 1268,
    2006 WL 1975995 (S.D.N.Y. July 10, 2006) .........................................6

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

### STATUTES AND RULES

15 U.S.C. § 15 ..................................................................................................................6

28 U.S.C. § 1291 .............................................................................................................9

28 U.S.C. § 1292 .............................................................................................................9

N.Y. BANKING LAW § 200 ...............................................................................................8

### OTHER AUTHORITY

Restatement (Third) of Foreign Relations Law (1987)......................................................8

4A C. Wright & A. Miller,
FEDERAL PRACTICE AND PROCEDURE (3d ed. 2002) ...............................................4

5C C. Wright & A. Miller,
FEDERAL PRACTICE AND PROCEDURE (3d ed. 2014) ...............................................6

Non-party Standard Chartered Bank ("Standard Chartered") respectfully submits this reply memorandum in further support of its motion for reconsideration of the September 10, 2014 Order (the "September 10 Order") compelling a further response to plaintiff's Information Subpoena.[1]

## PRELIMINARY STATEMENT

Plaintiff's opposition brief makes two clear concessions.  First, plaintiff acknowledges that the Second Circuit's recent decision in *Gucci America, Inc.* v. *Bank of China*, Nos. 11-3934-cv, 12-4557-cv, 2014 WL 4629049 (2d Cir. Sept. 17, 2014), "is a new and controlling decision requiring this Court to reconsider" the September 10 Order.  (Pl.'s Opp. at 3.)  Second, plaintiff agrees that following *Gucci* "a court must have either *general or specific personal jurisdiction* over a nonparty before compelling it to comply" with plaintiff's Information Subpoena.  (Pl.'s Opp. at 4 (emphasis added).)  Under the test articulated in *Gucci*, Standard Chartered is not subject to general personal jurisdiction in New York.  Nor is there any basis for an assertion of specific jurisdiction in New York because, as plaintiff admits, the non-party discovery it seeks would come from Standard Chartered's overseas branches and would play no role in the proceedings before this Court.

In the absence of a viable personal jurisdiction theory, plaintiff puts forward two alternative arguments:  (i) that Standard Chartered subjected itself to jurisdiction based on pleadings filed in the turnover proceedings that are now pending before this Court; and (ii) that Standard Chartered has consented to personal jurisdiction under New York's Banking Law.  (Pl.'s Opp. at 4-5.)  Neither of these arguments withstands scrutiny.  The turnover proceedings

---

[1]   Capitalized terms in this reply brief shall have the same meaning ascribed to them in Standard Chartered's opening brief (ECF No. 700).

pending before Your Honor are based on *in rem* jurisdiction over property, not *in personam* jurisdiction over Standard Chartered.  Nothing in those proceedings has any bearing on the question of whether the Court properly may exercise personal jurisdiction over Standard Chartered and compel it to provide additional information in response to a non-party subpoena that was served well prior to commencement of the turnover proceedings.  Nor does the Banking Law provision cited by plaintiff establish personal jurisdiction over Standard Chartered.  That provision relates to service of process – not personal jurisdiction – and it applies only to matters arising from the activities of Standard Chartered's New York branch.  The provision thus has no relevance to a motion to compel discovery responses from the non-New York branches of Standard Chartered.

Under *Gucci*, in the absence of personal jurisdiction over Standard Chartered, the Court should reconsider – and overturn – the September 10 Order.  Even if personal jurisdiction were present here, *Gucci* also would require an international comity analysis.  In the alternative – and hearing no opposition from plaintiff – the Court should certify the September 10 Order for immediate appeal to the Second Circuit.

## ARGUMENT

### I.     Under *Gucci*, Standard Chartered Is Not Subject to General Personal Jurisdiction in This Court.

Plaintiff does not dispute that *Gucci* directly relates to Standard Chartered's motion for reconsideration.  As plaintiff succinctly summarizes, in the absence of "exceptional circumstances" – none of which plaintiff asserts to be present here – *Gucci* "precludes a court's assertion of general jurisdiction over a foreign bank whose state of incorporation and principal place of business are outside the United States."  (Pl.'s Opp. at 3.)  This holding applies here given that plaintiff does not challenge the fact that Standard Chartered "is incorporated in

England and Wales and is headquartered in London, England." (Pl.'s Opp. at 4.) Under *Gucci*,

there is thus "no basis consistent with due process" for the Court to have "exercised general

jurisdiction" over Standard Chartered "in order to compel it to comply with" plaintiff's

Information Subpoena. (*Gucci* Slip Op. at 29, 42.)

