## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

|  |  |  |
|---|---|---|
| ALDO VERA, JR., as Personal Representative of the Estate of Aldo Vera, Sr., | : | |
| | : | |
| Plaintiff, | : | |
| vs. | : | |
| | : | |
| THE REPUBLIC OF CUBA, | : | 12 Civ. 1596 (AKH) |
| | : | |
| Defendant. | : | |

---

|  |  |
|---|---|
| ALDO VERA, JR., as Personal Representative of the Estate of Aldo Vera, Sr., et al., | : |
| | : |
| Petitioners, | : |
| v. | : |
| | : |
| BANCO BILBAO VIZCAYA ARGENTARIA (S.A.), et al., | : |
| | : |
| Respondents/Garnishees. | : |

---

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## CROSS-MOTION, PURSUANT TO CPLR § 5240, FOR A
## PROTECTIVE ORDER DENYING OR CONDITIONING TURNOVER

WHITE & CASE LLP

1155 Avenue of the Americas
New York, New York  10036
(212) 819-8200

*Attorneys for Respondent*
*Banco Bilbao Vizcaya*
*Argentaria, S.A.*

Of Counsel:

   Kenneth A. Caruso
   Kelly Bonner
   Harold W. Williford

TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................i

TABLE OF AUTHORITIES ........................................................................................ii

ARGUMENT ...............................................................................................................1

I.      THE COURTS LACK SUBJECT MATTER JURISDICTION...........................1

II.     THE COURT SHOULD PROTECT BBVA FROM THE RISK OF DOUBLE
LIABILITY .........................................................................................................1

      A.     It Is Public Policy To Avoid Double Liability.......................................1

      B.     Turnover Here Would Expose BBVA To Double Liability ....................2

            1.     The Court Lacks Personal Jurisdiction Over The Cuban Corporation ........2

            2.     BBVA Faces Double Liability..................................................4

            3.     N.Y. UCC § 4-A-505 Does Not Avoid Double Liability ..........................5

      C.     The Court Should Protect BBVA From Double Liability By Denying
Turnover Without Prejudice Or By Granting Turnover Only On Conditions.........6

            1.     BBVA Acted In Compliance With U.S. Law ..............................................6

            2.     Petitioners' Other Contentions Are Meritless.............................................7

            3.     The Court Should Impose Conditions On Turnover...................................8

III.    IN THE ALTERNATIVE, THE COURT SHOULD MODIFY THE PROPOSED
TURNOVER ORDER .......................................................................................9

CONCLUSION..........................................................................................................10

NEWYORK 9358931

## TABLE OF AUTHORITIES

### CASES

Baker v. Gen. Motors Corp.,
    522 U.S. 222 (1998)........................................................................................3

First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba,
    462 U.S. 611 (1983)........................................................................................3

Frontera Res. Azer. Corp. v. State Oil Co. of the Azer. Rep.,
    582 F.3d 393 (2d Cir. 2009)...........................................................................3

Gates v. Syrian Arab Republic,
    No. 11 C 8715, 2013 WL 1337223 (N.D. Ill. Mar. 29, 2013) .....................1

Inland Credit Corp. v. Gold,
    87 A.D.2d 753, 448 N.Y.S.2d 690 (1st Dep't 1982) ....................................5

JP Morgan Chase Bank, N.A. v. Motorola, Inc.,
    47 A.D.3d 293, 846 N.Y.S.2d 171 (1st Dep't 2007) ....................................4

Koehler v. Bank of Bermuda,
    12 N.Y.3d 533 (2009)....................................................................................8

Taylor v. Sturgell,
    553 U.S. 880 (2008)........................................................................................3

Wilson v. Can. Life Assurance Co.,
    No. 4:08-CV-1258, 2009 WL 532830 (M.D. Pa. Mar. 3, 2009) ..................4

Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi,
    215 F.3d 247 (2d Cir. 2000)...........................................................................3

### STATUTES AND RULES

31 C.F.R. § 515.201(a)(1) ......................................................................................7

28 U.S.C. § 1610(g)(3) ...........................................................................................1

Fed. R. Civ. P. 54(b) ...............................................................................................9

