UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                    :

ALDO VERA, JR., as Personal Representative of
the Estate of Aldo Vera, Sr.,

                            Plaintiff,

      -against-

THE REPUBLIC OF CUBA,

                           Defendant.

------------------------------------------------------------ X

ALDO VERA, JR., as Personal Representative of
the Estate of Aldo Vera, Sr., and

JEANNETTE FULLER HAUSLER, and
WILLIAM FULLER, as court-appointed co-
representatives of the ESTATE OF ROBERT OTIS
FULLER, deceased, on behalf of all beneficiaries of
the Estate and the ESTATE OF ROBERT OTIS
FULLER; and

ALFREDO VILLOLDO, individually, and
GUSTAVO E. VILLOLDO, individually and as
Administrator Executor, and Personal
Representative of the ESTATE OF GUSTAVO
VILLOLDO ARGILAGOS,

                        Petitioners,

      -against-

BANCO BILBAO VIZCAYA ARGENTARIA
(S.A.); BANK OF AMERICA N.A.; BANK OF
NEW YORK MELLON; BARCLAY'S BANK
PLCS; CITIBANK N.A.; CREDIT SUISSE AG,
NEW YORK BRANCH; DEUTSCHE BANK
TRUST COMPANY AMERICAS; HSBC BANK
(HSBC BANK USA, N.A.); INTESA SANPAOLA
S.P.A.; JP MORGAN CHASE BANK N.A.; RBS
CITIZENS, N.A.; ROYAL BANK OF CANADA;
SOCIETE GENERALE; UBS AG; WELLS

**OPINION AND ORDER
DENYING MOTION TO
RECONSIDER AND GRANTING
TURNOVER MOTIONS**

12 Civ. 1596 (AKH)



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/17/15

FARGO BANK, NA; BROWN BROTHERS :
HARRIMAN & CO.; MERCANTIL COMMERCE :
BANK, N.A.; STANDARD CHARTERED BANK; :
AND BANCO SANTADER, S.A.,
             :

      Respondents.  :
------------------------------------------------------------------  X

ALVIN K. HELLERSTEIN, U.S.D.J.:

    Plaintiffs are judgment creditors against the Republic of Cuba ("Cuba"). They

were granted judgments by the Circuit Court of Florida, and domesticated their judgments in the

United States District Courts for the Southern District of Florida and the Southern District of

New York, this court. They filed this consolidated Special Proceeding, under Article 52 of the

New York Civil Practice Law and Rules, N.Y. C.P.L.R. §§ 5225(a), 5225(b), and Rule 69(a) of

the Federal Rules of Civil Procedure, to execute on, among other Cuban properties and property

interests, blocked funds relating to Electronic Funds Transfers sent from Cuba or its

instrumentalities to third parties through the Respondent banks. Pursuant to New York state law,

Plaintiffs seek discovery in these proceedings of additional Cuban properties and property

interests held by Respondents, in their New York branches and elsewhere. *See* N.Y. C.P.L.R.

§§ 5223, 5224(a)(3).

    Plaintiffs proceed under the Foreign Sovereign Immunities Act ("FSIA"), 28

U.S.C. § 1605A, previously § 1605(a)(7), which provides that foreign nations are not immune to

suit in federal or state court if the court finds that the foreign nation perpetrated certain acts of

terror. *See Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). Plaintiffs proceed against funds

blocked pursuant to regulations duly promulgated by the U.S. Department of the Treasury.

*See* 31 C.F.R. § 515.201 (authorization by U.S. Treasury Department, pursuant to Cuban Asset

Control Regulations, to block funds belonging to Republic of Cuba or its instrumentalities), and

pursuant to the Terrorism Risk Insurance Act ("TRIA"), 28 U.S.C. §§ 1610 note and 1610(g)

2

(authorizing judgment creditors against a foreign state that is found to sponsor terrorism to levy against such blocked funds). *See* Fed. R. Civ. P. 69(a); N.Y. C.P.L.R. § 5225(b).

