UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALDO VERA, JR., as Personal Representative
of the Estate of Aldo Vera, Sr.,

        Plaintiff,

v.                                           Case No. 12-cv-01596 (AKH)

THE REPUBLIC OF CUBA,

        Defendant.

---

ALDO VERA, JR., as Personal Representative
of the Estate of Aldo Vera, Sr., *et al.*,

        Petitioners,

v.

BANCO BILBAO VIZCAYA ARGENTARIA (S.A.),
*et al.*,

        Respondents/Garnishees.

---

**MEMORANDUM OF LAW
IN SUPPORT OF CERTAIN RESPONDENTS/GARNISHEES'
MOTION FOR RECONSIDERATION OF TURNOVER ORDER AND STAY**

# TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| PROCEDURAL BACKGROUND | 2 |
| RELEVANT FACTS | 5 |
| ARGUMENT | 6 |
| POINT I    THE COURT SHOULD RECONSIDER ITS ORDER GRANTING PETITIONERS' TURNOVER MOTION | 6 |
|      A.   Legal Standard | 6 |
|      B.   The Second Circuit's decisions in *Calderon-Cardona* and *Hausler* | 8 |
|      C.   Application of this intervening change in controlling law to Petitioners' Turnover Motion | 11 |
| POINT II    THE COURT SHOULD ISSUE A STAY OF PROCEEDINGS AND/OR ENFORCEMENT OF ITS ORDER | 12 |
|      A.   The Court should stay further proceedings pending the final determination of the petitions for writs of *certiorari* that the *Calderon-Cardona* and *Hausler* petitioners have indicated they will file with the U.S. Supreme Court | 13 |
|      B.   At a minimum, the Court should stay the Order pending its determination of this motion | 13 |
| CONCLUSION | 14 |

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Civ. Liberties Union v. Dep't of Defense*,
   396 F. Supp. 2d 459 (S.D.N.Y. 2005) ................................................................................7

*Calderon-Cardona v. Bank of New York Mellon*,
   770 F.3d 993 (2d Cir. 2014) .............................................................................1, 2, 4, 7, 8, 10

*Calderon-Cardona v. Bank of New York Mellon*,
   No. 12-0075 (2d Cir. Dkt. No. 285-1 p. 9) ........................................................................10

*Export-Import Bank of U.S. v. Asia Pulp & Paper Co.*,
   609 F.3d 111 (2d Cir. 2010) .................................................................................................8

*Hausler v. JP Morgan Chase Bank, N.A.*,
   770 F.3d 207 (2d Cir. 2014) .................................................................................1, 2, 4, 7, 9, 10

*Estate of Heiser v. Islamic Rep. of Iran*,
   885 F. Supp. 429 (D.D.C. 2012), *aff'd*, 735 F.3d 934 (D.C. Cir. 2013) ......................3, 5, 10

*Ivan Visin Shipping, Ltd. v. Onego Shipping & Chartering B.V.*,
   543 F. Supp. 2d 338 (S.D.N.Y. 2008) ..................................................................................7

*Mullen v. Benova*,
   No. 95-CIV-5838(PKL), 1998 WL 148426 (S.D.N.Y. Mar. 27, 1998) ................................7

*Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*,
   585 F.3d 58 (2d Cir. 2009) ...................................................................................................8

*Shrader v. CSX Transp., Inc.*,
   70 F.3d 255 (2d Cir. 1995) ...................................................................................................7

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
   956 F.2d 1245 (2d Cir. 1992) ...............................................................................................6

**Statutes**

Fed. R. Civ. P. 59(e) ..................................................................................................................6, 12

Fed. R. Civ. P. 62(b)(3) ..................................................................................................................12

Foreign Sovereign Immunities Act Section 1610 ..............................................................2, 4, 8, 11

New York Uniform Commercial Code Article 4A .........................................................3, 8, 9, 11

