### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALDO VERA, JR., as Personal Representative of the Estate of Aldo Vera, Sr., | : |
| | : |
| Plaintiff, | : |
| | : |
| vs. | : |
| | : |
| THE REPUBLIC OF CUBA, | : |
| | : |
| Defendant. | : |

12 Civ. 1596 (AKH)

### MEMORANDUM OF LAW IN SUPPORT OF
### MOTION FOR STAY OF DISCOVERY PENDING APPEAL

WHITE & CASE LLP

1155 Avenue of the Americas
New York, New York  10036
Tel:     (212) 819-8200

*Attorneys for Banco Bilbao*
*Vizcaya Argentaria, S.A.*

Of Counsel:

    Kenneth A. Caruso
    Kelly A. Bonner
    Harold W. Williford

TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

STATEMENT OF THE CASE...............................................................................................1

      A.     The Killing Of Vera Sr. ...............................................................................1

      B.     Vera Obtains The Florida Judgment ..........................................................2

      C.     Vera Commences This Action ....................................................................2

      D.     Vera Serves The Subpoena .........................................................................2

      E.     Proceedings In This Court ..........................................................................3

      F.     The Second Court Decides Gucci; BBVA Moves For Reconsideration ................3

      G.     BBVA Appeals To the Second Circuit ......................................................3

      H.     The Court Denies BBVA's Motion For Reconsideration ........................4

ARGUMENT .........................................................................................................................4

     THE COURT SHOULD STAY DISCOVERY PENDING APPEAL ...............................4

      A.     BBVA Has Shown Likelihood Of Success on The Merits ......................5

      B.     BBVA Will Suffer Irreparable Injury Absent A Stay...............................7

      C.     A Stay Will Not Substantially Injure Vera ...............................................9

      D.     The Public Interest Favors a Stay .............................................................9

CONCLUSION.......................................................................................................................12

AMERICAS 90510248

TABLE OF AUTHORITIES

CASES

Brooks v. Montgomery,
   No. 95-cv-542,
   1996 WL 663972 (N.D.N.Y. Nov. 7, 1996) ............................................................7

CE Int'l Res. Holdings, LLC v. S.A. Minerals LP,
   No. 12–CV–08087 (CM)(SN),
   2013 WL 2661037 (S.D.N.Y. June 12, 2013) ...............................................10, 11

Daimler AG v. Bauman,
   134 S. Ct. 746 (2014)..........................................................................................12

F. Hoffman-LaRoche Ltd. v. Empagran S.A.,
   542 U.S. 155 (2004)............................................................................................11

First City, Tex.-Hous., N.A. v. Rafidain Bank,
   131 F. Supp. 2d 540 (S.D.N.Y. 2001)...............................................................7, 8, 9

Gucci America, Inc. v. Bank of China,
   768 F.3d 122 (2d Cir. 2014)...............................................................................3, 4, 6

Jerez v. Republic of Cuba,
   775 F.3d 419 (D.C. Cir. 2014) ............................................................................5, 6

Linde v. Arab Bank, PLC,
   262 F.R.D. 136 (E.D.N.Y. 2009) ........................................................................10

M/S Bremen v. Zapata Offshore Co.,
   407 U.S. 1 (1972)...............................................................................................12

Minpeco, S.A. v. Conticommodity Servs., Inc.,
   116 F.R.D. 517 (S.D.N.Y. 1987) .............................................................8, 9, 10, 11

Mo. Protection & Advocacy Servs. v. Mo. Dep't of Mental Health,
   No. 04-4064CV-C-NKL,
   2005 WL 1688184 (W.D. Mo. July, 19, 2005)......................................................7

Mohammed v. Reno,
   309 F.3d 95 (2d Cir. 2002).................................................................................4

Orlich v. Helm Bros.,
   160 A.D.2d 135 (1st Dep't 1990) .......................................................................11

Ramírez de Arellano v. Starwood Hotels & Resorts Worldwide, Inc.,
   448 F. Supp. 2d 520 (S.D.N.Y. 2006)..................................................................10

