

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                     :

ALDO VERA, JR., as Personal Representative of  :
the Estate of Aldo Vera, Sr.,                :

                                 :
                          Plaintiff,     :
      -against-                           :

                                 :
THE REPUBLIC OF CUBA,           :

                                 :
                       Defendant.   :

                                 :
------------------------------------------------------------- X
                                 :

ALDO VERA, JR., as Personal Representative of  :
the Estate of Aldo Vera, Sr., and        :

JEANNETTE FULLER HAUSLER, and
WILLIAM FULLER, as court-appointed co-
representatives of the ESTATE OF ROBERT OTIS  :
FULLER, deceased, on behalf of all beneficiaries of :
the Estate and the ESTATE OF ROBERT OTIS
FULLER; and

ALFREDO VILLOLDO, individually, and
GUSTAVO E. VILLOLDO, individually and as
Administrator Executor, and Personal
Representative of the ESTATE OF GUSTAVO
VILLOLDO ARGILAGOS,

                          Petitioners,
      -against-

BANCO BILBAO VIZCAYA ARGENTARIA
(S.A.); BANK OF AMERICA N.A.; BANK OF
NEW YORK MELLON; BARCLAY'S BANK
PLCS; CITIBANK N.A.; CREDIT SUISSE AG,
NEW YORK BRANCH; DEUTSCHE BANK
TRUST COMPANY AMERICAS; HSBC BANK
(HSBC BANK USA, N.A.); INTESA SANPAOLA
S.P.A.; JP MORGAN CHASE BANK N.A.; RBS
CITIZENS, N.A.; ROYAL BANK OF CANADA;
SOCIETE GENERALE; UBS AG; WELLS

**ORDER DENYING MOTION TO
RECONSIDER**

12 Civ. 1596 (AKH)

FARGO BANK, NA; BROWN BROTHERS          :
HARRIMAN & CO.; MERCANTIL COMMERCE  :
BANK, N.A.; STANDARD CHARTERED BANK;  :
AND BANCO SANTANDER, S.A.,                     :
                                                                        :
                                    Respondents.           :
_____  X

ALVIN K. HELLERSTEIN, U.S.D.J.:

   The Garnishee Banks[1]  seek reconsideration of my turn-over order because they

contend I did not, in my opinion of March 17, 2015, consider two recent decisions of the Court

of Appeals: *Calderon-Calderon v. Bank of New York Mellon*, 770 F.3d 993 (2d Cir. 2014), and

*Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207 (2d Cir. 2014).  (Dkt. No. 740 at 1.)  I

grant reconsideration and re-affirm my decision.

## BACKGROUND

### I. The Prior Proceedings

   There are three cases in coordinated proceedings supplementary to judgments

against the Republic of Cuba ("Cuba"):  *Vera v. The Republic of Cuba*, 12-cv-1596 ("Vera");

*Villoldo v. Fidel Castro Ruz*, 11-cv-9394 ("Villoldo"); and *Hausler v. The Republic of Cuba*, 09-

cv-10289 ("Hausler").  Each of the three judgments arose from assassinations commanded by

Cuba in state-sponsored terrorism.  The judgments were entered in Florida Superior Court and,

subsequently, in the United States District Courts for the Southern District of Florida and the

Southern District of New York.  Proceedings in this court by the three judgment creditors,

supplementary to their respective judgments, were coordinated before me to avoid the potential

of overlapping judgments and executions.  (*See, e.g.*, Dkt. No. 274 at 3.)

---

[1] The motion is made by HSBC Bank USA, N.A., Deutsche Bank Trust Company Americas, Bank of America,
N.A., Barclays Bank PLC, Citibank, N.A., JPMorgan Chase Bank, N.A., UBS AG, Wells Fargo Bank, N.A.,
Standard Chartered Bank, The Bank of New York Mellon, and Banco Bilbao Vizcaya Argentaria, S.A. (Dkt.
No. 740 at 1.)

