# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALDO VERA, JR., as Personal Representative of the Estate of Aldo Vera, Sr.,<br><br>Plaintiff,<br><br>v.<br><br>THE REPUBLIC OF CUBA,<br><br>Defendant. | Case No. 12-CV-01596 (AKH) |
| ALDO VERA, JR., as Personal Representative of the Estate of Aldo Vera, Sr.; and<br><br>JEANETTE FULLER HAUSLER, and WILLIAM FULLER as court-appointed co-representatives of the ESTATE OF ROBERT OTIS FULLER, deceased, on behalf of all beneficiaries of the Estate and the ESTATE OF ROBERT OTIS FULLER; and<br><br>ALFREDO VILLOLDO, individually, and GUSTAVO E. VILLOLDO, individually and as Administrator, Executor, and Personal Representative of the ESTATE OF GUSTAVO VILLOLDO ARGILAGOS,<br><br>Petitioners,<br><br>v.<br><br>BANCO BILBAO VIZCAYA ARGENTARIA (S.A.); BANK OF AMERICA N.A.; BANK OF NEW YORK MELLON; BARCLAY'S BANK PLC; CITIBANK N.A.; CREDIT SUISSE AG, NEW YORK BRANCH; DEUTSCHE BANK TRUST COMPANY AMERICAS; HSBC BANK (HSBC BANK USA, N.A.); INTESA SANPAOLO S.P.A.; JP MORGAN CHASE BANK, N.A.; RBS CITIZENS, N.A.; ROYAL BANK OF CANADA; SOCIETE GENERALE; UBS AG; WELLS FARGO BANK, NA; BROWN BROTHERS HARRIMAN & CO.; MERCANTIL COMMERCEBANK, N.A.; STANDARD CHARTERED BANK; AND BANCO SANTANDER, S.A.,<br><br>Respondents/Garnishees. | **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

{10225/00402173.3}

HSBC BANK USA, N.A.,

    Garnishee-Respondent and Third-Party Petitioner,

v.

BANCO BILBAO VIZCAYA ARGENTARIA, S.A.,
BANCO INTERNACIONAL DE COMERCIO, S.A. AND
ING BANK FRANCE, SUCCURSALE DE ING BANK N.V.,

    Adverse Claimants-Respondents.

Pursuant to Federal Rule of Civil Procedure 56, Petitioners Aldo Vera, Jr. as Personal Representative of the Estate of Aldo Vera, Sr. ("Vera"), Jeanette Fuller Hausler and William Fuller as court-appointed co-representatives of the Estate of Robert Otis Fuller ("Hausler"), and Alfredo Villoldo and Gustavo Villoldo, individually and as Administrator, Executor and Personal Representative of the Estate of Gustavo Villoldo Argilagos ("Villoldos"), by their undersigned attorneys, respectfully request the Court enter summary judgment against Third-Party Petitioner, HSBC Bank USA N.A. ("HSBC"), and any other party served by HSBC's Interpleader Petition (Doc. No. 451) and require HSBC to forthwith turn over and transfer to the Vera, Hausler, and Villoldo Petitioners the $3,000,000 with accrued interest which was the subject of HSBC's Petition.

**FACTUAL BACKGROUND**

On March 12, 2014, HSBC initiated this interpleader to determine the rights of the named parties with respect to a Blocked Asset of $3 million that had been frozen during a May 2002 electronic funds transfer ("EFT") from one account of Banco Internacional de Comercio, S.A. ("BICSA") to another account of the same bank. Petitioners filed a turnover petition to require

the turnover of the $3 million EFT, with interest accrued during the 13 years after the freeze, and this interpleader followed.

The $3 million EFT was part of a larger illegal effort by Cuba to move several billion dollars through the U.S. banking system through subterfuge and, with the complicity of dozens of banks, including ING Bank, N.V. ("ING Bank") and ING Bank France, Succursale de ING Bank N.V. ("ING France"), to avoid U.S. sanctions. ING Bank and ING France, alone, illegally processed over $2 billion through the United States on behalf of Cuba and Iran.

