UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

───────────────────────────────────────

ALDO VERA, JR., as Personal Representative
of the Estate of Aldo Vera, Sr.,

        Plaintiff,

        v.                                          Case No.12-cv-1596 (AKH)

THE REPUBLIC OF CUBA,

        Defendant.

───────────────────────────────────────

**MEMORANDUM OF LAW IN OPPOSITION TO PETITIONERS' MOTION FOR SUMMARY JUDGMENT**

ALDO VERA, JR., as Personal Representative
of the Estate of Aldo Vera, Sr.*, et al.*,

        Petitioners,

        v.

BANCO BILBAO VIZCAYA ARGENTARIA (S.A.),
*et. al.*,

        Respondents/Garnishees.

───────────────────────────────────────

HSBC BANK USA, N.A.,

        Respondent/Garnishee and
        Stakeholder/Third-Party Petitioner,

        v.

BANCO BILBAO VIZCAYA ARGENTARIA, S.A.,
BANCO INTERNACIONAL DE COMERCIO, S.A., and
ING BANK FRANCE, SUCCURSALE
DE ING BANK N.V.,

        Third-Party Respondents/
        Adverse Claimants.

───────────────────────────────────────

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

PROCEDURAL BACKGROUND ............................................................................................ 2

RELEVANT FACTS ................................................................................................................. 4

ARGUMENT ............................................................................................................................. 4

POINT I   PETITIONER HAVE NOT MET THEIR BURDEN AND THEIR
          MOTION SHOULD BE DENIED ........................................................................ 4

          A.   Legal Standard ............................................................................................ 4

          B.   The Second Circuit's decisions in *Calderon-Cardona* and *Hausler* ......... 5

          C.   Application of *Calderon-Cardona* and *Hausler* to Petitioners' Motion.... 8

POINT II  AT A MINIMUM, THE COURT SHOULD REJECT PETITIONERS'
          PROPOSED ORDER ............................................................................................10

CONCLUSION ........................................................................................................................13

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Allen v. Coughlin*,
    64 F.3d 77 (2d Cir. 1995) .................................................................................................. 5

*Calderon-Cardona v. Bank of New York Mellon*,
    770 F.3d 993 (2d Cir. 2014) ................................................................................. 2,3,5,6,7,8,9

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ........................................................................................................... 4

*Export-Import Bank of U.S. v. Asia Pulp & Paper Co.*,
    609 F.3d 111 (2d Cir. 2010) ............................................................................................... 6

*F.D.I.C. v. Great Am. Ins. Co.*,
    607 F.3d 288 (2d Cir. 2010) ............................................................................................... 4

*Hausler v. JP Morgan Chase Bank, N.A.*,
    770 F.3d 207 (2d Cir. 2014) ................................................................................. 2,3,5,6,7,8,9

*Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*,
    585 F.3d 58 (2d Cir. 2009) ................................................................................................. 6

*Villoldo, et al. v. HSBC Bank USA, N.A., et al.*,
    Civil Case No. 15-cv-0496 ................................................................................................ 11

### Statutes

Fed. R. Civ. P. 56(c) ................................................................................................................... 4

Rule 69 of the Federal Rules of Civil Procedure ....................................................................... 2

Section 1610(g) of the Foreign Sovereign Immunities Act ........................................ 1,2,4,5,6,8,10,11

FRE 402 .................................................................................................................................... 11

N.Y. C.P.L.R. §5225(b) ............................................................................................................. 2

Section 201(a) of the Terrorism Risk Insurance Act of 2002 (codified at 28
    U.S.C. §1610 note) ............................................................................................. 1,4,7,10,11

### Other Authorities

31 C.F.R., Part 515 ............................................................................................................ 1,2,9,10

**PRELIMINARY STATEMENT**

Respondent/Garnishee and Stakeholder/Third-Party Petitioner, HSBC Bank USA, N.A. ("HSBC"), respectfully submits this memorandum of law in opposition to Petitioners' motion for summary judgment (Dkt. Nos. 795-798) (the "Motion").

