UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALDO VERA, JR., as Personal Representative of the Estate of Aldo Vera, Sr.,<br><br>               Plaintiff,<br><br>v.<br><br>THE REPUBLIC OF CUBA,<br><br>               Defendant. | Case No. 12-CV-01596 (AKH) |
| ALDO VERA, JR., as Personal Representative of the Estate of Aldo Vera, Sr., et al.,<br><br>               Petitioners,<br><br>v.<br><br>BANCO BILBAO VIZCAYA ARGENTINA (S.A.), et al.,<br><br>               Respondents/Garnishees. | **DECLARATION OF CRAIG T. CAGNEY CONCERNING SERVICE OF THE SUMMONS AND THIRD-PARTY PETITION ALLEGING CLAIMS IN THE NATURE OF INTERPLEADER FILED BY CREDIT SUISSE AG, NEW YORK BRANCH** |
| CREDIT SUISSE AG, NEW YORK BRANCH,<br><br>               Respondent/Garnishee and Third-Party Petitioner,<br><br>v.<br><br>ACINOX S.A., et al.<br><br>               Adverse Claimants-Respondents. | |

CRAIG T. CAGNEY, pursuant to 28 U.S.C. § 1746, hereby declares on information and belief as follows:

1.  I am an associate with the firm of Davis Polk & Wardwell LLP, attorneys in this proceeding for Respondent/Garnishee and Third-Party Petitioner Credit Suisse AG New York Branch ("Credit Suisse").

2.  In the Amended Omnibus Petition for Turnover Order (Dkt. No. 423) (the "Amended Petition"), Petitioners seek a turnover order with respect to certain interest-bearing accounts on the books of the Respondents/Garnishees (the "blocked accounts") that hold the proceeds of electronic funds transfers ("EFTs") blocked pursuant to the Cuban Assets Control Regulations, 31 C.F.R. pt. 515 (the "CACRs"). Petitioners allege that the Republic of Cuba has an interest in these funds and that they are entitled to execute against these funds to satisfy their judgments against Cuba. Respondents/Garnishees, however, had reason to believe that there were other potential claimants to the blocked accounts, including the originators, originating banks, and prior intermediary banks of the EFTs, who may be neither the Republic of Cuba nor one of its agencies or instrumentalities. The existence of other potential claimants exposed the Respondents/Garnishees to the risk of multiple and inconsistent liability.

3.  To resolve these concerns, this Court issued the Order with Respect to Giving Notice of Turnover Proceeding on December 9, 2013 (Dkt. No. 368) ("Notice Order"), which was subsequently amended by the Notice Order for Turnover Proceeding entered March 26, 2014 (Dkt. No. 457), setting forth procedures for EFTs in which the Republic of Cuba or one of its agencies or instrumentalities was alleged to be the originator or the originating bank (the "Phase I Accounts"). Among other things, the Notice Order granted leave to

2

Respondents/Garnishees to file a third-party petition alleging claims in the nature of interpleader with respect of the Phase I Accounts valued at $59,500 or more (the "Interpleader Accounts").

4.   On April 10, 2014, Credit Suisse filed a Third-Party Petition Alleging Claims in the Nature of Interpleader (Dkt. No. 483) (the "Third-Party Petition") and a Request for Summons on a Third-Party Complaint (Dkt. No. 484) for each potential claimant to the Interpleader Accounts held on its books. On April 24, 2014, the Clerk's Office issued the corresponding Summons on a Third-Party Complaint (Dkt. No. 526) (the "Summons").

5.   Because some of the Adverse Claimants-Respondents were located in the Republic of Cuba, Credit Suisse had to have the Summons and Third-Party Petition translated into Spanish, the official language of that country. The translations are attached hereto as Exhibit 1.

6.   Pursuant to the Notice Order, Credit Suisse initiated service of the Summons and Third-Party Petition by April 24, 2014 in the manners described below. Attached hereto as Exhibit 2 is an index identifying each Adverse Claimant-Respondent, the corresponding exhibit containing the documentation evidencing the completion of service, and the date on which service was completed. The supporting documentation is attached as Exhibits 3 through 4.

7.   Adverse Claimants-Respondents located in the Republic of Cuba were served via DHL Worldwide Express, with the assistance of the Clerk's Office, pursuant to section 1608(b)(3)(B) of the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1608(b)(3)(B). Section 1608(b)(3)(B) is applicable because there was neither a special arrangement for service of process between the plaintiff and any of the alleged agencies or instrumentalities, 28 U.S.C. § 1608(b)(1), nor any agent authorized by appointment or by law to receive service of process in the United States, nor any applicable international convention on service of judicial documents

within the Republic of Cuba, id. § 1608(b)(2). The service packages sent via DHL included English copies of the Summons and Third-Party Petitions, Spanish translations of the same, certifications of those translations, an English copy of the Amended Petition, and a Spanish translation of the same.

8. Credit Suisse's efforts to serve Adverse Claimant-Respondent ACINOX S.A. are summarized in Exhibit 2 and documented in Exhibit 3.

9. On April 24, 2014, Credit Suisse initiated service on ACINOX S.A. at the address in the Republic of Colombia described in the Third-Party Petition. Because the Republic of Colombia is a signatory to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"), service was attempted via Process Forwarding International ("PFI") pursuant to the Hague Convention. PFI is a subsidiary of ABC Legal Services and the designated central authority for the United States under Article II of the Hague Convention. The service package sent via PFI contained English copies of the Summons and Third-Party Petition, Spanish translations of the same, and a certification of those translations. As of the date hereof, however, neither PFI nor the undersigned has received confirmation from Colombian authorities that service was completed.

10. After filing the Third-Party Petition and initiating service on ACINOX S.A. at the address in the Republic of Colombia, Credit Suisse learned that the Colombian entity described in the Third-Party Petition may not have been the proper party to the EFT. Rather, the EFT party may have been a different corporate entity by the same name organized under the laws of the Republic of Cuba.

11. On June 17, 2014, Credit Suisse initiated service on ACINOX, S.A. at an address in Cuba via DHL Worldwide Express, with the assistance of the Clerk's Office, pursuant to 28

U.S.C. § 1608(b)(3)(B). The package could not be delivered at that address, however, and was returned. On July 31, 2014, Credit Suisse initiated service on ACINOX S.A. at an alternative address in Cuba, again via DHL Worldwide Express, with the assistance of the Clerk's Office, pursuant to 28 U.S.C. § 1608(b)(3)(B). According to the tracking sheet for the package, it arrived at DHL's sorting facility in Havana, Cuba on August 7, 2014. On October 2, 2014, DHL informed the undersigned by telephone that the service package had been delivered, but DHL was unable to provide any proof of delivery. Because service on ACINOX, S.A. could not be confirmed within four months, service was also attempted by alternative means pursuant to Paragraph 10(c) of the Notice Order. Specifically, service was attempted by email to various addresses associated with ACINOX S.A. pursuant to Paragraph 5(b) of the Notice Order. As documented in Exhibit 3, all of the emails were returned as undeliverable except for two messages sent to director@acingeconst.co.cu and acinav@colombus.cu.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on: October 30, 2015

_____
Craig T. Cagney