## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

ALDO VERA, JR., as Personal Representative of the
Estate of Aldo Vera, Sr.,

        Plaintiff,

v.

THE REPUBLIC OF CUBA,

        Defendant.

Case No. 12-CV-01596
(AKH)

---

ALDO VERA, JR., as Personal Representative of the
Estate of Aldo Vera, Sr.; and

JEANETTE FULLER HAUSLER, and WILLIAM
FULLER as court-appointed co-representatives of the
ESTATE OF ROBERT OTIS FULLER, deceased, on
behalf of all beneficiaries of the Estate and the ESTATE
OF ROBERT OTIS FULLER; and

ALFREDO VILLOLDO, individually, and GUSTAVO
E. VILLOLDO, individually and as Administrator,
Executor, and Personal Representative of the ESTATE
OF GUSTAVO VILLOLDO ARGILAGOS,

        Petitioners,

v.

BANCO BILBAO VIZCAYA ARGENTARIA (S.A.);
BANK OF AMERICA N.A.; BANK OF NEW YORK
MELLON; BARCLAY'S BANK PLC; CITIBANK
N.A.; CREDIT SUISSE AG, NEW YORK BRANCH;
DEUTSCHE BANK TRUST COMPANY
AMERICAS; HSBC BANK (HSBC BANK USA,
N.A.); INTESA SANPAOLO S.P.A.; JP MORGAN
CHASE BANK, N.A.; RBS CITIZENS, N.A.; ROYAL
BANK OF CANADA; SOCIETE GENERALE; UBS
AG; WELLS FARGO BANK, NA; BROWN
BROTHERS HARRIMAN & CO.; MERCANTIL
COMMERCEBANK, N.A.; STANDARD
CHARTERED BANK; AND BANCO SANTANDER,
S.A.,

        Respondents/Garnishees.

**[PROPOSED] ORDER AND
JUDGMENT CONCERNING
TURNOVER OF FUNDS HELD AT
THE BANK OF NEW YORK
MELLON**



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/15/15

BANK OF AMERICA, N.A.

      Garnishee-Respondent and Third-Party
      Petitioner,

v.

[ ] *et al,*

      Adverse Claimants-Respondents.

**(Captions continued on next page)**

   WHEREAS, Petitioners Vera, Villoldo, and Hausler each commenced separate actions in the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (the "Florida State Court") pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 1605(a)(7) (Hausler and Vera) and 28 U.S.C. § 1605A (Villoldo), against the Republic of Cuba for the extra-judicial killing of their respective decedents and/or the acts of terrorism and torture against them;

   WHEREAS, on May 15, 2008, the Vera Petitioners obtained a judgment against Cuba from the Florida State Court for $95,579,591.22 pursuant to 28 U.S.C. § 1605(a)(7) (the "Vera Florida Judgment");

   WHEREAS, on August 17, 2012, this Court entered a judgment giving full faith and credit to the Vera Florida Judgment (the "Vera Federal Judgment") in the amount of $49,346,713.22, which was limited to the non-punitive damage award of the Vera Florida Judgment with post-judgment interest, and on which interest continues to accrue at the federal statutory interest rate;

   WHEREAS, on August 19, 2011, the Villoldo Petitioners obtained a judgment against Cuba from the Florida State Court for $2,790,000,000 pursuant to 28 U.S.C. §

2

1605A (the "Villoldo Florida Judgment"), to which judgment this Court later gave full faith and credit in *Villoldo v. Cuba,* No. 11-cv-9394 (S.D.N.Y. Dec. 21, 2011) (ECF No. 23); and which, subsequently, was also given full faith and credit in the Western District of Pennsylvania: *Villoldo v. Cuba,* No. 2:13-mc-00016 (W.D. Pa. May 28, 2013) (ECF No. 24); and the District of Massachusetts: *Villoldo v. Cuba,* No. 4:13-mc-94014 (D. Mass. Sept. 24, 2013) (ECF No. 25);

WHEREAS, on October 25, 2012, this Court entered a judgment in favor of the Villoldo Petitioners against Cuba in the amount of $2,903,233,898.07 (the "Villoldo Federal Judgment"), which continues to accrue interest at the federal statutory interest rate;

