N.Y.S.D. Case #
12-cv-1596(AKH)

**16-1227-cv**
*Vera v. Republic of Cuba*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 14, 2017

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term 2016

(Argued: April 18, 2017      Decided: August 14, 2017)

Docket No. 16-1227

ALDO VERA, JR., as Personal representative of the Estate of
Aldo Vera, Sr.,

*Plaintiff-Appellee*,

v.

THE REPUBLIC OF CUBA,

*Defendant*,

BANCO BILBAO VIZCAYA ARGENTARIA, S.A.,

*Appellant*.

_____

CERTIFIED COPY ISSUED ON 08/14/2017

Before:      POOLER, WESLEY, and CARNEY, *Circuit Judges*.

Appeal from an April 19, 2016 order and judgment of civil contempt entered in the United States District Court for the Southern District of New York (Hellerstein, *J.*). The District Court held appellant Banco Bilbao Vizcaya Argentaria, S.A. ("BBVA"), a foreign bank, in contempt for refusing to comply with a subpoena requesting information about Cuban assets located inside and outside the United States. Plaintiff-Appellee Aldo Vera, Jr. served the subpoena on BBVA's New York branch in an effort to enforce a federal default judgment against the Republic of Cuba. BBVA moved to quash the subpoena, arguing the District Court did not have subject matter jurisdiction over the action in which it was served or personal jurisdiction over the foreign bank.

We REVERSE the District Court's order and REMAND with instructions to grant BBVA's motion to quash. We conclude the District Court lacked subject matter jurisdiction to enter judgment against Cuba under the Foreign Sovereign Immunities Act of 1976. The information subpoena served on BBVA to enforce that judgment is therefore void.

————————————

ROBERT A. SWIFT, Kohn, Swift & Graf, P.C., Philadelphia, PA (Jeffrey E. Glen, Anderson Kill P.C., New York, NY, *on the brief*), *for Plaintiff-Appellee Aldo Vera, Jr.*

KENNETH A. CARUSO (Christopher D. Volpe, Matthew L. Nicholson, *on the brief*), White & Case LLP, New York, NY, *for Appellant Banco Bilbao Vizcaya Argentaria, S.A.*

John J. Clarke, Jr., Richard F. Hans, Kevin Walsh, DLA Piper LLP, New York, NY, *for Amici Curiae Institute of International Bankers and European Banking Federation in Support of Appellant.*

James L. Kerr, Margaret E. Tahyar, Michael S. Flynn, Alicia Llosa Chang, Caroline Stern, Davis Polk & Wardwell LLP, New York, NY, *for Amicus Curiae Banking Law Committee of the New York City Bar Association in Support of Appellant.*

_____

WESLEY, *Circuit Judge*:

At the heart of this appeal is an action by Plaintiff-Appellee Aldo Vera, Jr. ("Vera") against the Republic of Cuba for the extrajudicial killing of his father in 1976. In 2008, Vera obtained a default judgment against Cuba in Florida state court, relying on the "terrorism exception" to sovereign immunity, 28 U.S.C. § 1605A(a)(1). Vera then secured a default judgment against Cuba in the United States District Court for the Southern District of New York (Hellerstein, *J.*), after that court granted full faith and credit to the Florida judgment.

This appeal arises from Vera's efforts to enforce the federal default judgment by serving information subpoenas on the New York branches of various foreign banks. One

3

bank, Appellant Banco Bilbao Vizcaya Argentaria, S.A. ("BBVA"), refused to comply with the subpoena's request for information regarding Cuban assets located outside the United States. BBVA moved to quash the subpoena, contending that Vera's federal default judgment against Cuba was void for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act of 1976 (the "FSIA"), as amended, 28 U.S.C. §§ 1602 *et seq.*, and that the District Court lacked the personal jurisdiction over BBVA needed to compel worldwide discovery. The District Court rejected BBVA's jurisdictional challenges and ordered it to provide full and complete answers to Vera's request for information, holding the bank in contempt when it refused to comply.