**II.     The *in Rem* Turnover Proceedings Before This Court Do Not Provide a Basis for
          an Assertion of General Personal Jurisdiction over Standard Chartered.**

As an alternative basis for attempting to establish general personal jurisdiction

over Standard Chartered to enforce the Information Subpoena, plaintiff improperly tries to rely

upon the turnover proceedings currently pending before this Court. Plaintiff argues that Standard

Chartered "failed to raise the defense of lack of personal jurisdiction in its Answer" to plaintiff's

turnover petition and that Standard Chartered "submitted itself to the general jurisdiction of this

Court" by "asserting Counterclaims in its Answer" to the turnover petition. (Pl.'s Opp. at 4.)

This argument fails for multiple reasons.

First, plaintiff's turnover petition is not premised on allegations of *in personam*

jurisdiction over Standard Chartered or any other garnishee. Rather, as plaintiff expressly

alleges in his February 12, 2014, amended turnover petition, the jurisdictional basis for those

proceedings is the Court's "*in rem* jurisdiction over the blocked property" present in this District

due to sanctions against Cuba. (Am. Omnibus Pet. for Turnover Order ("Am. Pet.") (ECF

No. 423) ¶ 5.)[2] Plaintiff's reliance upon *in rem* jurisdiction "allows [this Court] to adjudicate the

[turnover proceedings] without *in personam* jurisdiction" over Standard Chartered or any other

interested person. *Tenn. Student Assistance Corp.* v. *Hood*, 541 U.S. 440, 453 (2004); *see also*

---

[2]     In recent correspondence to the Court, plaintiff reiterated that the pending turnover
proceedings are based on "*in rem* jurisdiction." (Pl.'s Letter (ECF No. 716) at 1 (Oct. 15,
2014).)

*Nursan Metalurji Endustrisi A.S.* v. *M/V Torm Gertrud*, No. 07 Civ. 7687, 2009 WL 536059, at *4 (S.D.N.Y. Feb. 27, 2009) ("An *in rem* action may be maintained irrespective of whether the defendant is liable *in personam*."). Because "jurisdiction over the person is irrelevant" in an *in rem* proceeding, plaintiff was not required to allege – and did not in fact allege – that Standard Chartered is subject to personal jurisdiction in New York. *Hood*, 541 U.S. at 453 (citing 4A C. Wright & A. Miller, Federal Practice and Procedure § 1070, at 280–81 (3d ed. 2002)). By the same token, Standard Chartered was under no obligation to raise a personal jurisdiction defense when plaintiff proceeded on an *in rem* jurisdictional basis and made no jurisdictional allegations against Standard Chartered. In answering plaintiff's amended turnover petition, Standard Chartered was "correct to focus on the type of jurisdiction actually alleged" and did not waive objections to *in personam* jurisdiction when that was not the basis on which plaintiff chose to proceed. *British Marine PLC* v. *Aavanti Shipping & Chartering Ltd.*, No. 13 Civ. 839, 2014 WL 2475485, at *9 (E.D.N.Y. June 3, 2014). Standard Chartered's status as a garnishee in the pending turnover proceedings thus does not provide plaintiff with an *in personam* jurisdictional hook that can be used to compel a response to the non-party Information Subpoena.

Second, to the extent that plaintiff's turnover petition might be construed to include allegations of personal jurisdiction, Standard Chartered denied said allegations. The closest plaintiff comes to alleging anything akin to personal jurisdiction is in paragraph 26 of the amended petition where plaintiff alleges that Standard Chartered "operates a branch in New York" and "maintains bank accounts in this Judicial District." (Am. Pet. ¶ 26.) In its answer to the amended petition, however, Standard Chartered denied "each and every allegation contained in paragraph 26" of the amended petition, except that it admitted that Standard Chartered

"maintains an office" in New York.  (Answer of Standard Chartered Bank to Am. Omnibus Pet. for Turnover Order ("SCB Answer") (ECF No. 450) ¶ 4.)  Standard Chartered thus did not leave plaintiff's allegations unchallenged.

Third, the Second Circuit's ruling in *Gucci* confirms that Standard Chartered has not waived its jurisdictional defenses.   Although this Court concluded in the September 10 Order that, notwithstanding the Supreme Court's ruling in *Daimler AG* v. *Bauman*, 134 S. Ct. 746 (2014), Standard Chartered remained "subject to personal jurisdiction in New York" (September 10 Order at 2), *Gucci* now compels a different outcome.  As plaintiff concedes, "*Gucci* extended the United States Supreme Court's decision" in *Daimler* "to postjudgment garnishment proceedings against foreign banks."  (Pl.'s Opp. at 3.)  Because this is a new controlling precedent, Standard Chartered "'cannot be deemed to have waived objections or defenses which were not known to be available at the time they could first have been made.'" (*Gucci* Slip Op. at 29 (quoting *Hawknet, Ltd.* v. *Overseas Shipping Agencies*, 590 F.3d 87, 92 (2d Cir. 2009)).)  Standard Chartered thus has not waived its newly recognized jurisdictional defenses.