N.Y. C.P.L.R. § 5240 (McKinney 2014) ..........................................................1, 6, 7

N.Y. CPLR § 5209 (McKinney 2014) ....................................................................2

N.Y. CPLR § 5225(b) (McKinney 2014) ...............................................................8

N.Y. U.C.C. § 4-A-209(1) ......................................................................................6

NEWYORK 9358931

N.Y. U.C.C. § 4-A-301(1) ...................................................................................6

N.Y. U.C.C. § 4-A-402(3) ...................................................................................6

N.Y. U.C.C. § 4-A-505 .................................................................................5, 6

NEWYORK 9358931

BBVA respectfully submits this reply memorandum of law in support of BBVA's cross-motion, pursuant to CPLR § 5240, for a protective order denying or conditioning turnover of an account blocked and held at BBVA's New York branch.  This reply memorandum uses the same defined terms as those used in BBVA's opening memorandum.

ARGUMENT

POINT I

THE COURTS LACK<br>SUBJECT MATTER JURISDICTION

BBVA hereby preserves this contention for appellate review.

POINT II

THE COURT SHOULD<br>PROTECT BBVA FROM THE<br>RISK OF DOUBLE LIABILITY

Turnover here would expose BBVA to a risk of double liability on the same debt.  The Court should protect BBVA from that risk by denying turnover without prejudice or by granting turnover only on conditions.

A.      It Is Public Policy To Avoid Double Liability

Petitioners do not dispute that it is the public policy of the State of New York to avoid the imposition of double liability for a single obligation.  This policy also prevails under federal law, including the current version of the anti-terrorism laws on which Petitioners rely here.

Petitioners contend that 28 U.S.C. § 1610(g)(3) "does not apply."  Petitioners' Memorandum of Law ("PMOL") at 7.  Petitioners suggest that § 1610(g)(3) applies only to protect claimants to, or joint owners of, property for which a creditor seeks turnover.  Gates, however, allows a garnishee to invoke this statute to avoid double liability.  See Gates v. Syrian Arab Republic, No. 11 C 8715, 2013 WL 1337223, at *10 (N.D. Ill. Mar. 29, 2013) (garnishee

invoked § 1610(g)(3) where "other third parties not presently party to these cases" may seek to hold garnishee liable).

B.      Turnover Here Would Expose BBVA To Double Liability

        1.      The Court Lacks Personal Jurisdiction Over The Cuban Corporation

        Petitioners do not dispute that the Court lacks personal jurisdiction over the Cuban Corporation because:  (1) Delivery of the Notice Documents did not subject the Cuban Corporation to the personal jurisdiction of this Court.  (2) There is no reason to believe that this case involves anything other than the "single theme" outlined by Judge Marrero -- an EFT commenced by mistake by the originator's bank in which (a) the Cuban Corporation did not purposely direct its activities at the forum, (b) the Cuban Corporation did not purposely avail itself of the privilege of doing business in the forum and (c) any connection to the forum was created by a third party (the originator's bank).  It follows that the Court lacks personal jurisdiction over the Cuban Corporation, which will remain free to sue BBVA to recover on the same debt.

        Petitioners contend that personal jurisdiction over the Cuban Corporation is irrelevant because Petitioners ask the Court to proceed in rem.  PMOL at 3-4.  Petitioners, however, do not dispute that a judgment in rem is not a bar to a subsequent action for money damages by the absent person against the garnishee/stakeholder, who thus faces double liability.  See BBVA's Opening Memorandum at 8 (citing authorities).

        Petitioners contend that "[t]his Court has already held that adherence to the Notice Order 'satisf[ies] all the requirements for service under the FSIA, the Federal Rules and the CPLR and all of the requirements of due process of law.'"  PMOL at 4.  The Cuban Corporation, Petitioners

contend, "has lost its opportunity" to make a claim.  Id.  Petitioners also note that CPLR § 5209 provides for a discharge.