The majority of Respondents agreed with Plaintiffs to a procedure providing turnover of the blocked funds, to the extent the funds originated with Cuba or its instrumentalities, in return for protection of the banks against claims by parties claiming ownership interests in the blocked funds. Two of the Respondents, Banco Bilbao Vizcaya Argentina (S.A.) ("BBVA") and Standard Chartered Bank ("SCB") resisted. By order, dated August 22, 2014, I overruled their objection based on the Foreign Sovereign Immunities Act, and held that I had subject-matter jurisdiction to grant the relief that plaintiffs seek. See *Vera v. Republic of Cuba*, No. 12 Civ. 1596, 2014 WL 4184736 (S.D.N.Y. Aug. 22, 2014). On September 10, 2014, I overruled Respondents' objection to personal jurisdiction based on *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), a recent decision of the U.S. Supreme Court narrowing the scope of general personal jurisdiction over foreign corporations. Now, by a motion for reconsideration, BBVA reasserts its objection to personal jurisdiction, arguing that *Gucci Am., Inc. v. Li*, 768 F.3d 122 (2d Cir. 2014), a recent decision of the Court of Appeals, compels a different result.

I hold in this opinion that *Gucci* does not compel a different result, and I deny BBVA's motion.[1]

---

[1] SCB also moved for reconsideration of the September 10 Order on the same basis as BBVA. However, on November 12, 2014, I approved Plaintiffs' and SCB's stipulation withdrawing SCB's motion for reconsideration and resolving the discovery dispute between them, and ordered the September 10 Order vacated as to SCB. *See* Stipulation and Order Resolving Certain Matters as Between Plaintiff and Non-Party Standard Chartered Bank, Vera v. Republic of Cuba, No. 12 Civ. 1596 (S.D.N.Y. Sep. 10, 2014), ECF No. 730. Accordingly, I consider only BBVA's motion here.

## DISCUSSION

### I.    The Prior Proceedings

On September 10, 2014, I ordered BBVA and SCB to produce responsive answers to information subpoenas seeking information concerning assets of Cuba and its instrumentalities located in their branches outside of, as well as inside, their respective New York branches. *See* Order Granting Mot. Compel Full and Complete Ans. to Information Subpoenas and Den. Mots. Quash, *Vera v. Republic of Cuba*, No. 12 Civ. 1596 (S.D.N.Y. Sep. 10, 2014), Dkt. No. 677 ("September 10 Order").

In granting the motion, I ruled that:

> The question of where a corporation may be sued, the question addressed in *Daimler*, has no bearing on the situation here.  This case involves attempts by a bank to refuse to answer the questions of a judgment creditor holding a valid judgment from this court and seeking to find assets within the custody and control of that bank.  The judgment creditor seeks information and not, in this proceeding, a turnover of assets.  Were *Daimler* to be read the way that Banco Bilbao argues, the United States would become a haven for banks seeking to evade the consequences of valid judgments against their depositors.

*Id.*

A week later, the Court of Appeals issued *Gucci Am., Inc. v. Li*, 768 F.3d 122 (2d Cir. 2014).  *Gucci* does not support Respondent's unwillingness to answer Plaintiffs' information requests any more than *Daimler*.

### II.   The Information Subpoena

Plaintiff seeks post-judgment discovery pertaining to Cuba's foreign accounts "in order to decide whether to seek recognition of his judgment abroad and, if so, in which countries and against which banks." *See* Pl. Mem. Opp'n Mot. Recons., *Vera v. Republic of Cuba*, No. 12 Civ. 1596 (S.D.N.Y.), ECF No. 715 at 5–9 ("Pl. Opp'n").  The blocked assets in the United States are not likely to be sufficient to satisfy Plaintiffs' judgments against Cuba.

4

Accordingly, on November 26, 2012, Plaintiff served an information subpoena (the "Subpoena") on BBVA, pursuant to N.Y. C.P.L.R. §§ 5223 and 5224(a)(3),[2] seeking information concerning assets in which Cuba may have an interest. The Subpoena sought such information from BBVA's New York and international branches. Although BBVA has complied with the demands for information pertaining to its New York branch, it refuses to produce similar information from the New York branch regarding international account based on the assertion that this Court lacks personal jurisdiction with respect to information concerning those accounts.