Section 201 of Terrorism Risk Insurance Act of 2002 (codified at 28 U.S.C.
    §1610 note) ...................................................................................................2, 8, 9, 11

**Other Authorities**

31 C.F.R. Part 515..................................................................................................2, 3, 5, 6

Local Civil Rule 6.3 ......................................................................................................7, 12

# PRELIMINARY STATEMENT

Respondents/Garnishees, HSBC Bank USA, N.A., Deutsche Bank Trust Company Americas, Bank of America, N.A., Barclays Bank PLC, Citibank, N.A., JPMorgan Chase Bank, N.A., UBS AG, Wells Fargo Bank, N.A., Standard Chartered Bank The Bank of New York Mellon, and Banco Bilbao Vizcaya Argentaria, S.A. (collectively, the "Garnishee Banks") respectfully submit this memorandum of law in support of their motion for reconsideration of this Court's March 17, 2015 Order and Judgment for Turnover of Specified Uncontested Phase I Accounts (Dkt. No. 739-1) (the "Order"), which granted Petitioners' Motion to Complete Turnover of Phase I Accounts Not in Dispute (Dkt. Nos. 658-660, 667) (the "Turnover Motion").

The Garnishee Banks respectfully submit that the Court's decision to enter the Order granting the Turnover Motion overlooks two important considerations: (1) that the Garnishee Banks had revoked their consent to entry of the Order based on the intervening change in law effected by the Second Circuit's decisions in *Calderon-Cardona v. Bank of New York Mellon*, 770 F.3d 993 (2d Cir. 2014) and *Hausler v. JP Morgan Chase Bank, N.A.,* 770 F.3d 207 (2d Cir. 2014); and (2) that *Calderon-Cardona* and *Hausler* fundamentally altered the assumptions underlying the procedure adopted in the Court's Order with Respect to Giving Notice of Turnover Proceeding (Dkt. No. 368) (the "Notice Order") and preclude turnover of the blocked electronic funds transfers ("EFTs") at issue in the Turnover Motion based on the evidentiary record before the Court. Accordingly, the Garnishee Banks respectfully submit that the Order should be withdrawn pending an evidentiary hearing on whether Petitioners can satisfy their evidentiary burden under *Calderon-Cardona* and *Hausler.*

The Garnishee Banks will also be requesting a limited adjournment of the date set for the turnover pending determination of this motion and/or the disposition of certain writs of *certiorari* that we understand will be filed by petitioners with the U.S. Supreme Court seeking review of the *Hausler* and *Calderon-Cardona* decisions discussed above. Indeed, the Garnishee Banks are prepared to hold in abeyance any proceedings seeking dismissal of the claims relating to the EFTs that are the subject of this motion, as well as all Phase II claims, pending the Supreme Court's disposition f the petitions for writs of *certiorari* in those cases.

## PROCEDURAL BACKGROUND

This judgment enforcement proceeding was commenced on September 9, 2013 by the filing of an Omnibus Petition for Turnover Order ("Petition") against more than a dozen Respondents, including the Garnishee Banks (Dkt. No. 298). In their Petition, Petitioners seek to satisfy a judgment against the Republic of Cuba by attaching certain assets that were blocked by the Garnishee Banks pursuant to the Cuban Assets Control Regulations, 31 C.F.R. Part 515 ("CACRs"), promulgated by the Office of Foreign Assets Control ("OFAC"). Petitioners rely on Section 201 of Terrorism Risk Insurance Act of 2002 (codified at 28 U.S.C. §1610 note) ("TRIA") and Section 1610 of the Foreign Sovereign Immunities Act ("FSIA") (codified at 28 U.S.C.). *See* Dkt. No. 659 p. 2 ("By this memorandum, Petitioners will establish [that they] . . . are entitled to turnover of the Blocked Assets . . . pursuant to TRIA and FSIA . . .").

The vast majority of the blocked assets that Petitioners seek to attach consist of EFTs that were routed through the Garnishee Banks (as intermediary banks) and blocked by them pursuant to the CACRs.