Saraceno v. S.C. Johnson & Son, Inc.,
   492 F. Supp. 979 (S.D.N.Y. 1980) ......................................................................11

AMERICAS 90510248

SEC v. Citigroup Global Markets Inc.,
    673 F.3d 158 (2d Cr. 2012)................................................................................4, 9

SEC v. Rajaratnam,
    622 F.3d 159 (2d Cir. 2010)..................................................................................7

Thapa v. Gonzales,
    460 F.3d 323 (2d Cir. 2006)................................................................................5, 7

Tiffany (NJ) LLC v. Andrew,
    276 F.R.D. 143 (S.D.N.Y. 2011) ........................................................................11

United States v. Adams,
    473 F. Supp. 2d 108 (D. Me. 2007) ......................................................................7

## STATUTES AND RULES

28 U.S.C. § 1605A ....................................................................................................5

Fed. R. App. P. 8 ......................................................................................................1

Fed. R. Civ. P. 69 ....................................................................................................2

N.Y. Banking Law § 200(3) ..................................................................................4, 6

N.Y. C.P.L.R. Rule 5224(a)......................................................................................2

N.Y. C.P.L.R. § 2304................................................................................................3

N.Y. C.P.L.R. § 3104................................................................................................3

N.Y. C.P.L.R. § 5240................................................................................................3

AMERICAS 90510248

Banco Bilbao Vizcaya Argentaria, S.A. ("BBVA") respectfully submits this memorandum of law in support of its motion, pursuant to Rule 8(a)(1)(A) of the Federal Rules of Appellate Procedure, for a stay of discovery, pending appeal of this Court's Opinion and Order denying BBVA's motion for reconsideration of this Court's prior discovery order, and directing BBVA to furnish answers to the Information Subpoena served in this action by plaintiff Aldo Vera, Jr.  See Docket No. 739.  The Court's prior order, dated September 10, 2014, appears at Docket No. 677.

## STATEMENT OF THE CASE

This is an action against a foreign state, the Republic of Cuba, in which plaintiff, Vera, sought full faith and credit for a judgment rendered in Vera's favor by a Florida state court.  This Court granted that relief.

Vera then served an information subpoena on the New York branch of BBVA, a bank organized under the laws of Spain, headquartered in Spain and with its principal place of business in Spain.  The subpoena sought information concerning Cuba-related assets that BBVA may hold worldwide.

BBVA produced information regarding Cuba-related assets held at BBVA's New York branch.  Vera then moved to compel disclosure regarding Cuba-related assets that BBVA may hold worldwide.  BBVA cross-moved to quash the subpoena and for a protective order.  On September 10, 2014, the Court granted Vera's motion and denied BBVA's cross-motion.  Docket No.677.  BBVA has appealed to the United States Court of Appeals for the Second Circuit.

A.    The Killing Of Vera Sr.

Vera alleges the following:  Aldo Vera Sr. was the chief of police in Havana, Cuba, following the Cuban revolution.  He later became disillusioned with Castro's communist regime and fled Cuba for Miami, Florida, and San Juan, Puerto Rico, where he became active

AMERICAS 90510248

in counter-revolutionary activities.  Declaration of Kenneth A. Caruso in Support of Motion

for Stay of Discovery Pending Appeal ("Caruso Decl.") Ex. G-H, Appendix on Appeal ("A")

at A-249-50.

On October 25, 1976, Vera Sr. was shot and killed in San Juan.  A-250.  Vera alleges

that this was an extrajudicial killing by officials of the Republic of Cuba ("Cuba").

According to a report of the FBI, however, Vera Sr. "was shot and killed in San Juan where

police advised the murder was related to criminal activities rather than Cuban exile political

matters."  A-330.