2

The three plaintiffs agreed to a sharing protocol, and this enabled them to execute against Cuban funds that had been deposited in New York banks without controversy among them. *(See, e.g.,* Dkt. No. 323.) Another category of asset also seemed capable of turn-over: funds in New York banks in the form of electronic fund transfers ("EFTs"), emanating from Cuba, or its agencies or instrumentalities, transmitted to New York banks for clearance purposes, and intended for remittance to others. By order of the U.S. Treasury, these EFTs had been blocked. By law, funds in which state sponsors of terrorism had an interest, direct or indirect, could be executed upon and turned over to judgment creditors. *See* 28 U.S.C. § 1610.

Pursuant to the Cuban Asset Control Regulations ("CACR"), "[a]ll transfers of credit and all payments between, by, through, or to any banking institution or banking institutions wheresoever located, with respect to any property subject to the jurisdiction of the United States or by any person (including a banking institution) subject to the jurisdiction of the United States" are prohibited. 31 C.F. R. § 515.201. Property and transactions that meet these requirements are 'blocked', meaning they cannot be completed, transferred, or attached without a license from the Department of Treasury's Office of Foreign Asset Control ("OFAC"). The Terrorism Risk Insurance Act of 2002 ("TRIA") provides an exception to that provision, by providing: "in every case in which a person has obtained a judgment against a terrorist party on a claim based on an act of terrorism, or for which a terrorist party is not immune ... the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in the aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable". 28 U.S.C. § 1610.

3

The banks were careful to distinguish between the category of asset described above: between EFTs *emanating from* Cuba or its instrumentalities, and EFTs *destined for* Cuba or its instrumentalities. The bank holding a blocked EFT, if the Treasury block was legally ineffective, would have to return the funds reflected by the EFT to the sender, and not to the beneficiary. As the Second Circuit stated its ruling in *Calderon-Cardona*: "the only party with a claim against an intermediary bank is the *sender* to that bank, which is typically the originator's bank". 770 F.3d at 1001 (citing *Asia Pulp*, 609 F.3d at 119-120, and UCC Perm. Ed. Bd. Comm. No. 16 §§ 4A-502(d)) (emphasis added). If, however, Cuba was the sender, the funds could not be returned, for the purpose of the block was to sanction Cuba, and funds could not be allowed to move to it, or to be returned to it, directly or through an agent. Thus, if innocent third parties had originated the EFT, the funds reflected by the EFT could safely be returned to the initiating third party, or so it was thought. But if Cuba, or an instrumentality of Cuba, had initiated the EFT, funds could not be allowed to be returned to Cuba. In any event, New York banks could not legally clear an EFT which was either initiated by a third party and intended for Cuba, or initiated by Cuba and intended for another.

In a series of conferences, the respondents in this litigation agreed to develop a procedure for blocked EFTs that had emanated from Cuba, or from an agency or instrumentality of Cuba. (*See* Dkt. No. 368.) The funds were called "Phase I Funds". (*Id.* at 2-3.) The procedure, essentially an interpleader, involved giving notice to all potential claimants to the blocked funds other than Cuba, to require any such claimants to state their interests, to determine any such interests, and to remit all funds owned by Cuba, or in which Cuba had an interest, to the plaintiffs, up to the amounts of their judgments and interest. (*See* Dkt. No. 368.)

4

The agreed procedure was reflected in an order dated November 13, 2013. (Dkt. No. 368.) It is attached as an appendix hereto. After the interpleader period passed, a few objections were filed to several of the Phase I accounts. Plaintiffs then moved for turnover of the uncontested Phase I blocked assets, to which parties were noticed and for which there were no objections. (Dkt. No. 658.)

Two banks did not agree to the notice and interpleader procedure: Banco Bilbao Vizcaya Argentaria, S.A ("BBVA") and Standard Chartered Bank ("Standard Chartered"). Plaintiffs filed a motion to compel those two banks to respond to information subpoenas concerning accounts that held blocked funds outside the United States. (Dkt. No. 336.) BBVA filed a motion to dismiss, attacking this court's jurisdiction, on the ground that the judgments of the Florida Superior Court, determining Cuba to be a state-sponsor of terrorism and hence capable of being sued in courts in the United States, were not supported by the evidence. (Dkt. No. 349.) By Order and Opinion, I denied BBVA's motion to dismiss on August 22, 2014. (Dkt. No. 666.)