Petitioners became aware of the facts regarding this particular Blocked Asset as a result of a Deferred Prosecution Agreement entered into between the United States and ING Bank. The Deferred Prosecution Agreement is attached as Exhibit "1" to the Declaration of Andrew C. Hall ("Hall Decl."), filed contemporaneously with this memorandum. In a one-count Criminal Information filed in the United States District Court for the District of Columbia, ING Bank was charged with conspiracy to violate (i) the International Emergency Economic Powers Act, 50 U.S.C. § 1705, and the sanctions-based regulations promulgated thereunder, and (ii) the Trading with the Enemy Act, 50 U.S.C. Appendix §§ 1-44, and the sanctions-based regulations promulgated thereunder. *See United States v. ING Bank, N.V.*, No. 1:12-cr-00136-PLF (D.D.C. June 12, 2012).

In the Deferred Prosecution Agreement, ING Bank agreed to accept and acknowledge responsibility for criminal conduct described in a stipulated Statement of Facts, forfeit a total of $619,000,000, demonstrate full compliance with sanctions regulations, and cooperate with the United States during the 18-month deferred prosecution period. On January 23, 2014, the Court dismissed the Criminal Information following the Government's representations in its motion to dismiss that ING Bank complied with the conditions of the Deferred Prosecution Agreement.

The stipulated Statement of Facts, detailing the criminal conduct admitted by ING Bank, are not open to contest. The Statement of Facts is attached to the Hall Decl. as Exhibit "2." The facts below regarding the $3 million EFT (hereinafter, the "Blocked Asset") are taken from the stipulated Statement of Facts.

Starting in the early 1990s, the Republic of Cuba, through BICSA and other Cuban government-owned banks, conspired with a number of banks, including ING Bank and ING France, to evade U.S. sanctions and process wire transfers for the Cuban government through the United States by knowingly and willfully concealing that the funds were property of Cuba. Beginning in 2000, the Republic of Cuba added HSBC to the conspiracy. ING Bank admitted to fraudulently manipulating wire detail information, using shell companies, and advising the Cuban government on how to conceal their involvement in U.S. dollar transactions. *See* Hall Decl., Exh. 2, at pp. 1-2.

This practice was routinely employed by Cuba in its dealings with ING France and its parent company ING Bank. The practice was reduced to a written directive. This mandate required ING France to "strip" the name of the Cuban entity off the wire details to avoid detection when routed through the U.S. The ING France written policy, titled "Procedure for payments in U.S.D. to Cuba," provided:

> OBJECTIVES OF THE PROCEDURE
> Reminder: The United States has imposed an embargo over, amongst other things, all movements of funds in favour of Cuban residents and Cuban banks.
>
> We have accounts on our books with Cuban banks, who entrust us with payments transactions from their account in U.S.D. ***In order to avoid these payment funds from being frozen by the United States, you must follow the following procedure.***

> Procedure
>
> We have opened a U.S.D account no 06915020001 on the books of [another financial institution] for U.S.D payments concerning Cuban banks, but payments should only be made to this bank where the ultimate Cuban beneficiary of the payments also has an account with [the other financial institution].
>
> For all other payments, a SWIFT MT103 must be sent to the bank (other than in the United States) which holds the beneficiary's account on its books, specifying in field 59 of the message the beneficiary bank or the beneficiary (name or SWIFT code) and indicating in field 54 the SWIFT code of the bank in the United States at which we are covering it.
>
> ***Under no circumstances should the covering message addressed to our correspondent bank in the United States contain the name and SWIFT code of a Cuban bank***, but only the SWIFT code of the bank to which we have addressed the payment.

See Hall Decl., Exhibit 2 at p. 19, ¶ 55-56 (emphasis added). By stripping this data, the information necessary to identify the funds as property of Cuba was effectively concealed in violation of U.S. law. Cuba, through ING France, was therefore able to freely transfer funds through the United States without any potential for blocking. The practice broke down with respect to the $3,000,000 Blocked Asset when ING France mistakenly kept BICSA's name on the wire details. That omission led to the blocking.