Petitioners' Motion seeks an order requiring HSBC to turn over the proceeds of an electronic funds transfer ("EFT") that HSBC blocked pursuant to the Cuban Assets Control Regulations of the Office of Foreign Assets Control ("OFAC"), 31 C.F.R., Part 515 ("CACRs"). The proceeds of that blocked EFT are held in an account at HSBC (the "Blocked Account") and are the subject of HSBC's Third-Party Petition Alleging Claims in the Nature of Interpleader (the "Interpleader Petition") (Dkt. No. 451).

As set forth in the Interpleader Petition, HSBC's position in this proceeding is that of a stakeholder. It makes no claim to the proceeds of the Blocked Account and its only interest is to protect itself from liability that might result if it were required to turn over funds to which Petitioners are not legally entitled. In that regard, the question of whether Petitioners are entitled to the relief requested in their Motion depends on whether Section 201(a) of the Terrorism Risk Insurance Act of 2002 (codified at 28 U.S.C. §1610 note) ("TRIA") and Section 1610(g) of the Foreign Sovereign Immunities Act (codified at 28 U.S.C.) ("FSIA") authorize judgment creditors like Petitioners to execute against the proceeds of an EFT that was blocked midstream pursuant to OFAC's sanctions regulations. When applying the well-settled jurisprudence governing a movant's burden under Fed. R. Civ. P. 56, and the controlling legal standard set forth in the Second Circuit's decisions in

*Calderon-Cardona* and *Hausler*[1], the answer to that question is "no". Accordingly, Petitioners' Motion should be denied.

## PROCEDURAL BACKGROUND

This judgment enforcement proceeding was commenced on September 9, 2013 by the filing of an Omnibus Petition for Turnover Order ("Petition") against more than a dozen Garnishees/Respondents, including HSBC. Dkt. No. 298. In their Petition, Petitioners seek to satisfy a judgment against the Republic of Cuba by attaching certain assets that were blocked by HSBC and other Garnishee Banks pursuant to the CACRs. *Id.* As support for their claims, Petitioners expressly rely on Section 201 of TRIA and Section 1610 of the FSIA. Dkt. No. 298 ¶1 ("This is a proceeding pursuant to Section 201 of [TRIA], Section 1610(g) of the [FSIA], and N.Y. C.P.L.R. §5225(b), made applicable through Rule 69 of the Federal Rules of Civil Procedure.")

On December 9, 2013, the Court entered an Order with Respect to Giving Notice of Turnover Proceeding (Dkt. No. 368) (the "Notice Order"), which adopted a phased approach to this proceeding. The Notice Order also established a procedure for notifying, or commencing interpleader proceedings and joining, potential adverse claimants who may seek to claim an interest in the blocked EFTs at issue in this proceeding, including the EFT underlying the Blocked Account. *See* Notice Order.

Thereafter, on February 12, 2014, Petitioners amended their Petition to include separate schedules identifying "Phase I Blocked Assets" and "Phase II Blocked Assets" (Dkt. No. 423) (the "Amended Petition"). Among the Phase I Blocked Assets

---

[1] *See Calderon-Cardona v. Bank of New York Mellon*, 770 F.3d 993 (2d Cir. 2014) ("*Calderon-Cardona*"); *Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207 (2d Cir. 2014) ("*Hausler*").

identified in the Amended Petition is the EFT underlying the Blocked Account.  Dkt. No. 423-8.

Filing of the Amended Petition triggered HSBC's time to commence an interpleader proceeding against potential adverse claimants to the Blocked Account.  *See* Notice Order ¶8.  And, in accordance with the Notice Order, HSBC filed and served its Interpleader Petition against Petitioners, Banco Bilbao Vizcaya Argentaria, S.A. ("BBVA"), Banco Internacional de Comercio, S.A. ("BICSA"), and ING Bank France, Succursale de ING Bank N.V. ("ING" and collectively with BBVA and BICSA, the "Adverse Claimants").

Through its Interpleader Petition, HSBC seeks a judicial determination of which, if any, of Petitioners or Adverse Claimants is entitled to the funds in the Blocked Account.  Dkt. No. 451.  HSBC also seeks a discharge of liability in respect of the Blocked Account.  *Id.*

After the Interpleader Petition was filed and served, the Second Circuit issued its decisions in *Calderon-Cardona* and *Hausler*.  There, the Second Circuit held that a blocked EFT (such as the one at issue in this Motion) is subject to turnover under TRIA and FSIA "only where either the state itself or an agency or instrumentality thereof (such as a state-owned financial institution) *transmitted the EFT directly to the bank where the EFT is held pursuant to the block*."  *Hausler*, 770 F.3d at 212 (quoting *Calderon-Cardona*, 770 F.3d at 1002) (internal quotation marks omitted) (emphasis added).