WHEREAS, on January 19, 2007, the Hausler Petitioners obtained from the Florida State Court a judgment against Cuba, Fidel Castro, Raul Castro and the Army of the Republic of Cuba in the amount of $400,000,000 (including $100,000,000 in compensatory damages) plus interest pursuant to 28 U.S.C. § 1605(a)(7) (the "Hausler State Judgment"), on which judgment the United States District Court for the Southern District of Florida entered a judgment (the "Hausler Federal Judgment") giving the Hausler State Judgment full faith and credit;

WHEREAS, on September 24, 2008, the Hausler Petitioners duly registered the Hausler Federal Judgment in this Court;

WHEREAS, this Court has separately given full faith and credit to the Hausler State Judgment following a removal proceeding in the United States District Court for the Southern District of Florida and transfer of such proceeding to this Court, which proceeding was ultimately consolidated with the Hausler Federal Judgment proceeding under *Hausler v. JPMorgan Chase Bank, N.A. et al. 09 Civ. 10289 (VM)*;

3

#87923709v2

WHEREAS, by Order entered August 22, 2014 (ECF No. 666), this Court again granted full faith and credit to the state court judgments entered in favor of Vera, Villoldo, and Hausler, finding that questions of jurisdiction had been fully and fairly litigated and finally decided by the state courts and that the state courts' judgments cannot be collaterally attacked; and on September 9, 2014, this Court denied a motion to reconsider that decision and order (ECF No. 676);

WHEREAS, on February 12, 2014, Petitioners filed an Amended Omnibus Petition (ECF No. 423) pursuant to Section 201 of the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L No. 107-297; 116 Stat. 2337, codified at 28 U.S.C. § 1610 note, and the New York Civil Practice Law and Rules ("CPLR") § 5225(b), as applied through Fed. R. Civ. P. 69, to enforce their respective judgments and to compel various Garnishee-Respondents, including The Bank of New York Mellon ("BNY Mellon"), to turn over to Petitioners certain funds held in blocked accounts containing the proceeds of blocked wire transfers and deposit accounts in respect of which the Republic of Cuba or one of its agencies or instrumentalities has or may have an interest;

WHEREAS, of the blocked accounts, held by BNY Mellon, that are the subjects of the Amended Omnibus Petition, the largest four (the "BNY Mellon Blocked Accounts") are the following *(see* ECF No. 516 at Exhibit A):

1. Account with transfer date of March 26, 2004 that had a value of approximately $59,980.00 as of 2012;

2. Account with transfer date of April 7, 2003 that had a value of approximately $170,000.00 as of 2012;

4

3.     Account with transfer date of June 1, 2004 that had a value of approximately $271,685.76 as of 2012;

4.     Account with transfer date of November 1, 1993 that had a value of approximately $1,009,342.20 as of 2012;

WHEREAS, the funds held in the BNY Mellon Blocked Accounts are subject to the Amended Omnibus Petition and are the proceeds of electronic funds transfers ("EFT") that BNY Mellon blocked pursuant to the Cuban Assets Control Regulations, 31 C.F.R. Part 515 ("CACRs"), as issued by the Office of Foreign Assets Control ("OFAC") and codified by the Cuban Liberty and Democratic Solidarity Act of 1996, § 102(h), Pub. L. No. 104-114, 110 Stat. 792 (codified at 22 U.S.C. § 6032(h));

WHEREAS, the U.S. Marshal previously levied upon BNY Mellon by duly serving it with writs of execution issued in respect of Petitioners' judgments, which writs remain in place as of the date of this Order and Judgment;

WHEREAS, on December 9, 2013, the Court entered an Order With Respect to Giving Notice of Turnover Proceeding (ECF No. 368), as subsequently amended (ECF No. 455) (the "Notice Order"), that established a procedure for providing notice or commencing interpleader proceedings and serving third parties who might seek to claim an interest in blocked EFTs for which Cuba or one of its agencies or instrumentalities was an originator or originating bank, including the EFTs underlying the Blocked Accounts;