We reverse. The District Court lacked subject matter jurisdiction over Vera's action against Cuba because Cuba was not designated a state sponsor of terrorism at the time Vera's father was killed, and Vera failed to establish that Cuba was later designated a state sponsor of terrorism as a result of his father's death. Accordingly, the FSIA's terrorism exception to sovereign immunity—the only potential basis for subject matter jurisdiction in this case— does not apply. Cuba was immune from Vera's action, the District Court lacked subject matter jurisdiction to enter judgment against it, and the information subpoena to enforce that judgment is void.

**I**

Vera's father, Aldo Vera, Sr., was killed in San Juan, Puerto Rico on October 25, 1976. In 2001, Vera brought a

civil action against Cuba in Florida state court on behalf of his father's estate. Vera alleged that his father—the former police chief in Havana—fled Cuba in the 1960s and engaged in counterrevolutionary activities in Puerto Rico and Florida. He further alleged that agents acting on orders of the Cuban government executed Vera's father in a street in San Juan, as he was leaving a regularly scheduled meeting of a prominent anti-communist group.

Cuba did not appear in the Florida action. In 2008, after holding a bench trial on the merits, the Florida court entered a default judgment in Vera's favor for approximately $95 million. Although foreign states are generally immune from the jurisdiction of the courts of the United States under the FSIA, the Florida court held that Cuba was subject to suit under a statutory exception to immunity then found in 28 U.S.C. § 1605(a)(7).[1] That exception, often referred to as the "terrorism exception," explicitly authorizes suits against foreign states that sponsor certain acts of terrorism, such as extrajudicial killings and torture. *See* 28 U.S.C. § 1605A(a)(1). To invoke the exception, the foreign state must have been "designated

---

[1] Congress repealed § 1605(a)(7) in 2008 and replaced it with § 1605A. *See* National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110-181, § 1083, 122 Stat. 3, 338–44 (2008). For purposes of this appeal, it is immaterial which statutory version supported Vera's underlying judgments. The language relevant to our analysis is essentially identical in each. We cite § 1605A because that is the version that was in effect at the time Vera commenced his federal action.

as a state sponsor of terrorism at the time the act . . . occurred" or later, "as a result of such act." *Id*. § 1605A(a)(2)(A)(i)(I).

The Florida court held that the FSIA's terrorism exception applied to Vera's suit. Specifically, it found that Cuba ordered the extrajudicial killing of Vera's father in 1976 in retaliation for his participation in the anti-communist movement and that Cuba "was designated to be a state sponsor of terrorism in 1982 . . . and remains so designated." J.A. 273. In the Florida court's view, those facts rendered Cuba subject to suit in any court in the United States and established Vera's right to relief.

Armed with the state court judgment, Vera filed a complaint against Cuba in the United States District Court for the Southern District of New York, seeking "recognition and entry" of the Florida judgment pursuant to the Full Faith and Credit Act, 28 U.S.C. § 1738. J.A. 282. Vera alleged that he was entitled to a federal judgment against Cuba based on the strength of the Florida judgment, which, according to Vera, rested on all of the necessary findings of fact. In particular, Vera alleged the Florida court found that agents of Cuba shot and killed his father in San Juan and that Cuba "was designated a 'State Sponsor of Terrorism' . . . and remains so designated." J.A. 283.

Cuba failed to appear in the federal action. On August 17, 2012, the District Court entered a default judgment against it for approximately $45 million,

including interest.[2] The District Court stated it had subject matter jurisdiction over Vera's claim "pursuant to 28 U.S.C. §[§] 1331 and 1602 *et seq.*," and that the Florida judgment was entitled to full faith and credit. J.A. 286.