Finally, because Standard Chartered's jurisdictional defenses remain intact, Standard Chartered did not "submit[] itself to the general jurisdiction of this Court" by pleading counterclaims in response to plaintiff's amended turnover petition.  (Pl.'s Opp. at 4.)  Moreover, Standard Chartered's counterclaims exclusively sought relief that would clarify the rights of all interested parties in the property held in this District pursuant to sanctions against Cuba (SCB Answer ¶¶ 25, 28) – *i.e.*, the property that formed the basis for plaintiff's allegation that this Court has *in rem* jurisdiction over the pending turnover proceedings.  Because Standard Chartered's counterclaims "have not destroyed the essentially" *in rem* nature of the turnover

proceedings pending in this Court, Standard Chartered "cannot be said to have consented to complete jurisdiction under general waiver principles." *Cargill, Inc.* v. *Sabine Trading & Shipping Co.*, 756 F.2d 224, 229 (2d Cir. 1985); *see also E.N.E. Aegiali I* v. *Guangzhou CSSC-Oceanline-GWS Marine Eng'g Co.*, No. 09 Civ. 4570, 2010 WL 2008700, at *2 (S.D.N.Y. May 19, 2010) (rejecting argument that defendant waived personal jurisdiction defense by filing counterclaims when jurisdictional defense was not available "[a]t the time . . . under pre-*Jaldhi* law of the Second Circuit"); *Zeballos* v. *Tan*, No. 06 Civ. 1268, 2006 WL 1975995, at *5 (S.D.N.Y. July 10, 2006) (recognizing as "a sound approach" the principle that "'no Rule 12(b) defense is waived by the assertion of a counterclaim, whether permissive or compulsory.'") (quoting 5C C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1397 (3d ed. 2014)); *Wafios Mach. Corp.* v. *Nucoil Indus. Co.*, No. 03 Civ. 9865, 2004 WL 1627168, at *2 (S.D.N.Y. July 21, 2004) (holding that defendant "has not waived its right to assert its jurisdictional defenses" by asserting counterclaims).[3]

### III.   The Court Lacks Specific Jurisdiction over Standard Chartered to Compel the Production of Information from Outside of New York.

Turning to specific personal jurisdiction, plaintiff does not dispute that the test relevant to "nonparty discovery requests" requires "focusing on the connection between the nonparty's contacts with the forum and the discovery order at issue." (*Gucci* Slip Op. at  43 (citing *Application To Enforce Admin. Subpoenas Duces Tecum of the SEC* v. *Knowles*, 87 F.3d

---

[3]   Plaintiff incorrectly seeks to rely on the Supreme Court's 1943 decision in *Freeman* v. *Bee Machine Co.*, 319 U.S. 448 (1943).  (Pl.'s Opp. at 4.)  The Supreme Court's decision in *Freeman* "relates to venue" under Section 4 of the Clayton Act, 15 U.S.C. § 15, not to personal jurisdiction.  319 U.S. at 453.  The case thus does not affect the question of personal jurisdiction currently before this Court, particularly in light of the Supreme Court's more recent views on personal jurisdiction, as set out in *Daimler*.

413, 418 (10th Cir. 1996)).)  There is no such connection here.  Plaintiff concedes that Standard Chartered already complied with the Information Subpoena to the extent that plaintiff sought information located "inside the United States."  (Pl.'s Opp. at 2.)  What is left is information outside of New York – *i.e.*, information that plainly does not relate to Standard Chartered's contacts within New York.[4]

In addition, plaintiff's opposition brief makes clear that his attempt to compel a further response to the non-party Information Subpoena in fact has nothing to do with the judgment enforcement proceedings pending before this Court.  Instead, plaintiff seeks to use the Information Subpoena as a vehicle to obtain information that may enable him "to decide whether to seek recognition of his judgment *abroad* and, if so, in which countries and against which banks."  (*Id.* at 5-6 (emphasis added); *see also id.* at 7 ("[I]nformation as to Cuba's accounts abroad may enable Vera to collect on his judgment *in a foreign country*.") (emphasis added).)  In other words, the only putative basis on which plaintiff seeks to enforce the Information Subpoena is in aid of a hypothetical future proceeding in a foreign court.  Because there is no connection between  proceedings in this Court and the additional discovery that plaintiff seeks to obtain from Standard Chartered, there are no grounds for any assertion of specific jurisdiction over Standard Chartered and thus no jurisdictional basis for an order compelling a further response to the Information Subpoena.