The problem, of course, is that the Cuban Corporation is not a party, is not subject to this Court's jurisdiction and will therefore not be precluded from disputing, in a future case, whether the requirements of service and due process were "satisfied."  See Baker v. Gen. Motors Corp., 522 U.S. 222, 237 n.11 (1998) (no issue preclusion against person who did not participate in prior proceeding).  The Cuban Corporation has not lost its opportunity to appear in a different court in the future.  Taylor v. Sturgell, 553 U.S. 880, 893 (2008) (every litigant entitled to his own day in court).

Petitioners concede, as they must, that an agency or instrumentality of a foreign state has a due-process right to assert a defense of lack of minimum contacts.  Petitioners contend, however, that the availability of that defense to the Cuban Corporation "would likely involve an inquiry into the ownership and control by the Cuban government of the [Cuban Corporation] and BBVA has not even attempted to make this showing."  PMOL at 8.  This contention mis-states the law.

An agency or instrumentality of a foreign state is presumptively separate from the foreign state itself.  First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611, 626-27 (1983).  The burden of proof is on Petitioners, not BBVA, to overcome this presumption.  Frontera Res. Azer. Corp. v. State Oil Co. of the Azer. Rep., 582 F.3d 393, 400-01 (2d Cir. 2009); Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 252 (2d Cir. 2000).

Petitioners have not carried that burden.  In fact, the entire thrust of Petitioners' evidence goes to show agency or instrumentality status.  See Swift Dec. [Dkt. 683] ¶¶ 5-6.  Accordingly,

the Cuban Corporation must be regarded as an agency or instrumentality that has due-process

protections.

    2.    <u>BBVA Faces Double Liability</u>

In these circumstances, BBVA would face double liability in a court within the United

States.  A fortiori, BBVA would face double liability in a foreign-country court.

Petitioners contend that BBVA "presents no evidence to support its contention" that it

has a risk of double liability.  PMOL at 7.  Petitioners compare this case to <u>JP Morgan Chase</u>

<u>Bank, N.A. v. Motorola, Inc.</u>, 47 A.D.3d 293, 846 N.Y.S.2d 171 (1st Dep't 2007), where the

garnishee submitted an expert legal opinion that a court in India would not recognize a U.S. court

order and would impose double liability upon the garnishee.  <u>See</u> PMOL at 6-7 (citing other

cases).

Petitioners' contention, however, asks the impossible.  <u>At this time</u>, BBVA cannot

know <u>where</u> the Cuban corporation (or its assignee) might sue BBVA.  As shown in a sealed

exhibit submitted by Petitioners, Swift Dec. [Dkt. 683], Ex. 2, OFAC records provide addresses

for the Cuban Corporation in four countries.  Publicly-available information shows that BBVA

does business in approximately 30 foreign countries.  <u>See</u> <u>International Presence</u>, BBVA,

http://www.bbva.com/TLBB/tlbb/ing/informacion-corporativa/conozcanos/presencia-

internacional/index.jsp (last visited Oct. 24, 2014).  BBVA could presumably be sued in any of

those countries, and perhaps in others.

<u>At this time</u>, therefore, BBVA cannot demonstrate the law of the country in which the

Cuban Corporation may later sue.  Other courts have not required such a demonstration, <u>see,</u>

<u>e.g.</u>, <u>Wilson v. Can. Life Assurance Co.</u>, No. 4:08-CV-1258, 2009 WL 532830, at *4 (M.D. Pa.

Mar. 3, 2009) (concluding, in absence of expert legal opinion, that although Canadian courts

apply principles of comity substantially similar to those applied by U.S. federal courts, these principles are "no guarantee" that Canadian court would follow U.S. court's decision), and neither should this Court.  This element of unpredictability, moreover, is not a reason to reject BBVA's request for protection.  On the contrary, it is a reason to delay turnover or to impose protective conditions of the kind requested.

Petitioners contend that BBVA's exposure to double liability is speculative because BBVA did not opt to pursue interpleader.  PMOL at 8.  This contention is meritless.  "The law does not require parties to engage in futile steps to enforce their rights."  Inland Credit Corp. v. Gold, 87 A.D.2d 753, 754, 448 N.Y.S.2d 690, 691 (1st Dep't 1982).  Here, the Republic of Cuba and the other Cuban entities have a long, consistent track record of defaulting.  There is no reason to believe that the Cuban Corporation would have done anything but the same, had BBVA commenced an interpleader.  Therefore, BBVA had no reason to commence an interpleader and its exposure is not speculative.