## III.   Personal Jurisdiction Over Corporate Entities after *Daimler* and *Gucci*

### A. General Rule: Minimum Contacts and Reasonableness

In order for a court to exercise personal jurisdiction over a corporate entity, due process requires that entity have enough contact with the forum for the exercise of jurisdiction to be reasonable. That is, the entity must have sufficient "minimum contacts" with the forum such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice". *Int'l Shoe Co.*, 326 U.S. at 316. To satisfy the minimum contacts requirement, there must be "some act [of the entity] by which the [entity] purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws". *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

A court can exercise two categories of personal jurisdiction: general jurisdiction and specific jurisdiction. *Daimler*, 134 S. Ct. at 754. "General, all-purpose jurisdiction permits a court to hear 'any and all claims' against an entity" if the unrelated contacts with the forum are

---

[2] New York State's procedural rules are made applicable to postjudgment discovery in federal court through Fed. R. Civ. P. 69(a), which states that "[i]n aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person—including the judgment debtor—as provided in the rules or by the procedure of the state where the court is located."

so continuous and systematic such that exercising jurisdiction is reasonable and just. *Gucci*, 768

F.3d at 134 (quoting *Daimler*, 134 S. Ct. at 755); *Helicopteros Nacionales de Colombia, S.A. v.*

*Hall*, 466 U.S. 408, 415 (1984). If insufficient contacts exist for a court to exercise general

personal jurisdiction, it may still exercise specific jurisdiction, provided that the entity has

"purposefully directed" its activities toward the forum jurisdiction and the litigation arises out of

or relates to those contacts with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472

(1985).

   Prior to the Supreme Court's ruling in *Daimler*, discussed below, federal and state

courts routinely exercised general jurisdiction over foreign corporations on the basis that those

corporations were "doing business" through a local office or branch. *See Daimler AG*, 134 S. Ct.

at 735 n.18; *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224–25 (2d Cir.

2014). *See also, e.g.*, *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 565 N.E.2d 488,

490 (N.Y. 1990) (Under N.Y. C.P.L.R. § 301, "[a] foreign corporation is amenable to suit in

New York courts . . . if it has engaged in such a continuous and systematic course of 'doing

business' here that a finding of its 'presence' in this jurisdiction is warranted"). *Daimler*,

however, cast doubt on this practice, and narrowed the scope of general jurisdiction over foreign

corporations.

  B. *Daimler AG v. Bauman*

   In *Daimler AG v. Bauman*, Argentinian Plaintiffs sued DaimlerChrysler

Aktiengesellschaft ("Daimler"), a public German company, in federal district court in California

under the Alien Tort Statute, 28 U.S.C. § 1350, and the Torture Victim Protection Act of 1991,

106 Stat. 73, note following 28 U.S.C. § 1350, as well as under the laws of California and

Argentina. *Daimler AG*, 134 S.Ct. at 750–52. Plaintiffs alleged that, during Argentina's 1976–

6

1983 "Dirty War," one of Daimler's subsidiaries, Mercedes–Benz Argentina ("MB Argentina"),
collaborated with state security forces in Argentina to "kidnap, detain, torture, and kill certain
MB Argentina workers". *Id.* The alleged actions all took place in Argentina. *Id.*

        Daimler, the German parent corporation, was the only named defendant.
Plaintiffs sought to hold Daimler vicariously liable for the actions of MB Argentina. *Id.* at 752.
Plaintiffs took the position that the district court could properly exercise personal jurisdiction
over Daimler either (i) through the presence of Daimler itself in California, or (ii) based on the
contacts that a different Daimler indirect subsidiary, Mercedes-Benz USA, LLC ("MB USA"),
which Plaintiffs alleged should be treated as Daimler's agent for jurisdictional purposes, had
with California. *Id.* MB USA was a Delaware limited liability corporation, with its principal
place of business in New Jersey.[3] *Id.* It did, however, have several offices and facilities in
California, and it enjoyed revenue from California sales.[4] *Id.*

        Daimler did not consent to jurisdiction in California, and moved to dismiss for
want of personal jurisdiction. The district court granted Daimler's motion. *Id.*, at 752–53;
*Bauman v. DaimlerChrysler AG*, No. C-04-00194 2005 WL 3157472 (N.D. Cal., Nov. 22, 2005)
(holding that Daimler's contacts with California were insufficient for assertion of general
jurisdiction, and MB USA's contacts could not be attributed to Daimler because plaintiffs had
failed to demonstrate agency relationship between MB USA and Daimler); *Bauman v.
DaimlerChrysler AG*, No. C-04-00194 2007 WL 486389, *2 (N.D. Cal., Feb. 12, 2007) (same).
On appeal, and after a rehearing, the Ninth Circuit reversed the district court, holding that
general jurisdiction over Daimler was proper because MB USA, which the court assumed was