When the Petition was filed, the appeals in *Calderon-Cardona* and *Hausler* were pending in the Second Circuit. The outcomes of those appeals were expected to have an impact on the Petition (given the similarity of issues involved), and were expected to result in one of two possible outcomes: either (1) Petitioners could execute against blocked EFTs only if Cuba or one of its agencies or instrumentalities was the originator or originating bank because only those parties had an ownership interest under Article 4-A of the U.C.C., *see, e.g.*, *Estate of Heiser v. Islamic Rep. of Iran*, 885 F. Supp. 429, 446-49 (D.D.C. 2012), *aff'd*, 735 F.3d 934 (D.C. Cir. 2013); or (2) Petitioners could execute against any blocked EFT because the CACRs determined that Cuba had an executable interest in all blocked property, *see, e.g.*, *Hausler v. JP Morgan Chase Bank, N.A.*, 740 F. Supp. 2d 525, 533-35 (S.D.N.Y. 2010), *rev'd*, 770 F.3d 207 (2d Cir. 2014). Based on that assumption, Petitioners and the Garnishee Banks agreed to "phase" this proceeding such that (i) further proceedings with respect to "Phase I Blocked Assets" (in which Cuba's interest was allegedly that of an originator or originating bank) would commence immediately, and (ii) proceedings with respect to "Phase II Blocked Assets" (in which Cuba's interest is alleged to be that of a beneficiary or beneficiary bank) would be stayed pending the conclusion of Phase I and/or rulings by the Second Circuit in *Calderon-Cardona* and *Hausler*.

Thereafter, on December 9, 2013, the Court entered the Notice Order, which reflected the parties' agreement to this phased approach and established a procedure for notifying, or commencing interpleader proceedings and joining, potential adverse claimants who may seek to claim an interest in certain blocked EFTs. *See* Notice Order.

On February 12, 2014, Petitioners amended their Petition to include separate schedules identifying Phase I Blocked Assets and Phase II Blocked Assets (Dkt. No. 423)

("Amended Petition"). Filing of the Amended Petition triggered the Garnishee Banks' time to serve notice on potential adverse claimants to the Phase I Blocked Assets (Notice Order ¶3) or to file interpleader petitions in respect of any Phase I Blocked Asset with a value of $59,500 or more (Notice Order ¶8).

In accordance with the Notice Order, the Garnishee Banks served notices on potential adverse claimants and/or commenced interpleader proceedings. Several parties receiving notice pursuant to the Notice Order failed to submit any response by the deadline set in the Notice Order. Thereafter, on August 15, 2014, Petitioners filed their Turnover Motion, seeking turnover of any blocked accounts for which no objection was submitted. Their motion was supported by a Memorandum of Law (Dkt. No. 659) and a Declaration of Petitioners' attorney (Dkt. No. 660), presenting evidence purportedly showing that certain parties to the EFTs were Cuban agencies or instrumentalities.[1] After meeting and conferring with Petitioners, the Garnishee Banks consented to the relief sought, but disagreed with Petitioners on the form of order to be entered. *See* Dkt. No. 716 (letter submitting Petitioners' proposed order); Dkt. No. 718 (letter submitting Garnishee Banks' proposed order).

Shortly after those proposed orders were submitted, however, the Second Circuit issued its decisions in *Calderon-Cardona* and *Hausler*, unexpectedly holding that a blocked EFT is subject to turnover under TRIA and FSIA "only where either the state itself or an agency or instrumentality thereof (such as a state-owned financial institution) *transmitted the EFT directly to the bank where the EFT is held pursuant to the block.*" *Hausler*, 770 F.3d at 212 (quoting *Calderon-Cardona*, 770 F.3d at 1002) (internal quotation marks omitted)

---

[1] These parties are identified by asterisks in Exhibit A to the Order entered by the Court.