B.      Vera Obtains The Florida Judgment

On December 28, 2001, Vera brought an action against Cuba in the Circuit Court of

the Eleventh Judicial Circuit, Miami-Dade County, Florida (the "Florida Court"), under the

FSIA, seeking money damages for the extrajudicial killing of his father.  On May 15, 2008,

the Florida Court entered a default judgment in favor of Vera and against Cuba in the amount

of approximately $95 million (the "Florida Judgment").  A-246.

C.      Vera Commences This Action

On March 5, 2012, Vera commenced this action, Vera v. Republic of Cuba, in this

Court, seeking full faith and credit for the Florida Judgment.  A-257.  On August 20, 2012,

the Court granted that relief, entering its own default judgment.  A-261-62.

D.      Vera Serves The Subpoena

Vera thereafter mailed an Information Subpoena (the "Subpoena") to the New York

branch of BBVA.  The Subpoena, served pursuant to CPLR Rule 5224(a), made applicable

by Rule 69(a)(2), FRCP, sought information -- to be "obtained from New York and world-

wide branches" of BBVA -- concerning assets in which Cuba may have an interest.  A-195-

96.

2

E.     Proceedings In This Court

BBVA responded by providing information regarding Cuba-related assets (blocked accounts) held at BBVA's New York branch. A-208. Unsatisfied with this information, Vera moved to compel the production of information regarding Cuba-related assets that BBVA may hold worldwide. A-178. BBVA cross-moved, pursuant to CPLR §§ 5240, 3104 and 2304, to quash the Subpoena and for a protective order. A-339.

On September 10, 2014, this Court granted Vera's motion and denied BBVA's cross-motion. The district court ordered BBVA (and another bank) to "furnish to plaintiff's counsel full and complete answers to the information subpoenas served on each for the Republic of Cuba, its agencies and instrumentalities . . . . The responses shall include information covering [BBVA's] operations and business in the custody or control of the bank's offices, inside and outside the United States." Caruso Decl. Ex. I, at SPA-24.

F.     The Second Court Decides Gucci; BBVA Moves For Reconsideration

On September 17, 2014, the Second Circuit decided Gucci America, Inc. v. Bank of China, 768 F.3d 122 (2d Cir. 2014), which vacated an order directing a foreign bank to provide worldwide discovery. The Gucci court held that the service of a subpoena upon the foreign bank's New York branch did not give the district court general personal jurisdiction over the foreign bank.

On September 24, 2014, BBVA -- relying on Gucci -- made a timely motion for reconsideration in this Court. A-537.

G.     BBVA Appeals To the Second Circuit

On October 2, BBVA filed a notice of appeal from this Court's discovery order of September 10, 2014. On December 2, 2014, Circuit Mediation, CAMP Office, sent an email to all counsel adjourning a CAMP conference in this appeal. The email continued, "Please be advised that because of the nature of the pending motion [for reconsideration in the district

3

court], this Court will not enter a FRAP 4(a)(iv) stay, therefore opening briefs will remain due on January 13, 2015." A-584.  Accordingly, in January and February 2015, the parties filed their briefs on appeal.  BBVA filed its Reply Brief on February 20, 2015.  It is expected that oral argument will be heard in early June.

H.      The Court Denies BBVA's Motion For Reconsideration

On March 17, 2015, this Court denied BBVA's motion for reconsideration.  See Docket No.739.  The Court held that (A) BBVA consented, pursuant to § 200(3) of the New York Banking Law, to personal jurisdiction sufficient to compel worldwide discovery, and (B) the decision in Gucci, 768 F.3d 122, does not apply to discovery in post-judgment execution proceedings.

The Court ordered BBVA to produce answers to the Information Subpoena within 30 days; that is, by April 16, 2015.  The parties thereafter stipulated to extend that deadline to May 1, 2015.  See Docket No.747.

BBVA now moves for a stay of discovery pending appeal.