BBVA and Standard Chartered also filed cross-motions to quash Plaintiffs' subpoena and for a protective order against the information subpoenas. (Dkt. Nos. 355, 365.) The two banks argued that a recent Supreme Court decision, *Daimler AG v. Bauman*, 134 S.Ct 746 (January 14, 2014) prevented me from exercising personal jurisdiction over them. (*See id.*) I held that it did not, and by Order decided the motion to compel in favor of Plaintiffs and against BBVA and Standard Chartered on September 10, 2014. (Dkt. No. 677.)

The two banks tried again, by filing motions for reconsideration on each of their motions. (Dkt. Nos. 672, 694, 699.) BBVA's motion for reconsideration regarding its motion to

dismiss did not raise any new facts or law not stated in its original motion. I denied BBVA's motion in an order dated September 9, 2014. (Dkt. No. 676.)

The two banks argued in their motions for reconsideration regarding the information subpoenas that an intervening Second Circuit case, *Gucci Am., Inc. v. Li*, 768 F.3d 122 (2d Cir. September 17, 2014), compelled a different result. (Dkt. Nos. 694, 699.) Before I issued my decision on the motions for reconsideration concerning the motion to compel answers to the information subpoenas, Standard Charter entered into a stipulation with Plaintiffs to resolve the dispute between them. (Dkt. No. 730.) On March 17, 2015, I denied BBVA's motion for reconsideration. (Dkt. No. 739.) In that order, I also granted Plaintiffs' motion to turn over the uncontested Phase I accounts, which had gone through the interpleader process described above. (*Id.*)

By that order dated March 17, 2015, all motions and objections having been resolved, the stage was set for a turn-over of the Phase I funds. But another motion was in the offing, based on the recent Second Circuit decisions in *Calderon-Cardona v. Bank of New York Mellon*, 770 F.3d 993 (2d Cir. October 23, 2014) and *Hausler v. JP Morgan Chase Bank*, 770 F.3d 207 (2d Cir. October 27, 2014).

## II.    The Banks' Renewed Motion for Reconsideration

*Calderon-Cardona* and *Hausler* both involved electronic fund transfers (ETFs) that had been blocked in banks located in the United States pursuant to sanctions imposed under the Foreign Sovereign Immunities Act (FSIA) §§ 1610(f)(1) & 1610(g). The decisions do not mention if the ETFs were intended to be transferred, in *Calderon-Cardona*, into or out of banks acting for the Democratic People's Republic of Korea (North Korea) or, in *Hausler*, into or out of banks acting for the Republic of Cuba. In both cases, judgment creditors had attached the

6

blocked funds for credit to judgments they had obtained as family members of victims of state sponsored terrorism, pursuant to section 201 of the Terrorism Risk Insurance Act of 2002 (TRIA) (codified at 28 U.S.C. § 1610 note).

The Court of Appeals held in *Calderon-Cardona* that North Korea's designation as a state sponsor of terrorism had been withdrawn before plaintiff obtained his judgment. 770 F.3d at 999-1000. Hence, the attachment procured against North Korea's blocked funds, pursuant to FSIA § 1610(f) and TRIA § 201(a), was dissolved. *Id.* at 1000.