The scheme was later discovered by OFAC, state prosecutors in New York and the U.S. Justice Department. A criminal investigation resulted in the Criminal Information filed against ING Bank. In confessing to its criminal conduct as part of the Deferred Prosecution Agreement, ING Bank admitted the essential element of Petitioners' claim to the Blocked Asset – that it is property of Cuba. ING Bank stipulated to the following facts regarding the $3,000,000 Blocked Asset:

> As in Curacao, ING France processed U.S. dollar payments on behalf of Cuban entities. In 2002, a $3 million payment on behalf of a Cuban bank was blocked by another financial institution. Senior managers from ING France and headquarters in Amsterdam tried unsuccessfully to recover the funds. Meanwhile, they debated

> whether ING Bank or the Cuban bank should be liable for the loss. ***After personally meeting with senior representatives of the Cuban bank <u>and the Cuban Central Bank</u>, a senior internal lawyer at ING Groep in Amsterdam concluded that ING France was liable because it had contravened its prior practice of not mentioning "the name of the ultimate beneficiary" in SWIFT payment messages for the Cuban bank. In other words, ING France would bear the loss because it had failed to adhere to a general policy of deceiving other unaffiliated financial institutions in order to evade U.S. economic sanctions***.

*Id*. at pp. 18-19, ¶ 54 (emphasis added). The Cuban Central Bank is the Cuban government. It was created by Fidel Castro pursuant to Decree-Law No. 172, attached to the Hall Decl. as Exhibit "3." Article 35 of Decree-Law No. 172 provides that "[t]he President of Banco Central de Cuba is a Minister of the Government." *Id*. Accordingly, following the blocking of the $3 million transfer, ING France met with senior representatives of the Cuban government to determine who would be liable for the failed attempt to illegally wire the funds through the United States. The Cuban government blamed ING France for failing to adhere to the criminal conspiracy by mistakenly leaving BICSA on the wire details, and ING France agreed to accept responsibility. The only parties at this meeting were ING France, BICSA and the Cuban government. Thus, the only parties having any interest in this Blocked Asset have already acknowledged that the $3,000,000 in question was Cuba's money and was part of a scheme to avoid OFAC sanctions.

Although HSBC blocked the funds in this instance, HSBC is not without blame in the larger conspiracy with the Cuban government. In fact, in a similar Deferred Prosecution Agreement, HSBC admitted that, from 2000 to 2006, it illegally processed $30 million through the United States on behalf of Cuba. *See* Statement of Facts, p. 21, Exhibit A to Deferred Prosecution Agreement, attached to the Hall Decl. as Exhibit "4." The Blocked Asset at issue here was transferred in 2002, at a time when HSBC was engaging in the same conduct as ING France.

In its interpleader petition, HSBC failed to disclose the illegal nature of the transaction. It named ING France as an Adverse Claimant because "ING [France] alleged in a proceeding it filed previously against HSBC that it was required to indemnify BICSA in the full amount of the $3 million payment and that it is accordingly entitled to the funds in the Blocked Account in the event that HSBC is required to release the funds." Doc. No. 451 at ¶ 10. While HSBC failed to name the "proceeding" filed against it by ING France, this failure is of no consequence because, not surprisingly, ING France has not appeared in this case. If ING France had appeared, ING France would be forced to explain that its claim to the Blocked Asset is based on its failure to comply with the terms of its criminal conspiracy with Cuba. Moreover, there is no question that ING France was properly served. In fact, the law firm that accepted service of the interpleader petition on behalf of ING France, Sullivan & Cromwell, is the same firm that represented ING Bank in the criminal proceeding brought by the United States. *See* Doc. No. 521.