Although HSBC has provided Petitioners with indisputable proof that it did not receive the EFT underlying the Blocked Account directly from Cuba or an agency or

- 3 -

instrumentality thereof,[2] Petitioners nonetheless filed their Motion and seek an Order requiring HSBC to turn the funds in the Blocked Account over to them. Dkt. Nos. 795-798.

## RELEVANT FACTS

The relevant facts are straight forward and are not in dispute: Petitioners seek an order requiring HSBC to turn the funds in the Blocked Account over to them pursuant to Section 201(a) of TRIA and Section 1610(g) of the FSIA. *See, e.g.,* Dkt. No. 796 p. 13 ("Pursuant to TRIA and FSIA, Petitioners are entitled to execute on the Blocked Asset"). However, the entity that transmitted the EFT underlying the Blocked Account directly to HSBC was HSBC Bank plc, a foreign banking institution organized under the laws of the United Kingdom - - not an agency or instrumentality of Cuba. *See* accompanying Declaration of Robert Catalano dated July 8, 2015 ("Catalano Dec.") ¶¶7-8; Ex. A.

## ARGUMENT

## POINT I

### PETITIONER HAVE NOT MET THEIR BURDEN AND THEIR MOTION SHOULD BE DENIED

**A.   Legal Standard**

To prevail on a motion for summary judgment, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact *and that the moving party is entitled to a judgment as a matter of law.*" Fed. R. Civ. P. 56(c) (emphasis added). It is well-settled that the movant bears this heavy burden. *F.D.I.C. v. Great Am. Ins. Co.,* 607 F.3d 288, 292 (2d Cir. 2010) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). Naturally, if the burden is not met, the motion must be denied. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) ("a

---

[2] *See, e.g.,* Dkt. No. 423-8.

party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying [the evidence] which it believes demonstrate the absence of a genuine issue of material fact"). Finally, the Court must "view the evidence in the light most favorable to the non-moving party, and may grant summary judgment only when no reasonable trier of fact could find in favor of the non-moving party." *Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir. 1995) (citation omitted).

Here, as discussed more fully below, Petitioners cannot meet their burden as a matter of law and their Motion should be denied.

**B.     The Second Circuit's decisions in *Calderon-Cardona* and *Hausler***

In *Calderon-Cardona v. Bank of New York Mellon,* 770 F.3d 993 (2d Cir. 2014), the petitioners sought to enforce a judgment obtained against the Democratic People's Republic of Korea by attaching EFTs that were blocked pursuant to OFAC sanctions regimes imposed upon North Korea. The District Court denied the petitions for turnover, concluding that the petitioners failed to demonstrate entitlement to relief under TRIA § 201 and FSIA § 1610(g) because, among other reasons, the blocked assets held by the respondent banks were not "owned by" North Korea for purposes of TRIA § 201 and FSIA § 1610(g). *Id.* at 997.

On appeal, the Second Circuit stated "[w]hether attachment of the EFTs under FSIA § 1610(g) is possible turns [ ] on whether the blocked EFTs at issue are 'property of' North Korea or 'the property of an agency or instrumentality of' North Korea." *Id.* at 1000.[3] In concluding that the blocked EFTs were not, the Second Circuit

---

[3] In *Calderon-Cardona,* the Second Circuit did not address the property aspect of Section 201 of TRIA, as the petitioners' claims under TRIA § 201 were disposed of on the ground that North Korea was no longer designated as a state sponsor of terrorism at the time the petitioners' judgment was entered. *Calderon-Cardona,* 770 F.3d at 1000.