WHEREAS, pursuant to the notice procedure set forth in the Notice Order, the Garnishee Banks were required to serve the Interpleader Petitions and related papers on the originator, the originator's bank, any preceding intermediary bank, or other potential claimants to the Blocked Accounts (the "Interpleaded Parties");

5

WHEREAS, notice of this action was provided to the Judgment Debtors, including the Republic of Cuba, by both registered mail and in the same manner as a summons pursuant to CPLR 5225(b) (as applied through Fed. R, Civ. P. 69), and Section 1608 of the Foreign Sovereign Immunities Act of 1976 (the "FSIA"), 28 U.S.C. §§ 1330, 1602-11, by the Clerk of the Court;

WHEREAS, notice to the Judgment Debtors was supplemented by requesting and causing the Clerk of the Court to deliver the Notice of Suit, Summons, Amended Omnibus Petition, copy of the FSIA, and Spanish translations of the foregoing to the Cuban Minister of Foreign Affairs at his address in Havana, Cuba and to the Cuban interest section in Washington, D.C., using DHL World Courier and Federal Express, respectively (ECF Nos. 594 and 591);

WHEREAS, in accordance with the Notice Order, on April 18, 2014, BNY Mellon filed its Third-Party Petition Alleging Claims in the Nature of Interpleader (ECF No. 516) (the "BNY Mellon Interpleader Petition") concerning the funds held in the BNY Mellon Blocked Accounts;

WHEREAS, the Court has found that notice, provided by any of the methods outlined in the Notice Order, satisfies "all of the requirements for service under the FSIA, the Federal Rules, and the CPLR and all of the requirements of due process of law" (ECF No. 368 at ¶ 14);

WHEREAS, the BNY Mellon Interpleader Petition was duly served on Petitioners, as well as on all of the parties to the blocked wire transfers underlying the BNY Mellon Blocked Accounts (the "Adverse Claimants") (ECF Nos. 595-597) except for Cubanacan Negocios Mexico, S.A. de c.v. ("Cubanacan"), which was the originator of the wire transfer underlying the third blocked account referred to above (with a transfer date of June 1, 2004 and value of approximately $271,685.76 as of 2012 (the "June 2004 Blocked Account"));

6

WHEREAS, the time for the Adverse Claimants, other than Cubanacan, and all potentially interested parties and claimants to answer or move in response to the BNY Mellon Interpleader Petition expired, and the Adverse Claimants were therefore in default, before the issuance of the Second Circuit's decisions in *Calderon-Cardona v. Bank of New York Mellon*, 770 F.3d 993 (2d Cir. 2014), and *Hausler v. JPMorgan Chase Bank, N.A.*, 770 F.3d 207 (2d Cir. 2014);[1]

WHEREAS, on October 30, 2015, Petitioners filed a motion for summary judgment in connection with the BNY Mellon Interpleader Petition in which they seek an order requiring BNY Mellon to turn over to them the funds in the BNY Mellon Blocked Accounts (ECF Nos. 837, 841, 850 ) (the "Summary Judgment Motion");

WHEREAS, at the time the Notice Order was entered, there were conflicting decisions in the Southern District of New York regarding which parties' interests in an EFT were subject to execution under TRIA and FSIA § 1610(g), and no controlling decision had yet been issued by the U.S. Court of Appeals for the Second Circuit;

WHEREAS, at the time the Notice Order was issued, the U.S. Court of Appeals for the D.C. Circuit had concluded that a blocked EFT could be subject to execution under TRIA and the Foreign Sovereign Immunities Act ("FSIA") based on either the originator's or the originating bank's interest in the blocked proceeds because an originator could become subrogated to the originating bank's right of reimbursement under certain circumstances. *See Heiser v. Islamic Republic of Iran*, 885 F. Supp. 2d 429 (D.D.C. 2012), *aff'd*, 735 F.3d 934 (D.C. Cir. 2013);

---

[1] Banco Bilbao Vizcaya Argentarla filed a response that was limited to an objection to subject matter jurisdiction, which is not a valid objection to the turnover authorized in this Order and Judgment.