With a federal default judgment in hand, Vera sought to collect Cuban assets wherever held. He commenced an execution and attachment proceeding in the District Court and served information subpoenas on the New York branches of various foreign banks, seeking information regarding Cuba's assets both inside and outside the United States. *See* Fed. R. Civ. P. 69(a)(2); N.Y. C.P.L.R. 5224(a). BBVA, one of the garnishee banks, supplied information pertaining to Cuban assets located at its New York branch, but refused to produce information regarding Cuban assets found outside New York.

Vera moved to compel BBVA's compliance with the request for information, and BBVA cross-moved to quash the subpoena. According to BBVA, the subpoena was void *ab initio* because the District Court lacked subject matter jurisdiction over the action in which it was served. The District Court lacked jurisdiction over Vera's action against Cuba, BBVA argued, because the terrorism exception to sovereign immunity in the FSIA—the only possible basis for subject matter jurisdiction over Cuba—did not apply.

---

[2] The District Court excluded from its judgment the portion of the Florida judgment that awarded Vera punitive damages, because the FSIA prohibits an award of punitive damages against a foreign state. *See* 28 U.S.C. § 1606.

BBVA also argued that the District Court lacked personal jurisdiction over it and therefore could not compel BBVA to produce information regarding Cuban assets located outside the United States.

While Vera's motion to compel and BBVA's cross-motion to quash were pending, U.S. Marshals levied writs of execution against Cuban assets held at the New York branches of various banks.[3] Vera filed an omnibus petition for a turnover of the assets, naming BBVA and other foreign banks as third-party defendants in that proceeding.[4] *See* 28 U.S.C. § 1610(g)(1) ("[T]he property of a foreign state against which a judgment is entered under [§ 1605A or § 1605(a)(7)] . . . is subject to attachment in aid of execution, and execution, upon that judgment as provided in this section . . . ."); N.Y. C.P.L.R. 5225(b) (authorizing judgment creditor to commence special proceeding against garnishee who holds assets of judgment debtor).

---

[3] Although the U.S. Treasury Department blocks the transmission of Cuban funds by federally chartered clearing banks in New York, s*ee* 31 C.F.R. § 515.201, the FSIA allows judgment creditors against a foreign state to attach blocked funds that constitute property of the foreign state or its instrumentalities, *see* 28 U.S.C. § 1610(g).

[4] The omnibus petition included claims by two other sets of plaintiffs seeking to collect unrelated judgments against Cuba. Those claims were consolidated before the District Court for administrative purposes but are not at issue in this appeal.

BBVA answered and moved to dismiss the special proceeding for lack of subject matter jurisdiction under the FSIA. The District Court construed BBVA's argument as a collateral attack on the Florida judgment and denied the motion, reasoning, as relevant here, that the Florida court held a trial on the merits and "made appropriate jurisdictional findings," including finding that "Cuba was designated as a state sponsor of terrorism either before [Vera's father's killing] or partially as a result of th[at] act." *Vera v. Republic of Cuba*, 40 F. Supp. 3d 367, 376 (S.D.N.Y. 2014). This finding, the court concluded, "satisfied the criteria of 28 U.S.C. § 1605(a)(7) (now § 1605A), and established that the Florida [court] . . . had jurisdiction over Cuba." *Id.*

Shortly thereafter, the District Court denied BBVA's motion to quash and granted Vera's motion to compel BBVA's compliance with the information subpoena, ordering the bank to "provide full and complete answers with respect to the Republic of Cuba's assets located in [BBVA's] branches outside of, as well as inside, the United States." *Vera v. Banco Bilbao Vizcaya Argentaria (S.A.)*, No. 12 Civ. 1596, 2014 U.S. Dist. LEXIS 187222, at *6 (S.D.N.Y. Sept. 10, 2014). The District Court rejected BBVA's argument concerning subject matter jurisdiction for the same reason it previously denied BBVA's motion to dismiss the turnover proceeding—namely, that the Florida court already made the appropriate findings to support the exercise of jurisdiction over Cuba. *See id.* at *7; *see also Vera*, 40 F. Supp. 3d at 376. The District Court also concluded it had personal jurisdiction over the foreign bank. *Id.* at *8–9.