---

[4]    Plaintiff's statement that the Court "has *in rem* jurisdiction over blocked Cuban accounts" neither establishes personal jurisdiction over Standard Chartered nor suggests that the exercise of such jurisdiction would be reasonable.  (Pl.'s Opp. at 5.)  To the contrary, plaintiff's reliance on *in rem* jurisdiction as the basis for its turnover petition shows that the ongoing turnover proceedings have not resulted in Standard Chartered being subjected to personal jurisdiction in this forum.  *See supra* pp. 3-4.

IV.    **Section 200 of New York's Banking Law Does Not Establish the Requisite
Personal Jurisdiction over Standard Chartered.**

Plaintiff next asserts that by operating a branch in New York, Standard Chartered has consented – by operation of law – to "specific jurisdiction in New York."  (Pl.'s Opp. at 5.) This is incorrect.  The statutory provision cited by plaintiff requires foreign banks to designate New York's Superintendent of Financial Services as an agent *for service of process*, and only in cases "arising out of a transaction with its New York agency or agencies or branch or branches." N.Y. BANKING LAW § 200(3).  This provision thus relates to service of process, not personal jurisdiction.  But even if Section 200(3) related to personal jurisdiction, that would not help plaintiff here.  The relief that plaintiff has sought from this Court is an order compelling Standard Chartered to provide information from its non-U.S. branches so that plaintiff can then consider whether it wants to initiate judgment-enforcement proceedings in a non-U.S. court.  As such, neither the information sought by plaintiff, nor plaintiff's anticipated use of such information,  "aris[es] out of a transaction" with Standard Chartered's New York branch.  *Id.*

V.    **Even if Personal Jurisdiction Existed, the Court Would Need to Undertake
a Comity Analysis Before Requiring the Production of Information from
Outside the United States.**

Plaintiff concedes that even if personal jurisdiction exists, "[t]he *Gucci* decision requires a court to consider comity" issues before compelling a non-party to produce documents located in a foreign jurisdiction.  (Pl.'s Opp. at 8.)  Although plaintiff suggests that this Court already conducted a comity analysis (*id.*), that is plainly untrue.  The September 10 Order spans but three pages and does not mention the concept of comity or purport to apply to Standard Chartered any of the considerations set out in Section 442(1)(c) of the Restatement (Third) of Foreign Relations Law.  *Gucci* requires a "proper comity analysis" based on a developed record. (*Gucci* Slip Op. at 25.)  For example, plaintiff contends that foreign bank secrecy laws "are

rarely enforced" (Pl.'s Opp. at 10), so there supposedly will be no harm in compelling the production of information from abroad.  This unsupported blanket assertion does not provide a basis for a proper assessment of the relevant comity issues.  Should the Court determine upon reconsideration that Standard Chartered is subject to personal jurisdiction in this District, plaintiff should be required to make a showing that there is a reasonable basis for seeking information from a particular foreign jurisdiction, so that the parties can develop the record needed for the required comity analysis.

## VI.     In the Alternative, the Court Should Certify the September 10 Order for Appeal.

Plaintiff has stated no opposition to Standard Chartered's request that the Court certify the September 10 Order for immediate appeal to the Second Circuit in the event that the Court determines not to grant reconsideration.[5]  Because the holdings in *Gucci* provide a "substantial ground" for disagreement with the September 10 Order and it is clear that, if this motion for reconsideration is denied,  an immediate appeal from that order may materially advance the ultimate termination of this proceeding, 28 U.S.C. § 1292(b), Standard Chartered respectfully submits that an immediate appeal would be warranted.

---

[5]    Although Standard Chartered believes that there are grounds for an appeal as of right under 28 U.S.C. § 1291, certification under 28 U.S.C. § 1292(b) should avoid debate over that question.

## **CONCLUSION**

For the reasons set forth above, as well as those set out in its opening

memorandum, Standard Chartered respectfully requests that the Court reconsider the

September 10 Order and deny plaintiff's motion to compel any further response to the

Information Subpoena or, alternatively, certify the September 10 Order for interlocutory appeal.

Dated: New York, New York                                 Respectfully submitted,
      October 22, 2014

                                                                   /s/ Sharon L. Nelles

Barry J. Glickman                                         Sharon L. Nelles
Bruce S. Goodman                                          Bruce E. Clark
ZEICHNER ELLMAN & KRAUSE LLP                              Bradley P. Smith
1211 Avenue of the Americas                               SULLIVAN & CROMWELL LLP
New York, New York  10036                                 125 Broad Street
(212) 223-0400 (telephone)                                New York, New York  10004
(212) 753-0396 (facsimile)                                (212) 558-4000 (telephone)
bglickman@zeklaw.com                                      (212) 558-3588 (facsimile)
bgoodman@zeklaw.com                                       clarkb@sullcrom.com
                                                        nelless@sullcrom.com
                                                        smithbr@sullcrom.com

                                                  *Attorneys for Non-Party*
                                                  *Standard Chartered Bank*