> 3.   N.Y. UCC § 4-A-505 Does Not Avoid Double Liability

Petitioners contend that BBVA does not face double liability because section 4-A-505 of the Uniform Commercial Code has worked a time-bar of the Cuban Corporation's claim against BBVA.  According to Petitioners, section 4-A-505 establishes "a one-year period in which" the Cuban Corporation and the originator's bank "may object to a transferee bank[,]"  PMOL at 5, which period "has long since expired[,]" id., so that the Cuban Corporation has lost its claim against BBVA.  This contention is meritless for two reasons.

First, the Cuban Corporation (or its assignee) may sue BBVA outside the United States, where Article 4-A of the UCC would not apply.  This element of unpredictability shows again why the Court should delay turnover or should impose conditions.

Second, section 4-A-505 does not apply even in the United States.  That section provides:

> If a receiving bank has received payment from its customer with respect to a payment order issued in the name of the customer as sender and accepted by the bank, and the customer received notification reasonably identifying the order, the customer is precluded from asserting that the bank is not entitled to retain the payment unless the customer notifies the bank of the customer's objection to the payment within one year after the notification was received by the customer.

N.Y. U.C.C. § 4-A-505 (emphasis added).

Here, BBVA did not "accept" the payment order.  The originator's bank, as the sender, sent a payment order to BBVA, as the receiving bank.  BBVA, however, blocked the EFT. BBVA therefore never "accept[ed]" the payment order because BBVA never "executed" the order, § 4-A-209(1), by issuing a payment order [of its own] intended to carry out the payment order received by [BBVA]." § 4-A-301(1).  As a result, the funds transfer was not "completed by acceptance by the beneficiary's bank of a payment order instructing payment to the beneficiary. . . ." § 4-A-402(3).

C.    **The Court Should Protect BBVA From Double Liability By Denying Turnover Without Prejudice Or By Granting Turnover Only On Conditions**

In these circumstances, the Court should exercise its discretion under CPLR § 5240 to protect BBVA from the risk of double liability.  BBVA is an innocent, third-party garnishee.

1.    BBVA Acted In Compliance With U.S. Law

Petitioners repeatedly level the charge that BBVA "trades with" Cuba "in violation of the Trading With The Enemy Act ("TWEA"). . . ."  PMOL at 3.  See also id. at 7, 9.  This inflammatory contention is incorrect as a matter of law.

It is indisputable that BBVA acted here as the intermediary bank in connection with an EFT, which BBVA blocked in full compliance with the CACRs and TWEA.  Petitioners do not,

and cannot, allege that BBVA had anything to do with the underlying transaction involving the Cuban Corporation that led to the origination of the now-blocked EFT.

In any event, assuming that the EFT at issue here is like the others blocked in these cases, there would be nothing unlawful about transactions outside the United States with a Cuban entity.  Under section 515.201(a)(1), the EFT would not be prohibited.  This section prohibits "payments . . . to any [U.S.] banking institution . . . with respect to any property subject to the jurisdiction of the United States or by any person subject to the jurisdiction of the United States[.]"  When the originator's bank sent its payment order to BBVA, the originator's bank would not have been a "person subject to the jurisdiction of the United States[.]"  And the funds underlying the EFT would have been in a bank account outside the United States, and thus would not have been "property subject to the jurisdiction of the Unites States[.]"  31 C.F.R. § 515.201(a)(1).

The EFT was blocked not because the act of sending it to a U.S. bank was unlawful; such act was not unlawful.  It was blocked because BBVA's New York branch -- a U.S. person who, upon receipt of the payment order, held property subject to the jurisdiction of the United States -- was not allowed to transfer the funds to the next bank in the chain.  BBVA blocked the EFT not because the transfer to BBVA was prohibited but because transfers by BBVA would have been prohibited.