---

[3] MB USA was Daimler's exclusive, nation-wide importer and distributor of Daimler AG's Mercedes-Benz cars in
the United States. *Daimler AG*, 134 S.Ct. at 752.
[4] 10% of all new Daimler vehicle sales in the United States came from California, and 2.4% Daimler's global sales
came from MB USA in California.

subject to general jurisdiction in California, acted as Daimler's agent such that its contacts with California could be attributed to Daimler because the actions performed by MB USA were "sufficiently important" to Daimler. *Id.* at 753; *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909 (9th Cir. 2011).

The U.S. Supreme Court held that the Ninth Circuit's "sufficiently important" agency theory was too lax a standard to give a court general person jurisdiction over a foreign parent corporation.[5]  The Court then went one step further, and additionally held "[e]ven if we were to assume that [MB USA] is at home in California, and further to assume [MB USA's] contacts are imputable to Daimler, there would still be no basis to subject Daimler to general jurisdiction in California, for Daimler's slim contacts with the State hardly render it at home there." *Id.* at 758.

In deciding *Daimler*, the Supreme Court held for the first time that a court cannot exercise general jurisdiction over a corporate entity "in every State in which a corporation engages in a substantial, continuous, and systematic course of business". *Id.* at 761.  The Court observed that for a corporation that has not consented to jurisdiction in a forum, "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there," and that the "paradigm forum for the exercise of general jurisdiction [over a corporation] is one in which the corporation is fairly regarded at home". *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853-54 (2011)).  Home, the Supreme Court ruled, is traditionally the corporation's place of incorporation, and its principal place of business. *Id.* Accordingly, the Court reasoned, a court exercises general jurisdiction over a corporation

---

[5] Daimler failed to object to Plaintiffs' assertion that Daimler's subsidiary, MB USA, had sufficient contacts with the state of California to be considered "at home", and so the issue was not before the Supreme Court. *Daimler*, 134 S. Ct. at 751.

8

consistent with due process only where the corporation's contacts with the forum are so "continuous and systematic," as compared with the corporations other national and international activities, that it is "essentially at home" in the forum state. *Daimler*, 134 S. Ct. at 761–62. The Court further expressly left open the potential for cases in which a corporation could be considered "at home" in a state besides the states in which it is incorporated and has its principal place of business. *Id*. at 761 n.19.

Because California was neither Daimler's, nor MB USA's, place of incorporation or principal place of business, and this was not an "exceptional case" in which the Court would find Daimler at home, the Court held that there was no basis for finding general personal jurisdiction.[6] *Id*. at 761–62. In so holding, the Supreme Court explicitly called into question its, and New York's, prior case law permitting the exercise of general jurisdiction over a foreign corporation where that corporation was "doing business" through a local office in the forum. *Id*. at 735 n.18.

### C. *Gucci Am. Ltd. v. Li*

Applying the Supreme Court's holding in *Daimler*—which dealt only with personal jurisdiction over parties to a lawsuit who had not consented to jurisdiction—the Court of Appeals, in *Gucci Am. Ltd. v. Li,* held that a nonparty bank whose principal places of business and incorporation are located outside the United States and which had not consented to jurisdiction is not subject to general jurisdiction in a United States court simply because it maintains and operates branches or offices in the United States. *Gucci Am., Ltd.*, 768 F.3d at 135.

---

[6] Plaintiffs never asserted that Daimler could be subjected to specific personal jurisdiction, and therefore the Supreme Court did not address that issue. *Id.* at 758.