(emphasis added).[2] Few of the accounts at issue in the Turnover Motion satisfy this condition. The Garnishee Banks therefore promptly brought both decisions to the Court's attention and asked that action on the Turnover Motion be deferred until the parties could meet and confer or until they could submit briefing regarding the impact of these decisions. *See* Dkt. No. 726; Dkt. No. 727. The Court instead ordered that a status conference be held on November 5, 2014. *See* Dkt. No. 728.

At the conference, the Garnishee Banks expressed their view that the procedure established by the Notice Order was "actually impossible now" because *Calderon-Cardona* and *Hausler* left "really no basis . . . for the kind of analysis that your Honor was thinking about" when the Notice Order was issued. Nov. 5, 2014 Tr. at 25:1-8 (Dkt. No. 731). "We do not believe in any circumstance there is a situation where the immediate transmitter was Cuba." *Id.* at 21:17-19.

Nevertheless, on March 17, 2015, this Court entered the Order, on the stated basis that "Plaintiffs [had] worked with the Respondent garnishee banks concerning those accounts [subject to the Turnover Motion] to refine the list and create a proposed order." *See* Dkt. No. 739 at 18. The Garnishee Banks respectfully submit that the Order overlooks both the intervening decisions in *Calderon-Cardona* and *Hausler*, and the Garnishee Banks' objections based on those intervening decisions.

## **RELEVANT FACTS**

In their Turnover Motion, Petitioners sought to attach the proceeds of 64 EFTs that were blocked by the Garnishee Banks in accordance with the CACRs. Dkt. No.

---

[2] The Second Circuit refused to adopt the broader view in *Heiser*, as requested by the *Calderon-Cardona* petitioners in their petition for rehearing. *See* Petitioners-Appellants' Pet. for Panel Reh'g & Reh'g *En Banc* at 5-9, *Calderon-Cardona v. Bank of N.Y. Mellon*, No. 12-75-cv (2d Cir. Nov. 30, 2014) (Dkt. No. 286-1). A copy of this petition is attached as an appendix to this memorandum of law for the Court's convenience.

718-1. As support for their claimed entitlement to the requested relief, Petitioners submitted an attorney Declaration, which contained a spreadsheet disclosing the account numbers assigned to the proceeds of the blocked EFTs; the identities of the originators or originating banks for those blocked EFTs; and "evidence" allegedly demonstrating that certain Cuban entities are agencies or instrumentalities of Cuba for purposes of TRIA. Dkt. Nos. 659 p. 5; 660. Based on this evidence, the Court concluded that certain parties to the EFTs, as identified by asterisks in Exhibit A to the Order, were Cuban agencies or instrumentalities, and held that turnover was appropriate based on those parties' interests in the blocked EFTs. *See* Order at 6, 8, 9-10 & n.2, Ex. A (Dkt. No. 718-1).

Notably, none of the "evidence" submitted by Petitioners establishes, or even suggests, that the blocked EFTs sought in their Turnover Motion were *directly* transmitted to the Garnishee Banks by any of those Cuban agencies or instrumentalities, as required under *Calderon-Cardona* and *Hausler*. Dkt. Nos. 659, 660.[3]

## ARGUMENT

### POINT I

**THE COURT SHOULD RECONSIDER ITS ORDER
GRANTING PETITIONERS' TURNOVER MOTION**

**A.    Legal Standard**

"The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). Stated differently, reconsideration is appropriate pursuant to Fed. R.

---

[3] Of the 64 accounts in Exhibit A, a Cuban-owned financial institution is shown as the originating bank in just 9. The Garnishee Banks respectfully submit that in most, if not all of those 9 instances, there was—or must have been—a non-Cuban prior intermediary bank because the CACRs precluded U.S. banks from maintaining correspondent relationships with Cuban banks.