ARGUMENT

THE COURT SHOULD
STAY DISCOVERY
PENDING APPEAL

On a motion for a stay pending appeal, a court balances four factors : (A) likelihood of success on the merits of the appeal; (B) whether the moving party may suffer irreparable injury absent a stay; (C) whether a stay will substantially injure the other party to the appeal; and (D) considerations of public interest.  See, e.g., SEC v. Citigroup Global Markets Inc., 673 F.3d 158, 162-63 (2d Cr. 2012); Mohammed v. Reno, 309 F.3d 95, 100 (2d Cir. 2002).  These factors are treated "like a sliding scale" and "[t]he necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other stay factors."

4

Thapa v. Gonzales, 460 F.3d 323, 334 (2d Cir. 2006) ("Simply stated, more of one excuses less of the other.")

Here, these factors point forward the grant of a stay pending appeal.

A.      BBVA Has Shown Likelihood Of Success on The Merits

Here, BBVA's appeal has already been fully briefed.  The Court can therefore assess the likelihood of success by reviewing the briefs and other written arguments, which BBVA has submitted as Exhibits to the Caruso Declaration.

The Court, of course, believes that its prior rulings have correctly rejected BBVA's positions.  On a motion for a stay pending appeal, it is not easy -- and perhaps, not realistic -- for an appellant to convince the District Court that the Court erred.

Here, however, BBVA asks the Court to consider that the issues on appeal are at least difficult, that some of them raise questions of first impression in this Circuit (and perhaps nationwide), and that all of the issues warrant review in the Second Circuit.  BBVA contends, for example (Caruso Decl. Ex. A, Opening Brief at 31-35), that the Court lacked subject matter jurisdiction because Cuba was not designated as a state sponsor of terrorism "as a result of" the Vera killing.  28 U.S.C. § 1605A(a)(1) and (2).  Rather, Cuba was so designated because of its support for organizations and groups abroad that used terrorism and revolutionary violence as a policy instrument to undermine existing governments.  See Caruso Decl. Ex. A, at 33-34.

The recent, intervening decision in Jerez v. Republic of Cuba, 775 F.3d 419 (D.C. Cir. 2014), accepts this argument:

> Cuba was designated a state sponsor not because of the torture
> inflicted on Jerez, but because of "support for acts of
> international terrorism" such as those committed by the terrorist
> group M-19.  Regulation Changes on Exports:  Hearing Before
> the Subcomm. On Near E. & S. Asian Affairs of the S. Comm.
> on Foreign Relations, 97th Cong. 13 (1982) (statement of

AMERICAS 90510248

> Ernest Johns[t]on, Jr., Deputy Assistant Secretary for Economic
> Affairs, Department of State).

Id. at 425.

BBVA, like Jerez, relies on the Johnston testimony.  Opening Brief at 34.  Jerez shows that BBVA has a likelihood of success on the merits.  The Court lacked subject matter jurisdiction because Cuba was not designated "as a result of" the Vera killing.

BBVA also contends that the Court erred when it reached a merits issue (granting full faith and credit to the Florida state court judgments) without first deciding that it had subject matter jurisdiction.  Caruso Decl. Ex. A, Opening Brief at 38-41.  Jerez shows that the Court should have entertained BBVA's challenge to the Florida judgments.  "[A] court asked to enforce a default judgment must entertain an attack on the jurisdiction of the court that issued the judgment."  775 F.3d at 422 (emphasis added).  On such attack, review of the issue of subject matter jurisdiction is de novo.  Id. at 422-23.  A Florida court would have to undertake the same de novo analysis.  Id.

Here, the Court did not undertake the required de novo review and failed to hold, as Jerez held, that the Florida Judgment is void because Cuba was not designated "as a result of" the Vera killing.

Similarly, in the Court's recent Opinion and Order denying reconsideration, Docket No. 739, the Court held that (a) a foreign bank's consent, pursuant to section 200(3) of the New York Banking Law, is broad enough to compel worldwide discovery, and that the Second Circuit's decision in Gucci, 768 F.3d 122, does not extend to discovery in post-judgment execution proceedings.  BBVA respectfully submits that the Court erred in so holding.  See Caruso Decl. Ex. F (copy of Supplemental Brief filed in the Court of Appeals).  At the very least, however, BBVA asks this Court to acknowledge that these are questions of first impression, worthy of review in the Court of Appeals.