The attachment also had been based on FSIA § 1610(g). That law authorized attachments of property in aid of execution of judgments against former, as well as current, state sponsors of terrorism. *Id.* If the property belonged to the foreign state, or an agency or instrumentality of the foreign state, it could be attached in aid of execution. *Id.* at 1000-01. Property included "an interest held directly or indirectly in a separate juridical entity". 28 U.S.C. § 1610 (g)(1). *Id.*

The Court of Appeals, following New York State law and its prior decisions with regard to maritime attachments between private parties, *see Export-Import Bank of U.S. v. Asia Pulp & Paper Co.*, 609 F.3d 111, 116 (2d Cir. 2010), and *Shipping Corp. of India Ltd. v. Jahldi Overseas Pte Ltd.*, 585 F.3d 58, 66-67 (2d Cir. 2009), held that the record lacked proof that North Korea held a property interest in the blocked funds which could be attached. The Court of Appeals held that "the only party with a claim against an intermediary bank is the sender to that bank, which is typically the originator's bank." *Calderon-Cardona*, 770 F.3d at 1001. The Court of Appeals went on to state, and Respondents/Garnishees rely on this statement as the basis of their motion, "In the context of a blocked transaction, this means that the only entity with a property interest in the stopped EFT is the entity that passed the EFT on to the bank where

it presently rests. We therefore hold that an EFT blocked midstream is 'property of a foreign state' or 'the property of an agency or instrumentality of such a state,' subject to attachment under 28 U.S.C. § 1610(g), only where either the state itself or an agency or instrumentality thereof (such as a state-owned financial institution) transmitted the EFT directly to the bank where the EFT is held pursuant to the block." *Calderon-Cardona*, 770 F.3d at 1002.

The Court of Appeals then decided *Hausler* four days later, holding that the same test for attachment applies under TRIA §201(a). 770 F.3d at 212 (citing *Calderon-Cardona* at 1002).

### III.    The Phase I Accounts

As detailed above, all the Phase I accounts at issue in this motion were those "to which the Republic of Cuba, or one of its agencies or instrumentalities, is an originator or an originating bank", and to which no objections were filed during the notice procedure. (Dkt. No. 368 at 2-3; Dkt. No. 659 at 3-4.) Blocked assets that are related to EFTs "as to which the Republic of Cuba, or one of its agencies and instrumentalities, is a beneficiary or a beneficiary's bank", are "Phase II" assets, and are *not* currently at issue. (Dkt. No. 368 at 3.)

As detailed above, the parties and the Garnishee banks went through an extensive process concerning the Phase I assets to interplead any potential intermediaries between the originators—Cuba and its agencies or instrumentalities—and the banks currently holding the blocked funds. (*Id.* at 4-9.) For the accounts at issue in this motion, no objections were filed. (Dkt. No. 659 at 3-4.)

In the absence of objections, the blocked Phase I funds—funds all emanating from Cuba or a bank or instrumentality affiliated with Cuba—are available for execution by

8

judgment creditors against Cuba who became such in consequence of having lost a family member because of Cuban state-sponsored terrorism.

Clearly, those funds cannot be given back to their originator. Since the originator in all of the accounts at issue is undisputedly Cuba, directly or via a bank, or agency, or instrumentality directly or indirectly owned or controlled by Cuba, they remain as blocked funds. The banks holding those funds have no interest in them. Whatever their rights, property or otherwise, they are subordinate to the judgment creditors, Vera, Villoldo and Hausler, who, by act of Congress, gained the right to levy on them. *See* TRIA § 201. *Calderon-Cardona* and *Hausler* are not impediments to attachment of Phase I funds.

## IV.    Conclusion

For the foregoing reasons, I hold that the Second Circuit decisions in *Hausler* and *Calderon-Cardona* do not change the outcome of my previous order dated March 17, 2015.

The Garnishees' motion for reconsideration (Dkt. No. 740) is DENIED. The Garnishees shall promptly turn over all Phase I funds to which no claim has been asserted by a person or entity other than the Republic of Cuba, directly or through an affiliate, within ten days of the date of this Order, (a) either as directed in the Order dated March 17, 2015, or, (b) if the Garnishees seek an interlocutory appeal and stay of this order, to the Registry of the U.S. Courts for safekeeping and to avoid risk of diplomatic change affecting the judgment creditors.

The Clerk shall mark the motion (Dkt. No. 740) terminated.

SO ORDERED.

Dated:    May 7, 2015
         New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

9