Given these stipulated facts, the Blocked Asset is property of Cuba. BICSA was both the originator and beneficiary. ING France acted as Cuba's agent with BICSA as a co-conspirator in routing the funds through HSBC. ING France's role was to manipulate the wire details to prevent authorities from recognizing that the Blocked Asset is property of Cuba. When U.S. law and the Uniform Commercial Code are misused to hide the parties to a wire transfer, the parties involved cannot take advantage of the *Hausler* and *Calderon* decisions. "One who by fraud succeeds in circumventing the law, and who thus secures advantages to which he is not entitled, violates the law." *Williams v. U.S. ex rel. Bougadis*, 186 F. 479, 481 (2d Cir. 1911). Any reading of *Hausler* and *Calderon* that would result in reimbursement to ING France would facilitate an unlawful conspiracy. In this Court's Order of May 8, 2014, the Court stated: "If, however, Cuba was the sender, the funds could not be returned, for the purpose of the block was

to sanction Cuba, and the funds would not be allowed to move to it, or to be returned to it, ***directly or through an agent***." See *Vera v. Republic of Cuba*, No. 12-cv-1596-AKH (S.D.N.Y. May 8, 2014) (Doc. No. 767) (emphasis added).

Finally, HSBC also served Banco Bilbao Vizcaya Argentina, S.A. ("BBVA") with the interpleader petition as a potentially interested party. BBVA appeared in the proceeding. It did not claim any interest in the Blocked Asset. Instead, it raised one defense, subject matter jurisdiction. This Court denied BBVA's jurisdictional argument (Doc. No. 666) and denied BBVA's motion for reconsideration (Doc. No. 676).

Accordingly, because there are no remaining valid objections to the turnover of the subject funds to Petitioners and because the Blocked Asset is property of Cuba through its agent BICSA, Petitioners respectfully request that the Court enter summary judgment in their favor and order the turnover of the blocked funds to Petitioners.

## THE PETITIONERS, BICSA, AND ENTITLEMENT TO TURNOVER

Petitioners are victims of terrorism and the heirs of victims of terrorism. The Villoldos, Hausler and Vera Petitioners each commenced actions in the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (the "Florida State Court"), against the Republic of Cuba for the extra-judicial killing of their decedents and the acts of terrorism and torture against them, pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 1605(a)(7), and 28 U.S.C. § 1605A. The Villoldos, Hausler and Vera each obtained judgments against the Republic of Cuba (the "Florida Judgments"). The Republic of Cuba has never appeared, defended or made any attempt to satisfy or otherwise acknowledge the three Florida Judgments against it. Petitioners' respective Florida Judgments were recognized and entered as New York Judgments, by registration and/or giving full faith and

credit to their Florida Judgments. The Vera Judgment is in the amount of $49,346,713.22. The Hausler judgment is in the amount of $100,000,000. The Villoldo judgment is in the amount of $2,903,233,898.07, plus interest. The Villoldo, Hausler and Vera judgments have not been fully satisfied. On August 22, 2014, this Court ruled that the three judgments "were each supported by appropriate findings of fact and conclusions of law based on full and fair evidentiary hearings." Doc. No. 666 at p. 16. Accordingly, the Court determined that each of the judgments was "entitled to full faith and credit." *Id*.

Pursuant to Section 201(a) of the Terrorism Risk Insurance Act ("TRIA") and Section 1610(g) of the Foreign Sovereign Immunities Act ("FSIA"), as judgment creditors of Cuba, Petitioners can execute on any property of Cuba or any agency or instrumentality of Cuba. TRIA § 201(a), 116 Stat. at 2337; 28 U.S.C. § 1610(g). The Blocked Asset is property of Cuba because Cuba used BICSA, its agent, to take advantage of the U.S. financial system. Indeed, Cuba directed its funds to be transferred through the United States using BICSA, and ING France assisted in a failed attempt to circumvent U.S. law and avoid blocking.