- 5 -

construed Section 1610(g) of the FSIA as merely "provid[ing] that 'property' of a foreign state is subject to execution, and absent any indication that Congress intended a special definition of the term, 'property' interests are ordinarily those created and defined by state law." *Id*. at 1001. Then, relying on its prior decisions in *Export-Import Bank of U.S. v. Asia Pulp & Paper Co.*, 609 F.3d 111 (2d Cir. 2010) and *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009), the Second Circuit determined that Article 4A of the New York Uniform Commercial Code ("U.C.C.") governs who has a property interest in an EFT blocked midstream. *Id.* Finally, applying New York's U.C.C., the Second Circuit held, "the only entity with a property interest in the stopped EFT is the entity that passed the EFT onto the bank where it presently rests. *Id.* As a result:

> an EFT blocked midstream is "property of a foreign state" or "the property of an agency or instrumentality of such a state," subject to attachment under 28 U.S.C. §1610(g), ***only*** where either the state itself or an agency or instrumentality thereof (such as a state-owned financial institution) transmitted the EFT ***directly to*** the bank where the EFT is held pursuant to the block.

*Id.* (emphasis added). Because the District Court's opinion was issued prior to discovery, the Second Circuit remanded the matter in order for the parties to conduct discovery aimed at resolving the factual issues surrounding whether the entities that directly transmitted the EFTs to the respondent banks that blocked them were agencies or instrumentalities of North Korea. *Id.* at 1002.

Just four days later, the Second Circuit issued its decision in *Hausler v. JP Morgan Chase Bank, N.A.,* 770 F.3d 207 (2d Cir. 2014). In *Hausler,* the petitioners, who were

family members or trustees of the estates of victims of state-sponsored terrorism,[4] sought to enforce a judgment they obtained against the Republic of Cuba by attaching blocked EFTs pursuant to TRIA § 201. *Id*. at 210. The respondent-garnishee banks that blocked the EFTs opposed their turnover arguing, among other things, that Cuba had no property interest in the EFTs. *Id*. at 210-11. The District Court rejected the garnishee banks' argument and held that TRIA preempted state law with respect to which entities had a property interest in mid-stream EFTs. *Id*. at 211. The District Court then held that Cuba had a sufficient property interest in the EFTs for the petitioners to execute upon. *Id*.

On appeal, consistent with its opinion in *Calderon-Cardona*, the Second Circuit disagreed with the District Court and held that state law governs whether an EFT is subject to attachment or execution under Section 201(a) of TRIA. The Second Circuit then held that:

> in order for an EFT to be a "blocked asset of" [a terrorist party] under TRIA § 201(a), either [the terrorist party] "itself or an agency or instrumentality thereof (such as a state-owned financial institution) [must have] transmitted the EFT ***directly*** to the bank where the EFT is held pursuant to the block."

*Hausler,* 770 F.3d at 212 (*quoting Calderon-Cardona,* 770 F.3d at 1002 (emphasis added). The Second Circuit thus reversed the grant of summary judgment in favor of the *Hausler* petitioners on two of their petitions for turnover because it was "undisputed that no Cuban entity transmitted any of the blocked EFTs in this case directly to the blocking bank." *Id.*

---

[4] The Hauslers are also among the Petitioners in this proceeding. *See* Dkt. No. 323 p. 1 ("[Vera] and the plaintiffs in *Villoldo* and *Hausler* have since reached an agreement to divide among them whatever funds that they recover from the banks.")

C.       **Application of *Calderon-Cardona* and *Hausler* to Petitioners' Motion**

As in *Calderon-Cardona* and *Hausler*, Petitioners here seek to attach the Blocked Account under Section 201 of TRIA and Section 1610(g) of the FSIA. *See, e.g.*, Dkt. No. 796 p. 13. In support of their Motion, Petitioners argue that there "is no genuine issue of material fact as to [their] entitlement to the Blocked Asset in this interpleader proceeding" because "neither ING France nor BICSA nor BBVA has received a license from [OFAC]" and because "despite being served with the [HSBC] [I]nterpleader [P]etition, no claim to the funds has been made by ING, BICSA, or BBVA in this proceeding." *Id.*

Of course, this is not the controlling standard. Rather, under *Calderon-Cardona* and *Hausler*, a blocked EFT is subject to attachment as property of a foreign state judgment debtor "*only* where either the state itself or an agency or instrumentality thereof (such as a state-owned financial institution) transmitted the EFT *directly to the bank where the EFT is held* pursuant to the block." *Calderon-Cardona v. Bank of New York Mellon*, 770 F.3d 993, 1002 (2d Cir. 2014) (emphasis added); *Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207, 212 (2d Cir. 2014). Therefore, whether or not ING, BICSA or BBVA made a claim to the funds in the Blocked Account is of no moment.