7

WHEREAS, the BNY Mellon Interpleader Petition included, among other things, allegations regarding the uncertainty at that time in the state of the law in the Second Circuit and alleged that the Blocked Accounts could be subject to attachment based on the interest of either the originator or the originating bank;

WHEREAS, BNY Mellon, as a neutral stakeholder with no claim to the funds in the BNY Mellon Blocked Accounts, will not oppose the Summary Judgment Motion as a result of (a) the uncertainty in the law in this Circuit at the time the BNY Mellon Interpleader Petition was served and the time the Adverse Claimants defaulted, (b) the failure of any originating banks named as Adverse Claimants to appear or claim an interest in the BNY Mellon Blocked Accounts, and (c) the default of all Adverse Claimants, at the time of which, consistent with the law at that time, Petitioners would have been entitled to an immediate turnover based on the interest of originators shown to be a Cuban agency or instrumentality;

WHEREAS, Petitioners contend that it is the law of the case, as set forth in an Opinion of this Court (ECF No. 814), that a blocked EFT originated by an entity owned or controlled by Cuba is subject to execution by Petitioners;

WHEREAS, Petitioners and BNY Mellon agree that this Order and Judgment is not intended to constitute a precedent, and agree not to cite this Order and Judgment as precedent in connection with any other turnover proceedings in this or any other case.

**NOW, THEREFORE, IT IS HEREBY DETERMINED,** based upon the record herein, as follows:

(a)      The Vera Florida Judgment and the Vera Federal Judgment, both of which are entitled to and have been given full faith and credit in this Court, are against the Republic of Cuba, which is a terrorist State within the meaning of Section 201 of TRIA, and are based

8

on claims in respect of acts of terrorism for which the Republic of Cuba is not immune under Section 1605(a)(7) of the FSIA;

(b)    The Villoldo Florida Judgment and the Villoldo Federal Judgment, both of which are entitled to and have been given full faith and credit in this Court, are against the Republic of Cuba, which is a terrorist State within the meaning of Section 201 of TRIA, and are based on claims in respect of acts of terrorism for which the Republic of Cuba is not immune under Section 1605(A) of the FSIA;

(c)    The Hausler Federal Judgment and the Hausler State Judgment, both of which are entitled to and have been given full faith and credit in this Court, are against the Republic of Cuba, which is a terrorist State within the meaning of Section 201 of TRIA, and are based on claims in respect of acts of terrorism for which the Republic of Cuba is not immune under Section 1605(a)(7) of the FSIA;

(d)    Petitioners have fully complied with all requirements of service of pleadings upon and/or notice to the Republic of Cuba in accordance with 28 U.S.C. § 1608;

(e)    The supplemental service by DHL Express and Federal Express constitutes good and sufficient service within the meaning of Section 1608 of the FSIA;

(f)    As determined by Petitioners' respective judgments and order for the immediate issuance of writs of execution, a reasonable period of time has elapsed following the entry of Petitioners' respective judgments and the giving of notice to the Republic of Cuba in accordance with Sections 1608(e) and 1610(c) of the FSIA;

(g)    The Judgment Debtors have failed to appear in this action;

(h)    Except as to Cubanacan, on which BNY Mellon will seek again to serve its interpleader petition in accordance with the terms of this Order and Judgment, BNY Mellon has

9

fully complied with all requirements of service of the Interpleader Petitions upon Petitioners and the Adverse Claimants;

(i)     The Adverse Claimants, other than Cubanacan, failed to appear in response to the Interpleader Petition and defaulted before the decisions in *Hausler* and *Calderon-Cardona*,;

(j)     Under such circumstances, and upon evidence that has been submitted to and found to be satisfactory to the Court, the originators of the EFTs whose proceeds are now held in the BNY Mellon Blocked Accounts may be deemed to be agencies or instrumentalities of the Republic of Cuba within the meaning of the FSIA and/or TRIA;