9

The District Court subsequently denied BBVA's motion for reconsideration and granted Vera's petition for a turnover of assets. *See Vera v. Republic of Cuba*, 91 F. Supp. 3d 561, 564, 573 (S.D.N.Y. 2015).[5] BBVA declined to produce further information in compliance with the subpoena, prompting the District Court to hold it in contempt. This appeal followed.[6]

## II

The issue before us concerns the enforceability of the information subpoena Vera served on BBVA in an effort to execute his federal default judgment against Cuba. BBVA argues the subpoena is void and unenforceable because the District Court lacked subject matter jurisdiction over the action in which it was served and personal jurisdiction over BBVA necessary to compel worldwide discovery.

---

[5] BBVA separately appealed the District Court's order granting Vera's petition for a turnover of assets held at BBVA's New York branch as well as its order denying BBVA's motion for a stay of the turnover proceeding pending resolution of this appeal. BBVA's appeal from the order denying its motion for a stay is currently pending before our Court.

[6] BBVA initially appealed the District Court's orders directing BBVA to comply with the subpoena and denying reconsideration, but we dismissed those appeals from non-final orders for lack of appellate jurisdiction. *See Vera v. Republic of Cuba*, 651 F. App'x 22, 24 (2d Cir. 2016); *Vera v. Republic of Cuba*, 802 F.3d 242, 248 (2d Cir. 2015).

Although BBVA challenges the validity of the subpoena on both grounds, we resolve this appeal on the first, *see Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007), reviewing the District Court's legal conclusions regarding subject matter jurisdiction under the FSIA *de novo* and its factual findings for clear error, *see In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 109, 113 (2d Cir. 2013). For the reasons that follow, we hold that the District Court lacked subject matter jurisdiction over Vera's action against Cuba and therefore had no power to enter judgment against it. Accordingly, the subpoena served to enforce that judgment is void.

## A

Two principles of federal jurisdiction guide our analysis. First, subject matter jurisdiction "functions as a restriction on federal power." *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). Federal courts may not proceed at all in any cause without it. *See Sinochem*, 549 U.S. at 430–31. Second, "the subpoena power of a court cannot be more extensive than its jurisdiction." *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76 (1988). A district court must therefore determine whether it has jurisdiction, no matter how a case comes before it. If the court lacks jurisdiction over the proceeding and issues a subpoena that does not aid in determining jurisdiction, the subpoena is void and unenforceable. *See id.* at 80.

These principles are particularly important in an action against a foreign sovereign. "By reason of its

authority over foreign commerce and foreign relations, Congress has the undisputed power to decide, as a matter of federal law, whether and under what circumstances foreign nations should be amenable to suit in the United States." *Verlinden B.V. v. Cent. Bank of Nig.*, 461 U.S. 480, 493 (1983). Congress exercised that authority when it enacted the Foreign Sovereign Immunities Act of 1976, Pub. L. No. 94-583, 90 Stat. 2891 (codified as amended at 28 U.S.C. §§ 1330, 1391(f), 1441(d), 1602–11), which comprehensively regulates the amenability of foreign nations to suit in the United States.[7]

The FSIA declares that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter." 28 U.S.C. § 1604. If one of the enumerated exceptions applies, the foreign state is liable, in state or federal court, "in the same manner and to the same extent as a private individual under like circumstances." *Id.* § 1606. If no exception applies, no U.S. court has jurisdiction to hear the claim. *See id.* § 1604; *Verlinden*, 461 U.S. at 489, 493–94.

In addition to the FSIA's substantive provisions, 28 U.S.C. § 1330 provides the "sole basis for obtaining jurisdiction" in federal district court over claims against a foreign state. *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993)

---

[7] See *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, No. 15–707, 2017 U.S. App. LEXIS 12354 at *13–19 (2d Cir. July 11, 2017), for a detailed history of the FSIA.