2.    Petitioners' Other Contentions Are Meritless

Petitioners accuse BBVA of "invent[ing] new jurisdictional requirements for . . . turnover[,]" PMOL at 4.  See also id. at 3 ("unprecedented exception"), 9 ("non-existent requirements to turnover").  Thus, Petitioners contend, "There is no requirement that all potential

7

claimants to a <u>res</u> be subject to jurisdiction in an enforcement proceeding[.]"  <u>Id</u>. at 1.  This

contention betrays a misunderstanding of BBVA's position.

BBVA is not proposing new requirements.  BBVA, rather, invokes the Court's

longstanding power and discretion, embodied in CPLR § 5240, to deny or to condition this

turnover proceeding to avoid double liability.  Petitioners do not, and cannot, dispute that the

Court has such powers, and that ample precedent, cited in BBVA's Opening Memorandum,

supports its exercise.

Protection of a garnishee, like BBVA, is particularly appropriate in a cross-border case,

like this one.  CPLR § 5225(b) requires the judgment creditor to proceed against the garnishee

but allows the judgment debtor and any other claimants to intervene or to be interpleaded.  "The

special proceeding, in short, can be converted into a full-fledged test of precisely whom the

disputed property or debt belongs to[.]"  <u>Koehler v. Bank of Bermuda</u>, 12 N.Y.3d 533, 538

(2009) (quoting David D. Siegel, <u>New York Practice</u> § 510 (4th ed. 2005)).

This process works well enough when all parties and claimants are within New York or

are subject to the personal jurisdiction of the New York court.  The process breaks down,

however, in cross-border cases, like this one, in which the judgment debtor (or other claimants)

cannot be joined (and do not appear).  In such cases, there can be no "full-fledged test" of

ownership, <u>Koehler</u>, 12 N.Y.3d at 538, and it is appropriate to protect the garnishee from the risk

of double liability by denying or conditioning turnover.

       3.     <u>The Court Should Impose Conditions On Turnover</u>

In its opening memorandum, BBVA proposed three reasonable conditions to

turnover.  <u>See</u> Opening Memorandum at 11.  Petitioners never explain why these conditions

should not be imposed, except to say that they are "unprecedented[,]" PMOL at 1, which is no explanation at all.  The Court has discretion to impose such conditions and should do so here.

Petitioners contend that "courts under similar circumstances and under the same TRIA scheme have ordered the turnover of accounts where the same double-liability risk was also present."  PMOL at 9.  The cases cited by Petitioner, however, contain no analysis of the issue of double liability, and do not reject the position urged by BBVA here.

POINT III

IN THE ALTERNATIVE,<br>THE COURT SHOULD<br>MODIFY THE PROPOSED<br><u>TURNOVER ORDER</u>

BBVA has submitted a mark-up of Mr. Swift's "[Proposed] Order and Judgment for Turnover of Specified Uncontested Phase 1 Account at BBVA."  Dkt. 720-1 (the "Swift Draft").  BBVA's mark-up is submitted as Exhibit C to the Reply Declaration of Kenneth A. Caruso and is intended to preserve BBVA's legal positions.

Petitioners object to a Rule 54(b) determination, PMOL at 9-10, yet ¶ 11 of the Swift Draft provides that this "Order and Judgment is a final judgment[.]"  This is internally inconsistent.  The proposed Order and Judgment obviously does not adjudicate all of the claims involving all of the parties.  Accordingly, it cannot be a final judgment unless the Court makes the no-just-reason-for-delay finding under Rule 54(b).  Therefore, consistently with the intentions and desires of both sides to achieve finality, and consistently with ¶ 12 of the Notice Order, any Order and Judgment here should be entered with a Rule 54(b) determination.

9

## CONCLUSION

For the foregoing reasons, the cross-motion for a protective order should be granted.

Dated: New York, New York
   October 24, 2014

        WHITE & CASE LLP

        By:_____
         Kenneth A. Caruso

Of Counsel:       1155 Avenue of the Americas
  Kenneth A. Caruso  New York, New York 10036
  Kelly Bonner     Tel: (212) 819-8200
  Harold Williford

        Attorneys for BBVA