9

Plaintiffs in *Gucci* were luxury fashion manufacturers who brought a trademark infringement suit against defendants under New York State law and the Lanham Act, 15 U.S.C. § 1501, *et seq.*, for selling counterfeit goods bearing the plaintiffs' trademarks. *Id.* at 126. Along with their complaint, plaintiffs filed a motion for a temporary restraining order ("TRO") to enjoin defendants from selling counterfeit goods, and to freeze their assets. *Id.* The TRO was converted into a pre-judgment asset-freeze injunction, issued pursuant to Rule 64 of the Federal Rules of Civil Procedure, providing that defendants, their agents, and all persons acting in concert with them "are restrained and enjoined from transferring, disposing of, or secreting any money . . . or assets of [d]efendants". *Id.*

Because plaintiffs had presented evidence that some defendants had violated the TRO by wiring to Bank of China ("BOC") proceeds from their sales that could potentially have been used to satisfy a judgment against them, the asset-freeze injunction was explicitly worded to apply to "any and all" BOC accounts associated with the defendants. *Id.* BOC, however, remained a nonparty to the underlying trademark infringement action. *Id.*

The *Gucci* plaintiffs sought to enforce this pre-judgment asset freeze injunction against BOC's Chinese branches by issuing a subpoena requiring BOC to produce all documents pertaining to the defendants and their BOC accounts in China.[7] *Id.* at 126–27. The district court upheld the subpoena, and ordered BOC to comply with the asset freeze injunction and the subpoena. *Id. Daimler* had not yet been decided by the Supreme Court.

In reversing the district court, the Court of Appeals noted that BOC had branch offices in the forum, but was incorporated and headquartered in China. *Id.* The court observed

---

[7] BOC had already produced responsive documents that were in the possession of its New York branch. *Id.* at 127. BOC maintained that the New York branch did not have possession or control over information located in BOC's other locations, and that compliance with the subpoena would violate Chinese law. *Id.*

that the case was "not 'an exceptional case' where [BOC's] contacts are 'so continuous and systematic as to render [it] essentially at home' in New York" because BOC "has only four branch offices in the United States and only a small portion of its worldwide business is conducted in New York". *Id.* (quoting *Daimler*, 134 S. Ct. at 761 & n. 19). Accordingly, the Court of Appeals held, after *Daimer*, that the district court did not have general jurisdiction over BOC, and could not enforce either the injunction or the subpoena insofar as they reached BOC's branches outside of New York.[8] *Id.* at 135–36, 141.

The Court of Appeals remanded the case to the district court to determine if BOC had sufficient contacts with the forum such that the court could exercise specific jurisdiction over BOC to enforce compliance with the injunction and subpoena. *Id.* at 136–37, 141–42. The Second Circuit also explicitly left open for the district court to "consider whether BOC has consented to personal jurisdiction in New York by applying for authorization to conduct business in New York and designating the New York Secretary of State as its agent for service of process". *Id.* at 768 F.3d (citing N.Y. Bus. Corp. Law §§ 1301(a), 1304(a)(6); N.Y. Banking Law § 200, *Bagdon v. Phila. & Reading Coal & Iron Co.*, 217 N.Y. 432 (1916).[9]

## IV.    Permissive Scope of Post-Judgment Discovery under New York and Federal Law

It is well-recognized that "broad post-judgment discovery in aid of execution is the norm in federal and New York state courts." *EM Ltd. v. Republic of Argentina*, 695 F.3d

---

[8] The Court of Appeals also rejected BOC's arguments that the district court was without power or equitable authority to issue the asset freeze injunction in the first instance. *Gucci Am. Ltd.*, 768 F.3d at 129–30. The court of appeals held that the district court had personal jurisdiction over the defendants, which was all that was necessary in order for the injunction to be valid. *Id.* The Court of Appeals also rejected the argument that the district court was without equitable authority to issue the asset freeze injunction. *Id.* at 130–33. The court held that, because the *Gucci* plaintiffs were seeking the equitable remedy of an accounting of profits from the defendants so that they could recover them under 15 U.S.C. § 1117(a), the district court "had the inherent equitable authority to issue the asset freeze injunction." *Id.* at 130.

[9] Additional briefing has been submitted to the district court on this issue, but no opinion has been published as of the date of this opinion.

11

201, 207–08 (2d Cir. 2012), *aff'd sub nom, Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2254 (2014) ("The rules governing discovery in postjudgment execution proceedings are quite permissive.").