Civ. P. 59(e) and Local Civil Rule 6.3 where a decision "overlooked controlling authority or factual matters that 'might reasonably be expected to alter the conclusion reached by the court.'" *Mullen v. Benova*, No. 95-CIV-5838(PKL), 1998 WL 148426, at *1 (S.D.N.Y. Mar. 27, 1998) (*quoting Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). *See also Am. Civ. Liberties Union v. Dep't of Defense*, 396 F. Supp. 2d 459, 460 (S.D.N.Y. 2005) (Hellerstein, *J.*) ("On a motion for reconsideration, the movant must demonstrate the existence of a 'matter[ ] or controlling decision' that the Court originally overlooked") (*quoting* Local Civil Rule 6.3) (alteration in original).

For purposes of this standard, "[c]ontrolling authority means decisions of the Second Circuit Court of Appeals or the U.S. Supreme Court". *Ivan Visin Shipping, Ltd. v. Onego Shipping & Chartering B.V.,* 543 F. Supp. 2d 338, 339 (S.D.N.Y. 2008) (citation omitted).

The Garnishee Banks respectfully submit that the Second Circuit's recent holdings in *Calderon-Cardona* and *Hausler* are significant, intervening changes in the controlling law that justify reconsideration of the Order, and that the Garnishee Banks' objections based on those decisions were overlooked and further justify reconsideration. Indeed, as the Second Circuit held in *Calderon-Cardona* and *Hausler*, "the only entity with a property interest in the stopped EFT is the entity that passed the EFT on to the bank where it presently rests." *Hausler,* 770 F.3d at 212 (*quoting Calderon-Cardona,* 770 F.3d at 1002 (internal quotation marks omitted). As such, the Second Circuit's decisions can "reasonably be expected to alter the conclusion reached by the court" in its Order, *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995), because Petitioners have clearly failed to

establish that the blocked EFTs at issue are assets of Cuba that are subject to attachment under these binding Second Circuit precedents.

**B.  The Second Circuit's decisions in *Calderon-Cardona* and *Hausler***

In *Calderon-Cardona v. Bank of New York Mellon,* 770 F.3d 993 (2d Cir. 2014), the petitioners sought to enforce a judgment obtained against the Democratic People's Republic of Korea by attaching EFTs that were blocked pursuant to OFAC sanctions regimes imposed upon North Korea.  The District Court denied the petitions for turnover, concluding that the petitioners failed to demonstrate entitlement to relief under TRIA § 201 and FSIA § 1610(g) because, among other reasons, the blocked assets held by the respondent banks were not "owned by" North Korea for purposes of TRIA § 201 and FSIA § 1610(g).  *Id.* at 997.

On appeal, the Second Circuit stated "[w]hether attachment of the EFTs under FSIA § 1610(g) is possible turns [ ] on whether the blocked EFTs at issue are 'property of' North Korea or 'the property of an agency or instrumentality of' North Korea." *Id.* at 1000.[4]  In concluding that the blocked EFTs were not, the Second Circuit construed Section 1610(g) of the FSIA as merely "provid[ing] that 'property' of a foreign state is subject to execution, and absent any indication that Congress intended a special definition of the term, 'property' interests are ordinarily those created and defined by state law." *Id.* at 1001.  Then, relying on its prior decisions in *Export-Import Bank of U.S. v. Asia Pulp & Paper Co.*, 609 F.3d 111 (2d Cir. 2010) and *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009), the Second Circuit determined that Article 4A of the New York

---

[4] In *Calderon-Cardona,* the Second Circuit did not address the property aspect of Section 201 of TRIA, as the petitioners' claims under TRIA § 201 were disposed of on the ground that North Korea was no longer designated as a state sponsor of terrorism at the time the petitioners' judgment was entered. *Calderon-Cardona,* 770 F.3d at 1000.