AMERICAS 90510248

Thus, BBVA has shown a likelihood of success on the merits, or at least sufficient likelihood to warrant a stay, on balance with the other factors, set forth below.  See, e.g., Thapa, 460 F.3d at 334-36 (granting a stay where moving party demonstrated "some possibility of success" and balance of hardship decidedly in its favor; moving party showed a "substantial enough question to pass this first threshold").

B.     BBVA Will Suffer Irreparable Injury Absent A Stay

In a case involving an appeal from an order for discovery or production of information that is privileged or confidential under law, a person suffers irreparable injury, absent a stay, when he or she must produce the materials in advance of an appellate ruling. See First City, Tex.-Hous., N.A. v. Rafidain Bank, 131 F. Supp. 2d 540, 543 (S.D.N.Y. 2001) (party will suffer irreparable injury where it will be obligated "to provide the very discovery it argues it has no obligation to produce");  Brooks v. Montgomery, No. 95-cv-542 (RSP/RWS), 1996 WL 663972, at *1 (N.D.N.Y. Nov. 7, 1996) (noting that "[t]he court is cognizant, however, of the possibility that the movant may be irreparably harmed by the disclosure of information which may prove to be privileged.").

The production or disclosure of confidential material is itself the ultimate harm sought to be avoided.  Rafidain Bank, 131 F. Supp. 2d at 543; see also United States v. Adams, 473 F. Supp. 2d 108, 121 (D. Me. 2007) (finding irreparable injury in "the possibility of compromising highly sensitive, confidential information" by compelling disclosure). The production or disclosure, once made, cannot be undone.  SEC v. Rajaratnam, 622 F.3d 159, 170 (2d Cir. 2010) ("Once the 'cat is out of the bag,' the right against disclosure cannot later be vindicated."); Mo. Protection & Advocacy Servs. v. Mo. Dep't of Mental Health, No. 04-4064CV-C-NKL, 2005 WL 1688184, at *2 (W.D. Mo. July, 19, 2005) ("If the Defendants are required to turn over the Report, confidentiality is lost and the status quo cannot be

7

restored.").  Thus, a person is irreparably harmed if it must "provide the very discovery it argues it has no obligation to produce."  <u>Rafidain Bank</u>, 131 F. Supp. 2d at 543.

This concept has special force where, as here, the disclosure would constitute a crime, or expose a person to liability, under foreign law.  <u>See</u> <u>Minpeco, S.A. v. Conticommodity Servs., Inc.</u>, 116 F.R.D. 517, 523-24 (S.D.N.Y. 1987) (discussing compelled discovery in the face of foreign bank secrecy laws).  Clearly, later reversal on appeal would not "undo" the act (production and disclosure) that violates foreign law.

Here, for such reasons, BBVA will suffer irreparable injury absent a stay.  As shown in the Declaration of BBVA's expert -- which stands unrebutted -- the information at issue is confidential under the law of Spain, BBVA's home country.  <u>See</u> A-341-43.  Absent a stay, BBVA would be obligated to make the very disclosure that, it argues, it has no obligation to provide.  Such disclosure, once made, cannot be undone or repaired.  The Court should avoid this injury, and should protect the confidentiality of the information, at least until the Second Circuit can rule.

Here, furthermore, disclosure would constitute a crime and/or would expose BBVA to civil liability under the law of Spain.  Compliance would cause BBVA to violate its home-country, Spanish law, thereby exposing BBVA to substantial penalties and damages.  As shown in the Declaration of BBVA's expert -- which stands unrebutted -- the law of Spain prohibits disclosure of information of the kind sought here.  The law imposes significant penalties, as well as civil liability in an action by BBVA's customer.  A-341-43.  The Declaration of BBVA's expert -- which, again, stands unrebutted -- showed that Spanish authorities have indeed taken enforcement actions with respect to these laws.  <u>See</u> A-343 (Bank of Spain issued 39 decisions in 2011-12 related to breaches of bank secrecy obligations).  Clearly, a later reversal on appeal cannot "undo" or repair the act (production and disclosure) that violates foreign law.