Even if the Blocked Asset was property of BICSA instead of Cuba, the Blocked Asset would still be subject to turnover because BICSA is an agency or instrumentality of Cuba. BICSA was created by the Cuban Government by Corporate Charter No. 49, of October 29, 1993, drawn up by the Special Notary's Office of the Cuban Ministry of Justice. *See* Affidavit of Prof. Jamie Suchlicki, attached to the Hall Decl. as Exhibit "5." The management of BICSA is composed of a President and several directors, who are appointed by the Cuban Government. *Id.* These individuals follow the directives of Cuba's Council of State and the Communist Party, the leading institutions of the Cuban government. *Id.* Employees of BICSA are hired and fired by Cuba's Ministry of Labor. *Id.* Previously, in the *Hausler* case, this Court (Marrero J.)

concluded that BICSA was a Cuban agency or instrumentality for purposes of attachment and execution under FSIA and TRIA. *See Hausler v. JPMorgan Chase Bank, N.A.*, 845 F.Supp.2d 553, 573-74 (S.D.N.Y. 2012), *rev'd and remanded Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207 (2d Cir. 2014) (reversed on grounds unrelated to the finding that BICSA was an agency or instrumentality of Cuba). In reaching this conclusion, the Court relied on the affidavit of Jaime Suchlicki, a Professor of History and Director of the Institute for Cuban and Cuban-American Studies at the University of Miami. Mr. Suchlicki's affidavit, filed in the *Hausler* case, details the history and purpose of BICSA as Cuban agencies. *See* Hall Decl., Exhibit 5. The Eleventh Circuit has similarly recognized that BICSA is an agency or instrumentality of the Cuban government. *See Alejandre v. Telefonica Larga Distancia de Puerto Rico, Inc,* 183 F.3d 1277, 1281 (11th Cir. 1999).

Petitioners can execute on any property of BICSA, an agency or instrumentality of Cuba. Section 201(a) of the TRIA provides that:

> Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent any compensatory damages for which such terrorist party has been adjudged liable.

TRIA § 201(a), 116 Stat. at 2337. The TRIA defines 'blocked asset' as "any asset seized or frozen by the United States under Section 5(b) of the Trading with the Enemy Act of 1917 (50 U.S.C. App § 5(b)) or under sections 202 and 203 of the International Emergency Powers Act (50 U.S.C. §§ 1701; 1702)." 15 U.S.C. § 1610 Note, TRIA § 201(d)(2) at 2340. The Blocked Asset at issue was frozen pursuant to the Cuban Asset Control Regulations, 31 C.F.R. § 515.201 et seq., which were promulgated pursuant to Section 5(b) of the Trading with the Enemy Act of

1917.  As such, it is an attachable "blocked asset" under the TRIA and subject to execution assuming the Blocked Asset is property of BICSA and not the Republic of Cuba.

Petitioners are also entitled to attachment and execution under Section 1610(g) of the Foreign Sovereign Immunities Act ("FSIA").  This section provides:

> [T]he property of a foreign state against which a judgment is entered under section 1605A, and the property of an agency or instrumentality of such a state, including property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity, is subject to attachment in aid of execution, and execution, upon that judgment as provided in this section, regardless of—
>
> (A) the level of economic control over the property by the government of the foreign state;
> (B) whether the profits of the property go to that government;
> (C) the degree to which officials of that government manage the property or otherwise control its daily affairs;
> (D) whether that government is the sole beneficiary in interest of the property; or
> (E) whether establishing the property as a separate entity would entitle the foreign state to benefits in United States courts while avoiding its obligations.

28 U.S.C. § 1610(g).[1]  The EFT at issue is a blocked asset of Cuba and/or BICSA, an agency or instrumentality of Cuba, and therefore Petitioners are entitled to turnover under 1610(g) as well.