Likely recognizing that they are unable to meet their heavy burden, Petitioners seek to avoid it altogether by inventing a new standard and arguing that ING acted "as Cuba and BICSA's agent and co-conspirator" whose role in the alleged conspiracy was to "fraudulently conceal the identity of Cuba and BICSA" with respect to the EFT underlying the Blocked Account. *Id.* p.14. Grasping at straws, Petitioners next argue that "*Calderon-Cardona* does not contemplate the intentional falsification and manipulation of wire details to hide the true parties to the EFT." *Id.* According to Petitioners, "[i]n this

situation, the parties cannot take advantage of an interpretation of the UCC in *Calderon-Cardona* which is based on an assumption that the parties to an EFT have strictly complied with U.S. law and disclosure requirements." *Id.* Petitioners then leap to the unsupported conclusion that this alleged conspiracy somehow transforms the Blocked Account into "property of Cuba and/or BICSA," which they can execute on pursuant to TRIA and FSIA. *Id.*

Although unclear, Petitioners appear to be arguing that the Blocked Account qualifies as property of Cuba because ING allegedly conspired with Cuba to conceal the identities of the parties to the EFT underlying the Blocked Account. Petitioners' strained argument fails to account for (among other things) the undisputed fact that the very EFT at issue in their Motion *was blocked* by HSBC in accordance with the CACRs.[5] Therefore, Petitioners' attempt to distinguish the Second Circuit's holding in *Calderon-Cardona* is unavailing.[6]

Notwithstanding Petitioners' arguments to the contrary, the only relevant standard is the controlling one set forth by the Second Circuit, under which a blocked EFT is subject to execution "only" if it was transmitted directly to the Garnishee Bank by the judgment debtor or an agency or instrumentality thereof. *See Calderon-Cardona*, 770 F.3d at 1002; *Hausler*, 770 F.3d at 212.

Here, it is undisputed that the funds in the Blocked Account were not transmitted directly to HSBC by Cuba or an agency or instrumentality of Cuba. *See*

---

[5] Curiously, Petitioners acknowledge as much in their Motion. *See* Dkt. No. 796 p. 6 ("HSBC blocked the funds in this instance"); p. 14 ("The only reason the Blocked Asset exists today is ING France's accidental failure to comply with the terms of its unlawful conspiracy with the Republic of Cuba.")

[6] Petitioner's additional argument that "allow[ing] the funds to be returned to BICSA's confessed co-conspirator would essentially facilitate a fraud" (*see* Dkt. No. 796 p. 14) also fails to account for the relevant provisions of the CACRs. Indeed, absent a license from OFAC, the funds in the Blocked Account cannot "be returned" to ING or BICSA.

accompanying Declaration of Robert Catalano dated July 8, 2015 ("Catalano Dec.") ¶8 ("the funds in the Blocked Account were transmitted to HSBC by HSBC Bank plc, a foreign banking institution organized under the laws of the United Kingdom – not an agency or instrumentality of Cuba.")  Those funds, therefore, are not "property of a foreign state" (or "an agency or instrumentality of such a state"), and are not subject to attachment under 28 U.S.C. §1610(g).  For the same reason, those funds are not "blocked asset[s] of" Cuba for purposes of TRIA §201(a) and are not subject to attachment.  Accordingly, Petitioners' Motion should be denied.

## POINT II

### AT A MINIMUM, THE COURT SHOULD REJECT PETITIONERS' PROPOSED ORDER

In the proposed order submitted with their Motion (Dkt. No. 795-1) (the "Proposed Order"), Petitioners ask this Court to make certain "findings of fact" and "conclusions of law" that are well beyond the scope of this garnishment proceeding.  Thus, even if this Court is inclined to grant Petitioners' Motion (again, for the reasons set forth above, it should not), Petitioners' Proposed Order should be rejected for a number of reasons.