(k)     In accordance with Section 201 of TRIA, the blocked assets of a terrorist party (which are by statute defined to include the blocked assets of any agency or instrumentality of that terrorist party) may be executed upon to satisfy a judgment against that terrorist party to the extent of any compensatory damages awarded by that judgment (notwithstanding any provision of the FSIA, including, but not limited to, 28 U.S.C. §§ 1610 and 1611(b)), and therefore Petitioners' judgments may be satisfied by execution against the blocked assets of the Republic of Cuba or any agency or instrumentality of the Republic of Cuba;

(1)     The funds held in the Blocked Accounts have been, and currently are, designated as blocked property under the CACRs and therefore satisfy the definition of "blocked assets" within the meaning of TRIA;

(m)     BNY Mellon maintains the BNY Mellon Blocked Accounts;

(n)     Following issuance of the Notice Order, and pursuant to the terms of the BNY Mellon Interpleader Petition, the defaults by Adverse Claimants acting as originating banks, under the timing and circumstances of this case, are hereby deemed to be an admission that the Cuban agencies or instrumentalities identified in the attached schedules are entitled to

10

reimbursement of the blocked funds, consistent with the law at the time of their respective defaults, and the funds held in the BNY Mellon Blocked Accounts are therefore deemed to constitute the blocked assets of agencies or instrumentalities of the Republic of Cuba within the meaning of Section 201 of TRIA that are subject to execution in accordance with the requirements of the FSIA and TRIA;

(o)     The BNY Mellon Blocked Accounts do not consist of property subject to the Vienna Convention on Diplomatic Relations or to the Vienna Convention on Consular Relations, or blocked property or deposit debt in respect of which a waiver of the provisions of TRIA has been made by the President of the United States with respect thereto within the meaning of Section 201(b)(1) of TRIA;

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that:

1.     For purposes of this Order and Judgment, in Decretal Paragraphs 2 through 11 below, the "BNY Mellon Blocked Accounts" shall refer to all four such accounts except for the June 2004 Blocked Account, and the "Adverse Claimants" shall refer to all such persons and entities except for Cubanacan. The June 2004 Blocked Account and Cubanacan are addressed separately in Decretal Paragraph 12 below.    Decretal Paragraphs 13 and 14 below apply to all BNY Mellon Blocked Accounts, including the June 2004 Blocked Account, and all Adverse Claimants, including Cubanacan.

2.     Pursuant to CPLR § 5225(b), as applicable in this case pursuant to Fed. R. Civ. P. 69, and in accordance with this Court's Notice Order, judgment ordering turnover of the funds in the BNY Mellon Blocked Accounts in a sum of no less than $1,239,322.20, plus interest accrued thereon since 2012, is hereby entered in connection with BNY Mellon's

11

Interpleader Petition in favor of Petitioners and against (i) BNY Mellon in its capacity as garnishee, and (ii) the Adverse Claimants in their capacities as Third-Party Respondents/Adverse Claimants.

    3. As set forth above, the funds in the BNY Blocked Accounts are deemed to be blocked assets of agencies or instrumentalities of the Republic of Cuba within the meaning of the FSIA and the TRIA. Because Petitioners' judgments satisfy all conditions set forth in the FSIA and the TRIA for executing against such blocked assets of the Republic of Cuba or of its agencies or instrumentalities, the BNY Mellon Blocked Accounts are therefore subject to execution by Petitioners in accordance with the requirements of the FSIA and the TRIA.

    4. On or before the fifteenth (15) business day from the date of entry of this Order and Judgment, BNY Mellon shall turn over to the U.S. Marshal the funds in the BNY Mellon Blocked Accounts specified above with all accrued interest thereon.

    5. Within ten (10) business days of receipt from BNY Mellon of the funds in the BNY Mellon Blocked Accounts, the U.S. Marshal shall transfer such funds to Petitioners' counsel of record in accordance with such payment instructions as may be provided to the U.S. Marshal jointly by Petitioners' counsel of record.

    6. Petitioners' receipt of the funds paid under Paragraph 4 shall be in partial satisfaction of the compensatory damages portion of each of Petitioners' respective judgments (including interest).