12

(quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989)). Section 1330 states that the "district courts shall have original jurisdiction . . . of any nonjury civil action against a foreign state . . . as to any claim for relief in personam with respect to which the foreign state is *not* entitled to immunity either under [28 U.S.C. §§ 1605–07] or under any applicable international agreement." 28 U.S.C. § 1330(a) (emphasis added).

Section 1330 thus "work[s] in tandem" with the FSIA's substantive provisions: Section 1604 bars state and federal courts from exercising jurisdiction when a foreign state is entitled to immunity, and section 1330 confers jurisdiction on federal district courts only if one of the exceptions to immunity applies. *Argentine Republic*, 488 U.S. at 434. "At the threshold of every action in a [d]istrict [c]ourt against a foreign state, therefore, the court must satisfy itself that one of the exceptions applies—and in doing so it must apply the detailed federal law standards set forth in the [FSIA]." *Verlinden*, 461 U.S. at 493–94. If the court fails to undertake that analysis and determine for itself that an exception applies, it has no authority to hear the claim. *See id.* at 493.

**B**

Because the subpoena at issue in this appeal was served on BBVA in an effort to enforce Vera's federal default judgment, the legitimacy of the subpoena is tied to the District Court's jurisdiction to enter judgment against Cuba under one of the exceptions to sovereign immunity in the FSIA. *See Bank Markazi v. Peterson*, 136 S. Ct. 1310, 1317

13

n.1 (2016) (jurisdiction over foreign state exists only under an exception to sovereign immunity in the FSIA); *U.S. Catholic Conference*, 487 U.S. at 80 (subpoena is void if district court lacked subject matter jurisdiction in underlying action).

The only exception urged in this case is for state-sponsored acts of terrorism. *See* 28 U.S.C. § 1605A. That exception eliminates sovereign immunity and permits suits directly against a foreign state in any case

> in which money damages are sought against [the] foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if . . . engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.

*Id.* § 1605A(a)(1). Even if a foreign state has engaged in one of the terrorist acts described above, however, it is not subject to suit in the United States unless the foreign state was "designated as a state sponsor of terrorism at the time the act . . . occurred" or was later "so designated *as a result of* such act." *Id.* § 1605A(a)(2)(A)(i)(I) (emphasis added).

**1**

The District Court asserted that it had subject matter jurisdiction over Vera's action against Cuba pursuant to the terrorism exception of the FSIA. Yet it did not make any findings that would support the application of that

14

exception. Instead, the District Court adopted the Florida court's determination that the terrorism exception applied, without independently assessing Cuba's immunity from suit. In the District Court's view, the Florida court found "that Cuba was designated as a state sponsor of terrorism either before . . . or partially as a result of [Vera's father's death]," and resolved the threshold question of whether the District Court had jurisdiction over Vera's claim. *Vera*, 40 F. Supp. 3d at 376. That was error for two reasons.

First, the Florida court did *not* find that Cuba was designated a state sponsor of terrorism "either before . . . or partially as a result" of Vera's father's death, as section 1605A requires. *Id.* The only findings the Florida court made regarding Cuba's terrorist designation were that Cuba "was designated to be a state sponsor of terrorism in 1982 . . . and remains so designated." J.A. 273. Those findings do not satisfy the terrorism exception.