With regard to the federal system, this broad scope is reflected in Fed. R. Civ. P. 69(a)(2), which governs post-judgment discovery and provides that, "[i]n aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person-including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2). Indeed, "[t]he scope of discovery under Rule 69(a)(2) is constrained principally in that it must be calculated to assist in collecting on a judgment." *EM Ltd.*, 695 F.3d at 207; Fed. R. Civ. P. 26(b)(1) (court may "order discovery of any matter relevant to the subject matter involved in the action"). As the Court of Appeals noted, it is "not unusual for the judgment creditor to seek disclosure related to assets held outside the jurisdiction of the court where the discovery request is made." *EM Ltd.*, 695 F.3d at 208 (citing *First City, Texas Houston, N.A. v. Rafidain Bank,* 281 F.3d 48, 54 (2d Cir. 2002)). *See also Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 317 (8th Cir.1993) ("[T]he remedies of a judgment creditor include the ability to question the judgment debtor about the nature and location of assets that might satisfy the judgment"); *Minpeco v. Hunt,* No. 81 Civ. 7619, 1989 WL 57704, at *1 (S.D.N.Y. May 24, 1989) (quoting *Nat'l Serv. Indus., Inc. v. Vafla Corp.*, 694 F.2d 246, 250 (11th Cir. 1982) ("A judgment creditor is entitled to discover the identity and location of any of the judgment debtor's assets, wherever located")); *Caisson Corp. v. Cnty. West Bldg. Corp.*, 62 F.R.D. 331, 334 (E.D. Pa. 1974) ("[Under Rule 69(a),] the judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor.")

Similarly, as the U.S. Supreme Court observed in affirming *EM Ltd.*, "New York law entitles judgment creditors to discover 'all matters relevant to the satisfaction of [a] judgment.'" *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2254 (quoting N.Y. C.P.L.R. § 5223). This permits "investigation [of] any person shown to have any light to shed on the subject of the judgment debtor's assets or their whereabouts." David D. Siegel, *New York Practice* § 509 (5th ed. 2011). And, it is to be noted, the "light to shed" in the instant case is from New York, where Respondents' branches are located, and from where there are ordered to make inquiry of all branches, within and without New York State, for information relevant to execution on New York domesticated judgments.

## DISCUSSION

## V.    The Effects of *Daimler* and *Gucci* on the Information Subpoena

BBVA argues that, under *Diamler* and *Gucci*, the fact that it operates a branch and conducts business in New York is insufficient to subject it to this Court's general personal jurisdiction because its place of incorporation and its principal place of business are in Spain. BBVA Mem. Supp. Recons., Vera v. Republic of Cuba, No. 12 Civ. 1596 (S.D.N.Y. Sep. 10, 2014), ECF No. 695 at 4 ("BBVA Mem."). Plaintiff points out, however, that BBVA consented to jurisdiction pursuant to N.Y. Banking Law § 200, and that BBVA's contacts with New York form a sufficient basis for this Court to exercise jurisdiction over it. *See* Pl. Opp'n at 5.

### A.   BBVA Consented to Jurisdiction Under New York Law

The state of New York in general, and New York City in particular, is a leading world financial center. In order to benefit from the advantages of transacting business in this forum, a foreign bank must register with and obtain a license from the Superintendent of the Department of Financial Services ("DFS"), and file a written instrument "appointing the

13

superintendent and his or her successors its true and lawful attorney, upon whom all process in any action or proceeding against it on a cause of action arising out of a transaction with its New York agency or agencies or branch or branches". N.Y. Bnk. Law § 200(a).  BBVA is registered with the DFS as a foreign branch.  The Second Circuit recognized that the privileges and benefits associated with a foreign bank operating a branch in New York give rise to commensurate, reciprocal obligations.  Foreign corporations which do business in New York are bound by the laws of both the state of New York and the United States, and are bound by the same judicial constraints as domestic corporations.  Under New York Banking Law, foreign banks operating local branches in New York can both sue and be sued.  *See, e.g., Greenbaum v. Handlesbanken*, 26 F.Supp.2d 649 (S.D.N.Y. 1998).  This legal status also confers obligations to participate as third-parties in lawsuits which involve assets under their management.

Contrary to BBVA's suggestions, *Daimler* and *Gucci* should not be read so broadly as to eliminate the necessary regulatory oversight into foreign entities that operate within the boundaries of the United States.  There is no reason to give advantage to a foreign bank with a branch in New York, over a domestic bank.  I cannot espouse a notion of jurisdiction that allows banks to hide information concerning assets connected to terrorism in other countries. When corporations receive the benefits of operating in this forum, it is critical that regulators and courts continue to have the power to compel information concerning their activities.