Uniform Commercial Code ("U.C.C.") governs who has a property interest in an EFT blocked midstream. *Id.* Finally, applying New York's U.C.C., the Second Circuit held, "the only entity with a property interest in the stopped EFT is the entity that passed the EFT onto the bank where it presently rests. *Id.* As a result:

> an EFT blocked midstream is "property of a foreign state" or "the property of an agency or instrumentality of such a state," subject to attachment under 28 U.S.C. §1610(g), ***only*** where either the state itself or an agency or instrumentality thereof (such as a state-owned financial institution) transmitted the EFT ***directly to*** the bank where the EFT is held pursuant to the block.

*Id.* (emphasis added). Because the District Court's opinion was issued prior to discovery, the Second Circuit remanded the matter in order for the parties to conduct discovery aimed at resolving the factual issues surrounding whether the entities that directly transmitted the EFTs to the respondent banks where they were blocked were agencies or instrumentalities of North Korea. *Id.* at 1002.

Just four days later, the Second Circuit issued its decision in *Hausler v. JP Morgan Chase Bank, N.A.,* 770 F.3d 207 (2d Cir. 2014). In *Hausler,* the petitioners, who were family members or trustees of the estates of victims of state-sponsored terrorism, sought to enforce a judgment they obtained against the Republic of Cuba by attaching blocked EFTs pursuant to TRIA § 201. *Id*. at 210. The respondent-garnishee banks that blocked the EFTs opposed their turnover arguing, among other things, that Cuba had no property interest in the EFTs. *Id*. at 210-11. The District Court rejected the garnishee banks' argument and held that TRIA preempted state law with respect to which entities had a property interest in mid-stream EFTs. *Id*. at 211. The District Court then held that Cuba had a sufficient property interest in the EFTs for the plaintiffs to execute upon. *Id*.

On appeal, consistent with its opinion in *Calderon-Cardona*, the Second Circuit disagreed with the District Court and held that state law governs whether an EFT is subject to attachment or execution under Section 201(a) of TRIA. The Second Circuit then held that:

> in order for an EFT to be a "blocked asset of" [a terrorist party] under TRIA § 201(a), either [the terrorist party] "itself or an agency or instrumentality thereof (such as a state-owned financial institution) [must have] transmitted the EFT ***directly*** to the bank where the EFT is held pursuant to the block."

*Hausler,* 770 F.3d at 212 (*quoting Calderon-Cardona,* 770 F.3d at 1002 (emphasis added). The Second Circuit thus reversed the grant of summary judgment in favor of the *Hausler* petitioners on two of their petitions for turnover because "it is undisputed that no Cuban entity transmitted any of the blocked EFTs in this case directly to the blocking bank." *Id.*

The petitioners in *Calderon-Cardona* and *Hausler* moved for rehearing and rehearing *en banc*. Among other things, the petitioners in those cases urged the Second Circuit to reconsider its decisions and adopt, at a minimum, the standard espoused by the D.C. Circuit in *Heiser*, which held that the "originator has a cognizable interest in the [blocked] funds and a judgment creditor of the originator may attach those funds." *See Calderon-Cardona v. Bank of New York Mellon,* No. 12-0075 (2d Cir. Dkt. No. 285-1 p. 9). In denying panel rehearing and rehearing *en banc* on February 25, 2015, the Second Circuit effectively rejected this argument and re-affirmed its narrower holding. *See Calderon-Cardona v. Bank of New York Mellon,* No. 12-0075(2d Cir. Dkt. No. 304); *Hausler v. JP Morgan Chase Bank, N.A.,* No. 12-1264 (2d Cir. Dkt. No. 317).

### C. Application of this intervening change in controlling law to Petitioners' Turnover Motion

As in *Calderon-Cardona* and *Hausler*, Petitioners seek to attach blocked EFTs under Section 201 of TRIA and Section 1610(g) of the FSIA. *See* Dkt. No. 659 p.2. In support of their Turnover Motion, Petitioners claim only that the "Phase I Blocked Assets are property of Cuba for purposes of execution under TRIA and FSIA because the *originators or originating banks* of the EFTs . . . are agencies or instrumentalities of Cuba." *Id.* at p. 5. (emphasis added). Petitioners then seek to avoid their burden of establishing a *prima facie* entitlement to the blocked EFTs by arguing that:

> [by] virtue of the Cuban entities' failure to appear in these proceedings, the Court should deem as true Petitioners' allegations regarding their status as an agency or instrumentality of Cuba and Petitioners' evidence submitted in support of those allegations, all of which are uncontested.