AMERICAS 90510248

C.      A Stay Will Not Substantially Injure Vera

Here, a stay will not substantially injure Vera because a stay pending appeal will merely maintain the status quo and will have a very short duration.  Citigroup Global, 673 F.3d at 168 (granting "stay that does nothing more than maintain the status quo existing prior to the district court's order.  We see no appreciable harm to anyone from issuing a stay."). BBVA's appeal is fully-briefed.  BBVA and Vera have stipulated, and the Court has "so ordered," that BBVA's time to respond to the Subpoena is extended through May 1, 2015. See Docket Entry 747.  Oral argument is expected to be heard in early June, meaning that a stay pending appeal need only last for another (approximately) one month.   (BBVA will ask the Second Circuit to expedite the oral argument, if the Court wishes to impose that as a condition for a stay).  See Rafidain Bank, 131 F. Supp. 2d at 543 (opposing party would suffer no substantial harm where there will be prompt hearing on appeal).  A stay need not last any longer than the time it takes to reach oral argument, when the Second Circuit panel can make a further ruling on a stay.

A stay of discovery, moreover, would merely maintain the status quo.  Citigroup Global, 673 F.3d at 168; Rafidain Bank, 131 F. Supp. 2d at 543 (public interest served by maintaining status quo).  Vera seeks discovery of information to which he has not previously had access in the United States.  The parties have been litigating these issues for approximately 17 months.  A delay of another month will not substantially injure Vera.

D.      The Public Interest Favors a Stay

This factor has less importance where, as here, the Court has private civil litigation before it.  Cf. Minpeco, 116 F.R.D. at 523-24.  The public interest does not directly enter the analysis, as it might in litigation to which the U.S. Government is a party  Cf. Rafidain Bank, 131 F. Supp. 2d at 543 ("the public interest is served by preserving the status quo, allowing [BBVA] to fully pursue its appeal").

9

In any event, there is a public interest in compliance with foreign law, which makes the information at issue in this case confidential.  Minpeco, 116 F.R.D. at 523-24.  Indeed, Spanish law makes it a crime for BBVA to disclose the information at issue.  A stay would promote the public interest because it would protect BBVA from taking action that (although compelled in the United States) would constitute a crime under Spanish law.  Id.

Here, discovery would inflict hardship on BBVA because discovery would cause BBVA to violate its home-country, Spanish law, thereby also exposing BBVA to substantial penalties and damages.  As shown in the Declaration of BBVA's expert, the law of Spain prohibits disclosure of information of the kind sought here.  The law imposes significant penalties, as well as civil liability in an action by BBVA's customer.  A-341-43.

Hardship and the public interest weigh more heavily against an order compelling discovery -- and in favor of a stay -- where, as here, the person who would be compelled to produce information in violation of foreign law "is merely a neutral source of information," and not a party or the target of an investigation.  CE Int'l Res. Holdings, LLC v. S.A. Minerals LP, No. 12–CV–08087 (CM)(SN), 2013 WL 2661037, at *15 (S.D.N.Y. June 12, 2013); see also Linde v. Arab Bank, PLC, 262 F.R.D. 136, 151 (E.D.N.Y. 2009) ("[A]n order compelling production should be imposed on a nonparty . . . only in extreme circumstances.").

The Declaration of BBVA's expert -- which stands unrebutted -- showed that Vera has three alternative means for obtaining the information he seeks.  Vera can (a) make a Hague Convention request, (b) obtain a letter rogatory from the U.S. district court, which Vera can then enforce in Spain or (c) commence an action in Spain seeking recognition and enforcement of the U.S. district court's judgment, which would lead to disclosure of information concerning the judgment debtors' assets.  A-343-44.  Cf. Ramírez de Arellano v. Starwood Hotels & Resorts Worldwide, Inc., 448 F. Supp. 2d 520, 529 (S.D.N.Y. 2006)

10

(Hague Convention can be used to obtain evidence in Spain); <u>Saraceno v. S.C. Johnson &</u>
<u>Son, Inc.</u>, 492 F. Supp. 979, 988 (S.D.N.Y. 1980) (letter rogatory can be used to obtain
evidence in Spain).