## **THE ONLY OBJECTION TO TURNOVER HAS BEEN REJECTED BY THE COURT**

On February 12, 2014, Petitioners submitted their Amended Omnibus Petition for Turnover Order pursuant to Section 201 of the TRIA, Section 1610(g) of the FSIA, and N.Y. C.P.L.R. § 5225(b), made applicable trough Rule 69 of the Federal Rules of Civil Procedure.  On March 6, 2014, HSBC submitted its Answer to the Amended Omnibus Petition for Turnover Order.  On March 12, 2014, HSBC submitted a Third-Party Petition Alleging Claims in the Nature of Interpleader.  Doc. No. 451.  In its Third-Party Petition, HSBC sought to interplead the

---

[1] The Villoldo Petitioners obtained a judgment pursuant to Section 1605A and may therefore execute on the types of assets described in Section 1610(g).

Blocked Asset, consisting of the proceeds of the EFT in the amount of $3 million received by HSBC on or about May 21, 2002 from ING France.

HSBC served its interpleader petition on Petitioners, ING, BICSA, and BBVA. *See* Declaration of Robert Swift ("Swift Decl.") filed contemporaneously with this memorandum, at ¶ 4. As explained above and as admitted by ING Bank, ING France's claim to the Blocked Asset is derivative of its involvement in a criminal conspiracy with BICSA. Both ING France and BICSA were properly served and voluntarily chose not to appear to contest turnover. *Id.* On April 7, 2014, Petitioners submitted their Answer and Affirmative Defenses to HSBC's interpleader petition. Petitioners stated that they are entitled to full relief and recovery under the TRIA, FSIA and N.Y. C.P.L.R. § 5225, and that none of the Adverse Claimants has a superior claim to the Blocked Asset. On July 18, 2014, BBVA submitted its Answer to HSBC's interpleader petition. In its Answer, BBVA did not claim an interest in the Blocked Asset, but rather argued that the Court lacked subject matter jurisdiction over this action under the FSIA. This Court rejected BBVA's subject matter jurisdiction argument and affirmatively and conclusively found that it has subject matter jurisdiction. Doc. No. 666. The Court then denied BBVA's motion for reconsideration of that decision. Doc. No. 676. The Court rejected BBVA's subject matter jurisdiction argument for a third time on March 17, 2015. Doc. No. 739. The Court's ruling on subject matter jurisdiction is law of the case and binding precedent in this proceeding. *See Brentwood Pain & Rehab. Servs., P.C. v. Allstate Ins. Co.,* 508 F.Supp.2d 278, 288 (S.D.N.Y. 2007) ("Under the law of the case doctrine, a decision on an issue of law becomes binding precedent in subsequent stages of the same litigation.") (citing *In re PCH Assocs.,* 949 F.2d 585, 592 (2d Cir. 1991)). Accordingly, there are no valid objections to turnover.

## STANDARD OF REVIEW

Summary judgment should be granted where "there is no genuine issue as to any material fact [such] that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the movant must "'demonstrate the absence of a genuine issue of material fact. . . . The burden is then on the non-moving party to set forth specific facts raising a genuine issue of fact for trial.'" *United States ex rel. Romano v. N Y. Presbyterian*, 426 F. Supp. 2d 174, 177 (S.D.N.Y. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 324 (1986)).

## ARGUMENT

There is no genuine issue of material fact as to Petitioners' entitlement to the Blocked Asset in this interpleader proceeding. Petitioners are therefore entitled to summary judgment and an order turning the Blocked Asset over to Petitioners. There are no competing claims to the Blocked Asset. Since the time the funds were frozen, neither ING France nor BICSA nor BBVA has received a license from the Office of Foreign Assets Control for the release of the Blocked Asset. Moreover, despite being served with the interpleader petition, no claim to the funds has been made by ING, BICSA, or BBVA in this proceeding.