First, the Proposed Order is replete with conclusory and irrelevant allegations of "conspiracy."  Among these allegations is Petitioners' contention that "[b]eginning in 2000, the Republic of Cuba added HSBC to the conspiracy."  Dkt. No 795-1 p. 3.  As support, Petitioners rely upon a 2012 deferred prosecution agreement (Dkt. No. 797-4) (the "DPA").  Nowhere in the DPA is it even alleged, let alone admitted, that HSBC entered into a conspiracy with Cuba.  *Id.*

Moreover, these purported "facts" have no place in this garnishment proceeding. Indeed, there is no dispute that the EFT underlying the Blocked Account was blocked by HSBC in compliance with the CACRs. It is also undisputed that the entity which transmitted the EFT directly to HSBC was HSBC Bank plc - - not Cuba or an agency or instrumentality of Cuba. Catalano Dec. ¶¶7-8; Ex. A. These are the only facts that are truly relevant to Petitioners' Motion.

Because HSBC's alleged actions in respect to other transactions are irrelevant to a determination of the Interpleader Petition and this Motion, the DPA is inadmissible. *See* FRE 402 ("Irrelevant evidence is not admissible.") Accordingly, there is neither an evidentiary foundation, nor any legal basis, to elevate Petitioners' unsupported rhetoric to "findings of fact" from which "conclusion of law" can be drawn.[7]

Next, contrary to the Court's Notice Order, Petitioners' Proposed Order contains no provisions discharging HSBC from liability in respect of the Blocked Account. More specifically, the Notice Order provides, in relevant part:

> Each Respondent Bank[8] that has complied with either the Notice or Interpleader requirements set forth in this Order ***shall be*** entitled to a judgment of discharge pursuant to Rule 54(b) of the Federal Rules of Civil Procedure from any further liability in respect of all amounts subject to orders of turnover and turned over to or for the account of Petitioners pursuant to Section 201(a) of TRIA or Section 1610(g) of the FSIA.

Notice Order ¶12 (emphasis added).

---

[7] Petitioners' submission of these purported "findings of fact" and "conclusions of law" appears to be an attempt to end run the dispositive arguments raised in HSBC's motion to dismiss the nearly identical allegations raised in a proceeding currently pending before this Court, which was commenced by the same attorney advancing those arguments here and in which certain of the same petitioners have purported to bring a treble damage civil RICO claim against HSBC for allegedly not blocking other alleged Cuban funds transfers. *See Villoldo, et al. v. HSBC Bank USA, N.A., et al.,* Civil Case No. 15-cv-0496, Dkt. Nos. 11, 12, 18.

[8] The Notice Order's definition of "Respondent Banks" expressly includes HSBC. *See* Notice Order p. 2.

As Petitioners acknowledge in their Motion, HSBC complied with the Notice Order's Interpleader requirements by filing and serving the Interpleader Petition.  *See* Dkt. No. 798, ¶4 ("Pursuant to this Court's Order with Respect to Giving Notice of Turnover Proceeding, as amended, HSBC made service of the Interpleader Complaint on BICSA, BBVA and ING").  *See also* Dkt. Nos. 451, 459, 521, 633.  Therefore, under the express terms of this Court's Notice Order, HSBC is entitled to a discharge of liability if it is ordered to turn over the funds in the Blocked Account.

For any or all of these reasons, in the event the Court grants the Motion (despite Petitioners' failure to establish a *prima facie* case), the Court should reject Petitioners' Proposed Order and enter an Order and Judgment in the form attached as Exhibit A to the accompanying Declaration of Sean C. McPhee, Esq. dated July 13, 2015, which is consistent with the relevant provisions of the Notice Order and the Court's Order and Judgment for Turnover of Specified Uncontested Phase I Accounts (Dkt. No. 739-1) (the "Prior Turnover Order").

## **CONCLUSION**

For the foregoing reasons, the Court should deny Petitioners' Motion. At a minimum, if the Court is inclined to grant Petitioners' Motion, it should reject Petitioners' Proposed Order and enter an Order and Judgment discharging HSBC from any liability in respect of the Blocked Account, consistent with the terms of the Court's Notice Order and the Court's Prior Turnover Order.

Dated:  July 13, 2015

PHILLIPS LYTLE LLP


By: */s/ Sean C. McPhee*
       Sean C. McPhee
Attorneys for Respondent/Garnishee and Stakeholder/Third-Party Petitioner
*HSBC Bank USA, N.A.*
The New York Times Building
620 Eighth Avenue, 23rd Floor
New York, New York   10018-1405
Telephone No. (212) 759-4888
smcphee@phillipslytle.com


Doc #01-2872133.1