    7. Upon delivery of the funds in the BNY Mellon Blocked Accounts to the U.S. Marshal in accordance with Paragraph 4, BNY Mellon shall be fully discharged from any and all further liability with respect to the funds in the BNY Mellon Blocked Accounts pursuant to CPLR §§ 5209 or 6204, and shall be fully discharged from any and all

12

obligations or other liabilities to the Republic of Cuba, to any agency or instrumentality of the Republic of Cuba otherwise entitled to the funds in the BNY Mellon Blocked Accounts, to any parties who have or could have asserted an interest in the BNY Mellon Blocked Accounts, and to any other party, including, without limitation, the Adverse Claimants, to the full extent of the amounts turned over by BNY Mellon in accordance with this Order and Judgment.

8.    Each and every party to BNY Mellon's Interpleader Petition is hereby and shall be restrained and enjoined from instituting or prosecuting any claim or action against BNY Mellon in any jurisdiction arising from or relating to any claim to the funds in the BNY Mellon Blocked Accounts.

9.    Upon BNY Mellon's delivery of the funds in the BNY Mellon Blocked Accounts to the U.S. Marshal, all writs of execution, notices of pending action, restraining notices and other judgment creditor process of any kind served on, or delivered to, BNY Mellon, to the extent that they apply or attach to the funds in the BNY Mellon Blocked Accounts, shall be deemed vacated and null and void as to the funds in the BNY Mellon Blocked Accounts.

10.   In accordance with paragraph 17 of the Notice Order, and pursuant to the agreement between Petitioners' counsel and BNY Mellon's counsel, within ten (10) business days of the U.S. Marshal's transfer of the funds in the BNY Mellon Blocked Accounts to Petitioners' counsel as set forth in Paragraph 5 above, Petitioners' counsel shall pay to BNY Mellon's counsel, from the funds in the BNY Mellon Blocked Accounts that are being turned over pursuant to this Order and Judgment, the agreed-upon amount of $50,000 for attorneys' fees and costs incurred by BNY Mellon in bringing its Interpleader Action under Fed. R. Civ. P. 22. The amount paid to BNY Mellon shall be inclusive of all attorneys' fees

13

and costs that may be claimed by BNY Mellon under paragraph 17 of the Notice Order through the date of this Order and Judgment.

11.    This Order and Judgment is a final judgment that finally disposes of all claims asserted in BNY Mellon's Interpleader Petition and all claims to the funds in the BNY Mellon Blocked Accounts that have or could have been asserted by Petitioners, the Adverse Claimants, and all other persons or entities.

12.    As to the June 2004 Blocked Account, within five business days from the Court's entry of this Order and Judgment, BNY Mellon shall renew its attempt at service of its Interpleader Petition upon Cubanacan by any means authorized by the Notice Order.  If BNY Mellon is again unable to complete service, despite its attempt to do so, within 30 days after that attempt has been made, then Cubanacan shall be deemed to be in default.  Unless Cubanacan appears or intervenes within 30 days from the date on which service is completed, BNY Mellon, within ten business days after the expiration of that 30-day period, or within ten business days after the date on which Cubanacan is otherwise deemed to be in default, shall turn over the funds in the June 2004 Blocked Account to the U.S. Marshal. The U.S. Marshall shall within ten business days thereafter transfer such funds to Petitioners' counsel of record in accordance with counsel's joint payment instructions. Upon BNY Mellon's delivery of the funds in the June 2004 Blocked Account to the U.S. Marshal, all of the provisions in Decretal Paragraphs 7, 8, 9 and 11 above shall be deemed fully applicable to the June 2004 Blocked Account and to Cubanacan, and BNY Mellon shall accordingly receive the protections, as to the June 2004 Blocked Account and Cubanacan, provided by those provisions.

14

13.     This stipulated Order and Judgment is intended to apply solely to the BNY Mellon Blocked Accounts specified herein and is not intended to apply to or affect any other determination in this or any other pending or future proceeding involving assets blocked or held by BNY Mellon.

14.     This Court shall retain jurisdiction over this matter to enforce any violation of one or more terms of this Order and Judgment or otherwise to resolve any dispute arising under this Order and Judgment.

SO ORDERED AND ADJUDGED,

Dated:  December __, 2015
        New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

15

#87923709v2