Second, even if the Florida court *had* found that Cuba was designated a state sponsor of terrorism as a result of Vera's father's death, the District Court would not be bound by that jurisdictional finding. *See Jerez v. Republic of Cuba*, 775 F.3d 419, 422 (D.C. Cir. 2014) (jurisdictional determinations made in a default judgment are not entitled to res judicata effect if the defendant did not "actually appear[]" in the proceedings); *Am. Steel Bldg. Co. v. Davidson & Richardson Constr. Co.*, 847 F.2d 1519, 1521 (11th Cir. 1988) ("[W]here the defendant does not appear, and judgment is by default, the state court judgment does not preclude the federal court from reviewing the jurisdictional issues."). Notwithstanding the fact that the Florida court "held a trial

15

. . . on the merits," *Vera*, 40 F. Supp. 3d at 371, the jurisdictional facts necessary to eliminate Cuba's sovereign immunity under the FSIA were not fully and fairly litigated in that action. The Florida court's jurisdictional findings, such as they were, neither bind the District Court in Vera's subsequent suit nor can they be relied on by the parties. *See Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 706 (1982); *cf. Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 730 (2d Cir. 1998) (jurisdictional determinations should not be considered preclusive when made upon the grant of a default judgment).

The District Court thus erred doubly in relying on the Florida court's findings of fact as the basis for its jurisdiction: the Florida court did not make the findings necessary to render Cuba subject to suit under the terrorism exception of the FSIA and, even if it had, those findings would not bind or aid the District Court, which was required to analyze the record independently to determine if Cuba was immune. By failing to make that factual inquiry, the District Court did not fulfill its obligation to "apply the detailed federal law standards set forth in the [FSIA]" in order to "satisfy itself that one of the exceptions [to immunity] applies." *Verlinden*, 461 U.S. at 494. Had the District Court engaged in the proper analysis, the only conclusion it could have reached on this record is that Cuba was immune from Vera's suit.

16

**2**

In order to invoke the terrorism exception of the FSIA, Vera had the burden to establish that Cuba was designated a state sponsor of terrorism in 1982 as a result of his father's death. *See City of New York v. Permanent Mission of India to the United Nations*, 446 F.3d 365, 369 (2d Cir. 2006) (explaining that the burden of proof is on the party seeking to establish the court's jurisdiction). The only evidence Vera submitted to link Cuba's terrorist designation to the extrajudicial killing of his father, however, consisted of a single expert affidavit from a professor of Cuban-American studies, who opined that Cuba's eventual designation as a state sponsor of terrorism was "based, at least in part, on extrajudicial killings and tortures." J.A. 474. According to Vera's expert, "given the notoriety of [Vera's father], his stature among the Cuban exile community, and the press coverage his assassination generated," his death was likely one of "260 acts of violence" by the Cuban government between 1975 and 1982 that ultimately influenced the State Department's decision to designate Cuba a state sponsor of terrorism. J.A. 476. But Vera's expert cited no evidence to support that conclusion or specifically link Cuba's terrorist designation to Vera's father's death.

The record suggests the State Department designated Cuba a state sponsor of terrorism generally because of its "support for revolutionary violence and groups [that] use terrorism as a policy instrument." J.A. 347 (excerpt of *Regulation Changes on Exports: Hearing Before the Subcomm. on Near E. & S. Asian Affairs of the S. Comm. on Foreign Relations*, 97th Cong. 13 (1982) (statement of Ernest

Johnston, Jr., Deputy Assistant Sec'y for Econ. Affairs, Dep't of State)). For example, the State Department's 1982 bulletin designating Cuba a state sponsor of terrorism, which BBVA introduced into evidence, indicates that Cuba's terrorist designation derived from the country's support for groups like M-19 that have "repeatedly engaged in kidnappings, bombings, hostage-taking, and aircraft hijacking." *Id.* A contemporaneous State Department message to Congress reinforces that view. *See* J.A. 314–19 (excerpt of *The Role of Cuba in Int'l Terrorism & Subversion: Hearing Before the Subcomm. on Sec. & Terrorism of the S. Comm. on the Judiciary*, 97th Cong. 143–45 (1982) (testimony of Ambassador Thomas O. Enders, Assistant Sec'y of State for Inter-Am. Affairs, Dep't of State)) (describing specific examples of Cuba's "promotion of violent revolution in Latin America"). The legislative materials and statements by government officials submitted in this case make no mention of extrajudicial killings or of the death of Vera's father.