Foreign banks should not be permitted to promote the legitimacy of their business by registering to do business in New York, and then hide illicit activity by 'keeping' information concerning assets related to terrorism in other countries.  Such action is akin to a legitimate business storefront which launders money from illegal operations in the back room, and does not comport with the legal system of the United States.  The information requested by the

14

Information Subpoena can be found via electronic searches performed in BBVA's New York office, and are within this jurisdiction.

I hold that BBVA consented to the necessary regulatory oversight in return for permission to operate in New York, and is therefore subject to jurisdiction requiring it to comply with the appropriate Information Subpoenas.

B. *Gucci* Did Not Address Discovery in Post-Judgment Execution Proceedings

Even if BBVA's registration with the DFS did not amount to consent of jurisdiction, BBVA's reliance on *Gucci* is misplaced. As noted above, the question before the Court of Appeals in *Gucci* involved enforcing an asset-freeze injunction in the course of pre-judgment discovery. BBVA, however, wishes to extend the reasoning in *Gucci* to reach information subpoenas issued to a New York branch in the course of discovery relating to post-judgment execution proceedings. Doing so would place *Gucci* in direct tension with the norm of granting broad post-judgment discovery in aid of execution. The Court of Appeals' opinion in *Gucci* contains no indication that it intended to depart from the norm favoring broad post-judgment discovery. Plaintiffs only seek information, which is located in New York, to aid in their execution of their judgments, and not execution on assets outside of this jurisdiction. They are entitled to this information.

Nevertheless, BBVA argues that the very permissive scope of discovery recognized and articulated in *EM Ltd.* "must now be focused by the due-process restrictions imposed by *Daimler* and *Gucci*". (Dkt. No. 722 at 8.) It supports its position by reference to the Court of Appeals' observation in *EM Ltd.* that the district court's power to order discovery is based on "its power to conduct supplementary proceedings involving *persons indisputably within its jurisdiction*". *Id.* (quoting *EM Ltd.*, 695 F.3d at 208) (internal quotation marks omitted)

15

(emphasis in Dkt. No. 722). According to BBVA, "persons indisputably within [the court's] jurisdiction" refers to those against whom the judgment debtor wishes to enforce his discovery request. Thus, according to BBVA, a court must determine whether it may exercise general or personal jurisdiction before granting worldwide discovery. (Dkt. No. 722 at 8.)

      BBVA, however, misreads the court's opinion in *EM Ltd*. The "persons indisputably within [the court's] jurisdiction" to which the court refers are those judgment debtors about whose assets the judgment creditor seeks discovery, not third parties possessing information about those assets. *EM Ltd.*, 695 F.3d at 208–09. Indeed, contrary to BBVA's position, the Court of Appeals went on to state that "[o]nce the district court had subject matter and personal jurisdiction over Argentina [the judgment creditor], it could exercise its judicial power over Argentina . . . including ordering third-party compliance with the disclosure requirements of the Federal Rules." *Id.* at 209; *see also Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 519–20 (S.D.N.Y. 2013) (reading *EM Ltd.* as upholding district court's power to issue subpoenas to commercial banks in FSIA case where jurisdiction over sovereign had been established). Thus, *EM Ltd.* cannot, and does not, support BBVA's reading of *Gucci*.

      BBVA offers no additional support to suggest that the Court of Appeals intended to narrow the scope of available discovery in post-judgment execution proceedings when it decided *Gucci*. Thus, because this Court has subject matter jurisdiction in this case and personal jurisdiction over Cuba, and in accordance with the norm favoring broad post-judgment discovery in aid of execution, this Court may enforce the Information Subpoena against BBVA's New York branch. I hold that BBVA's New York branch is required to provide, as any domestic New York entity would, all information reasonably available to it which is responsive to the

Information Subpoenas, without limitation to whether the accounts it provides information about are located in New York. *See, e.g., EM Ltd.*, 695 F.3d at 208 ("A judgment creditor is entitled to discovery the identity and location of any of the judgment debtor's assets, wherever located." (internal citations omitted).)