*Id.* at p. 6.[5] Based solely on this argument, Petitioners then claim they have "demonstrated their entitlement to execute on the Blocked Assets pursuant to TRIA and FSIA." *Id.*

Petitioners are wrong. As the Second Circuit's decisions in *Calderon-Cardona* and *Hausler* make clear, asserting that a Cuban agency or instrumentality may have been the originator or originating bank for a given EFT is insufficient to establish that the EFT is property of Cuba subject to execution under TRIA and the FSIA. Rather, Petitioners may only attach those blocked EFTs, if any, that qualify as assets of Cuba under Article 4A of the New York U.C.C. Specifically, before Petitioners can reach any blocked EFT they must demonstrate that it was *transmitted to a Garnishee Bank directly by Cuba or one of its agencies or instrumentalities*.

---

[5] Petitioners make the same argument regarding the purported "evidence" submitted in their attorney's Declaration. Dkt. No. 659 at p. 6.

Furthermore, notice was only given of Petitioners' allegations that either the originator or the originating bank was Cuba or one of its agencies or instrumentalities. Therefore, at best, only *those* allegations can be deemed to have been admitted, and not the unalleged and unproven fact that Cuba or one of its agencies or instrumentalities directly transmitted those funds to one of the Garnishee Banks.

The Garnishee Banks, therefore, respectfully submit that the failure of any parties to appear and contest the accounts subject to the Turnover Motion does not establish Petitioners' entitlement to turnover of those accounts. Rather, in light of the intervening change in controlling law, Petitioners continue to bear the burden of establishing that the party directly transmitting the EFT to the Garnishee Banks was the Republic of Cuba or one of its agencies or instrumentalities. The Garnishee Banks respectfully submit that the Order should be withdrawn until they meet that burden.

## POINT II

### THE COURT SHOULD ISSUE A STAY OF PROCEEDINGS AND/OR ENFORCEMENT OF ITS ORDER

Under Fed. R. Civ. P. 62(b)(3), on appropriate terms for the opposing party's security, the Court "may stay the execution of a judgment—or any proceedings to enforce it—pending disposition of" a motion under Rule 59. As set forth above, this motion for reconsideration is brought pursuant to Fed. R. Civ. P. 59(e) and Local Civil Rule 6.3. Therefore, a stay under Fed. R. Civ. P. 62(b)(3) is available. Moreover, there is no cause for concern regarding Petitioners' security, as the blocked EFTs are being held by the Garnishee Banks pursuant to OFAC regulations. Accordingly, Petitioners' interest in recovering the blocked EFTs is not at risk, and the Court should maintain the *status quo* pending the final

determination by the U.S. Supreme Court of the petitions for writs of *certiorari* to be filed in *Calderon-Cardona* and *Hausler* and/or the determination of this motion.

**A. The Court should stay further proceedings pending the final determination of the petitions for writs of *certiorari* that the *Calderon-Cardona* and *Hausler* petitioners have indicated they will file with the U.S. Supreme Court**

The garnishee banks in *Calderon-Cardona* and *Hausler*, many of which are involved here, have been advised that the petitioners in those cases intend to file petitions for writs of *certiorari* with the U.S. Supreme Court. In fact, the parties in *Hausler* have reached an agreement in principle to defer proceedings intended to give effect to the Second Circuit's decision until after disposition of the petition for *certiorari* in that case.