Spain has a strong national interest where, as here, information is sought from one of
its corporate citizens and the information is located in Spain, a civil-law country in which
"fact gathering is a judicially controlled process."  <u>Orlich v. Helm Bros.</u>, 160 A.D.2d 135,
144 (1st Dep't 1990).  The "nonjudicial taking of evidence" from a non-party witness located
in such a country "is regarded as an affront to . . . sovereignty."  <u>Id.</u>

Spain, furthermore, has a strong national interest in enforcing its banking laws.  <u>See,</u>
<u>e.g.</u>, <u>CE Int'l</u>, 2013 WL 2661037, at *16; <u>Minpeco</u>, 116 F.R.D. at 524.  Certainly, Vera made
no showing that the laws at issue were enacted to shield wrongdoers from foreign legal
process, or that they are anything other than laws of general applicability that embody
legitimate sovereign interests by regulating activity within Spain's own territory, protecting
privacy and promoting confidence in Spain's financial institutions.

The United States, of course, has a national interest in allowing parties to obtain
information from witnesses during judgment-enforcement proceedings.  That interest,
however, is not as great in private, civil litigation involving a witness, not a party, as it would
be if the request were initiated by the U.S. government for purposes of an enforcement
proceeding.  <u>Tiffany (NJ) LLC v. Andrew</u>, 276 F.R.D. 143, 157 (S.D.N.Y. 2011) (banks'
"status as non-parties does attenuate the United States interest in enforcing discovery
obligations").  Private litigants do not "exercise the degree of self-restraint and consideration
of foreign governmental sensibilities generally exercised by the U.S. Government[.]"  <u>F.</u>
<u>Hoffman-LaRoche Ltd. v. Empagran S.A.</u>, 542 U.S. 155, 171 (2004).  Certainly, the U.S.
Government has not determined that Vera's request lies in the public interest, when weighed
against potential adverse consequences in and with Spain.

11

In this case, the Declaration of BBVA's expert established that the law of Spain allowed Vera to secure the information he seeks.  A-343-44.  Therefore, the question in this case is not <u>whether</u> Vera can secure any such information but <u>where</u> he can do so (Spain or the United States) and <u>how</u> he can do so (by letter rogatory/Hague Convention request or by order of a U.S. court that would cause BBVA to violate Spanish law).

New York, in short, is not the only place in the world where Vera can seek information regarding Cuba-related assets.  Only a U.S.-centric view of jurisdiction -- a view inconsistent with <u>Daimler AG v. Bauman</u>, 134 S. Ct. 746 (2014) -- would assume that foreign-country courts are not up to the task.  <u>Cf.</u> <u>M/S Bremen v. Zapata Offshore Co.</u>, 407 U.S. 1, 9 (1972) ("We cannot have trade and commerce in world markets . . . exclusively on our terms, governed by our laws and resolved in our courts.").  Such a view will merely drive foreign banks from New York City, thereby undermining its position as (in this Court's language) "a leading world financial center."  Docket No.739 at 13.

CONCLUSION

For the foregoing reasons, the Court should grant a stay of discovery pending appeal.

Dated:       New York, New York
             April 3, 2015

                              WHITE & CASE LLP

                              By: _____
                                      Kenneth A. Caruso

Of Counsel:                   1155 Avenue of the Americas
     Kenneth A. Caruso        New York, New York  10036
     Kelly A. Bonner          Tel:  (212) 819-8200
     Harold W. Williford
                              *Attorneys for Banco Bilbao Vizcaya*
                              *Argentaria, S.A.*

12