Pursuant to TRIA and FSIA, Petitioners are entitled to execute on the Blocked Asset because it is property of Cuba through its agent BICSA, which is itself a Cuban agency or instrumentality. In *Calderon-Cardona*, the Second Circuit determined which party to a blocked EFT has an interest sufficient to subject the blocked EFT to turnover under TRIA and FSIA. The Second Circuit ruled that "the only party with a claim against an intermediary bank is the sender to that bank, which is typically the originator's bank." *Calderon-Cardona v. Bank of New York Mellon*, 770 F.3d 993, 1001 (2d Cir. 2014) (citing *Asia Pulp*, 609 F.3d at 119-20, and UCC Perm. Ed. Bd. Comm. No. 16 §§ 4A-502(d)). Interpreting *Calderon-Cardona*, this Court

recognized that "[i]f, however, Cuba was the sender, the funds could not be returned, for the purpose of the block was to sanction Cuba, and the funds would not be allowed to move to it, or to be returned to it, ***directly* or *through an agent***." *Vera v. Republic of Cuba*, No. 12-cv-1596-AKH (S.D.N.Y. May 8, 2014) (Doc. No. 767) (emphasis added).

As explained above, ING France's role in the transfer of the Blocked Asset was to act as Cuba and BICSA's agent and co-conspirator and fraudulently conceal the identity of Cuba and BICSA. The only reason the Blocked Asset exists today is ING France's accidental failure to comply with the terms of its unlawful conspiracy with the Republic of Cuba. *Calderon-Cardona* does not contemplate the intentional falsification and manipulation of wire details to hide the true parties to the EFT. In this situation, the parties cannot take advantage of an interpretation of the UCC in *Calderon-Cardona* which is based on an assumption that the parties to an EFT have strictly complied with U.S. law and disclosure requirements. Any interpretation of *Calderon-Cardona* that would allow the funds to be returned to BICSA's confessed co-conspirator would essentially facilitate a fraud. Stripping away the fraudulent conduct reveals that the Blocked Asset is property of Cuba and/or BICSA and Petitioners are therefore entitled to execute on the Blocked Asset pursuant to TRIA and 28 U.S.C. § 1610(g).

WHEREFORE, Petitioners respectfully request that the Court grant their motion for summary judgment under Rule 56, determine the Blocked Asset to be property of Cuba and/or BICSA, a Cuban agency or instrumentality, and order the turnover of the Blocked Asset to Petitioners.

Dated: June 25, 2015

| | |
|---|---|
| HALL, LAMB & HALL, P.A.<br><br>By: /s Andrew C. Hall<br>　　Andrew C. Hall, Esq.*<br>　　Brandon R. Levitt, Esq.<br>　　Grand Bay Plaza, Penthouse One<br>　　2665 South Bayshore Drive<br>　　Miami, Florida, 33133<br>　　Phone: (305) 374-5030<br>　　Fax: (305) 374-5033<br>　　* admitted *pro hac vice*<br><br>*Attorneys for Alfredo Villoldo, individually, and Gustavo E. Villoldo, individually, and as Administrator, Executor, and Personal Representative of the Estate of Gustavo Villoldo Agrilagos* | KOHN, SWIFT & GRAF, P.C.<br><br>/s Robert A. Swift<br>Admitted *Pro Hac Vice*<br>One South Broad Street, Suite 2100<br>Philadelphia, Pennsylvania 19107<br>Phone: 215-238-1700<br>Fax: 215-238-1968<br><br>Jeffrey E. Glen<br>ANDERSON KILL P.C.<br>1251 Avenue of the Americas<br>New York, New York 10020<br>Phone: 212-278-1000<br>Fax:　　212-278-1733<br><br>*Attorneys for Petitioner Aldo Vera, Jr.*<br><br><br>COLSON, HICKS, EIDSON<br><br>/s Roberto Martinez<br>Roberto Martinez, Esq.*<br>Ronald W. Kleinman, Esq.<br>255 Alhambra Circle, Penthouse<br>Coral Gables, Florida, 33134<br>Phone: 305-476-7400<br>Fax: 305-476-7444<br>* admitted *pro hac vice*<br><br>*Attorneys for Petitioners Jeanette Fuller Hausler, and William Fuller as court-appointed co-representatives of the Estate of Robert Otis Fuller, deceased, on behalf of all beneficiaries of the Estate and the Estate of Robert Otis Fuller.* |