Because the record contains no evidence that specifically links Cuba's terrorist designation to Vera's father's death, Vera failed to meet his burden to establish that the terrorism exception applies. In the absence of a statutory exception, Cuba was jurisdictionally immune from Vera's suit. *See* 28 U.S.C. § 1604; *Bank Markazi*, 136 S. Ct. at 1317 n.1.[8]

---

[8] In light of our conclusion, we have no need to address BBVA's arguments that Vera was not a proper "claimant" under § 1605A or that Cuba was not responsible for the extrajudicial killing of

The D.C. Circuit reached a similar conclusion in *Jerez*. The plaintiff in that case won a default judgment against Cuba in Florida state court under the terrorism exception of the FSIA, based on allegations that the Cuban government tortured him in the 1960s and 1970s. *Jerez*, 775 F.3d at 421. The plaintiff then sued Cuba in the United States District Court for the Southern District of Florida, which granted full faith and credit to the Florida judgment and awarded the plaintiff over $200 million in damages. *Id.* The plaintiff registered the federal judgment in the United States District Court for the District of Columbia, but that court refused to enforce the judgment and vacated the plaintiff's writs of attachment. *Id.* 421–22. It held that both the Florida state court and the federal district court in Florida lacked subject matter jurisdiction under the FSIA, rendering their default judgments void. *Id.* at 422.

On appeal, the D.C. Circuit reviewed the jurisdictional basis for Cuba's immunity *de novo* and affirmed the district court's conclusion that the terrorism exception did not apply. *Id.* at 423, 424–25. Relying on the same Congressional testimony BBVA introduced in this case, the D.C. Circuit held that "Cuba was designated a state sponsor [of terrorism] not because of the torture inflicted on [the plaintiff], but because of support for acts of

---

Vera's father. Furthermore, because Vera did not meet his burden to show that a statutory exception applies, the case presents no relevant unanswered factual issues regarding the existence of subject matter jurisdiction, and it is unnecessary to remand to the District Court on the jurisdictional question.

international terrorism such as those committed by the terrorist group M-19." *Id.* at 425 (internal quotation marks omitted). As a result, the D.C. Circuit concluded that "no statutory exception to sovereign immunity under the FSIA applie[d]." *Id.* Both the Florida state court that initially granted the default judgment and the Florida district court that gave full faith and credit to the state court judgment lacked subject matter jurisdiction. Their "default judgments [were] therefore void." *Id.*

Although our case arises in a somewhat different procedural context, we agree with the reasoning and conclusion of *Jerez*. The State Department did not designate Cuba a state sponsor of terrorism until 1982—six years after Vera's father was killed—and the record before us fails to establish that Cuba was designated a state sponsor of terrorism as a result of Vera's father's death. Accordingly, the terrorism exception of the FSIA, the only potential basis for subject matter jurisdiction in this case, does not apply. Cuba was immune from Vera's federal action, the District Court lacked subject matter jurisdiction to enter judgment against it, and the subpoena issued to enforce the invalid judgment was void.[9]

---

[9] We need not consider a collateral attack on the Florida judgment to resolve this appeal. BBVA's principal argument—an argument with which we agree—is that the *District Court* lacked subject-matter jurisdiction over Vera's action against Cuba. In the absence of a statutory exception to sovereign immunity, the District Court did not have adjudicatory authority to entertain Vera's cause of action seeking recognition and entry of the

20

## C

Faced with the evidence of Cuba's immunity under the FSIA, Vera proposes two alternative sources of subject matter jurisdiction over his claim.