Indeed, even if the assets or information sought are currently located in a foreign jurisdiction, they might still be relevant to uncovering executable assets in this jurisdiction. Moreover, one of the very purposes discovery in aid of post-judgment execution is to allow the judgment creditor to discover information about the judgment debtor's assets, which might potentially be hidden, that might be able to satisfy the judgment. *See NML Capital, Ltd.*, 134 S. Ct. at 2257 ("the reason for these subpoenas is that [the judgment creditor] *does not yet know* what property [the judgment debtor] has and where it is, let alone whether it is executable"); *Aviation Supply Corp.*, 999 F.2d at 317 ("[T]he remedies of a judgment creditor include the ability to question the judgment debtor about the nature and location of assets that might satisfy the judgment"); *Minpeco*, No. 81 Civ. 7619, 1989 WL 57704, at *1 (quoting *Nat'l Serv. Indus., Inc*, 694 F.2d at 250) ("A judgment creditor is entitled to discover the identity and location of any of the judgment debtor's assets, wherever located")); *Caisson Corp.*, 62 F.R.D. at 334 ("[Under Rule 69(a),] the judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor"). This is especially true where a sovereign like Cuba might take steps to hide its assets, potentially by routing them through multiple banks, including foreign banks with branches in New York, in order to avoid having to pay on pre-existing, outstanding judgments.

C. Comity Analysis

BBVA points out that *Gucci* requires a district court to consider the question of comity prior to exercising jurisdiction over a nonparty. BBVA Mem. at 6–7; BBVA Reply at 8–9. However, I already considered issues of comity when I ruled on Plaintiff's prior motion to compel compliance with the same information subpoenas from Intesa Sanpaolo and Banco Santander in October 2013, and when I later issued my September 10 Order regarding Plaintiff's prior motion to compel BBVA to comply with the same subpoena. *See* October 30 Tr.; September 10 Order at 2. I incorporate the rationale of those orders into this ruling. As the issues there were "in sum and substance . . . the same as those before me now," and BBVA has not identified any error that requiring me to revisit those rulings, I decline to do.

**VI.    Uncontested Accounts Turnover.**

There are also several outstanding motions concerning the turnover of uncontested Phase I accounts. Plaintiffs filed a motion for the turnover of specified uncontested accounts on August 15, 2014 (Dkt. No. 658) and amended their motion on August 22, 2014 (Dkt. No. 667). Plaintiffs worked with the Respondent garnishee banks concerning those accounts to refine the list and create a proposed order. (*See, e.g.,* Dkt. Nos. 662, 716, 718.) Plaintiff's motion is GRANTED, and I order the Proposed Order submitted as Exhibit 1 to Dkt. No. 718, attached to this opinion.

Following my order granting Plaintiffs' motion to compel BBVA, Plaintiffs filed a separate motion for turnover for an account held by BBVA. (Dkt. No. 682.) BBVA opposed and cross-moved for a protective order. (Dkt. No. 710.) BBVA argued that I lack subject-matter jurisdiction, an argument I have repeatedly rejected, and that it could hypothetically be subject to double liability. I find that BBVA's are without merit, and Plaintiffs' motion is similarly

18

GRANTED, and I order the Proposed Order submitted as Exhibit 1 to Dkt. No 682, also attached

to this opinion.

## CONCLUSION

For the foregoing reasons, I find that BBVA is subject to this court's jurisdiction,

such that the New York branch can be compelled to comply with the Information Subpoena.

BBVA's motion for reconsideration (Dkt. No. 694) is DENIED.  BBVA shall

furnish to Plaintiff's counsel full and complete answers to the information subpoenas served on it

for the Republic of Cuba, its agencies, and instrumentalities, within 30 days of this Opinion and

Order.  The responses shall include information covering BBVA's operations and business in the

custody or control of the bank's offices, inside and outside the United States.

Plaintiffs' motions for turnover (Dkt Nos. 667, 682) are GRANTED, and BBVA's

cross-motion (Dkt. No. 710) is DENIED.

The Clerk shall mark the motions (Dkt. Nos. 658, 667, 682, 694, 710) terminated.


SO ORDERED.

Dated:      March 17, 2015
            New York, New York                        ALVIN K. HELLERSTEIN
                                                      United States District Judge