In light of this development, and given the similarities of issues involved here, the Garnishee Banks respectfully submit that a stay of proceedings in this matter is appropriate pending final determination of the petitions for writs of *certiorari* in *Calderon-Cardona* and *Hausler*.

**B. At a minimum, the Court should stay the Order pending its determination of this motion**

In the Order, the Court determined that "the assets in the Uncontested Turnover Accounts are blocked assets of the Republic of Cuba (or its agencies or instrumentalities) and subject to execution to satisfy the Petitioners' respective judgments". Order pp. 7; 9; 10. On this basis, the Court then directed that the Garnishee Banks "shall turn over the funds in the Uncontested Turnover Accounts with all accrued interest thereon to the U.S. Marshal" on the twentieth business day from service of the Order (i.e. April 14, 2015). Order p. 10.

As set forth above, Petitioners failed to meet their burden on the Turnover Motion. As a result, they are not entitled to the relief granted in the Order. Accordingly, the Court should stay the Order pending its determination of this motion.

## CONCLUSION

For the foregoing reasons, the Court should reconsider its Order and, upon reconsideration, withdraw the Order. Moreover, the Court should stay further proceedings pending resolution of the petitions for writs of *certiorari* that the petitioners in *Calderon-Cardona* and *Hausler* have indicated they will file with the U.S. Supreme Court. At a minimum, the Court should stay the Order pending the Court's determination of this motion.

DATED: March 31, 2015

| PHILLIPS LYTLE LLP | COVINGTON & BURLING LLP |
|---|---|
| By: /s/ Sean C. McPhee<br>Sean C. McPhee<br>Attorneys for Respondent/Garnishee<br>*HSBC Bank USA, N.A.*<br>The New York Times Building<br>620 Eighth Avenue, 23rd Floor<br>New York, New York 10018-1405<br>Telephone No. (212) 759-4888<br>smcphee@phillipslytle.com | By: /s/ Mark P. Gimbel<br>Mark P. Gimbel<br>Attorneys for Respondent/Garnishee<br>*Deutsche Bank Trust Company Americas*<br>620 Eighth Avenue<br>New York, New York 10018<br>Telephone No. (212) 841-1161<br>mgimbel@cov.com |
| DAVIS POLK & WARDWELL LLP | LEVI LUBARSKY & FEIGENBAUM LLP |
| By: /s/ James L. Kerr<br>Karen E. Wagner<br>Michael S. Flynn<br>James L. Kerr<br>Respondent/Garnishee<br>Craig T. Cagney<br>Attorneys for Respondents/Garnishees<br>*Bank of America, N.A., Barclays Bank PLC, Citibank, N.A., JPMorgan Chase Bank, N.A., UBS AG, Wells Fargo Bank, N.A.* | By: /s/ Steven B. Feigenbaum<br>Steven B. Feigenbaum<br>Attorneys for<br>*The Bank of New York Mellon*<br>1185 Avenue of the Americas, 17th Floor<br>New York, New York 10036<br>Telephone No. (212) 308-6100<br>sfeigenbaum@llf-law.com |

450 Lexington Avenue
New York, New York 10017
Telephone No. (212) 450-4000
karen.wagner@davispolk.com
michael.flynn@davispolk.com
james.kerr@davispolk.com
craig.cagney@davispolk.com

ZEICHNER ELLMAN & KRAUSE LLP

By:     /s/ Barry J. Glickman
       Barry J. Glickman
Attorneys for Respondent/Garnishee
*Standard Chartered Bank*
1211 Avenue of the Americas
New York, New York 10036
Telephone No. (212) 223-0400
bglickman@zeklaw.com

WHITE & CASE LLP

By:/s/ Kenneth A. Caruso
    Kenneth A. Caruso
Attorneys for Respondent/Garnishee
*Banco Bilbao Vizcaya Argentaria, S.A.*
1155 Avenue of the Americas
New York, New York  10036
Telephone No. (212) 819-8200
Kenneth.caruso@whitecase.com

Doc #01-2850358.8