First, he contends that an action seeking recognition of a foreign judgment under the Full Faith and Credit Act presents a question arising under the laws of the United States and establishes federal question jurisdiction under 28 U.S.C. § 1331(a). But the Full Faith and Credit Act, which requires state court judgments to receive the same credit, validity, and effect in every other court in the United States, 28 U.S.C. § 1738, has no bearing on the question of whether a district court has subject matter jurisdiction to hear a claim. *See Minnesota v. N. Sec. Co.*, 194 U.S. 48, 72 (1904) (concluding that the Full Faith and Credit Clause does not "ha[ve] any bearing whatever" upon questions of jurisdiction). It "merely provides the standard to be used in . . . proceedings over which the court already has jurisdiction." *Hazen Research, Inc. v. Omega Minerals, Inc.*, 497 F.2d 151, 153 n.1 (5th Cir. 1974).

As the Supreme Court has said of the Full Faith and Credit Act and its constitutional counterpart,

> While they make the record of a judgment, rendered after due notice in one state, conclusive evidence in the courts of another

---

Florida judgment. Our analysis ends there—as the District Court's should have.

21

> state, or of the United States, of the matter adjudged, they do not affect the jurisdiction, either of the court in which the judgment is rendered, or of the court in which it is offered in evidence.

*Wisconsin v. Pelican Ins. Co.*, 127 U.S. 265, 292 (1888), *overruled in part on other grounds by Milwaukee Cty. v. M.E. White Co.*, 296 U.S. 268, 278 (1935).

Thus, an attempt to obtain a federal judgment based on the strength of a state court judgment is not a case arising under the Constitution, laws, or treaties of the United States that would trigger federal question jurisdiction. *See Thompson v. Thompson*, 484 U.S. 174, 182 (1988) ("[T]he Full Faith and Credit Clause, in either its constitutional or statutory incarnations, does not give rise to an implied federal cause of action."); *see also Miccosukee Tribe of Indians of Fla. v. Kraus-Anderson Constr. Co.*, 607 F.3d 1268, 1276 (11th Cir. 2010) (The Full Faith and Credit Act "does not . . . confer jurisdiction on a federal district court to domesticate a judgment rendered by a court of another jurisdiction."); *Rogers v. Platt*, 814 F.2d 683, 690 (D.C. Cir. 1987) ("[N]either the constitutional full faith and credit clause nor the statutory implementing provisions provides a predicate for federal jurisdiction."). If it were otherwise, "any attempt, at any time or place, by any person, to enforce the provisions of any state statute or judgment would be, without more, a subject of federal jurisdiction." *California ex rel. McColgan v. Bruce*, 129 F.2d 421, 424 (9th Cir. 1942).

Second, Vera contends that the District Court had subject matter jurisdiction over the proceedings to enforce the federal default judgment pursuant to the Terrorism Risk Insurance Act of 2002 (the "TRIA"), Pub. L. No. 107-297, 116 Stat. 2322, 2337 (codified at 28 U.S.C. § 1610 note). The TRIA provides courts with subject matter jurisdiction over post-judgment execution and attachment proceedings against property of a foreign state "in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605A or 1605(a)(7)." TRIA § 201(a).

That provision grants jurisdiction over execution and attachment proceedings, however, only if "a *valid* judgment has been entered against [the] foreign sovereign." *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 48 (2d Cir. 2010) (emphasis added); *see also Kirschenbaum v. 650 Fifth Ave. & Related Props.*, 830 F.3d 107, 123 (2d Cir. 2016) ("[W]here a *valid* judgment has been entered against a foreign state, the foreign state's United States property is immune from attachment and execution unless a statutory exception applies." (emphasis added)). For the reasons already discussed, the District Court has not entered a valid judgment against Cuba. Therefore, the TRIA did not provide a proper basis for subject matter jurisdiction over subsequent proceedings to execute the District Court's judgment.

## III

Because the District Court lacked subject matter jurisdiction over Vera's action against Cuba, the subpoena served on BBVA to enforce the judgment entered in that action is void. The District Court's order is reversed, with costs, and the case is remanded with instructions to grant BBVA's motion to quash.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit